1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| 7  LAUREL PARK COMMUNITY, LLC, a Washington limited liability company; TUMWATER ESTATES INVESTORS, a California limited partnership; 8  VELKOMMEN MOBILE PARK, LLC, a Washington limited liability company; and MANUFACTURED 9  HOUSING COMMUNITIES OF WASHINGTON, a 10  Washington non-profit corporation, | No. C09-05312BHS  PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON TAKINGS/DUE PROCESS VIOLATIONS |

11

Plaintiffs,

12    v.

13    CITY OF TUMWATER, a municipal corporation,

14                                          Defendant.

Note on Motion
Calendar: March 26, 2010

(Oral Argument Requested)

15    A.    INTRODUCTION

16        Plaintiffs Laurel Park Community, LLC, Tumwater Estates Investors, Velkommen

17    Mobile Park, LLC, and Manufactured Housing Communities of Washington (collectively "the

18    park owners") ask this Court to declare unconstitutional Ordinance Nos. O2008-027 and O2008-

19
20    009, which establish an exclusive manufactured home park zone district ("District") within the

21    City of Tumwater ("Tumwater").  The District restricts the use of each impacted property to a

22    single mobile home park, thus eliminating any underlying single-family or multi-family

23    residential use.  It is one-use zoning.  This partial summary judgment motion is limited to the

24    question of whether Tumwater's ordinances constitute a taking of the park owners' property

25    under federal and state constitutional law and whether the ordinances violate substantive due

Plaintiffs' Motion for Partial Summary Judgment - 1
C09-05312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661   (206) 575-1397 Fax

1  process and equal protection principles.

2  B.    EVIDENCE RELIED UPON

3        The declarations of John Woodring, James Anderson, Robert Eichler, William

4  Schmicker, Scott Missall, and Jeanne-Marie Wilson.

5  C.    STATEMENT OF FACTS

6        Laurel Park, Tumwater Estates, and Velkommen own manufactured housing

7  communities in Tumwater subject to Tumwater's newly-adopted ordinances. Manufactured

8  Housing Communities of Washington ("MHCW") is a state-wide nonprofit association

9  representing the owners of over 530 manufactured housing parks in Washington. Laurel Park,

10  Tumwater Estates, and Velkommen are MHCW members. All four plaintiffs actively

11  participated in the various hearings Tumwater held to consider the creation of an exclusive

12  District and vigorously objected to Tumwater's ordinances.

13

14        Tumwater is required to adopt a comprehensive plan in accordance with Washington's

15  Growth Management Act, Chap. 36.70A RCW ("GMA"). As required by GMA, Tumwater's

16  comprehensive plan includes a housing element that identifies sufficient land for housing,

17  including government-assisted housing, housing for low-income families, manufactured housing,

18  multi-family housing, group homes, and foster care facilities. Tumwater allegedly enacted its

19  ordinances to preserve affordable housing, but it does so at the expense of the park owners.[1]

20

21        The topic of preserving manufactured housing in Tumwater through the use of an

22  exclusive District first arose in 2007 during a City Council meeting. BN 7-8. The City Council

23

24        [1]  Numerous cities and counties are considering adopting similar ordinances relegating mobile home parks
    to MHP-only zones. For example, Pierce County considered and then rejected an exclusive District on
25  constitutional grounds. Snohomish County adopted an ordinance nearly identical to Tumwater's that establishes an
    MHP-exclusive district affecting 28 mobile home parks throughout the county.

1  referred the issue to its General Government Committee.  BN 11.  Tumwater staff researched for

2  the Committee the issue of creating a new zoning classification that would permit mobile home

3  parks as the only allowed use.  BN 13-16.  That research revealed that a successful challenge to

4  Tumwater's ordinances would likely result.  For example, Tumwater staff reported significant

5  legal concerns from the City Attorney, City staff, and the Municipal Research and Services

6  Center over an MHP-only district.[2]  BN 15.  As its Planning and Facilities Director stated:

7
8  > [MRSC's legal consultant] had reservations on any proposal to limit property
   > to only one use [as] vulnerable to a taking challenge.  In particular because in
8  > manufactured home communities because the number of manufactured homes
   > in a given park could gradually decrease over time.  [sic]  Because a property
9  > owner has the right to reasonable use of their property, to not allow
   > compatible residential uses could be successfully challenged.  *City Attorney*
10 > *Kirkpatrick was consulted as well.  Much like [the MRSC consultant],*
11 > *Attorney Kirkpatrick has reservations with this approach for the same*
   > *reasons.  The City Attorney views this idea as difficult to defend legally*
12 > *because it would severely restrict the property owner's ability to make use of*
13 > *and dispose of the property.*

14 > From a planning staff viewpoint, there are reservations as well.  To begin, the
   > proposal may not be entirely consistent with the comprehensive plan . . . . *In*
15 > *addition, if a zone was created allowing only manufactured home*
   > *communities was [sic] applied to existing manufactured home communities, it*
16 > *would certainly reduce property values and would be vigorously opposed by*
17 > *the majority of manufactured home park property owners.*  A protracted
   > planning process would be expected and possible legal challenges as well.

18
19 *Id.* (emphasis added).  Despite these unequivocal concerns and the advice of its legal counsel, the

20 Committee directed staff to continue exploring the creation of a District to preserve this housing

21 for the select group of tenants living in the affected mobile home parks, even though those

22

23

24
_____

25  [2] Municipal Research and Services Center ("MRSC") is a legislatively-funded organization that provides
advice to Washington cities and towns.

Plaintiffs' Motion for Partial Summary Judgment - 3
C09-5312BHS          000256

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

1    tenants have no ownership interest in the property.  BN 22.[3]

2    City staff eventually drafted a proposed ordinance to amend Tumwater's comprehensive

3    plan, Ordinance No. O2008-027.[4]  BN 28-60.  Among other things, the comprehensive plan

4    amendments reversed Tumwater's policy of allowing mobile home parks in areas also zoned for

5    medium to high density residential use and confined mobile home parks to a single-use zone.  *Id.*

6    Only six mobile home parks, including Laurel Park, Tumwater Estates, and Velkommen Park,

7    are located in the new District.[5]  BN 81, 95.  Three of the six targeted parks were originally

8    allowed as non-conforming uses within existing single-family and multi-family medium and

9    high density residential areas.  BN 79-80.  The other three parks were located in the only zone

10   within Tumwater where various other uses were permitted, including mobile home parks and

11   multi-family residential development.  BN 80.

12

13   City staff drafted a second ordinance to establish standards for the new District,

14   Ordinance No. O2008-009.[6]  BN 78-97.  The zoning code amendments implemented the

15   comprehensive plan amendments by creating the new District and concomitantly down-zoning

16

17

18   [3] Throughout the review process, certain City Council members displayed open contempt for the park
19   owners and their representatives, taking amendments from tenants' representatives seriously while ignoring
     concerns raised by the park owners' representatives.  Woodring decl. at 2-4.

20   [4] The amendments contained in Ordinance No. O2008-027 are collectively referred to as
     "comprehensive plan amendments."

21   [5] As originally proposed, the District would have encompassed ten properties within Tumwater already
22   occupied by existing mobile home parks.  BN 66, 68, 70.  City staff later exempted three mobile home parks from
     the District because, among other reasons, those mobile home parks were "exceptionally small" and allegedly did
     not foster a sense of community or neighborhood.  BN 73, 80-81.  City staff exempted a fourth park because it was
23   zoned for commercial use and was completely surrounded by general commercial zoning making it a "transitory"
     property likely to be developed into a commercial use.  BN 80-81.

24   [6] The amendments contained in Ordinance No. O2008-09 are referred to collectively as "zoning code
25   amendments."

1   the targeted mobile home parks.[7]   As a result, the six affected mobile home parks lost their

2   original residential zoning designations and the variety of different uses then available to them.

3   BN 78-97.   Tumwater's zoning code amendments establish restricted uses for the affected

4   properties and implement severe standards aimed at preventing the conversion of mobile home

5   parks into any other use by permitting only:  mobile home parks; one single-family detached

6   residence per existing single lot of record (most manufactured housing communities are a single

7   large lot); parks; trails; open space areas; recreational facilities; support facilities; and child care

8   facilities approved by three specific Tumwater agencies.  *Id.*  Apart from mobile home parks,

9   single family housing, or child care facilities, the permitted uses allow no economic return at all.

10  A trail is hardly a revenue generator.   A single home on the entire "lot" now occupied by

11  numerous mobile homes, will hardly produce an economically viable return to a park owner.  A

12  child care facility would require the park owner to raze all existing buildings in the park, uproot

13  concrete pads, build a structure to house the children, and to secure licensure.  This is not a

14  realistic use of the property for a park owner.  In fact, the result of Tumwater's ordinances is to

15  force a park owner to keep the park for mobile home tenants in perpetuity.

16       Similarly, the ordinances allow a limited number of other primarily public or institutional

17  uses, such as churches, cemeteries, and essential public facilities; however, those uses are

18  possible *only* through a discretionary conditional use permit.  *Id.*  A park owner must request a

19  discretionary "use exception or modification" for any of those enumerated uses.  BN 89.  Even

---

[7] The zoning code amendments are codified at Tumwater Municipal Code Chap. 18.49.

Plaintiffs' Motion for Partial Summary Judgment - 5
C09-5312BHS

000258

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661   (206) 575-1397 Fax

1   those uses are not economically beneficial.[8]  But the owner's burden of proof in such a challenge

2   is extraordinarily high – the owner must convince the City Council that the District prevents

3   "reasonable use" of the land and prohibits "economically viable" uses of the property.  BN 104.

4   The owner must simultaneously submit a closure and relocation plan, even though such a plan is

5   not required under state law. *See* RCW 59.21.030.  These standards require the owner to prove a

6   negative and essentially require the owner to first go out of business.  The City Council's

7   decision to grant or deny the owner's exception or modification request is discretionary and such

8   discretion is unlikely to be exercised in favor of the park owners given the history of how park

9   owners are treated by Washington local governments.  *See* Woodring decl. at 2-3.  Robert

10  Eichler testified that Tumwater denied a very simple request to allow improvements to his park,

11  further demonstrating the antipathy of Tumwater to mobile home parks.  Eichler decl. at 3.

13      The City Council was well aware that meeting the required rezone conditions would be

14  difficult.   During a June 13, 2008 committee meeting, council member Karen Valenzuela

15  commented on the use exception requirements, stating: "[i]f the Council did adopt the ordinance

16  and property owners request a rezone, it's fair to say it is likely the owner's chances for a rezone

17  would be questionable."  BN 112.  Council member Pete Kmet, who authored the use exception,

18  stated during a February 17, 2009 City Council meeting that:  "the onus is on the [MHP] owners

19  to demonstrate they do not have reasonable use of the property under the MHP zoning or the

20  uses authorized are not economically viable."  BN 104.

---

[8]  For example, the return on investment for a cemetery, leaving aside conversion costs like public health compliance or licensure, or an adult family facility, leaving aside the cost of erecting buildings to house the residents, is hardly rewarding to the park owner.

Plaintiffs' Motion for Partial Summary Judgment - 6
C09-5312BHS

000259

Following enactment of Tumwater's ordinances,[9] the park owners filed a petition for review with the Western Washington Growth Management Hearings Board alleging various violations of the GMA and provisions of the federal and state constitutions.[10]  Woodring decl. at 4-5; Missall decl. at 1-2.  The Board upheld the park owners' challenge to whether Tumwater properly considered property rights in enacting its ordinances.  They also filed the present action with this Court.

D.    QUESTIONS PRESENTED

1.    Do Tumwater's ordinances, which create an exclusive District, constitute a taking of private property without just compensation in violation of the United States and Washington Constitutions?

2.    Even if the ordinances do not unconstitutionally take the park owners' property, do they violate the park owners' substantive due process rights under the United States and Washington Constitutions and require this Court to invalidate them because they place the societal burden for providing affordable housing exclusively on the shoulders of the park owners?

3.    Do the ordinances violate the park owners' rights to equal protection because they amount to illegal spot zoning, requiring this Court to invalidate them?

---

[9] Tumwater's comprehensive plan and zoning code amendments became effective on March 23, 2009.

[10] On October 13, 2009, the Board found that Tumwater adopted the challenged ordinances without complying with the process established in RCW 36.70A.370 "to assure that proposed regulatory or administrative actions do not result in an unconstitutional taking of private property."  Missall decl. at 2.  The Board ordered Tumwater to come into compliance with that statute within 90 days; however, the Board did not determine whether Tumwater's ordinances constitute a taking because it concluded it lacks the authority to determine constitutional issues. *Id.*

Plaintiffs' Motion for Partial Summary Judgment - 7
C09-5312BHS
000260

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661   (206) 575-1397 Fax

E.   LEGAL ANALYSIS[11]

The park owners allege numerous claims in their complaint, including federal and state due process violations, federal and state equal protection violations, regulatory takings, civil rights violations, and state inverse condemnation/eminent domain violations. This motion is confined to the park owners' federal and state constitutional claims and does not address their statutory claims or their request for damages. With this motion, the park owners ask the Court to decide whether Tumwater's ordinances constitute a taking in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Art. I, § 16 of the Washington Constitution and whether the ordinances violate the Due Process or Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and Art. I, §§ 3, 12 of the Washington Constitution.

(1)   Tumwater's Ordinances Take the Park Owners' Property

(a)   The ordinances violate the Fifth and the Fourteenth Amendments

The Takings Clause of the Fifth Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that private property shall not "be taken for public use, without just compensation." U.S. Const. Amend. V.[12] As its text makes plain, this clause "does not prohibit the taking of private property, but instead places a condition on the exercise of that power." *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 314 (1987). The clause prohibits "Government from

---

[11] The standards for granting summary judgment under Fed. R. Civ. P. 56 are well-known to this Court. *See, e.g., Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (*citing Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

[12] "Just compensation" requires that the property owner be put in the same position monetarily as he or she would have occupied had the property not been taken. *See, e.g., Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 473-74 (1973).

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

1  forcing some people alone to bear public burdens which, in all fairness and justice, should be

2  borne by the public as a whole." *Penn. Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123

3  (1978) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).

4       Regulatory actions generally will be deemed *per se* takings for Fifth Amendment

5  purposes: (1) where the government requires the owner to suffer a permanent physical invasion,

6  *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982); or (2) where a regulation

7  completely deprives an owner of all economically beneficial use of the property, *Lucas v. South*

8  *Carolina Coastal Coun.*, 505 U.S. 1003, 1016 (1992). *See Lingle v. Chevron U.S.A., Inc.*,

9  544 U.S. 528, 538 (2005). In *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922), however,

10 the Supreme Court established a third category of regulatory action. There, the Court recognized

11 that there may be instances when government actions do not encroach upon or occupy the

12 owner's property yet still affect and limit its use to such an extent that a taking occurs. *Id.* at

13 415. Thus, an onerous regulation that "goes too far" may also result in a taking because it is the

14 functional equivalent of a direct appropriation. *Id.* The third category of regulatory taking is

15 present here.

16      Although the United States Supreme Court has not precisely delineated a "set formula" to

17 determine whether a regulation goes too far, it identified several factors in *Penn Central* that

18 have particular significance. *Penn Central*, 438 U.S. at 124. Primary among those factors are

19 the economic impact of the regulation on the property owner and, particularly, the extent to

20 which the regulation has interfered with distinct investment-backed expectations. *Id.* In

21 addition, the character of the governmental action may be relevant in discerning whether a taking

22 has occurred. *Id.* The more frequently applied iteration of this last factor considers whether the

23 challenged regulation places a high burden on a few private property owners that should more

Plaintiffs' Motion for Partial Summary Judgment - 9
C09-5312BHS 000262

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

1   fairly be apportioned more broadly among the tax base. *Guggenheim v. City of Goleta*, 582 F.3d

2   996, 1028 (9th Cir. 2009) (citing *Armstrong v. United States*, 364 U.S. 40, 49 (1960)). *See also,*

3   *Lingle*, 544 U.S. at 542-43 (discussing *Armstrong* with approval). The park owners here raise a

4   facial challenge under *Mahon/Penn Central* because they have been singled out to bear what is

5   more appropriately a societal burden.[13]

6        Under the economic impact factor of the *Penn Central* test, the park owners need only

7   demonstrate a loss of value that may be less than 100 percent, but high enough to have "go[ne]

8   too far." *Penn Central*, 438 U.S. at 124. *Guggenheim* effectively illustrates this principle. 582

9   F.3d at 1000. There, Santa Barbara County enacted a rent control ordinance that the City of

10  Goleta later adopted in its entirety. *Id.* The purpose of the ordinance was to prevent mobile

11  home park owners from charging exorbitant rents to exploit local housing shortages and from

12  taking advantage of the fact that tenants could not easily move their homes. *Id.* Guggenheim

13  purchased a mobile home park subject to the ordinance. *Id.* at 1001. He later brought suit in

14  federal court, claiming violations of the Takings Clause, the Due Process Clause, and the Equal

15  Protection Clause. *Id.* at 1002. Guggenheim moved for partial summary judgment, but the

16  district court denied the motion after finding that the evidence as to the economic impact of the

17  ordinance was "mixed." *Id.* at 1003.

18       The Ninth Circuit reversed the summary judgment ruling dismissing Guggenheim's

19  takings claim. In considering the economic impact factor of the *Penn Central* test, the Ninth

---

[13] Unlike an as-applied challenge, a facial challenge alleges that the regulation is unconstitutional in the abstract: "no set of circumstances exists under which the [regulation] would be valid." *See United States v. Salerno*, 481 U.S. 739, 745 (1987). "'[T]he mere enactment' of the [regulation] constitutes a taking." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 495 (1987) (citation omitted). This Court must look only to the regulation's general scope and dominant features rather than to the effect of the application of the regulation in specific circumstances. *See, e.g., Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 773 (9th Cir. 2000).

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

000263

1   Circuit noted that the mere enactment of the ordinance effected a wealth transfer from

2   Guggenheim to his tenants and that the tenants reaped the benefits in the form of mobile homes

3   worth several times their original value. *Id.* at 1021. The Court rejected the City's principal

4   argument that rent control did not rise to a regulatory taking because Guggenheim still earned a

5   return on his investment, observing that *Penn Central* practically assumes *some* return on

6   investment. *Id.* at 1022. The question then was what loss of potential return on investment,

7   greater than zero but less than 100 percent, was significant enough to constitute a regulatory

8   taking. *Id.* at 1023. Although the "much more" Guggenheim could have earned but for the

9   ordinance was not reduced to a total dollars-and-cents loss, the Court determined that by any

10  measure, there was a significant economic transfer from Guggenheim to his tenants, one that had

11  to be characterized as a loss for Guggenheim. *Id.* at 1023.

12

13      As noted in the declaration of Jeanne-Marie Wilson, Tumwater's ordinances have

14  affected a similar value transfer to the park owners' tenants. While the *Guggenheim* court found

15  a wealth transfer resulted from rent control, a similar argument can be made with respect to

16  Tumwater's ordinances. These two forms of government regulation (rent control and an

17  exclusive District) have the same effect. As noted in *Guggenheim,* the right to occupy a mobile

18  home lot acquires its own distinct value from the land values where it is highly unlikely and

19  extremely difficult to convert to another use, and rents must remain competitive with the

20  surrounding non-regulated parks. This value transfer is reflected in the increased values for the

21  tenants' mobile homes.

22

23      A new mobile home tenant, anxious to acquire the right to rent a lot in perpetuity with

24  market rents, pays a transfer premium in the form of a higher home purchase price. While the

25  value of the capitalized rent is transferred from the park owners to the tenants in the rent control

1  context, in the exclusive District, the loss in the park owner's property value from the underlying

2  zoning is transferred to the tenants.  Here, Tumwater's ordinances result in a transfer of value

3  from the park owners to Tumwater.  In effect, the value of the park owners' property is

4  artificially depressed by the ordinances.  Tumwater receives the transfer of such value and, in

5  turn, provides it to the tenants of the six park owners affected by the ordinances who receive that

6  increased value, given the limited likelihood the parks can ever be used for anything but mobile

7  home parks.

8       Support for this premise can be seen in the manufactured housing industry in

9  Washington.  Park owners with high-end parks offer long-term leases (20 to 30 years) with

10  controlled rent increases (usually CPI index).  They offer promises not to convert to other uses.

11  These parks fill up with six-figure homes that maintain or increase their values on resales.  This

12  wealth transfer from park owners to their tenants is a naked transfer distributing the resources to

13  one group rather than another solely on the ground that those favored have exercised the raw

14  political power to obtain what they want. *See Guggenheim*, 582 F.3d at 1021, 1022.

15       Under the second *Penn Central* factor - reasonable investor-backed expectations, the park

16  owners' expectations must be "reasonable . . . [and] must be more than a unilateral expectation

17  or an abstract need." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005-06 (1984) (quotation

18  omitted).  This factor limits takings claims to those who can "demonstrate that they bought their

19  property in reliance on a state of affairs that did not include the challenged regulatory regime."

20  *Rose Acre Farms, Inc. v. United States*, 373 F.3d 1177, 1190 (Fed. Cir. 2004) (quotation

21

22

23

24

25

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

omitted).[14]  Here, the park owners bought their respective properties well before Tumwater's ordinances took effect.  They bought their parks in reliance on the zoning permitted at the time, zoning allowing multi-family development.   Schmicker decl. at 1-2; Eichler decl. at 1-2; Anderson decl. at 1-2.  They anticipated using their properties as mobile home parks as long as that use was viable and then expected to be able to turn to other economically productive uses at their discretion.  *Id.*  This expectation is reasonable, and is consistent with the development occurring around the parks.  Numerous properties surrounding the parks have recently been developed with commercial or residential uses.  The park owners' reasonable investment-backed expectations are no different than those actually realized by the surrounding property owners under Tumwater's land use plan and zoning code.  In fact, prior to the passage of the challenged ordinances, some mobile home parks were designated as non-confirming uses under Tumwater's existing land use code.  As purchasers and then owners of non-confirming properties, it would have been reasonable for the park owners to expect to eliminate the non-confirming use through redevelopment.  Tumwater's ordinances instantly turned what was, in some circumstances, a previously non-conforming land use into a mandatory land use that must remain in perpetual operation.  By enacting the challenged ordinances, Tumwater has interfered, and will continue to interfere, with the park owners' investment-backed expectations.

Under the third *Penn Central* factor - character of the government action, Tumwater has placed the economic burden of providing affordable housing squarely on the shoulders of the park owners.  The challenged ordinances apply only to the six targeted park owners; *Tumwater*

---

[14] *Guggenheim* is again instructive. The Ninth Circuit held that the rent control ordinance there impacted reasonable investor-backed expectations, although the park owners purchased their parks when an earlier version of the ordinance was in place. 582 F.3d at 1023, 1026-27.

Plaintiffs' Motion for Partial Summary Judgment - 13
C09-5312BHS
000266

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

1   *did not impose the District on any other private property owners or on the other four mobile*

2   *home parks within the city*.  Instead, Tumwater singled out the park owners and imposed solely

3   on them a burden to provide affordable housing.  This runs afoul of one of the primary policy

4   concerns animating takings jurisprudence, namely the notion that the Takings Clause "bar[s]

5   Government from forcing some people alone to bear public burdens which, in all fairness and

6   justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49

7   (1960).  Tumwater's ordinances require that GMA's social policy of affordable housing fall

8   squarely on the park owners.  Tumwater "supports" affordable housing without paying for it.

9   Owners and developers of other forms of housing, such as apartments and manufactured housing

10  with underlying commercial zoning, which were exempted in Tumwater (who might otherwise

11  be forced to provide subsidized housing), and Tumwater taxpayers are able to advance the cause

12  of affordable housing at the expense of the park owners.  Those other property owners bear no

13  similar obligation to that of the park owners here.  Nor does Tumwater tax its citizens to bear the

14  true cost of affordable housing.  Just as the property owners in *Guimont v. Clarke*, 121 Wn.2d

15  586, 854 P.2d 1 (1993), experienced a taking because they bore a societal burden, so too do the

16  park owners in Tumwater.

17        Whatever the rationale for Tumwater's ordinances, it is clear the park owners rather than

18  the public as a whole are being asked to bear the societal burden of providing affordable housing.

19  Singling them out in this manner "is the kind of expense-shifting to a few persons that amounts

20  to a taking." *Cienega Gardens v. United States,* 331 F.3d 1319, 1338-39 (Fed. Cir. 2003).

21  Moreover, Tumwater has numerous alternatives for supporting affordable housing such as tax

22  incentives, providing public housing, or buying mobile home parks, without directing the

23  societal burden of providing such housing at such a limited group.

24

25

Plaintiffs' Motion for Partial Summary Judgment - 14
C09-5312BHS

000267

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

1    Weighing all of the *Penn Central* factors together, Tumwater's ordinances have caused

2    substantial economic hardship to the park owners and interfered with their investment-backed

3    expectations. The ordinances single them out and force them to bear a burden that should fairly

4    be borne by society as a whole. Tumwater's ordinances "go too far" and amount to a regulatory

5    taking under the Fifth and Fourteenth Amendments; thus, just compensation must be paid.

6           (b)      The ordinances violate Article I, § 16 of the Washington Constitution

7    The Washington State Constitution, like the Fifth Amendment, prohibits the government

8    from taking property from a private owner without paying just compensation. Article I, § 16

9    states, in pertinent part: "Private property shall not be taken for private use[.]" In effect,

10   Tumwater's ordinances take the park owners' property for the benefit of their tenants.

11   Washington's eminent domain provision is even more protective of property rights in prohibiting

12   the taking or damaging of private property: "[n]o private property shall be taken or damaged for

13   public or private use without just compensation having been first made[.]" The Washington

14   Supreme Court has determined art. I, § 16 affords greater protection to property owners than the

15   takings clause of the Fifth Amendment. *Manufactured Housing Cmtys. of Washington v. State*,

16   142 Wn.2d 347, 356-61, 13 P.3d 183 (2000) (noting "private use" under art. I, § 16 is defined

17   more literally than under the Fifth Amendment and Washington's interpretation of "public use"

18   is more restrictive). Moreover, the Washington Supreme Court held that the remedy for an art. I,

19   § 16 taking is not just compensation, but invalidation of the offending enactment. *Id.* at 362,

20   374.

21   In *Manufactured Housing*, MHCW challenged a statutory first-refusal right of qualified

22

23   tenants to buy the park where they lived when the park's owner decided to sell it. *Id.* at 351-52.

24

25   The Supreme Court held art. I, § 16 afforded greater protection than the Fifth Amendment

Plaintiffs' Motion for Partial Summary Judgment - 15
C09-5312BHS

000268

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

1  because it established a *complete restriction* against taking private property for private use. *Id.* at

2  362.  This absolute prohibition barred any additional inquiry about just compensation; instead,

3  *the regulation was invalidated. Id.*  The Court also noted that even if the taken property was put

4  to a use that arguably had *some* public benefit, that taking would still violate art. I, § 16 if the

5  regulation's "design and its effect provide a beneficial use for private individuals only." *Id.*  The

6  Court rejected the State's argument that preserving mobile home parks was a public use because

7  it was done in that case solely for the benefit of the tenants rather than the general public. *Id.* at

8  371-73.

9

10  Importantly, the *Manufactured Housing* court concluded a right of first refusal

11  constituted a fundamental property interest because it was "part and parcel" of the power to

12  dispose of property. *Id.* at 366.  Until granted, such right remains indivisible from the "bundle of

13  sticks" representing the valuable incidents of property ownership, which also include the right to

14  posses, use, and exclude others. *Id.*  The Court held a taking occurred because the statute

15  infringed on a fundamental property right. *Id.* at 369-70.  The crux of *Manufactured Housing* is

16  that an unconstitutional taking occurs under art. I, § 16 if the government takes *any* stick from

17  the bundle of sticks representing a valuable property right.

18  *Guimont* and *Presbytery of Seattle v. King Cy.*, 114 Wn.2d 320, 787 P.2d 907, *cert.*

19  *denied*, 498 U.S. 911 (1990), provide the analytic framework to determine whether a regulatory

20  taking has occurred under Washington law.[15]  The Court begins by asking whether the regulation

21

22  infringes on a fundamental attribute of ownership, specifically the rights to possess, exclude

23

24  ――――――――――――
   [15] *Presbytery* was one of the seminal decisions in Washington addressing regulatory takings.  It was issued
   shortly before the United States Supreme Court issued *Lucas*, and was inconsistent with that decision.  *Guimont*
25  resolved the *Presbytery/Lucas* inconsistency by reordering the first two steps of the *Presbytery* threshold test.
   *Guimont*, 121 Wn.2d at 600-01.

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661   (206) 575-1397 Fax

1    others, dispose of, and make some economically viable use of, the property. 121 Wn.2d at 600-

2    01. If the property owner proves the regulation has destroyed one of the sticks from the bundle

3    of sticks representing a fundamental property right, then the owner need not proceed with the

4    remainder of the analysis. *Id.* at 601. But if the regulation fails to implicate a fundamental

5    attribute of ownership, the Court proceeds to the next step, which is to analyze whether the

6    regulation goes beyond preventing a public harm to producing a public benefit. *Id.* If the

7    purpose of the regulation is to produce a benefit, the Court then balances the legitimacy of the

8    State's interest with the adverse economic impact on the owner. *Id.*

9

10         Here, Tumwater has damaged or destroyed the park owners' fundamental right to freely

11    dispose of their properties as they see fit. It has also infringed on their fundamental right to

12    economically use their properties by significantly restricting redevelopment. Restricting the

13    property's use to the existing use is not a public use because it places the burden of providing

14    affordable housing solely on the park owners rather than on society as a whole. Instead, it is a

15    private benefit that fails to satisfy the overarching requirement that the benefit of local

16    government zoning is "to be received by the general public." *Conger v. Pierce County*, 116

17    Wash. 27, 36, 198 P. 377 (1921). By infringing on the park owners' fundamental rights of

18    ownership, Tumwater has destroyed the value of the property and rendered the park owners'

19    ownership rights barren rights. *See Ackerman v. Port of Seattle*, 55 Wn.2d 400, 409, 348 P.2d

20    664 (1960), *overruled on other grounds by Highline School Dist. No. 401 v. Port of Seattle*, 87

21

22    Wn.2d 6, 548 P.2d 1085 (1976) (citations omitted).

23         Tumwater's intent here, to "preserve and protect manufactured home communities from

24    the pressure of development and conversion to another land use," is strikingly similar to the

25    legislative statement invalidated in *Manufactured Housing*. Tumwater's ordinances do exactly

Plaintiffs' Motion for Partial Summary Judgment - 17
C09-5312BHS

000270

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

1    what the Washington Supreme Court concluded other statutes and ordinances cannot do – place

2    the societal burden of providing affordable housing exclusively on the shoulders of the park

3    owners.   Tumwater's District presents an even clearer case of an unconstitutional taking for

4    private use than the taking that occurred in *Manufactured Housing*.   Accordingly, Tumwater's

5    ordinances amount to an unconstitutional taking under art. I, § 16 and must be invalidated.

6            (2)     Tumwater's Ordinances Violate the Park Owners' Right to Due Process

7            Even if a regulation is not susceptible to a takings challenge, it is subject to substantive

8    due process scrutiny.  *See Lingle*, 544 U.S. at 532.  *See also, Action Apart. Ass'n, Inc. v. Santa*

9    *Monica Rent Control Bd.*, 509 F.3d 1020, 1024 (9th Cir. 2007) (recognizing substantive due

10   process can be an appropriate vehicle to challenge the rationality of land use regulations).  Both

11   the federal and the state Constitutions provide due process protections through the Fourteenth

12   Amendment and Article I, § 3, respectively.[16]  While the remedy for a taking under the Fifth

13   Amendment is compensation, the remedy for a substantive due process violation is invalidation

14   of the regulation.  *See, e.g., Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of*

15   *Johnson*, 473 U.S. 172, 197 (1985); *Pande Cameron & Co. of Seattle, Inc. v. Central Puget*

16   *Sound Reg'l Transit Auth.*, 610 F.Supp.2d 1288 (W.D. Wash., 2009) (citing *Presbytery*, 114

17   Wn.2d at 332).

18
19

20           [16]  The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits states
     from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. CONST. Amend. XIV,
21   § I.  Article I, § 3 of the Washington Constitution similarly provides: "[n]o person shall be deprived of life, liberty,
     or property without due process of law."  The Washington Supreme Court has determined that the substantive due
22   process protection provided in art. I, § 3 is no broader than that provided in the parallel federal provision.  *See, e.g.,*
     *State v. Manussier*, 129 Wn.2d 652, 921 P.2d 473, 486 (1996).

23
             While the federal and state constitutional protections are the same, Washington courts utilize a far more
24   liberal due process test to analyze property rights cases than the federal courts.  *See Hayes v. City of Seattle*, 131
     Wn.2d 706, 723, 934 P.2d 1179 (1997) (Madsen, J., concurring in dissent) (noting the federal court approach toward
25   substantive due process claims in the context of land use appeals requires more than a showing of arbitrary or
     irrational action).

Plaintiffs' Motion for Partial Summary Judgment - 18                          Talmadge/Fitzpatrick
C09-5312BHS                                                                   18010 Southcenter Parkway
                 000271                                                       Tukwila, Washington 98188-4630
                                                                              (206) 574-6661  (206) 575-1397 Fax

1    Under substantive due process, certain types of decisions are beyond the power of

2 government to make.  To establish a violation of substantive due process, a plaintiff must prove a

3 challenged government action was "clearly arbitrary and unreasonable, having no substantial

4 relation to the public health, safety, morals, or general welfare."  *Euclid v. Ambler Realty Co.*,

5 272 U.S. 365, 395 (1926); *Bateson v. Geisse*, 857 F.2d 1300, 1303, (9th Cir. 1988).[17]  Under the

6 classic substantive due process test, a land use regulation satisfies due process standards only if

7 it:  (1) is aimed at achieving a legitimate public purpose and (2) uses means that are reasonably

8 necessary to achieve that purpose.  *See, e.g., Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir.

9 2008) (noting the "irreducible minimum" of a substantive due process claim challenging a land

10 use action is a failure to advance any legitimate governmental purpose); *Goldblatt v. Town of*

11 *Hempstead, New York*, 369 U.S. 590, 594-95 (1962).  Washington courts have added a third

12

13 prong, which looks at whether the land use regulation is unduly oppressive on the landowner.

14 *See Star NW, Inc. v. City of Kenmore*, 280 Fed. Appx. 654 (9th Cir. 2008) (citing *Presbytery*,

15 114 Wn.2d at 331); *Garneau v. City of Seattle*, 147 F.3d 802, 821 (9th Cir. 1998) (Williams, J.,

16 concurring) (applying Washington's three-prong substantive due process test).  *See also,*

17 *Guimont*, 121 Wn.2d 609 n.10.  The third inquiry will usually be the difficult and determinative

18 one.  *Presbytery*, 114 Wn.2d at 331.  But if an ordinance fails to satisfy any one of these three

19 prongs, it violates due process and is invalid.  *Robinson v. City of Seattle*, 119 Wn.2d 34, 55, 830

20 P.2d 318, *cert. denied*, *City of Seattle v. Robinson*, 506 U.S. 1028 (1992).

21

22    While Tumwater's ordinances are arguably aimed at achieving the affordable housing

23

24 ――――――――――
[17] The inquiry into "arbitrariness" under the Fourteenth Amendment is distinct from and far narrower than
the inquiry under state law. *Hayes*, 131 Wn.2d at 739 (Talmadge, J., dissenting) (citations omitted).  As the *Hayes*
25 court noted, "[c]onclusory action taken without regard to the surrounding facts and circumstances is arbitrary and
capricious." *Id.* at 717-18.

Plaintiffs' Motion for Partial Summary Judgment - 19
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

000272

goal of GMA, the means used to achieve that purpose are improper, bearing no rational relationship to that purpose. Tumwater's new District severely restricts the range of uses by park owners of their property, coercing them to retain their mobile home parks in perpetuity, even if such housing becomes an outdated form of affordable housing. Moreover, Tumwater has numerous alternatives for supporting affordable housing, such as tax incentives, providing housing, or buying mobile home parks, without burdening the park owners exclusively.

But even if the means Tumwater employed to achieve a legitimate public purpose are reasonably necessary, the ordinances remain unduly oppressive.[18] Tumwater has intentionally placed the burden of preserving affordable housing on the shoulders of a few, much as Washington State attempted to do in *Guimont*. *Guimont*, 121 Wn.2d at 611. Like the owners in *Guimont*, the park owners here are not significantly more responsible for providing an adequate supply of affordable housing than is the rest of the population. Requiring society as a whole to shoulder this responsibility represents a far less oppressive solution to Tumwater's affordable housing problem. *See id.* Moreover, Tumwater's ordinances will result in significant economic losses in terms of total value and percentage that will be borne exclusively by the park owners. This is especially true in situations where the mobile home park is surrounded by valuable

---

[18] Washington courts consider several nonexclusive factors to weigh the fairness of the burden being placed on a property owner when determining whether an ordinance is unduly oppressive. *Guimont*, 121 Wn.2d at 610. Those factors include:

> On the public's side, the seriousness of the public problem, the extent to which the owner's land contributes to it, the degree to which the proposed regulation solves it and the feasibility of less oppressive solutions would all be relevant. On the owner's side, the amount and percentage of value loss, the extent of remaining uses, past, present and future uses, temporary or permanent nature of the regulation, the extent to which the owner should have anticipated such regulation and how feasible it is for the owner to alter present or currently planned uses.

*Id.* at 610 (citations omitted).

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661   (206) 575-1397 Fax

1    commercial land and the mobile home park may be less desirable for continuing residential use.

2    The District leaves the park owners with a single use resulting in a significant loss of economic

3    value, especially compared to surrounding property owners. The park owners are essentially

4    unable to change their existing use, even if such use would be authorized under Tumwater's

5    zoning code. Clearly, nothing in the ordinances indicates they are intended to be temporary.

6    There was no way for the park owners to have anticipated a mandatory District where the

7    conversion of mobile home parks to other residential or commercial uses is done based on

8    existing zoning and comprehensive plan provisions. Finally, Tumwater did not give the park

9    owners any grace period to decide whether to continue using the properties as mobile home

10   parks before the ordinances went into effect. The park owners had no opportunity to alter their

11   present or planned use before Tumwater's onerous obligations took effect.

12   

13        Tumwater's ordinances are also illegal spot zoning because they single out the park

14   owners with more restrictive zoning and grant a discriminatory benefit to other similarly situated

15   mobile home park property owners. Other similarly-situated mobile home park owners have not

16   been saddled with Tumwater's objectionable zoning.

17        A spot zoning claim can be variously characterized as a substantive due process violation,

18   a taking, or even an equal protection violation. It does not neatly fit into one category. *Buckles*

19   *v. King Cty.*, 191 F.3d 1127, 1137 (9th Cir. 1999), (citing *Save Our Rural Environment v.*

20   *Snohomish Cty.*, 99 Wn.2d 363, 286, 662 P.2d 816 (1983)). Illegal spot zoning is arbitrary and

21   unreasonable zoning action by which a smaller area is singled out of a larger area and specially

22   zoned for a use classification totally different from and inconsistent with the classification of the

23   surrounding land. *See, e.g., Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1236 (9th Cir.

24   1994); *Buckles*, 191 F.3d at 1137-38. *See also, Smith v. Skagit Cty.*, 75 Wn.2d 715, 743, 453

25   

Plaintiffs' Motion for Partial Summary Judgment - 21
C09-5312BHS
000274

1  P.2d 832, 848 (1969).

2      The reasons for invalidating a rezone as an illegal spot zone usually include one or more

3  of the following: (1) the rezone primarily serves a private interest . . . or (3) the rezone

4  constitutes arbitrary and capricious action. *See Save Our Rural Environment v. Snohomish Cy.*,

5  99 Wn.2d 363, 286, 662 P.2d 816 (1983) ("*SORE*").  When faced with a rezone challenge, the

6  main inquiry is whether the zoning action bears a substantial relationship to the general welfare

7  of the affected community.  *SORE*, 99 Wn.2d at 286.  Where a spot zoning action confers a

8  discriminatory benefit to a group of owners to the detriment of neighbors without adequate

9  public justification, the rezone will be overturned.  *Bassani v. Board of County Comm'rs for*

10  *Yakima County*, 70 Wn. App. 389, 396, 853 P.2d 945 (1993) (citations omitted).

11

12      Where Tumwater's ordinances are unduly oppressive to the park owners, they violate the

13  park owners' due process rights and are invalid.

14      (4)   Tumwater's Ordinances Violate the Park Owners' Rights To Equal Protection and
          Constitute Illegal Spot Zoning

16      Tumwater's ordinances should also be invalidated on equal protection grounds.  Under

17  the Equal Protection Clause of the Fourteenth Amendment, no state may deny to any person

18  within its jurisdiction equal treatment; in other words, all persons similarly situated must be

19  treated alike.  *See City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).[19]

---

[19] Article I, § 12 of the Washington Constitution states, in part: "No law shall be passed granting to any citizen, class of citizens, or corporation . . . privileges or immunities which upon the same terms shall not equally belong to all citizens[.]"  The privileges and immunities clause, like the federal constitution's equal protection counterpart, requires that similarly situated persons receive like treatment; a privilege may not be granted to one class of persons that is denied to another. *See State v. Manussier*, 129 Wn.2d 652, 672, 921 P.2d 473 (1996).  For purposes of art. I, § 12, privileges are "those fundamental rights which belong to the citizens of the state by reason of citizenship." *State v. Vance*, 289 Wash. 435, 458, 70 P. 34 (1902).  The courts have consistently construed the federal and state equal protection clauses identically. *State v. Smith*, 117 Wn.2d 263, 281, 814 P.2d 652 (1991) (citing cases).

Plaintiffs' Motion for Partial Summary Judgment - 22
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

In the land use context, an equal protection claim is generally based on a rational relationship test. *See, e.g., Gamble v. City of Escondido,* 104 F.3d 300, 307 (9th Cir. 1997); *Yakima County Deputy Sheriff's Ass'n v. Board of Comm'rs for Yakima,* 92 Wn.2d 831, 835-36, 601 P.2d 936 (1979).

Governments are entitled to make classifications in enacting legislation,[20] but such classifications, unless they involve a suspect class like race, must bear a rational relationship to the purpose of the legislation. *See City of Cleburne,* 473 U.S. at 436 (government action that burden individuals unequally but does not burden "suspect class" need only survive rational basis review). *See also, Munoz v. Sullivan,* 930 F.2d 1400, 1404 (9th Cir. 1991) (distinctions that government draws among individuals need only be rationally related to legitimate government purpose when a suspect classification is not used).

Here, Tumwater's ordinances treat the park owners differently whether the class is all housing providers or merely all park owners in Tumwater. Plainly, to achieve GMA's goal of affordable housing,[21] Tumwater has not required all housing providers – single family, apartments, condominia, etc. – to face the same types of limitations on the future use of their property. Tumwater has not required every homeowner in "affordable" housing areas zoned multi-family to limit their future right to build multi-family projects. The park owners are placed at a competitive disadvantage to other property owners whose property is not limited in its future

---

[20] *See Coalition for Economic Equity v. Wilson,* 122 F.3d 692, 708 (9th Cir. 1997) (noting states are free to make any constitutionally permissible legislative classification).

[21] While preserving affordable housing is arguably a valid public objective, that objective is more properly the burden of society rather than the park owners individually. *See Guimont,* 121 Wn.2d at 611. The park owners are being treated differently than other non-mobile home park property owners because those property owners are allowed to retain their existing residential or commercial zoning and are being granted an economic benefit not enjoyed by the park owners.

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

1    use.

2          Additionally, Tumwater *has not equally applied this new zone to all mobile home parks*

3    *within the city because it has arbitrarily exempted four mobile home parks from the mandatory*

4    *District.*   Tumwater cannot pick and choose which mobile home parks will bear the sole

5    responsibility for satisfying Tumwater's affordable housing goals.

6          Finally, for the reasons previously enumerated, Tumwater's ordinances constitute spot

7    zoning which violates equal protection.

8          Tumwater's ordinances confer a discriminatory benefit to a group of property owners not

9    enjoyed by the park owners.  As such, they violate the park owners' rights to equal protection

10   and constitute illegal spot zoning that should be overturned.

11

12   F.    <u>CONCLUSION</u>

13         Tumwater's ordinances are unconstitutional takings and violate the park owners' rights to

14   federal and state due process and equal protection.

15         DATED this 19th day of February, 2010.

16

17         Philip A. Talmadge, WSBA #6973
           Thomas M. Fitzpatrick, WSBA #8894

18         Emmelyn Hart-Biberfeld, WSBA #28820
           Talmadge/Fitzpatrick

19         18010 Southcenter Parkway
           Tukwila, WA  98188-4630

20         (206) 574-6661
           Email: phil@tal-fitzlaw.com

21                 tom@tal-fitzlaw.com

22                 emmelyn@tal-fitzlaw.com

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Walter H. Olsen, Jr., WSBA #24462
Olsen Law Firm PLLC
604 West Meeker St., Ste. 101
Kent, WA 98032
(253) 813-8111
Email: walt@olsenlawfirm.com
Attorneys for Plaintiffs

Plaintiffs' Motion for Partial Summary Judgment - 25
C09-5312BHS
000278

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax