UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LAUREL PARK COMMUNITY, LLC, a Washington limited liability company; TUMWATER ESTATES INVESTORS, a California limited partnership; VELKOMMEN MOBILE PARK, LLC, a Washington limited liability company; and MANUFACTURED HOUSING COMMUNITIES OF WASHINGTON, a Washington non-profit corporation,

Plaintiffs,

v.

CITY OF TUMWATER, a municipal corporation,

Defendant.

No. 3:09-cv-05312-BHS

DECLARATION OF SCOTT MISSALL

Scott Missall declares and states as follows:

1.      I am an attorney at Short Cressman & Burgess and am one of the attorneys representing Laurel Park Community, LLC, Tumwater Estates Investors, and Manufactured Housing Communities of Washington in an appeal before the Western Washington Growth Management Hearings Board ("Board") and subsequent judicial appeal. I am over the age of 18, competent to be a witness, and make this declaration based on personal knowledge.

2.      Following enactment of the City of Tumwater's manufactured housing ordinances in 2009, my clients filed a petition for review with the Western Washington Growth Management Hearings Board ("Board") alleging various violations of the Growth Management

Declaration of Scott Missall - 1

000001

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

1   Act, Chap. 36.70A RCW ("GMA"), and provisions of the federal and state constitutions.   On

2   October 13, 2009, the Board issued its Final Decision & Order.   On November 12, 2009, the

3   Board issued its Order on Reconsideration.   These decisions found that the City of Tumwater

4   ("Tumwater") adopted the challenged ordinances without complying with RCW 36.70A.020(6)

5   and the process established in RCW 36.70A.370 "to assure that proposed regulatory or

6   administrative actions do not result in an unconstitutional taking of private property." The Board

7   ordered Tumwater to comply with that statute within 90 days and set a compliance hearing for

8   February 23, 2010.   The Board did not determine whether Tumwater's ordinances would

9   constitute a taking because the Board concluded that it lacked the authority to determine

10   constitutional issues.

11

12   3.   During the GMA hearing, numerous exhibits were presented to the Board.   All of

13   the exhibits attached to this declaration were taken from the exhibits presented to the Board.

14   4.   Attached to this declaration as exhibit A are true and accurate copies of pages 1-3

15   of the minutes from a Tumwater City Council meeting on August 7, 2007.

16   5.   Attached to this declaration as exhibit B are true and accurate copies of pages 1

17   and 6 of the minutes from a Tumwater General Government Committee meeting on

18   October 11, 2007.

19

20   6.   Attached to this declaration as exhibit C are true and accurate copies of an

21   Agenda and a January 24, 2008 memorandum from Tumwater's Planning and Facilities Director,

22   Michael Matlock, to Tumwater's General Government Committee.   The staff memorandum is

23   noteworthy because it states that Tumwater staff could find only one other city in the state that

24   had an exclusive Manufactured Home Park Zone District ("District"), which was adopted in

25   1988 (pre-GMA) and was apparently created to limit the expansion of mobile home parks rather

26   Declaration of Scott Missall - 2

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

1   than to protect them.  Ex. C (Memo. at 2).  Staff also reported that they had consulted with

2   Municipal Research & Services Center ("MRSC") concerning the legal viability of the proposed

3   District.  *Id.* at 3.  MRSC is a legislatively-funded organization that provides advice to

4   Washington cities and towns.  Staff concluded its analysis by recommending that Tumwater not

5   pursue a zoning classification that would permit only one single use of a manufactured home

6   park.  *Id.*  This memorandum demonstrates that Tumwater had notice of the legal problems

7   surrounding its enactment of the challenged ordinances and reflects that its actions are contrary

8   to the legal advice of its counsel.

9

10       7.      Attached to this declaration as exhibit D is a true and accurate copy of the minutes

11   from a Tumwater General Government Committee meeting on January 24, 2008.

12       8.      Attached to this declaration as exhibit E is a true and accurate copy of Tumwater

13   Ordinance No. O2008-027, which was effective March 23, 2009.

14       9.      Attached to this declaration as exhibit F are true and accurate copies of pages 1

15   and 5-8 of the minutes from a Tumwater General Government Committee meeting on

16   July 15, 2008.

17       10.     Attached to this declaration as exhibit G is a true and accurate copy of the minutes

18   from a Tumwater Planning Commission meeting on December 9, 2008.

19       11.     Attached to this declaration as exhibit H is a true and accurate copy of Tumwater

20   Ordinance No. O2008-009, which was effective March 23, 2009.

21

22       12.     Attached to this declaration as exhibit I are true and accurate copies of pages 1

23   and 4-9 of the minutes from a Tumwater City Council meeting on February 17, 2009.

24       13.     Attached to this declaration as exhibit J is a true and accurate copy of the minutes

25   from a Tumwater General Government Committee meeting on June 13, 2008.

26   Declaration of Scott Missall - 3

000003

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

14.     Attached to this declaration as exhibit K is a true and accurate copy of the minutes from a Tumwater General Government Committee meeting on April 25, 2008.

15.     Attached to this declaration as exhibit L is a true and accurate copy of an Agenda from a Tumwater General Government Committee meeting on April 25, 2008 and page 119 of the attachments to that Agenda.

16.     Attached to this declaration as exhibit M is a true and accurate copy of an Agenda from a Tumwater City Council meeting on January 6, 2009 and pages 42, 45, 47-48, and 89-101, which are pages from a staff report and the zoning ordinance attached to that Agenda.

17.     Attached to this declaration as exhibit N is a true and accurate copy of an Agenda from a Tumwater City Council meeting on December 9, 2008 and pages 13, 16, 18, and 20, which are pages from a staff report attached to that Agenda.

18.     Attached to this declaration as exhibit O is a true and accurate copy of the minutes from a Tumwater City Council meeting on January 6, 2009.

19.     Attached to this declaration as exhibit P are true and accurate copies of pages 1-2, 16-20 and 29 from the October 13, 2009 Final Decision & Order of the Board issued in *Laurel Park Community LLC v. City of Tumwater*, WWGMHB No. 09-2-0010.

20.     Attached to this declaration as exhibit Q are true and accurate copies of pages 1-6 and 10-11 from the Board's November 12, 2009 Order on Reconsideration issued in *Laurel Park Community LLC v. City of Tumwater*, WWGMHB No. 09-2-0010.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct. Executed at Seattle, Washington, this 26th day of January, 2010.

Scott Missall

Declaration of Scott Missall - 4

000004

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661   (206) 575-1397 Fax

# EXHIBIT A

000005

TUMWATER CITY COUNCIL
MINUTES OF MEETING
August 7, 2007 Page 1

APPROVED

**CONVENE:** 7:00 p.m.

**PRESENT:** Mayor Ralph Osgood, Councilmembers Jerry Murphy, Pete Kmet, Karen Valenzuela, Ed Stanley, Judith Hoefling, and Neil McClanahan.

Excused: Councilmember Bruce Zeller.

Staff Present: City Attorney Karen Kirkpatrick, Planning and Facilities Director Mike Matlock, Engineer II Doug Johnston, Water Resources Program Manager Dan Smith, and Recording Secretary Jessica Tate.

**APPROVAL OF THE AGENDA:** Mayor Osgood requested a minor reordering of the agenda.

**MOTION:** **Councilmember Stanley moved, seconded by Councilmember Kmet, to approve the amended agenda as amended. All in favor. Motion carried.**

**CONSENT CALENDAR:**
a.  Approval of Minutes: July 17, 2007
b.  The City Council authorizes for payment checks #106798 through 107002 in the amount of $1,034,512,.48
c.  Notice of Intent to Adopt Revised LOTT Discharge & Industrial Pretreatment Regulations
d.  Advisory Board Appointments
e.  Public Fireworks Display
f.  Certificate of Appropriateness for Crosby House Restoration and Stabilization
g.  8800 Block – Highway 99 Annexation: Notice of Intention to Commence Annexation Proceedings for land located generally south of 88th Avenue on the eastern side of Old Highway 99
h.  Set Hearing date for Ordinance O2007-004 Proposed Text Amendments to Title 18 – Zoning (Fish Hatcheries and Floodplain Regulations)

Mayor Osgood reported Chris Leicht is resigning from his position as Chair of the Tumwater Parks Board. He commented on Mr. Leicht's years of service to the City and commended him for his volunteer service.

**Chris Leicht, 3126 Bonanza Court SE, Tumwater,** said he is resigning from the Tumwater Parks Board after 10 years of service. He thanked the City for the opportunity to serve. He reviewed the many programs and services provided by Tumwater and commended staff and volunteers for their work and efforts over the

TUMWATER CITY COUNCIL
MINUTES OF MEETING
August 7, 2007 Page 2

years for improving the quality of life within Tumwater.

Mr. Leicht expressed support of the draft Tumwater Parks, Recreation, and Open Space Plan because it addresses the needs of the community over the next 20 years. He asked that the Council adopt and support the plan.

Mayor Osgood thanked Mr. Leicht for his years of service. He presented Mr. Leicht with a letter of congratulations and a plaque. Tumwater has benefited from Mr. Leicht's service.

**MOTION:** **Councilmember Kmet moved, seconded by Councilmember Stanley, to approve the consent calendar as presented. All in favor. Motion carried.**

Mayor Osgood introduced Erin Carrier as new Tumwater Parks Board member. Ms. Carrier indicated she grew up in Tumwater and is interested in implementing the new Tumwater Parks, Recreation, and Open Space Plan.

Mayor Osgood introduced Sean Finney as a new Tumwater Parks Board member. Mr. Finney thanked Council for the opportunity, and said he is very excited to participate on the Board.

Mayor Osgood introduced Sue Steinman as a new Tumwater Library Board member. He commended Ms. Steinman for her commitment to troubled youth in the community. Ms. Steinman indicated her goal is to sustain a connection between youth and the library and to encourage reading. She hopes to change the perception of troubled youth and encourage support.

**PUBLIC COMMENT:** **Betsy Murphy, 5243 Bald Eagle Lane SW, Tumwater,** spoke on behalf of the residents of Eagles Landing. She distributed a handout stating her reason for her comments. Eagles Landing is a 55+ manufactured home park built in 1993. Homes in the park range in value from $90,000 to $150,000.

Most seniors in the park have invested the majority of their savings in their homes to have a nice, comfortable, and safe place to spend their golden years.

The community is concerned that the park may be sold from beneath them to allow for more housing/condominiums/apartments. Given that concern, the group has chartered a chapter of the Mobile Home Owners Association of America and recently registered with the state as a purchasing committee to be prepared in the event the property is marketed for sale.

000007

The unfortunate part of consideration for a purchase is that the homeowners in the park have invested most of their money in the purchase of their homes, and cannot afford a substantial cash obligation of $30,000 to $50,000 to purchase the lots their homes are located on. This would cause most residents to be displaced.

Eagles Landing requests the Tumwater City Council help sustain the park.

Mayor Osgood thanked Ms. Murphy for presenting the issue to Council. The City Attorney will analyze the issue and provide further information.

Councilmember McClanahan stated he is willing to assist with the issue. The Housing Task Force is also an option for assistance. He asked Ms. Murphy to keep him updated.

Councilmember Hoefling thanked Ms. Murphy for her efforts. She offered to assist with the issue.

Councilmember Stanley thanked Ms. Murphy for alerting the Council about the issue. He suggested she also contact state representatives regarding the issue.

Mayor Osgood indicated he was surprised to hear conversation regarding conversion of Eagles Landing because it is a high quality community. He commended Ms. Murphy for coordinating action on the issue. He thanked attendees for their support.

**Art Gilmore, 5840 Margo Road, Tumwater,** expressed concerns about warehouse development in Tumwater in terms of traffic, noise, square footage of buildings, and the impact of potential illegal immigration on schools. The City must work against issues by defining problems and building objectives.

He referred to Tumwater High School curriculum and stated some aspects appalled him. Courses about how to pass the WASL are ridiculous. The physical education program does not seem successful, as the fields and courts in the City are underutilized during the summer. Self-esteem course are also ridiculous, as the school should provide tools for children that will build self-esteem. Parenting and marriage classes should be required for high school seniors to help improve family life within the community.

**John Woods, 323 Clark Street SW, Tumwater,** reported the 2006 Tumwater Marching Band Festival was a success. The festival will

# EXHIBIT B

000009

**TUMWATER GENERAL GOVERNMENT COMMITTEE**
**MINUTES OF MEETING**
October 11, 2007 Page 1

| | |
|---|---|
| **CONVENE:** | 12:30 p.m. |
| **PRESENT:** | Chair Bruce Zeller and Councilmembers Karen Valenzuela and Ed Stanley. |

Staff Present: City Administrator Doug Baker, City Attorney Karen Kirkpatrick, Planning and Facilities Director Mike Matlock, Development Services Director Roger Gellenbeck, and Recording Secretary Jessica Tate.

**ORDINANCE NO. O2006-037, REGULATING LARGE DISTRIBUTION CENTER WAREHOUSES:**

Director Matlock reported the public hearing held by the Council was during the appeal of the SEPA determination. Following resolution of the appeal, the Council forwarded the ordinance for review by the General Government Committee.

There has been recent interest in siting large distribution warehouses in Tumwater. Because the uses can be very large, they consume large amounts of industrially zoned land. There are concerns that the uses provide relatively few jobs because of the nature of the use, which can generate a relatively high number of truck trips.

The City Council directed staff to craft zoning code amendments restricting large distribution warehouses to areas that are most appropriate for that type of use, while minimizing impacts to surrounding uses.

The ordinance defines the term "warehouse distribution center." Two different standards are included. A facility of 200,000 square feet or below will remain a permitted use within the Light Industrial and Airport Related Industrial zones. A facility larger than 200,000 square feet will be considered a conditional use, which requires approval of the Tumwater Hearing Examiner.

At its last meeting, the Council approved an interim ordinance to regulate large distribution center warehouses until an ordinance is adopted. The interim ordinance is similar to Ordinance No. O2006-037, except it does not contain the 300-foot provision from zoning categories outside of the urban growth area (UGA).

Additional conditions of Ordinance No. O2006-037 regarding building separation and lot coverage requirements have been included in sections 18.56.340 (7) and (8):

- 7.    A minimum 20 foot separation betweens structures is required;
- 8.    Maximum lot coverage shall not exceed 75%.

TUMWATER GENERAL GOVERNMENT COMMITTEE
MINUTES OF MEETING
October 11, 2007 Page 6

**Motion carried.**

Councilmember Stanley stated he and Councilmember Valenzuela will most likely not be available for a tour on November 9, 2007 because it is Thurston Regional Planning Council's 40th anniversary event.

Chair Zeller requested staff look into a possible tour in Gig Harbor.

Councilmember Stanley asked staff begin researching the possibility of creating a new zoning ordinance strictly for manufactured housing. He indicated he has received comments of concern that some existing mobile home parks might be converted into condominiums. Director Matlock acknowledged the request.

Mr. McCoy complimented Chair Zeller on his comments regarding patience to achieve the vision of the City. Once a vision is established, everything else will fall into place. He asked that staff review health impacts of gasoline emissions as well as diesel emissions.

ADJOURNMENT: **There being no further business, Chair Zeller adjourned the meeting at 1:39 p.m.**

Prepared by Jessica Tate, Recording Secretary
Puget Sound Meeting Services

# EXHIBIT C

000012

AGENDA ITEM NO. <u>1</u>

Meeting Date – January 24th, 2008

TO:      Doug Baker, City Administrator
<u>dbaker@ci.tumwater.wa.us</u>

FOR:     General Government Committee

FROM:   Mike Matlock, Planning and Facilities Director
<u>mmatlock@ci.tumwater.wa.us</u>

RE:      Manufactured Home Parks

---

1)   <u>References</u>   (Only list those attached.)

    A.    Staff Memorandum

---

2)   <u>Action Requested / Staff Recommendation</u>:

    This is an information item.

---

3)   <u>History and Facts Brief</u>:

    General Government Committee requested staff research the issue of a zoning classification that allows only manufactured homes.

---

4)   <u>Discussions and Alternatives</u>:

    A.    Provide direction to staff.

---

5)   <u>Fiscal Notes</u>:

000013



CITY OF
**TUMWATER**
Washington's First Community.

# Memorandum

January 24, 2008

TO:        General Government Committee

FROM:    Michael Matlock, Planning and Facilities Director

RE:        Manufactured Home Zoning

---

The General Government Committee requested staff research the issue of establishing a new zoning classification that would allow manufactured/mobile homes as the only allowed use. Staff contacted a number of sources for this research including the City Attorney and attorneys with Municipal Research and Services Center (MRSC). In addition, some research was done regarding other jurisdictions that have taken a similar action.

Through research in conjunction with MRSC, staff was only able to locate one city, Auburn, that has a zone exclusively for manufactured homes in manufactured home parks. This zone (Residential Manufactured Home Park District) was put in place in 1988, so it clearly was not established as a result of the more recent conversion trend for manufactured home parks in the Puget Sound area. This zone allows only manufactured homes and accessory uses to those homes in this zone. The intent section of the zone only allows manufactured home parks is areas that are "....bordered on, contain physical features, or shall be planned and designed as part of a larger development incorporating other housing types in a manner which limits further expansion into adjacent areas". It would appear this zone was created to limit the expansion of manufactured home parks rather than protect them.

Snohomish County last year passed an ordinance that allows mobile home parks as its only use. This action was in response to the same concerns regarding mobile home park conversion that have recently been expressed here. The program is voluntary and is intended to reduce the taxes assessed on the property in order to encourage the continuation of mobile home parks. At this time, no requests for a voluntary rezone for mobile home park zoning have been received by Snohomish County.

**PLANNING AND FACILITIES DEPARTMENT**

000014

Jim Doherty, an attorney with MRSC was contacted regarding the legal viability of a zone classification that allows manufactured homes exclusively. Mr. Doherty had reservations on any proposal to limit property to only one use in that such a regulation could be vulnerable to a takings challenge. In particular because in manufactured home parks because the number of manufactured homes in a given park could gradually decrease over time. Because a property owner has the right to reasonable use of their property, to not allow compatible residential uses could be successfully challenged. City Attorney Kirkpatrick was consulted as well. Much like Mr. Doherty, Attorney Kirkpatrick has reservations with this approach for the same reasons. The City Attorney views this idea as difficult to defend legally because it would severely restrict the property owners' ability to make use of and dispose of the property.

From a planning staff viewpoint, there are reservations as well. To begin, the proposal may not be entirely consistent with the comprehensive plan. Objective 3.1.1 of the Housing Plan, pg. 17 states "The Zoning Code, allows manufactured homes on single family lots in all residential zones. It is not the intent of this plan to promote the development of traditional manufactured home parks; but rather, to recognize that modular/manufactured housing is a viable form of housing construction."

In addition, if a zone was created allowing only manufactured home parks was applied to existing manufactured home parks, it would certainly reduce property values and would be vigorously opposed by the majority of manufactured home park property owners. A protracted planning process would be expected and possible legal challenges as well.

As discussed previously, there are already fairly substantial protections for residents of manufactured home parks provided in state and federal law. Those protections include:

1.    If a park is to be closed, the landlord must notify the tenants at lease 12 months before the closure date.

2.    Relocation assistance in amounts up to $12,000.00 may be available through the Washington State Department of Trade and Economic Development. This program is funded by the legislature.

3.    Manufactured homes must be allowed in all residential zones.

4.    Many aspects of manufactured home regulations are preempted by federal law.

**PLANNING AND FACILITIES DEPARTMENT**

In summary, staff recommends that the City not pursue a zoning classification that allows only one use, manufactured homes.  Instead, staff would expect this to be an issue in the current legislative session.  It may be more effective to lobby area legislators for additional protections on a state-wide level to address this urgent and important issue.

**PLANNING AND FACILITIES DEPARTMENT**

# EXHIBIT D

000017

**TUMWATER GENERAL GOVERNMENT COMMITTEE**
**MINUTES OF MEETING**
**January 24, 2008 Page 1**

| | |
|---|---|
| **CONVENE:** | 12:30 p.m. |
| **PRESENT:** | Chair Bruce Zeller and Councilmembers Karen Valenzuela and Ed Stanley. |

Staff Present:  City Administrator Doug Baker, City Attorney Karen Kirkpatrick, Planning and Facilities Director Mike Matlock, Development Services Director Roger Gellenbeck, and Recording Secretary Jessica Tate.

Chair Zeller described the process for public comments during the meeting.  He asked citizens to be considerate of time limitations when offering comments.

**MANUFACTURED HOME PARKS:**

Director Matlock reported the committee requested staff research the issue of establishing a new zoning classification allowing manufactured/mobile homes as the only allowed use.  Staff contacted a number of sources including the City Attorney and attorneys with Municipal Research and Services Center (MSRC).  In addition, some research was conducted of other jurisdictions taking similar action.

Through research in conjunction with MSRC, staff was only able to locate one city, Auburn, that has a zone exclusively for manufactured homes.  The zone, Residential Manufactured Home Park District, enacted in 1988, was likely not established because of the more recent conversion trend for manufactured home parks in the Puget Sound area.  The zone allows only manufactured homes and accessory uses.  The intent section of the zone only allows manufactured home parks in areas that are "...bordered on, contain physical features, or shall be planned and designed as part of a larger development incorporating other housing types in a manner which limits further expansion into adjacent areas".  It appears the zone was created to limit the expansion of manufactured home parks rather than protecting them.

Last year, Snohomish County adopted an ordinance allowing mobile home parks as its only use.  This action was in response to the same concerns regarding mobile home park conversion that has recently been addressed in Tumwater.  The program is voluntary and is intended to reduce the taxes assessed on the property to encourage the continuation of mobile home parks.  At this time, no requests for a voluntary rezone for mobile home park zoning have been received by Snohomish County.

Jim Doherty, an attorney with MSRC, was contacted regarding the legal viability of a zone classification that allows manufactured

TUMWATER GENERAL GOVERNMENT COMMITTEE
MINUTES OF MEETING
January 24, 2008 Page 2

homes exclusively.    Mr. Doherty has reservations about any
proposal limiting property to only one use in that such a regulation
could be vulnerable to a takings challenge. In manufactured home
parks there is the possibility the number of homes decreasing over
time. Because a property owner has the right to reasonable use of
their property, not allowing compatible residential uses could be
successfully challenged.

City Attorney Kirkpatrick was consulted as well.    Similar to Mr.
Doherty, Attorney Kirkpatrick has reservations with the approach
for the same reasons.  The City Attorney views the idea difficult to
defend legally because it would severely restrict the property
owner's ability to make use of and dispose of the property.

From a planning perspective, staff has some reservations as well.
The proposal may not be entirely consistent with the comprehensive
plan.    Objective 3.1.1 of the Housing Plan, page 17 states, "The
zoning code allows manufactured homes on single family lots in all
residential zones.  It is not the intent of this plan to promote the
development of traditional manufactured home parks; but rather, to
recognize that modular/manufactured housing is a viable form of
housing construction."

In addition, if a zone is created allowing only manufactured home
parks and it was applied to existing manufactured home parks, it
would certainly reduce property values and would be vigorously
opposed to by the majority of manufactured home park property
owners. A protracted planning process would be expected as well as
potential legal challenges.

As discussed previously, there are fairly substantial protections for
residents of manufactured home parks provided in state and federal
law. The protections include:

1.  If a park is to be closed, the landlord must notify the tenants at
    least 12 months before the closure date.

2.  Relocation assistance in amounts up to $12,000 may be
    available through the Washington State Department of
    Community, Trade and Economic Development.  The program
    is funded by the Legislature.

3.  Manufactured homes must be allowed in all residential zones.

4.  Federal law preempts many aspects of manufactured home
    regulations.

**TUMWATER GENERAL GOVERNMENT COMMITTEE**
**MINUTES OF MEETING**
**January 24, 2008 Page 3**

In summary, staff recommends not pursuing a zoning classification that allows only one use - manufactured homes. Instead, staff anticipates the issue to be considered during the legislative session. It may be more effective to lobby area legislators for additional protections on a statewide level to address the urgent and important issue.

Councilmember Stanley said an ordinance allowing specific zoning for manufactured housing could be contested in the future. The state and federal assistance measures are ludicrous in comparison to the actual costs and time associated with moving manufactured homes. Residents need protection from unscrupulous property owners requesting conversion based on their own needs. Action is warranted at the state level as well.

City Administrator Baker requested staff research the possibility of developing and enacting an overlay zone on properties, which would be processed and approved by the Council to avoid a takings issue. Director Matlock acknowledged the request.

**PUBLIC COMMENT**

**Gilbert le France, Manager, Western Plaza Mobile Home Park, Tumwater,** clarified that the current proper name is "manufactured housing community." The park property and areas surrounding it currently cannot be used in another manner, as the land contains soil issues and cannot support additional weight from any development.

**Nancy Partlow, 1841 Trosper Road, Tumwater,** stated the letter received from the owner of Western Plaza Mobile Home Park should have been included in the agenda packet for the meeting. Director Matlock reported the Council previously reviewed the letter. Ms. Partlow said the letter contained important information pertinent to the meeting.

Ms. Partlow stated she is unsure why staff believes the Snohomish County ordinance would not be sufficient for the City of Tumwater.

Staff must consider how manufactured housing fits in to the Tumwater Comprehensive Plan overall.

The statement, "fairly substantial protections for residents of manufactured home parks provided in state and federal law" is not viable. The fund is currently unfunded and would be of no assistance. The 12-month notification still results in residents uprooting their lives.

Ms. Partlow said she has been a resident of Western Plaza Mobile Home Park for 16 years. It's a wonderful community that should be

preserved in the City of Tumwater.

**Ray Ensley, 1841 Trosper Road, Tumwater,** stated the zone in Auburn, Washington must be successful, as it has been in place since 1988.

Mr. Ensley asked about requests to initiate a rezone. Director Matlock indicated property owners can initiate site specific rezones or petition the Council or the Planning Commission to do so.

Mr. Ensley referred to comments in the staff memo from Jim Doherty, and stated he has lived in Western Plaza Mobile Home Park for 24 years. Many residents have completed expensive upgrades to their mobile homes. If protection was implemented, more upgrade would be done. Residents pay over $400 per month plus utilities. The 12-month notification is not viable. Residents would have nowhere to go even if given a two-year notification. There is no other place to relocate mobile homes in Tumwater. The $12,000 federal assistance would only be enough for permits to place a mobile home. The issue should be resolved locally, as all mobile home parks are unique. He said he is disappointed City staff did not provide a more positive approach to solving the issue, but hopes the Council and Planning Commission will seek to provide protection for residents.

**Don Schumaker, Manufactured Housing Communities of Washington (MHCW),** reported he manages three manufactured housing communities. He commended City staff for their research regarding the issue. He referred to the letter sent to the City from MHCW Attorney John Woodring. The intent of MHCW is to preserved manufactured housing communities in Washington. Another goal is to deter discrimination surrounding manufactured housing communities regarding age and condition of some mobile homes. He invited committee members to contact Attorney Woodring or MHCW Executive Director Ken Spencer with any additional questions.

Councilmember Stanley said he is astonished that the MHCW attorney would send such a brief letter concurring with City staff's recommendation for not pursuing a zoning classification that allows only one use -manufactured homes. There is sufficient need to proceed with the issue. Protective zoning has been achieved elsewhere. It appears not to be a taking of property as property owners do have the right to request rezones. Residents deserve protection from the City. He said he hopes the committee recommends the City Attorney draft an ordinance to protect manufactured housing communities.

TUMWATER GENERAL GOVERNMENT COMMITTEE
MINUTES OF MEETING
January 24, 2008 Page 5

Councilmember Valenzuela agreed the issue is worth consideration. Manufactured home parks provide wonderful housing options for Tumwater residents that should be preserved. She said she does not understand the MHCW attorney's letter concurring with staff's recommendation not to pursue the manufactured housing zoning classification.

Chair Zeller said he would also like to see some additional work on the issue. There may be a solution to the issue through affordable housing. He said he hopes there is a viable solution to protect residents.

**CONSENSUS:** **The Tumwater General Government Committee directed staff to continue exploring all options regarding the possibility of establishing manufactured home zoning.**

Chair Zeller thanked everyone for attending the meeting. Another meeting will be held regarding the issue following additional staff review, which will provide additional opportunity for public comment.

**ORDINANCE NO. O2006-037, REGULATING LARGE DISTRIBUTION CENTER WAREHOUSES:** Director Matlock reported there has been interest in siting large distribution warehouses in Tumwater. Because the uses can be very large, they consume large amounts of industrially zoned land. There are concerns that the uses may provide relatively low job numbers because of the nature of the use that can also generate relatively high truck trips. The City Council directed staff to craft zoning code amendments restricting large distribution warehouses to areas that are most appropriate for that type of use, while minimizing impacts to surrounding uses. The amendments remain unchanged since the last meeting.

Staff also provided written responses to Councilmember Kmet and Councilmember Valenzuela's comments.

Chair Zeller reported that during a discussion with Mayor Osgood he recommended the Council hold a worksession regarding the issue, as there are many concerns to be addressed such as the truck route issue.

Councilmember Valenzuela referred to Councilmember Kmet's comment stating, "The ordinance currently defines large distribution warehouses being in excess of 200,000 square feet in size. The state sales tax exemption applies to warehouses of 200,000 square feet or more in size. The two definitions should be applied in the same way." She clarified that the intent is to differentiate between the

excess of 200,000 square feet because tax exemption is impacted. The intent is to encourage facilities less than 200,000 square feet. The ordinance should specify that the intent is not to start at 200,000 square feet and increase. Director Matlock advised that additional conditions can be added to the ordinance for the Council's consideration.

Chair Zeller clarified that the exemption only applies to the state portion of the sales tax.

Councilmember Stanley said he's not opposed to having tastefully planned communities of warehouse distribution centers. Developing an alternative route for trucks might ease concerns regarding Kimmie Road. The issue of Kimmie Road utilized as a major thoroughfare for large trucks appears to be the overarching issue of public concern.

City Administrator Baker indicated the Tumwater Public Works Committee discussed the Kimmie Road issue during its last meeting. Staff will provide information for discussion during the next Council worksession.

Councilmember Valenzuela said she does not support potential future replacement of large warehouses with transportation terminals. Director Matlock responded that the issue usually impacts cities with rail to truck or port to rail situations, which Tumwater does not have.

Councilmember Valenzuela said she would support Councilmember Kmet's comment to reduce the 385-truck trip standard to 100 truck trips.

Councilmember Valenzuela said she's not satisfied with staff's response to Councilmember Kmet's comment about requiring power connections for truck hook-up to avoid engine idling. The City must anticipate and address worst-case scenarios in terms of all issues to protect residents.

Chair Zeller indicated that adequate mitigation of issues eases concerns regarding square footage. Larger warehouses have less environmental impact, as there is more space surrounding the structure. The goal is to retain a vital community while dealing with the need for this type of facility in the area.

Councilmember Stanley noted the committee's tour of northern facilities eased many concerns. The facilities were tastefully developed with the exception of the Target warehouse located in

**TUMWATER GENERAL GOVERNMENT COMMITTEE**
**MINUTES OF MEETING**
**January 24, 2008 Page 7**

Lacey.

Councilmember Valenzuela said she wouldn't want to see a replication of the Lacey Target warehouse in Tumwater.

**PUBLIC COMMENT:** **Bill Mandeville, 613 Ensley Lane SE, Tumwater,** reported the Tumwater Planning Commission had extensive discussions about the issue during January and February 2007. The intent behind the 50-foot setback provision was to create a sufficient buffer to deter the impact of the facilities to overpower the streetscape, which would also create wildlife corridors, noise protection, tree preservation, and greenways for air preservation. He said he hopes to see the provision retained in the ordinance.

**Ted Knapp, Tumwater Land Partners,** encouraged the use of front yard setbacks. Appropriate streetscapes make it difficult to determine the size of the facility when developed properly.

The provision for 70% impervious surface is too restrictive. The facilities toured by the committee were approximately 85% impervious surface. A requirement for 70% would also be inconsistent with growth management policies in terms of effective land use.

Electric hook-ups for trucks are not provided in this part of the country. Most are located in the eastern United States. In the case of refrigerated trucks, it's the unit on the trailer that remains on not the truck. The unit plugs into the building, but there are issues with noise. Approximately 1% of trucks in the area are refrigerated.

The sales tax exemption law has been in place for five to seven years. Mr. Knapp indicated he has built many facilities and has not been able to take advantage of the exemption.

Councilmember Valenzuela clarified that the point does not pertain to the issue of sales tax revenue but that the legislation is an unfavorable incentive for developers to build larger facilities.

Mr. Knapp advised that I-5 generates much more emissions than a warehouse facility could ever generate. He said he looks forward to the Council worksession regarding the issue for more discussion.

**Virginia Balcolm, 8640 Burns Drive SW, Tumwater,** expressed concerns about air pollution associated with warehouse distribution facilities. The emissions from the diesel trucks will cause negative impacts to the health of residents, especially children, and air quality. The ordinance should be stricter in terms of protecting the

health and safety of residents.

**John Fedor, P.O. Box 14338, Tumwater,** distributed a letter containing his comments involving:

- Residential development and warehouses may be neighbors. In Lacey, new homes are being built across the street from the main truck entrance to the Target distribution warehouse. The Target warehouse is over two million square feet, much larger than anything proposed in Tumwater.
- Truck traffic is not a problem based on comments from Jerry Litt, City of Lacey.
- Retaining Kimmie Street as a truck route would merely be continuing its use as a truck route for several decades. One Kimmie Street resident told me that she knew several hundred log trucks used Kimmie Street every day even when she was growing up. That was okay with her since her father earned his living at Tumwater Lumber and it meant he could keep working.
- Retaining Kimmie Street as a truck route and allowing large warehouses (or the same size or larger manufacturing buildings) to be built as a permitted use would result in developers having to rebuild and improve Kimmie Street.
- An improved Kimmie Street could have an earthen berm on each side of the road. A doublewide sidewalk built on the residential side of the berm could have a bicycle path as part of that sidewalk. The earthen berm would be between Kimmie Street and the sidewalk. This would create safety. This would also create an amenity that may wind up more attractive than any other place in Tumwater.
- Trucks will probably still travel on Kimmie Street even if it's not a designated truck route just as the City of Sumner found after it built a separate truck route.
- Truck traffic was not a consideration in limiting the size of warehousing in Lacey as reported by Jerry Litt.
- Without Kimmie Street being a truck route and without large warehouses, Kimmie Street will probably not be improved for a very long time. Trucks will probably continue to use Kimmie Street regardless.

It would appear to be in the City of Tumwater's best interest and in the best interest of attracting development to the City's light industrial lands in this area to continue to use Kimmie Street as one of the City's designated truck routes. This will be true whether large distribution centers are built or not and whether the use of the land is warehousing or manufacturing.

**TUMWATER GENERAL GOVERNMENT COMMITTEE**
**MINUTES OF MEETING**
**January 24, 2008 Page 9**

**Mike Wurtsbaugh, Tumwater Land Partners,** said it's refreshing to hear Chair Zeller's comment about issues boiling down to proper mitigation of issues. Tumwater has very strong ordinances in place that relies on the SEPA process to address environmental impacts. City staff needs strong direction to send consistent messages to developers in the future.

**Dave Douglas, GVA Kidder Mathews,** stated recent Department of Ecology studies have shown wood stoves generate the most air pollution in the area. Pollution generated by trucks and ships in the Port of Tacoma area is on a downward trend.

**Michael Cade, Economic Development Council,** stated the tour was beneficial in terms of viewing active warehouse distribution center parks. Discussion of the issues is occurring significantly throughout western Washington. These uses can be very compatible with residential uses. Areas such as Bothell, Washington have very high-end homes built next to warehousing parks. This business has the fastest growing wages in the United States, and the facilities are very technically advanced in terms of environmental impacts.

**Heber Kennedy, Port of Olympia,** stated the Port hopes all options are considered in determining the best truck routes. The goal is to develop a solution that works best for the community, the Port, and developers.

Chair Zeller reported additional discussion of the issues will take place during the next Council worksession. The intent is to move toward resolution of issues.

City Administrator Baker said he will contact members to set a date for a meeting regarding the Park Impact Fee issue. Chair Zeller requested discussing the manufactured home park issue during a March 2008 meeting to ensure public comment is not rushed. City Administrator Baker acknowledged the request.

**ADJOURNMENT:**     **With there being no further business, Chair Zeller adjourned the meeting at 1:59 p.m.**

Prepared by Jessica Tate, Recording Secretary
Puget Sound Meeting Services