1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8

9

10

11

LAUREL PARK COMMUNITY, LLC, a Washington
limited liability company; TUMWATER ESTATES
INVESTORS, a California limited partnership;
VELKOMMEN MOBILE PARK, LLC, a Washington
limited liability company; and MANUFACTURED
HOUSING COMMUNITIES OF WASHINGTON, a
Washington non-profit corporation,

No. 3:09−cv−05312−BHS

DECLARATION OF JOHN
WOODRING

12

Plaintiffs,

v.

13

14

CITY OF TUMWATER, a municipal corporation,

Defendant.

15

16

John Woodring declares and states follows:

17

1.      I am over eighteen years of age, competent to testify, and familiar with the facts

18

herein.

19

2.      I am the attorney for the Manufactured Housing Communities of Washington

20

("MHCW").   Commencing in 2007, I represented MHCW and its member communities

21

regarding the City of Tumwater ("Tumwater") amendments to its Comprehensive Plan and

22

zoning code to create a new manufactured home park district ("District").   I attended every

23

public hearing and meeting held by Tumwater, except one, over a two year period.   I prepared

24

documents submitted into Tumwater's record on MHCW's legal position on the new District

25

26

Declaration of John Woodring - 1
000190

1    and testified at the public hearings.

2        3.      It became readily apparent at the outset of the amendment process that the focus

3    of Tumwater's City Council was to restrict the six targeted mobile home parks in perpetuity in

4    an exclusive zone to allegedly preserve the housing of the subject park tenants.  As noted by

5    City Council member Ed Stanley in a public meeting, this new zoning scheme would keep

6    "unscrupulous property owners (from) requesting conversion(s) of MHPs based on their own

7    needs."  Ex. D at 3, attached to Missall Decl.

8        4.      From the beginning, Tumwater disregarded legal precedent in Washington

9
     holding that park owners are not responsible as a class for providing affordable housing.

10   Numerous legal analyses were provided to Tumwater, including a 30-page opinion prepared for

11   MHCW that supported the view that exclusive zones were unconstitutional.  *Guimont v. Clarke*,

12   121 Wn.2d 586, 854 P.2d 1 (1993), and *Manufactured Hous. Cmtys. of Washington v. State*,

13   142 Wn.2d 347, 356-361, 13 P.3d 183 (2000), were discussed in detail.  Tumwater's City

14   Attorney and planning staff agreed that placing manufactured home parks in an exclusive use

15   zone would create legal problems.  Ex. C at 3-4, attached to Missall Decl.  The City Attorney

16   advised that a zone in which more than one use is allowed is preferable rather than a zone

17   restricted to one use.  Ex. K at 11, attached to Missall Decl.  To support this position, the first

18
     draft of the zoning ordinance created a single-use, but notably voluntary, District.  Ex. L,

19
     attached to Missall Decl.

20
         5.      A voluntary District was not good enough for the Tumwater City Council.  To

21

22   overcome the legal infirmities with a single-use District burdening a specific class of

23   landowners with providing affordable housing, Tumwater made a series of amendments to

24   eliminate "preservation and protection" language in the ordinances to camouflage and neutralize

25

26   Declaration of John Woodring - 2

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630

000191

1    Tumwater's real goals and intent. Ex. G at 4-8, attached to Missall Decl.

2         6.    The Planning Commission proposed these amendments, which were

3    subsequently adopted by Tumwater's City Council.  Planning Commissioner Mandeville

4    emphasized that "the comprehensive plan and zoning ordinance amendments should de-

5    emphasize affordable housing aspects and emphasize statutory language of the Growth

6    Management Act ("GMA"), such as providing sufficient land for manufactured housing and

7    recognizing manufactured housing as a traditional housing type." *Id.* at 2.  He added that "the

8    intent is . . . de-emphasizing the City's goal for manufactured home park owners preserving

9    affordable housing." *Id.*  Contradictorily, the Commission identified new tools to restrict park

10   owners, such as requiring a mobile home park closure permit and adding restrictive rezone

11   criteria. *Id.* at 2-3.  Commissioner Kirkpatrick suggested removing three smaller parks from the

12   zoning ordinance because they "do not meet the spirit of the proposed ordinance" and "don't

13   appear to have a future as MHPs." *Id.* at 3.  There is no evidence about why this was the case,

14   especially given the asserted need to preserve parks and have more affordable housing.

15        7.    When the City Council considered the Planning Commission amendments,

16   significantly, the staff report containing the "strikeout-underline" used to show the actual

17   changes from the previous drafts, did not contain the removal of the pervasive "protect and

18   preserve" language. *Compare* Ex. M at 42, 45, 47-48, attached to Missall Decl. *with* Ex. N at

19   13, 16, 18, and 20, also attached to Missall Decl.  Thus, to anyone who might become interested

20   in this topic as of the January 2009 Tumwater City Council meeting where the amended

21   ordinances were adopted, it would be as if none of the preceding seven or eight Tumwater

22   General Government Committee, Planning Commission, and Council meetings, and none of the

23   multiple ordinance drafts, had ever taken place.

26   Declaration of John Woodring - 3

000192

8.     These actions are important to the Court's analysis of Tumwater's actions because they depict how Tumwater was aware of and concerned about the legal ramifications of some park owners bearing the burden of preserving affordable housing with the exclusive District. The zoning ordinance (Ex. M at 89-101, attached to Missall Decl.) was further revised to add numerous self-serving statements about compliance with GMA and other topics. Not surprisingly, there is no reference to the undisputed fact that no park in Tumwater has closed, or that no park owner has issued a notice to close their park. The "factual" predicates recited in the zoning ordinance as justification for Tumwater's action are incomplete and one-sided.

9.     Finally, Tumwater's predisposition to adopt the restrictive amendments, regardless of facts and testimony, was evident when Planning Commissioner Mandeville took the very unusual step of testifying to the Council on final passage of the ordinances. He said clearly that the "ordinance . . . essentially prohibits dissolving the (landlord-tenant) relationship without some consideration and public deliberation," that "the ordinance is a first step," and that Tumwater must quickly adopt a park closure permit as "a way to intervene and mediate the conflict between the property owners." Ex. O at 5-6, attached to Missall Decl. Commissioner Mandeville obviously had no qualms about using Tumwater's legal planning and zoning authority as a tool to interfere in the business relationship between mobile home park owners and tenants. What Commissioner Mandeville was missing, of course, is that the landlord-tenant relationship is a private contractual relationship and that it is not Tumwater's role to favor one over the other.

10.     The fact that Tumwater did not give adequate legal consideration to the constitutional property rights of the impacted park owners subject to the exclusive District was borne out in an appeal to the Western Washington Growth Management Hearings Board filed

Declaration of John Woodring - 4

000193

1    by MHCW and three of the MHPs challenging the Tumwater ordinances. In *Laurel Park*

2    *Community LLC, et al., v. City of Tumwater*, WWGMHB No. 09-2-0010, the Board concluded

3    in a precedent-setting manner that "In adopting the ordinances under appeal the City failed to

4    comply with the process set out in RCW 36.70A.370(2)." Ex. P at 16-20, attached to Missall

5    Decl. RCW 36.70A.370(2) states:

6
7           Local governments that are required or choose to plan under RCW
            36.70A.040 and state agencies shall utilize the process established by
8           subsection (1) of this section to assure that the proposed regulatory or
            administrative actions *do not result in an unconstitutional taking of private*
9           *property.*

10   (Emphasis added).

11          Subsection (1) provides:

12          The state attorney general shall establish by October 1, 1991, an orderly,
            consistent process, including a checklist if appropriate, that better enables
13          state agencies and local governments to evaluate proposed regulatory or
            administrative actions to *assure that such actions do not result in an*
14          *unconstitutional taking of private property. It is not the purpose of this*
            *section to expand or reduce the scope of private property protections provided*
15          *in the state and federal Constitutions.* The attorney general shall review and
            update the process at least on an annual basis to maintain consistency with
16          changes in case law.

17   (Emphasis added).

18
19          11.    The Board further ruled on a motion for reconsideration that Tumwater had not

20   given adequate time and consideration to whether its actions regarding the ordinances

21   constituted a property rights taking under RCW 36.70A.020(6). Ex. Q at 3-5, attached to

22   Missall Decl. RCW 36.70A.020(6) is one of the planning goals under GMA, and states:

23          (6) Property rights. Private property shall not be taken for public use without
            just compensation having been made. The property rights of landowners shall
24          be protected from arbitrary and discriminatory actions.

25          12.    I have represented MHCW since 1984. Prior to the enactment of Tumwater's

26   Declaration of John Woodring - 5                     Talmadge/Fitzpatrick
                                                           18010 Southcenter Parkway
     000194                                               Tukwila, Washington 98188-4630

1   ordinances, 27 mobile home parks had been preserved in Washington since 1983 without resort

2   to restrictive and exclusive zoning.  Of the preservced MHCs, five are owned by federal non-

3   profits, eight are owned by local housing authorities, seven are resident-owned condominiums,

4   and six are resident-owned cooperatives.  These sales have always involved a willing seller and

5   willing buyer relationship recognizing the sanctity of the park owner's property rights.

6          13.     The Washington State Legislature has never authorized local governments to

7   adopt mandatory zoning to preserve parks.  To the contrary, the Legislature has only adopted

8   voluntary and financial based incentives to address mobile home park preservation.  For

9   example, Chapter 59.20 RCW governs the relationship between the park owner as the landlord

10  and the resident as the tenant.  In 2008, the Legislature amended this law to enable tenants, local

11  governments, and other eligible housing organizations to purchase parks that are for sale.  In the

12  event that a park was being sold, the bill required park owners to provide a notice of sale to all

13  the tenants, the officers of any tenant organization, the state's Office of Manufactured Housing,

14  the local government, any local housing authority, and the Washington State Housing Finance

15  Commission.  RCW 59.20.300.  The bill directed park owners "to negotiate in good faith with

16  qualified tenant organizations and eligible organizations."  RCW 59.20.305.  The bill also

17  provided that sales of parks to tenants or housing organizations would be exempt from paying

18  real estate excise tax.  RCW 82.45.010(3)(q).  In passing ESSHB 1621, the Legislature stated its

19  intent as follows:

20

21

22              It is the intent of the legislature to encourage and facilitate the preservation of
                existing manufactured/mobile home communities *in the event of voluntary*
23              *sales* of manufactured/mobile home communities and, to the extent necessary
                and possible, to involve manufactured/mobile home community tenants or an
24              eligible organization representing the interests of tenants, such as a nonprofit
                organization, housing authority, or local governments, in the preservation of
25              manufactured/mobile home communities.

26  Declaration of John Woodring - 6

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630

Chapter 116, Laws of 2008, § 1. (ESSHB 1621) (emphasis added).

The statutory authority provided by the Legislature to cities like Tumwater that were concerned about park conversions was to enable residents and local governments to get early notice of sales, and to provide incentives for the city or residents to purchase the park using various financing tools and incentives.

14.     Chapter 59.21 RCW establishes eligibility requirements for tenant relocation funds and provides procedures for the use of those funds.   In this law, the Legislature affirmatively recognized the constitutional limitations placed by the Washington Supreme Court on imposing regulations solely on park owners to benefit MHC tenants.   The legislative intent section reads: "The legislature recognizes that, in the decision of *Guimont v. Clarke*, 121 Wn.2d (1993), the Washington supreme court held the mobile home relocation assistance program of chapter 59.21 RCW invalid for its monetary burden on mobile home park owners."   RCW 59.21.006.   In response to these constitutional limitations, the Legislature did not grant local government's new zoning authority, but rather, acknowledged that park closures may occur and sought to "provide a mechanism for assisting mobile home tenants to relocate to suitable alternative sites when the mobile home park in which they reside is closed or converted to another use." RCW 59.21.005.   To provide funding assistance, the Legislature adopted a $100 fee on the purchase of manufactured/mobile homes located in mobile home parks. RCW 59.21.055.   Owners of relocated homes are given a maximum of $7,500 in relocation costs for single mobile homes, or $12,000 for double mobile homes.   RCW 59.21.021(3).

15.     Chapter 59.22 RCW contains the state's resident-owned park program now administered by the Department of Commerce.   The Legislature recognized the concerns with

Declaration of John Woodring - 7

000106

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630

park closures and responded with a *voluntary* program through which park residents can obtain public assistance to purchase MHCs that may be sold or closed: "It is the intent of the legislature . . . to *encourage and facilitate* the conversion of mobile home parks to resident ownership . . ." RCW 59.22.010 (emphasis added).  The specific mechanisms in this law include a mobile home park purchase account, loan eligibility standards and repayment terms, and technical assistance for loan recipients. *See* RCW 59.22.030; 032; 034; 039.

16.  During the ordinances' adoption process, Tumwater staff reviewed the various laws adopted by the Legislature regarding mobile home parks and determined that:

> As discussed previously, there are already fairly substantial protections for residents of manufactured home parks provided in state and federal law.

Those protections include:

> 1. If a park is to be closed, the landlord must notify the tenants at least [sic] 12 months before the closure date.
>
> 2. Relocation assistance in amounts up to $12,000 may be available through the Washington State Department of Trade and Economic Development. This program is funded by the Legislature.

Ex. C at 2, attached to Missall Decl.  This staff memo concluded by stating that "staff recommends that the City not pursue a zoning classification that allows only one use, manufactured homes." *Id.* at 3.  This recommendation was ignored by Tumwater's City Council.

17.  Overall, the Legislature has clearly recognized the concerns over park closures and has responded with a number of different statutory tools to address this issue.  However, it has never authorized local government to use zoning authority to prohibit park conversions. The Legislature has repeatedly enacted voluntary mechanisms consistent with the clear language of the GMA Housing Goal to "encourage" protection of existing housing stock.

Declaration of John Woodring - 8

I declare under penalty of perjury that the foregoing is true and correct.  Executed at

Olympia, Washington this 22 day of January, 2010.

John Woodring

Declaration of John Woodring - 9

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630