UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LAUREL PARK COMMUNITY, LLC, a Washington limited liability company; TUMWATER ESTATES INVESTORS, a California limited partnership; VELKOMMEN MOBILE PARK, LLC, a Washington limited liability company; and MANUFACTURED HOUSING COMMUNITIES OF WASHINGTON, a Washington non-profit corporation,

Plaintiffs,

v.

CITY OF TUMWATER, a municipal corporation,

Defendant.

No. C09-05312BHS

DECLARATION OF JAMES ANDERSEN IN SUPPORT OF PARTIAL SUMMARY JUDGMENT

JAMES ANDERSEN declares and states as follows:

1. I am over the age of eighteen, competent to testify, and familiar with the facts herein.

2. I am a partner in Velkommen Mobile Park, LLC, which owns Velkommen Park, a manufactured housing community located in Tumwater, Washington. My family has owned and managed Velkommen Park since we developed it in 1975.

3. My family developed Velkommen Park long before Tumwater's manufactured home park ordinances took effect. We bought the property in reliance on the zoning permitted at the time. The property was then zoned *multi*-family medium density residential. Until

Declaration of James Andersen - 1

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630

000109

1 Tumwater's ordinances went into effect, under the zoning then in effect, we were permitted to

2 use our property for a variety of uses, including single and multi-family dwellings, manufactured

3 home parks, residential planned unit developments, and any combination of permitted uses. We

4 anticipated using the property as a mobile home park so long as that use was economically

5 viable. We expected to be able to turn to other economically productive uses at our discretion or

6 to sell it if it became economically unviable.

7      3.     Under Tumwater's existing zoning, we can now only use our property for

8 manufactured home parks, parks, trails, open space areas, support facilities, and child care

9 facilities. We are also permitted to construct one single-family detached residence per existing

10 single lot of record. Our property is situated on approximately 11.13 acres of land within

11 Tumwater and contains 39 mobile home pads. But we would be allowed to construct only one

12 single-family detached residence on the property if we removed the existing manufactured

13 homes. The additional uses to which we are permitted to put our property under the existing

14 zoning are not economically viable uses of the property because some, like parks and trails, earn

15 no income at all. Others, like support and child care facilities, require an investment with little

16 probability of return and licensure to be possible. A limited number of other primarily public or

17 institutional uses, such as churches, cemeteries, and essential public facilities are also possible

18 under the current zoning. But a church or a cemetery is hardly a viable economic use; the

19 possibility of any return on such use is illusory. This is all the more obvious when the value of

20 our property and its income-generating ability as a church or a cemetery is compared to its value

21 and income-generating ability when used for multi-family housing. None of the conditional uses

22 permitted under Tumwater's existing zoning are *viable* economic uses of our property, especially

23 when considering that many of those uses would require additional discretionary permitting by

24 Declaration of James Andersen - 2

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630

000200

1    Tumwater. Acquiring the necessary permits from Tumwater for such uses seems unlikely. By

2    mandating that Velkommen Park remain a mobile home park, Tumwater has deprived us of

3    viable use of our property and damaged its fair market value.

4         4.    During the spring of 2008, we listed Velkommen Park for sale with NW Park

5    Brokerage, Inc. in Seattle. We received an offer to purchase the park for $1.75 million in

6    May 2008; the sale was to close on July 31, 2008. A true and correct copy of that offer is

7    attached to my declaration as exhibit A. In September 2008, we received a second offer to

8    purchase the park for $1.6 million; the sale was to close on November 28, 2008. A true and

9    accurate copy of that offer is attached to my declaration as exhibit B. Neither sale closed.

10

11        5.    After Tumwater publicly announced that it intended to rezone Velkommen Park

12   from its then-existing medium-density residential zoning to an exclusive mobile home park zone

13   district, the prospective purchasers advised us that they did not wish to close their respective

14   offers. To date, we have not received any additional purchase offers for the park.

15        I declare under penalty of perjury under the laws of the State of Washington that the

16   foregoing is true and correct. Executed at Olympia, Washington this 26 day of

17   January, 2010.

18

19

20                           James Andersen

21

22

23

24

25

26   Declaration of James Andersen - 3

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630

# EXHIBIT A

000202

DEC-22-2004 01:21P FROM:                                    TO:12538138133          P.2/6

## NORTHWEST PARK BROKERAGE

### Real Estate Purchase Agreement
### With Earnest Money Provision

### THIS IS A LEGALLY BINDING CONTRACT. READ ALL PAGES CAREFULLY BEFORE SIGNING.

The undersigned Purchaser, Fenton Properties LLC and or assignees agrees to buy and the Seller, Mrs. Phyllis Anderson (Velkommen Mobile Park LLC) agrees to sell, the Real Property located at 2535 70th AVE.SW, Tumwater, Washington, commonly known as Velkommen Home Park (39 spaces).

Legal Description: To be inserted by written approval of Feasibility study.

1) Northwest Park Brokerage, as Agent for Seller, acknowledges receipt of an Earnest Money Payment of One Hundred Thousand and no/100 Dollars ($75,000.00) in the form of a promissory note. Within five business days Agent shall open escrow and deposit this Earnest Money (or after promissory note has been cashed, as per Paragraph 8 below) with Transnation Title and Escrow Company along with a copy of this Purchase and Sale Agreement. The Escrow Account shall be interest bearing with interest accruing to the Purchaser. The Escrow Company is hereby directed to prepare escrow instructions and to close escrow according to the terms and conditions of this Purchase Agreement. The Close of Escrow (or "Closing Date") shall occur on or before July 31, 2008. Escrow fees shall be paid 50% by Purchaser and 50% by Seller, Seller to pay excise tax. All other closing costs to be paid in accordance with the customs of the county in which the Property is located. Chicago title and Escrow shall be the closing agent.

2) PURCHASE PRICE: The Purchase Price for the Property shall be One Million Seven Hundred Twenty Five Thousand /100 Dollars ($1,750,000.00), allocated as follows:

3) DOWN PAYMENT: The down payment for the Property shall be $425,000.00 including Earnest Money.

4) FINANCING: The balance of the Purchase Price, minus the down payment, shall be contingent upon obtaining additional financing in the form of:

Seller will provide financing for the balance in the amount of One Million Three Hundred Thousand and no/100 Dollars ($1,300,000.00) at an interest rate of Six per cent (6%) with a 30 year amortization and a 15 year call, interest only or principal and interest payment at Buyer's option. Payments shall be due on the 5th day of each month, with a 10 day grace period. If payment is not received within 10 days of the due date a penalty of 5% of the normal payment shall be levied. Said Note and Deed of Trust will be on standard title company forms, and be in first lien position on all of the property.  Said note will be assumable with Seller's approval, not to be unreasonable withheld.  The note has no payment penalty and may be cashed out at anytime without the Seller's approval. Buyer to provide proof of insurance and current tax payments annually to the Seller. Seller shall be named at all times as an additional insured and as loss payee on all insurance policies.

Seller(s) Initials: _____  _____  Date: _____          1          Buyer(s) Initials: _____ Date: 5/12/08

000203

**7C) OTHER INSPECTIONS:** Both parties to be in agreement to a written water/well arrangement that provides potable water source to the park at a cost of $15 per unit per month (paid by Buyer to Seller monthly). Service cost to provide adequate quality water and maintain water lines to each park home site and existing water lines within park.

**8) DEPOSIT INCREASE/CASH PROMISSORY NOTE:** Upon removal of contingencies 7A&B, Purchaser shall convert the promissory note to cash and deposit into escrow within (3) business days. If Purchaser requires interest bearing account, then Purchaser hereby submits his/her Social Security number: _____

**9) WARRANTIES:** Seller warrants to the best of Seller's knowledge that there are no known material defects of the property, that the Property is in conformance with local laws and codes, that the property is composed of 39 total legal units, that the Property is not in a flood zone, that there are no hazardous materials on the properties, that all properties are serviced by private utilities, that the electrical system provides 200 amp service for each mobile home space. The sewer and water system are in good working order. Sewer system will be pumped cleaned within 15 days of closing. Any exceptions so noted here:

**10) RISK OF LOSS:** If, prior to closing, the property is destroyed or materially damaged by fire or other casualty, this Purchase Agreement shall be voidable at Purchaser's option.

**11) LIQUIDATED DAMAGES:** Because it would be extremely difficult to affix actual damages in the event of a default by the Purchaser, both Purchaser and Seller agree that the Purchaser's Earnest money (not to exceed 5% of the Purchaser Price) shall be deemed as damages for the Seller if the Purchaser defaults with no legal excuse, that Purchaser shall forfeit said earnest money to Seller and that said forfeiture shall be the sole remedy for the Seller.

**12) ARBITRATION:** In the event that this contract comes under dispute, Purchaser, Seller and Agent agree to resolve said controversy by final binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

**13) ATTORNEY'S FEES:** In any litigation, arbitration or other legal proceeding which may arise between the Purchaser, Seller or Agent, the prevailing party shall be entitled to recover its costs of arbitration and/or reasonable legal fees in addition to any other relief it may be entitled to.

**14) SELLER EXCHANGE:** Purchaser agrees to cooperate with Seller if Seller elects to complete a tax-deferred exchange under IRC Section 1031. Purchaser shall not assume, and Seller shall agree to hold harmless the Purchaser, from any liability or additional cost in said exchange. This Purchase Agreement is not contingent upon Seller finding an exchange property.

**15) PURCHASER'S EXCHANGE:  :** If Purchaser is buying the Subject Property as part of a IRC Section 1031 exchange, Seller agrees to cooperate in effecting said exchange.  Purchaser agrees to hold harmless the Seller from any liability or any expense associated with said exchange. This Purchase Agreement is not contingent upon the sale of the Purchaser's property.

**16) AGENCY:** William Jackson, Broker, Northwest Park Brokerage Inc. is representing the Buyer and Seller; both parties acknowledges receipt of the agency law booklet.

Seller(s) Initials ____  ____  Date: _____          3          Buyer(s) Initials _____  _____  Date: 5/14/08

DEC-22-2004 01:22P FROM:                            TO:12538138133                    P.4/6

17) OTHER BROKERS: In the event another broker is involved in the sale of the Subject Property, Agent shall have no liability for errors or omissions committed by said broker.

18) BROKER DISCLAIMER: Broker makes no warranties or representations regarding the accuracy of information provided by Broker to other parties. Broker is not qualified to give legal advice and suggests that each party consult with there own attorney, accountant, or other adviser for further advice. Purchaser is a licensed Real Estate broker in the state of Washington representing himself and not the Seller.

19) TIME: Time is of the essence of this Agreement.

20) NOTICES: All notices shall be given in writing to both the Agent and to the other party as listed by party's name below.

21) ADDENDA: Any addendum attached hereto and initialed by both parties shall be deeded as being incorporated herein by reference. There are no other oral or written understandings or warranties except as set forth herein.

22) GOVERNING LAW: This Agreement shall be governed in accordance with the laws of the State of Washington.

23) OTHER TERMS AND CONDITIONS:

24) ACCEPTANCE AND EFFECTIVE DATE: Unless Seller accepts this offer in writing and delivers to Purchaser or Purchaser's Agent, by May 15, 2008 (5pm), then this Agreement shall be null and void, the Earnest Money shall be returned to the Purchaser, and neither side shall have any further obligation to the other. The "Effective Date" of this contract shall be the latter of a) the date on which the Seller signs this agreement or b) the date any final counter offer is signed by both Purchaser and Seller. The undersigned Purchaser offers and agrees to purchase the Subject Property under terms and conditions herein stated. This offer is made on the 12th day of May, 2008. The Purchaser acknowledges a receipt of an executed copy of this agreement. Any counter will be valid for 48 hours from date of change; otherwise agreement will be null and void.

Seller(s) Initials: _____   _____   Date: _____                4                Buyer(s) Initials: _____   Date: 5/12/08

000205

Fenton Properties LLC and/or Assigns          Fentonbr@msn.com
Brooks R. Fenton , Managing Member     -

PURCHASER: _____     ADDRESS: _22022_
            Buyer name

DATE: _5/12/08_                        TELEPHONE: _206. 947.1846_

PURCHASER: _____     ADDRESS: _____
            Buyer name                          _____

DATE: _____          TELEPHONE: _____


## SELLER'S ACCEPTANCE


Seller acknowledges receipt of a Purchaser-signed copy of this Agreement. Seller agrees to pay a commission of Three percent (3%) of the sales price per listing agreement. Payable to NW Park Brokerage Inc. at the time of closing.


SELLER: _____     ADDRESS: _____
            Seller name                         _____

DATE: _____          TELEPHONE: _____

SELLER: _____     ADDRESS: _____
            Seller name                         _____

DATE: _____          TELEPHONE: _____


Seller(s) Initials: _____  Date: _____                    Buyer(s) Initials: _____  Date: 5/12/08
                                                    5

000206

AGENT: NORTHWEST PARK BROKERAGE
2375 130th AV NE Suite 102
Bellevue, WA 98005
888-205-8281
Email billj@nwparks.com

By: ______________ Date: 5.12.08

# EXHIBIT B

000208

NWMLS Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 1 of 12

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

# COMMERCIAL AND INVESTMENT REAL ESTATE
## PURCHASE AND SALE AGREEMENT

*This has been prepared for submission to your attorney for review and approval prior to signing.*
*No representation is made by licensee as to its sufficiency or tax consequences.*

1
2 Washington Street Properties, LLC and or assigns                  Reference Date: __September  12 , 2008__
3 Phyllis Anderson _____ ("Buyer") agrees to buy and
4 following terms, the commercial real estate and all improvements thereon (collectively, the "Property") commonly
5 known as 2535 70th Ave SW, _____
6 City of ____Tumwater_____ , _____Thurston_____ County, Washington, legally
7 described on attached Exhibit A. The Reference Date above is intended to be used to reference this Agreement, and
8 is not the date of "Mutual Acceptance." Mutual Acceptance is defined in Section 23 below.

9  **1. PURCHASE PRICE.** The total purchase price is One Million Six Hundred Thousand
10    Dollars ( ___$1,600,000.00___ ) payable as follows (check only one):

11    ☐ All cash at closing with no financing contingency.

12    ☐ All cash at closing contingent on new financing in accordance with the Financing Addendum (attach CBA
13    Form PS_FIN).

14    ☑ i160,000.0(/_____ % of the purchase price in cash at closing with the balance of the purchase price
15    paid as follows (**check one or both, as applicable):** ☐ Buyer's assumption of the outstanding principal balance
16    as of the Closing Date of a first lien note and deed of trust (or mortgage), or real estate contract, in accordance
17    with the Financing Addendum (attach CBA Form PS_FIN); ☑ Buyer's delivery at closing of a promissory note for
18    the balance of the purchase price, secured by a deed of trust encumbering the Property, in accordance with the
19    Financing Addendum (attach CBA Form PS_FIN).

20    ☑ Other: _SEE ADDENDUM_____
21    _____

22  **2. EARNEST MONEY.** The earnest money in the amount of _____$2,000.00_____ shall
23    be in the form of ☐Cash ☐Personal check ☑Promissory note (attach CBA Form EMN) ☐Other:_____ .
24    The earnest money shall be held by ☐Selling Licensee ☑Closing Agent.
25    Buyer shall deliver the earnest money no later than:
26    ☑ ___5___ days after Mutual Acceptance.
27    ☐ On the last day of the Feasibility Period defined in Section 5 below.
28    ☐ Other: _____

29    Selling Licensee may, however, transfer the earnest money to Closing Agent.

30    If the earnest money is to be held by Selling Licensee and is over $10,000, it shall be deposited to:  ☐ Selling
31    Licensee's pooled trust account (with interest paid to the State Treasurer) ☐ A separate interest bearing trust
32    account in Selling Licensee's name. The interest, if any, shall be credited at closing to Buyer. If this sale fails to
33    close, whoever is entitled to the earnest money is entitled to interest.

34    Selling Licensee shall deposit any check to be held by Selling Licensee within 3 days after receipt or Mutual
35    Acceptance, whichever occurs later. Buyer agrees to pay financing and purchase costs incurred by Buyer.
36    Unless otherwise provided in this Agreement, the earnest money shall be applicable to the purchase price.

37  **3. EXHIBITS AND ADDENDA.** The following Exhibits and Addenda are made a part of this Agreement:
38    ☑ Exhibit A - Legal Description
39    ☑ Earnest Money Promissory Note, CBA Form EMN
40    ☑ Promissory Note, LPB Form No. 28A/CBA Form N-1A
41    ☐ Short Form Deed of Trust, LPB Form No. 20
42    ☑ Deed of Trust Rider, CBA Form DTR
43    ☐ Utility Charges Addendum, CBA Form UA

Initials: BUYER: _WA_  DATE: _9/12/08_      SELLER: _____  DATE: _____

BUYER: _____  DATE: _____      SELLER: _____  DATE: _____      -182-

000209

CLS Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 2 of 12

**COMMERCIAL AND INVESTMENT REAL ESTATE**
**PURCHASE AND SALE AGREEMENT**
**(CONTINUED)**

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

44 ☐ FIRPTA Certification, CBA Form 22E
45 ☑ Assignment and Assumption, CBA Form PS-AS
46 ☑ Addendum/Amendment, CBA Form PSA
47 ☐ Back-Up Addendum, CBA Form BU-A
48 ☐ Vacant Land Addendum, CBA Form VLA
49 ☐ Financing Addendum, CBA Form PS_FIN
50 ☐ Tenant Estoppel Certificate, CBA Form PS_TEC
51 ☐ Defeasance Addendum, CBA Form PS_D
52 ☐ Other _____

53 **4. SELLER'S UNDERLYING FINANCING.** Unless Buyer is assuming Seller's underlying financing, Seller shall be
54 responsible for confirming the existing underlying financing is not subject to any "lock out" or similar covenant
55 which would prevent the lender's lien from being released at closing. In addition, Seller shall provide Buyer notice
56 prior to the end of the Feasibility Period if Seller is required to substitute securities for the Property as collateral
57 for the underlying financing (known as "defeasance"). If Seller provides this notice of defeasance to Buyer, then
58 the parties shall close the transaction in accordance with the process described in CBA Form PS_D or any
59 different process identified in Seller's defeasance notice to Buyer.

60 **5. FEASIBILITY CONTINGENCY.** Buyer's obligations under this Agreement are conditioned upon Buyer's
61 satisfaction in Buyer's sole discretion, concerning all aspects of the Property, including its physical condition; the
62 presence of or absence of any hazardous substances; the contracts and leases affecting the property; the
63 potential financial performance of the Property; the availability of government permits and approvals; and the
64 feasibility of the Property for Buyer's intended purpose. This Agreement shall terminate and Buyer shall receive a
65 refund of the earnest money unless Buyer gives written notice to Seller within _____ days (30 days if not filled in)
66 of Mutual Acceptance stating that this condition is satisfied. If such notice is timely given, the feasibility
67 contingency stated in this Section 5 shall be deemed to be satisfied. As used in this Agreement, the term
68 "Feasibility Period" shall mean the period beginning upon Mutual Acceptance and ending upon the satisfaction or
69 waiver of the feasibility contingency.

70 **a. Books, Records, Leases, Agreements.** Seller shall make available for inspection by Buyer and its agents
71 within _____ days (2 days if not filled in) after Mutual Acceptance all documents in Seller's possession or control
72 relating to the ownership, operation, renovation or development of the Property, excluding appraisals or other
73 statements of value, and including: statements for real estate taxes, assessments, and utilities for the last three
74 years and year to date; property management agreements and any other agreements with professionals or
75 consultants; leases or other agreements relating to occupancy of all or a portion of the Property and a
76 suite-by-suite schedule of tenants, rents, prepaid rents, deposits and fees; plans, specifications, permits,
77 applications, drawings, surveys, and studies; and maintenance records, accounting records and audit reports for
78 the last three years and year to date; and "Vendor Contracts" which shall include maintenance or service
79 contracts, and installments purchase contracts or leases of personal property or fixtures used in connection with
80 the Property. Buyer shall determine within the Feasibility Period: (i) whether Seller will agree to terminate any
81 objectionable Vendor Contracts; and (ii) whether Seller will agree to pay any damages or penalties resulting from
82 the termination of objectionable Vendor Contracts. Buyer's waiver of the Feasibility Contingency shall be deemed
83 Buyer's acceptance of all Vendor Contracts which Seller has not agreed in writing to terminate. Buyer shall be
84 solely responsible for obtaining any required consents to such assumption and the payment of any assumption
85 fees. Seller shall cooperate with Buyer's efforts to receive any such consents but shall not be required to incur
86 any out-of-pocket expenses or liability in doing so. Seller shall transfer the Vendor Contracts as provided in
87 Section 17 of this Agreement. Any leases, contract or agreements that run with title to the Property are
88 addressed in Section 6(b) below.

89 **b. Access.** Seller shall permit Buyer and its agents, at Buyer's sole expense and risk to enter the Property at
90 reasonable times subject to the rights of and after legal notice to tenants, to conduct inspections concerning the
91 Property and improvements, including without limitation, the structural condition of improvements, hazardous
92 materials, pest infestation, soils conditions, sensitive areas, wetlands, or other matters affecting the feasibility of
93 the Property for Buyer's intended use. Buyer shall schedule any entry onto the Property with Seller in advance

Initials: BUYER: _WSB_____ DATE: _9/12/08_    SELLER: _____ DATE _____

BUYER: _____ DATE: _____    SELLER: _____ DATE: _____    −184−

000210

LS Form 24
A Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 3 of 12

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

**COMMERCIAL AND INVESTMENT REAL ESTATE**
**PURCHASE AND SALE AGREEMENT**
**(CONTINUED)**

94 and shall comply with Seller's reasonable requirements including those relating to security, confidentiality, and
95 disruption of Seller's tenants. Buyer shall not perform any invasive testing including environmental inspections
96 beyond a phase I assessment or contact the tenants or property management personnel without obtaining the
97 Seller's prior written consent, which shall not be unreasonably withheld. Buyer shall restore the Property and
98 improvements to the same condition they were in prior to inspection. Buyer shall be solely responsible for all
99 costs of its inspections and feasibility analysis and has no authority to bind the Property for purposes of statutory
100 liens. Buyer agrees to indemnify and defend Seller from all liens, costs, claims, and expenses, including
101 attorneys' and experts' fees, arising from or relating to entry onto or inspection of the Property by Buyer and its
102 agents. This agreement to indemnify and defend Seller shall survive closing. Buyer may continue to enter the
103 Property in accordance with the foregoing terms and conditions after removal or satisfaction of the feasibility
104 contingency only for the purpose of leasing or to satisfy conditions of financing.

105 c. Buyer waives the right to receive a seller disclosure statement ("Form 17") if required by Chapter 64.06 RCW.
106 However, if Seller would otherwise be required to provide Buyer with a Form 17, and if the answer to any of the
107 questions in the section of the Form 17 entitled "Environmental" would be "yes," then buyer does not waive the
108 receipt of the "Environmental" section of the Form 17 which shall be provided by Seller.

109 **6.  TITLE INSURANCE.**

110 a. **Title Report.** Seller authorizes Buyer, its Lender, Listing Agent, Selling Licensee and Closing Agent, at
111 Seller's expense, to apply for and deliver to Buyer a ☑ standard ☐ extended (standard, if not completed)
112 coverage owner's policy of title insurance. If an extended coverage owner's policy is specified, Buyer shall pay
113 the increased costs associated with that policy including the excess premium over that charged for a standard
114 coverage policy, and the cost of any survey required by the title insurer. The title report shall be issued by
115 <u>Thurston County Title</u> (Seller's choice, if not completed).

116 b. **Permitted Exceptions.** Buyer shall notify Seller of any objectionable matters in the title report or any
117 supplemental report within the earlier of: (1) twenty (20) days after mutual acceptance of this Agreement; or (2)
118 the expiration of the Feasibility Period. This Agreement shall terminate and Buyer shall receive a refund of the
119 earnest money, less any costs advanced or committed for Buyer, unless within five (5) days of Buyer's notice of
120 such objections (1) Seller agrees to remove all objectionable provisions or (2) Buyer notifies Seller that Buyer
121 waives any objections which Seller does not agree to remove. If any new title matters are disclosed in a
122 supplemental title report, then the preceding termination, objection and waiver provisions shall apply to the new
123 title matters except that Buyer's notice of objections must be delivered within five (5) days of delivery of the
124 supplemental report and Seller's response or Buyer's waiver must be delivered within two (2) days of Buyer's
125 notice of objections. The closing date shall be extended to the extent necessary to permit time for these notices.
126 Buyer shall not be required to object to any mortgage or deed of trust liens, or the statutory lien for real property
127 taxes, and the same shall not be deemed to be Permitted Exceptions; provided that the lien securing any
128 financing which Buyer has agreed to assume shall be a Permitted Exception. Except for the foregoing, those
129 provisions not objected to or for which Buyer waived its objections shall be referred to collectively as the
130 "Permitted Exceptions." Seller shall cooperate with Buyer and the title company to clear objectionable title matters
131 but shall not be required to incur any out-of-pocket expenses or liability other than payment of monetary
132 encumbrances not assumed by Buyer and proration of real property taxes, and Seller shall provide an owner's
133 affidavit containing the information and reasonable covenants requested by the title company. The title policy
134 shall contain no exceptions other than the General Exclusions and Exceptions common to such form of policy
135 and the Permitted Exceptions.

136 **7.  CLOSING OF SALE.** This sale shall be closed on <u>11/28/2008</u>
137 ("closing") by <u>Thurston County Title</u> ("Closing Agent") (Seller
138 shall select the Closing Agent, if not completed). Buyer and Seller shall deposit with Closing Agent by Noon on
139 the scheduled closing date all instruments and monies required to complete the purchase in accordance with this
140 Agreement. "Closing" shall be deemed to have occurred when the deed is recorded and the sale proceeds are
141 available to Seller. Time is of the essence in the performance of this Agreement. Sale proceeds shall be

Initials: BUYER: _____ DATE: 9/12/08   SELLER: ___ ___ DATE: _____

BUYER: _____ DATE: _____   SELLER: _____ DATE: _____   —185—

000211

MLS Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 4 of 12

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

## COMMERCIAL AND INVESTMENT REAL ESTATE
## PURCHASE AND SALE AGREEMENT
### (CONTINUED)

142 considered available to Seller notwithstanding they may not be disbursed to Seller until the first business day
143 following closing. Notwithstanding the foregoing, if Seller informed Buyer during the Feasibility Period that
144 Seller's underlying financing requires that it be defeased and may not be paid off, then closing shall be
145 conducted in accordance with the three-day closing process described in CBA Form PS_D. This Agreement is
146 intended to constitute escrow instructions to Closing Agent. Buyer and Seller will provide any supplemental
147 instructions requested by Closing Agent provided the same are consistent with this Agreement.

148 **8. CLOSING COSTS AND PRORATIONS.** Seller shall deliver an updated rent roll to Closing Agent not later than
149 two (2) days before the scheduled closing date in the form required by Section 5(a) and any other information
150 reasonably requested by Closing Agent to allow Closing Agent to prepare a settlement statement for closing.
151 Seller certifies that the information contained in the rent roll is correct as of the date submitted. Seller shall pay
152 the premium for the owner's standard coverage title policy. Buyer shall pay the excess premium attributable to
153 any extended coverage or endorsements requested by Buyer, and the cost of any survey required in connection
154 with the same. Seller and Buyer shall each pay one-half of the escrow fees. Real estate excise taxes shall be
155 paid by the party who bears primary responsibility for payment under the applicable statute or code, which is
156 typically Seller. Real and personal property taxes and assessments payable in the year of closing; collected rents
157 on any existing tenancies; interest; utilities; and other operating expenses shall be pro-rated as of closing. If
158 tenants pay any of the foregoing expenses directly, then Closing Agent shall only pro rate those expenses paid
159 by Seller. Buyer shall pay to Seller an additional sum equal to any utility deposits or mortgage reserves
160 for assumed financing for which Buyer receives the benefit after closing. Buyer shall pay all costs of financing
161 including the premium for the lender's title policy. The real estate commission is due on closing or upon Seller's
162 default under this Agreement, whichever occurs first, and neither the amount nor due date thereof can be
163 changed without Listing Agent's written consent. If the Property was taxed under a deferred classification prior to
164 closing, then Seller shall pay all taxes, interest, penalties, deferred taxes or similar items which result from
165 removal of the Property from the deferred classification. At closing, all refundable deposits on tenancies shall be
166 credited to Buyer or delivered to Buyer for deposit in a trust account if required by state or local law. Buyer shall
167 pay all sales or use tax applicable to the transfer of personal property included in the sale.

168 **a. Unpaid Utility Charges.** Buyer and Seller ☐WAIVE ☑DO NOT WAIVE  the right to have the Closing
169 Agent disburse closing funds necessary to satisfy unpaid utility charges affecting the Property pursuant to RCW
170 60.80. If "do not waive" is checked, then attach CBA Form UA ("Utility Charges" Addendum). If neither box is
171 checked, then the "do not waive" option applies.

172 **9. POST-CLOSING ADJUSTMENTS, COLLECTIONS, AND PAYMENTS.** After closing, Buyer and Seller shall
173 reconcile the actual amount of revenues or liabilities upon receipt or payment thereof to the extent those items
174 were prorated or credited at closing based upon estimates. Any bills or invoices received by Buyer after closing
175 which relate to services rendered or goods delivered to the Seller or the Property prior to closing shall be paid by
176 Seller upon presentation of such bill or invoice. At Buyer's option, Buyer may pay such bill or invoice and be
177 reimbursed the amount paid plus interest at the rate of 12% per annum beginning fifteen (15) days from the date
178 of Buyer's written demand to Seller for reimbursement until such reimbursement is made. Notwithstanding the
179 foregoing, if tenants pay certain expenses based on estimates subject to a post-closing reconciliation to the
180 actual amount of those expenses, then Buyer shall be entitled to any surplus and shall be liable for any credit
181 resulting from the reconciliation. Rents collected from each tenant after closing shall be applied first to rentals
182 due most recently from such tenant for the period after closing, and the balance shall be applied for the benefit
183 of Seller for delinquent rentals owed for a period prior to closing. The amounts applied for the benefit of Seller
184 shall be turned over by Buyer to Seller promptly after receipt. Seller shall be entitled to pursue any lawful
185 methods of collection of delinquent rents but shall have no right to evict tenants after closing.

186 **10. OPERATIONS PRIOR TO CLOSING.** Prior to closing, Seller shall continue to operate the Property in the
187 ordinary course of its business and maintain the Property in the same or better condition than as existing on the
88 date of Mutual Acceptance, but shall not be required to repair material damage from casualty except as other-
89 wise provided in this Agreement. After the Feasibility Period, Seller shall not enter into or modify existing rental
90 agreements or leases (except that Seller may enter into, modify, extend, renew or terminate residential rental

Initials:  BUYER: _WB_  DATE: _9/2/08_      SELLER:_____   ___  DATE:_____

BUYER:_____  DATE:_____      SELLER:_____  DATE:_____  —186—

MLS Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 5 of 12

**COMMERCIAL AND INVESTMENT REAL ESTATE
PURCHASE AND SALE AGREEMENT
(CONTINUED)**

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

191 agreements or residential leases in the ordinary course of its business), service contracts, or other agreements
192 affecting the Property which have terms extending beyond closing without first obtaining Buyer's consent, which
193 shall not be unreasonably withheld.

194 **11. POSSESSION.** Buyer shall be entitled to possession ☑ on closing ☐ _____
195 _____ (on closing, if not completed. Buyer shall accept possession subject to all
196 tenancies disclosed to Buyer during the Feasibility Period.

197 **12. SELLER'S REPRESENTATIONS.** Except as disclosed to or known by Buyer prior to the satisfaction or waiver
198 of the feasibility contingency stated in Section 5 above, including in the books, records and documents made
199 available to Buyer, or in the title report or any supplemental report or documents referenced therein, Seller
200 represents to Buyer that, to the best of Seller's actual knowledge, each of the following is true as of the date
201 hereof : (a) Seller is authorized to enter into the Agreement, to sell the Property, and to perform its obligations
202 under the Agreement; (b) The books, records, leases, agreements and other items delivered to Buyer pursuant
203 to this Agreement comprise all material documents in Seller's possession or control regarding the operation and
204 condition of the Property; (c) Seller has not received any written notices that the Property or the business
205 conducted thereon violate any applicable laws, regulations, codes and ordinances; (d) Seller has all certificates
206 of occupancy, permits, and other governmental consents necessary to own and operate the Property for its
207 current use; (e) There is no pending or threatened litigation which would adversely affect the Property or Buyer's
208 ownership thereof after closing; (f) There is no pending or threatened condemnation or similar proceedings
209 affecting the Property, and the Property is not within the boundaries of any planned or authorized local
210 improvement district; (g) Seller has paid (except to the extent prorated at closing) all local, state and federal taxes
211 (other than real and personal property taxes and assessments described in Section 8 above) attributable to the
212 period prior to closing which, if not paid, could constitute a lien on Property (including any personal property), or
213 for which Buyer may be held liable after closing; (h) Seller is not aware of any concealed material defects in the
214 Property except as disclosed to Buyer in writing during the Feasibility Period; (i) There are no Hazardous
215 Substances (as defined below) currently located in, on, or under the Property in a manner or quantity that
216 presently violates any Environmental Law (as defined below); there are no underground storage tanks located on
217 the Property; and there is no pending or threatened investigation or remedial action by any governmental agency
18 regarding the release of Hazardous Substances or the violation of Environmental Law at the Property. As used
19 herein, the term "Hazardous Substances" shall mean any substance or material now or hereafter defined or
20 regulated as a hazardous substance, hazardous waste, toxic substance, pollutant, or contaminant under any
21 federal, state, or local law, regulation, or ordinance governing any substance that could cause actual or
22 suspected harm to human health or the environment ("Environmental Law"). The term "Hazardous Substances"
23 specifically includes, but is not limited to, petroleum, petroleum by-products, and asbestos.

4 If prior to closing Seller or Buyer discovers any information which would cause any of the representations above
5 to be false if the same were deemed made as of the date of such discovery, then the party discovering the same
6 shall promptly notify the other party in writing. If the newly-discovered information will result in costs or liability to
7 Buyer in excess of the lesser of $100,000 or five percent (5%) of the purchase price, or will materially adversely
8 affect Buyer's intended use of the Property, then Buyer shall have the right to terminate the Agreement and
9 receive a refund of its earnest money provided Buyer elects to do so within five (5) days of discovering or
) receiving written notice of the new information. Nothing in this paragraph shall prevent Buyer from pursuing its
remedies against Seller if Seller had actual knowledge of the newly-discovered information such that a
: representation provided for above was false.

**13. AS-IS.** Except for those representations and warranties specifically included in this Agreement: (i) Seller makes
no representations or warranties regarding the Property; (ii) Seller hereby disclaims, and Buyer hereby waives,
any and all representations or warranties of any kind, express or implied, concerning the Property or any portion
thereof, as to its condition, value, compliance with laws, status of permits or approvals, existence or absence of
hazardous material on site, occupancy rate or any other matter of similar or dissimilar nature relating in any way
to the Property, including the warranties of fitness of a particular purpose, tenantability, habitability and use; (iii)

Initials: BUYER: _WSB_ DATE: _9/2/08_     SELLER: _____ DATE: _____
BUYER: _____ DATE: _____     SELLER: _____ DATE: _____     -187-

000213

MLS Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 6 of 12

**COMMERCIAL AND INVESTMENT REAL ESTATE
PURCHASE AND SALE AGREEMENT
(CONTINUED)**

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

239  Buyer otherwise takes the Property "AS IS;" and (iv) Buyer represents and warrants to Seller that Buyer has
240  sufficient experience and expertise such that it is reasonable for Buyer to rely on its own pre-closing inspections
241  and investigations.

242  **14. PERSONAL PROPERTY.**

243  **a.** This sale includes all right, title and interest of Seller to the following tangible personal property: ☐ None
244  ☑ That portion of the personal property located on and used in connection with the Property, which Seller will
245  itemize in an Addendum to be attached to this Agreement within ten (10) days of Mutual Acceptance (None, if not
246  completed). The value assigned to the personal property shall be $_____(if
247  not completed, the County-assessed value if available, and if not available, the fair market value determined by
248  an appraiser selected by the Listing Agent and Selling Licensee). Seller warrants title to, but not the condition of,
249  the personal property and shall convey it by bill of sale.

250  **b.** In addition to the leases and Vendor Contracts assumed by Buyer pursuant to Section 5(a) above, this sale
251  includes all right, title and interest of Seller to the following intangible property now or hereafter existing with
252  respect to the Property including without limitation: all rights-of-way, rights of ingress or egress or other interests
253  in, on, or to, any land, highway, street, road, or avenue, open or proposed, in, on, or across, in front of, abutting
254  or adjoining the Property; all rights to utilities serving the Property; all drawings, plans, specifications and other
255  architectural or engineering work product; all governmental permits, certificates, licenses, authorizations and
256  approvals; all rights, claims, causes of action, and warranties under contracts with contractors, engineers,
257  architects, consultants or other parties associated with the Property; all utility, security and other deposits and
258  reserve accounts made as security for the fulfillment of any of Seller's obligations; any name of or telephone
259  numbers for the Property and related trademarks, service marks or trade dress; and guaranties, warranties or
260  other assurances of performance received.

261  **15. CONDEMNATION AND CASUALTY.** Seller bears all risk of loss until closing, and thereafter Buyer shall bear the
262  risk of loss. Buyer may terminate this Agreement and obtain a refund of the earnest money if improvements on
263  the Property are destroyed or materially damaged by casualty before closing, or if condemnation proceedings
264  are commenced against all or a portion of the Property before closing. Damage will be considered material if the
265  cost of repair exceeds the lesser of $100,000 or five percent (5%) of the purchase price stated in this
266  Agreement. Alternatively, Buyer may elect to proceed with closing in which case at closing Seller shall assign to
267  Buyer all claims and right to proceeds under any property insurance policy and shall credit to Buyer at closing
268  the amount of any deductible provided for in the policy.

269  **16. FIRPTA - TAX WITHHOLDING AT CLOSING.** Closing Agent is instructed to prepare a certification (CBA or
270  NWMLS Form 22E, or equivalent) that Seller is not a "foreign person" within the meaning of the Foreign
271  Investment in Real Property Tax Act. Seller agrees to sign this certification. If Seller is a foreign person, and this
272  transaction is not otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required
273  amount to the Internal Revenue Service.

274  **17. CONVEYANCE.** Title shall be conveyed by a Statutory Warranty Deed subject only to the Permitted Exceptions.
275  If this Agreement is for conveyance of Seller's vendee's interest in a Real Estate Contract, the Statutory
276  Warranty Deed shall include a contract vendee's assignment sufficient to convey after acquired title. At closing,
277  Seller and Buyer shall execute and deliver to Closing Agent CBA Form No. PS-AS Assignment and Assumption
278  Agreement transferring all leases and Vendor Contracts assumed by Buyer pursuant to Section 5(a) and all
279  intangible property transferred pursuant to Section 14(b).

280  **18. NOTICES AND COMPUTATION OF TIME.** Unless otherwise specified, any notice required or permitted in, or
281  related to, this Agreement (including revocations of offers and counteroffers) must be in writing. Notices to Seller
82  must be signed by at least one Buyer and must be delivered to Seller and Listing Agent with a courtesy copy to
83  any other party identified as a recipient of notices in Section 28 of this Agreement. A notice to Seller shall be
84  deemed delivered only when received by Seller, Listing Agent, or the licensed office of Listing Agent. Notices to
85  Buyer must be signed by at least one Seller and must be delivered to Buyer with a copy to Selling Licensee with

Initials: BUYER: _W S8_ DATE: _9/12/08_   SELLER: _____ DATE: _____

BUYER: _____ DATE: _____   SELLER: _____ DATE: _____   –188–

000214

MLS Form 24
BA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 7 of 12

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

**COMMERCIAL AND INVESTMENT REAL ESTATE**
**PURCHASE AND SALE AGREEMENT**
**(CONTINUED)**

286 a courtesy copy to any other party identified as a recipient of notices in Section 28 of this Agreement.  A notice
287 to Buyer shall be deemed delivered only when received by Buyer, Selling Licensee, or the licensed office of
288 Selling Licensee. Selling Licensee and Listing Agent have no responsibility to advise of receipt of a notice
289 beyond either phoning the represented party or causing a copy of the notice to be delivered to the party's
290 address provided in this Agreement. Buyer and Seller must keep Selling Licensee and Listing Agent advised of
291 their whereabouts to receive prompt notification of receipt of a notice. If any party is not represented by a
292 licensee, then notices must be delivered to and shall be effective when received by that party.

293 Unless otherwise specified in this Agreement, any period of time in this Agreement shall mean Pacific Time and
294 shall begin the day after the event starting the period and shall expire at 5:00 p.m. of the last calendar day of the
295 specified period of time, unless the last day is a Saturday, Sunday or legal holiday as defined in RCW 1.16.050,
296 in which case the specified period of time shall expire on the next day that is not a Saturday, Sunday or legal
297 holiday. Any specified period of five (5) days or less shall not include Saturdays, Sundays or legal holidays.
298 Notwithstanding the foregoing, references to specific dates or times or number of hours shall mean those dates,
299 times or number of hours.

300 **19. AGENCY DISCLOSURE.** At the signing of this Agreement,
301 Selling Licensee _____
302 represented _____
303 and the Listing Agent   NA                    Buyer
304 represented _____

305 If Selling Licensee and Listing Agent are different salespersons affiliated with the same Broker, then Seller and
306 Buyer confirm their consent to Broker acting as a dual agent. If Selling Licensee and Listing Agent are the same
307 person representing both parties, then Seller and Buyer confirm their consent to that person and his/her Broker
308 acting as dual agents. If Selling Licensee, Listing Agent, or their Broker are dual agents, then Seller and Buyer
309 consent to Selling Licensee, Listing Agent and their Broker being compensated based on a percentage of the
310 purchase price or as otherwise disclosed on an attached addendum. Buyer and Seller confirm prior receipt of
311 the pamphlet entitled "The Law of Real Estate Agency."

312 **20. ASSIGNMENT.** Buyer ☑ may ☐ may not (may not, if not completed) assign this Agreement, or Buyer's
313 rights hereunder, without Seller's prior written consent, unless provided otherwise herein.  If the "may not" option
314 is selected and the words "and/or assigns" or similar words are used to identify the Buyer, then this Agreement
315 may be assigned with notice to Seller but without Seller's consent only to an entity which is controlled by or under
316 common control with the Buyer identified in this Agreement. Any other assignment requires Seller's consent. The
317 party identified as the initial Buyer shall remain responsible for those obligations of Buyer stated in this
318 Agreement notwithstanding any assignment and, if this Agreement provides for Seller to finance a portion of the
319 purchase price, then the party identified as the initial Buyer shall guarantee payment of the Seller financing.

320 **21. DEFAULT AND ATTORNEY'S FEE.**
321 **a. Buyer's default.** In the event Buyer fails, without legal excuse, to complete the purchase of the Property,
322 then ( **check one** ):

323 ☑ Seller may terminate this Agreement and keep the earnest money as liquidated damages as the sole and
324 exclusive remedy available to Seller for such failure; or

325 ☐ Seller may, at its option, (a) terminate this Agreement and keep as liquidated damages the earnest money as
326 the sole and exclusive remedy available to Seller for such failure, (b) bring suit to specifically enforce this Agreement and recover any incidental damages, or (d)
327 damages, (c) bring suit against Buyer for Seller's actual
328 pursue any other rights or remedies available at law or equity.

Initials:  BUYER: _WSP_   DATE: _9/2/08_   SELLER: ___   DATE: ___
BUYER: _____ DATE: _____   SELLER: _____ DATE: _____

000215                                                          -189-

NWLS Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 8 of 12

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

**COMMERCIAL AND INVESTMENT REAL ESTATE**
**PURCHASE AND SALE AGREEMENT**
**(CONTINUED)**

329  **b. Seller's default.** In the event Seller fails, without legal excuse, to complete the sale of the Property, then
330  ( **check one** ):

331  ☐ As Buyer's sole remedy, Buyer may either (a) terminate this Agreement and recover all earnest money or
332  fees made by Buyer whether or not the same are identified as refundable or applicable to the purchase price; or
333  (b) bring suit to specifically enforce this Agreement and recover incidental damages provided Buyer must file
334  suit within sixty (60) days of the scheduled date of closing or any earlier date Seller has informed Buyer in
335  writing that Seller will not proceed with closing; or

336  ☑ Buyer may, at its option, (a) bring suit against Seller for Buyer's actual damages, (b) bring suit to specifically
337  enforce this Agreement and recover any incidental damages, or (c) pursue any other rights or remedies
338  available at law or equity.

339  Neither Buyer nor Seller may recover consequential damages such as lost profits. If Buyer or Seller institutes
340  suit against the other concerning this Agreement, the prevailing party is entitled to reasonable attorneys' fees and
341  expenses. In the event of trial, the amount of the attorney's fee shall be fixed by the court. The venue of any suit
342  shall be the county in which the Property is located, and this Agreement shall be governed by the laws of the
343  state where the Property is located.

344  **22. MISCELLANEOUS PROVISIONS.**

345  **a. Complete Agreement.** The Agreement and any addenda and exhibits to it state the entire understanding of
346  Buyer and Seller regarding the sale of the Property. There are no verbal or other written agreements which
347  modify or affect the Agreement.

348  **b. Counterpart Signatures.** The Agreement may be signed in counterpart, each signed counterpart shall be
349  deemed an original, and all counterparts together shall constitute one and the same agreement.

350  **c. Electronic Delivery.** Electronic delivery of documents (e.g., transmission by facsimile or email) including
351  signed offers or counteroffers and notices shall be legally sufficient to bind the party the same as delivery of an
352  original. At the request of either party, or the Closing Agent, the parties will replace electronically delivered offers
353  or counteroffers with original documents.

354  **d. Section 1031 Like-Kind Exchange.** If either Buyer or Seller intends for this transaction to be a part of a
355  Section 1031 like-kind exchange, then the other party agrees to cooperate in the completion of the like-kind
356  exchange so long as the cooperating party incurs no additional liability in doing so, and so long as any expenses
357  (including attorneys fees and costs) incurred by the cooperating party that are related only to the exchange are
358  paid or reimbursed to the cooperating party at or prior to closing. Notwithstanding Section 20 above, any party
359  completing a Section 1031 like-kind exchange may assign this Agreement to its qualified intermediary or any
360  entity set up for the purposes of completing a reverse exchange.

361  **23. ACCEPTANCE; COUNTEROFFERS.** Seller has until midnight of _____
362  (if not filled in, the third business day following the last Buyer signature date below) to accept this offer, unless
363  sooner withdrawn. If this offer is not timely accepted, it shall lapse and the earnest money shall be refunded to
364  Buyer. If either party makes a future counteroffer, the other party shall have until 5:00 p.m. on the _____
365  business day (if not filled in, the second business day) following its receipt to accept the counteroffer, unless
366  sooner withdrawn. If the counteroffer is not timely accepted or countered, this Agreement shall lapse and the
367  earnest money shall be refunded to the Buyer. No acceptance, offer or counteroffer from the Buyer is effective
368  until a signed copy is received by the Seller, the Listing Agent or the licensed office of the Listing Agent. No
369  acceptance, offer or counteroffer from the Seller is effective until a signed copy is received by the Buyer, the
370  Selling Licensee or the licensed office of the Selling Licensee. "Mutual Acceptance" shall occur when the last
371  counteroffer is signed by the offeree, and the fully-signed counteroffer has been received by the offeror, his or
372  her licensee, or the licensed office of the licensee. If any party is not represented by a licensee, then notices
373  must be delivered to and shall be effective when received by that party.

Initials: BUYER: _~~_ _~~_   DATE: _9/12/05_   SELLER: __ __ DATE: _____

BUYER: _____ DATE: _____ SELLER: _____ DATE: _____ **-190-**

000216

NMLS Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 9 of 12

### COMMERCIAL AND INVESTMENT REAL ESTATE
### PURCHASE AND SALE AGREEMENT
### (CONTINUED)

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

374  **24. INFORMATION TRANSFER.** In the event this Agreement is terminated, Buyer agrees to deliver to Seller within
375  ten (10) days of Seller's written request copies of all materials received from Seller and any non-privileged plans,
376  studies, reports, inspections, appraisals, surveys, drawings, permits, application or other development work
377  product relating to the Property in Buyer's possession or control as of the date this Agreement is terminated.

378  **25. CONFIDENTIALITY.** Until and unless closing has been consummated, Buyer and Seller shall follow reasonable
379  measures to prevent unnecessary disclosure of information obtained in connection with the negotiation and
380  performance of this Agreement. Neither party shall use or knowingly permit the use of any such information in
381  any manner detrimental to the other party.

382  **26. SELLER'S ACCEPTANCE AND BROKERAGE AGREEMENT.** Seller agrees to sell the Property on the terms
383  and conditions herein, and further agrees to pay a commission in a total amount computed in accordance with
384  the listing or commission agreement. If there is no written listing or commission agreement, Seller agrees to pay
385  a commission of __o__ % of the sales price or $_____. The commission shall be apportioned between
386  Listing Agent and Selling Licensee as specified in the listing or any co-brokerage agreement. If there is no listing
387  or written co-brokerage agreement, then Listing Agent shall pay to Selling Licensee a commission of ____ % of
388  the sales price or $_____. Seller assigns to Listing Agent and Selling Licensee a portion of the sales
389  proceeds equal to the commission. If the earnest money is retained as liquidated damages, any costs advanced
390  or committed by Listing Agent or Selling Licensee for Buyer or Seller shall be reimbursed or paid therefrom, and
391  the balance shall be paid one-half to Seller and one-half to Listing Agent and Selling Licensee according to the
392  listing agreement and any co-brokerage agreement. In any action by Listing Agent or Selling Licensee to
393  enforce this Section, the prevailing party is entitled to reasonable attorneys' fees and expenses. Neither Listing
394  Agent nor Selling Licensee are receiving compensation from more than one party to this transaction unless
395  disclosed on an attached addendum, in which case Buyer and Seller consent to such compensation. The
396  Property described in attached Exhibit A, is commercial real estate. Notwithstanding Section 25 above, the pages
397  containing this Section, the parties' signatures and an attachment describing the Property may be recorded.

398  **27. LISTING AGENT AND SELLING LICENSEE DISCLOSURE.** EXCEPT AS OTHERWISE DISCLOSED IN
399  WRITING TO BUYER OR SELLER, THE SELLING LICENSEE, LISTING AGENT, AND BROKERS HAVE NOT
400  MADE ANY REPRESENTATIONS OR WARRANTIES OR CONDUCTED ANY INDEPENDENT INVESTIGATION
401  CONCERNING THE LEGAL EFFECT OF THIS AGREEMENT. BUYER'S OR SELLER'S FINANCIAL STRENGTH,
402  BOOKS, RECORDS, REPORTS, STUDIES, OR OPERATING STATEMENTS, OR OTHER MATTERS RELATING
403  TO THE PROPERTY, INCLUDING WITHOUT LIMITATION, THE PROPERTY'S ZONING, BOUNDARIES, AREA,
404  COMPLIANCE WITH APPLICABLE LAWS (INCLUDING LAWS REGARDING ACCESSIBILITY FOR DISABLED
405  PERSONS), OR HAZARDOUS OR TOXIC MATERIALS INCLUDING MOLD OR OTHER ALLERGENS. SELLER
406  AND BUYER ARE EACH ADVISED TO ENGAGE QUALIFIED EXPERTS TO ASSIST WITH THESE DUE
407  DILIGENCE AND FEASIBILITY MATTERS, AND ARE FURTHER ADVISED TO SEEK INDEPENDENT LEGAL
408  AND TAX ADVICE RELATED TO THIS AGREEMENT.

Initials: BUYER: _WSB_   DATE: _9/2/08_     SELLER: ____   ____ DATE: ____

BUYER: _____   DATE: _____     SELLER: _____   DATE: _____

000217

NMLS Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 10 of 12

**COMMERCIAL AND INVESTMENT REAL ESTATE
PURCHASE AND SALE AGREEMENT
(CONTINUED)**

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

**28. INDENTIFICATION OF THE PARTIES.** The following is the contact information for the parties involved in this Agreement.

<u>**Buyer**</u>

Contact: <u>Washington Street Properties, LLC</u>
Address: _____
_____
Business Phone: ( )_____
Mobile Phone: ( )_____
Fax: ( )_____
Email: _____

<u>**Seller**</u>

Contact: <u>Phyllis Anderson</u>
Address: _____
_____
Business Phone: ( )_____
Mobile Phone: ( )_____
Fax: ( )_____
Email: _____

<u>**Selling Licensee**</u>

Contact: _____
Address: _____
_____
Business Phone: ( )_____
Mobile Phone: ( )_____
Fax: ( )_____
Email: _____

<u>**Listing Agent**</u>

Contact: _____
Address: _____
_____
Business Phone: ( )_____
Mobile Phone: ( )_____
Fax: ( )_____
Email: _____

<u>**Courtesy Copy of Notices to Buyer to:**</u>

Contact: _____
Address: _____
_____
Business Phone: ( )_____
Mobile Phone: ( )_____
Fax: ( )_____
Email: _____

<u>**Courtesy Copy of Notices to Seller to:**</u>

Contact: _____
Address: _____
_____
Business Phone: ( )_____
Mobile Phone: ( )_____
Fax: ( )_____
Email: _____

Initials: BUYER: _WSP_  DATE: _9/12/08_    SELLER: _____ DATE: _____

BUYER: _____ DATE: _____    SELLER: _____ DATE: _____  -192-

NWLS Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 11 of 12

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

**COMMERCIAL AND INVESTMENT REAL ESTATE
PURCHASE AND SALE AGREEMENT
(CONTINUED)**

IN WITNESS WHEREOF, the parties have signed this Agreeement intending to be bound.

Buyer_____Washington Street Properties, LLC_____
                    Printed name and type of entity

Buyer_____*[signature]*_____
                    Signature and title

Date signed_____9/17/08_____

Seller_____Phyllis Anderson_____
                    Printed name and type of entity

Seller_____
                    Signature and title

Date signed_____

Buyer_____
                    Printed name and type of entity

Buyer_____
                    Signature and title

Date signed_____

Seller_____
                    Printed name and type of entity

Seller_____
                    Signature and title

Date signed_____

Initials: BUYER:___WSb___   DATE:___9/12/08___      SELLER:___ - ___   DATE:_____

BUYER:_____   DATE:_____      SELLER:_____   DATE:_____

-193-

000210

WMLS Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 12 of 12

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

**COMMERCIAL AND INVESTMENT REAL ESTATE
PURCHASE AND SALE AGREEMENT
(CONTINUED)**

**EXHIBIT A**

[Legal Description]

Initials: BUYER: _____ DATE: _____     SELLER: _____ DATE: _____

BUYER: _____ DATE: _____     SELLER: _____ DATE: _____

000330

ADDENDUM/AMENDMENT TO RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated 9/12/08, between Washingon Street Properties, LLC and or assigns (Buyer) and Phyllis Anderson        (Seller) for the purchase of Velkommen Mobile Park, 2535 70th Ave SW, Tumwater, Washington
It is agreed between the seller and buyer as follows:

1. Buyer agrees to pay the entire purchase price of $1,600,000 as follows:

$160,000 cash;

$1,440,000, by buyer executing to holder a note secured by deed of trust on said property, payable at the rate of $9525 per month, or more at purchaser's option, 7% interest, first payment due 30 days after the date of closing. Note to be paid in full 10 years from closing. The Washington state, Thurston County Title standard form note and deed of trust form are acceptable.

2. This offer is contingent and subject to buyers approval of a property inspection report to be obtained by buyer, at buyer's expense.

3. If either Buyer or Seller intends for this transaction to be a part of a Section 1031 like kind exchange, then the other party agrees to cooperate in the completion of the like kind exchange so long as the cooperating party incurs no additional liability in doing so, and so long as any expenses (including attorneys fees and costs) incurred by the cooperating party that are related only to the exchange are paid or reimbursed to the cooperating party at or prior to closing.

4. Seller understands and acknowledges that Jim Nissing, one of the owners of the buyer herein, is licensed as a real estate broker in the State of Washington, and that Alison Nissing, is licensed as a real estate agent, in the State of Washington and are purchasing subject property for buyer's own account and not as the agent for the seller.

4. Seller will grant buyer and easement to the water system or a shared well agreement and the Buyer will pay for it's operation and testing.

_____   _____   _____   _____

-183-