1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

LAUREL PARK COMMUNITY, LLC, a
Washington limited liability company;
TUMWATER ESTATES INVESTORS, a
California limited partnership; VELKOMMEN
MOBILE PARK, LLC, a Washington limited
liability company; and MANUFACTURED
HOUSING COMMUNITIES OF
WASHINGTON, a Washington non-profit
corporation,
                              Plaintiffs,
        vs.

CITY OF TUMWATER, a municipal
corporation,
                              Defendant.

NO.   C09-5312 BHS

**DEFENDANT CITY OF
TUMWATER'S MOTION FOR
SUMMARY JUDGMENT**

**Note on Motion Calendar:
April 9, 2010**

**(Oral Argument Requested)**

## I.  INTRODUCTION

This case presents constitutional challenges to two ordinances enacted by the City of
Tumwater to establish a zoning district for Mobile Home Parks (MHPs).  Because there is no
support for any of the Plaintiffs' claims and no issue of material fact exists under the evidence, the
City moves for summary judgment and dismissal of all claims.

## II.  EVIDENCE RELIED UPON

This Motion is supported by the Declarations of David Ginther,  Michael Matlock, Jeffrey
S. Myers, and William Partin.

## III.  STATEMENT OF FACTS

**A.      Ordinance O2008-009 & O2008-027 "The MHP Zoning Ordinances"**

Plaintiffs filed this lawsuit following Tumwater's adoption of two ordinances to amend its
comprehensive plan and zoning ordinance to establish a "Mobile Home Park" zoning district.  This

**DEFENDANT CITY OF TUMWATER'S
MOTION FOR SUMMARY JUDGMENT – 1**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1  new zoning designation was applied to six of the existing mobile home parks in the City, three of

2  which are plaintiffs in this action.  The City Council unanimously adopted these ordinances on

3  February 17, 2009.  They took effect a month later, on March 23, 2009.

4      The legislative process commenced in 2007 when citizens approached the City expressing

5  concern over the impacts of possible conversion of mobile home parks within Tumwater to other

6  uses.[1]  The frequency of park closures in Washington accelerated since 2003.  Ordinance O2008-

7  009, at 1.  Average park closures between 1989 and 2002 averaged 5.8 per year and increased to 14

8  per year between 2003 and 2008. *Id.*  This trend is predicted to continue by the State Department

9  of Community, Trade and Economic Development. *Id.*  Hence the availability of space for mobile

10 and manufactured housing, an admitted form of affordable housing, was threatened and shrinking.

11 In Tumwater, no new mobile home parks or manufactured home communities have opened in over

12 a decade.[2]  Thus, preservation of existing housing stock was essential to maintain the availability

13 of manufactured housing in Tumwater, as mandated by the Growth Management Act ("GMA"),

14 RCW 36.70A.020, .070.

15      In August 2007, after citizens approached the City Council, the matter was referred to the

16 Planning Commission and the General Government Committee which began a series of 21 public

17 meetings and hearings that occurred over the next 18 months.[3]  The zoning designations originally

18 requested by citizens sought a designation authorizing only manufactured home communities.[4]

19 However, during the lengthy review process, the ordinances were revised, not only to include a

20 [1]  As a justice on the Supreme Court, plaintiffs' counsel described the impacts of mobile home park closure on
21 residents in his powerful dissent in *MHCW v. State,* 142 Wn.2d 347, 393-94, 13 P.3d 183 (2000) (J. Talmadge,
   dissenting) as follows:
22      The effects on mobile home owners (home owners) faced with moving because mobile home park owners
        (park owners) want to convert a mobile home park to another use can be devastating. A home owner owns
23      the mobile home, but only rents the land on which it sits. Closure and conversion of a mobile home park
        force the owner either to move, or to abandon what may be his most valuable equity investment, a mobile
24      home, to the developer's bulldozer. Displacement from a mobile home park can "mean economic ruin for a
        mobile home owner."
25 (citations omitted).

26 [2]  Ginther Dec., Exhibit C, Planning Commission Recommendation, at 3, Finding 8.
   [3]  Declaration of Matlock.
   [4]  Ginther Dec., Exhibit D (General Govt. Committee Meeting, 4/25/08 Meeting Packet).  This initial draft ordinance
   authorized only MHP and four accessory uses.

**DEFENDANT CITY OF TUMWATER'S**
**MOTION FOR SUMMARY JUDGMENT – 2**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

1   wider range of uses, but also to provide a streamlined mechanism for addressing future "changed

2   circumstances" within the communities.  This review process culminated when the City Council

3   adopted the ordinances on February 17, 2009, which became effective on March 23, 2009.

4   **B.    FEATURES OF MHP ORDINANCE**

5       **1.    Purposes of the MHP Ordinances.**

6       The purposes of the MHP Ordinances are stated in the preambles to the ordinances

7   themselves, where the City Council expressed the purposes and made factual findings to support

8   the ordinances.  The MHP Zoning Ordinance states its purpose on its face in several findings.  These

9   can be summarized as follows:

10      1.    To be consistent with and implement the goals of the Growth Management Act,
            RCW 36.70A.070(2)(C), to identify sufficient land for a variety of housing types,
11           specifically including manufactured housing.

12      2.    To promote the availability of affordable housing to each economic segment of
            Tumwater and implement the goals of the Growth Management Act and the
13           Tumwater Housing Plan, an element of the Tumwater Comprehensive Plan,
            recognizing that manufactured home parks are one source of affordable housing.

14      3.    To encourage preservation of existing housing stock to implement Goal 4 of the
            GMA and the Comprehensive Plan.
15

16      4.    To promote conservation and stability of existing communities.

17      5.    To ensure a sufficient supply of mobile home parks in light of the increasing trend
            of park closures which eliminates a source of affordable and senior housing.

18  See Ordinance O2008-009 at 1-2 (Ginther Dec. Exhibit A, hereafter "Ordinance O2008-009")

19      **2.    Creation of the MHP District**

20      The principal feature of Ordinance O2008-009 is to establish a MHP Zoning District which

21  provides that manufactured housing communities, including established mobile home parks, are a

22  permitted use.  Ordinance O2008-009, at 7, makes MHPs  conforming uses by striking language

23  from TMC 18.48.110 that rendered MHPs a "non conforming use within Tumwater."  In addition,

24  Ordinance O2008-027 amended the City's Land Use Plan, page 22 to delete Comprehensive Plan

25  policies that restricted expansion of existing mobile home parks. Ginther Dec. Exhibit B.

26

**DEFENDANT CITY OF TUMWATER'S**
**MOTION FOR SUMMARY JUDGMENT – 3**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

The MHP Zoning Ordinance provides for 23 permitted, accessory and conditional uses in the MHP district.   In response to comments on its initial proposal, the City added a wider range of uses for those communities designated as MHP.  Permitted uses include manufactured home parks and manufactured homes, single family homes on existing lots of record, child-care uses, community centers, and a wide range of recreational facilities.[5]   Conditional uses include neighborhood-oriented commercial centers, group foster homes, child day care center, cemeteries, churches, neighborhood community center, and other uses.[6]

## C.  THE PLAINTIFFS' MOBILE HOME PARKS

All six manufactured housing communities subject to the MHP designation have operated as such for decades.  The six communities "are located within residential neighborhoods and currently have residential zoning and are easily recognized as traditional manufactured housing communities."[7]  All of the parks have been consistently profitable and have historically been full or had few vacancies.  Since the adoption of the MHP Ordinances, all have either raised their space rents or are planning an increase.[8]

### 1.   Tumwater Mobile Estates

Tumwater Mobile Estates (TME) was established in 1965 and has been owned by a partnership headed by William Schmicker since 1978 when it was purchased for $1.1 million.[9]  It is a 22.4 acre parcel with 115 mobile home pads located in a residential area.  The park has been consistently full.  The park is served by City water and is connected to City sewer.  TME is surrounded to the west by Multi-Family High Density (MFH) zoning, on the south by Multi-Family Medium density (MFM) zoning and on the east by Single Family Medium density (SFM) zoning.  Commercial areas are located to the east and southeast, but do not abut the TME property.

---

[5]  Ordinance 2008-009, at 8-9, codified at TMC 18.49.020, and .030
[6]  Ordinance 2008-009, at 9, codified at TMC 18.49.020.040).
[7]  Ordinance 2008-009, at 2-3; see also, Ginther Dec., Exhibits E (City Zoning Map) and Exhibit F (Comprehensive Plan critical areas mapping showing aerial photographs of the property).
[8]  Eichler, 14:16-24, 15:10-18; Schmicker at 19:12,  22:16-20. Andersen 23:25 to 24:14.  See Declaration of Jeffrey S. Myers, which attaches relevant excerpts from the Depositions of William Schmicker (Exhibit A), Robert Eichler (Exhibit B), James Anderson (Exhibit C) and Jeanne-Marie Wilson (Exhibit D).  For ease of reference, the depositions will be cited to using the name of each witness.
[9]  Schmicker at 8:13-18.

**DEFENDANT CITY OF TUMWATER'S**
**MOTION FOR SUMMARY JUDGMENT – 4**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

Schmicker at 12:16-18.  Before adoption of the MHP Zoning, the property was designated as SFM and MFH zoning.  It also lies adjacent to designated wetlands.  Schmicker 11:22 - 12:3.  A majority of the park is designated as a high liquefaction risk area by the State of Washington and a large area on the west side was damaged due to liquefaction in the Nisqually Earthquake.  Schmicker 25:3-16.

Mr. Schmicker testified to the City Council that he had never considered selling the park nor did he have any specific plans to redevelop the park:

> I am the owner of Tumwater Mobile Estates located at 930 Trosper Road, Tumwater, WA.  I have owned the community since 1978.  We have never considered converting the use of land from anything other than a mobile home park. In fact, we are continually reinvesting in the park by bringing in new homes….[10]

At his deposition, Schmicker testified that he believes that it should be redeveloped at some undetermined date for commercial use, which would require a rezone, even under the prior zoning. Schmicker at 47:25 - 48:3.   Schmicker testified that he believed that the City would rezone the property as commercial in any event in order to get additional sales tax revenue.  Schmicker  at 41:23 - 42:3.   However, he made no plans whatsoever to sell or to specifically redevelop the property.  *Id.,* at 74:22-25.  At his deposition, Schmicker further acknowledged that he intended to continue use as a mobile home park, which is the highest and best use of the property.  *Id.,* at 42:25 - 43:3.  He intends to continue that use until the highest and best use changes at some undefined point in the future.  *Id.,* at 44:12-20.  His current investment objective is to collect dividends off the property.  *Id.*  He acknowledged that there is no way to determine when the highest and best use, and hence his investment objectives, would change.  *Id.,* at 74:10-16.

## 2.    Laurel Park

Laurel Park MHP began operating in 1970, and has been owned by Robert Eichler since 1991.[11]  Eichler purchased the property for $1.3 million.[12]  It is a 73 pad park that sits on 11.73 acres.  The park was annexed into the City of Tumwater in December 2007.  Eichler Dep. 37:23-24. It was previously zoned as MFM.  It is surrounded by residential areas, with an area of MFM zoning

---

[10] Ginther Dec. Ex. G (Correspondence from William D. Schmicker, 6/13/08).
[11] Eichler at 10:19.  Two years ago, Eichler formed Laurel Park Community, LLC to hold title to Laurel Park and he is the sole shareholder.   Eichler at 5:21-6:4.
[12] Eichler at 10:21.

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

1  to the north, SFM to the south and Single Family Low Density (SFL) to the east and west.  The park

2  is on community septic systems and provides water from its own wells.

3      In 2006, Mr. Eichler considered selling Laurel Park and consulted with a local real estate

4  broker, Century Pacific Realty.  They told him that the highest and best use of the property was to

5  continue as a mobile home park.  Eichler, Dep. Exhibit 4.  The owner agreed with that analysis,

6  Eichler at 22:7-21, and turned down an offer for $4,000,000 for his property.  *Id,* at 24:16-17.

7  Eichler never made any specific plans to redevelop the property.  Instead, he hoped that the highest

8  and best use would change at some indefinite time in the future.[13]  Eichler admitted that in today's

9  market, there is no demand for redevelopment.  Eichler at 18:6,  He further conceded that the

10  highest and best use is as a MHP and that such use is economically viable.  Eichler at 59:1-8.

11      **3.      Velkommen Mobile Home Park**

12      Velkommen Mobile Home Park was purchased in 1975 by Phyllis and Wes Andersen who

13  built the MHP in 1982. Andersen at 19:23.[14] It has 39 mobile home pads on 11.13 acres.  Water is

14  provided by a separate water company, Andersen PUD, which is separately owned by the Andersens

15  and serves their properties.  The park is on septic systems with individual or shared drainfields

16  which have limited the density within the park.  Prior to adoption of the MHP zoning, the property

17  was designated as MFM.

18      Velkommen has not made any specific plans for redevelopment of the property. Andersen

19  recalls that the family "entertained" the idea of redevelopment.  Andersen at 40-41.  Upon further

20  inquiry, he conceded that they had not consulted any land use planners and the discussion "wasn't

21  real in-depth talk.  It was just, you know, just like little whims."  Andersen at 43:8-9.

---

22  [13]  Eichler at 37:6-17, testified:

23          My only plan to redevelop the property was when the time came that the highest and best use -
            demand for the property would be for the higher and better use.  And I really didn't know if it was

24          next year, two years from now, five years from now.  I bought the property in 1991 knowing that
            the highest and best use, value at that time was a mobile home park.  And I looked to the future

25          and hoped for the future that in my lifetime, the demand for that property would be for me to
            develop it into the zoning that was on the property.  I've never had an exact time and date, because

26          I've had to wait for the opportunity to present itself.

[14]  Velkommen LLC's manager is the son of the original owners.  His father is deceased and mother is 77 years old.
Mr. Andersen did not know how much they paid for the park in 1975.  Andersen at 19:25.

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

1   In 2008, Velkommen declined two offers for the property at $1.75 and 1.6 million.  As part

2   of the negotiations, Velkommen wanted to convey only the underlying property, and not the water

3   system serving the park.  Andersen at 64:22 - 65:7.  Because the park sale did not include the water

4   supply, the prospective buyer lost interest and  further contacts "tinkered out pretty quick."

5   Andersen at 64:4.  The buyer simply stopped calling after noting that a mobile home park without

6   water "isn't worth very much".  Andersen, Dep. Exhibit 9.

7   **D.   IMPACTS OF MHP ZONING ORDINANCE ON PLAINTIFFS**

8   **1.   MHP Zoning has not caused any significant diminution in value.**

9   Plaintiffs have produced no evidence of any diminution of the value of their mobile home

10  parks.  Their appraiser conducted an income capitalization appraisal using the effective date of

11  December 31, 2008, which was before the MHP Zoning ordinance was adopted and took effect.

12  Ms. Wilson did not do any analysis of the value of the parks after the MHP Zoning was adopted.

13  Wilson at 11:13-15.   Absent such analysis, there is no evidence of any impact on value.

14  **2.   MHP Zoning does not impose any "transfer" of value from the Owners.**

15  The City's Ordinance is not a rent control ordinance and does not transfer value from owner

16  to tenant.  The City's expert, William Partin, evaluated whether the MHP Zoning caused a transfer

17  in value and concluded that there was no evidence to support such an assertion.[15]  Partin noted that

18  there is no evidence indicating the value of tenant's homes had increased since the adoption of the

19  MHP ordinance.  Partin Report (hereafter cited as "Partin") at 21.  Moreover, Partin looked for any

20  mechanism by which such a transfer could occur.  Partin found no economic mechanism within the

21  ordinances that would allow a transfer of value from the Plaintiffs to tenants, finding that:

22  The Plaintiffs are free to set higher rental rates upon expiration of existing leases
    without governmental restriction. The owners' ability to charge full market rents and
23  establish the rules relating to the operation of the manufactured home park
    eliminates any potential for transfer of value. The tenants gain no economic
    advantage as a result of enacting the ordinances.

24

25  [15] Partin addressed a letter from Plaintiffs' counsel sent on December 21, 2009, two weeks after the cutoff for
26  disclosure of expert testimony,  which for the first time pointed to *Guggenheim v. City of Goleta,*  as a basis for the
    plaintiffs' claims.  The Ninth Circuit granted review *en banc* of the *Guggenheim*, precluding citation to it as
    precedent.  *Guggenheim v. City of Goleta,* No. 06-56306, Order, March 12, 2010 (Myers Dec. Exhibit E).

**DEFENDANT CITY OF TUMWATER'S**
**MOTION FOR SUMMARY JUDGMENT – 7**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

*Id.*, at 21.

By contrast, plaintiffs' appraiser Wilson did not use any recognized methodology to analyze whether the zoning ordinances create a transfer of value from the Owners to their tenants.  She further lacked any factual basis to support this conclusion.  As such, there is simply no competent evidence of any alleged value transfer.  Plaintiffs rely on Wilson's conclusory testimony:

> Q  What methodology did you use to determine whether there was a shift in value
> from park owners to tenants?
> A  I don't think there was a methodology.  It's - it's an opinion.
> Q  And what's the factual basis for that opinion?
> A  If the landowner doesn't have full use of their property, they have lost value.
> Q  Can you quantify how much value has been shifted, in your opinion, from the
> park owners to the tenants?
> A  No.

Wilson Deposition, 56:14-19.[16]

### 3.    MHP Zoning does not impose rent control or limit the Owners' ability to generate revenue.

The MHP Zoning does not restrict what the Owners can charge their tenants.  Despite having profitable operations, the Owners all increased the rent or have increases planned after the new zoning was adopted.  Andersen at 35:4-13; Schmicker at 19:11-14; Eichler at 14:21-15:2.

### 4.    MHP Zoning does not impose any fee or costs on the Owners.

Enactment of the ordinances does not require any additional expenditure by the Plaintiffs, but allows continuation of their existing uses. The property continues to be operated in the same way as before enactment. Partin at 19.  The Owners agree that the adoption of the Ordinance has not imposed any fee or cost upon them.  Andersen at 35:13; Schmicker at 32:6-9; Eichler at 60-61.

### 5.    MHP Zoning does not affect operation of the mobile home parks.

The MHP Zoning allows for the continued use of the existing mobile home parks without any affect on how they operate. Andersen at 34:16-18.   It allows the parks to do everything they are currently doing and does not prevent any existing use of their property.  Eichler at 61:7-10. Schmicker at 32:20-23.

---

[16]  Wilson's unsupported conclusions, which lack any factual basis and were not generated any methodology should be stricken.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993).

**DEFENDANT CITY OF TUMWATER'S**
**MOTION FOR SUMMARY JUDGMENT – 8**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

**6.    MHP Zoning does not restrict alienation of the property**.

The MHP Zoning sets forth allowed uses without regulating leasing or sales of mobile home parks.  The City do not establish a right of first refusal or determine who may purchase the parks.  Likewise, the City does not restrict price or otherwise regulate the sale of the parks.

**7.    MHP Zoning allows for redevelopment if MHP use is not economically viable**.

The MHP Zoning includes a "Use Exception" that provides an opportunity for redevelopment if the owners' use under the MHP zoning is not reasonable or economically viable.  Partin at 20.  Accordingly, the owner does not need to bear operating losses or below market returns on his investment.  *Id.*  If the owners become unable to generate enough revenue to meet operating costs, this exception would allow conversion to a different use consistent with the prior zoning.  *Id.*  None of the Owners has attempted to utilize this option.  See, e.g., Eichler at 58:22-24.

**8.    MHP Zoning allows continuation of the existing profitable use which is admitted to be  economically viable.**

Plaintiffs' expert conceded that the current use of all three parks as mobile home parks is economically viable.  Wilson at 44:15-18.  The other MHPs are profitable and economically viable.[17]  As such, the owners are realizing the expectations they had when they bought the properties, which was to indefinitely operate a mobile home park.  Partin at 19.

**9.    MHP Zoning does not require a physical invasion of the parks.**.

Under the MHP zoning, the Owners retain complete control and exclusive possession of the property.  Partin at 20.   The City does not occupy or use any portion of their property.   *Id.*

## IV.  ARGUMENT

**A.    STANDARD OF REVIEW**

Zoning ordinances are presumptively valid and local governments have broad power to zone and control land use. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 2182 (1981). Where property interests are adversely affected by zoning, the courts generally have emphasized the breadth of municipal power and have sustained the regulation if it is rationally

---

[17]  Andersen, at 24:25-25:21 and Exhibits 1-3; Eichler at 15:10-18; Schmicker at 20:13-17.

**DEFENDANT CITY OF TUMWATER'S MOTION FOR SUMMARY JUDGMENT – 9**

related to legitimate state concerns and does not deprive the owner of economically viable use of his property. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536 (1974); *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121 (1926).

The Supreme Court has established two categories of regulatory action that generally will be deemed *per se* takings for Fifth Amendment purposes. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538, 125 S.Ct. 2074 (2005). First, where government requires an owner to suffer a permanent physical invasion of her property. *Id.* Secondly, where a regulation deprives an owner of all economically viable use of their property. *Id.; Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886 (1992) All other takings are governed by an "ad hoc" analysis under which the court considers: (1) the regulation's economic impact on the property; (2) the extent of the regulation's interference with investment-backed expectations; and (3) the character of the government action. *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646 (1978)  (*Penn Central*).

Under a facial challenge to a statute regulating the uses that can be made of property, the landowner must show that the mere enactment of the ordinance denies all economically viable use of the property.  *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 494-95, 107 S.Ct. 1232, 1246-47 (1987); *Carson Harbor Village, Ltd. v. City of Carson,* 37 F.3d 468, 473-74 (9th Cir.1994).  Facial challenges to regulations face an "uphill battle," *Keystone,*  480 U.S. at 495, since it is difficult to demonstrate that "mere enactment" of legislation "deprived [the owner] of economically viable use of [his] property." *Hodel v. Virginia Surface Mining & Reclamation Assn*., Inc., 452 U.S. 264, 297, 101 S.Ct. 2352, 2371 (1981).

**B.    MHP ZONING IS NOT A PER SE TAKING.**

First, this is not a per se taking because there is no physical invasion of a plaintiff's property. *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419 (1982); *Yee v. Escondido,* 503 U.S. 519 (1992). This type of taking claim is simply inapplicable to the adoption of MHP Zoning. Secondly, in *Lucas*, South Carolina barred any redevelopment of property along the coastal barrier islands in the wake of destruction caused by Hurricane Hugo.  The Supreme Court ruled that

**DEFENDANT CITY OF TUMWATER'S MOTION FOR SUMMARY JUDGMENT – 10**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

1    regulations that do not allow any economically viable use constitute a per se taking under the 5th

2    Amendment. *Lucas,* 505 U.S. at 1022.

3            It is uncontested that the Owners are allowed economically viable use as a MHP, in addition

4    to other uses that may be economically viable.  It is not disputed that use as a mobile home park is

5    economically viable.  Wilson at 44:18.   The Plaintiffs' expert also conceded that the conditional

6    uses provided in the ordinance could be economically viable.  Wilson at 44:6-14.  In light of these

7    concessions, the MHP Zoning is not a categorical, per se taking under *Lucas*.  Plaintiffs cannot

8    satisfy the requirements of *Keystone* for a facial takings claim and summary judgment should be

9    granted to the City.

10   **C.     TUMWATER'S MHP ZONING IS NOT A TAKING UNDER THE *PENN CENTRAL***
            **TEST.**

11           Where a regulatory taking is alleged, the courts apply the three-factor regulatory takings test

12   provided in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646

13   (1978).  When a regulation such as a zoning ordinance causes substantial economic harm but does

14   not deprive the owner's property of all economic value, whether a taking occurred depends on "the

15   regulation's economic effect on the landowner, the extent to which the regulation interferes with

16   reasonable investment-backed expectations, and the character of the government action." *Palazzolo*

17   *v. Rhode Island,* 533 U.S. 606, 617, 121 S.Ct. 2448 (2001). Importantly, diminution in the property

18   value alone cannot establish a taking. See *Penn Central*, 438 U.S. at 131, 98 S.Ct. 2646.

19           **1.     Plaintiffs have shown no economic impact on their property values.**

20           The first *Penn Central* factor looks for evidence of economic effect on the property owner.

21   *Penn Central* recognized that application of zoning ordinances could impact the values of

22   individual property owners, but that this ordinarily does not cause a taking.  The Court stated:

23                   Zoning laws generally do not affect existing uses of real property, but "taking"
                     challenges have also been held to be without merit in a wide variety of situations
24                   when the challenged governmental actions prohibited a beneficial use to which
                     individual parcels had previously been devoted and thus caused substantial
25                   individualized harm.

26   *Penn Central,* 438 U.S. at 124.

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

The takings clause permits government regulations to have a substantial impact on property values, as long as there is economically viable use left for the owner.[18]   *Penn Central* focuses on analysis of the remaining allowed uses, noting that zoning ordinances may take most of the value of property from its previous condition, 438 U.S. at 131, citing, *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114 (1926) (75% diminution in value caused by zoning law);   *Hadacheck v. Sebastian*, 239 U.S. 394, 36 S.Ct. 143 (1915) (87 ½% diminution in value).

If we follow *Penn Central* and focus on the uses allowed by the MHP Zoning, the Court must acknowledge that there is no taking because Plaintiffs are allowed to continue  the existing use as a MHP, which is admittedly profitable and economically viable.  Because Plaintiffs must focus on the uses that are allowed and their complaints that this is "single use" zoning, Complaint at 6, ¶22, do not support a takings claim.[19]

Plaintiffs failed to develop any evidence of diminished property value caused by the Ordinances.  Their expert only analyzed the value of the parks before the ordinance took effect.  She admitted that the necessary and appropriate methodology to identify any impact would be to conduct a "before and after" appraisal of the parks.  By her own admission, she cannot speak to any diminution of value.  Therefore, this factor weighs against any takings claim.

### 2.   The MHP Ordinance does not interfere with reasonable investment backed expectations.

#### a.   Plaintiffs are realizing their primary expectation by operating as MHPs.

In analyzing the "reasonable investment backed expectations" in *Penn Central,* the Court began by pointing out that the challenged New York Landmark Ordinance allowed the owner to continue its existing use of Grand Central Station.  The Court stated:

---

[18] "'Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law,' *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 413, 43 S.Ct. 158, 159 (1922), and this Court has accordingly recognized, in a wide variety of contexts, that government may execute laws or programs that adversely affect recognized economic values." *Penn Central*, 438 U.S. at 124.

[19]  The Supreme Court has previously sustained zoning even more limited than the City MHP ordinance.  *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536 (1974) (upholding zoning that restricted the use of land to "one family" dwellings); *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138 (1980) (upholding zoning that restricted previously purchased five-acre tract of land to single-family residences and open space use).

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

**DEFENDANT CITY OF TUMWATER'S**
**MOTION FOR SUMMARY JUDGMENT – 12**

1
2
3
4
5

Unlike the governmental acts in *Goldblatt, Miller, Causby, Griggs,* and *Hadacheck*, the New York City law does not interfere in any way with the present uses of the Terminal.   Its designation as a landmark not only permits but contemplates that <u>appellants may continue to use the property precisely as it has been used for the past 65 years</u>:  as a railroad terminal containing office space and concessions.   <u>So the law does not interfere with what must be regarded as Penn Central's primary expectation concerning the use of the parcel.</u>   More importantly, on this record, we must regard the New York City law as permitting Penn Central not only to profit from the Terminal but also to obtain a "reasonable return" on its investment.

6

438 U.S. at 136 (citations omitted, emphasis added).

7
8
9
10

That observation mirrors the facts in this case.  The MHP Zoning not only permits but contemplates that the Owners may continue to use their property precisely as it has been used for the past 45 years:  as a mobile home park.   As such, the zoning law does not interfere with what must be regarded as the Owner's primary expectation concerning the use of the parcel.

11
12
13
14
15
16
17
18
19

The Owners annually profit from operation of the MHPs, obtaining a reasonable return on their investment.  Partin at 6-11.  Plaintiffs continue to make a steady or  increasing profit from their investment.  Partin at 9.  Indeed, the fact that profits have increased  after adoption of the ordinance shows there is no impact on investment backed expectations. *Id.; see also* Schmicker at 44:14-15.  Additionally, the ongoing operation produces substantial returns on their investments at all of the parks, indicating that they are earning at least double the expected rate of return on the cost of their investment than expected in the market place for similar investment property. Partin at 11.  There is no evidence of any negative impact on their profits or return on investment from the MHP Zoning. *Id.*

20

        **b.**    **Use Exception explicitly protects the very expectation that Plaintiffs' claim is violated.**

21
22
23
24
25
26

Plaintiffs' assert that their expectation to convert to another use at a time when the MHP is no longer economically viable has been frustrated by the MHP zoning. See e.g. Schmicker at 73:21-74:16.  This assertion is unsupported in light of provisions in the zoning that facilitate that very expectation.  TMC 18.49.070.  The Use Exception addresses the owners' concerns by allowing the zoning to revert to its prior designation if: 1) they do not have reasonable use of their property under the MHP zoning; or 2) the uses authorized by the MHP zoning are not economically viable at the

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

property's location.  Ordinance O2008-009 at 12, codified as TMC 18.49.070.  Thus, the Ordinance accommodates even undefined plans for possible conversion to another use if and when it is no longer viable to continue as a MHP.

### c.   Plaintiffs' subjective future intentions are too speculative to constitute reasonable investment backed expectations.

In *Penn Central*, the Court described the type of expectations protected, and more importantly, those that do not rise to the level meriting protection under the Takings Clause.  The Court noted that takings claims have been dismissed where the regulation did not interfere with interests that were sufficiently bound up with the reasonable expectations of the claimant to constitute "property" for Fifth Amendment purposes.  438 U.S. at 124-125.

Plaintiffs' expectations are only vague desires to possibly convert the MHP use at some point in the future to an unspecified use allowed under the zoning in effect at the time of their purchase.  Plaintiffs would fix their right to develop based on uses authorized by the zoning from 1965, 1970 and 1982.  These expectancies are not bound up with reasonable expectations, but are merely what Velkommen's manager called "whims" about possible redevelopment.  Andersen at 43:9.  Such "whims" are not backed by any investment, nor are they reasonable expectations.

Indeed, Plaintiffs' position would convert every downzoning of property into a compensable taking because the owner could testify to a subjective expectation to put his property to a use allowed under the prior zoning.  *Penn Central* explicitly rejects this contention, stating:

> the submission that appellants may establish a "taking" simply by showing that they have been denied the ability to exploit a property interest that they heretofore had believed was available for development is quite simply untenable.

*Penn Central,* 438 U.S. at 130.

### 3.   The character of the government action is to regulate land use, not to physically take property.

The third factor in the *Penn Central* balancing test looks at the character of the government action.  A "taking" may more readily be found when the interference with property can be characterized as a physical invasion by government, than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good.

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

**DEFENDANT CITY OF TUMWATER'S**
**MOTION FOR SUMMARY JUDGMENT – 14**

438 U.S. at 125.

Tumwater's action does not physically invade Plaintiffs' properties, but is a traditional zoning ordinance widely recognized as a valid exercise of the police power. The MHP Zoning allows the Owners to continue their existing, profitable use of their parks. As such, it is a regulation that adjusts the benefits and burdens of economic life to promote the common good and is not the type of intrusion regarded as an appropriation of the Plaintiffs' property.

**D.    MHP ZONING DOES NOT DEPRIVE PLAINTIFFS OF ANY FUNDAMENTAL ATTRIBUTE OF OWNERSHIP.**

**1.    MHP Zoning does not take possessory rights**.

In *Guimont v. Clarke*, 121 Wn.2d 586, 854 P.2d 1(1993), the Washington Supreme Court set forth a modified approach to state takings claims that considers whether the regulation destroys any fundamental attribute of ownership, including the right to possess, to exclude others, to dispose of property, or to make some economically viable use of property. 121 Wn.2d at 604, citing, *Lucas,* 112 S.Ct. at 2893-96; *Guimont v. City of Seattle,* 77 Wn.App. 74, 81, n.5, 896 P.2d 70 (1995).

Under this criteria, it is clear that the MHP Zoning does not appropriate or affect any fundamental attribute of property.[20]   The zoning does not regulate the right to possess the property, to exclude others or dispose of the property. The ordinance does not determine who the property may be sold or leased to. The zoning allows continued economically viable use. *See* Partin Report at 20. Under this test, the MHP Zoning Ordinance is a permissible regulation of land use that does not require compensation**.**

**2.    Plaintiffs have no property interest in speculative future use of property, unless they have vested development rights under State Vested Rights Doctrine.**

Plaintiffs are apparently claiming that the MHP Zoning is facially a taking because it deprives the owner of the opportunity to convert the parks to a future use allowed by the zoning in effect at the time when the property was purchased. Such a contention equates speculative future desires with a property right. Protected property interests are not created by the Constitution, but

---

[20]  When asked to identify what property right was being taken, plaintiffs' expert could not identify any specific property right that was being deprived. Wilson at 44:19-25.

**DEFENDANT CITY OF TUMWATER'S MOTION FOR SUMMARY JUDGMENT – 15**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1    instead flow independently from state law. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th

2    Cir. 2005).  Under Washington law, in order to have a protected interest in a potential future use

3    of property and fix that right under current zoning, an owner must take specific action to "vest" his

4    future development rights under the "vested rights" doctrine.

5           Under the "vested rights doctrine" recognized in Washington, developers filing a timely and

6    complete land use application obtain a vested right to develop land in accordance with the land use

7    laws and regulations in effect at the time of application. *Erickson & Assocs., Inc. v. McLerran*, 123

8    Wn.2d 864, 867-68, 872 P.2d 1090 (1994); *West Main Assocs. v. City of Bellevue,* 106 Wn.2d 47,

9    50-51, 720 P.2d 782 (1986). It is only by vesting that an owner will have a reasonable expectation

10   that the zoning will not change.

11          It is not disputed that plaintiffs did not have any vested rights to protect against a possible

12   zoning change.   The Owners all admitted that they did not file any applications to redevelop their

13   parks:  Redevelopment plans at Velkommen were nothing more than  "whims" discussed by the

14   owner's family.  Andersen at 43:9.  Laurel Park made no redevelopment plans because its highest

15   and best use remains as mobile home park. Eichler at 37:6-10.  TME never had plans to sell or

16   redevelop as commercial property and admitted that future conversion require a rezone to

17   commercial, a use not allowed even under the pre-existing zoning. Schmicker at 41:18-42:8; 74:10-

18   75:3.  No applications to redevelop were filed by any of the Owners.  Schmicker at 59:17; Eichler

19   at 47:11-15; Andersen at 82:3-8. All that the Owners assert is an ethereal desire to possibly convert

20   their property at an indefinite point in the future.   These desires or "whims" are not property

21   interests protected by the Takings Clause.  If they were, any downzoning of property would be a per

22   se taking.  Such is not the law.  *Penn Central,* 438 U.S. at 131.

**E.     THE RIPENESS DOCTRINE BARS PLAINTIFFS' CLAIMS.**

23          Any as applied takings claim is not ripe under *Williamson County Regional Planning*

24   *Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108 (1985).   In this case,

25   plaintiffs' Constitutional claims are not ripe because their expectation is an inchoate speculative

26   whim, contingent on the belief that the highest and best use will someday change allowing them to

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

develop under the zoning in effect when they first bought the property.  All the Owners admit that the day for such redevelopment has not yet arrived.  If it does, the Use Exception in TMC 18.49.070 allows them to pursue their development expectations by showing that the MHP use is no longer economically viable.  None of the plaintiffs have applied for application of the use exception. Hence, plaintiffs' claims are not ripe.  *Williamson, supra; Suitum v. Tahoe Regional Planning Agency,* 520 U.S. 725, 117 S.Ct. 1659 (1997); *see also, MHC Financing Ltd. Partnership Two v. City of Santee*, __ Cal.Rptr.3d ___, 2010 WL 892322 (Cal.App. 4 Dist. 2010) (dismissing takings and due process claims under ripeness doctrine).

**F.      NO VIOLATION OF SUBSTANTIVE DUE PROCESS CLAUSE.**

**1.      Federal Due Process Test is Rational Basis Test.**

Zoning of property is a proper exercise of the police power granted to cities under Article XI, Section 11 of the Washington State Constitution.  The police power is not confined to elimination of filth, stench, and unhealthy places. The police power is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 9,  94 S.Ct. 1536  (1974).

To establish a violation of substantive due process, a plaintiff must ultimately prove that the contested action was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Sinaloa Lake Owners Ass'n. v. City of Simi Valley,* 882 F.2d 1398, 1484 (9th Cir.1989).   In order to survive summary judgment, the Plaintiffs must demonstrate the irrational nature of the City's actions by showing that it could have had no legitimate reason for its decisions. *Halverson v. Skagit County*, 42 F.3d 1257 (9th Cir.1994) (quoting *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir.1994).  It is not necessary for the City to prove that the MHP Zoning actually advances a legitimate state purpose, but instead the court must ask whether the government "could" have a legitimate reason for its enactments. *Kawaoka,* 17 F.3d at 1234.

The means selected to achieve the legislative purpose are subject to the same minimal scrutiny, rational basis test.  The Due Process Clause does not empower the judiciary "to sit as a

**DEFENDANT CITY OF TUMWATER'S**
**MOTION FOR SUMMARY JUDGMENT – 17**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1  'superlegislature to weigh the wisdom of legislation' . . . ." *Ferguson v. Skrupa*, 372 U.S. 726, 731,

2  83 S.Ct. 1028, 1032 (citation omitted). "If the validity of the legislative classification for zoning

3  purposes be fairly debatable, the legislative judgment must be allowed to control." *Village of*

4  *Euclid*, 272 U.S. at 388.  Here, the City's MHP Zoning substantially advances multiple legitimate

5  public purposes and does not violate substantive due process.

6         **2.     MHP Zoning is Rationally Related to a Legitimate Public Purposes.**

7       In deposition testimony, the Plaintiffs' witnesses conceded that the goal of promoting

8  affordable housing is a legitimate public purpose.  The legitimacy of promoting affordable housing

9  to the public is obvious and well established.  See *Garneau v. City of Seattle,* 897 F.Supp. 1318,

10  1322 -1323 (W.D.Wash.,1995), affirmed on other grounds, 147 F.3d 802 (9th Cir. 1998).

11       These Ordinances implement the goals of the Growth Management Act to protect existing

12  housing stock, sources of affordable housing and provide adequate land for manufactured housing.

13  RCW 36.70A.020.  The Ninth Circuit ruled that protection of MHP tenants and their investment

14  in their homes is a legitimate legislative goal.  *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680

15  (9th Cir.1993).  The *Levald* court rejected a substantive due process challenge, concluding that "a

16  rational legislator could have believed that the rent control ordinance would further the stated goals,

17  at least insofar as the purpose is to protect existing tenants." *Id.* at 690.

18       MHP Zoning promotes MHPs as a socially desirable form of housing by using a traditional

19  form of regulation that courts have long upheld against Lochner-esqe due process challenges.

20  *Euclid v. Ambler Realty, supra* was the seminal case where the court upheld this type of restrictive

21  zoning, including a base zone where only single family residential housing was permitted.  Like

22  *Euclid*, the MHP zoning permits a viable form of housing, in addition to other possible uses.

23       The socio-economic aims of MHP Zoning are clearly legitimate and the means selected are

24  rational to implement those aims.  The ordinance easily passes scrutiny under the *Kawaoka* tests.

25  Furthermore, the means selected by Tumwater are clearly related to and advance the legitimate

26  purposes stated on the face of the ordinances.  The selected means of zoning for MHP use is

appropriate and easily meets the minimal scrutiny, rationality basis standard.

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### 3.    MHP Zoning does not violate the State Due Process Test – Zoning for Current Use as a MHP Is Not Unduly Oppressive.

Washington case law adds one additional test not employed by federal courts, that of whether the ordinance is "unduly oppressive" to the person being regulated. *Presbytery,* 114 Wn.2d at 331.  In applying this tests, courts must be wary of giving too much weight to an element articulated only as one factor in the rational basis review employed by federal Courts.  *Goldblatt v. Hempstead,* 369 U.S. 590, 595, 82 S.Ct. 987, 990 (1962), cautions that the unduly oppressive analysis must not be applied with strict precision because "debatable questions as to reasonableness are not for the courts but for the legislature. . .".  The Washington Supreme Court agrees that the unduly oppressive analysis merely a structure for determining the overall reasonableness of the means used to achieve the regulation's public purpose. *Guimont v. Clarke,* 121 Wn.2d at 609, n.10.

The Washington Supreme Court in *Presbytery* identified several non-exclusive factors to assist in weighing whether an ordinance is unduly oppressive.   Those factors are:

> On the public's side, the seriousness of the public problem, the extent to which the owner's land contributes to it, the degree to which the proposed regulation solves it and the feasibility of less oppressive solutions would all be relevant. On the owner's side, the amount and percentage of value loss, the extent of remaining uses, past, present and future uses, temporary or permanent nature of the regulation, the extent to which the owner should have anticipated such regulation and how feasible it is for the owner to alter present or currently planned uses.

Presbytery, 114 Wn.2d at 331.

Using the *Presbytery* factors, the City's Ordinances are not violative of substantive due process.  To prevail, Plaintiffs must take the remarkable position that it is "unduly oppressive" for the City to adopt zoning that allows them to continue the profitable operation of their parks as a permitted use. This defies logic and common sense.

The Ordinances do not cause economic loss, but allow continuation of an existing, viable and profitable enterprise.   The Owners' ability to generate revenue from the parks remains unfettered.   Plaintiffs have not shown any value loss to their parks, which continue to be increasingly profitable and which can increase their revenues by increasing rents, as they all have recently done.  Moreover, they can seek a use exception if the operation of the parks becomes

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

economically unreasonable or unviable.  TMC 18.49.070.  The reversion to prior zoning created by the use exception does not require a rezone, but vests upon approval of the exception.  This ameliorates any claim of direct economic harm and provides a way to alter the current use.

The Ordinance does not force Plaintiffs alone to bear a societal burden of affordable housing. The Ordinance does not require any Plaintiff to assume a greater burden than he has already assumed.  Partin at 20.  The MHP Zoning is not the exclusive way that City promotes affordability.  Ordinance O2008-009 recognizes that MHPs are "a" source of affordable housing, but they are clearly not the only one. Affordable housing is promoted in Tumwater in several different ways. Matlock Decl. at 4, ¶10. The Land Use and Housing Plans identify sufficient land for all housing types (including MHPs).  They provide an adequate supply of apartments and multi family housing and smaller lot sizes for single-family homes that will be more affordable.  The City can waive applicable fees, such as utility hook-up fees or impact fees.  The City provides discounts in utility rates  for low income seniors.  Finally, the Owners can seek tax relief through property tax revaluation.  Thus, the "burden" (if it can be called that where Plaintiffs have the highest and best use of their property) of providing affordable housing is not cast solely upon the shoulders of MHP owners, but is spread throughout the city by these mechanisms. See also, Ginther Dec., Exhibit H at 2 (Staff Report to Planning Commission, 9/23/08).

The Ordinance addresses a serious problem of displacement of tenants at mobile home parks which seek to convert to other uses.  This problem directly relates to the owner's land, as it is their choice to convert that causes the impact on the tenants.  The means selected by the MHP Ordinances are measured and limited.   MHP Zoning adds stability to the existing MHP use, but does not guarantee housing.  It promotes established neighborhoods and availability of a variety of housing types pursuant to GMA.  It further promotes a form of affordable housing  that the Owners voluntarily decided to provide when they bought the parks.  Ordinance O2008-027 further benefits the Owners by making MHP use a conforming use, allowing  expansion of existing parks.

Moreover, in addition to having minimal if any impact on the value of the owner's property, the Ordinances do not use improper means to achieve these goals.  MHP Zoning is a much less

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

1    drastic alternative than the relocation assistance fee imposed on park owners in *Guimont v. Clarke*,

2    *supra*. Unlike *Guimont v. Clarke,* which imposes an "onerous obligation" to pay a fee of $7,500

3    per mobile home space to directly finance relocation, no fee is imposed by the MHP Ordinance.

4    Indeed, the owners are not forced to continue in the MHP business at all. Matlock Dec. at 3, ¶6.

5    While they are using the property in conformity with the MHP Zoning, the Owners continue a

6    profitable use and can increase their revenues if needed to address future operational costs. The

7    means selected by Tumwater are not the type of oppressive fees at issue in *Guimont v. Clarke.*

8    **G.      THE MHP ORDINANCE DOES NOT VIOLATE EQUAL PROTECTION.**

9           **1.      MHP Zoning is Rationally Related to legitimate public purposes.**

10          In reviewing the plaintiffs' equal protection challenge, the Court must evaluate the facts

11   determined by the legislative body with substantial deference and not sit as a super-legislature. It

12   is well settled that state and municipal legislative acts are presumed to be in harmony with the

13   Constitution. *Hodel v. Indiana,* 452 U.S. 314, 101 S.Ct. 2376 (1981); *Kawaoka v. City of Arroyo*

14   *Grande*, 17 F.3d 1227, 1233 (9th Cir.1994). It is the Plaintiffs' burden to "convince the court that

15   the legislative facts on which the classification is apparently based could not reasonably be

16   conceived to be true by the governmental decisionmaker.' " *Minnesota v. Clover Leaf Creamery*

17   *Co.*, 449 U.S. 456, 464, 101 S.Ct. 715, 724 (1981).

18          Plaintiffs' Complaint identifies two distinctions in the MHP Ordinance that it claims violate

19   Equal Protection. Complaint, ¶¶35, 36. First, plaintiffs take issue with distinguishing manufactured

20   housing communities from other types of property ownership. Complaint,¶35. Secondly, plaintiffs

21   take issue with the distinction between those properties included in the MHP Zoning District, and

22   four properties not so zoned. Neither argument sustains an Equal Protection violation.

23          First, the distinction between manufactured housing communities and other types of

24   ownership is not irrational, but is based on the more affordable nature of manufactured housing.

25   All of the Owners admitted that their mobile home parks are a source of affordable housing, as

26   distinguished from other housing types**.** Andersen 13:9-15; Eichler 10:11-17; Schmicker 17:2-7.

     Secondly, this distinction is also consistent with classifications in the Growth Management

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

1  Act, which directs cities and other local governments to identify sufficient land for different types

2  of housing, expressly including manufactured housing.  RCW 36.70A.070.  The need to provide

3  a mix of housing types and ensure that manufactured housing is part of that mix is a legitimate

4  public purpose.

5      The City acknowledged the trend that MHPs are increasingly threatened with the possibility

6  of closure and conversion to other uses.  Although Tumwater had not experienced recent closures,

7  other parks in Thurston County had recently been threatened with closure.   Ginther Dec., Ex. I at

8  3. Logically, the City found existing MHPs are endangered neighborhoods for which GMA

9  mandates preservation measures be taken.  RCW 36.70A.020; 36.70A.070(2).

10      **2.     Selection of MHPs for zoning as a form of affordable housing was rational.**

11          **a.     Exclusion of three small properties was rational.**

12      The City Council's decision not to apply MHP zoning to three small properties that could

13  technically be considered mobile home parks was rational and well considered in light of the

14  comments before the Planning Commission and Council.  The basis is explicitly set forth in the

15  Ordinance.[21]  The Council's Findings establish that these other properties were not traditional parks,

16  do not operate as mobile home parks, have no sense of community, insufficient density, and

17

18  [21]  Ordinance O2008-009 at sets forth these factual findings as follows:
    WHEREAS, the properties located at 5012 Rural Road, 6715 Henderson Boulevard, and 6911
19  Henderson Boulevard have three or more mobile manufactured homes on the same property so
    they meet the definition of a mobile/manufactured home park.  However, these three exceptionally
20  small "parks" are not the typical easily recognized traditional mobile/manufactured home park, the
    small size of these three "parks" does not foster a sense of community or neighborhood and the
    owners of these three small "parks" appear to own all of the dwellings located on the properties
21  which contrasts sharply with the rest of the more traditional mobile/manufactured home parks in
    Tumwater where the majority of dwellings are not owned by the land owner;  and
22
    WHEREAS,  these three small "parks" are not recommended to be included in the new zone
23  district because they are more transitional in nature due to the smaller initial investment in the
    property when compared to larger more traditional mobile/manufactured home parks which often
24  have paved roads and utility systems and community centers.  In addition, the residential densities
    of these three small "parks" are below the densities of the larger more traditional and easily
25  recognized mobile/manufactured home parks in Tumwater and below the minimum densities of the
    zone districts where they are located, and below the generally accepted urban density level for
26  cities and urban growth areas. The low residential density of these three "parks" is not ideal for
    advancing the goals of preventing low density sprawling development as outlined in the Growth
    Management Act and the Tumwater Comprehensive Plan, . . .

**DEFENDANT CITY OF TUMWATER'S**
**MOTION FOR SUMMARY JUDGMENT – 22**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1    inclusion of these small properties would not be ideal to advance GMA's anti-sprawl goals.[22]   It

2    does not violate Equal Protection to exclude properties too small to serve the Council's purposes.

3                    **b.    The City's decision not to include the only existing MHP in a commercial area was rational.**

4    Again, the findings in the MHP Ordinance explain the basis for which properties it would

5    be applied to.[23] The City recognized that Allimor was the only park zoned commercially, and is in

6    an area surrounded by commercial zoning.  Moreover, it is recognized as transitional because the

7    surrounding properties are currently being used as commercial properties.[24]   Thus, the City

8    rationally concluded that MHPs are better suited for location in residential areas, not in transitional

9    commercial areas.  Ordinance O2008-009 at 3-4.   All the parks zoned in the MHP District were

10   previously zoned residential and are located within established neighborhoods. *Id.,* at 2.  Exclusion

11   of Allimor, the only MHP in a commercial area  was rational and does not violate Equal Protection.

12   **H.     MHP ZONING IS NOT UNLAWFUL "SPOT ZONING".**

13         Spot zoning is "zoning action by which a smaller area is singled out of a larger area or

14   district and specially zoned for a use classification totally different from and inconsistent with the

15   classification of surrounding land and is not in accordance with the comprehensive plan." *Smith v.*

16   *Skagit County*, 75 Wn.2d 715, 743, 453 P.2d 832 (1969). The main inquiry of the court is whether

17   the zoning action bears a substantial relationship to the general welfare of the affected community.

18   See *Parkridge v. Seattle*, 89 Wn.2d 454, 460, 573 P.2d 359 (1978). Only where the spot zone grants

19
20   [22]  The actual density of the three "small" parks was reported to the Planning Commission (Ginther Dec., Exhibit J at 6-7) as:
           a.    *6715 Henderson Boulevard 3 mobile homes/9.39 Acres = 0.319/acre
21         b.    6911 Henderson Boulevard 3 mobile homes /9.26 Acres = 0.324/acre
           c.    5012 Rural Road 3 mobile homes /1.87 Acres = 1.6/acre
22   [23]In deciding not to designate the fourth excluded property, Allimor Carriage Estates, Ordinance O2008-009, at 3, makes the following finding of fact:
23         WHEREAS the Allimor Carriage Estates mobile home park located at 5705 Littlerock Road is
           currently the only mobile manufactured home park within Tumwater that is zoned General
24         Commercial the only park that is almost completely surrounded by General Commercial zoning
           and the only park that abuts intensive commercial development in the form of commercial strip
25         development and intensive large scale commercial retail including Albertsons, Costco, and Fred
           Meyer;
26   [24]  Since 1997, commercial uses have grown up around Allimor, including Home Depot, Tyee Center, American Legion Hall Twin County Credit Union and Fred Meyer, which is directly across the street from Allimor.  Ginther Dec., Exhibit J, Little Rock Subarea Plan at 2, 14-15.

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

a discriminatory benefit to the owner to the detriment of the neighbors or the community at large without adequate public justification will the rezone be overturned. *Save Our Rural Environment (SORE) v. Snohomish County,* 99 Wn.2d 363, 368-369, 662 P.2d 816, 818 - 819 (1983).

### 1.     MHP Zoning is Consistent with Comprehensive Plan.

The City took great measures to ensure that the MHP zoning ordinance is consistent with the Comprehensive Plan.  Pursuant to the Growth Management Act, the City evaluated the suitability of the existing sites for continued MHP zoning.   The Planning Commission recommendation focused on the Goals of the Tumwater Housing Plan, an element of the Comprehensive Plan, as well as the goals and policies of the GMA itself.   They made recommendations that were incorporated into the final Ordinance showing consistency with the Housing Plan, Goals 1, 2, and 8, as well as Policies 1.3,  2.1 and 8.1.  Ord. O2008-009 at 2.[25]

### 2.     MHP Zoning does not confer a discriminatory benefit on rezoned property.

Plaintiffs have not identified any evidence of discriminatory benefit granted by the MHP zoning ordinance.   They cannot show the element as required by *Smith* and its progeny.   It is difficult to comprehend that an ordinance which zones property for its existing use would ever constitute discriminatory zoning against the property owner who voluntarily put his property to that use.[26]  Yet this appears to be central to the plaintiffs' spot zoning claim.  The City is unaware of any case in Washington or the Ninth Circuit that has held a zoning ordinance that permits the existing use of property to continue as an allowed use to be invalidated as "spot zoning".

[25]      Moreover, the Plaintiffs are estopped from claiming that there is inconsistency with the Comprehensive Plan. *Miller v. County of Santa Cruz*, 39 F.3d 1030 (9th Cir.1994); *Nielson v. Spanaway Gen. Med. Clinic, Inc*., 135 Wn.2d 255, 264, 956 P.2d 312 (1998) (applying collateral estoppel even where decision appealed).  Plaintiffs challenged the consistency of the MHP zoning before the Western Washington Growth Management Hearings Board, which emphatically rejected their contentions.  Matlock Declaration, Exhibit A at 16, 22-28.  Having litigated this issue  and lost, they cannot show that any inconsistency with the Comprehensive Plan, as required by *Smith*, supra. This alone justifies rejection of the Plaintiffs' "spot zoning" claim.

[26]  Leading authorities recognize that this is the opposite of most spot zoning claims.  See, e.g., 1 Robert M. Andersen American Law of Zoning 3d § 5.12, at 358 (1986) ( "The common [spot zoning] situation is one in which an amendment is initiated at the request of an owner or owners who seek to establish a use prohibited by the existing regulations."); see also *Penn Central*, 438 U.S. at 432 (rejecting "reverse" spot zoning claim against landmark protection ordinance).

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

**DEFENDANT CITY OF TUMWATER'S**
**MOTION FOR SUMMARY JUDGMENT – 24**

**3.      MHP use is not inconsistent with to surrounding zoning**.

The zoning surrounding the communities is consistent with the medium density residential use allowed under the MHP zoning.  Plaintiffs' appraiser testified that, in her opinion, none of the Plaintiffs' three MHPs are inconsistent with the land uses in the surrounding communities.  Wilson, 55:15 - 56:5.  The Plaintiffs' spot zoning allegation fails due to the concession that the MHP zoning is not inconsistent with the surrounding residential zoning.

**4.      MHP zoning is not detrimental to surrounding community.**

Plaintiffs cannot show that the MHP zoning is detrimental to the surrounding community. Two of the three Owners conceded that their parks are not detrimental to the surrounding community at this time.  Schmicker at 16:10; Andersen at 13:5-8.  The third did not know whether his park was detrimental to adjacent property values, which is primarily vacant land.  Eichler 10:8-10. Absent proof of that the existing MHP use  is detrimental to the surrounding community, the spot zoning claim cannot be sustained.  *SORE,* 99 Wn.2d at 368-369.

## V.  CONCLUSION

The City's ordinances that designate existing mobile home parks for MHP zoning are not an unconstitutional taking, do not violate due process or equal protection and are not illegal spot zoning. They promote continued availability of manufactured housing.  Preservation and promotion of a socially desirable form of housing,  consistent with the GMA ,does not violate the Constitution and should be sustained by the Court.  Plaintiffs' claims should be dismissed.

Dated this _____ day of March, 2010.

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.

  /s/    *Jeffrey S. Myers,*_____
Jeffrey S. Myers, WSBA #16390

LAW, LYMAN, DANIEL, KAMERRER
&  BOGDANOVICH, P.S.
P.O. Box 11880
Olympia, WA 98508-1880
(360) 754-3480
Fax: (360) 357-3511
E-mail: jmyers@lldkb.com

**DEFENDANT CITY OF TUMWATER'S**
**MOTION FOR SUMMARY JUDGMENT – 25**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*