# GINTHER

# EXHIBIT I

TUMWATER PLANNING COMMISSION
MINUTES OF MEETING
November 25, 2008 Page 1

| | |
|---|---|
| **CONVENE:** | 7:04 p.m. |
| **PRESENT:** | Chair Debbie Sullivan, Commissioners Ed Hildreth, Terry Kirkpatrick, Bill Mandeville, Kathy Goebel, Peter Gayton, and Marcus Glasper. |
| **EXCUSED:** | Commissioner Sally Nash. |
| | Staff: Planning and Facilities Director Michael Matlock, Senior Planner Tim Smith, Associate Planner David Ginther, and Recording Secretary Danielle Gardea. |
| **APPROVAL OF MINUTES – OCTOBER 28, 2008:** | Commissioner Mandeville referred to page 7 of the minutes and indicated the minutes should include the following statement, "When a Commissioner prepares written comments along with their suggested revisions, and concerns, that document should be included in the Commissioner's packet, along with the information in the packet for the public hearing." |
| **MOTION:** | **Commissioner Kirkpatrick moved, seconded by Commissioner Gayton, to approve the October 28, 2008 minutes as amended. Motion carried. Commissioner Hildreth abstained.** |
| **CHANGES TO THE AGENDA:** | There were no changes to the agenda. |
| **NEXT PLANNING COMMISSION MEETING DATE:** | The next meeting is scheduled for December 9, 2008. |
| **COMMITTEE/COUNCIL UPDATES:** | There were no updates. |
| **OTHER BUSINESS/UPCOMING EVENTS/CONFERENCES:** | There was no other business. |
| **PUBLIC HEARING: 2008 COMPREHENSIVE PLAN AMENDMENTS AND ORDINANCE # O2008-009, MANUFACTURED HOME PARK DEVELOPMENT REGULATION AND REZONE:** | Chair Sullivan welcomed everyone and explained that the Planning Commission is an advisory committee to the City Council and provides recommendations to the City Council. The City Council renders all final decisions. The public hearing involves four comprehensive plan amendments:<br><br>• Public Participation Plan Update<br>• Tumwater Urban Growth Boundary Adjustment<br>• Manufactured Home Park Goals, Policies and Map Amendment |

                Proposal
- Ordinance No. O2008-009, Manufactured Home Park Development Regulation and Rezone

**BRIEFING:**

| | |
|---|---|
| **PUBLIC PARTICIPATION PLAN UPDATE:** | Planner Smith reported the State Growth Management Act (GMA) requires Tumwater to establish and broadly disseminate a public participation program. Tumwater adopted a program in 1991 by resolution. The purpose of the amendment is to update the City's public participation program and incorporate the program into the Tumwater Comprehensive Plan. The City Council placed the amendment on the City's 2008 Docket of Comprehensive Plan and Development Regulation Amendments. The intent of the Public Participation Program is ensuring the plan is amended through a public process involving the contribution of all interested parties, including property owners and residents. The proposal calls for strategies for notification to citizens and property owner on the comprehensive plan amendment process and to utilize the local media. The plan calls for the use of sub-committees established by the Planning Commission for proposals requiring additional work outside of the Planning Commission's scope of work. The Planning Commission held two briefings earlier in the summer to review the draft public participation plan. There are several minor changes proposed by the staff. |

One proposal is combining Strategy #8 with number #7 to streamline the intergovernmental review process. The City adopted a 45-day intergovernmental review procedure in 1991 prior to the state requiring a 60-day state agency review period under the GMA. Changes proposed to Strategy # 7 include the removal of the City's 45-day timeframe, allowing intergovernmental review to occur in conjunction with the 60-day state agency notification requirement.

| | |
|---|---|
| **TUMWATER URBAN GROWTH BOUNDARY ADJUSTMENT:** | Planner Ginther said on March 3, 2008, Thurston County adjusted the boundary of Tumwater's urban growth area (UGA). Thurston County Resolution No. 14034 and Ordinance No. 14035 removed properties on the south side of 93rd Avenue between Hart Road and Old Highway 99. The action resulted from a ruling by the Western Washington Growth Management Hearings Board. |

The proposed amendments adjust Tumwater's maps to reflect the change in the UGA boundary. The official Tumwater Zoning Map, City-Wide Neighborhood Map, City-Wide Land Use Map, and the Airport Neighborhood Map will be amended to reflect changes to the UGA boundary.

Commissioner Goebel asked whether the boundary line was adjusted to 93rd Avenue. Planner Ginther advised that the boundary is to the south edge of the right-of-way of 93rd Avenue.

Commissioner Kirkpatrick asked whether the City's involved in current construction occurring on the south side of 93rd Avenue. Planner Ginther said the area is located within the county. The City limits only extend to 93rd Avenue in that area. Some areas near the freeway have the City limits extending south of 93rd Avenue. Commissioner Kirkpatrick noted development is occurring in an area that was determined not to be developable several years ago. The area is fronted by a roadway maintained by the City.

Commissioner Gayton asked how 93rd Avenue is divided between the City and the county. Planner Ginther replied that the entire road is located in the UGA; in addition, some sections of the road are in the City as well.

**MANUFACTURED HOME PARK GOALS, POLICIES, AND LAND USE DESIGNATION:**

Planner Ginther reported in 2007, residents of some of the manufactured and mobile home parks in Tumwater began contacting the City Council about their concerns on possible closures and conversions of the parks. There have been some park closures in Thurston County, but none to date in Tumwater.

The City Council referred the issue of mobile home parks to the General Government Committee (GGC). The GGC and a special subcommittee conducted five public meetings on the matter between January and June 2008. The GGC forwarded a draft ordinance to the full City Council for review in July 2008. The City Council referred the issue to the Planning Commission for review as part of the 2008 Tumwater Comprehensive Plan Amendment cycle.

By definition, any mobile home park containing three or more homes is defined as a mobile home park. Currently, there are 10 parks in Tumwater. Three of the parks contain three to four homes. The City Council was concerned about applying the zone designation to smaller parks and referred the issue to the Planning Commission for discussion and a recommendation on whether to include the smaller parks within the zone designation.

Planner Ginther advised that with the Planning Commission's briefing and discussion on goals and policies, staff included Chapter 5 within the material for the Commission to determine whether the goals are adequate or whether other goals should be added.

**ORDINANCE # O2008-009,** Planner Ginther reported on the concerns by the Council on the number

| | |
|---|---|
| **MANUFACTURED HAOME PARK DEVELOPMENT REGUALTIONS AND REZONE:** | of conditional uses included in the ordinance. The Council requested the Commission review the list of conditional uses and eliminate the uses that could be of possible competition in terms of land availability for mobile and manufactured home parks. |
| | Planner Ginther referred to several sections on sub-division of land. Staff concurs with the Planning Commission that removing the language would help to provide clarity within the ordinance. |
| **PUBLIC HEARING:** | |
| **2008 COMPREHENSIVE PLAN AMENDMENTS AND ORDINANCE #O2008-009, MANUFACTURED HOME PARK DEVELOPMENT REGULATIONS AND REZONE:** | Chair Sullivan opened the public hearing at 7:26 p.m.<br><br>Associate Planner Ginther reported on two letters received for the record. |
| **PUBLIC TESTIMONY:** | |
| **PUBLIC PARTICIPATION PROGRAM:** | There was no public testimony on the Public Participation Program. |
| **TUMWATER URBAN GROWTH BOUNDARY ADJUSTMENT:** | There was no public testimony on the Tumwater Urban Growth Boundary Adjustment. |
| **MANUFACTURED HOME PARK ITEMS:** | Dr. John Dunham, 5805 Reid Drive NW, Gig Harbor, WA., provided a packet and statements to the Commission for review. He identified himself as the owner of Allimore Carriage Estates Mobile Home Park (MHP) and said the City is trying to group all MHP communities together. There are variations between the parks regarding age, condition, infrastructure, location, and zoning. There has been much discussion about Eagle's Landing MHP. It was built in the 1990s, which would make it one of the newest parks in the state. The park is a well-maintained, modern park with large lots and nice streets. Allimore Carriage Estates MHP is approximately 50 years old with old trailers, small lots, poor wiring, bad plumbing, little or no insulation, with most of the homes constructed before the current standards were effective. If the ordinance is adopted, Allimore will be blight on the City for many years because it's in the middle of an urban redevelopment area. The area will quickly become an urban slum. Many of the homes are in poor shape and will become threats to the health, safety, and welfare of residents. There is a huge difference |

between affordable housing and substandard housing. There will be unintended consequences of the proposal.

Dr. Dunham commented that 50 to 70 year-old trailers become uninhabitable and dangerous. Residents end up walking away from them, leaving rotting hunks requiring removal and disposal that often are contaminated with asbestos, lead paint, aluminum wiring, and other materials that are illegal by today's standards.

Dr. Dunham provided an example of a law in Nebraska that created negative consequences because provisions of the law were not carefully considered.

Dr. Dunham noted that if he were to rebuild Allimore's infrastructure it would cost $400,000 to $500,000, which is unfeasible.

Dr. Dunham asked whether the proposed ordinance is to protect the park or the people who own homes within the park. He said he owns several homes in Allimore and rents them. He asked whether the ordinance would protect his interests if he owned all the homes within the park. He displayed a map of the park and the surrounding area consisting mostly of commercial uses. The proposal will rezone the area, which is spot zoning, which is illegal. He added that he along with other owners may fight the ordinance if it's adopted.

Commissioner Hildreth asked about the average length of time a resident resides in the park. Dr. Dunham said the average resident has lived five years in the park. Commissioner Hildreth asked whether residents who leave the park also take their mobile home with them. He asked when the last move-in of a home occurred. Dr. Dunham responded that most of the trailers are too old to move. The last trailer arrived at the park approximately six months ago, which he owns as one of his rental units.

**Ishbel Dickens, 101 Yesler way, Seattle, WA,** commented that she doesn't believe the proposal constitutes spot zoning because rezoning is allowed when there is a public benefit. Providing affordable housing is considered a public benefit. She suggested replacing older homes because they become impossible to maintain. In Snohomish County, the Housing Authority is asking manufacturers to build smaller sized units for the communities the county has preserved because they are facing the same issue. With mobile home manufacturers in Lewis County, it shouldn't be a problem for parks in Tumwater to follow the same example as Snohomish County. Rental homes are not covered under the Landlord Tenant Act but do come under the Residential Landlord Tenant Act, which has different provisions. Homeowners of

rental properties can evict tenants with only a 20-day notice.

The ordinance speaks to new communities and encourages the Planning Commission to identify criteria for new communities as expansive as possible to ensure the viability of mobile home park owners. She applauded the City for their willingness to address the issue of preserving manufactured housing in Tumwater. The seven major parks provide housing for approximately 500 people. There are number of counties and cities in the state that have already proceeded or are considering the same zoning changes that are being proposed for Tumwater.

Ms. Dickens noted within the *Whereas* section of the ordinance, the reason for the proposal is included. It's important for people to have options, especially seniors and low-income families, which should be encouraged. MHP zoning could provide a benefit to homeowners with the security of the community remaining a MFP and the owners receiving a tax benefit that may accompany a change in the ordinance. There will always be an opportunity for a park owner to request a zoning change of their property. She encouraged the Commission to recommend approval of the proposal and for it to be applicable to as many of the parks as possible.

Commissioner Kirkpatrick asked whether Ms. Dickens supports the rezone for the larger parks or for all parks to include the smaller parks. Ms. Dickens replied that it's interesting the City has a different statute of limitations than the state. The State defines any two or more spaces rented out for income as a MHP, whereas the City considers three spaces. Each homeowner should be considered and will be impacted.

Commissioner Gayton commented that Ms. Dickens has indicated that areas can be rezoned to improve economic viability. Ms. Dickens acknowledged the comprehensive plan amendment process is an annual process that provides an opportunity for a property owner to request a rezone of property.

**Donna Channell, 3244 66th Avenue SW, Laurel Park Estates,** reported that at the last meeting there was discussion on the number of police and fire calls dispatched to Laurel Park Estates. She said it appears that the park is under scrutiny. Fire calls to the park were mostly emergency calls by fire trucks because medics were responding to other calls. She said that in the three years she has lived there, there has never been a fire. On several occasions there has been looting of lawn ornaments from homeowners. Tenants were advised to contact the police. Most of the 70 response calls to the park were from vandals coming into the park and stealing property. She said she lives in a

wonderful park and she chose to move into that park because it is close to her children and work. If the gentleman who spoke earlier wanted to change the zoning in his park, then he should be able to come before the City and make that request.

Commissioner Hildreth asked about the disposition of homes whose owners have died. Ms. Channell indicated the homes were resold to new owners.

**Gary Rickets, 930 Trosper Road SW, Tumwater Mobile Estates,** shared that he and his wife moved to Tumwater a little over two years ago. He said the park is the third MFP they have lived in. The MFP is approximately the same age as Allimore. When people pass away, the family of the deceased typically sells the home. If the home is in need of repair, the manager and family working in partnership will either remodel or demolish the home and place a new home in the space for resell. The property that was originally on his lot was a 1964 singlewide mobile home. He said he chose to buy the home and paid to have it demolished and then placed a new a new home on the lot. They chose the area because of the location and services located in the surrounding area. It would be a shame to have all people in park communities relocate. He said he's invested his money into his home and they do not have the money to relocate their trailer to another park, which usually require a newer mobile home not less than five years old. Many of the homes are older than that and even more are not capable of moving. Although most of the parks are occupied by seniors, there are several parks that have family housing which provides a place for low to moderate-income families to live. There needs to be affordable housing available for the younger generation and not just seniors.

**Betsy Murphy, 5243 Bald Eagle Lane SW,** appealed to the Commission to support the zoning overlay. She said she's speaking on behalf of the seniors in the community because without them no one would be here today. They have made tremendous investments in their homes and a place where they can enjoy life and grow old gracefully. They have made the choice to live in the park communities because of the surrounding amenities and services. She said she's concerned park owners will sell to another owner who wants to build condominiums and single-family dwellings. Most of the residents cannot afford to live in a condominium or afford to move their current homes to another property. The overlay will protect seniors and their homes.

**John Woodring, Attorney for the Manufactured Housing Communities of Washington (MHCW), 2120 State Avenue, Olympia, WA,** reported MHCW is a trade association representing approximately 525 manufactured housing communities in Washington

with approximately 37,000 lots in the membership representing 60% of all lots in the state. He said he's submitted comments on the Tumwater draft zoning ordinance for manufactured housing communities which imposes a mandatory MHC zone designation for all manufactured housing communities in the City of Tumwater. There are three sections in the packet of legal analysis, which includes reasons on why a mandatory MHC zone is illegal. The second attachment is a memorandum dated January 24, 2008 from City staff to the GGC with information on problems with MHC zoning and constitutional issues. Finally, another document describes communities in the state that have been preserved for tenants. There are 27communities that have been placed on the list since 1987 and all the communities have been in the situation where willing owners sold to willing tenants who purchased the park. Not one park has been preserved in the state through implementation of a MHC exclusive zone. There are no MHC exclusive zones; only voluntary zones.

Mr. Woodring explained that a MHC exclusive zone would be illegal because it takes away property rights from owners. There are two cases involving a MHC zone pertaining to *Guimont vs. Clarke (1993)* and *Manufactured Housing Communities of Washington vs. State of Washington (2000)*. The court ruled in favor of the plaintiffs and indicated in the Guimont case that, *"Likewise in this case, the costs of relocating mobile home owners, like the related and more general problems of maintaining an adequate supply of low income housing, are more properly the burden of society as a whole than of individual park owners."*

It's not the responsibility of park owners to provide affordable housing. The Attorney General of the State of Washington provided advice on the GMA indicating that because government actions are characterized in terms of overall fairness, a taking or violation of substantive due process is more likely to be found when it appears that a single property owner is being forced to bear the burden of addressing some societal concerns, when in all fairness the cost ought to be shared by everyone.

Additionally, all of the properties have been zoned in accordance with the GMA for Single Family Residential, High Density Commercial and specific designations for uses.

Commissioner Hildreth asked whether information on the *Guimont* case is included in the information. Mr. Woodring replied that he can provide the Commission with a copy of the case.

Commissioner Mandeville commented that Mr. Woodring previously indicated that there are no exclusive zones for MHC in the state.

However, the cities of Auburn and Bothell both have exclusive MHC zoning. Commissioner Mandeville asked Mr. Woodring if he was referring to no action by any city on exclusive rezones. Mr. Woodring replied that his comments pertained to no MHC zones for the purpose of preserving MHCs. Those two jurisdictions are dealing with the expansion of MHC's. Most MHCs are nonconforming uses.

Commissioner Mandeville asked for clarification on the term "viable alternatives" as mentioned in the materials. Mr. Woodring replied that the attachment listing 27 communities that have preserved housing for tenants were the result of the owner of the park selling the park to the tenants or to the housing authority. Another alternative involves selling the property to a federal non-profit association. Ms. Dickens was involved in a situation in Olympia where tenants purchased the park and formed a cooperative.

Mr. Woodring said if the ordinance is adopted, it will be on the basis of maintaining MHCs as affordable housing and to preserve existing MHCs. Mr. Woodring advised that based on his opinion, the City hasn't met the burden of proof that is applicable for preservation of public interest for a rezone.

Commissioner Glasper asked for clarification on voluntary zones. Mr. Woodring replied that it's a situation where the park owner agrees to a rezone, which is usually accompanied with a tax benefit for park owners. Commissioner Glasper asked whether an owner who voluntarily agrees to a rezone under the ordinance can rezone the property at a later time. Mr. Woodring replied that it's based on the provisions within the ordinance.

**Les Spickler, 2221 E Eagle Lane SW, Eagles Landing**, urged the Commission to pass the ordinance. He said he agrees with the testimony of Ms. Dickens, Betty Murphy, and Garry Rickets.

Commissioner Mandeville asked why a designated MHC zone was included in the proposed ordinance instead of an overlay. Planner Ginther replied that an overlay includes additional restrictions in addition to the current restrictions in the underlying district. Commissioner Mandeville asked if an exception could have been drafted for those communities in zones where they would not be ordinarily allowed. Planner Ginther replied there are several different zones and provisions would need to be included for each zoning district. The current proposal is a cleaner process.

Planner Smith advised that if an overlay zone did not allow for any of the underlying uses, it would be problematic in terms of conflicting

with the comprehensive plan and land use designations encouraging different types of uses.

Chair Sullivan closed the public hearing at 8:13 p.m.

Commissioner Glasper asked about the process of presenting the amendments to the City Council. Planner Smith advised that the Comprehensive Plan amendments will move forward to the City Council as one package. However, the Commission may take action on amendments separately.

**MOTION:** **Commissioner Glasper moved, seconded by Commissioner Hildreth, to forward the Public Participation Plan to the City Council as recommended. Motion carried.**

**MOTION:** **Commissioner Gayton moved, seconded by Commissioner Goebel, to forward the Tumwater Urban Growth Boundary Adjustment to the City Council as recommended. Motion carried. Commissioner Mandeville opposed.**

**DISCUSSION:**

**MANUFACTURED HOME PARK GOALS, POLICIES AND MAP AMENDMENT PROPOSAL:**

Commissioner Goebel said the Planning Commission was asked for direction as to whether another goal was needed within the amendment. She asked staff to draft language for consideration and suggested not taking action on the matter until Commissioners have more time to review the issue.

Commissioner Hildreth agreed with postponing action on the issue. He said he has many questions regarding renting and leasing legalities, spot zoning, taxing changes, economical viable changes for tax changes, right of first refusal, exclusive zoning and *Guimont vs. Washington,* and the difference between mandatory and voluntary MHC zoning.

Commissioner Kirkpatrick suggested having the City Attorney advise the Commission on the issues because of legalities. Chair Sullivan noted the City Attorney is not available during the remainder of the week.

Chair Sullivan suggested deferring the issue to the next meeting to enable staff to draft language and for review by the City Attorney as well as providing information requested by the Commission.

Commissioner Kirkpatrick suggested discussing inclusion of smaller parks now or deferring the discussion to the next meeting.

Commissioner Hildreth commented that City and state regulations differ regarding the size requirements for smaller parks.

Commissioner Goebel reported the proposed ordinance includes language stipulating a minimum of six units an acre and a maximum of nine units an acre. It would be helpful for the discussion to have the language apply to the smaller parks as well.

Commissioner Mandeville suggested deleting language on attachment C, on page 27 stating, *"The Manufactured Home Park (MHP) land use designation is intended to protect manufactured home parks from the pressures of re-development and conversion to another type of land use.* On page 84, within the third paragraph, the third sentence pertaining to Allimore Carriage Estates is crossed out. Commissioner Mandeville questioned the outcome if Allimore Carriage Estates is recognized as a MHP.

Commissioner Glasper requested more information on voluntary zoning and the options that may be available for the City.

**ORDINANCE # O2008-009, MANUFACTURED HOME PARK DEVELOPMENT REGULATIONS AND REZONE:**

Commissioner Mandeville said the issue is complex because of the rights of owners of the parks as well as for the owners of the homes. The property rights of the homeowners are much different from those of an apartment renter. Owners pay property taxes and spend thousands of dollars to purchase the homes they live in and then thousands of dollars to place their homes in a park. The two issues are property rights for owners of homes and the rights of the landowners, and helping to mediate the conflict between the two parties. He suggested adding a section amending TMC 18.60.025 b. regarding rezoning. The City Council does not have many options other than approval based on current language in the ordinance. He suggested adding language reflecting that the actions cannot be detrimental to property rights and that it cannot be detrimental to the health, safety, and welfare of Tumwater residents. Similar language is included in the cities of Bellevue and Lynnwood's criteria for rezones. He suggested adding language requiring owners of MHPs to obtain a permit to close the park as well as submittal of a relocation plan for current tenants to give the City Council an opportunity to review the plan and determine if the owners of the homes are treated fairly and their rights are protected. Commissioner Mandeville offered to assist staff in drafting language.

Commissioner Kirkpatrick asked staff to elaborate on the property tax issue. Commissioner Goebel asked for information on the amount of a property tax reduction.

Commissioner Mandeville asked for information on language that

would preclude park owners from selling lots to homeowners similar to a condominium complex. Associate Planner Ginther confirmed the requests.

Commissioner Kirkpatrick commented that the City Council directed the Planning Commission to look at conditional uses. He said he reviewed the uses and doesn't believe any of the uses would be problematic to parks.

Chair Sullivan advised that the Commission will make no recommendation on the amendment for Mobile Home Manufactured Parks. The discussion will continue at the Commission's December 9, 2008 meeting. She asked about the timeline for a recommendation. Planner Smith replied there is no anticipation to have the proposal forwarded to City Council until after the first of 2009. Staff will obtain as much information as possible for the Commission's next meeting. If required the amendment can be continued until the first scheduled meeting in January 2009. He said he'll also ask the City Attorney to attend the December 9, 2008 meeting.

Commissioner Kirkpatrick suggested adding "spaces" on the bottom of page three of the ordinance where there was a suggestion to replace "land" for "lot."

**ADJOURNMENT:** **Commissioner Hildreth moved, seconded by Commissioner Goebel, to adjourn the meeting at 8:43 p.m. Motion carried.**

Prepared by Danielle Gardea, Recording Secretary
Puget Sound Meeting Services