# GINTHER

# EXHIBIT J

# AGENDA ITEM NO. 2

Meeting Date: December 9, 2008

TO:         Planning Commission

FROM:       Tim Smith, Senior Planner
            tsmith@ci.tumwater.wa.us
            David Ginther, Associate Planner
            dginther@ci.tumwater.wa.us

RE:         2008 Comprehensive Plan Amendments and Ordinance No. O2008–
            009 (Manufactured Home Park Development Regulations and Rezone)

---

1)  <u>References</u>   (Only list those attached.)

    A.   Manufactured Home Park Staff Report, Proposed Amendments and
         Letters/Written Comments
    B.   DRAFT Planning Commission Recommendation (Comprehensive Plan
         Amendments)

---

2)  <u>Action Requested / Staff Recommendation:</u>

    Staff requests the Planning Commission to continue discussions and forward
    a recommendation on the amendments to the City Council.

---

3)  <u>History and Facts Brief:</u>

    The City of Tumwater follows an annual Comprehensive Plan amendment
    process in accordance with State law.   The City Council reviewed and
    accepted the 2008 Docket of Comprehensive Plan amendment proposals in
    February and referred the proposals to the Planning Commission for
    recommendation.

    The Planning Commission held a public hearing on November 25th regarding
    the 2008 Comprehensive Plan Amendments and Ordinance No. O2008–009.
    Following the hearing, the Planning Commission discussed the amendments
    and subsequently voted to recommend approval of the amendments
    pertaining to the public participation plan and the urban growth boundary
    adjustment.  The Planning Commission did not take action on the
    manufactured home park Comprehensive Plan amendments and Ordinance
    No. O2008–009. The Planning Commission will continue discussions on these
    two items at their December 9th meeting.

4)   Discussions and Alternatives:

    A.    Recommend approval of amendments to City Council
    B.    Recommend approval of amendments to City Council with changes
    C.    Do not recommend approval of amendments to City Council
    D.    Continue discussion at next regular meeting

5)   Fiscal Notes:  None



# MANUFACTURED HOME PARK COMPREHENSIVE PLAN AMENDMENTS AND DEVELOPMENT REGULATIONS AND REZONE (ORDINANCE O2008-009)

Staff Contact: David Ginther, Associate Planner, City of Tumwater Planning and Facilities Department (360) 754–4210; dginther@ci.tumwater.wa.us

## Purpose:
To establish a new Comprehensive Plan Designation and zone district for manufactured home parks.

## Background and Process:
In 2007, residents of some manufactured and mobile home parks in Tumwater began contacting the City Council about their concerns about possible closures and conversions of these parks. Statewide there have been numerous closures of parks in the past few years. Recently there was an attempted closure near Lacey but the residents were able to save the park.

The City Council referred the issue of mobile home parks to the General Government Committee (GGC). The GGC (and a special subcommittee) held five public meetings on this issue between January and June of 2008. The GGC forwarded a draft ordinance back to the full City Council for review in July of 2008. The City Council then referred the issue to the Planning Commission for review as part of the 2008 Comprehensive Plan amendment cycle.

## Planning Commission Requests, Questions, Issues:
At the November 25, 2008, Planning Commission hearing a number of requests, questions, and issues were brought up by the Planning Commission. The results are as follows:
1. Spot zone and takings analysis
   a. This issue has been referred to the City Attorney for review.
2. Guimont v. Clark court case 121 Wn.2d 586 (1993)
   a. This issue has been referred to the City Attorney for review.
3. The question was asked that we review the first new paragraph on p. 27 of Comprehensive Plan amendments.
   a. This paragraph states the intent of the Manufactured Home Park designation. The intent section of the zoning district also mirrors the language found in this paragraph. Both sections discuss preserving affordable housing which is a theme repeated throughout the Comprehensive Plan changes and the zoning code amendments.
   b. Commissioner Mandeville has suggested utilizing one of the Growth Management Act mandates found in RCW 36.70A.070(2)(c) which

---

MANUFACTURED HOME PARK DESIGNATION AND ZONE DISTRICT
STAFF REPORT

requires a Comprehensive Plan to, *"(c) identifies sufficient land for housing, including, but not limited to, government-assisted housing, housing for low-income families, manufactured housing, multifamily housing, and group homes and foster care facilities;"*

c. Most of the possible additions/changes to the amendments would be similar to the following possible revision of language on p.27 of the Land Use Plan:

*2.2.6  Manufactured Home Park (6-9 DU/Acre)*
*The Manufactured Home Park (MHP) land use designation is intended to provide sufficient land for manufactured housing in accordance with the Growth Management Act, ~~protect manufactured home parks from the pressures of re-development and conversion to another type of land use.~~*

P.17 of the Housing Plan:

*2.1.1  Consider implementing a new land use designation and zoning district to provide sufficient land for manufactured housing in accordance with the Growth Management Act, ~~help to preserve and protect mobile and manufactured home parks from the pressures of development.~~*

d. Staff can add new language or change the existing language if Planning Commission feels the justifications for these amendments are not currently adequately stated and/or should reflect a new intent more closely aligned with the aforementioned Growth Management Act requirement. The changes would need to be reflected on pages 22, 27, 28, 40, 45, 88, 96, and 110 of the Land Use Plan; page 2 of the Littlerock Road Subarea Plan, and pages 17 and 19 of the Housing Plan. Also, the zoning ordinance intent section and whereas', the whereas section of the ordinance for the 2008 Comprehensive Plan amendments, and the findings for the Planning Commission Recommendation and City Council Final Order would need to be changed to be consistent.

d. Draft a new goal and policy for the Comprehensive Plan (Housing Plan):
*GOAL #13:  Ensure consistency with RCW 36.70A.070(2)(c) which requires sufficient land be available for all types of housing including manufactured housing.*

| *Policy* | *Objective* |
|---|---|
| *2.1* | *Designate areas specifically for manufactured home parks in order to provide sufficient land for manufactured housing.* |

---

MANUFACTURED HOME PARK DESIGNATION AND ZONE DISTRICT
STAFF REPORT

---

(3) 12.1.1    Consider creating a matching [new] zone district for manufactured home parks to ensure implementation of the manufactured home park designation.

5. Pros and Cons of Mandatory and Voluntary zoning regulations to protect manufactured home parks:

    a. <u>Mandatory</u>
       Pros

- Provides certainty to residents that existing manufactured home parks will remain in that use unless a comprehensive plan amendment/rezone is granted.
- Should have the effect of reducing the properties valuation, depending on the zone category prior to mandatory rezoning to a Manufactured home zone. Reduced property valuation will result in lower property taxes.

       Cons

- From a property owner standpoint and depending on the zoning classification prior to rezoning, significant reduction of property values could occur.
- It is possible a protracted appeal process could occur with one or more of the affected properties.
- Could have the effect of acting as a disincentive to creation of new manufactured home parks in Tumwater if property owners fear being placed in a mandatory manufactured home park zone.

    b. <u>Voluntary</u>
       Pros

- Would have fewer (or no) negative economic consequences for owners of manufactured home parks.
- Would most likely not cause protracted appeal and legal processes.

       Cons

- Jurisdictions that have made available voluntary rezones have not seen many (or any) takers.
- Would provide much less security to tenants within manufactured home parks.

6. Check on options for incentives for rezoning or agreements to stay a park:

    a. Lynnwood has instituted a program where if a park owner agrees to stay a park for a certain amount of years they get a substantially reduced utility rate. Currently there are no takers for the program after one year of being offered as an incentive to park owners.

7. Add a permit requirement to close a park

    a. Adding language to the existing ordinance requiring a permit for closure of manufactured home parks would significantly delay ordinance adoption because new environmental review documents

---

would need to be issued.   This would likely add two months to a Planning Commission recommendation.   Because of this, staff recommends that the Planning Commission discuss this issue. If the Commission wishes, a recommendation to further study this concept could accompany the recommendation to the City Council on the ordinance before the Commission currently.

8. Add new requirements to the criteria for a rezone

   a. Adding this sort of language would also significantly expand the scope of the ordinance and would also require new environmental review with the same delay as noted above. Staff recommends against adding rezone criteria specifying that a rezone is not detrimental to property rights or detrimental to the health and welfare of Tumwater residents. Our reasoning is that many time rezones are detrimental to property value, usually in the case of rezoning to a less intensive land use. This can negatively affect property value.   Regarding rezone criteria concerning possible detriment to the health and welfare of Tumwater residents, staff concern is that this can be very hard to objectively quantify.   If the Planning Commission wishes to address the issue of rezone criteria, staff would recommend looking at the issue as a separate work task.

9. Economic non-viability: reason for granting rezone out of the Manufactured Home Park Designation

   a. Staff does not recommend adding language to rezone criteria regarding economic non-viability.   The current rezone criteria already include language requiring a changed condition, which could include a change in economic circumstances. Sometimes, economic non-viability occurs through no fault of the owner, but sometimes economic problems arise with a business due to poor business practices. Staff is concerned that including this criteria could tend to encourage rezoning decisions that may not always be in the best interest of the public.   Again, if the Planning Commission wishes to review the rezone criteria, it would be preferable to make this a future work item.

10. Pros and cons of leaving or removing P. 84 of the Comprehensive Plan amendments.

   a. This section dealt with Allimor Carriage Estates being a transitional property due to zoning and location. It is currently designated and zoned General Commercial and is surrounded by commercial development with the same designation and zoning. If this section is left and the new designation/zone is applied to the property then there would be an internal inconsistency in the Comprehensive Plan and the zoning. However, it may also help as a way for the property owner to request a re-designation/rezone back to General Commercial. If the

ultimate intent is to not protect and preserve this park then it may be better to exclude it from the parks being redesignated and rezoned. It is the only park zoned for General Commercial.

11. Landlord-Tenant act vs Mobile Home Park Act:

These are separate issues that do not affect the proposed zoning and comprehensive plan changes. The proposed zoning and designation would apply to the entire "park", not just the units that are owned by the occupants. The main difference between an owner occupied unit and a renter occupied unit (where the owner of the unit does not reside within the unit) is the lease requirements as specified by State law. The renter occupied unit (does not own the unit) has a very short eviction notification requirement (less than one month) whereas the owner occupied unit (the tenant owns the mobile/manufactured home that they reside in) requires a one year eviction notification in the event of a closure of the park. In Tumwater there are very few mobile/manufactured homes within parks that are owned by the park owner and rented out.

12. Conflicts between current proposal and a Community land trust or resident association buying a park?

a. No conflicts identified. The acquisition of a mobile/manufactured home park is outside the scope of these amendments. It is a private party transaction that does not involve zoning. Nothing in the proposed zoning ordinance or Comprehensive Plan amendments has been identified as conflicting with the purchase of a park.

13. Use the word "space" or "spaces" in section 18.49.050(C) instead of the words "lot" or "land".

a. The original language used the word "lot". This is inconsistent with the Planned Unit Development (PUD) chapter so it was proposed to use the term "land". This was mainly because manufactured home parks do not have lots, if they had separate lots then they would not meet the definition of a manufactured home park; they would be a subdivision. Any manufactured home park being developed would go through the PUD process. Additionally, the building coverage limit listed in this section is for all of the land in the entire development as a whole, not each space in the park individually.

14. Estimate of property taxes utilizing a real mobile home park:

a. The staff report pointed out the link between property value and property taxes. If the new zone is approved and the property values of the parks are cut in half the corresponding property tax reduction would likely be approximately 50%.

b. The zone in which the park is located is going to play a part in determining how much of a difference in value there might be after the

re-designation and rezone. Generally, commercial properties are worth more than residential properties. Also, the range of densities in residential zones can affect the value of the property. For example, the Residential/Sensitive Resource zone only allows 2-4 units per acre while the Multi-Family High Density zone allows up to 29 units per acre. Depending on the demand for types of housing in the market the value of land can vary.

c. Western Plaza located at 1841 Trosper Road is currently valued by the Thurston County Assessors office at $3,257,100. The park paid $31,478.99 in property taxes in 2008. If the property value was cut in half to ~$1.6million and the property taxes due were also halved then the park would have owed $15,739.49.

d. Western Plaza was sold in February of 2008 for $4,059,000 so the Tax Assessed value of the park will likely be higher next year.

15. State vs Tumwater definition of "manufactured home park":

a. The State uses two or more units held out for rent in their definition of a mobile/manufactured home park. Tumwater uses three or more units in the definition. The decision was made that utilizing "two or more" could result in situations where a property with a manufactured home wants to bring another small manufactured home as an accessory dwelling unit (permitted in most zones) but cannot because they would then be classified as a mobile/manufactured home park. Accessory dwelling units are an important part of the affordable housing picture (p.26 of the Land Use Plan) and the City did not want to preclude the use of these units.

16. First right of refusal:

a. The Washington Supreme Court ruled that a state law giving tenants of mobile-home parks the right of first refusal to purchase the park when the owner offers it for sale was a taking of private property for private use, in violation of the state constitution, (Manufactured Housing Communities of Washington v. State, No. 66831-1, Nov. 9, 2000)

17. Density of the three "small" parks:

a. *6715 Henderson Boulevard 3 mobile homes/9.39 Acres = 0.319/acre

b. 6911 Henderson Boulevard 3 mobile homes /9.26 Acres = 0.324/acre

c. 5012 Rural Road 3 mobile homes /1.87 Acres = 1.6/acre

*The property at 6715 Henderson has three mobile homes and approximately three houses on the same parcel of land. The houses are not included in the density calculation.

18. Information on precluding condominiums:

a. P.28 of the Land Use Plan amendments includes a statement about condominiums in the Manufactured Home Park designation;

MANUFACTURED HOME PARK DESIGNATION AND ZONE DISTRICT
STAFF REPORT

> *"Subdivision and platting of properties for residential purposes, including condominiums, should not be allowed."*

## Related Issues:

The GGC, its subcommittee, and the City Council indicated that the following issues need to be discussed and a course of action decided upon:

*Application of the new designation and zone to small "parks":*
The amendments as drafted apply to all 10 mobile/manufactured home parks that have been identified as being located within the City of Tumwater (shown on the map). The Tumwater definition of a mobile/manufactured home park uses "three or more" mobile/manufactured homes. Seven of the ten "parks" within Tumwater are large and easily recognized as traditional mobile/manufactured home parks. However, three of the "parks" are properties that have only three or four mobile or manufactured homes on them. One of these properties is currently being platted as a residential subdivision (6715 Henderson Blvd). During the July 2008 Council meeting it was mentioned that applying the new designation and zone to these three small "parks" may not be appropriate.
A decision on which parks should be re-designated and rezoned needs to be made before sending the amendments back to City Council.

The Development Services department staff has suggested substituting the word "Land" for "Lot" in subsection 18.49.050(C). This section deals with maximum building coverage. The change was suggested so this section is consistent with the Planned Unit Development (PUD) chapter located in TMC 18.36. Manufactured home parks generally would utilize the PUD process to develop.
NOTE: See #13 above for a more recent discussion on this issue.

## Attachments:

1. Map of Mobile/Manufactured Home Parks in Tumwater
2. **Comprehensive Plan Amendments**
3. **Ordinance O2008-009**
4. Planning Commission Recommendation and City Council Final Order
5. 11-25-08 Dunham Letter
6. 11-26-08 Ware Letter



✓ Exclude 3 small parks & Allenmore

✓ Allenmore

1

# MOBILE&MANUFACTURED HOME PARKS IN TUMWATER
## CURRENT AND PROPOSED ZONING

OLYMPIA

TUMWATER

5012 RURAL RD
MFH to MHP

TUMWATER MOBILE ESTATES
MFH&SFM to MHP

EAGLES LANDING
SFM to MHP

ALLIMOR
GC to MHP

WESTERN PLAZA
MFM to MHP

THUNDERBIRD
VILLA
SFL to MHP

LAURAL PARK
MFM to MHP

6715
HENDERSON
SFM to MHP

VELKOMMEN
MFM to MHP

6911
HENDERSON
NC to MHP

TUMWATER

Current Zoning:
Allimor--General Commercial
Eagles Landing--Single Family Medium Density
Laural Park--Multi-Family Medium Density
Tumwater Estates--Multi-Family High Density&
Single Family Medium Density
Thunderbird Villa--Single Family Low Density
Velkommen--Multi-Family Medium Density
Western Plaza--Multi-Family Medium Density
5012 Rural Road--Multi-Family High Density
6715 Henderson--Single Family Medium Density
6911 Henderson--Neighborhood Commercial

Proposed Zoning:
Manufactured Home Park

Legend

MOBILE/MANUFACTURED PARKS IN TUMWATER

URBAN GROWTH BOUNDARY

TUMWATER CITY LIMITS

0  0.25 0.5    1    1.5    2    2.5
⊢━━━━━━━━━━━━━━━━━━━━━━━⊣ Miles

 N

CITY OF TUMWATER PLANNING AND FACILITIES DEPARTMENT
October 22, 2008   Mobile&Manufactured Home Parks.MXD

DISCLAIMER: The City of Tumwater does not warrant,
guarantee, or accept any liability for the accuracy,
precision, or completeness of any information shown
hereon or for any inferences made therefrom.

# LITTLEROCK ROAD
# SUBAREA PLAN



A component of the Tumwater Land Use Plan

are) far from certain, it proved difficult to accomplish adequate environmental review at the planning stage, which defeated some of the purpose of the PERF process. Substantial environmental review has been needed as projects are proposed in order to protect the environment.

Since adoption of the plan in 1997, some development in the subarea has occurred, primarily in the northern portion. The Home Depot, Tyee Center, American Legion Hall, Twin County Credit Union and the Bigrock medical clinic on Littlerock Road have all been developed since plan adoption. Fred Meyer has also been built during this time period but this area was not included in the subarea boundary as defined in 1997. Very little development has occurred in the mixed-use and residential portions of the subarea.

In the fall of 2004, Wal-Mart applied for development permits on a parcel just north of Kingswood Drive. Some in the community felt the size of the proposed store (approximately 207,000 sq. ft.) was not consistent with the original vision for the subarea. In addition, there were concerns that traffic impacts in the subarea were occurring at a faster rate than originally planned.

In response to these concerns, the City Council adopted a citywide development moratorium on retail developments in excess of 125,000 sq. ft. This moratorium did not affect Wal-Mart because the development permits were submitted in complete form prior to adoption of the moratorium. The purpose of the moratorium was to allow time for the Planning Commission and City Council to review the Littlerock Road Subarea Plan and, if necessary, adopt amendments to adjust the plan to reflect trends in recent development activity, traffic impacts, and other environmental concerns.

In 2008 a new land use designation and zoning district was created specifically for mobile/manufactured home parks. The intent of this new designation and zoning district was to help preserve the affordable housing provided by the existing mobile and manufactured home parks and protect them from the pressures of re-development. This issue is significant for this plan due to the fact that the Allimor Carriage Estates (located just south of the Albertsons grocery store on Littlerock Road) is currently designated and zoned General Commercial. This plan and the Economic Development Plan (currently being updated) both expected this particular site to transition to a general commercial type use. The act of changing the future land use designation and the zoning for the property from General Commercial to Manufactured Home Park needs to be noted but will not likely have a large enough impact on the Littlerock Road Subarea Plan or the Economic Development Plan update to warrant comprehensive updates to either plan.

## 1.4    SUMMARY OF MAJOR/SIGNIFICANT ISSUES

CITY OF TUMWATER
LITTLEROCK ROAD SUBAREA PLAN                                    *Adopted July 2006*



Figure 3.1 Recommended Land Use Designations

CITY OF TUMWATER
LITTLEROCK ROAD SUBAREA PLAN

*Adopted July 2006*



Allinor