1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

LAUREL PARK COMMUNITY, LLC, a
Washington limited liability company;
TUMWATER ESTATES INVESTORS, a
California limited partnership; VELKOMMEN
MOBILE PARK, LLC, a Washington limited
liability company; and MANUFACTURED
HOUSING COMMUNITIES OF
WASHINGTON, a Washington non-profit
corporation,

                            Plaintiffs,

    vs.

CITY OF TUMWATER, a municipal
corporation,

                         Defendant.

NO.  C09-5312 BHS

**DEFENDANT CITY OF
TUMWATER'S RESPONSE TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT**

## I.  INTRODUCTION

Both parties have moved for summary judgment.  The plaintiffs' motion for partial summary judgment fails to demonstrate that two ordinances that establish a Manufactured Home Park ("MHP") zoning district violate their constitutional rights.  Under the undisputed facts, the City is entitled to summary judgment, not the plaintiffs.

## II.  EVIDENCE RELIED UPON

In response to Plaintiffs' Motion for Summary Judgment, the City relies upon the Declarations of David Ginther, Michael Matlock, Jeffrey Myers and William Partin previously submitted in support of the City's Motion for Summary Judgment (Dkt. 21-24).  The City also relies upon the Declarations of Chris Carlson, Stephen Shapiro, the Declaration of William Partin in Opposition to the  Plaintiffs' Motion for Summary Judgment ("Partin II") and the Declaration of Jeffrey S. Myers in Opposition to the  Plaintiffs' Motion for Summary Judgment ("Myers II").

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

### III.  STATEMENT OF FACTS

**A.    FACTS**

The facts of this case are set forth in the City's Motion for Summary Judgment.

**B.    FACTUAL ERRORS BY PLAINTIFFS**

Plaintiffs' motion contains several factual errors and material omissions.   First, Plaintiffs incorrectly contend that the Use Exception in TMC 18.49.070 requires that an owner show that he meets both prongs of the test.  Motion at 6:3 (stating owner must show district prevents reasonable use "and" no viable use). The ordinance is phrased in the disjunctive, using  the word "or" to show that an owner can invoke the use exception by meeting either test.

Second, plaintiff contends that the ordinance forces an owner to keep the park for tenants in perpetuity.  Motion at 5:15-16.  This is false.  The City has adopted zoning that allows continued MHP operation as a permitted use, but it is not compulsory.  See TMC 18.49.020-.050;  Matlock Dec., ¶6.

Third, plaintiffs characterize the MHP District as a "single use" zone.  Their own witnesses acknowledged the 23 permitted, accessory or conditional uses set forth in the ordinance.  Eichler, 48:3-9.[1]  However, they choose to ignore these uses.  Plaintiffs have only unsupported, conclusory allegations by the owners that these other uses are not economically viable. This conclusion is the product of not doing any investigation into the allowed alternate uses.  See Eichler at 47:24-50:11; Schmicker, at 76:19-77:1.  Plaintiffs also apparently instructed their own expert not to conduct an assessment of the viability of conditional uses.  Wilson, 42:3-6. It is more accurate to say that the zoning makes the existing MHP use one of the permitted uses in the MHP District. .

Fourth,  plaintiffs contend that the owner must request a discretionary use exception in order to use any of the enumerated conditional uses in the Ordinance.  Motion at 5:20-21.  This is facially untrue.  The use exception allows reversion to uses allowed under the prior designation and is not

---

[1]  Deposition testimony is attached as Exhibit A-D to Myers II Declaration.  For ease of reference, each deposition will be referred to by the witness' name. Dep. of James Anderson, Ex. A; Dep. of William Schmicker, Ex. B; Dep. of Robert Eichler, Ex. C; and Dep. Of Jeanne-Marie Wilson, Ex.D.

**DEFENDANT CITY OF TUMWATER'S**
**RESPONSE TO PLAINTIFFS' MOTION FOR**
**SUMMARY JUDGMENT – 2**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1   a prerequisite for any of the 23 permitted, accessory or conditional uses set forth in the ordinance.

2   TMC 18.49.070.

3       Fifth, plaintiffs inaccurately claim the Western Washington Growth Management Hearings

4   Board upheld their property rights claim. See Motion at 7:1-6.  In fact, the Board held that Plaintiffs

5   have no property right to prevent a zoning change and it is not illegal to have a single use zoning

6   district.  Matlock, Ex. A at 12.  The only issue on which plaintiffs had any measure of success was

7   a ruling on a procedural challenge.   The Board held that the administrative record failed to

8   demonstrate compliance with the process for considering property rights set forth in an advisory

9   memorandum prepared by the Attorney General's Office, as required by RCW 36.70A.370.[2]

10  Matlock, Ex. A at 30.  The Board found that the City had demonstrated that it considered whether

11  the ordinances were a taking under GMA Goal 6 and did not agree with any of Plaintiffs'

12  constitutional arguments.  *Id.*

13      Sixth, the plaintiffs note that the City denied a permit for a replacement home at Laurel Park.

14  Motion at 6:10-12.  They fail to disclose that the City and Park Owner had already agreed to stay

15  their appeal so the City could amend its code to reflect a recent change in state law.  Carlson Dec.,

16  Exhibit A .  The City did so on February 16, 2010 and issued the permit for the replacement home

17  on March 19, 2010, the day on which the code amendment took effect. *Id.*, Exhibits B, C.

18  **C.    INADMISSIBLE EVIDENCE RELIED UPON BY PLAINTIFFS**

19      The evidence supporting Plaintiffs' Motion for Summary Judgment must be admissible.

20  FRCP 56 (e).  Much of the Plaintiffs' evidence is inadmissible and should be stricken.

21      **1.     Declaration of Jeanne-Marie Wilson**

22      The admissibility of expert testimony is governed by FRE 702.  *Daubert v. Merrell Dow*

23  *Pharms., Inc.,* 509 U.S. 579, 589 (1993).  Expert testimony is admissible if it is both relevant and

24  reliable. *Elsayed Mukhtar v. Cal State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002).  The

25

26  [2]  The City's consideration of the AG Memorandum is privileged and any violation is *damnum absque injuria*.
    RCW 36.70A.370(4) provides : The process used by government agencies shall be protected by attorney client
    privilege. Nothing in this section grants a private party the right to seek judicial relief requiring compliance with the
    provisions of this section.

**DEFENDANT CITY OF TUMWATER'S
RESPONSE TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT  – 3**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

Court must act as the "gate-keeper" to evaluate the relevance and reliability of expert testimony and must exclude expert testimony that does not satisfy the threshold requirements. *Elsayed Mukhtar*, 299 F.3d at 1063.

To meet the reliability prong, expert testimony must be evaluated under multiple factors to determine reliability and relevance. In *Daubert*, the Supreme Court focused upon the admissibility of scientific expert testimony. It pointed out that such testimony is admissible only if it is both relevant and reliable. And it held that it is the trial judge's task to ensure that "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.*, 509 U.S. at 597. The Court also discussed certain more specific factors, such as testing, peer review, error rates, and "acceptability" in the relevant scientific or technical community, some or all of which might prove helpful in determining the reliability of a particular scientific "theory or technique." *Id.,* at 593-594, 113 S.Ct. 2786.    These tests apply not only to scientific theories, but to all forms of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 148-49, 119 S.Ct. 1167 (1999).

Jeanne-Marie Wilson is a licensed appraiser.  She has not attained the coveted MAI designation for appraisers. Wilson, at 7:4-5.  She never testified as an expert witness and has never been admitted as an expert in court. Id., 8:25 - 9:18.  Wilson's testimony fails both the relevance and reliability prongs of *Daubert* and is inadmissible.  Wilson's report fails the relevance prong because it did not mention the MHP Zoning or assess the impact on plaintiffs' properties, which is the issue in this case. Wilson, at 17:4-7.  She did no analysis of its impact in her report because she was retained on December 4, 2009, just three days before her FRCP 26(a)(2)(B) Report was due on December 7, 2009.  *Id.*  Legal counsel instructed her to limit her analysis of the fair market value of the plaintiffs' MHPs as of December 31, 2008 under the assumption that the highest and best use was continued use as a MHP.  *Id.*

Both Wilson and the City's experts agree that to evaluate the impact of these ordinances, it is necessary to appraise the property using a before and after methodology.  Wilson, at 70:3-9; Shapiro Dec. at 2 ¶3; Partin Report at 27.  She testified that there was inadequate time to complete the "before and after" appraisal of the properties necessary to evaluate impact from the MHP Zoning

**DEFENDANT CITY OF TUMWATER'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 4**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

ordinances.  *Id.,* at 13:3-5.  Thus, all Wilson's December 7, 2009 report did was to establish an opinion as to the value of the plaintiff's property at its highest and best use before the ordinances were adopted.  Partin Report at 27; Wilson 13:23-14:18.

Wilson also failed to conduct her own analysis of the highest and best use of property or provide data showing market demand for another use of the property.  This violates the standards for appraisers, known as USPAP, Standard 1-3.  Shapiro Dec., ¶9, 11.  In so doing, she cannot present a reliable opinion and her declaration should be stricken.

Wilson also recognized that it was necessary to do a "before and after" analysis to determine the amount of the "redevelopment premium" mentioned in her declaration, but she later conceded that she had not done that analysis.  She testified:

> Q  Okay.  Let me ask you this:  As an appraiser, what methodology would you use in trying to measure what value the market is assigning to this premium that you have opined about?
> A  Well, it's the before-and-after valuation that I haven't done yet.  But that was understood that I would be completing after we did this preliminary valuation.
> Q  Have you done that analysis, as you sit here today?
> A  I have not.

Wilson Deposition at 70:3-11.

Thus, Wilson's statements about the existence of a redevelopment premium are not the product of any methodology recognized within the appraisal community and are speculative.  Shapiro Dec., ¶13.  Without doing the proper analysis, Wilson's opinions as to this "premium" or the alleged transfer of value from the owners to the tenants is guesswork and does not meet the *Daubert* requirement to be reliable.

Wilson's declaration is also inadmissible because it was not timely disclosed.  Where a party fails to comply with FRCP 26(a), the testimony of the expert should be excluded unless the party can show that its transgression of said rule was either "substantially justified" or "harmless".  FRCP 37(c)(1);  *F.D.S. Marine, LLC v. Brix Maritime Co.,*  211 F.R.D. 396, 399 (D. Or. 2001); *Yeti by Molly v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).  Notably, many courts consider that the "failure to provide an expert report that satisfies the specific requirements of Rule 26(a)(2)(B) [is not 'harmless" because it] undermines opposing counsel's ability to prepare for trial.

**DEFENDANT CITY OF TUMWATER'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 5**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

*Pena-Crespo v. Puerto Rico*, 408 F.3d 10, 13 (1st Cir. 2005).  The rule excluding such opinions applies even where the opinion is disclosed during depositions.  *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635 (7th Cir. 2008) (Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony); *LaMarca v. United States,* 31 F.Supp.2d 110, 122-23 (E.D. N.Y. 1998).

Wilson submitted the declaration on February 12, 2010, the Friday afternoon before her deposition, which was noted for February 15, 2010.  The deadline for expert witness disclosure was December 7, 2009, and Wilson submitted a report that did not address either 1) the alleged "transfer" of value from the owners to the tenants, nor  2) any "premium" associated with development.  It was an appraisal of the fair market value of the three plaintiffs' parks as of December 31, 2008, prior to adoption of the MHP zoning ordinance.  The untimely disclosure of the opinions on value transfer and redevelopment premiums is grounds to strike her declaration.

Even if the declaration were timely, Wilson's declaration did not provide the information required by FRCP 26(a)(2)(B) in expert reports.  Expert reports are required to be detailed, not sketchy and vague.  See FRCP 26 advisory committee's note; *Jenkins v. Bartlett*, 487 F.3d 482, 487 ("The purpose of the report is to set forth the substance of the direct examination.")  Wilson's declaration did not disclose the factual basis for her opinions.  See Wilson, at  56:13-22.  Here, plaintiffs' counsel apparently truncated the necessary scope of work (the before/after analysis) in an effort to "establish" Wilson as an expert, with the understanding that the needed analysis would be done later.  *Id.*, at 11:6-12.

### 2.    Declaration of John Woodring

 Plaintiff is not allowed to introduce as "fact" by way of declaration, what is actually its legal argument.  Declarations, which are supposed to "set forth facts as would be admissible in evidence," should not be used to make an end-run around the page limitations of (Local Civil) Rule 7 by including legal arguments outside of the briefs."'  *King Co. v. Rassmussen,* 299 F.3d 1077, 1082 (9th Cir. 2002).

**DEFENDANT CITY OF TUMWATER'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT  – 6**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

1   FRCP 56(e) requires that affidavits in support of summary judgment motions set out facts

2   that would be admissible in evidence at trial.  *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir.

3   2002) citing *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).  Evidence

4   which presents legal conclusions is not relevant and should be excluded.  *U.S. v. Duncan,* 42 F.3d

5   97 , 101 (2d Cir. 1994); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th

6   Cir. 2008).

7   John Woodring was identified as a fact witness, not as an expert.  The declaration of John

8   Woodring is riddled with inadmissible hearsay, legal opinion, statements unsupported by admissible

9   evidence, prejudicial and misleading statements, irrelevant evidence and inferences and legal

10  argument and conclusions and should be stricken.[3]    Plaintiffs also rely on Woodring's speculative

11  testimony to support the conclusion that it is unlikely that an owner will be granted a use exception

12  if applied for in the future.  Plaintiffs' Motion at 6:8-9.  Woodring cannot possibly discern what

13  decision will be rendered by a future City Council.  Such speculation is clearly inadmissible and

14  should be stricken.[4]

15  **3.     James Anderson Declaration**

16  Plaintiffs present the declaration of James Anderson, who became the manager of

17  Velkommen LLC three years ago.  His declaration is offered to prove the "investment backed

18  expectations" concerning Velkommen. He is the son of Phyllis and Wes Anderson who built the

19  mobile home park in 1982. Anderson at 19:23.  Wes Anderson died in 1984.  Phyllis is the sole

20  owner of shares of the LLC, which was recently formed for liability protection reasons.  Anderson's

21  declaration speaks for these expectations when the property was purchased using the term "we".

22  ───────────────
[3]  See Myers II, ¶8 (table with specific objections).

23  [4]  Woodring's allegations are also incomplete and argumentative.  His assertion, at 4-5, ¶10, that the City did not
    give adequate consideration to plaintiff's property rights was not the conclusion of the WWGMHB.  The Board

24  found that the City's ordinances did not violate the property rights goal of the GMA, RCW 36.70A.020(6):
        Because there is no right to the continuation of existing zoning, there is no dispossession of a

25      property right by City action that changes the zoning of their property. This includes a zoning
        change that limits the use of their property almost exclusively to manufactured home parks. As this

26      Board found in Achen, the "rights" intended by the Legislature could only have been those which
        are legally recognized, e.g., statutorily, constitutional, and/or by court decision. Petitioners have
        failed to demonstrate an impact on any such legally recognized right.
    Final Decision and Order at 12:1-9.  (Matlock Dec. Exhibit A)

**DEFENDANT CITY OF TUMWATER'S
RESPONSE TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT  – 7**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

He has no personal knowledge of the expectations that his late father had, nor can he testify as to Phyllis Anderson's expectancies.[5]  The property was purchased in 1975, when James Anderson was in second grade.[6]  Paragraph 2 of his declaration is inadmissible.   Likewise, his testimony, concerning a prospective purchaser's motives in not closing is speculative and hearsay. Anderson Dec. at 3, ¶12. It is not admissible to show any impact on the proposed sale from the City zoning.

## IV.  STANDARD OF REVIEW

A movant for summary judgment must show no dispute of facts under the evidence and that the movant is entitled to judgment as a matter of law.   FRCP 56.   The court draws all reasonable inferences in favor of the non-moving party.   See *FDIC v. O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir. 1992)  Genuine factual issues are those for which the evidence is such that a "reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S, 242, 248 (1986).    The Party seeking summary judgment cannot rest on mere allegations in pleadings or upon conclusory allegations in affidavits. *Sheets v. Dziabis,*, 738 F.Supp. 307 (N.D.Ind.1990).

On summary judgment, unsupported allegations without any significant probative evidence tending to support the complaint are insufficient,  as are conclusory assertions that factual disputes exist. *Rolland v. Primesource Staffing, LLC,* 457 F.Supp.2d 1221 (D.Colo.2006).   Affidavits or declarations must provide admissible evidence for the court to consider them. FRCP 56(e) . Conclusory or speculative testimony is insufficient to raise a genuine issue of material fact.

## V.  ARGUMENT

### A.    MHP ORDINANCE IS NOT A TAKING

**1.**      **Plaintiff Relies on** *Guggenheim v. City of Goleta***, which was withdrawn by the Ninth Circuit pending en banc review.**

Plaintiffs repeatedly attempt to shoehorn the facts of this case to fit the analysis of a rent control ordinance in *Guggenheim v. City of Goleta*, 582 F.3d 996 (9th Cir. 2009).   Plaintiffs did not

---

[5]  Anderson admitted he did not know the prior zoning of the property.  Anderson, at 33:9.  He testified that he is not the owner.  *Id.,* at 6:25. He testified that he had no idea if his mother consulted any land use planners about redevelopment. *Id.,* at 43:14-15. He also admitted that he only became the manager of the Velkommen LLC three years ago, even though he has been involved with managing the day-to-day operation of the park since 1985.

[6]  Anderson was a senior in high school from 1984-85.  Anderson, at 7:12-15.  He would have been in second grade when the property was purchased ten years earlier.

**DEFENDANT CITY OF TUMWATER'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT  – 8**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

foresee that the Ninth Circuit would grant en banc review and vacate the opinion, as they did on March 12, 2010. See Myers Declaration, Exhibit E. Given the Ninth Circuit's action, *Guggenheim* cannot be cited as precedent and is no longer valid law in deciding this case.

**2.    Plaintiffs mix due process and takings analysis**.

Plaintiffs urge the Court to determine whether the MHP Zoning is a taking because it places an alleged "burden" on them that should be borne by society as a whole. The Supreme Court overruled a similar test in *Lingle v. Chevron,* 544 U.S. 528, 125 S.Ct. 2074 (2005). *Lingle* held that the formula inquiring whether government regulation of private property "substantially advances" legitimate state interests prescribes a due process inquiry, and is not an appropriate test for determining whether regulation effects Fifth Amendment taking, abrogating the test from *Agins v. City of Tiburon*, 447 U.S. 255, 260. Plaintiffs make the same error here, applying a test that is relevant to the substantive due process analysis, not a takings claim.

Plaintiffs misread *Lingle* as supporting their proffered test based on *Armstrong v. United States*, 364 U.S. 40, 49 (1960) to analyze a regulatory takings claims. Plaintiffs' Motion at 9-10.[7] In *Lingle,* the Court noted an argument based on the language from *Armstrong*, but rejected that passage as a takings test, because it commingled the due process and takings analysis and did not inform the court how a regulation would identify those regulations whose effects are functionally comparable to government appropriation or invasion of private property. *Lingle,* at 543. The Court rejected the appeal to the analysis in *Armstrong*, stating:

> But that appeal is clearly misplaced, for the reasons just indicated. A test that tells us nothing about the actual burden imposed on property rights, or how that burden is allocated cannot tell us when justice might require that the burden be spread among taxpayers through the payment of compensation. The owner of a property subject to a regulation that effectively serves a legitimate state interest may be just as singled out and just as burdened as the owner of a property subject to an ineffective regulation. It would make little sense to say that the second owner has suffered a taking while the first has not. Likewise, an ineffective regulation may not significantly burden property rights at all, and it may distribute any burden broadly

---

[7] Plaintiffs also cited, at 8-9, to this passage as quoted in *Penn Central Transp. Co. v. City of New York,* 438 U.S. 104, 123 (1978). *Penn Central* does not endorse this passage as a takings test, but merely is recounting the difficulty in the Court's prior attempts to develop a has been unable to develop any "set formula" for determining when "justice and fairness" require that compensation by the government. *Lingle* makes clear that the proper test is the three-factor analysis set forth in *Penn Central,* not the analysis suggested by *Armstrong*.

**DEFENDANT CITY OF TUMWATER'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT  – 9**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

and evenly among property owners.  The notion that such a regulation nevertheless "takes" private property for public use merely by virtue of its ineffectiveness or foolishness is untenable.

*Lingle,* at 544.

In place of *Agins* and *Armstrong,* the holding of *Lingle* is clear.  Regulatory takings claims are to be evaluated under the *Penn Central* test.[8]  The due process analysis is entirely separate.  Given *Lingle's* reformulation of the takings analysis, it is highly doubtful that the language from *Armstrong v. United States* relied upon by plaintiffs has any bearing on a takings claims.

### 3.    The MHP Zoning is not a facial taking of Plaintiffs' property.

Plaintiffs' have limited their motion for summary judgment to a facial takings challenge.[9]  In facial takings claims, the inquiry is further limited to whether "mere enactment" of the regulation has gone too far.  See *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 736,  n. 10, 117 S.Ct. 1659, 1666,  n. 10 (1997).  Indeed, the Court recognized that facial takings challenges "face an uphill battle since it is difficult to demonstrate that mere enactment of a piece of legislation deprived the owner of economically viable use of his property."  *Id.*  The test for whether a regulation is a facial taking is straightforward.  "A  statute regulating the uses that can be made of property effects a taking if it "denies an owner economically viable use of his land ...."  *Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc.,* 452 U.S. 264, 295-296, 101 S.Ct. 2352 (1981).

Although courts generally look to the regulation's general scope and features, the plaintiffs must produce sufficient facts concerning the effect of the challenged regulation to provide a meaningful analysis of the *Penn Central* factors.  Even in a facial challenge, the Ninth Circuit recognized the need for plaintiffs to provide evidence addressing the *Penn Central* factors.  *Garneau v. City of Seattle*, 147 F.3d 802, 807-08 (9th Cir.1998) (evaluating a facial regulatory takings claim,

---

[8]  *Lingle* also rejects the *Agins* "substantially advances a legitimate purpose" inquiry because it inappropriately interjects the Court into legislative fact finding, eschewing the traditional deference given to legislative findings of fact.  *Lingle,* 447 U.S. at 545.  Plaintiffs' analysis has a similar flaw as their summary judgment motion pays no attention to the legislative determinations supporting the MHP Zoning.

[9]  Plaintiffs' complaint has no such limitation, but broadly claims that the city ordinances constitute a taking.  See Complaint, ¶¶37-40.  The Complaint does not state whether it is an as-applied taking or a facial taking.

**DEFENDANT CITY OF TUMWATER'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT  – 10**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

and stating that plaintiffs have the burden of "introducing evidence of the economic impact of the enactment ... on their property").

Plaintiff notes that in a facial challenge, the court evaluates whether there is any circumstance where the regulation could be valid.  Here, the validity of the ordinance is demonstrated by the circumstances applicable in Tumwater.  A facial challenge does not analyze without resort to facts, as plaintiffs propose. Instead, the Supreme Court has repeatedly recognized that "whether a particular restriction [amounts to a taking] depends largely 'upon the particular circumstances [of each] case' "-that is, on "essentially ad hoc, factual inquiries." *Penn Central*, 438 U.S. at 124; *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,* 216 F.3d 764, 771-772 (9th Cir. 2000).

### 4.     The MHP Zoning Is Not a Taking under *Penn Central*.

#### a.     Plaintiffs' Present No Evidence of Economic Impact from the MHP Zoning.

The first factor in the *Penn Central* test is to weigh the economic impact of a regulation. *Penn Central*, 438 U.S. at 124.  A police power regulation is not invalid simply because it prevents the highest and best use of the land. *Id.*, 438 U.S. at 125; *Haas v. City & County of San Francisco*, 605 F.2d 1117, 1120 (9th Cir. 1979). Nor is a regulation invalid merely because it dramatically reduces the value of property. *E. g.*, *Hadacheck v. Sebastian*, 239 U.S. 394, 36 S.Ct. 143 (1915) (value reduced from $800,000 to $60,000); *MacLeod v. Santa Clara County,* 749 F.2d 541 (9th Cir.1984).  Indeed, *Penn Central* itself cautions that the exercise of the police power will frequently affect property values, but that alone does not create a taking.  *Penn Central,* 438 U.S. at 125. Zoning laws are a "classic" example of laws that may adversely affect, or even destroy a property's value, without constituting a taking.  *Id.*

Plaintiffs make unsupported claims of "significant economic impact", but have no evidence to support this claim.  Even where bringing a facial claim, plaintiffs must produce evidence of economic impact, not make unsupported allegations.  *Garneau*, 147 F.3d at 807-08 (stating that plaintiffs bringing a facial challenge "must show that the value of their property diminished as a consequence" of the regulation).  See also, *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480

**DEFENDANT CITY OF TUMWATER'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT  – 11**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

U.S. 470, 107 S.Ct. 1232 where the Supreme Court found that the property owners's facial challenge under *Penn Central* failed because the evidence the property owners provided was insufficient to demonstrate economic harm in any significant amount. The Court found against the property owners because their evidence did not show that the mere enactment of the statute restricting subsurface mining amounted to a taking. *Id.*

*Keystone* is instructive in evaluating claims where continued use of property is allowed and the owners continue to make profitable use of their property.  The Court observed that the facial challenge was especially difficult in such circumstances, stating:

> The hill is made especially steep because petitioners have not claimed, at this stage, that the Act makes it commercially impracticable for them to continue mining their bituminous coal interests in western Pennsylvania. Indeed, petitioners have not even pointed to a single mine that can no longer be mined for profit.

*Keystone,* 480 U.S. at 495-96.

Likewise, the Plaintiffs here have an especially steep hill to prove their facial taking claim, as they all are permitted to continue operation of the existing mobile home parks on their property. Similar to the petitioners in Keystone, all of the plaintiffs' MHPs regulated under Tumwater's MHP Zoning continue to make large profits from this operation.  Hence, they cannot show a facial taking.

The plaintiffs' motion is not supported by any evidence showing that their profits or property values have diminished.  Even if the court does not exclude the plaintiffs' expert testimony, her opinions fail to show any economic impact from the City's ordinances.  Their appraiser did not do any analysis of the fair market value "before and after" the enactment of the ordinances, which is the necessary methodology to show impact to fair market value.  See Dec. of Shapiro at ¶4, Partin II at ¶20.  Her declaration itself does not state any impact, other than a conclusory allegation that an unquantified premium has been lost. Wilson Decl., at ¶19.   This is insufficient evidence to support the claim of "significant economic impact".  At her deposition, the appraiser recognized that she had not done the before and after analysis necessary to identify such a premium and therefore she could not quantify any alleged "premium" associated with plaintiffs' properties. Wilson, 70:3-11.  Her analysis did not even address two of the three parks owned by the plaintiffs.  Even if she had done the necessary evaluation, the present impact of any lost premium would be "de minimis"

**DEFENDANT CITY OF TUMWATER'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT  – 12**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

because there is no present demand for redevelopment of plaintiffs' properties.  Partin II, at ¶¶7, 13.

Wilson conceded that she had done no analysis of when the plaintiffs might be able to realize a

return on any option to redevelop the property.  Wilson, 60:11-18.

Wilson further acknowledged that there would be no premium if the highest and best use

of plaintiffs' property before enactment of the ordinances was as a mobile home park.  Wilson,

71:8-19.  She did not analyze what the highest and best use was, but assumed that the highest and

best use was continued use as a mobile home park.[10]  The concession that highest and best use

remains unchanged contradicts her assertion that there is any premium that could have been lost.

Her report evaluated of the "fair market value" as of December 31, 2008.  This term

incorporates what a willing buyer would have been willing to pay on this date, and would

necessarily include any value associated with potential redevelopment.  Partin II, ¶13.  It also

evaluated the property at its highest and best use, which was assumed to be as a mobile home park.

Shapiro Dec., at¶ 16.  Given her conclusion that highest and best use was as a mobile home park

before the ordinances were adopted, Wilson could not have reasonably placed any potential

economic benefit upon any alternate use other than as mobile home parks.  *Id.*  In this event, Wilson

cannot reasonably testify that there is any damage to any subject property as a result of the zoning

change. Moreover, because she did no evaluation after the ordinance was adopted, she cannot testify

as to how much, if any, of the premium was affected by the Ordinance.

Even if Wilson's unsupported, untimely testimony about a premium is considered, it does

not show a facial taking.  At most it shows some small measure of impact for one of the three parks

that are owned by the plaintiffs.[11]  No similar evidence is presented for the remaining parks, and

Wilson cannot quantify the amount of this premium.

---

[10]  Wilson also conceded that the offer could be explained because Velkommen's rents are below market and a buyer might plan to increase their revenue by bringing them up to the prevailing market rate.  Wilson, 65:4-11.

[11]  The difference between the unaccepted offers and Wilson's opinion of fair market value is minimal.  See Wilson, at 64:18-65:3.  A difference of $100,000 - $200,000 in value is only between 7% - 13% of Wilson's appraisal of value for Velkommen.  Courts have routinely sustained zoning ordinances with such minimal impacts.  *Vacation Village, Inc. v. Clark County, Nev.,* 497 F.3d 902 (9th Cir. 2007).  *Penn Central,*438 U.S. at 125-126, holds the zoning ordinances may have a much greater impact, including reducing value up to 85%.

**DEFENDANT CITY OF TUMWATER'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT  – 13**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

### b.   The MHP Zoning Does Not Interfere with Reasonable, Investment-backed Expectations.

In analyzing the second factor, *Penn Central* began by looking at the extent to which the regulation interfered with the "primary" expectation of the property owner – continuation of the existing use of the property and its ability to exploit the property for ongoing profit. *Penn Central,* 438 U.S. at 136.  A zoning ordinance or other police power enactment is not a taking if it does not interfere with an existing profitable use of property, even where that use is an "interim" use and the enactment prevents the short-term "highest and best use". *MacLeod,* 749 F.2d at 547-48.

It is well established law that the interference must be with something more tangible than possible future uses. *Penn Central* rejected the very argument advanced by plaintiffs when it said:

> the submission that appellants may establish a "taking" simply by showing that they have been denied the ability to exploit a property interest that they heretofore had believed was available for development is quite simply untenable.

*Penn Central,* 438 U.S. at 130.

### (1)   There Is No Interference with the Owners' Primary Expectation to Operate a MHP.

It is clear that the plaintiffs bought their property to operate a MHP.  This is not in dispute. Nor is it debatable that the plaintiffs may continue to operate as a MHP under the zoning regulations adopted by Tumwater.  All the City has done is rezone the property to allow for continuation of its existing use as a conforming use.  It is further undisputed that this expectation remains highly profitable for the plaintiffs.  This fact is clearly illustrated in the tables attached to the Declaration of William Partin, Partin II at 2, ¶2, Exhibits A, B, and C.  Moreover, it is clear in Tumwater Mobile Estates' current balance sheet that their profits actually increased after adoption of the MHP zoning. *Id.,* Exhibit D. [12]

Plaintiffs' argue that the fact that it was "nonconforming" supports an expectation that it would be extinguished.  Motion at 13:11-19. This argument is unsupported and nonsensical.  The plaintiffs have operated from 28-45 years and all testified before the City Council that they had no

---

[12]  Tumwater Mobile Estates was the only plaintiff to produce financial records from 2009, after the adoption of the MHP Zoning Ordinances.

**DEFENDANT CITY OF TUMWATER'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT  – 14**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

present plans to convert to another use.   There is no support that they thought they had to

discontinue operation because they were formerly designated as a non-conforming use.

**(2)**   **Plaintiffs' Speculative Whims to Potentially Redevelop the Property Are Not Reasonable Investment Backed Expectations.**

Plaintiffs offer remarkably similar declarations to support their claim that the City ordinance

interferes with the potential future conversion to another use.  None of the plaintiffs had any specific

development plans.  None had taken any steps to implement or realize these "expectations".  Indeed,

Velkommen LLC's general manager referred to his discussions about redevelopment as "whims".

Andersen at 43:8-9.  These are not "distinct" expectations as referenced in *Penn Central,* 438 U.S.

at 124, 128.  The fact that the prior zoning on property allowed certain uses other than as a MHP

does not create a reasonable investment backed expectation that they will be able to someday

convert to such uses.  *Id.,* at 130.  Nor does the existence of other options negate the actual choices

made by the Park Owners for these properties, which was to create a MHP use.  The plaintiffs are

realizing their actual expectation, which is to operate as a MHP.

The plaintiffs are realizing their primary expectations and have done so by operating their

MHPs for the past 28-45 years.  They have not made any substantial investment in redevelopment

of their property, but instead have been content to realize substantial actual returns on their

investment by continuing their extremely profitable use as a MHP.  See Partin Report, 6-11.

The characterization of the MHPs as an "interim" use does not show a reasonable investment

backed expectation to convert it to something else.  It strains credulity to refer to parks that are

between 28 and 45 years old as "interim" or "temporary uses".  Shapiro, ¶7.  An MHP is not

"interim" any more so than any other use, such as construction of an office building or strip mall,

that could be replaced with a more valuable use if market conditions warrant the change.  *Id.*

Redevelopment would be considered feasible if and only if the highest and best use of a property

changes such that an alternate use will increase its economic value.  *Id.*  When demand exists for

a more profitable, legally permissible use than an existing use, that use will become the highest and

best use, regardless of whether the property is a MHP or any other use. A truly "interim" use is one

for which there is an imminent change of use planned due to market conditions.  *Id.*  The stable

**DEFENDANT CITY OF TUMWATER'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT  – 15**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

1  income attributable to the subjects, continued market demand for their current use and serviceable

2  physical conditions suggest that none of the subjects are operating on an interim use basis. *Id.*

3          **(3)      The Use Exception in TMC 18.49.070  protects the precise expectation that plaintiffs claim is violated by MHP Zoning**.

4  The "expectation" that the Plaintiffs claim is being interfered with is stated in their brief as

5  follows:

6          They anticipated using their properties as mobile home parks <u>as long as that use was viable</u> and then expected to be able to turn to other economically productive uses at their discretion.

7

8  Plaintiffs' Motion at 13:4-6.

9          On its face, the City's MHP Zoning Ordinance explicitly safeguards this very expectation

10  by providing a use exception that allows the zoning to revert to its prior designation if the owners

11  can show either: 1) they do not have reasonable use of their property under the MHP zoning; <u>or</u> 2)

12  the uses authorized by the MHP zoning are not economically viable at the property's location.

13  Thus, on its face, there is no interference, even with the plaintiffs' remote desires to convert the

14  property to another use when its existing use in no longer viable.

15          **c. The Character of Tumwater's Action is Not Confiscatory in Nature**.

16          The third prong of the *Penn Central* analysis is to evaluate the character of the governmental

17  action. Plaintiffs' characterization of this prong again relies upon *Guggenheim,* which is no longer

18  good law. Plaintiffs Motion at 9-10.  In doing so, they do not address the actual language of the

19  *Penn Central* test. [13]  The correct analysis is to determine if the regulation requires a physical taking,

20  which is more likely a taking, or is legislation that arises from some public program adjusting the

21  benefits and burdens of economic life to promote the common good.  *Penn Central,* 438 U.S. at

22  124.  Here, the character of the MHP Zoning is not a confiscatory action or physical invasion which

23  is likely to result in a taking.

24

25

26  [13]  Plaintiffs discussion repeats their mistaken due process analysis instead of focusing on what Penn Central describes as the "character" of the government action. See Plaintiffs' Motion at 13-14.  The Penn Central test focuses on whether the regulation forces a physical invasion, which is more readily found to be a taking than would a zoning regulation or  "some public program adjusting the benefits and burdens of economic life to promote the common good".  *Penn Central,* 438 U.S. at 124..

**DEFENDANT CITY OF TUMWATER'S**
**RESPONSE TO PLAINTIFFS' MOTION FOR**
**SUMMARY JUDGMENT  – 16**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

1   The character of this action is purely regulatory over the allowed uses of land within the

2   City, which is designed to promote the common good and adjust benefits and burdens of economic

3   life.  It does not impose any direct "burden" on plaintiffs, whose existing use of land is undisturbed

4   by the new regulation.  The owners are not compelled to allow use of their land, but are permitted

5   to continue their existing, lucrative and profitable mobile home park use.  Declaration of Matlock

6   at 3, ¶6.  Plaintiffs are also free to close the parks if they so choose, or adopt another of the 23

7   allowed uses.  *Id.*  Moreover, the Ordinance does not impose any regulation on how they operate

8   their businesses or what rents may be charged. *Id.*  Thus, the character is not the type that courts

9   typically determine to violate the Takings Clause.

10       **5.    Plaintiffs rely on inapposite case law.**

11       **a.  *MHCW v. State of Washington,* 142 Wn.2d 347, 13 P.3d 183 (2000).**

12   *MHCW* involved a statute that created a right of first refusal on behalf of tenants before a

13   park owner could sell the park.  It is not comparable to the zoning designation  created for MHPs

14   in Tumwater, which restrict allowed uses, not the sale of property.[14] A right of first refusal is itself

15   a valuable property right.  *MHCW,* 142 Wn.2d at 365-67.   *MHCW* held that the statue abrogated

16   this fundamental attribute of property, namely the right to sell and to select the buyer, and gave it

17   to the tenants.  *MHCW,* 142 Wn.2d at 368.[15]

18       Plaintiffs resort to the "bundle of sticks" description of property rights, but fail to identify

19   what "stick" is at issue in this case.  Plaintiffs' Motion at 16:12-18.  Their failure to identify a

20   specific property right is hardly surprising, because they could not do so to the WWGMHB, which

21   held that they had no property right to continued zoning codes.  Matlock Ex. A at 12. ("Because

---

22

23   [14] In his concurring opinion in *MHCW*, Justice Sanders expressly distinguished the right of first refusal statute from
     situations involving use restrictions, stating:

24       I think considerations pertaining to use restrictions must be applied to circumstances involving use
         restrictions, not deprivations which destroy or appropriate one of the other fundamentals of
         property ownership.

25   MHCW, 142 Wn.2d at 381-382 (J. Sanders, concurring).

26   [15]  The creation of a right on behalf of private parties was found not to be for a "public use".  Although the Court
     held that its interpretation of "public use" and "private use" was more restrictive under the Washington  State
     Constitution, this is the only difference between state and federal takings jurisprudence, and is not implicated by the
     issues arising from Tumwater's zoning ordinance.

**DEFENDANT CITY OF TUMWATER'S**
**RESPONSE TO PLAINTIFFS' MOTION FOR**
**SUMMARY JUDGMENT  – 17**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

there is no right to the continuation of existing zoning, there is no dispossession of a property right by City action that changes the zoning of their property.")  Further, Plaintiffs' appraisal expert could not identify what "stick" was being taken.  Wilson, 44:19-25.  The MHP Zoning does not approximate the right of first refusal statute in *MHCW* which regulated when and to whom a park owner may sell his property.  Under the City's zoning, the park owner remains free to sell to any willing buyer.  *MHCW* is not germane to Tumwater's zoning ordinances restricting use of property.

### b.  *Guimont v. Clarke,* 121 Wn.2d 586, 854 P.2d 1 (1993).

Plaintiffs continue to confuse due process and takings jurisprudence.  Nowhere is this more evident than in their erroneous contention that *Guimont v. Clarke* held that relocation assistance fee was a taking.  Plaintiffs' Motion at 14:15-16.  The court actually ruled exactly opposite on the takings claim, ruling that the imposed when park owners closed, a relocation assistance fee was <u>not</u> a taking. *Guimont,* 121 Wn.2d at 608 *("[*W]e hold the trial court erred in ruling the Act results in an unconstitutional taking of property without just compensation.")

### c.  *Cienega Gardens v. United States*, 331 F.3d 1319 (Fed. Cir. 2003)

The *Cienega Gardens* case cited by plaintiffs was one of several in a lengthy series of cases evaluating complex takings claims.  These cases involved regulations under the Low-Income Housing Preservation and Resident Homeownership Act that caused a 96% reduction in the rate of return on the plaintiffs' investment by denying them their contractual rights to prepay interest.  The 2003 decision found a temporary regulatory taking because it believed that vested property rights had been abrogated.  331 F.3d at 1328. The Court remanded for further consideration, ruling that specific findings of fact about the effects of the legislation on the plaintiffs are necessary to complete the analysis of the economic impact factors.  The court's analysis was predicated on "an analysis of the ... [p]laintiffs' actual expectation because we require actual expectation of, or reliance on the government not nullifying the ... [p]laintiffs' contractual and regulatory rights as a threshold matter." 331 F.3d at 1346. On subsequent appeal, the Federal Circuit found no taking under the statute, citing *MacLeod v. Santa Clara County* with approval.  *Cienega Gardens v. United States*,

**DEFENDANT CITY OF TUMWATER'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT  – 18**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

503 F.3d 1266, 1289 (9th Cir. 2007). The facts under this complicated housing program are nothing like the zoning regulations at issue here.

**B.    MHP ZONING NOT A DUE PROCESS VIOLATION**

    **1.    The Minimal Scrutiny, Rational Basis Test Applies to the Due Process Claim.**

The Plaintiffs concede that the analysis of their substantive due process claim in federal courts is governed by the classic minimal scrutiny, rational basis test. Plaintiffs' Motion at 19:5-9. They further conceded that at least one of the stated objectives of MHP Zoning – achieving the affordable housing goal of GMA– is a legitimate public purposes. Plaintiffs' Motion at 19-20.

    **2.    The City's MHP Zoning Is Rational and Serves Legitimate Public Purposes**.

The zoning adopted by the City is a rational means to achieve a legitimate purpose. That zoning ensures sufficient availability of a mix of housing types to serve all segments of economic spectrum and ensures continued availability of MHPs to serve future needs.

The City's zoning does not require plaintiffs to exclusively bear the burden of affordable housing. It does not impose any burden on them that they were not already bearing. The <u>plaintiffs</u>, not the City, established the MHP use of their property. The Ordinance rezones the property and allows this use to continue. The city has not singled out the plaintiffs to bear any new burden. No fees are imposed. The rents are not controlled. The plaintiffs are not regulated in selling their lucrative businesses. The zoning is not a violation of substantive due process.

    **3.    Plaintiffs Concede That Washington Constitution Does Not Provide Greater Protection than Federal Constitution.**

Plaintiffs acknowledge, in a footnote, that the protection afforded under the State Constitution's due process clause is equal to that provided by the Federal Constitution. Motion at 18, fn. 16. Given this admission, it is unnecessary to apply the separate tests used by Washington Courts to assess whether a law is "unduly oppressive".

    **4.    Even under State Test, MHP Ordinances not Unduly Oppressive**

Even if the Court were to evaluate the Tumwater Ordinances under the Washington due process test, the plaintiffs do not produce any evidence that shows it is violated. Significantly, they disregard the ample evidence of their ongoing, increasing profits in operating the MHPs. See Partin

**DEFENDANT CITY OF TUMWATER'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 19**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

II, Exhibits A-D.   Their contention is that zoning their property for the existing profitable use, that they chose to establish and have continued for decades is somehow oppressive.  This contention is so facially absurd that plaintiffs must divert attention to other allegations of mistreatment.

The plaintiffs assert conclusory allegations that the Ordinance has a significant economic impact.  They have simply made this up because their expert did no "before and after" analysis of the impact of the ordinance.  Moreover, she used the common income capitalization approach to value, which multiplies the net income of property by a capitalization rate to produce a fair market value. Since the evidence shows that the profits of the plaintiffs are increasing, this approach would dictate that the values of their parks would also be increasing.

Plaintiffs offer conclusory assertions that the owners will be unable to change the existing use, even if authorized under the zoning code.  Plaintiff's Motion at 21:4-5.  This is not evidence of oppressive means, especially since the owner of Tumwater Mobile Estates testified that in his experience, a city council will look favorably on a proposed rezone to commercial use in order to get the tax benefits, regardless of the current zoning.  Schmicker at 41:24 - 42:8.  Moreover, it cannot be regarded as "oppressive" to rezone the property when the owners have never sought to do anything other than operate their MHPs.

Plaintiffs' complaint that the owners had no advance warning or opportunity to alter their present uses is contradicted by the Owners' own assertions to the City during the 18 months that the Ordinances were considered.  During that time, the owners, and their attorneys, uniformly denied that they had any plans to convert to another use or close their parks.[16]   Now they complain that they didn't have a grace period to accomplish this change?  Plaintiffs cannot testify one way to the City Council and then complain that the City failed to accommodate what they disavowed any interest in.  Finally, the assertion that they did not have an opportunity to change thier use before the regulation took effect is false.  The proposal took a 18 months to adopt. The ordinances were

---

[16]  See, e.g Missall Ex. F (testimony of Woodring, BN 63) (MHCW does not consider any Tumwater parks at risk of closing or converting to other uses); *Id.,* Exhibit O, Testimony of Eichler, BN 167, ("no plans to close the park"); *Id.,* Testimony of Bill Clarke, attorney for Tumwater Mobile Estates, BN 165 (same).

**DEFENDANT CITY OF TUMWATER'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT  – 20**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.* ATTORNEYS AT LAW 2674 RW JOHNSON RD., TUMWATER, WA 98512 PO BOX 11880, OLYMPIA, WA 98508-1880 (360) 754-3480   FAX: (360) 357-3511

1    not enacted with an emergency clause and did not take effect immediately.  Instead, they took effect

2    on March 23, 2009, over a month after the Council adopted them on February 17, 2009.

3    **C.    MHP ZONING NOT UNLAWFUL SPOT ZONING**

4         **1.    The Parks Are Surrounded by Residential Uses, Not Commercial Use.**

5         Plaintiffs correctly note the broad authority of city legislative bodies to make classifications

6    in their ordinances.  They correctly identify that the MHP zoning does not involve any suspect class

7    and its classifications are subject to the minimal scrutiny, rational basis test. Plaintiff's Motion at

8    23.  They incorrectly assert that the City is somehow discriminating against them by zoning them

9    for their existing use as a MHP.

10        In their discussion, plaintiffs claim that Tumwater's ordinances will result in significant

11   economic losses, and that this is "especially true in situations where the mobile home park is

12   surrounded by valuable commercial land and the mobile home park may be less desirable for

13   continuing residential use." Plaintiffs' Motion at 20-21.  This "situation" does not describe any of

14   the plaintiffs' MHPs, which are all surrounded by residential zones and uses.  It does describe

15   Allimor, and illustrates the Council's rationale for not including Allimor in the new MHP District.

16        Plaintiffs fail to support their contentions that their property has been singled out for

17   different treatment from the surrounding community.  Moreover, they give only lip service to the

18   overriding test to determine if zoning is unlawful – whether it is enacted to serve the community's

19   interests.[17]  Here, the overwhelming evidence is that the MHP ordinances were adopted to promote

20   community values of ensuring stable neighborhoods, providing sufficient supply of MHPs, and

21   promoting a form of affordable housing.  Using the proper focus, it is clear that the City's MHP

22   Ordinances are not spot zones.  See City's Motion for Summary Judgment at 23-25.

23

24

25

26   _____

[17] The assertion that plaintiffs are at a "competitive disadvantage" to other property owners is curious. Plaintiffs'
Motion at 23. What exactly are they competing for?  Being a conforming use would create a competitive advantage
to their operation of a park over others who might want to establish or expand such a use.  The stability offered by
the zoning could even increase the desirability of space in their parks allowing an increase in market rent.

**DEFENDANT CITY OF TUMWATER'S**
**RESPONSE TO PLAINTIFFS' MOTION FOR**
**SUMMARY JUDGMENT  – 21**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

2.    **MHP Zone Allows Continuation of Existing Uses That Have Not Been Inconsistent with Neighboring Uses.**

Plaintiffs incorrectly assert that the parks rezoned under the MHP zoning district are different from the surrounding communities. The parks are in established residential areas. None abut a commercial area. Moreover, the zoning is applied to an existing use. To make a spot zoning claim, plaintiffs must contend that the use of their properties is inconsistent with the surrounding neighborhoods and that operation of mobile home parks is detrimental to the public interest. *Save Our Rural Environment (SORE) v. Snohomish County,* 99 Wn.2d 363, 368-369, 662 P.2d 816, 818-819 (1983). This is a curious argument for the Manufactured Housing Communities of Washington to be advancing.

3.    **The City Has Adequate Justification for Zoning Choices**.

*Bassani v. Board of Commissioners for Yakima County*, 70 Wn.App. 389, 396 (1993) recognizes that a rezone will not be overturned if there is "adequate public justification" for the City's zoning choices. Plaintiffs' motion ignores the City's justification for its choices.

The factual findings in the City's ordinances explain why it chose not to include three small properties that did not operate as mobile home parks. These findings also explained why the only MHP zoned commercially, and surrounded by existing commercial uses was not included. Plaintiffs do not even bother to address these factual findings. Given the absence of evidence presented by the plaintiff on this topic, and the substantial deference due to legislative findings of fact, the court cannot grant summary judgment to plaintiffs on this issue.

D.    **MHP ZONING DOES NOT VIOLATE EQUAL PROTECTION.**

1.    **Plaintiffs Fail to Examine the City's Justification for Classifications in the Ordinances Which Provide for a Mix of Housing Types, Including MHPs**.

Plaintiffs also are incorrect in alleging that no other types of housing are subjected to similar limitations. Property in the Single Family-Low Density (SFL) district are similarly limited in the choices they can make with their property. See TMC 18.10.020 - .040. Similar restrictions exist on uses in the RSR District, TMC 18.08.020 - .040; and the Single Family Medium Density (SFM) District, TMC 18.12.020 -.040. They cannot redevelop to a multi-family development or a more

**DEFENDANT CITY OF TUMWATER'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 22**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

dense use of their property under the zoning.  That zoning is designed to ensure that SFL housing is part of the mix of housing types available in Tumwater.  Although that type of housing may appeal to a different economic segment of the Tumwater community, it is no less valid for Tumwater to ensure MHP availability through it zoning decisions  than it is single family housing.

**2.      Plaintiffs Conceded That MHP Housing Is Generally More Affordable than Other Types of Housing.**

At their depositions, the Park Owners all testified that housing in a MHP is generally more affordable than other forms of housing. Andersen 13:9-15; Eichler 10:11-17; Schmicker 17:2-7. This is consistent with the finding of Ordinance O2008-009, at 2, that MHPs are a source of affordable single family and senior housing in Tumwater.  This distinction is also present in the Growth Management Act, which requires the City to identify sufficient land for housing, including manufactured housing.

Yet  despite these distinctions, plaintiffs contend that the city should not differentiate between  MHPs and other types of housing in its zoning.  Plaintiffs' Motion at 23.  Here, the City identified sufficient land for manufactured housing and protected that type of use by creating the MHP District.  This is directly related to and directly advances the goals of GMA and the public purpose of ensuring the availability of this type of affordable housing.

**3.      City Application of the MHP Zoning Designation to the Six Identified MHPs Is Rational.**

Plaintiffs make similar conclusory complaints about the four possible properties that were not included in the MHP District.  Yet they offer no analysis of the rationale for the City's actions. This is insufficient to overcome the legislative findings supporting the City's selection of properties to include or exclude. See Ordinance O2008-009, at 1-5.[18] The City's choices are rational and supported by the Council's fact-finding process.  See City's Summary Judgment Motion at 22-23.

Finally, plaintiffs conclude with an unsupported allegation that Tumwater is picking and choosing who will bear "sole responsibility" for satisfying affordable housing goals.  The City's ordinance is designed to provide a mixture of housing types, including MHPs.  It would be irrational

---

[18]  Missall Dec., Exhibit H, BN 78-82.

**DEFENDANT CITY OF TUMWATER'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT  – 23**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

to include a property which did not function as a mobile home park.  Yet the decision not to include

these properties in no way places an exclusive burden on MHP owners.  Other types of housing

besides MHPs is aimed at providing affordable options to the lower economic segment of the

community.  Tumwater has identified land for a mix of these types, including multi-family and

smaller lot size single family housing.  Matlock Dec., ¶10.  This is a fundamental fallacy of

plaintiffs' unsupported and conclusory allegations.

### VI.  CONCLUSION

The Plaintiffs' Motion fails to carry the burden to show that no material facts are in dispute.

Plaintiffs do not address the salient factual issues and have no evidence of economic impact on their

properties.  They further fail to carry their burden of showing that they are entitled to judgment as

a matter of law.  Instead, the clear, undisputed facts show the City is entitled to summary judgment

on plaintiffs' takings, substantive due process, equal protection and spot zoning claims.  The Court

should deny the plaintiffs' motion and grant the City's motion for summary judgment.

Dated this 22nd day of March, 2010.

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.

  /s/     *Jeffrey S. Myers,*
Jeffrey S. Myers, WSBA #16390

LAW, LYMAN, DANIEL, KAMERRER
& BOGDANOVICH, P.S.
P.O. Box 11880
Olympia, WA 98508-1880
(360) 754-3480
Fax: (360) 357-3511
E-mail: jmyers@lldkb.com

**DEFENDANT CITY OF TUMWATER'S
RESPONSE TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT  – 24**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511