1

2

3

4

5

6

7

8

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

9

LAUREL PARK COMMUNITY, LLC, a
Washington limited liability company;
TUMWATER ESTATES INVESTORS, a
California limited partnership;
VELKOMMEN MOBILE PARK, LLC, a
Washington limited liability company; and
MANUFACTURED HOUSING
COMMUNITIES OF WASHINGTON, a
Washington non-profit corporation,

Plaintiffs,

vs.

CITY OF TUMWATER, a municipal
corporation,

Defendant.

**NO.   C09-5312 BHS**

**DECLARATION OF
WILLIAM PARTIN IN
OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT**

10

11

12

13

14

15

16

17

18

19

~~PURSUANT TO 28 U.S.C. § 1746, William Partin declares as follows:~~

20

I, William Partin, hereby state and declare as follows:

21

1.      I have been retained by counsel for the defendant City of Tumwater in the

22

above entitled matter.  I am a Certified Public Accountant and partner in the firm of

23

Mueller & Partin, PLLC in Bellevue, Washington. I consult regularly concerning financial

24

investigations and economic analysis of damages claims.  I have frequently consulted

25

regarding claims of economic impact on businesses.  I have been admitted as an expert

26

witness on numerous occasions to testify as a CPA and forensic economist to evaluate

claims of economic impact. These claims often involve assessment of impacts on the value

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

**DECLARATION OF WILLIAM PARTIN   – 1**

of real estate.  My resume was previously provided in a declaration filed in support of the City's Motion for Summary Judgment.

### *Plaintiffs' Operations continue to be extremely profitable.*

2.     The Plaintiffs' use as a mobile home park continues to be extremely profitable. I evaluated financial information provided by the Plaintiffs and prepared charts to summarize their financial information, which were attached to my January 6, 2010 FRCP 26(a)(2)(B) Report. True and correct copies are attached as **Exhibits A, B and C**. These exhibits show that the current use of the property, which is an allowed use under Ordinance O2008-009 which rezoned the properties, continues to be profitable, and that such profits continue to increase.  Exhibit A is the financial information from Laurel Park. It shows that their net operating income (i.e. their profit) has increased from $207, 469 in 2006, to $210,014 in 2007 and to $254,170 in 2008.  Exhibit B shows that profits at Tumwater Mobile Estates (TME) have increased every year since 2005.  Significantly, financial information for the first three quarters of 2009 shows that after the adoption of the MHP Zoning, TME was more profitable than in 2008.   This is confirmed by the Income Statement produced by TME, which was included in my FRCP 26(a)(2)(B) Report and is attached as **Exhibit D**.   The third quarter income statement shows that profits increased by 10.5% after the adoption of the MHP Zoning, rising from $151,199 in 2008 to $167,119 in 2009.  Exhibit C shows that Velkommen made a consistent profit from 2006-2008, although its profits in 2007 were slightly higher than in 2008.  These issues were discussed in greater detail in my report, which was attached to my declaration in support of the City of Tumwater's Motion for Summary Judgment previously filed herein.

### *Review of Declaration of Jeanne-Marie Wilson, February 12, 2010*

3.     I have been asked to review Ms. Wilson's Declaration of February 12, 2010 and have been provided with some of her work papers, including a previous appraisal of Velkommen which considered an analysis of future demand for housing associated with the Doelman Property/Black Hills Village project. Wilson describes manufactured home parks

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

**DECLARATION OF WILLIAM PARTIN    – 2**

(MHPs) as a form of "land banking", asserting that the Plaintiffs' property would be operated as MHPs until sometime in the future when there is demand for redevelopment. She failed to prepare any analysis indicating the expected date that there would be sufficient demand for any higher density use allowed prior to enactment of the ordinances. In fact, her working papers that were recently produced directly contradict any assertion that there will be demand for higher densities or redevelopment, at least through the year 2022. Her working papers included an analysis of the Tumwater Urban Growth Area Land Supply through the year 2022 that was prepared in conjunction with an Application for Quasi-Judicial Rezone on a 288 acre parcel known as the Doelman Property/Black Hills Village, located less than a mile to the southwest of the Velkommen park. The application was submitted July 31, 2002 but addressed long term supply and demand issues relating to residential property zoning. The analysis reached the same conclusion as stated in my report dated January 6, 2010; there is sufficient vacant land in the MFH and MFM zoned areas such that there will be no demand for redevelopment of the subject MHPs through at least 2022 (more than 14 years after enactment of the ordinances).

4.      The Doelman application included a detailed land supply analysis indicating a substantial future surplus of available housing in Tumwater through 2022, whether future development is built at maximum or minimum densities. The study shows a 10,184 Dwelling Unit Surplus if the existing vacant property was built out at minimum density and a 20,070 Dwelling Unit Surplus if buildout is at maximum density. Because the oversupply of multi-family housing created a substantial risk for this type of development, Doelman recommended a downzone from Multifamily Medium Density Residential and Multifamily High Density Residential, to Single Family Low Density Residential, consistent with the expected low demand for housing. Wilson's Report and Declaration do not account for the low demand for the type of housing that they claim should be available to the Owners for future redevelopment. Ms. Wilson appears to have ignored the conclusions of the research contained in her file, presented no objective evidence that the demand for MFM and MFH

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

zoned property changed since 2002, yet concluded that there will be demand (without specifying any date) for redevelopment of the Plaintiffs' property. At her deposition, Ms. Wilson acknowledged that she did not do any market analysis of the future demand for single-family, multi-family or commercial uses. Wilson Deposition at 36:3-6, 60:3-6.

5.     Ms. Wilson's declaration argues that the existing MHP improvements add value when redevelopment takes place.[1]   Her conclusion in the declaration, however, directly contradicts conclusions regarding MHP site improvements in other appraisals she prepared.   For example, she produced an appraisal she prepared for the Wildwood Manufactured Home Park dated June 2, 2006.   The appraisal contains an analysis comparing the cost to redevelop a MHP vs. vacant land.   She concluded that the cost to redevelop a 45 unit MHP (site clearing, demolition of roads and pads, disposal fees, and costs associated with relocating tenants) would add a total of $300,000 to the cost to develop the property.   In this case Ms. Wilson subtracted the cost of removing the MHP improvements from the value of the property; she concluded the improvements were a detriment, not an addition to value. The extra redevelopment costs represent 13% of the total cost to acquire the land if vacant.

6.     Ms. Wilson stated in her deposition, Dep. at 67:12-14, that appraisals such as the Wildwood Manufactured Home Park Appraisal support an argument that there is an economic premium associated with the potential to redevelop a MHP to a more intensive use. Her Wildwood appraisal concludes that the property is worth $2,000,000 if vacant and converted to commercial use consistent with immediately adjacent recent retail development (Costco and Best Buy) as compared to $1,800,000 if operated as a MHP, resulting in a $200,000 redevelopment premium. Although I do not disagree with the conclusion Ms. Wilson reached in the Wildwood appraisal that the buyer in that circumstance paid for the land value, however, I disagree with any attempt to infer a similar

---

[1] Declaration of Jeanne-Marie Wilson In Support of Partial Summary Judgment, ¶5.

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

**DECLARATION OF WILLIAM PARTIN**    – 4

premium to the subject MHPs. The subject MHPs are not comparable to the premium observed at Wildwood for the following reasons:

- The subject MHPs are not proximate to any large scale retail development.

- The subject MHPs are not zoned to allow high density commercial development.

- The subject MHPs are not comparable in terms of locational characteristics. The Wildwood property is located in Lacey along Martin Way just east of the Marvin Road/Martin Way intersection in an area experiencing high levels of commercial development. The subject MHPs are not located in an area with similar traffic counts or commercial development.

- Premiums for conversion from MHPs to commercial development are not relevant to any premiums for conversion from MHPs to multi-family medium or multi-family high density uses. Neither Ms. Wilson nor any other expert engaged by the Plaintiffs has produced any evidence of a premium actually paid for the conversion of an MHP to multi-family medium or multi-family high density uses.

- Demand for more intensive uses already existed at the time of appraisal for Wildwood. Wildwood was zoned Mixed Use High Density Corridor and is located immediately adjacent to current large scale redevelopment activity. No similar circumstances surround the subject MHPs.

7. The present value of any premium associated with the potential to redevelop the subject MHPs at some point in the future is so small as to be de minimus. The value of any such premium would only be realized at the point in the future where there is demand for redevelopment in the vicinity of the properties. That time for the plaintiffs' properties is in the distant future. Even if we hypothetically assume for discussion purposes that a $200,000 redevelopment premium exists at a point there is demand for redevelopment, as in the Wildwood case, we can calculate its present value. Wildwood consisted of 5.95 acres and had an estimated $200,000 redevelopment premium of $33,600 per acre. Ignoring the overwhelming differences in site constraints and zoning as listed above, if we applied the $33,600 per acre premium to Laurel Park acreage, and we assumed that demand for redevelopment would occur 30 years in the future (as indicated in the Doelman analysis), the present value of that demand at a 27% discount rate,[2] the present value of the alleged

---

[2] This is the required return on land development. See Report at page 19, fn. 20.

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

DECLARATION OF WILLIAM PARTIN    – 5

1 premium would be $303. Accordingly, even if one were to assume that a redevelopment
2 premium similar to that achieved by Wildwood could be achieved 30 years from now, the
3 premium that would be added to the existing value as an MHP is only $303 for Laurel Park.
4 The alleged potential to redevelop the property at some point in the future does not add any
5 material value to any of the plaintiffs' MHPs.

6    8.    Ms. Wilson's argument that MHPs represent a form of land banking and that
7 the ordinances have resulted in a material reduction in value accordingly has no merit or
8 factual basis.

9    9.    Ms. Wilson's declaration, at 3-4, ¶¶10-11, alleges that the ordinances acted to
10 transfer value from the park owners to their tenants. There is no basis for her statements.
11 She compares enactment of the ordinances to placing a long term lease in favor of the
12 tenants. The terms of the ordinances bear no relationship to long term leases:

13    •    MHP owners are free to limit the duration of leases to one year.
14    •    MHP owners can set rent at any rate they choose.
15    •    There is no limit on annual rent increases.
16    •    MHP owners can terminate tenants' lease for failure to abide by park rules.
17    •    MHP owners can pass all property tax and common area maintenance increases on to tenants in the form of higher rents.

18    10.    The tenants gain no economic advantage as a result of enacting the
19 ordinances. The price tenants pay for rent will be dependent upon the supply, cost and
20 vacancy factors affecting other alternative forms of housing in the local market without
21 regard to enactment of the ordinances. MHP owners can raise rents to the point where the
22 tenant's cost of occupancy is comparable to other forms of housing such as apartment rental
23 or home ownership. MHP owners face the same risk as apartment owners with respect to
24 rental rate increases; you can raise rent up to the general market rental rate for housing in
25 the area and increases beyond that point can result in increased vacancies. The ability to
26 set rental rates at general housing market levels eliminates the possibility that any value of
the MHP can be transferred to tenants.

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

11.     Manufactured home parks are unique in nature because the tenant must make a substantial investment for the acquisition and set up of the home.  The character of the tenants' investment and the "switching" costs involved in relocating provides a degree of monopoly power to the landlord.  High switching costs allow MHP owners to push rents higher than in other forms of rental housing such as apartments because there are minimal switching costs associated with a tenant's decision to move out of one apartment complex and into another. In the case of MHPs, the landlord has the opportunity to control the value of the tenants' home by the rent charged. Tenants must pay increased rents up to the point it becomes less costly to either move the home to another manufactured home park (an expensive process frequently exceeding the value of older manufactured homes) or abandon the home and search for lower cost housing.

12.     Ms. Wilson's declaration provided no explanation of how value could be transferred to tenants in the actual circumstance where leases are negotiated on an annual basis. Her argument incorrectly assumes that all future tenant leases will consist of long term ground leases when the ordinances clearly have no impact on the length of tenant leases.   She has presented no evidence regarding the typical duration of leases in comparable MHPs or even in the plaintiffs' MHPs.   She presented no evidence of any transaction since the date of enactment indicating that a transfer of value has occurred. There is no evidence of any mechanism in the ordinance that would be capable of transferring value from the owner to the tenant.

### Demand For Future Redevelopment

13.     Ms. Wilson, Dec. at ¶13,  lists several medium and high density housing developments that were constructed in the area of the subject MHPs over the past five years and implies that it represents evidence that there is redevelopment demand. She has failed to do any supply and demand analysis.  She has not identified market vacancy factors, absorption rates for new projects, or as discussed above, analysis of the supply of vacant land zoned for such use that is cheaper to develop than the subject MHPs.  Ms. Wilson

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

**DECLARATION OF WILLIAM PARTIN**    – 7

1  provided no evidence that the high density housing projects listed were developed on

2  anything other than vacant land or that there is any demand for additional high density

3  housing. Objective analysis of actual demand for housing indicates that there is at least a

4  30 year supply of vacant land available in Tumwater to meet any market demand.

5       *Alleged Pre-Enactment Velkommen Premium*

6       14.    Ms. Wilson alleges that offers to purchase Velkommen in May and September

7  2008 represent evidence of a market premium. Offers to purchase don't carry the same

8  weight in determination of value as do closed transactions. The values of the referenced

9  offers need to be discounted for the following reasons:

10  •    They were not cash offers. The transaction would have required that the
        seller take back a note from the buyer constituting 90% of the purchase price,
11       shifting a substantial risk to the seller. Proper evaluation of the transaction
        requires that the note be discounted to its cash value, requiring adjustment
12       to the purchase price. When the note is discounted to its present cash value,
        the value of the transaction falls within the range of Ms. Wilson's opinion of
13       value as a MHP as stated in her December 7, 2009 report.

14  •    The offers were contingent on buyer's inspection of the property and analysis
        of its leases, financial records, and feasibility regarding the buyer's intended
15       use.   The offer accordingly provides multiple mechanisms to void the
        transaction and therefore cannot be considered as an accurate measure of
16       value.

17  •    An undated letter from the buyer's representative, Jim Nissing, to Jim
        Anderson indicates that the potential buyer determined upon inspection of
18       Velkommen's financial records that actual rents would not support the offer.
        The letter clearly indicates that the offer was greater than the actual value of
19       the MHP prior to enactment of the ordinances and the transaction failed to
        occur because the buyer realized that the rents paid by tenants did not
20       support the amount of the offer. The letter (Exhibit 3) makes no mention of
        any concerns regarding potential regulation concerning future use of the
21       property.

22  •    Velkommen's development potential is restricted by the availability of water
        to the site. The letter from Mr. Nissing (Exhibit 3) clearly expresses the
23       buyer's concerns regarding water rights. Enactment of the ordinance had no
        impact on the existing availability of water on the site. Limitations on the
24       access to water would require adjustment to the buyer's offer, resulting in a
        substantial reduction in its value.

25  •    Ms. Wilson's notes of her phone conversation indicate that the sale at $1.6
        million fell through because Velkommen failed to include a water supply for
26       the buyer beyond a 10 year period.

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

- The purchaser intended to continue the existing use of a mobile home park, although he intended to shift to a condominium form of ownership. Thus, the actual land use would have remained the same.

15.     Ms. Wilson failed to properly analyze and adjust the offers before concluding that they represent a "premium" for redevelopment of the property. There is no objective evidence of a redevelopment premium relating to Velkommen. Ms. Wilson has failed to present any contemporaneous evidence that enactment of the ordinances had any impact on the feasibility of the offer.

### Allimor Carriage Estates

16.     Ms. Wilson alleges that a 2007 sale of a MHP known as Allimor Carriage Estates (Allimor) represents evidence of a redevelopment premium.   The Allimor transaction is not comparable to the subject MHPs for the following reasons:

- The City of Tumwater zoning map indicates Allimor was zoned General Commercial.

- Allimor was located immediately adjacent to high value retail developments including Fred Meyer and Costco.

- Allimor was located on a major arterial, Little Rock Road SW, which bisects the commercial district of Tumwater.   Site visibility, traffic counts and surrounding commercial uses are far superior to those of the subject MHPs.

17.     Allimor, similar to Wildwood discussed above, cannot be used to demonstrate the existence of a market premium that the subject MHPs would allegedly enjoy but for enactment of the ordinances. Any attempt at comparison without substantial adjustments for differences in zoning and location is inconsistent with professional standards.

### Inconsistency Of Wilson Opinions

18.     Ms. Wilson's December 7, 2009 report calculates the "Market Value" at December 31, 2008 of the subject MHPs utilizing the income approach. The methodology was based on the income of the subject MHPs capitalized using cap rates derived from other MHPs not subject to any restrictions allegedly resulting from enactment of the ordinances. The "Market Value" reflects rents before enactment and cap rates based on sale transactions of MHPs that are not subject to the ordinances. The derived value accordingly can only

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

**DECLARATION OF WILLIAM PARTIN**    – 9

represent the value of the MHPs before enactment of the ordinances. Ms. Wilson confirms this fact in her February 15, 2010 deposition, at 13:23-14:1:

> "Q. So the opinions of value that you have on page 3 reflect a value before the City adopted the mobile home park ordinance?
>
> A. Correct."

19.     Using the definitions of "fair market value" from Ms. Wilson's December 7, 2009 report, the indicated value would include any value associated with "land banking", future "redevelopment potential" and any other element of value that the Plaintiffs allege was lost due to enactment of the ordinance. This contradicts any suggestion that something was lost upon enactment of the City's MHP Zoning Ordinances.

20.     Ms. Wilson's December 7, 2009 report accordingly establishes the price that a well informed buyer would pay for the subject MHPs prior to any influence on value created by enactment of the ordinances. Ms. Wilson prepared no calculations indicating that the values indicated on page 3 of her December 7, 2009 report have decreased as a result of enactment of the ordinances. The Plaintiffs must prove that the value of the MHPs declined from those values established by Ms. Wilson on page 3 of her December 7, 2009 report before any claim for damages can be established. Since there are no calculations or opinions indicating the value after enactment is less than those indicated in Ms. Wilson's December 7, 2009 report, one can only conclude that enactment had no measurable negative economic impact on the Plaintiffs.

21.     Ms. Wilson cannot, as she has done in her declaration, at ¶¶20-22. now argue that there is a "premium" associated with future redevelopment potential that has been taken from the Plaintiffs. Any premium for potential redevelopment was necessarily included in her December 7, 2009 stated values. She has presented no evidence that rental rates or operating income have dropped at the subject MHPs because of enactment of the ordinances. She has presented no objective evidence that a decline in the "reasonable capitalization rate" utilized to value the income stream occurred subsequent to the date of

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

**DECLARATION OF WILLIAM PARTIN   – 10**

enactment.  She accordingly has no professional basis to conclude that the Plaintiffs incurred economic damages as a result of enacting the ordinances.

### Ability of Plaintiffs To Maximize Return On Investment

22.  There are no restrictions on the marketability of the Plaintiffs MHPs. They are free to sell them at any time and pursue investments with a greater potential financial return if they wish. For example, they are free to sell the MHPs now and purchase property zoned MFH or GC and build apartments or commercial retail/office if they wish.  As discussed above, no evidence has been presented indicating that rents at MHPs have decreased or that potential buyers would assign higher capitalization rates to the property because of enactment of the ordinances. They can sell the MHPs, realize their full market value and move on to other investment opportunities now or at any time in the future.

### Conclusion

23.  The Plaintiffs claims are inconsistent with the opinions of value stated in Ms. Wilson's December 7, 2009 report. Plaintiffs have presented no evidence that enactment of the ordinances has caused the market value of the subject MHPs to decline from the values before enactment as fixed by Ms. Wilson's December 7, 2009 report.

I make this declaration under penalty of perjury under the laws of the state of Washington.

DATED this 19th day of March, 2010, at Bellevue, Washington.

William Partin

**DECLARATION OF WILLIAM PARTIN**    – 11

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

# EXHIBIT A

**Laurel Park Estates**

Laurel Park Community, LLC v. City of Tumwater

Summary of IRS Form 1040 Income Tax Return, Schedule E: Supplemental Income and Loss (pp. 232 - 234)

Date of Incident: 03/23/09

**Attachment 5**

| | 2006 | % | 2007 | % | 2008 | % |
|---|---|---|---|---|---|---|
| **Income** | | | | | | |
| Rents Received | $ 339,159 | 100.00% | $ 345,033 | 100.00% | $ 416,993 | 100.00% |
| **Expenses** | | | | | | |
| Advertising | $ 59 | 0.02% | $ 22 | 0.01% | $ 23 | 0.01% |
| Auto and Travel | 371 | 0.11% | 341 | 0.10% | 290 | 0.07% |
| Cleaning and Maintenance | - | 0.00% | 3,588 | 1.04% | 6,495 | 1.56% |
| Commissions | - | 0.00% | - | 0.00% | - | 0.00% |
| Insurance | 2,695 | 0.79% | 2,705 | 0.78% | 2,503 | 0.60% |
| Legal and Other Professional Fees | 4,000 | 1.18% | 3,123 | 0.91% | 5,172 | 1.24% |
| Management Fees | - | 0.00% | - | 0.00% | 8,651 | 2.07% |
| Mortgage Interest Paid to Banks, etc. | - | 0.00% | - | 0.00% | - | 0.00% |
| Other Interest | 45,155 | 13.31% | 44,495 | 12.90% | 43,787 | 10.50% |
| Repairs | 11,142 | 3.29% | 11,644 | 3.37% | 12,601 | 3.02% |
| Supplies | 348 | 0.10% | 210 | 0.06% | 1,254 | 0.30% |
| Taxes | 30,532 | 9.00% | 34,034 | 9.86% | 31,101 | 7.46% |
| Utilities | 10,656 | 3.14% | 10,927 | 3.17% | 16,256 | 3.90% |
| Other | 26,732 | 7.88% | 23,930 | 6.94% | 34,690 | 8.32% |
| Depreciation Expense or Depletion | 28,463 | 8.39% | 30,734 | 8.91% | 32,356 | 7.76% |
| Total Expenses | $ 160,153 | 47.22% | $ 165,753 | 48.04% | $ 195,179 | 46.81% |
| Net Income From Rental Real Estate Properties | $ 179,006 | 52.78% | $ 179,280 | 51.96% | $ 221,814 | 53.19% |
| Add: Depreciation and Interest | $ 28,463 | 8.39% | $ 30,734 | 8.91% | $ 32,356 | 7.76% |
| Net operating income | $ 207,469 | 61.17% | $ 210,014 | 60.87% | $ 254,170 | 60.95% |
| Return on Purchase Price of $1,300,000 | 15.96% | | 16.15% | | 19.55% | |

Notes:

Name shown on return was Robert Eichler.

Partin p. 13

47

# EXHIBIT B

Attachment 6

Tumwater Mobile Estates
Laurel Park Community, LLC v. City of Tumwater
Summary of Annual and Year-to-Date Internal Income Statements (pp. 380, 383, 386 - 387)
Date of Incident: 03/23/09

| | 2005 | % | 2006 | % | 2007 | % | 2008 | % | As of 09/30/09 | % |
|---|---|---|---|---|---|---|---|---|---|---|
| **Gross Income Items** | | | | | | | | | | |
| Late and Letter Fees | $ 393 | 0.08% | $ 246 | 0.05% | $ 418 | 0.08% | $ 115 | 0.02% | $ - | 0.00% |
| Miscellaneous Revenue | 452 | 0.09% | 132 | 0.03% | 25 | 0.00% | 202 | 0.04% | - | 0.00% |
| Reimbursement/Cable Commission | 32,026 | 6.44% | 30,556 | 6.06% | 38,469 | 7.01% | 40,849 | 7.23% | 30,480 | 6.93% |
| Reimbursement/Trash | 14,651 | 2.95% | 15,811 | 3.14% | 19,000 | 3.46% | 18,816 | 3.33% | 15,037 | 3.42% |
| Reimbursement/Water & Sewer | 59,931 | 12.06% | 58,898 | 11.68% | 61,755 | 11.25% | 60,914 | 10.78% | 48,219 | 10.97% |
| Rental Revenue | 389,474 | 78.38% | 398,409 | 79.04% | 429,180 | 78.20% | 444,381 | 78.61% | 345,921 | 78.68% |
| RV Rental Revenue | - | 0.00% | 10 | 0.00% | - | 0.00% | - | 0.00% | - | 0.00% |
| **Total Operating Income** | $ 496,927 | 100.00% | $ 504,062 | 100.00% | $ 548,847 | 100.00% | $ 565,276 | 100.00% | $ 439,657 | 100.00% |
| **Operating Expense** | | | | | | | | | | |
| Accounting | $ 2,313 | 0.47% | $ 2,340 | 0.46% | $ 2,350 | 0.43% | $ 2,620 | 0.46% | $ 2,620 | 0.60% |
| Auto Expense | 600 | 0.12% | 600 | 0.12% | 600 | 0.11% | 600 | 0.11% | 450 | 0.10% |
| Bank Charges | 380 | 0.08% | 73 | 0.01% | 46 | 0.01% | 133 | 0.02% | 192 | 0.04% |
| Dues & Subscriptions | 31 | 0.01% | 31 | 0.01% | 31 | 0.01% | 1,183 | 0.21% | 1,836 | 0.42% |
| Insurance/General | 6,088 | 1.23% | 6,608 | 1.31% | 8,052 | 1.47% | 6,971 | 1.23% | 5,294 | 1.20% |
| Insurance/Workers' Compensation | 1,269 | 0.26% | 1,290 | 0.26% | 985 | 0.18% | 936 | 0.17% | 605 | 0.14% |
| Legal Expense | - | 0.00% | - | 0.00% | - | 0.00% | - | 0.00% | 2,439 | 0.55% |
| Licenses & Permits | 59 | 0.01% | 1,825 | 0.36% | 1,288 | 0.23% | 59 | 0.01% | 498 | 0.11% |
| Management Fees | 24,445 | 4.92% | 23,891 | 4.74% | 21,481 | 3.91% | 22,235 | 3.93% | 17,379 | 3.95% |
| Miscellaneous Expenses | - | 0.00% | - | 0.00% | (1) | 0.00% | 31 | 0.01% | - | 0.00% |
| Non-Deductible Expenses | - | 0.00% | 189 | 0.04% | 150 | 0.03% | - | 0.00% | - | 0.00% |
| Office Expense | 1,254 | 0.25% | 2,855 | 0.57% | 560 | 0.10% | 1,602 | 0.28% | 338 | 0.08% |
| Add: Depreciation and Interest | 1,674 | 0.34% | 1,708 | 0.34% | 1,818 | 0.33% | 1,904 | 0.34% | 1,442 | 0.33% |
| Personnel - Incentives | - | 0.00% | - | 0.00% | 1,000 | 0.18% | 2,000 | 0.35% | - | 0.00% |
| Personnel - Salaries/Manager | 15,225 | 3.06% | 17,040 | 3.38% | 17,640 | 3.21% | 17,723 | 3.14% | 14,730 | 3.35% |
| Personnel - Accrued Vacation | 327 | 0.07% | (14) | 0.00% | - | 0.00% | 45 | 0.01% | - | 0.00% |
| Postage | 305 | 0.06% | 411 | 0.08% | 223 | 0.04% | 291 | 0.05% | 49 | 0.01% |
| Professional Fees | 1,063 | 0.21% | 997 | 0.20% | 1,208 | 0.22% | 1,388 | 0.25% | 994 | 0.23% |
| Repair/Maintenance Expense/Buildings | 769 | 0.15% | 3,299 | 0.65% | 5,532 | 1.01% | 412 | 0.07% | 218 | 0.05% |
| Repair/Maintenance Expense/Equipment | 2,158 | 0.43% | 1,191 | 0.24% | 1,787 | 0.33% | 2,120 | 0.38% | 1,277 | 0.29% |
| Repair/Maintenance Expense/Grounds | 23,276 | 4.68% | 24,841 | 4.93% | 17,804 | 3.24% | 23,211 | 4.11% | 13,732 | 3.12% |
| Repair/Maintenance Expense/Supplies | - | 0.00% | 369 | 0.07% | 412 | 0.08% | 417 | 0.07% | 112 | 0.03% |
| Add: Depreciation and Interest | 800 | 0.16% | 800 | 0.16% | 800 | 0.15% | - | 0.00% | - | 0.00% |
| Taxes/Personal & Real Property | 29,178 | 5.87% | 32,044 | 6.36% | 37,899 | 6.91% | 36,124 | 6.39% | 26,559 | 6.04% |
| Taxes/State | - | 0.00% | - | 0.00% | - | 0.00% | 800 | 0.14% | 800 | 0.18% |
| Travel Expenses | 412 | 0.08% | 500 | 0.10% | 550 | 0.10% | - | 0.00% | 642 | 0.15% |
| Utilities/Cable | 36,592 | 7.36% | 31,821 | 6.31% | 37,915 | 6.91% | 41,014 | 7.26% | 33,228 | 7.56% |
| Utilities/Electric | 7,503 | 1.51% | 7,491 | 1.49% | 6,767 | 1.23% | 6,169 | 1.09% | 5,561 | 1.26% |
| Utilities/Sewer | 51,013 | 10.27% | 46,665 | 9.26% | 55,132 | 10.05% | 54,087 | 9.57% | 41,624 | 9.47% |
| Utilities/Telephone | 2,068 | 0.42% | 1,173 | 0.23% | 1,820 | 0.33% | 2,257 | 0.40% | 1,785 | 0.41% |
| Utilities/Trash | 18,234 | 3.67% | 16,991 | 3.37% | 18,949 | 3.45% | 18,262 | 3.23% | 15,098 | 3.43% |
| Utilities/Water | 10,220 | 2.06% | 12,964 | 2.57% | 21,798 | 3.97% | 15,367 | 2.72% | 13,173 | 3.00% |
| **Total Operating Expenses** | $ 237,257 | 47.74% | $ 239,993 | 47.61% | $ 264,597 | 48.21% | $ 259,961 | 45.99% | $ 202,676 | 46.10% |

Attachment 6

Tumwater Mobile Estates
Laurel Park Community, LLC v. City of Tumwater
Summary of Annual and Year-to-Date Internal Income Statements (pp. 380, 383, 386 - 387)
Date of Incident:                    03/23/09

| | 2005 | % | 2006 | % | 2007 | % | 2008 | % | As of 09/30/09 | % |
|---|---|---|---|---|---|---|---|---|---|---|
| Net Operating Income | $ 259,670 | 52.26% | $ 264,069 | 52.39% | $ 284,250 | 51.79% | $ 305,315 | 54.01% | $ 236,982 | 53.90% |
| Other Income | | | | | | | | | | |
| Interest Revenue | $ 810 | 0.16% | $ 1,373 | 0.27% | $ 1,489 | 0.27% | $ 3,207 | 0.57% | $ 21 | 0.00% |
| Total Other Income | $ 810 | 0.16% | $ 1,373 | 0.27% | $ 1,489 | 0.27% | $ 3,207 | 0.57% | $ 21 | 0.00% |
| Other Expenses | | | | | | | | | | |
| Amortization | $ - | 0.00% | $ 1,041 | 0.21% | $ 1,244 | 0.23% | $ 1,244 | 0.22% | $ 934 | 0.21% |
| Depreciation | 2,910 | 0.59% | 2,844 | 0.56% | 3,068 | 0.56% | 4,271 | 0.76% | 1,754 | 0.40% |
| Interest Expense | 68,164 | 13.72% | 58,755 | 11.66% | 54,454 | 9.92% | 53,730 | 9.51% | 39,795 | 9.05% |
| Management Fees/Asset | 31,400 | 6.32% | 38,000 | 7.54% | 42,200 | 7.69% | 47,200 | 8.35% | 27,400 | 6.23% |
| Total Other Expenses | $ 102,473 | 20.62% | $ 100,639 | 19.97% | $ 100,967 | 18.40% | $ 106,444 | 18.83% | $ 69,884 | 15.90% |
| Net Income | $ 158,006 | 31.80% | $ 164,803 | 32.69% | $ 184,773 | 33.67% | $ 202,078 | 35.75% | $ 167,119 | 38.01% |
| Add: Depreciation | 2,910 | 0.59% | 2,844 | 0.56% | 3,068 | 0.56% | 4,271 | 0.76% | 1,754 | 0.40% |
| Pre-Tax Total Cash Available to Tumwater Mobile Estates | $ 160,916 | 32.38% | $ 167,647 | 33.26% | $ 187,841 | 34.22% | $ 206,349 | 36.50% | $ 168,873 | 38.41% |
| Total cost of fixed assets per 2008 internal balance sheet | $ 1,175,604 | | $ 1,175,604 | | $ 1,175,604 | | $ 1,175,604 | | | |
| Operating Income / Total Cost of Fixed Assets | 22% | | 22% | | 24% | | 26% | | | |

49

# EXHIBIT C

Velkommen Mobile Park
Laurel Park Community, LLC v. City of Tumwater
Summary of IRS Form 1040 Income Tax Return, Schedule E: Supplemental Income and Loss (pp. 177 - 179)
Date of Incident: 03/23/09

Attachment 7

| | 2006 | % | 2007 | % | 2008 | % |
|---|---|---|---|---|---|---|
| **Income** | | | | | | |
| Rents Received | $ 128,343 | 100.00% | $ 145,152 | 100.00% | $ 153,438 | 100.00% |
| **Expenses** | | | | | | |
| Advertising | 26 | 0.02% | - | 0.00% | - | 0.00% |
| Auto and Travel | 890 | 0.69% | 970 | 0.67% | 1,090 | 0.71% |
| Cleaning and Maintenance | 7,933 | 6.18% | 12,541 | 8.64% | 17,664 | 11.51% |
| Commissions | - | 0.00% | - | 0.00% | - | 0.00% |
| Insurance | 5,149 | 4.01% | 6,163 | 4.25% | 6,636 | 4.32% |
| Legal and Other Professional Fees | 2,040 | 1.59% | 1,338 | 0.92% | 490 | 0.32% |
| Management Fees | - | 0.00% | - | 0.00% | - | 0.00% |
| Mortgage Interest Paid to Banks, etc. | - | 0.00% | - | 0.00% | - | 0.00% |
| Other Interest | - | 0.00% | - | 0.00% | - | 0.00% |
| Repairs | - | 0.00% | - | 0.00% | 3,853 | 2.51% |
| Supplies | - | 0.00% | - | 0.00% | - | 0.00% |
| Taxes | 13,549 | 10.56% | 16,263 | 11.20% | 15,075 | 9.82% |
| Utilities | - | 0.00% | 1,049 | 0.72% | 1,647 | 1.07% |
| Other Expenses: | | | | | | |
| Bank Charges | - | 0.00% | - | 0.00% | 120 | 0.08% |
| Permit | - | 0.00% | - | 0.00% | 157 | 0.10% |
| Thurston County | - | 0.00% | - | 0.00% | 45 | 0.03% |
| Dues | 195 | 0.15% | 1,333 | 0.92% | 471 | 0.31% |
| Office Supplies/Expense | 298 | 0.23% | 394 | 0.27% | 466 | 0.30% |
| Rental Research | - | 0.00% | - | 0.00% | 134 | 0.09% |
| Add: Depreciation and Interest | - | 0.00% | - | 0.00% | 3,853 | 2.51% |
| Licenses | - | 0.00% | 713 | 0.49% | 520 | 0.34% |
| N  P.O. Box | 72 | 0.06% | - | 0.00% | - | 0.00% |
| Security System Monitoring | 276 | 0.22% | - | 0.00% | - | 0.00% |
| Depreciation Expense or Depletion | 4,003 | 3.12% | 5,120 | 3.53% | 4,992 | 3.25% |
| Total Expenses | $ 34,431 | 26.83% | $ 45,884 | 31.61% | $ 57,213 | 37.29% |
| Net Income From Rental Real Estate Properties | $ 93,912 | 73.17% | $ 99,268 | 68.39% | $ 96,225 | 62.71% |
| Add: Depreciation and Interest | $ 4,003 | 3.12% | $ 5,120 | 3.53% | $ 4,992 | 3.25% |
| Net Operating Income | $ 97,915 | 76.29% | $ 104,388 | 71.92% | $ 101,217 | 65.97% |
| Return on Thurston County Assessor 2002 Market Value[1] | 13.11% | | 13.98% | | 13.55% | |

Notes:

Name shown on return is Phyllis Anderson.

[1] Thurston County Assessor's 2002 market value of property was $746,900. We note that the market value of the property in 2002 more likely than not exceeds the actual purchase price paid by Velkommen Mobile Park LLC.

Partin p. 18

# EXHIBIT D

**Tumwater Mobile Home**
**INCOME STATEMENT**
September 30, 2009

| | Current Year | | Prior Year | | VARIANCE | |
|---|---|---|---|---|---|---|
| **GROSS INCOME ITEMS** | | | | | | |
| LATE AND LETTER FEES | $0 | 0.0% | $115 | 0.0% | ($115) | (99.8%) |
| MISCELLANEOUS REVENUE | 0 | 0.0% | 85 | 0.0% | (85) | (100.0%) |
| REIMBURSEMENT/CABLE COMMISSIOIN | 30,480 | 6.9% | 30,797 | 7.3% | (317) | (1.0%) |
| REIMBURSEMENT/TRASH | 15,037 | 3.4% | 13,812 | 3.3% | 1,225 | 8.9% |
| REIMBURSEMENT/WATER & SEWER | 48,219 | 11.0% | 46,273 | 11.0% | 1,946 | 4.2% |
| RENTAL REVENUE | 345,921 | 78.7% | 328,819 | 78.3% | 17,102 | 5.2% |
| **TOTAL GROSS INCOME** | 439,657 | 100.0% | 419,881 | 100.0% | 19,776 | 4.7% |
| **COST OF GOODS & SERVICES** | | | | | | |
| **TOTAL OPERATING INCOME** | 439,657 | 100.0% | 419,881 | 100.0% | 19,776 | 4.7% |
| **OPERATING EXPENSE** | | | | | | |
| ACCOUNTING | 2,620 | 0.6% | 2,620 | 0.6% | 0 | 0.0% |
| AUTO EXPENSE | 450 | 0.1% | 450 | 0.1% | 0 | 0.0% |
| BANK CHARGES | 192 | 0.0% | 0 | 0.0% | (192) | 0.0% |
| DUES & SUBSCRIPTIONS | 1,836 | 0.4% | 1,152 | 0.3% | (684) | (59.4%) |
| INSURANCE/GENERAL | 5,294 | 1.2% | 5,228 | 1.2% | (66) | (1.3%) |
| INSURANCE/WORKERS COMPENSATION | 605 | 0.1% | 595 | 0.1% | (10) | (1.6%) |
| LEGAL EXPENSE | 2,439 | 0.6% | 0 | 0.0% | (2,439) | 0.0% |
| LICENSES & PERMITS | 498 | 0.1% | 59 | 0.0% | (439) | (743.6%) |
| MANAGEMENT FEES | 17,379 | 4.0% | 16,463 | 3.9% | (915) | (5.6%) |
| MISCELLANEOUS EXPENSES | 0 | 0.0% | 31 | 0.0% | 31 | 100.0% |
| OFFICE EXPENSE | 338 | 0.1% | 1,039 | 0.2% | 701 | 67.4% |
| PERSONNEL - PAYROLL TAXES | 1,442 | 0.3% | 1,318 | 0.3% | (126) | (9.5%) |
| PERSONNEL - SALARIES/MANAGER | 14,730 | 3.4% | 13,230 | 3.2% | (1,500) | (11.3%) |
| PERSONNEL - ACCRUED VACATION | 0 | 0.0% | 45 | 0.0% | 45 | 100.0% |
| POSTAGE | 49 | 0.0% | 182 | 0.0% | 134 | 73.3% |
| PROFESSIONAL FEES | 994 | 0.2% | 991 | 0.2% | (3) | (0.3%) |
| REPAIR/MAINT EXPENSE/BUILDINGS | 218 | 0.0% | 271 | 0.1% | 52 | 18.3% |
| REPAIR/MAINT EXPENSE/EQUIPMENT | 1,277 | 0.3% | 1,937 | 0.5% | 660 | 34.1% |
| REPAIR/MAINT EXPENSE/GROUNDS | 13,732 | 3.1% | 21,312 | 5.1% | 7,580 | 35.6% |
| REPAIR/MAINT EXPENSE/SUPPLIES | 112 | 0.0% | 227 | 0.1% | 115 | 50.5% |
| TAXES/PERSONAL & REAL PROPERTY | 26,559 | 6.0% | 27,093 | 6.5% | 534 | 2.0% |
| TAXES/STATE | 800 | 0.2% | 800 | 0.2% | 0 | 0.0% |
| TRAVEL EXPENSES | 642 | 0.1% | 0 | 0.0% | (642) | 0.0% |
| UTILITIES/CABLE | 33,228 | 7.6% | 34,177 | 8.1% | 949 | 2.8% |
| UTILITIES/ELECTRIC | 5,561 | 1.3% | 4,859 | 1.2% | (702) | (14.4%) |
| UTILITIES/SEWER | 41,624 | 9.5% | 40,565 | 9.7% | (1,059) | (2.6%) |
| UTILITIES/TELEPHONE | 1,785 | 0.4% | 1,630 | 0.4% | (155) | (9.5%) |
| UTILITIES/TRASH | 15,096 | 3.4% | 13,934 | 3.3% | (1,164) | (8.4%) |
| UTILITIES/WATER | 13,173 | 3.0% | 12,057 | 2.9% | (1,115) | (9.3%) |
| **TOTAL OPERATING EXPENSES** | 202,676 | 46.1% | 202,266 | 48.2% | (410) | (0.2%) |
| **NET OPERATING INCOME** | $236,982 | 53.9% | $217,615 | 51.8% | $19,366 | 8.9% |
| **OTHER INCOME** | | | | | | |
| INTEREST REVENUE | 21 | 0.0% | 2,487 | 0.0% | (2,466) | (99.1%) |
| **TOTAL OTHER INCOME** | 21 | 0.0% | 2,487 | 0.0% | (2,466) | (99.1%) |
| **OTHER EXPENSES** | | | | | | |
| AMORTIZATION | 934 | 0.0% | 933 | 0.0% | (1) | (0.1%) |
| DEPRECIATION | 1,754 | 0.0% | 3,203 | 0.0% | 1,449 | 45.2% |
| INTEREST EXPENSE | 39,795 | 0.0% | 40,368 | 0.0% | 573 | 1.4% |
| MGMT FEES/ASSET | 27,400 | 0.0% | 24,400 | 0.0% | (3,000) | (12.3%) |
| **TOTAL OTHER EXPENSE** | 69,884 | 0.0% | 68,904 | 0.0% | (980) | (1.4%) |
| **NET INCOME (LOSS)** | $167,119 | 0.0% | $151,199 | 0.0% | $15,921 | 10.5% |

**Partin p. 20**