UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LAUREL PARK COMMUNITY, LLC, a Washington limited liability company; TUMWATER ESTATES INVESTORS, a California limited partnership; VELKOMMEN MOBILE PARK, LLC, a Washington limited liability company; and MANUFACTURED HOUSING COMMUNITIES OF WASHINGTON, a Washington non-profit corporation,<br><br>                                                    Plaintiffs,<br><br>v.<br><br>CITY OF TUMWATER, a municipal corporation,<br><br>                                                    Defendant. | No.  C09-05312BHS<br><br>PLAINTIFFS' MOTION TO STRIKE AND RESPONSE OPPOSING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Note on Motion Calendar: April 9, 2010<br><br>(Oral Argument Requested) |

A.    INTRODUCTION AND RELIEF REQUESTED

Rather than respond to the park owners' motion for summary judgment, the City of Tumwater ("Tumwater") filed its own summary judgment motion, which is a transparent attempt to circumvent the page limits set in LCR 7.  Tumwater's motion should be stricken.

Tumwater fails to offer any grounds in fact or in law that should dissuade this Court from determining that Tumwater's onerous new mobile home park ordinances are unconstitutional under federal and state law.

B.    EVIDENCE RELIED UPON

The park owners rely on the evidence previously submitted in connection with their

Plaintiffs' Motion to Strike and Response Opposing Summary Judgment - 1
C09-5312BHS

000001

1   partial motion for summary judgment filed on February 19, 2010, and the declaration of Walter

2   H. Olsen, Jr. and the supplemental declaration of Jeanne-Marie Wilson filed herewith.

3   C.   RESPONSE TO TUMWATER'S STATEMENT OF FACTS[1]

4        The park owners incorporate by reference the statement of facts contained in their

5   previously filed motion for partial summary judgment, and also submit a specific

6   counterstatement to the facts contained in Tumwater's cross motion.

7        One critical fact is visibly absent from Tumwater's statement of the case: Tumwater staff

8   exposed significant concerns about the legal viability of a new zoning classification permitting

9   mobile homes as the only allowed use. BN 15.[2] Tumwater disregarded these concerns when it

10  adopted the ordinances. Matlock Dep. at 8, 11-12 and Ex. 1.[3]

11

12       Another important fact buried in Tumwater's factual statement is that Tumwater admits it

13  did not uniformly apply the District to all of the manufactured home parks within the city.

14  Dkt. 20 at 2. Only six mobile home parks are located in the District. Tumwater exempted three

15  parks because they were "exceptionally small" and allegedly did not foster a sense of community

16  or neighborhood. BN 73, 80-81. It exempted a fourth because it was zoned for commercial use

17  and was completely surrounded by general commercial zoning, which made it a transitory

18  property *likely* to be developed into a commercial use. *Id.* By doing so, Tumwater determined

19

20  _____

    [1] Tumwater begins its statement of facts with a footnote quoting from former Justice Philip A. Talmadge's
21  dissent in *Manufactured Housing Cmtys. of Washington v. State*, 142 Wn.2d 347, 393-94, 13 P.3d 183 (2000),
    which describes the impact of mobile home park closures on park tenants. Dkt. 20 at 2 n.1. Tumwater's
22  incorporation of this passage into its statement of facts is designed to call into question MHCW's argument because
    Talmadge is now counsel for MHCW. Tumwater's childish shot at Talmadge is unavailing, especially since his
23  opinion was the dissenting opinion in that case.

    [2] The park owners consecutively Bates stamped their partial summary judgment motion (Dkt. 15) and the
24  supporting declarations. The park owners will use the Bates number ("BN") to refer to those pleadings.

25  [3] Excerpted deposition testimony is attached to the declaration of Walter H. Olsen, Jr. The depositions will
    be cited using the name of the witness for ease of reference.

Plaintiffs' Motion to Strike and Response Opposing Summary Judgment - 2          Talmadge/Fitzpatrick
C09-5312BHS                                                                        18010 Southcenter Parkway
                                                                                  Tukwila, Washington 98188-4630
000002                                                                            (206) 574-6661   (206) 575-1397 Fax

1    which park owners to take property from and which to leave alone based on its subjective

2    determination of what constitutes a mobile home park.  But that interpretation is inconsistent

3    with state law.[4]

4        Tumwater asserts that by 2007, the availability of space for mobile home parks was

5    threatened and shrinking and this alleged shortfall led it to create the District as a way to

6    preserve its existing housing stock.  Dkt. 20 at 2.  Even if true in other areas of Washington,

7    Tumwater's park closure data is outdated and no longer reflects the current trend.  Matlock Dep.

8    at 26; Olsen Decl., Exs. A, B.  No Tumwater park has closed in the last 20 years.  According to

9    the Department of Commerce, park closure rates statewide have significantly decelerated since

10   2008.  *See id.*  The park closure rate for 2009-2010 dropped to just 3.5 per year.  *Id.*

11

12       Tumwater also asserts that the preservation of existing housing stock was essential to

13   maintain the availability of manufactured housing in Tumwater.  Dkt. at 2.  But the Growth

14   Management Act, Chap. 36.70A RCW ("GMA"), does not authorize Tumwater to do so at the

15   expense of the park owners' constitutional rights.  Preservation of housing is a planning factor

16   equal to recognition of constitutional property rights in the GMA.   RCW 36.70A.020(4).

17   Regardless, the true purpose behind Tumwater's political actions was to restrict the park owners'

18   use of their property in order to curry favor with park tenants by giving them more secure leased

19   property in the future.  *See, e.g.,* Matlock Dep. at 8, 11-12, Ex. 1.  Tumwater concedes it wanted

20   to prevent the future conversion of mobile home parks and that it directed its staff and legal

21

22

23

24

25

_____

[4] RCW 59.20.030(10) defines a mobile home park to mean "any real property which is rented or held out for rent to others for the placement of two or more mobile homes[.]"  Yet Tumwater determined the meaning of a mobile home park based on whether the park "rise[s] to the level of community."  Matlock Dep. at 22.

Plaintiffs' Motion to Strike and Response Opposing Summary Judgment - 3
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

counsel to advise it how to achieve that result.[5] *Id.* at 21, 28, 30. Tumwater directed its staff to reprioritize their work and advise the City Council how best to perform the impossible task of both taking the park owners' property and having the ordinances pass constitutional muster. *Id.* at 13-14, 34-35. As Tumwater now describes it, the ordinances were "broadened" to allow uses other than a mobile home park, like a park or open space, which have no economic value to property owners. The process by which a park owner could use the property for another use is impossible to attain and the permitted uses have nothing to do with the affordable housing the ordinances purportedly sought to preserve. *Id.* at 14-15, 21, 26, 38-39, 42-43.

Tumwater implies the park owners have a "wide range" of uses available to them if they choose not to operate as mobile home parks because the ordinances provide for 23 permitted, accessory, and conditional uses. Dkt. 20 at 4. But it neglects to mention the permissible accessory uses are extremely limited and include only storage and tool sheds, private parking garages or carports, home occupations, non-commercial recreational structures, and clubhouse and community centers associated with manufactured home parks. BN 86. *None* of these are revenue-generating uses. It similarly fails to note that outside of mobile home parks, one single family housing dwelling per park, and child care facilities, the permitted and conditional uses provide no economic return. BN 85-86. Some of those uses, like parks and trails, *generate no income at all* while others require a significant monetary investment to cover conversion costs and licensing requirements associated with redevelopment.[6]

---

[5] Although no mobile home park in Tumwater has converted to another use in the last 20 years and the state's real estate crash significantly decreased park closures, Tumwater took the park owners' property purportedly to keep unscrupulous property owners from requesting conversion based on their own needs even though there is no evidence that any park owner intended to close his or her park. Matlock Dep. at 18, 26.

[6] For example, a child care facility would require the park owner to raze all existing buildings in the park, uproot the concrete pads, build a structure to house the children, and secure licensure. This is not a realistic or

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661   (206) 575-1397 Fax

1    Tumwater downplays the heavy burden placed on a park owner who requests a use

2  exception. Dkt. 20 at 9. Getting a use exception is no easy task because the exception is entirely

3  discretionary with the City Council. BN 89. The park owner's burden of proof is extraordinarily

4  high – the owner must convince the City Council that the District prevents reasonable use of the

5  property or that the uses authorized by the District are not economically viable. BN 89, 104.

6  These standards require the park owner to prove a negative and essentially first go out of

7  business. As Council Member Karen Valenzuela acknowledged, "it's fair to say it is likely the

8  owner's chances for a rezone would be questionable." BN 112.

9

10    Tumwater similarly downplays the restrictions imposed by the ordinances by asserting

11  "[the District] does not restrict alienation of the property." Dkt. 20 at 9. But it does. As James

12  Andersen stated, Velkommen was advised by two prospective purchasers that they did not wish

13  to close their respective purchase agreements after Tumwater publicly announced its intention to

14  rezone the six targeted parks. BN 201.

15    Because it has no justification for its conduct, Tumwater attacks the plaintiffs' experts,

16  trying to assert the plaintiffs really experienced no damage when it enacted its ordinances.

17  Tumwater is correct that Jeanne-Marie Wilson is a day-to-day, hands-on real estate appraiser

18  who works mostly in Thurston County. She has considered the unique factual circumstances of

19  over 75 other mobile home parks to ascertain park value for park owners rather than serving as a

20  forensic witness for lawyers. BN 243. She is not a professional witness. Wilson and the park

21  owners are more interested in providing the Court with practical information regarding the

22

23

24  economic use of the property. Situating a single house on the lot now occupied by numerous mobile homes would

    also not be economically viable. The park owner would lose substantial rental income by replacing the mobile

25  homes with a single-family residence rented by only one family.

Plaintiffs' Motion to Strike and Response Opposing Summary Judgment - 5        Talmadge/Fitzpatrick
C09-5312BHS                                                18010 Southcenter Parkway
                                                          Tukwila, Washington 98188-4630
                                         (206) 574-6661  (206) 575-1397 Fax

000005

1   unique mobile home park industry than engaging in an expert battle with a battalion of straw

2   mercenaries.

3         In any event, Tumwater's expert, Stephen Shapiro, agrees Wilson is qualified and her

4   initial expert disclosure is compliant with the Uniform Standards of Professional Appraisal

5   Practice ("USPAP").[7]  Shapiro Decl., Ex. E at 2.  He also agrees in material respects with

6   Wilson's more practical analysis of value and that parks have a fixed life.  *See* Shapiro Dep. at

7   37-38, 51-52.  Where he disagrees with Wilson, his deposition testimony confirms that he has

8   never been involved with the sale of a mobile home park and that his analysis is incomplete and

9   factually incorrect.  *Id.* at 22, 26-27, 48.  Shapiro's analysis is based on "Extraordinary

10  Assumptions Hypothetical Conditions."  *Id.* at 50.  Because he is not from the area, he does not

11  
12  know whether there is even a comparable park in Tumwater or even whether some of his

13  comparable sales occurred after the enactment of the ordinances.  Yet Tumwater chides Wilson

14  for appraising the value of the parks with an effective date preceding the ordinances.

15        Unlike Wilson's investigation, Shapiro relied more on incomplete information he

16  received from Tumwater than on his own independent factual investigation.  *See* Shapiro Dep. at

17  17-18, 26.  He did not even consider his own industry-specific subscription with *Dupree and*

18  *Scott*, which he admits is credible, or the fact that a short walk to his office reception area or

19  
20  library would have provided him with more reliable information about the local area than what

21  Tumwater provided to him.  *Id.* at 19-20, 23, 24.  Shapiro's analysis is selective, incomplete, and

22  incorrect in many other respects.  *Id.* at 21-22, 24-25, 29-31.  *See* Wilson Suppl. Decl. at 3-4.

23  

24        [7] While Tumwater criticizes Wilson for not following USPAP standards, Shapiro confirms that "USPAP is
    very general in its requirements, and mostly says that [comparables] should be credible," and "USPAP requires you
25  to collect information to the best of your ability and to produce a credible report insofar as – so there's no - there's
    no requirement to use any particular source of information."  Shapiro Dep. at 20.

1   Shapiro's analysis is equally defective as it relates to each of the park owners' properties.

2   Shapiro Dep. at 34-36.

3       While it is true that Tumwater Estates "lies adjacent to designated wetlands," the wetland

4   is actually a little lake, an amenity to the property whether it remains a mobile home park or is

5   converted to another use. *See* Schmicker Dep. at 11. This attribute does not affect Schmicker's

6   estimation of value or make the park undevelopable for other uses. *Id.* And while a portion of

7   Tumwater Estates is designated as a liquefaction area, Schmicker concludes the issue does not

8   affect his estimation of value or make the park undevelopable for other uses. *Id.* at 27-31.

9   Tumwater misquotes Schmicker's testimony for the proposition that he acknowledged "he

10  intended to continue use as a mobile home park, which is the highest and best use." Dkt. 20 at 5.

11  A more fair and accurate characterization of Schmicker's testimony is that (1) he intended to

12  continue use as a mobile home park, *if it was* the highest and best use; and (2) further, the highest

13  and best use *could change at any time*. *See* Schmicker Dep. at 42-43. Tumwater overlooks the

14  totality of Schmicker's testimony concerning the value of his property rights. The question is not

15  when Schmicker's investment objective will change, but whether he has fewer property rights

16  now as a result of Tumwater's ordinances. *Id.* at 34-35, 56-59.

17      To consider Tumwater's factual assertions regarding Laurel Park, the Court should

18  review the deposition exhibit Tumwater cites because it says the opposite of what Tumwater

19  contends. *Compare* Dkt. 20 at 6 ("[Century Pacific] told [Mr. Eichler] that the highest and best

20  use of the property was to continue as a mobile home park"], *with* Eichler Dep., Ex. 4 (the value

21  of the property if developed is $3.7 million; but the value of the property as a mobile home park

22  is $3.3 million). Century Pacific did opine that "[t]hese numbers suggest that it may make more

23  sense to continue operating this property as a mobile home park and/or taking it to market on the

Plaintiffs' Motion to Strike and Response Opposing Summary Judgment - 7
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

1   basis of a mobile home park and not a development opportunity." *See* Eichler Dep., Ex. 4. But

2   this does not change the undeniable fact that Tumwater's ordinances injured Laurel Park by at

3   least the $400,000 difference between the value of the property as developed without the

4   ordinances ($3.7 Million), and the value of the property as a mobile home park ($3.3 Million).

5   Robert Eichler's testimony about the areas surrounding Laurel Park provides additional

6   evidence as to its injury from the ordinances. Residential redevelopment is occurring on two

7   sides of Laurel Park and vacant land that could be redeveloped sits on the other two sides. *See*

8   Eichler Dep. at 6-9. Eichler expressly confirms that Laurel Park is not consistent with the other

9   land uses in the area "because the surrounding is obviously going single-family residential with a

10  much higher density than my mobile home park." *Id.* at 9-10. He also confirms the injury

11  Laurel Park suffered to its reasonable investment-backed expectations as a result of Tumwater's

12

13  ordinances. *Id.* at 17-19, 24, 30-37; 42-44. Eichler's testimony confirms he had a reasonable

14  investment-backed expectation that he would be able to exercise his property rights to redevelop

15  the property into another viable income generating property other than a mobile home park.

16  James Andersen is the general manager of Velkommen and has managed the park for the

17  past 25 years. Andersen Dep. at 7, 9. As the manager and agent, he is competent to testify to the

18  value of the park because he is familiar enough with it to know its worth as a park or as

19  redeveloped. *Id.* at 67-68, 75-76. According to Andersen, the park is surrounded by medium

20  density development; the park is not consistent with that use. *Id.* at 11-12. In addition, the

21  park's water and sewer systems are expected to fail in the short term and it is not economically

22

23  viable to connect to public water and sewer; Tumwater's ordinances constitute a death-knell to

24  the park as a result. *Id.* at 14, 18-19, 30-32, 35-36, 78, 81. Before Tumwater's ordinances, the

25

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661   (206) 575-1397 Fax

1   park received several purchase offers; since then, it has not received any.[8]  *Id.* at 22; BN 201.

2   D.   ARGUMENT IN RESPONSE[9]

3        (1)   The Court Should Strike Tumwater's Cross Motion and Impose Terms

4        Before Tumwater filed its response opposing the park owners' summary judgment

5   motion, it filed a cross motion for summary judgment.  Dkt. 20.  Tumwater's motion does not

6   comply with the local rules and should be stricken.  First, only one responsive pleading is

7   allowed.  Yet Tumwater's cross motion (Dkt. 20) and its response (Dkt. 25) raise nearly *identical*

8   issues for the Court's consideration, as evidenced by the section headings in its motion.

9   Moreover, most of the "Argument" section of Tumwater's cross motion is merely a restatement

10  of the same points argued in its response opposing the park owners' summary judgment motion.

11  The *only* new issue in the cross motion is Tumwater's one paragraph contention that the park

12  owners' claims are not ripe.  Dkt. 20 at 16.

13

14        Tumwater's motion is nothing more than a thinly disguised attempt to provide

15  supplemental briefing to the Court and to circumvent the page limits established in LCR 7(e)(3)

16  for its response opposing the park owners' summary judgment motion.[10]  The Court should strike

17  the motion and impose terms.

18        (2)   The Court Should Deny Tumwater's Cross Motion for Summary Judgment

19        While a local government may properly enact zoning regulations, that power is not

20

21

22

23        [8]  Tumwater contends that one of Velkommen's prior sales did not close because the park would not sell
     the water system. But Andersen confirms the parties "hadn't gotten to that point." Andersen Dep. at 67.

24        [9]  The park owners will not repeat the standards for denying summary judgment under Fed. R. Civ. P. 56 as
     they are well-known to this Court.  *See, e.g., Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 531
25   (9th Cir. 2000).

Plaintiffs' Motion to Strike and Response Opposing Summary Judgment - 9        Talmadge/Fitzpatrick
C09-5312BHS                                                                      18010 Southcenter Parkway
                                                                                Tukwila, Washington  98188-4630
                                                                                (206) 574-6661  (206) 575-1397 Fax

1   infinite and unchallengeable; it "must be exercised within constitutional limits." *Moore v. East*

2   *Cleveland*, 431 U.S. 494, 514 (1977) (Stevens, J., concurring in judgment).   Accordingly, it is

3   subject to judicial review.   This Court thus has an obligation to ensure that zoning ordinances,

4   even when adopted in furtherance of such legitimate aims, do not infringe upon constitutional

5   rights. *See Village of Belle Terre v. Boraas*, 416 U.S. 1, 14 (1974) (Marshall, J., dissenting).

6           a.      Tumwater's ordinances take the park owners' property in violation of the
7                   Fifth and Fourteenth Amendments

8       The park owners have not argued that Tumwater's ordinances constitute a per se

9   regulatory taking for Fifth Amendment purposes under either *Loretto v. Teleprompter Manhattan*

10  *CATV Corp.*, 458 U.S. 419 (1982) or *Lucas v. South Carolina Coastal Coun.*, 505 U.S. 1003,

11  1016 (1992). BN 262-63.   Instead, they raise a facial challenge under *Pennsylvania Coal Co. v.*

12  *Mahon*, 260 U.S. 393, 415 (1922), because Tumwater's ordinances "go too far" and result in the

13  functional equivalent of a direct appropriation.  BN 262.

14      Tumwater implies a facial challenge is only permitted when a landowner alleges a

15  categorical taking under *Lucas*.  Dkt. 20 at 11.  It argues a successful facial challenge here would

16  require the park owners to show that mere enactment of the ordinances "denies *all* economically

17  viable use of the property."  Dkt. 20 at 10-11 (emphasis added).   According to Tumwater,

18  because the park owners have not been denied all economically viable use, their facial challenge

19  must fail. *Id.* Tumwater is mistaken.

20      Unlike an  as-applied challenge,  a facial challenge alleges the regulation is

21  unconstitutional in the abstract: "no set of circumstances exists under which the [regulation]

---

[10] For example, in its response in opposition, Tumwater specifically relies on its cross motion to counter the park owners' spot zoning claim. Dkt. 25 at 21.  It does not fully address the issue in its response brief as it should have.  By doing so, Tumwater gained three additional pages for its response in opposition.

Plaintiffs' Motion to Strike and Response Opposing Summary Judgment - 10
C09-5312BHS

000010

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

would be valid." *See United States v. Salerno*, 481 U.S. 739, 745 (1987). "'[T]he mere enactment' of the [regulation] constitutes a taking." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 495 (1987) (citation omitted). The basis for the challenge is that the very enactment of the regulation has "reduced the value of the property or has effected a transfer of a property interest. This is a single harm, measurable and compensable when the [regulation] is passed." *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 690 (9th Cir. 1993), *cert. denied*, 510 U.S. 1093 (1994). The Court must look only to the regulation's general scope and dominant features rather than to the effect of the application of the regulation in specific circumstances. *See, e.g., Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 773 (9th Cir. 2000). Here, Tumwater essentially seized the park owners' land and froze the use of that land as mobile home parks forever.

Tumwater next contends its ordinances do not constitute a taking under *Penn. Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978). Dkt. 20 at 11-15. Tumwater is again mistaken. A close look at the *Penn Central* factors confirms Tumwater's ordinances go too far.

Under the economic impact factor, the park owners need only demonstrate a loss of value that may be less than 100 percent, but high enough to have "go[ne] too far." *Penn Central*, 438 U.S. at 124. This factor does not require the park owners to assign a specific dollar amount to their constitutional deprivations at this stage of the case as Tumwater contends. They are not proving their *damages*, but only the *harm*. They need only demonstrate *some* diminished value.

Tumwater incorrectly argues the economic impact factor cannot be met because the park owners are still allowed to operate as mobile home parks, which is admittedly profitable and economically viable. Dkt. 20 at 12. Tumwater's contention is immaterial as *Penn Central* practically assumes the landowner may be able to earn *some* return on his or her investment.

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661   (206) 575-1397 Fax

1   Even if the park owners earn some return on their investments, a taking may still have occurred

2   because the government has so interfered with the park owners' rights as to have seized the

3   property. The only question is what loss of potential return on investment is significant enough.

4       Tumwater argues the park owners failed to develop any evidence of diminished value

5   caused by its ordinances. Dkt. 20 at 12. Tumwater simply ignores the evidence the park owners

6   *did* develop. For example, Wilson stated in her original declaration that Tumwater's ordinances

7   affected a value transfer from the park owners to their tenants much the same way a 99-year

8   ground lease would. BN 247. The parks' tenants have been given greater property rights at the

9   expense of the owners who can no longer take advantage of the underlying land's potential for

10   commercial redevelopment. BN 246-48. In effect, the value of the park owners' property has

11   been artificially depressed by the ordinances. *Id.* Similarly, all three park owners testified

12   during their depositions concerning the diminished values of their respective parks following

13   enactment of Tumwater's ordinances. *Supra.* That is sufficient. *See Cunningham v. Town of*

14   *Tieton*, 60 Wn. 2d 434, 374 P.2d 375 (1962) ("the decisional law leaves no room for doubt that

15   the owner may testify as to the value of his property because he is familiar enough with it to

16   know its worth.").

17       Tumwater also selectively ignores the testimony of its own expert. For example, Shapiro

18   specifically noted in his January 6, 2010 report that *the value impact on Velkommen of*

19   *Tumwater's ordinances was $300,000.* Olsen Decl., Ex. I. Tumwater also ignores the practical

20   effect of the ordinances, which is to prevent the park owners from selling their properties as

21   anything other than as mobile home parks. As Wilson noted, the parks' values are compromised

22   in the eyes of a willing buyer who cannot consider any other use except the existing use. BN

23   248. Premiums associated with redevelopment of the underlying land have been lost as a result

Plaintiffs' Motion to Strike and Response Opposing Summary Judgment - 12
C09-5312BHS

000012

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

of the "down zone." *Id. See also*, Wilson Suppl. Decl. at 5.  Contrary to Tumwater's assertions, the park owners have satisfied *Penn Central's* economic impact factor.

Under *Penn Central's* reasonable investor-backed expectations factor, the park owners' expectations must be "reasonable . . . [and] must be more than a unilateral expectation or an abstract need." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005-06 (1984) (quotation omitted).[11]  This factor limits takings claims to those who can "demonstrate that they bought their property in reliance on a state of affairs that did not include the challenged regulatory regime." *Rose Acre Farms, Inc. v. United States*, 373 F.3d 1177, 1190 (Fed. Cir. 2004) (quotation omitted).  Here, the park owners bought their respective properties well before Tumwater's ordinances took effect and in reliance on the zoning permitted at the time, which allowed multi-family development.  BN 199-200, 222-23, 240-41.  They anticipated using their properties as mobile home parks as long as that use was viable and then expected to be able to turn to other economically productive uses at their discretion, just like state law allowed them to do. *Id. See also, supra*; RCW 59.20.080(1)(e).  This expectation is reasonable, and is consistent with the development occurring around the parks.  Numerous properties surrounding the parks have recently been developed with commercial or residential uses.  BN 246.  Wilson specifically noted the park owners' properties are in the path of such development. *Id.*  The park owners' reasonable investment-backed expectations are no different than those actually realized by the surrounding property owners under Tumwater's zoning code and no different than those actually realized by each of the other 1800 manufactured housing communities in Washington.  Olsen

---

[11] *Guggenheim v. City of Goleta*, 582 F.3d 996, 1028 (9th Cir. 2009) is instructive.  There, the Ninth Circuit held that the rent control ordinance at issue impacted reasonable investor-backed expectations, although the park owners purchased their parks when an earlier version of the ordinance was in place. *Id.* at 1023, 1026-27.  The

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661   (206) 575-1397 Fax

Decl., Ex. C.

Tumwater next contends the use exception in its ordinances explicitly protects the very expectations the park owners' claim has been violated. Dkt. 20 at 13. It implies the park owners have a wide range of uses available to them if they choose not to operate as mobile home parks. *Id.* But Tumwater neglects to mention the permissible accessory uses are *extremely limited* and *do not generate any income.* Similarly, it fails to note that outside of mobile home parks, one single family housing dwelling per park, and child care facilities, the permitted and conditional uses also provide no economic return. Some of those uses, like parks and trails, *generate no income at all.* Others require a significant monetary investment to cover conversion costs and licensing requirements associated with the redevelopment.[12] More importantly, Tumwater fails to inform the Court that a park owner seeking a use exception bears an extremely high burden. The owner must convince the City Council that the District prevents reasonable use of the property or that the authorized uses are not economically viable. BN 89, 104; Matlock Dep. at 14-15, 21, 26, 38-39, 42-43. These standards require the park owner to prove a negative and essentially first go out of business. As Council Member Valenzuela conceded, an owner's chance for a successful rezone is slim. BN 112.

Contrary to Tumwater's assertions, Dkt. 20 at 14, the park owners' expectations are not mere "whims" unprotected by the Takings Clause. *See supra.* The important distinction that Tumwater fails to make is that the park owners have a fundamental right to dispose of their

---

Ninth Circuit recently ordered rehearing en banc; consequently, the park owners intend to move this Court for an order of stay in this case pending the outcome of that rehearing.

[12] For example, child care facility would require the park owner to raze all existing buildings in the park, uproot the concrete pads, build a structure to house the children, and secure licensure. This is not a realistic or economic use of park property. The economic loss associated with permitting only one single-family detached

Plaintiffs' Motion to Strike and Response Opposing Summary Judgment - 14
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

1   properties and that Tumwater's ordinances have impeded that right. *See Manufactured Housing,*

2   142 Wn.2d at 366 (noting the valuable incidents of property ownership also include the right to

3   possess, use, and exclude others).

4   Under *Penn Central's* character of the government action factor, Tumwater has placed

5   the economic burden of providing affordable housing squarely on the shoulders of a few park

6   owners. Although Tumwater argues that its goal was to regulate land use through traditional

7   zoning, Dkt. 20 at 14, Matlock confirms Tumwater's true purpose was to control the park

8   owners' properties to give the tenants more secure leased property. *Supra.* He also concedes the

9   point of the ordinances was to prevent the future conversion of mobile home parks. *Id.*

10   Tumwater has placed the economic burden of providing affordable housing squarely on

11   the shoulders of the park owners. It ignores this burden-shifting by claiming the ordinances are

12   traditional zoning ordinances widely recognized as a valid exercise of the police power. Dkt. 20

13   at 15. Tumwater misses the point. By arbitrarily applying the District, Tumwater *did not impose*

14   *the District on any other private property owners or on the other four mobile home parks within*

15   *the city.* If Tumwater's new housing policy is as beneficial for the public as it claims, then it

16   should fall on *all* house owners, apartment owners, and park owners in the city and not just the

17   six targeted park owners. Tumwater singled out the park owners and imposed solely on them a

18   burden to provide affordable housing. This runs afoul of the notion that the Takings Clause bars

19   local governments from forcing some people alone to bear public burdens that should be borne

20   by the public as a whole. Singling them out in this manner amounts to a taking. *See Cienega*

21   *Gardens v. United States,* 331 F.3d 1319, 1338-39 (Fed. Cir. 2003).

---

residence per existing lot of record is clear; instead of 39 pads at Velkommen generating income, a *single* single-family home could be erected on the parcel.

Plaintiffs' Motion to Strike and Response Opposing Summary Judgment - 15
C09-5312BHS

000015

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

b.   Tumwater's ordinances take the park owners' property in violation of Art. I, § 16 of the Washington Constitution

Tumwater offers little to support its assertion that the District has not deprived the park owners of any fundamental attribute of property ownership. Dkt. 20 at 15. Tumwater misses two important points concerning the park owners' fundamental property rights that dictate denying Tumwater's cross motion.

First, Tumwater fails to recognize that art. I, § 16 of the Washington State Constitution affords greater protection to property owners than the Takings Clause of the Fifth Amendment because it defines a taking more broadly. In *Manufactured Housing*, MHCW challenged a statutory first-refusal right of qualified tenants to buy the park where they lived when the park's owner decided to sell it. 142 Wn.2d at 351-52. The Supreme Court held art. I, § 16 afforded greater protection than the Fifth Amendment because it established a *complete restriction* against taking private property for private use. *Id.* at 362. This absolute prohibition barred any additional inquiry about just compensation; instead, *the regulation was invalidated. Id.* The Court noted that even if the taken property was put to a use that arguably had *some* public benefit, that taking would still violate art. I, § 16 if the regulation's "design and its effect provide a beneficial use for private individuals only." *Id.* The Court rejected the State's argument that preserving mobile home parks was a public use because it was done solely for the benefit of the tenants rather than the general public. *Id.* at 371-73.

Importantly, the *Manufactured Housing* court concluded a right of first refusal constituted a fundamental property interest because it was "part and parcel" of the power to dispose of property. *Id.* at 366. Until granted, such right remains indivisible from the "bundle of sticks" representing the valuable incidents of property ownership, which also include the right to

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

000016

posses, use, and exclude others. *Id.* The Court held a taking occurred because the statute infringed on a fundamental property right. *Id.* at 369-70. The crux of *Manufactured Housing* is that an unconstitutional taking occurs under art. I, § 16 if the government takes *any* stick from the bundle of sticks representing a valuable property right. This is in stark contrast to a federal taking, which occurs when the local government has taken the whole bundle of sticks.

Tumwater's intent to "preserve and protect manufactured home communities from the pressure of development and conversion to another land use," is similar to the legislative intent statement for the statute invalidated in *Manufactured Housing*. Its ordinances do exactly what the Washington Supreme Court has concluded other statutes and ordinances cannot do – place the societal burden of providing affordable housing exclusively on the shoulders of the park owners.

Second, Tumwater does not understand that its ordinances have damaged or destroyed the park owners' fundamental right to freely dispose of their properties as they see fit.[13]  In Washington, the Court determines whether a regulatory taking has occurred by first asking whether the regulation infringes on a fundamental attribute of ownership. *See Guimont v. Clarke*, 121 Wn.2d 586, 854 P.2d 1 (1993); *Presbytery of Seattle v. King Cy.*, 114 Wn.2d 320, 787 P.2d 907, *cert. denied,* 498 U.S. 911 (1990). Fundamental attributes of ownership include the rights to possess, exclude others, dispose of, and make some economically viable use of, property. *Guimont,* 121 Wn.2d at 600-01. If a property owner proves that a regulation has destroyed one of the sticks from the bundle of sticks representing a fundamental property right, then the owner need not proceed with the remainder of the takings analysis. *Id.* at 601.

---

[13]  *Compare Manufactured Housing*, 142 Wn.2d at 366, 369-70 *with Moore v. City of Costa Mesa,* 886 F.2d 260, 263 (9th Cir. 1989) (major portion of property's value must be destroyed before a taking occurs).

Plaintiffs' Motion to Strike and Response Opposing Summary Judgment - 17
C09-5312BHS

000017

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

Tumwater refuses to acknowledge that its ordinances have damaged or destroyed the park owners' fundamental right to freely dispose of their properties.  It also refuses to recognize that the ordinances have infringed on the park owners' fundamental right to economically use their properties by significantly restricting redevelopment.  By infringing on the park owners' fundamental rights of ownership, Tumwater has destroyed the value of their properties and rendered their ownership rights barren rights.  *See Ackerman v. Port of Seattle*, 55 Wn.2d 400, 409, 348 P.2d 664 (1960), *overruled on other grounds by Highline School Dist. No. 401 v. Port of Seattle*, 87 Wn.2d 6, 548 P.2d 1085 (1976) (citations omitted).

      c.    The vested rights doctrine does not bar the park owners' claims

Tumwater argues that the vested rights doctrine forecloses the park owners' contentions, but it is wrong.  The vested rights doctrine is irrelevant and is nothing more than a red herring.

According to the Washington Supreme Court's most recent decision in this area: "Washington's vested rights doctrine, as it was originally judicially recognized, entitles developers to have a land development proposal processed under the regulations in effect at the time a complete building permit application is filed, regardless of subsequent changes in zoning or other land use regulations." *Abbey Road Group, LLC v. City of Bonney Lake*, 167 Wn.2d 242, 250, 218 P.3d 180 (2009) (citing *Hull v. Hunt*, 53 Wn.2d 125, 130, 331 P.2d 856 (1958)).

By definition, the doctrine is backward looking, not forward looking, and it is therefore certainly not "only by vesting that an owner will have a reasonable expectation that the zoning will not change" in the future.  *See* Dkt. 20 at 16.  Tumwater confuses a doctrine addressing applicable law for permits with the investor-backed expectation analysis.  If anything, the doctrine supports the park owners' claims because it confirms that Washington is more protective of development and property rights than other jurisdictions.  According to the *Abbey*

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

*Road Group* court:

> Washington's rule is the minority rule, and it offers more protection of development rights than the rule generally applied in other jurisdictions. The majority rule provides that development is not immune from subsequently adopted regulations until a building permit has been obtained and substantial development has occurred in reliance on the permit. Our cases rejected this reliance-based rule, instead embracing a vesting principle which places greater emphasis on certainty and predictability in land use regulations. *By promoting a date certain vesting point, our doctrine ensures that "new land-use ordinances do not unduly oppress development rights, thereby denying a property owner's right to due process under the law."* Our vested rights cases thus recognize a "date certain" standard that satisfies due process requirements.

*Id.* at 250-51 (citation omitted) (emphasis added).

The whole point of the vested rights doctrine is to preclude new land-use ordinances, like Tumwater's ordinances, from unduly oppressing development rights. For Tumwater to suggest that the park owners must have a vested property right before it can be subject to constitutional review, or that Tumwater has a blank check to steal their property rights, would turn the vested rights doctrine on its head.

The narrow, practical effect of the doctrine is to recognize that a vested property right could sanction a new nonconforming use. Indeed, this too is confirmed in *Abbey Road Group*:

> The goal of the statute [RCW 19.27.095(1)] is to strike a balance between the *public's interest in controlling development and the developers' interest in being able to plan their conduct with reasonable certainty. Development interests can often come at a cost to public interest. The practical effect of recognizing a vested right is to potentially sanction a new nonconforming use.* "A proposed development which does not conform to newly adopted laws is, by definition, inimical to the public interest embodied in those laws." If a vested right is too easily granted, the public interest could be subverted.

*Abbey Road Group*, 167 Wn.2d at 251 (citations omitted) (emphasis added).

Ultimately, the Washington Legislature has recognized the park owners' rights to convert their land use by allowing them to terminate their tenants' perpetual one-year tenancies upon

Plaintiffs' Motion to Strike and Response Opposing Summary Judgment - 19
C09-5312BHS

1    twelve months notice of any "[c]hange of land use of the mobile home park including, but not

2    limited to, conversion to a use other than for mobile homes, manufactured homes, or park models

3    or conversion of the mobile home park to a mobile home park cooperative or mobile home park

4    subdivision." *See* RCW 59.20.080(1)(e); *see also Holiday Resort Cmty. Ass'n v. Echo Lake*

5    *Assoc., LLC,* 134 Wash. App. 210, 223, 135 P.3d 499 (2006).  Both RCW 59.20.080(1)(e), and

6    Washington's vested rights doctrine confirm that the park owners' constitutional property rights

7    "flow independently from state law," even under Tumwater's selective citations.

8            d.      The park owners' facial claims are ripe for adjudication

9            Tumwater incorrectly argues in a single paragraph that the park owners' constitutional

10   claims are unripe under *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson*

11   *City*, 473 U.S. 172 (1985), because they have not applied for a use exception.  *See* Dkt. 20 at 16-

12   17.  Tumwater mistakenly assumes the park owners raise only an as-applied challenge.  *Id.*

13

14           In *Williamson*, the United Supreme Court clarified the ripeness requirements applicable

15   to as-applied constitutional challenges to land use regulations.  Before bringing suit in federal

16   court, a plaintiff must first procure from the relevant regulatory body "a final decision regarding

17   how [the plaintiff] will be allowed to develop [the plaintiff's] property."  473 U.S. at 190.

18   Additionally, because the Fifth Amendment does not prohibit all takings, but merely takings

19   unaccompanied by just compensation, an as-applied challenge is unripe unless the plaintiff has

20   sought "compensation through the procedures the State has provided for doing so."  *Id.* at 194.

21

22           But there are no such prerequisites for a facial challenge.  As the *Keystone* court noted, a

23   facial challenge is generally ripe the moment the challenged regulation is passed.  480 U.S. at

24   495.  *See also, Kawaoka v. City of Arroyo Grande,* 17 F.3d 1227, 1232 (9th Cir.) *cert. denied,*

25   513 U.S. 870 (1994) ("Ripeness requirements are relevant only to 'as applied' [substantive due

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

1   process] challenges, and not to facial challenges."). This is so because a facial challenge by its

2   nature does not involve a decision applying the statute or regulation. *See Yee v. City of*

3   *Escondido*, 503 U.S. 519, 534 (1992). *See also, Garneau v. City of Seattle*, 147 F.3d 802, 807

4   (9th Cir. 1998) (in facial takings claims, the inquiry is limited to whether "mere enactment" has

5   gone too far). Moreover, the extent to which a property owner is compensated is irrelevant to a

6   facial takings analysis. *See Yee*, 503 U.S. at 533-34.

7   Where the park owners allege only a facial challenge to Tumwater's ordinances, their

8   claims are ripe for review.

9
          e.      Tumwater's ordinances violate the park owners' due process rights
10

11  In arguing the ordinances do not violate the park owners' federal or state due process

12  rights, Tumwater fails to recognize that Washington courts utilize a far more liberal substantive

13  due process test than the federal courts. *See Hayes v. City of Seattle*, 131 Wn.2d 706, 723, 934

14  P.2d 1179 (1997) (Madsen, J., concurring in dissent) (noting federal court substantive due

15  process test requires more than a showing of arbitrary or irrational action in the land use

16  context).

17  While Tumwater's ordinances are arguably aimed at achieving the affordable housing

18  goal of the GMA, the means it used to achieve that purpose are improper and bear no rational

19  relation to that purpose. The District severely restricts the range of permitted uses, coercing the

20  park owners into retaining their parks in perpetuity even if such housing becomes an outdated

21  form of affordable housing. Like the owners in *Guimont*, the park owners here are not more

22  responsible for providing affordable housing than is the rest of the population. Furthermore, the

23  ordinances remain unduly oppressive.

24
25  Although Tumwater acknowledges that Washington case law adds an additional prong to

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661   (206) 575-1397 Fax

the substantive due process test, Dkt. 20 at 19, it fails to understand that the Court will also look to the effect of the regulation on the *landowner* when analyzing this prong. Tumwater focuses almost exclusively on the public side factors. As noted in the park owners' summary judgment motion, Tumwater's ordinances will cause them to suffer economic losses that they alone will be forced to bear. The District leaves them with a single-use, resulting in a significant loss of economic value, especially when compared to the surrounding property owners. Clearly, nothing in the ordinances indicates they are intended to be temporary. There was no way for them to have anticipated a mandatory District where the conversion of mobile home parks to other residential or commercial uses is done based on existing zoning and comprehensive plan provisions. Finally, Tumwater did not give the park owners any grace period to decide whether to continue using the properties as mobile home parks before the ordinances went into effect. The park owners had no opportunity to alter their present or planned use before Tumwater's onerous obligations took effect. More importantly, the ordinances treat the park owners differently than other landowners. No other landowner in Tumwater has had the right to alienate his or her property restricted. Instead, they have retained their existing residential or commercial zoning and been granted an economic benefit not enjoyed by the park owners.

    f.  <u>Tumwater's ordinances violate the park owners' rights to equal protection and constitute illegal spot zoning</u>

    Tumwater next claims its ordinances do not violate the park owners' equal protection rights or constitute illegal spot zoning. Dkt. 20 at 21-24. It is mistaken on both claims.

    Tumwater's ordinances treat the park owners differently, whether the class being considered is all housing providers or merely all park owners in Tumwater. Tumwater has not required all housing providers – single family, apartments, condominia, etc. – to face the same

types of limitations on the future use of their property.  It has not required every homeowner in "affordable" housing areas zoned multi-family to limit their future right to build multi-family projects.  The park owners here are placed at a competitive disadvantage to other property owners whose property has not been so limited.

Tumwater admits it has not uniformly applied the District.  Its decision to exempt four mobile home parks, three of which it concedes are "technically" mobile home parks, was subjective.  Its exemption decision was based, in large part, on its belief that those parks "had no sense of community" and did not operate like mobile home parks.  Tumwater should not be able to pick and choose which mobile home parks will bear the sole responsibility for satisfying its affordable housing goals when its interpretation of a mobile home park conflicts with state law.

Tumwater's ordinances constitute illegal spot zoning because they single out the park owners with more restrictive zoning and grant a discriminatory benefit to other similarly situated mobile home park property owners.  *See Bassani v. Board of County Comm'rs for Yakima County*, 70 Wn. App. 389, 396, 853 P.2d 945 (1993) (citations omitted).  Other similarly-situated mobile home park owners have not been saddled with Tumwater's objectionable zoning.

Finally, Tumwater claims the District is consistent with its comprehensive plan and asserts in a footnote that the park owners are estopped from claiming there is an inconsistency with that plan.[14]  Dkt. 20 at 24 n.25.  This is a factually incorrect red herring.  Consistency with

---

[14]  Tumwater's reliance on *Miller v. County of Santa Cruz*, 39 F.3d 1030 (9th Cir. 1994) and *Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wn.2d 266, 956 P.2d 312 (1992), is misplaced.  First, Tumwater cannot allege estoppel in a footnote.  It must prove the elements and argue the evidence, which it has not done.  *See Nielson*, 135 Wn.2d at 262-63 ("Before the doctrine of collateral estoppel may be applied, the party asserting the doctrine must prove [four elements].").  Second, *Miller* is factually distinct.  There, the plaintiff failed to seek subsequent review of an adverse administrative finding, *i.e.*, he did not appeal but chose instead to file a separate, collateral lawsuit.  *Id.* at 1032.  The Ninth Circuit's statement of the issue was "whether unreviewed findings of a state administrative tribunal are entitled to preclusive effect in a subsequent § 1983 action in federal court."  *Id.* The

Plaintiffs' Motion to Strike and Response Opposing Summary Judgment - 23
C09-5312BHS

000023

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

1  the comprehensive plan, even if true, does not mean the District is legal or constitutional.

2  Moreover, Tumwater did not take "great measures" to ensure the District is consistent with the

3  compressive plan as it claims it did. *Id.* It simply changed the comprehensive plan to facilitate

4  the result it wanted to achieve. Similarly, Tumwater did not create the District pursuant to the

5  GMA. *Id.* The District was a purely political move to control the park owners' properties,

6  which used the GMA as a cover. *Supra.* Beyond that, the park owners' challenge in the GMHB

7  hearing was t the consistency of Tumwater's actions with *the GMA*. That is distinct from any

8  claim that the District is consistent with Tumwater's comprehensive plan.

9

10  E.    CONCLUSION

11          Tumwater's ordinances are unconstitutional takings and violate the park owners' rights to

12  federal and state due process and equal protection. Accordingly, Tumwater's cross motion for

13  summary judgment should be denied.

14          DATED this 5th day of April, 2010.

15                                      Respectfully submitted,

16                                      *Philip A. Talmadge*

17                                      Philip A. Talmadge, WSBA #6973
                                        Thomas M. Fitzpatrick, WSBA #8894
18                                      Emmelyn Hart-Biberfeld, WSBA #28820
                                        Talmadge/Fitzpatrick
19                                      18010 Southcenter Parkway
                                        Tukwila, WA  98188-4630
20                                      (206) 574-6661
                                        Email: phil@tal-fitzlaw.com
21                                             tom@tal-fitzlaw.com
                                               emmelyn@tal-fitzlaw.com
22                                      Attorneys for Plaintiffs

23

24  ────────────────────────────────────────

25  Court's analysis repeatedly focused on "unreviewed agency determinations" and on other cases with that same factual pattern. The factual difference from this case is obvious.