UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LAUREL PARK COMMUNITY, LLC, *et al.*, | No. C09-05312BHS |
| Plaintiffs, | PLAINTIFFS' REPLY IN SUPPORT OF PARTIAL SUMMARY JUDGMENT AND RESPONSE OPPOSING MOTIONS TO STRIKE |
| v. | |
| CITY OF TUMWATER, a municipal corporation, | |
| Defendant. | Note on Motion Calendar: April 9, 2010 (Oral Argument Requested) |

A. **INTRODUCTION AND RELIEF REQUESTED**

The City of Tumwater ("Tumwater") offers a series of half-hearted procedural attacks and irrelevant arguments in response to the park owners' motion for partial summary judgment, but fails to meet their arguments that its ordinances are unconstitutional under federal and state law. The park owners' motion should be granted.

B. **EVIDENCE RELIED UPON**

The evidence and declarations the park owners previously submitted with their motion for partial summary judgment (Dkt. 15) and their response (Dkt. 35), and the additional declarations of Walter H. Olsen, Jr. and Jeanne-Marie Wilson filed herewith.

C. **REPLY TO TUMWATER'S COUNTER STATEMENT OF FACTS**[1]

Tumwater continues to misstate the real nature of the District's use exception; any

---

[1] The park owners incorporate by reference the statement of facts in their summary judgment motion and the counterstatement of facts in their response opposing Tumwater's cross motion.

Plaintiffs' Reply in Support of Motion for Partial Summary Judgment - 1
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

exception is discretionary. BN 89.[2] The park owner's burden of proof when requesting an exception is extraordinarily high – the owner must convince the City Council that the District prevents reasonable use of the property or that the authorized uses are not economically viable. BN 89, 104. These standards require the park owner to prove a negative and essentially first go out of business. As Council Member Karen Valenzuela acknowledged, "it's fair to say it is likely the owner's chances for a rezone would be questionable." BN 112.

The 23 permitted, accessory, and conditional uses available to the park owners if they choose not to operate as mobile home parks are illusory – those uses are not economic uses of the properties. Storage and tool sheds, private parking garages or carports, home occupations, non-commercial recreational structures, and clubhouse and community centers associated with manufactured home parks, BN 86, do not generate revenue. Outside of mobile home parks, one single family home per park, and child care facilities, the permitted and conditional uses likewise provide no economic return. BN 85-86. Some of those uses, like parks and trails, *generate no income at all* while others require a significant monetary investment to cover conversion costs and licensing requirements associated with redevelopment. *See* BN 4 n.6.

The park owners have appealed the determination of the Western Washington Growth Management Hearings Board ("GMHB") that it is not illegal to have single use zoning. The GMA applies single use zoning only to special uses like airports and agricultural lands; mobile home parks are qualitatively different. That the park owners' successful challenge was procedural does not vitiate its importance; it goes to issues of fundamental fairness and due

---

[2] "BN" refers to the consecutively Bates stamped pleadings the park owners previously submitted in support of their motion. "BN II" will refer to the consecutively Bates stamped pleadings the park owners submitted in response to Tumwater's cross motion.

Plaintiffs' Reply in Support of Motion for Partial Summary Judgment - 2
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661   (206) 575-1397 Fax

process. The GMHB determined *Tumwater failed to comply* with the process for considering property rights set forth in the Attorney General's Advisory Memorandum. Importantly, the GMHB did not address the park owner's constitutional claims *because it determined it did not have the authority to do so.* BN 173, 186; Matlock Decl., Ex. A at 11.

D. ARGUMENT IN REPLY

(1) Tumwater's Motions to Strike Should Be Denied

Tumwater attacks the park owners' expert witness, Jeanne-Marie Wilson, and files a borderline frivolous motion to strike the declarations of John Woodring and James Andersen. Its criticisms go to the weight of the evidence rather than to admissibility and are untimely where the deadline for discovery motions has long since passed. Tumwater's motions to strike should be denied because the declarations are relevant to the park owners' constitutional harm.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587-89 (1993),[3] and Fed. R. Evid. 702 ("Rule 702")[4], Wilson's expert declarations are admissible. Rule 702 "contemplates a broad conception of expert qualifications." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004). "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable testimony." *Id.* By Tumwater's own admissions,

---

[3] In *Daubert*, the United States Supreme Court set the standard for admissibility of expert testimony. The standard is "a flexible one." 509 U.S. at 594-95. Several post-*Daubert* opinions define and clarify that standard. *See, e.g., Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("no one denies that an expert may draw a conclusion from a set of observations based on extensive and specialized knowledge."); *United States v. Sandoval-Mendoza*, 472 U.S. 645, 654 (9th Cir. 2006) (the court is a gate-keeper, not a fact-finder); *Mukhtar v. California State University, Hayward*, 299 F.3d 1053, 1064 (9th Cir. 2002) (trial court has broad latitude in determining whether an expert's testimony is reliable and in deciding how to determine the testimony's reliability); *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001) (the role of determining the credibility of two competing expert witnesses properly resides with the jury); *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228 (9th Cir. 1998) ("[d]isputes as to the strength of an expert's credentials, faults in his use of a particular methodology, or lack of textual authority, go to the weight, not the admissibility, of his testimony.").

[4] Rule 702 indicates a witness is qualified to testify as an expert if he or she has sufficient "knowledge, skill, experience, training or education" on the subject to which the testimony relates.

Plaintiffs' Reply in Support of Motion for Partial Summary Judgment - 3
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661 (206) 575-1397 Fax

Wilson is a qualified appraiser.

Wilson's declarations are admissible concerning the park owners' constitutional injury; alternatively, they are admissible to impeach Tumwater's experts. That Wilson has considered the unique factual circumstances of more than 75 mobile home parks to ascertain value for park owners demonstrates the reliability of her testimony. BN 43. *Tumwater's own expert agrees she is qualified and her initial expert disclosure is compliant with the Uniform Standards of Professional Appraisal Practice ("USPAP")*. BN 6. Thus, there is no basis for Tumwater's contention that Wilson is unqualified,[5] noncompliant with USPAP, or unreliable.

Tumwater creates a dispute where none exists. Whether Wilson did a before/after analysis is a red herring. The purpose of her initial report was to corroborate the value of the three parks as parks; a before/after analysis is irrelevant to that confirmation.[6] But testimony as to valuation *is relevant* to the consideration of the parks' values before the ordinances were enacted to ascertain injury and therefore liability. See Fed. R. Evid. 401 (defining relevant evidence). The purpose of Wilson's later declarations was to either supplement or impeach Tumwater's untimely initial expert disclosures. Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii), 26(a)(2)(D). The park owners remain competent to testify as to the value of their properties *after* the ordinances were enacted. See *Cunningham v. Town of Tieton*, 60 Wn. 2d 434, 374 P.2d 375

---

[5] Tumwater omits material facts about Wilson's qualifications, namely: (1) she need only complete one more class and complete a demonstration report before she sits for the MAI test; and (2) she authored an industry article regarding the "impact on value and the concerns of the investor versus the tenant base" as it relates to the tenants' statutory first-refusal right, RCW 59.23 *et seq.*, which was later found unconstitutional in *Manufactured Housing*. Wilson Dep. at 7, 10 (attached to the reply declaration of Walter H. Olsen, Jr. as exhibit B).

[6] Her initial expert disclosure revealed her basic opinions to Tumwater. Her additional materials were merely supplemental or rebuttal. The real problem is that Tumwater did not timely file its own expert disclosures, which left the park owners without the opportunity to then supplement and file rebuttal material as contemplated by the federal rules. Tumwater filed its expert reports not when required, but at the rebuttal deadline. Any "late disclosure" is a consequence of Tumwater's violation of the scheduling order. In any event, Tumwater has suffered no prejudice. It had the information in time for any discovery it needed.

Plaintiffs' Reply in Support of Motion for Partial Summary Judgment - 4
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661   (206) 575-1397 Fax

(1962).

John Woodring's declaration is also admissible. He is a fact witness. He is an attorney for MHCW and its member communities; *he attended every public hearing and meeting Tumwater held with regard to its ordinances, except one.* BN 190. He can certainly testify to what he observed at those meetings, and to Tumwater's admissions in those sessions. Fed. R. Evid. 601-602, 801(d)(2)(A). He was present when Council Member Ed Stanley admitted his bias toward restricting the parks for the benefit of the tenants. He observed Tumwater disregard the takings precedent he submitted and make weak efforts to address how the ordinances took the park owners' properties. BN 191. Each of his personal observations and Tumwater's party-admissions are probative on whether Tumwater sought and then took the park owners' property rights and disprove Tumwater's contentions that it genuinely considered those rights. Fed. R. Evid. 401.

James Andersen's declaration is likewise admissible. Tumwater omits that it deposed Andersen and inquired into each of the matters contained in his declaration. Andersen does not claim to be a plaintiff in this action, nor does he purport to testify on behalf of his deceased father or his 77 year old mother. Andersen Dep. at 82.[7] He is the speaking agent for Velkommen Park LLC, which owns that park. *Id.* at 7, 9. That company's investment-backed expectations are relevant to the constitutional issues here. *Cunningham*, 60 Wn.2d at 436. For Tumwater to suggest otherwise is incorrect and mischaracterizes his testimony. When Andersen used the word "we" during his deposition, he meant his familial LLC. When he testified that the company received offers to purchase the park before the ordinances were enacted, that those

---

[7] Excerpted deposition testimony is attached to the reply declaration of Walter H. Olsen, Jr., and is referenced by the name of the witness for ease of reference.

Plaintiffs' Reply in Support of Motion for Partial Summary Judgment - 5
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661   (206) 575-1397 Fax

offers did not close, and that the company did not receive any offers thereafter, he did so with personal knowledge as the company manager. BN 91, 199-201; Andersen Dep. at 34, 39, 40, 41-42, 48, 49). The challenged declarations are admissible; Tumwater's frivolous motions to strike should be denied.

(2) <u>The Park Owners Have Demonstrated that the Ordinances Take Their Property</u>

The Ninth Circuit has ordered rehearing en banc in *Guggenheim v. City of Goleta*, 582 F.3d 996, 1028 (9th Cir. 2009). The park owners will shortly file a motion to stay this case pending the outcome of that rehearing before the Ninth Circuit. Regardless of the outcome there, Tumwater's ordinances constitute a taking under *Penn. Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978), because they go too far in regulating the park owners' properties.

Under *Penn Central's* economic impact factor, the park owners need only demonstrate a loss of value less than 100 percent, but high enough to have gone too far. *Id.* at 124. They need not assign a specific dollar amount to their constitutional deprivations at this stage of the case because they are not proving their *damages*, only the constitutional *harm*.

Tumwater argues the park owners have no evidence to support their economic impact claims, but *admits* that Velkommen has suffered a measurable economic impact. It also ignores the evidence the park owners *did* develop.[8] For example, Wilson originally stated that Tumwater's ordinances affected a value transfer from the park owners to their tenants and that the tenants had been given greater property rights at the expense of the owners. BN 246-48. In

---

[8] Tumwater likewise ignores the testimony of its own expert, who reported *the value impact on Velkommen of Tumwater's ordinances was $300,000*. BN II:147. It also ignores the practical effect of the ordinances, which is to prevent the park owners from selling their properties as anything other than as mobile home parks. As Wilson noted, the parks' values are compromised in the eyes of a willing buyer who cannot consider any other use except the existing use. BN 248. Premiums associated with redevelopment of the underlying land have been lost as a result of the "down zone." *Id.*; *see also* BN II:152.

Plaintiffs' Reply in Support of Motion for Partial Summary Judgment - 6
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

effect, *the value of the park owners' properties has been artificially depressed by the ordinances.* *Id.* Similarly, all three park owners testified to the diminished values of their respective parks following enactment of Tumwater's ordinances. BN 201; BN II:51-64, 66, 68-73, 88, 92, 96. That is sufficient. *See Cunningham*, 60 Wn. 2d at 436.

Under *Penn Central's* reasonable investor-backed expectations factor, takings claims are limited to those who can "demonstrate that they bought their property in reliance on a state of affairs that did not include the challenged regulatory regime." *Rose Acre Farms, Inc. v. United States*, 373 F.3d 1177, 1190 (Fed. Cir. 2004). Here, the park owners brought their respective properties well before Tumwater's ordinances took effect and in reliance on the zoning permitted at the time, which allowed multi-family development. BN 199-200, 222-23, 240-41.[9] They anticipated using their properties as mobile home parks as long as that use was viable and then expected to be able to turn to other economically productive uses like multi-family housing. *Id.* This expectation is reasonable, and is consistent with the development occurring around the parks. BN 246. Their reasonable investment-backed expectations are no different than those actually realized by the surrounding property owners and no different than those actually realized by each of the other 1800 manufactured housing communities in Washington.

The park owners' expectations are not mere "whims" unprotected by the Takings Clause. The important distinction Tumwater fails to make is that they have a fundamental right to dispose of their properties and that its ordinances have impeded that right. *See Manufactured Housing Cmtys. of Washington v. State*, 142 Wn.2d 347, 13 P.3d 183 (2000) (noting the valuable incidents of property ownership also include the right to possess, use, and exclude others).

---

[9] In contrast to the non-economic uses, left to park owners by Tumwater's ordinances these uses *were* economic.

Plaintiffs' Reply in Support of Motion for Partial Summary Judgment - 7
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

As it did in its cross motion, Tumwater mistakenly contends the use exception explicitly protects the very expectations the park owners' claim has been violated. But it neglects to mention the permissible accessory uses are *extremely limited* and *do not generate any income*. Similarly, it fails to note that with few exceptions, the permitted and conditional uses also provide no economic return. More importantly, it fails to inform the Court that a park owner seeking a use exception bears an extremely high burden. BN 89, 104; BN II:105-06, 108, 110, 115-16, 117-18. As Council Member Valenzuela conceded, an owner's chance for a successful rezone is slim. BN 112.

Tumwater argues the park owners have not addressed the actual language of the third prong of the *Penn Central* test, which looks at the character of the government action. Tumwater does not recognize that there are two divergent interpretations of that test and that the park owners' analyze their claims under the second, *more frequently applied* test. Under this more common test, the focus is on the severity of the burden the government imposed upon the landowners' property rights. *See Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 539 (2005).[10] As even the *Lingle* court notes, the Takings Clause prohibits "Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Id.* at 537 (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).[11]

---

[10] Tumwater muddies the Court's holding in *Lingle*. Dkt. 25 at 9-10. There, the United States Supreme Court considered for the first time the validity of the stand-alone "substantially advances" takings test enunciated in *Agins v. City of Tiburon*, 447 U.S. 255 (1980). *Lingle*, 544 U.S. at 540. It determined that formula was not a valid method of identifying regulatory takings for which the Fifth Amendment requires just compensation because it reveals nothing about the burden a particular regulation imposes or how that burden is distributed among landowners. Importantly, the *Lingle* court stated it was not disturbing any of its prior takings holdings. *Id.* at 545.

[11] Tumwater misinterprets the purpose behind the park owners' quote from *Armstrong* in their motion. That language is a general, purposive statement about the meaning of the Takings Clause; it does not elucidate any particular rule or authorize a particular class of claims, nor do the park owners contend that it does. Instead, they contend the appropriate test to be applied is the three-factor test established in *Penn Central*.

Plaintiffs' Reply in Support of Motion for Partial Summary Judgment - 8  
C09-5312BHS

Talmadge/Fitzpatrick  
18010 Southcenter Parkway  
Tukwila, Washington 98188-4630  
(206) 574-6661  (206) 575-1397 Fax

Tumwater has placed the economic burden of providing affordable housing *squarely on the shoulders of a few park owners*. By arbitrarily applying the District, it *did not impose such restrictions allegedly designed to advance affordable housing on any other private property owners in the city or on the other four mobile home parks in Tumwater*. If the new housing policy is as beneficial for the public as Tumwater claims, then it should fall on *all* house owners, apartment owners, and park owners in the city and not just the six targeted here. Tumwater singled out the six park owners and imposed solely on them a burden to provide affordable housing, forever forcing them to use their properties *only* as mobile home parks. Tumwater took the benefit of such restricted uses and transferred it to the parks' tenants. This runs afoul of the federal prohibition barring local governments from forcing some people alone to bear public burdens that should be borne by the public as a whole. Singling them out in this manner amounts to a taking. *See Cienega Gardens v. United States*, 331 F.3d 1319, 1338-39 (Fed. Cir. 2003).[12]

(3)   Tumwater's Ordinances Violate Art. I, § 16 of the Washington Constitution

Tumwater deliberately misstates the holding in *Manufactured Housing* in attempting to counter the park owners' argument that the ordinances take their property in violation of art. I, §16 of the Washington Constitution.[13]

---

[12] Tumwater's attempt to distinguish *Cienega Gardens* is unavailing. There, two federal statutes abrogated property developers' contractual rights to prepay their forty-year mortgage loans after twenty years. The developers were effectively prevented from exiting the low-rent housing programs in which they were required to participate while carrying the loans. The statutes led to a 96 percent loss of return on equity for the developers. The federal circuit court found that the government's action placed the expense of low-income housing on a few private property owners, instead of distributing the expense among all taxpayers in the form of incentives for developers to construct more low-rent apartments. *See* 331 F.3d at 1338-39. Like the government in *Cienega Gardens*, Tumwater has improperly singled out the park owners to bear the societal burden of providing affordable housing.

[13] Tumwater's reliance on Justice Sanders' opinion in *Manufactured Housing* is misplaced because his opinion was the dissenting opinion. *See, e.g., U.S. v. Ameline*, 409 F.3d 1073, 1083 n.5 (9th Cir. 2005) (citation omitted) (noting dissenting opinions are not precedential).

Plaintiffs' Reply in Support of Motion for Partial Summary Judgment - 9
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661   (206) 575-1397 Fax

Tumwater incorrectly argues that the only difference between state and federal takings jurisprudence is that Washington's interpretation of "public use" and "private use" is more restrictive. In doing so, it fails to recognize that Washington's Constitution affords greater protection to property owners than the Fifth Amendment because it defines a taking more broadly. The *Manufactured Housing* court concluded a right of first refusal constituted a fundamental property interest because it was "part and parcel" of the power to dispose of property. *Id.* at 366. The Washington constitution does not require that all property rights be affected before a taking is present. Under *Manufactured Housing*, an unconstitutional taking is present if the government takes *any* stick from the bundle of sticks representing a valuable property right. It also establishes a *complete restriction* against taking private property for private use. *Manufactured Housing*, 142 Wn.2d at 362.

Tumwater here took the park owners' right to alienate their property, which is a fundamental right. The ordinances have damaged or destroyed their fundamental right to freely dispose of their properties as they see fit and infringed on their fundamental right to economically use their properties by significantly restricting redevelopment. BN 270.

(4)   <u>Tumwater's Ordinances Violate the Park Owners' Due Process Rights</u>

In arguing the ordinances do not violate the park owners' due process rights, Tumwater fails to recognize that Washington courts utilize a far more liberal substantive due process test than the federal courts. *See Hayes v. City of Seattle*, 131 Wn.2d 706, 723, 934 P.2d 1179 (1997) (Madsen, J., concurring in dissent) (noting federal court substantive due process test requires more than a showing of arbitrary or irrational action in the land use context).

Although Tumwater argues the park owners experienced no damage, the evidence demonstrates otherwise. For example, all three park owners testified to the diminished value of

Plaintiffs' Reply in Support of Motion for Partial Summary Judgment - 10
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661   (206) 575-1397 Fax

their properties following enactment of the ordinances. BN II:7-9. Wilson also testified the value of the parks has been artificially depressed by the ordinances and that the park owners can no longer take advantage of the underlying land's potential for redevelopment. BN 246-48. Finally, Tumwater's own expert testified that the value impact on Velkommen of Tumwater's ordinances was $300,000. BN II:147.

Tumwater's self-serving assertion that the park owners had ample opportunity to alter their present uses before the ordinances took effect in 2009 is belied by Andersen's testimony that Velkommen received two purchase offers in May and September 2008, but that those offers were *rescinded* after Tumwater publicly announced that it intended to rezone the park. BN 201.

That the park owners maintain increasing rental profits does not mean the value of their properties was not impacted by Tumwater's ordinances. It is an inescapable fact that no other landowner in Tumwater has had the right to alienate his or her property restricted, that those landowners have retained their existing residential or commercial zoning, and that those landowners have been granted an economic benefit not enjoyed by the park owners here.

(5)  <u>Tumwater's Ordinances Violate the Park Owners' Rights to Equal Protection and Constitute Illegal Spot Zoning</u>

As the park owners noted in their response opposing Tumwater's cross motion, Tumwater's ordinances treat the park owners differently, whether the class being considered is all housing providers or merely all park owners in Tumwater. BN II: 22-23. It has not required all housing providers – single family, apartments, condominia, etc. – to face the same types of limitations on the future use of their property. It has not required every homeowner in "affordable" housing areas zoned multi-family to limit their future right to build multi-family projects. The park owners here are placed at a competitive disadvantage to other property

Plaintiffs' Reply in Support of Motion for Partial Summary Judgment - 11
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

owners whose property has not been so limited.

Tumwater's ordinances constitute illegal spot zoning because they single out the park owners with more restrictive zoning and grant a discriminatory benefit to other similarly situated mobile home park property owners. *See Bassani v. Board of County Comm'rs for Yakima County*, 70 Wn. App. 389, 396, 853 P.2d 945 (1993) (citations omitted). Other similarly-situated mobile home park owners have not been saddled with Tumwater's objectionable zoning.

E. CONCLUSION

Tumwater's ordinances are unconstitutional takings and violate the park owners' rights to federal and state due process and equal protection, and the Court should grant their motion for partial summary judgment.

DATED this 9th day of April, 2010.

Respectfully submitted,

*Philip A. Talmadge* (signature)

Philip A. Talmadge, WSBA #6973
Thomas M. Fitzpatrick, WSBA #8894
Emmelyn Hart-Biberfeld, WSBA #28820
Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, WA 98188-4630
(206) 574-6661
Email: phil@tal-fitzlaw.com
          tom@tal-fitzlaw.com

Walter H. Olsen, Jr., WSBA #24462
Olsen Law Firm PLLC
205 S. Meridian
Puyallup, WA 98371
(253) 200-2288
Email: walt@olsenlawfirm.com
Attorneys for Plaintiffs

Plaintiffs' Reply in Support of Motion for Partial Summary Judgment - 12
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661   (206) 575-1397 Fax