UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LAUREL PARK COMMUNITY, LLC, a Washington limited liability company; TUMWATER ESTATES INVESTORS, a California limited partnership; VELKOMMEN MOBILE PARK, LLC, a Washington limited liability company; and MANUFACTURED HOUSING COMMUNITIES OF WASHINGTON, a Washington non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF TUMWATER, a municipal corporation,<br><br>Defendant. | No. C09-05312BHS<br><br>SUPPLEMENTAL DECLARATION OF JEANNE-MARIE WILSON IN SUPPORT OF PLAINTIFFS' REPLY ON SUMMARY JUDGMENT<br><br>Note on Motion Calendar: April 9, 2010<br><br>(Oral Argument Requested) |

Jeanne-Marie Wilson declares and states as follows:

1. I am over the age of eighteen, competent to testify, and familiar with the facts herein based upon personal knowledge.

2. Tumwater's experts create dispute where none should exist. For example, each one of my prior declarations was prepared as an appraisal practice under the Uniform Standards of Professional Appraisal Practice ("USPAP"), which it defines as "Valuation services performed by an individual acting as an appraiser, including but not limited to appraisal, appraisal review, or appraisal consulting." A true and correct copy of the 2010-2011 USPAP

Supplemental Declaration of Jeanne-Marie Wilson - 1

Edition, Definitions section page U-1, is attached as Exhibit A to my April 5, 2010 declaration in response to Tumwater's motion for summary judgment. As an appraisal practice, compliance with Standard 1-3 is not required and USPAP does not require that my opinions of value include a before/after analysis as suggested by Stephen Shapiro.

    3.    Shapiro is correct that I prepared a summary appraisal with an effective valuation date of December 31, 2008. He admits that my valuation in that appraisal is USPAP compliant, as evidenced in the second paragraph of page 2 of his January 6, 2010 report. A true and correct copy of my summary appraisal is attached as Exhibit B to my prior declaration in response to Tumwater's motion for summary judgment. As a summary appraisal, USPAP does not require me to include a before/after analysis as Shapiro suggests.

    4.    I also prepared an appraisal review, which was developed and reported consistent with USPAP Standard 3. A true and correct copy of my appraisal review is attached as Exhibit C to my prior declaration in response to Tumwater's motion for summary judgment. As an appraisal review, USPAP does not require that my opinions of value include a before/after analysis as Shapiro continues to suggest. A true and correct copy of the applicable USPAP Standards are attached as Exhibit D to my prior declaration in response to Tumwater's motion for summary judgment.

    5.    Shapiro is correct that my prior appraisal practice, summary appraisal, and appraisal review did not include a before/after analysis. But Shapiro is incorrect that USPAP precludes me from forming an opinion that a development premium can be clearly recognized in the improved sale examples I cited in my February 12, 2010 Declaration at paragraphs 21 (Wildwood MHP) and 22 (Allimor Carriage Estates MHP). The investor-buyer in both instances paid a premium that was directly tied to the redevelopment potential associated with these

properties, and that was the *factual basis* of my opinion. The other factual basis for my opinion that a development premium can be recognized at plaintiffs' parks is evidenced by a comparison of my initial value estimate of Velkommen "As Improved" ($1.4 to $1.5 million) effective December 31, 2008, in relation to offers that were received from prospective buyers at $1.75 and $1.6 million during May and September 2008, respectively. *See* Anderson Decl. at 4. My research revealed that one of those offers included a "premium" beyond the value of the existing income stream directly associated with allowed uses of the underlying MFM zone. My investigation confirmed that one prospective buyer planned to convert the park to condominium ownership and sell individual lots to the existing tenants and offered the "premium" in light of that objective.

6.    Shapiro has repeatedly criticized the fact I have not yet completed the "before & after" valuation which he sees as the relevant underpinning to this case. While this analysis may be relevant in determining the actual *damage* to each property from a legal perspective, the fact that I have not completed that analysis does not negate plaintiff's fundamental argument that harm has been created as a result of the new, more *restrictive* MHP zoning ordinance. Merriam-Webster's Dictionary defines the verb restrict as, *"2: to place under restriction as to use."* It does not require a detailed before and after analysis by either an appraiser or a CPA to determine that the primary allowed uses under the previous MFM or MFH zoning ("before") allow a greater variety and number of uses than in the "after" MHP designation. Moreover, a cursory review of the "intent" of each zone clearly illustrates the direction of the ordinance toward a single use "to provide sufficient land for manufactured homes in manufactured home parks."

Supplemental Declaration of Jeanne-Marie Wilson - 3

The text from the Tumwater Municipal Code is presented as follows:

> **MFM: 18.14.010 Intent.**
> The intent of the Multi-Family Medium-Density Residential (MFM) zone district is to:
> A.  Provide for a high standard of development for residential areas of medium density including both single-family and multi-family housing;
> B.  Provide designated areas in which a minimum net density of nine units per acre and a maximum net density of fifteen units per acre apply to promote the efficient use of land;
> C.  Guide medium-density residential development in such a manner as to encourage and plan for the availability of public services and community facilities such as utilities, police and fire protection, streets, public transit, schools, parks and recreation.
> D.  Encourage development of attractive residential areas that provide a sense of community, establish a pedestrian-friendly atmosphere and contain a variety of housing types.
> E.  Ensure that development without municipal utilities is at a density and in a configuration that enables cost effective urban density in-fill development when municipal utilities become available.
> (Ord. O95-035, Added, 12/19/1995)

The MFM intent (zoning before) is in stark contrast to that of the new MHP zone (zoning after):

> **MHP: 18.49.010 Intent.**
> The Manufactured Home Park (MHP) zone district is established to promote residential development that is high density, single family in character and developed to offer a choice in land tenancy. The MHP zone is intended to provide sufficient land for manufactured homes in manufactured home parks.
> (Ord. O2008-009, Added, 02/17/2009)

7. The primary permitted uses in each zone further clarifies the intent of each zone and are restated below:

> **18.14.020 Permitted uses.**
> Permitted uses in the MFM district are as follows:
> A.  Single-family and multi-family dwellings;
> B.  Duplex on at least six thousand square feet of land area;
> C.  Designated manufactured homes on single lots of record, and in designated manufactured home parks, in accordance with the provisions of Tumwater Municipal Code Chapter 18.48;

Supplemental Declaration of Jeanne-Marie Wilson - 4

> D. Designated manufactured home parks;
> E. Parks, trails, open space areas, and other related recreation facilities;
> F. Support facilities;
> G. Residential planned unit developments;
> H. Family child care home; child mini-day care center, subject to review by the Development Services Director;
> I. Adult family homes, residential care facilities;
> J. Any combination of the permitted uses listed in this section may be combined on one site, in accordance with the provisions of 18.14.050.
> K. Attached wireless communication facilities, except that it is prohibited to attach a non-accessory wireless communication antenna on a single family or two-family dwelling;*
> L. Bed and breakfasts.
> (Ord. O2005-011, Amended, 07/05/2005; Ord. O2001-012, Amended, 03/19/2002; Ord. O2000-004, Amended, 07/18/2000; Ord. O97-019, Amended, 06/17/1997; Ord. O95-035, Added, 12/19/1995)

> **18.49.020 Permitted Uses.**
> Permitted uses within the MHP zone district are as follows:
> A. Manufactured home parks in accordance with the provisions of TMC 18.48;
> B. Designated manufactured homes on existing single lots of record, in accordance with the provisions of TMC 18.48;
> C. Mobile home parks which were legally established prior to July 1, 2008;
> D. One single family detached dwelling per existing single lot of record;
> E. Parks, trails, open space areas, and other related recreation facilities;
> F. Support facilities;
> G. Family child care home; child mini-day care center, subject to review by the Development Services Director, the Building Official, and the Fire Chief.
> (Ord. O2008-009, Added, 02/17/2009)

8. William Partin, CPA, references the Doelman rezone application included in a prior workfile of mine. While he accurately references statements from a third party report about the amount of lands available for future development, the specific area of study referenced in the report is the Tumwater Urban Growth Area ("UGA"). This may be used for discussion of Velkommen and Laurel Park but is not relevant for Tumwater Estates, which was not located within the municipality during the study period (2002). Further, as succinctly presented in the Doelman Application for Quasi-Judicial Rezone:

Supplemental Declaration of Jeanne-Marie Wilson - 5

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661   (206) 575-1397 Fax

> A significant imbalance between the ratio of multi-family to single-family residential units exists due to extensive wetlands in SF-zoned areas. An adjustment in required minimum density is necessary for development of a quality mixed-use project.

The Doelman property had significant sensitive areas that were being taken into consideration when asking for the rezone. However, the rezone request *was not* undertaken, as Partin notes in his declaration "Because the oversupply of multi-family housing created a substantial risk for this type of development, Doelman recommended a downzone. . . consistent with the expected low demand for housing." The report clearly rebuts this statement as explained on page 4, third paragraph:

> In addition, there are various sensitive areas within the subject property, *i.e.*, wetlands and areas of high groundwater. Lowering the overall minimum density requirement will provide the flexibility needed in the more detailed planning stage to fit the appropriate intensity of development to what the land is capable of sustaining.

9. In Partin's declaration at page 4, he claims I contradict myself as to added value associated with existing MHP improvements when redevelopment takes place. He references text from an appraisal report I prepared and contrasts this with my declaration. The comparison is not accurate and takes my statements out of context. In the declaration, I was referring to the value associated with *existing utility infrastructure* that remains once a MHP use is vacated. It is recognized there are costs associated with vacating the MHP use, but they do not preclude that existing infrastructure adds value, above and beyond that of the raw land.

10. The existence of a potential "redevelopment premium" is not exclusive to only land that is zoned for high density commercial development. Referenced sales Wildwood and Allimore Carriage Estates were zoned for higher density and/or commercial development and were presented as local examples of manufactured home parks where a premium was evident in

Supplemental Declaration of Jeanne-Marie Wilson - 6

the purchase price. The underlying zoning of the subject properties in the "before" situation allowed for higher density development; higher than what was being achieved under the existing MHP use. Thus, *potential existed*, whether or not zoning was identical to the comparable sales presented.

11. Finally, the parallel that Tumwater's ordinances are akin to a 99-year ground lease refers to the inability of the land owner to pursue other income generating uses beyond that of the existing manufactured home park use. In the "before" situation they could consider a number of higher density redevelopment scenarios; this ability however, has been stripped away in the "after" situation, resulting in a loss of property rights.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct. Executed at _Olympia_, this 9th day of April, 2010.

_Jeanne-Marie Wilson_