1

2

3

4

5

6

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

7

8  LAUREL PARK COMMUNITY, LLC, a
   Washington limited liability company;

9  TUMWATER ESTATES INVESTORS, a           **NO.   C09-5312 BHS**
   California limited partnership; VELKOMMEN

10 MOBILE PARK, LLC, a Washington limited
   liability company; and MANUFACTURED      **CITY OF TUMWATER'S REPLY**

11 HOUSING COMMUNITIES OF                    **BRIEF IN SUPPORT OF MOTION**
   WASHINGTON, a Washington non-profit       **FOR SUMMARY JUDGMENT**

12 corporation,
                              Plaintiffs,

13                 vs.

14 CITY OF TUMWATER, a municipal
   corporation,

15                            Defendant.

16

## I. INTRODUCTION

17      Plaintiffs' Response Brief ("Response") fails to identify any basis to deny the City of

18 Tumwater's Motion for Summary Judgment.  Plaintiffs cannot satisfy the "uphill test" to show a

19 facial taking of their property.  Plaintiffs do not show that the MHP zoning is irrational or violates

20 Due Process or Equal Protection. The Court should grant summary judgment to the City.

## II. FACTS

21

22      Plaintiffs do not controvert the report of William Partin, which was relied upon in the City's

23 Motion for Summary Judgment.  The following facts discussed by Partin are not in dispute:

24      •       The City's MHP zoning allows plaintiffs to continue use of their properties as
                mobile home parks and to realize their primary investment backed expectation.
                Partin at 19.

25

26      •       The use as a mobile home park continues to be profitable at all three parks. *Id.*, at
                9.

**CITY OF TUMWATER'S REPLY BRIEF IN**
~~SUPPORT OF MOTION FOR SUMMARY~~
**JUDGMENT – 1**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
~~2674 RW. JOHNSON BLVD., TUMWATER, WA 98512~~
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

- The highest and best use of plaintiffs' properties is as a mobile home park, both before and after adoption of the MHP Zoning. *Id.,* at 6, 7.

- The City's MHP zoning does not regulate how or to whom plaintiffs can sell their property. *Id.,* at 20-21.

- Enactment of the ordinances did not require the owners to incur any additional expense. *Id.,* at 19.

- The MHP zoning does not limit rents that owners can charge or their ability to increase profits. *Id.,* at 9.

- A use exception is available to allows reversion to prior zoning if the owners do not have either a reasonable use of their property under the MHP zoning or uses under the MHP zoning are not economically viable. *Id.,* at 20.

- Plaintiffs have not sought approval of a use exception. *Id.*

- Plaintiffs have not taken any steps to convert to another use, and the possibility of such a conversion is remote. *Id.,* at 19.

- Enactment of the ordinances did not impose any burden on plaintiffs that they did not already assume by deciding to invest in mobile home parks. *Id.,* at 20.

Plaintiffs' Response addresses matters outside the scope of the City's motion, such as the report and testimony of Steven Shapiro. The City's Motion for Summary Judgment did not rely upon Shapiro's report, but instead submitted the report of William Partin. Plaintiffs do not respond to, controvert or even mention Partin's report. Instead, they raise the report of Shapiro as a straw man so they can divert attention from their lack of any evidence of economic impact. See Declaration of Wilson. Curiously, plaintiffs then cite Shapiro's report as evidence of economic impact at one of their three parks, omitting his opinions on the remaining properties.

Shapiro's reports show that his opinion regarding diminution in value at Velkommen is due to site specific issues concerning their inability to maximize density because of their drainfields and septic systems. Shapiro Reply Dec. at ¶ 8. This is not an inherent consequence of the mere enactment of the ordinance rezoning the property, as demonstrated by the lack of impact at the other parks. *Id.*

Plaintiffs evidence of economic impact relies on inadmissible hearsay concerning unaccepted offers at one park – Velkommen. Velkommen's manager has no first hand knowledge of the buyers' intentions and cannot testify to what they said. His deposition relates self serving,

**CITY OF TUMWATER'S REPLY BRIEF IN**
~~SUPPORT OF MOTION FOR SUMMARY~~
**JUDGMENT – 2**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
~~2674 RW JOHNSON BLVD., TUMWATER, WA 98512~~
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1  inadmissible double hearsay, repeating statements allegedly made from the buyers to a broker and

2  then relayed through their lawyers. These statements should be stricken. See Andersen at 60-61,

3  62:15-24. (Andersen had no discussions with Fenton Properties concerning future plans for park or

4  reasons for buyer dropping out). The buyers' letter is clear and admissible. Andersen Dep. Exhibit

5  9. Nissing walked away because Velkommen wanted to keep control over water, and park without

6  water isn't worth much. This was confirmed by Nissing's letter and Wilson's notes of her phone

7  conversation with him.   Myers Reply Declaration, Ex. A.

8  Indeed, when the impact on all three parks is considered, even in the light most favorable

9  to plaintiffs, there is only, at most, an impact of under 3% on the plaintiffs' properties. Shapiro's

10  analysis shows the following values, before and after adoption of the ordinance:

| | Value "Before" MHP Ordinance | Value "After" MHP Ordinance | Difference |
|---|---|---|---|
| Tumwater Mobile Estates | $6,300,000 | $6,300,000 | 0 |
| Laurel Park | $4,370,000 | $4,370,000 | 0 |
| Velkommen | $2,700,000 | $2,400,000 | ($300,000) |
| Total | $13,370,000 | $13,070,000 | ($300,000) |

16  This shows that the total impact on the value of the plaintiffs' property is less than 3%.

17  According to Shapiro's analysis, the value of the Plaintiffs' properties after adoption of the MHP

18  zoning is 97.7% of original value.

19  Plaintiffs also misstate the testimony of Michael Matlock to argue that the City did not

20  properly adopt the proposed zoning ordinances, despite an 18 month long process and numerous

21  revisions designed to address their property rights concerns.   The City did not instruct staff to

22  "perform the impossible task" of taking the park owners' properties. See Response at 4. Many of

23  the argumentative statements attributed to Matlock are not supported by the deposition pages cited.

24  Plaintiffs' also misstate Matlock's testimony concerning the process for a use exception.

25  Response Brief at 4-5. He did not state that it was impossible to attain and testified directly to the

26  contrary. The actual testimony when asked about the prospects for a rezone of the MHPs, was that

it was a quasi-judicial matter that cannot be prejudged, but depends on the merits of each case.

**CITY OF TUMWATER'S REPLY BRIEF IN**
**SUPPORT OF MOTION FOR SUMMARY**
**JUDGMENT – 3**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 NW OLYMPIA BLVD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

Matlock at 27:13-17. In any event, these argumentative assertions deflect attention from the material facts, which are the impacts of the final Ordinance on the property owner: which is zero according to the unrebutted Report of William Partin, or at less than 3% as opined by Shapiro.

### III. REPLY ARGUMENT

**A. MOTION TO STRIKE**

The Court should deny plaintiffs' invitation to strike defendant's one and only motion for summary judgment because the motion complies with the court rules and plaintiffs have not articulated any prejudice. A party against whom relief is sought may move, with or without supporting affidavits, for summary judgment on all or part of the claim. Fed. R. Civ. P. 56(b). The City did so in conformity with the case schedule order imposed by the Court.

**B. THE MHP ZONING ORDINANCE IS NOT A TAKING OF THE PLAINTIFFS MOBILE HOME PARK PROPERTIES.**

As an initial matter, Plaintiffs concede that any as-applied takings claim is not ripe under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172 (1985). *See,* Plaintiffs' Response at 20-21. Thus, plaintiffs face the substantial burden of proving a facial takings claim arises from the mere enactment of the City's mobile home park zoning.

**B. THE CITY DOES NOT DEPRIVE PLAINTIFFS OF ANY FUNDAMENTAL ATTRIBUTE OF OWNERSHIP.**

Plaintiffs contend that any deprivation of one of the "bundle of sticks" constitutes a taking of a property right under *Guimont v. Clarke*, 121 Wn.2d 586, 854 P.2d 1, (1993). *Guimont* establishes four fundamental attributes of ownership, namely: (1) the right to possess; (2) the right to exclude others; (3) the right to dispose of property; and (4) the right to make some economically viable use of the property. 121 Wn.2d at 600-601; *see* Plaintiffs' Response at 7.

In contending that the MHP Zoning Ordinance is a facial taking, plaintiffs' do not identify any provision on the face of the ordinance that causes any deprivation. Indeed, their argument claiming a deprivation of one of the bundle of sticks fails to identify how, or if, the MHP Ordinance negatively affects the plaintiffs' properties. Analysis of these elements reveals that none of the *Guimont* attributes of ownership are lost as a result of the City's MHP Zoning Ordinance.

**CITY OF TUMWATER'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – 4**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*1207 NW JOHNSON BLVD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480 FAX: (360) 357-3511*

### 1.    Right to Possess.

First, nothing in the MHP zoning ordinance affects the right to possess the park property. The property remains exclusively in the owner's hands so that they may continue to use it in accordance with the zoning. This is not contested by plaintiffs. Response Brief at 10 (admitting that ordinance is not a physical invasion under *Loretto v. Teleprompter Manhattan CATV,* 458 U.S. 419 (1982).)

### 2.    Right to Exclude.

Secondly, the Ordinance does not affect the right to exclude others. The operation of the mobile home parks is within the owner's discretion. The owners may choose the tenants and lease the property subject only to the requirements of state law, Ch. 59.20 RCW (Mobile Home Landlord Tenant Act). Again, plaintiffs do not contend that the Mobile Home Park Ordinance violates this attribute of ownership.

### 3.    Right to Dispose of Property.

Plaintiffs argue that the Mobile Home Park Ordinance somehow damages the right to freely dispose of property as they see fit. Plaintiffs' Response at 17. Simply stating the argument, however, does not make it so. Plaintiffs point to nothing in the Ordinance itself that regulates the process of sale of manufactured housing because there is no such regulation.

Instead, plaintiffs try to fit within the fact pattern of *MHCW v. State*, 142 Wn.2d 347 (2000) to liken the City's zoning ordinance to the statutory right of first refusal discussed in that case which required park owners to offer their property to tenants before they could sell it to anyone else. There is nothing in the MHP Ordinance that is remotely similar to this restriction on sale of mobile home parks or which dictates to whom they may dispose of their property. The MHP zoning is exclusively a use regulation, not a regulation of the process by which park owners may dispose of their property. Plaintiffs' contention that the right to dispose of the properties has been affected must be based on something more than the conclusory argument of counsel. See, *Garneau v. City of Seattle*, 147 F.3d 802, 807-08 (9th Cir. 1998).

CITY OF TUMWATER'S REPLY BRIEF IN
SUPPORT OF MOTION FOR SUMMARY
JUDGMENT – 5

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 NW JOHNSON BLVD / TUMWATER WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1   No analysis of the affect of the MHP Ordinance could support a finding that the right to

2   dispose of their properties has been regulated on the face of Tumwater's Ordinances.  The only

3   support offered by the plaintiffs is the argument that Velkommen was unable to sell the property

4   in 2008 after Tumwater announced its re-zoning intentions.  This does not show a facial taking.

5   First, the statements made by James Andersen were not based on his personal knowledge but are

6   hearsay relayed through others.  *See* Deposition of Andersen at 60-62.  Secondly, all that plaintiffs

7   have produced to support this claim are two unaccepted offers that preceded the enactment of the

8   MHP Ordinance.

9   Third, it is undisputable that the one sale of which Velkommen claims there was a

10  "premium" for redevelopment fell through not because of the City's ordinance, but because

11  Velkommen refused to sell the water supply for the future use of the park.  This fact was expressly

12  relayed by the purchaser to plaintiffs' expert, who documented the conversation in her working files,

13  which plaintiff produced after her deposition.  *See* Myers Reply Dec., Ex. A (summary of phone

14  conversation with Nissing).  This note shows that the perspective purchaser wanted to continue use

15  as a mobile home park, under a condominium form of ownership.  He intended to sell to the existing

16  tenants, not redevelop the park by removing the existing residents.  *Id.*  There is no evidence that

17  the mere enactment of the ordinance limits the ability of Velkommen to sell it to a willing buyer.

18  **4.      Right to "Some Economically Viable Use"**

19  The fourth attribute of ownership discussed by *Guimont v. Clark,* is the right to "make

20  some economically viable use" of the property.  *Guimont,* 121 Wn.2d at 604.     The plaintiffs

21  concede that under the MHP zoning they have the right to a viable economic use of the property.

22  Operation of a mobile home park is extremely lucrative.  Plaintiffs profits continue to increase.

23  This is a viable use alone is sufficient to satisfy *Guimont.*

24  **D.      TUMWATER'S ORDINANCE IS NOT A FACIAL TAKING UNDER**
    ***PENNSYLVANIA COAL* OR *PENN CENTRAL.***

25  Plaintiffs contend that this ordinance is a facial taking under *Pennsylvania Coal v. Mahon.*

26  260 U.S. 393 (1922).  Response Brief at 10.   *Lingle v. Chevron,* 544 U.S. 528, 538-539 (2005)

confirms that the test for evaluating regulatory takings claims is the three factor test identified in

**CITY OF TUMWATER'S REPLY BRIEF IN
SUPPORT OF MOTION FOR SUMMARY
JUDGMENT – 6**

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

1   *Penn Central Transp. Co. v. New York City,* 438 U.S. 104 (1978) *("Penn Central").*   The *Penn*

2   *Central* inquiry turns in large part, albeit not exclusively, upon the magnitude of a regulation's

3   economic impact and the degree to which it interferes with legitimate property interests. *Lingle,* 544

4   U.S. at 539.

5          The first element of the *Penn Central* test then is to show the magnitude of economic

6   impact. In so doing, the plaintiffs must show the extent of the economic impact of the ordinances.

7   Such facts are necessary to support their claim that the ordinance "goes too far" under *Pennsylvania*

8   *Coal.* Here, the plaintiffs have not shown economic harm because their appraiser did not do an

9   analysis before and after the adoption of the MHP zoning. None of the owners testified as to before

10  and after values of their properties. Moreover, the plaintiffs do not address the portions of *Penn*

11  *Central* that note the Court's prior rejection of takings claims based on more drastic reductions in

12  value. *Penn Central,* 438 U.S. at 131.

13         Plaintiffs point to a 2007 letter from a realtor as evidence that Laurel Park was damaged by

14  the MHP Ordinance adopted in 2009. *See* Response at 8. This does not show any damage because

15  at all times, both before and after adoption of the ordinance, the highest and best use of Laurel Park

16  is as a mobile home park. First, the owner testified that the highest and best use when he bought

17  the property in 1991 was as a mobile home park. Eichler, at 37:10-12. Eichler agreed, after

18  receiving the letter from his realtor, that the highest and best use was to continue operation as a

19  mobile home park in 2007. Eichler, at 22: 17-21. Eichler further admitted that he has not applied

20  to redevelop the property because the highest and best use of his property continues to be as a

21  mobile home park. Eichler, at 59:1-2. Thus, because at all times the highest and best use has been

22  as a mobile home park (according to the testimony of its owner), there has been no impact to value

23  at Laurel Park. Plaintiffs' characterization of damages based on the 2007 letter is erroneous as the

24  alleged difference in value existed before the MHP ordinances were in effect and even before they

25  were under consideration. In order to show impact, Eichler would have to be able to testify that the

26  property was worth less after the adoption of the ordinances. He offers no such testimony.

**CITY OF TUMWATER'S REPLY BRIEF IN**
**SUPPORT OF MOTION FOR SUMMARY**
**JUDGMENT – 7**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*1674 NW JOHNSON BLVD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

All the plaintiffs rely upon are subjective conclusory statements that they had a unilateral expectation to reap future profits if and when the highest and best use changed. Case law is clear: there must be more than a unilateral expectation or abstract need in order to have a reasonable investment back expectation. *See Rucklehaus v. Monsanto,* 467 U.S. 986, 1005-06 (1984); see Response at 13.

Plaintiffs also cite *Moore v. City of Costa Mesa,* 86 F.2d 260, 263 (9th Cir. 1989). *See* Response at 17, fn. 13. Careful analysis of this case reveals the error of plaintiffs' argument. In *Moore v. City of Costa Mesa,* the Court held that there must be something more than mere fluctuations in value attendant with government regulation. Significantly, the Court emphasized that loss of anticipated gains or future profits is not usually sufficient to constitute a taking. *Id.,* citing *Andrus v. Allard,* 444 U.S. 51, 66, 100 S. Ct. 318, 327 (1979). All plaintiffs have done here is offer their subjective beliefs that they could at some undetermined point in time potentially convert the property and reap a future gain or profit from so doing. None of them have taken any steps to realize this. As such, their subjective belief in a future profit or gain from selling the property does not support a takings claim.

Plaintiffs further contend that the testimony of Stephen Shapiro supports a takings claim. Response Brief at 12. As an initial matter, plaintiffs do not address the actual reports presented by the City in support of its Motion for Summary Judgment. They do not address or even mention the declaration and report of William Partin, who testified that they continue to realize their primary expectation for use as a mobile home park. Indeed, plaintiffs' expert formed no opinions concerning the Partin report. *See* Wilson Deposition at 80:25-81:4. In raising the appraisal reports of Stephen Shapiro, plaintiffs attempt to erect a strawman for their own self-serving purposes. They omit the totality of Shapiro's analysis which found that there was no impact to value at either Laurel Park or Tumwater Mobile Estates. *See* Shapiro Declaration at Ex. A, B. The sum of Shapiro's analysis is that there is only a slight diminishment in value at the plaintiffs' three parks.[1]

---

[1] Wilson criticizes the information used in Shapiro's study, but did not do the necessary analysis herself. Both Shapiro and Partin did a market analysis to see if there was a demand for another use. Wilson did not. Moreover, Wilson's opinion agrees with Shapiro and Partin that there is not a current market for alternative uses, (Wilson,

**CITY OF TUMWATER'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – 8**

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.
ATTORNEYS AT LAW
2674 RW JOHNSON BLVD, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

1    However, because there was no impact at Laurel Park or Tumwater Mobile Estates, it cannot be said

2    that the mere enactment of the ordinances necessarily causes an economic impact. Thus, there can

3    be no facial taking.

4          As discussed earlier, Shapiro's analysis shows that even after the enactment of these

5    ordinances the mobile home parks retained 97.7 per cent of their original value after the MHP

6    zoning was adopted. *Penn Central* makes clear that diminution in value is to be expected when

7    government regulates the use of property, stating:

8          "Government hardly could go on if to some extent values incident to property could
           not be diminished without paying for every such change in the general law,"
9          *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 413, 43 S.Ct. 158, 159, 67 L.Ed.
           322 (1922), and this Court has accordingly recognized, in a wide variety of contexts,
10         that government may execute laws or programs that adversely affect recognized
           economic values.

11   *Penn Central,* 438 U.S. at 124.

12         *Penn Central* further makes clear that diminution alone, however, does not constitute a

13   taking, even where it is substantially greater than the impact claimed by plaintiffs here. *See Penn*

14   *Central,* 438 U.S. at 131; *Hadacheck v. Sebastian,* 239 U.S. 365 (1915) (diminution of 87.5 % of

15   value); *Garneau v. City of Seattle,* 147 F.3d at 819; see also *William C. Haas & Co. v. City &*

16   *County of San Francisco,* 605 F.2d 1117, 1120 (9th Cir.1979) (value reduced from $2,000,000 to

17   $100,000). The minor impact alleged at one of the three parks does not support a "facial" taking.

18   **E.    THE CITY'S ORDINANCES DO NOT INTERFERE WITH REASONABLE
            INVESTMENT BACKED EXPECTATIONS.**
19

20         Plaintiffs do not have a reasonable investment backed expectation in a speculative future use

21   of property to which they some day hope to convert. Plaintiffs do not discuss the provisions of *Penn*

22   *Central* rejecting similar contentions because the ordinance allowed continuation of the existing use.

23   438 U.S. at 136. They do not discuss their primary expectation, which they demonstrated by their

24   decal des using their properties as an ongoing profitable mobile home parks. It is clear and

25   undisputed that when the plaintiffs bought the properties, they actually invested in establishing a

26

---

59:14-60:2) She acknowledges that such a market will be flat in 2010 and afterwards is "anybody's guess". *Id.,*
60:7-10. Thus, her criticism about the lack of consideration of Dupree & Scott reports is immaterial.

**CITY OF TUMWATER'S REPLY BRIEF IN**
**SUPPORT OF MOTION FOR SUMMARY**
**JUDGMENT -- 9**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*NGLNW-JOHNSON BLVD, TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1   mobile home park use.  They continued to operate the mobile home parks in question for decades

2   and may continue to do so under the City's ordinance.  It is further undisputed that none of the

3   owners have made any investment to redevelop the property or convert it to another use.  They

4   uniformly disclaimed any specific redevelopment plans, and all of the owners, including their legal

5   counsel, denied any intent to convert the property when the City was considering the manufactured

6   housing park zoning.  After adoption of zoning for their existing use, they reverse course to claim

7   that it was their reasonable expectation all along to convert the property to another use.[2]

8         Plaintiffs contend that the Vested Rights Doctrine is irrelevant.  However, this doctrine

9   directly defines the conditions under state law where the plaintiff has a reasonable expectation that

10  precludes change of a zoning.  The purpose of the 'vested rights doctrine' is to determine or 'fix' the

11  rules that will govern land development with reasonable certainty."  *Rhod-A-Zalea & 35th, Inc. v.*

12  *Snohomish County*, 136 Wn.2d 1, 16, 959 P.2d 1024 (1998).  This is directly related to whether the

13  plaintiffs' subjective thoughts about future redevelopment are sufficiently definite enough to

14  constitute reasonable investment backed expectations.

15        The fact that Washington follows the minority rule that allows vesting at an earlier stage in

16  the development process supports the conclusion that their speculative "whims" regarding potential

17  conversion to another use are not protected under the Takings Clause.  In Washington, it is even

18  easier for an owner to vest their rights than it is in most states which require an actual building

19  permit be issued to protect against a zoning change.  Here, it is undisputed that no applications were

20  filed with any government agency to redevelop and there was no other redevelopment process

21  initiated by any of the owners.  This is all the more reason to reject plaintiffs' subjective, unrealized

22  claims to another undetermined potential future use when all they would have to do is file an

23  application to protect against a zoning change.

24

25

---

26  [2] In support of their analysis, Plaintiffs continue to cite *Guggenheim v. City of Goleta,* 582 F.3d 996 (9th Cir. 2009) as "instructive" precedent on the takings issues. Response Brief at 13, fn. 11.  Plaintiffs were informed that the Ninth Circuit has granted en banc review and specifically ordered that its prior opinion in *Guggenheim* cannot be cited as precedent to any court in the circuit. See Myers Dec., Exhibit E.  Plaintiffs willfully violate the Ninth Circuit Order in footnote 11.  Sanctions for their violation of this order are appropriate.

**CITY OF TUMWATER'S REPLY BRIEF IN**
~~**SUPPORT OF MOTION FOR SUMMARY**~~
**JUDGMENT – 10**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON BLVD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1    Moreover, the practical effect of the plaintiffs' position would be to make *any* rezone subject

2  to a takings claim because an owner could claim that he intended some other potential use at some

3  undefined point in the future.  This would be so even where the actual actions of the owner were to

4  establish an economically viable use and continue that use for decades.  The takings clause simply

5  does not countenance such a result.

6  **F.    PLAINTIFFS SUBSTANTIVE DUE PROCESS RIGHTS ARE NOT VIOLATED.**

7    Plaintiffs do not contest that the appropriate test applicable for substantive due process

8  violations is the minimal scrutiny, rational relationship test.  If Tumwater's ordinance is rationally

9  related to a legitimate public purpose, it does not violate substantive due process.  Plaintiffs concede

10  that the goals of Tumwater's ordinances are aimed at achieving legitimate public purposes.

11  Response Brief at 21.  Additionally, it is clearly established that cities may enact land-use regulations

12  to enhance the quality of life by preserving the character and desirable features of a city.  See, *Penn*

13  *Central,* 438 U.S. at 129.  Here, the City's ordinances further the legitimate purpose of providing a

14  mixture of desirable housing types to all economic segments of the Tumwater community, including

15  continued availability of manufactured home parks.  The reason to preserve the availability of MHPs

16  is because they appeal to the lower income segment of the community which unquestionably has a

17  need for more affordable housing.  It is simply astonishing that the Manufactured Housing

18  Communities of Washington seek to preserve the right to *destroy* this form of ownership, leaving

19  it to the City to preserve continued availability of manufactured home parks.

20    Plaintiffs focus solely on the means selected by Tumwater to further the ends of this

21  ordinance.  Plaintiffs disregard the testimony of Mike Matlock concerning the contents of the

22  Comprehensive Plan and the City's zoning ordinances which provide a mix of housing types.

23  Plaintiffs disregard the fact that there are other affordable housing types, such as single family

24  housing where smaller lot sizes are provided and in multifamily housing to serve the lower economic

25  segment of the community.  Thus the burdens of affordable housing are not exclusively borne by

26  mobile home parks.  In choosing to operate mobile home parks, the park owners have undertaken

**CITY OF TUMWATER'S REPLY BRIEF IN
SUPPORT OF MOTION FOR SUMMARY
JUDGMENT – 11**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*1871 PW JOHNSON BLVD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1  to provide a form of affordable housing. Nevertheless, nothing in Tumwater's ordinance requires
2  them to provide low rents.

3      There is nothing unduly oppressive about the means selected by Tumwater. It is not unduly
4  oppressive to adopt zoning that allows continuation of the existing use where the owners control the
5  operations and continue to reap the substantial profits from their mobile home parks.

6  ## G.   THE MHP ORDINANCES DO NOT VIOLATE EQUAL PROTECTION OR SPOT ZONING REQUIREMENTS.

7      Plaintiffs' Response fails to address any of the reasons found by the City Council in adopting
8  its ordinance for the exclusion of four properties that were not included in the MHP district.
9  Plaintiffs have presented no basis to refute the legislative fact-finding regarding these four properties.
10  The City's Ordinance must only meet the minimum scrutiny, rational basis test which has clearly
11  been met on its face. As such, there is no violation of equal protection or spot zoning.

12  ## IV. CONCLUSION

13      Plaintiffs have failed to demonstrate that they have any viable claim under the undisputed
14  facts. The City's exercise of its zoning authority is Constitutional and does not violate the Takings
15  Clause, substantive due process, equal protection and is not "spot zoning." The City's Motion for
16  Summary Judgment should be granted.

17      DATED this 9th day of April, 2010.

18                          LAW, LYMAN, DANIEL,
19                          KAMERRER & BOGDANOVICH, P.S.

20                            /s/   Jeffrey S. Myers,
21                          Jeffrey S. Myers, WSBA #16390

22                          LAW, LYMAN, DANIEL, KAMERRER
                            & BOGDANOVICH, P.S.
23                          P.O. Box 11880
                            Olympia, WA 98508-1880
24                          (360) 754-3480
                            Fax: (360) 357-3511
25                          E-mail: jmyers@lldkb.com

26

CITY OF TUMWATER'S REPLY BRIEF IN
SUPPORT OF MOTION FOR SUMMARY
JUDGMENT – 12

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.
ATTORNEYS AT LAW
2674 RW JOHNSON DRIVE, TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511