1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LAUREL PARK COMMUNITY, LLC, a
Washington limited liability company;
TUMWATER ESTATES INVESTORS, a
California limited partnership;
VELKOMMEN MOBILE PARK, LLC, a
Washington limited liability company; and
MANUFACTURED HOUSING
COMMUNITIES OF WASHINGTON, a
Washington non-profit corporation,

               Plaintiffs,

   vs.

CITY OF TUMWATER, a municipal
corporation,

               Defendant.

NO.   C09-5312 BHS

REPLY DECLARATION OF
JEFFREY S. MYERS

PURSUANT TO 28 U.S.C. § 1746, Jeffrey S. Myers, hereby declares as follows:

1.     I am the attorney for the defendant City of Tumwater in the above entitled

matter. I am over the age of 18, competent to be a witness and make this declaration on

personal knowledge.

2.     Attached to this declaration as **Exhibit A** is a true and correct copy of

excerpts from the deposition of James W. Andersen, taken January 29, 2010.  These

portions relate to Mr. Anderson's understanding of an offer from Fenton Properties that

was handled by their Realtor, Bill Jackson.

REPLY DECLARATION OF
JEFFREY S. MYERS – 1

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

1    3.    Attached to this declaration as **Exhibit B** is a true and correct copy of

2  excerpts from the deposition of Robert Eichler, taken February 15, 2010.

3    4.    Attached as **Exhibit C**  is a true and correct copy of excerpts from the

4  deposition of Jeanne-Marie Wilson, taken February 15, 2010.

5    5.    Attached as **Exhibit D** is a true and correct copy of a memorandum entitled

6  "Summary of Phone Conversation W/ Jim Nissing" dated February 9, 2010.  This

7  memorandum was produced to Defendants pursuant to subpoena duces tecum from the

8  files of Jeanne-Marie Wilson.  It was transmitted from Walter Olsen to me on March 9,

9  2010 and was received by my office on March 11, 2010.

10    I declare under penalty of perjury under the laws of the state of Washington and the

11  United States of America that the foregoing is true and correct.

12    DATED this 17th  day of March, 2010, at Tumwater, Washington.

13                          LAW, LYMAN, DANIEL,
                          KAMERRER & BOGDANOVICH, P.S.
14

15

16                          Jeffrey S. Myers, WSBA #16390

17                          LAW, LYMAN, DANIEL, KAMERRER
                          & BOGDANOVICH, P.S.
                          P.O. Box 11880
18                          Olympia, WA 98508-1880
                          (360) 754-3480
19                          Fax: (360) 357-3511
                          E-mail: jmyers@lldkb.com
20

21

22

23

24

25

26

**REPLY DECLARATION OF**
**JEFFREY S. MYERS – 2**

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

# MYERS

# EXHIBIT A

Page 1

1                 UNITED STATES DISTRICT COURT

2        THE WESTERN DISTRICT OF WASHINGTON AT TACOMA

3    _____

4    LAUREL PARK COMMUNITY, LLC, a      )
     Washington limited liability      )
5    company; TUMWATER ESTATES         )
     INVESTORS,  a California limited   )
6    partnership; VELKOMMEN MOBILE     )
     PARK, LLC, a Washington limited   )
7    liability company; and            )
     MANUFACTURED HOUSING COMMUNITIES  )
8    OF WASHINGTON, a Washington       )
     non-profit corporation,           )
9                                      )
            Petitioner(s),             )
10                                     )
            vs.                        )    No.  C09-5312 BHS
11                                     )
     CITY OF TUMWATER, a municipal     )
12   corporation,                      )
                                       )
13          Defendant(s).              )

14   _____

15        DEPOSITION UPON ORAL EXAMINATION OF

16              JAMES  W.  ANDERSEN

17             January 29, 2010
             Tumwater, Washington

18   _____

19                Taken Before:
          SUE E. GARCIA, CCR # 2781, RPR
20        Registered Professional Reporter
                       of
21        Capitol Pacific Reporting, Inc.
      2401 Bristol Court SW, #A-104, Olympia, WA 98502
22        Tel (360) 352-2054    Fax (360) 705-6539
              Toll Free (800) 407-0148
23   Tacoma      Seattle      Aberdeen      Chehalis      Bremerton
     (253)       (206)        (360)         (360)         (360)
24   564-8494    622-9919     532-7445      330-0262      373-9032
          e-mail: admin@capitolpacificreporting.com
25             www.capitolpacificreporting.com

**MYERS DEC.**
**A 2**

James W. Andersen
Laurel Park Community, LLC, et al. v. City of Tumwater

Page 60

1    since our computer's basically brand-new -- and I'm not

2    real computer savvy, but I'll go back and see if

3    there's any e-mails.  But I can basically guarantee

4    that I'm not going to find anything.

5    Q    Okay.

6    A    But if there is --

7    Q    Okay.  But my question is:

8         When you got this, to respond to it, you did not

9    check your e-mail to see --

10   A    I never --

11   Q    -- is that correct?

12   A    When I saw that, I didn't think that I had any e-mails

13   that were pertaining to the sale, that really pertained

14   to it.  All -- the majority of our conversations -- I

15   don't know even know if prior to six months ago for

16   sure that he had anything via e-mail, that he was

17   sending me anything until six months ago.  Everything

18   was basically verbal.  He would call me at work.  He'd

19   call me at home.

20   Q    Okay.  How did you learn that this purchase from Fenton

21   Properties was not going to go through?

22   A    Jackson.

23   Q    And how did Jackson communicate that to you?

24   A    That they weren't interested.

25   Q    Did he call on the phone, or did he send you an e-mail,

MYERS DEC.
A 3

James W. Andersen
Laurel Park Community, LLC, et al. v. City of Tumwater

Page 61

1          or . . . ?

2     A    I believe it was -- actually came through the attorney.

3          The original one came through the attorney.

4     Q    Did you ask that attorney to produce documents

5          regarding this offer to purchase your mobile home park

6          in response to receiving Request for Production No. 1?

7     A    No.

8     Q    Why not?

9     A    Didn't think I needed to because our family had the

10         majority of the documents that you requested.

11    Q    Did you provide any other documents, other than what is

12         Exhibit A to your declaration in Exhibit 7, in response

13         to our Request for Production No. 1?

14    A    Say that again.

15    Q    The only document I've seen concerning the Fenton

16         Properties' sale --

17    A    Right.

18    Q    -- is this attachment to your declaration.

19    A    That's all Fenton Properties, I believe, has given us.

20    Q    My question was:

21              In response to Request for Production No. 1, did

22         you produce any other documents about that transaction,

23         or is this the sum total of all the documents that

24         Velkommen, LLC, has?

25    A    Regarding the Fenton property, I believe that is all we

January 29, 2010
Capitol Pacific Reporting 1-800-407-0148

**MYERS DEC.**
**A 4**

James W. Andersen
Laurel Park Community, LLC, et al. v. City of Tumwater

Page 62

1        have, all Velkommen has.

2    Q   Is there some other person who might have documents?

3    A   I am not aware.  If there is anything, maybe NW Brokers

4        might have something.

5    Q   Did you ask NW Brokers to provides any documents to you

6        in response to our request for production?

7    A   No.

8    Q   Okay.  With respect to the Fenton Properties offer, was

9        there any discussion about their future plans for the

10       property with you or -- and the brokers or anybody

11       concerning --

12   A   I didn't have the discussion.

13   Q   Are you aware if anybody else did?

14   A   I am not aware.

15   Q   So it's possible that Fenton Properties intended to use

16       the property as a mobile home park in perpetuity?

17   A   I would really doubt it.

18   Q   Did they tell you that they intended to convert the

19       property to a different use?

20   A   They did not say that.  I didn't have conversations

21       with them.

22   Q   And that information was never relayed to you through

23       the broker or the attorney or anybody else?

24   A   No.

25   Q   The second -- let's go ahead and have this one marked.

# MYERS


# EXHIBIT B

Page 1

```
 1
                  UNITED STATES DISTRICT COURT
 2              WESTERN DISTRICT OF WASHINGTON
                          AT TACOMA
 3
 4
     LAUREL PARK COMMUNITY, LLC, a      )
 5   Washington limited liability       )
     company; TUMWATER ESTATES          )
 6   INVESTORS, a California limited     )
     partnership; VELKOMMEN MOBILE       )      No. C09-5312 BHS
 7   PARK, LLC, a Washington limited     )
     liability company; and             )
 8   MANUFACTURED HOUSING COMMUNITIES    )
     OF WASHINGTON, a Washington         )
 9   non-profit corporation,            )
                                        )
10                      Plaintiffs,     )
                                        )
11           vs.                        )
                                        )
12   CITY OF TUMWATER, a municipal       )
     corporation,                       )
13                                      )
                        Defendant.      )
14
15          DEPOSITION UPON ORAL EXAMINATION OF
16                  ROBERT EICHLER
17                 February 15, 2010
                   Tumwater, Washington
18
19                    Taken Before:
            Connie Church, CCR #2555, RPR, CRR
20              Certified Court Reporter
                          of
21          CAPITOL PACIFIC REPORTING, INC.
             2401 Bristol Court SW, Suite A-104
22                 Olympia, WA  98502
        Tel (360) 352-2054 or (800) 407-0148   Fax (360) 705-6539
23
24          www.capitolpacificreporting.com
            admin@capitolpacificreporting.com
25
```

MYERS DEC.

B 7

Laurel Park v. City of Tumwater
Deposition of Robert Eichler

Page 22

1    Q    (BY MR. MYERS)   Mr. Eichler, I'm going to show you

2         another exhibit, which has been marked as Exhibit 4.   And

3         this is a letter from Century Pacific dated March 9,

4         2007.   Does this letter contain the market analysis we

5         were just discussing?

6    A    Yes.

7    Q    Okay.   And on the first page, which has a number in the

8         corner of 222, there is a statement there which said,

9         "These numbers suggest that it may make more sense to

10        continue operating this property as a mobile home park

11        and/or taking it to market on the basis of a mobile home

12        park and not a development opportunity."   Do you see that

13        statement?

14   A    I remember it.   Yes.

15   Q    Okay.   Did you agree with that statement?

16   A    Yes.

17   Q    So based on the analysis that Century Pacific did in

18        early 2007, you agreed that, at that point in time, the

19        highest and best use of the property was as a mobile home

20        park?

21   A    Yes.

22   Q    Has there been any change in conditions since March of

23        2007 that would create demand for redevelopment of the

24        property?

25   A    I believe if I have my dates right, that there was a

MYERS DEC.
B 8

Laurel Park v. City of Tumwater
Deposition of Robert Eichler

Page 37

1    Q   Well, you've drafted this and signed it on January 25th,

2        2010.  And this talks about your expectations in 2008

3        when the annexation was pending.  At that point in time,

4        did you have a plan to redevelop the property within any

5        certain time period?

6    A   My only plan to redevelop the property was when the time

7        came that the highest and best use - demand for the

8        property would be for the higher and better use.  And I

9        really didn't know if it was next year, two years from

10       now, five years from now.  I bought the property in 1991

11       knowing that the highest and best use, value at that time

12       was a mobile home park.  And I looked to the future and

13       hoped for the future that in my lifetime, the demand for

14       that property would be for me to develop it into the

15       zoning that was on the property.  I've never had an exact

16       time and date, because I've had to wait for the

17       opportunity to present itself.

18   Q   Okay.  The last sentence of paragraph 5, you discussed

19       the city had begun a process to rezone the park in 2007.

20       When did you first become aware that Tumwater was in the

21       process to rezone mobile home parks?

22   A   I don't know that I can pin down any date, but certainly

23       after the annexation.  And I think the annexation was in

24       December of 2007.  And I wasn't aware of that - anything

25       they were going to do to change the ordinance until

MYERS DEC.
B 9

Laurel Park v. City of Tumwater
Deposition of Robert Eichler

Page 59

1    A    Because the highest and best use of my property right now

2         is a mobile home park.

3    Q    Is operation of a mobile home park currently an

4         economically viable use for you?

5    A    In today's market.  Not tomorrow's market.  But today's

6         market when there is no demand for building because of

7         the recession, the operation of Laurel Park Estates is a

8         viable use for me.

9    Q    Do you make a . . .  Do you distinguish between an

10        economically viable use and what would be the highest and

11        best use if you were allowed other types of uses for the

12        property?

13   A    I'm not sure I understand the question.

14   Q    I'm not sure I do either.  Let me try to rephrase.  Is

15        there a difference, in your mind, between what would be

16        the highest and best use of the property and economically

17        viable use of the property?

18   A    I'll still try to understand that.  Economically viable

19        use of the property should really be the highest and best

20        use of the property.

21   Q    Let me ask you some questions about the effect of the

22        zoning ordinance on your operations at Laurel Park.  Has

23        the adoption of the mobile home park zoning forced you to

24        incur any additional costs other than the costs of the

25        lawsuits?

MYERS DEC.
B 10

# MYERS

# EXHIBIT C

Page 1

1
               UNITED STATES DISTRICT COURT
2
          WESTERN DISTRICT OF WASHINGTON
                    AT TACOMA
3

4

LAUREL PARK COMMUNITY, LLC, a     )
5
Washington limited liability    )
company; TUMWATER ESTATES       )
6
INVESTORS, a California limited )
partnership; VELKOMMEN MOBILE   )     No. C09-5312 BHS
7
PARK, LLC, a Washington limited )
liability company; and         )
8
MANUFACTURED HOUSING COMMUNITIES )
OF WASHINGTON, a Washington     )
9
non-profit corporation,        )
                              )
10
                 Plaintiffs,    )
                              )
11
        vs.                   )
                              )
12
CITY OF TUMWATER, a municipal   )
corporation,               )
13
                  Defendant.   )
14
15
      DEPOSITION UPON ORAL EXAMINATION OF
16
              JEANNE-MARIE WILSON
17
              February 15, 2010
             Tumwater, Washington
18
19
               Taken Before:
     Connie Church, CCR #2555, RPR, CRR
20
          Certified Court Reporter
                   of
21
       CAPITOL PACIFIC REPORTING, INC.
      2401 Bristol Court SW, Suite A-104
22
           Olympia, WA  98502
Tel (360) 352-2054 or (800) 407-0148   Fax (360) 705-6539
23
24
        www.capitolpacificreporting.com
     admin@capitolpacificreporting.com
25

MYERS DEC.
C 12

Laurel Park v. City of Tumwater
Deposition of Jeanne-Marie Wilson

Page 59

1    Q    That refers to an opinion as to after valuation?

2    A    You asked me . . .   This report was limited in scope not

3         to include the after.   So I'm confused.

4    Q    I thought you might be getting a little confused.

5    A    Okay.   Sorry.

6    Q    So let me back up and see if we can clear this up.   Your

7         opinions in paragraph 17 concerning valuing the real

8         property after the zoning ordinance --

9    A    Right.

10   Q    -- those are not discussed anywhere --

11   A    Correct.

12   Q    That's all I was asking.

13   A    Okay.   Sorry.   Yeah.

14   Q    Okay.   In paragraph 18, you mention the current downturn

15        in the business cycle.   How does the current downturn in

16        the business cycle affected the value of the three mobile

17        home parks at issue here?

18   A    Well, when you consider the value of the underlying land

19        under its highest and best use, because subdivisions

20        currently are oversupplied, it wouldn't likely be a

21        conclusion of highest and best use because of the

22        recession and . . .

23   Q    So it would be fair to say that the recession has eroded

24        the market to convert the property to either a

25        single-family subdivision or a multifamily property.   Is

MYERS DEC.
C 13

Laurel Park v. City of Tumwater
Deposition of Jeanne-Marie Wilson

Page 60

1     that a fair statement?

2   A   In the immediate time frame.  Yes.

3   Q   Okay.  Have you done any analysis to determine when the

4       market might take an upswing in the future?

5   A   It's the basis of conversation.  But I haven't done any

6       specific analysis.

7   Q   Do you have any opinions as to when the market will take

8       an upswing in the future?

9   A   I think 2010 is going to be flat.  And after that, I

10      think it's anybody's guess.

11  Q   Do you have any opinions as to when the park owners might

12      be able to realize their expected return on the

13      investment by changing to a different use if the zoning

14      ordinance had not been adopted?

15  A   Have I done any analysis to determine when they could do

16      that?

17  Q   Yes.

18  A   Okay.  No.

19  Q   Your opinions in paragraph 20 concerning the impact of

20      value for Velkommen, what impact do you have - do you

21      attribute to the offers of 1.75 and 1.6 million that were

22      made to Velkommen?

23  A   I believe they were associated with potential

24      redevelopment or alternative uses of the property.

25  Q   And how did you determine that those were based on

MYERS DEC,
C 14

Laurel Park v. City of Tumwater
Deposition of Jeanne-Marie Wilson

Page 80

1   A   It's just the review from - his review that I'm saying

2       that.

3   Q   Have you done an analysis which you believe is consistent

4       with USPAP in order to offer the opinion that

5       Mr. Shapiro's analysis is inflated?

6   A   Yes.

7   Q   And what is that analysis?

8   A   I read his report and followed USPAP under the review.

9   Q   Under the review criteria?

10  A   Right.

11  Q   Would you tell me what those criteria are?

12  A   If I had my USPAP.

13  Q   Your understanding of them.

14  A   It's very similar to the reporting - or the preparation

15      of a regular report.  You state the property, the

16      ownership, the intended use and user.  You read the

17      report and give your opinions as to whether or not they

18      followed proper appraisal methods.  And I did not prepare

19      or state whether or not his - I agreed with his value

20      conclusion, nor did I prepare a value conclusion of my

21      own, which is allowed under USPAP.

22              MR. MYERS:  Let's take a two-minute break,

23      because I think we're just about done.

24                      (Recess was taken.)

25  Q   (BY MR. MYERS)  Ms. Wilson, have you done any analysis of

MYERS DEC.
C 15

Laurel Park v. City of Tumwater
Deposition of Jeanne-Marie Wilson

Page 81

1    the report prepared by William Partin in this case?

2    A    I read through that document there (indicating).

3    Q    Have you been asked to form any opinions concerning that?

4    A    No.

5              MR. MYERS:   Okay.   That's all.

6                        (Concluded at 11:37 a.m.)

7                        (Signature reserved.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MYERS DEC,
C 16

# MYERS

# EXHIBIT D

SUMMARY OF PHONE CONVERSATION W/ JIM NISSING



- JIM HAD VELKOMMENT UNDER CONTRACT FOR $1.6 MILLLION.  DEAL FELL THROUGH B/C SELLER ONLY WANTED TO GIVE WATER RIGHTS FOR 10 YEARS & HE DIDN'T WANT TO EXTEND WATER – TOO COSTLY AT THE TIME.
- HE PLANNED TO POSSIBLY CONDO THE PROPERTY AND SELL INDIVIDUAL LOTS TO THE EXISTING TENANTS.  AT THE TIME FINANCING WAS AVAILABLE & TENANT COULD ROLL THE LAND PURCHASE IN W/ THEIR EXISTING HOME MORTGAGE (IF ANY).
- HE WAS WILLING TO PAY A PREMIUM ABOVE THAT OF THE EXISTING MHP INCOME STREAM FOR THE POTENTIAL TO CONDO.  RELATIVELY INEXPENSIVE LEGAL / SURVEY COST VS. CLOSE PARK AND REDEVELOP AS SUBDIVISION LAND W/ LOTS, ETC.  HE IS TAKING ADVANTAGE OF EXISTING INFRASTRUCTURE / USE AND CAPITALIZE ON UNDERLYING LAND VALUE OF MFM ZONED LAND.
- HE OWNS 2 OTHER PARKS IN THURSTON COUNTY, 1 IN LEWIS & 6 IN ARIZONA.
- BUYING OLDER PARKS W/ FUTURE REDEVELOPMENT (UPSIDE) POTENTIAL IS HIS ENTIRE BUSINESS PLAN –CAPITALIZE ON UNDERLYING LAND VALUE AS EXIT STRATEGY.
- COACH POST MHP NEAR CAPITOL HOSPITAL IS ANOTHER EXAMPLE – MAY BE REDEVELOPED AS ELDER CARE FACILITY.  SURROUNDED BY NEW SUBDIVISION ON 1 SIDE & MEDICAL CLINIC ON THE OTHER.
- BOUGHT REDWOOD NEXT TO GREAT WOLF LODGE 6-7 YEARS AGO.  RUMORS AT THAT TIME OF LODGE COMING IN TO BUILD. HE IS NOW IN NEGOTIATION W/ TRIBE TO PURCHASE PARK (AC ZONED LAND) FOR 2-3 TIMES WHAT HE PAID FOR IT.

2/9/10 jmw

MYERS DEC,
D 18