UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LAUREL PARK COMMUNITY, LLC, a Washington limited liability company, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>CITY OF TUMWATER, a municipal corporation,<br><br>　　　　　Defendant. | CASE NO. C09-5312BHS<br><br>ORDER STAYING THIS MATTER PENDING THE OUTCOME OF THE NINTH CIRCUIT'S *EN BANC* REVIEW OF *GUGGENHEIM V. CITY OF GOLETA* |

This matter comes before the Court on Plaintiffs' (collectively the "Park Owners") motion for relief/stay from deadline (Dkt. 38). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL BACKGROUND

The parties filed cross motions for summary judgment in this matter. Dkts. 15, 16. The Court renoted these motions for April 23, 2010, to be considered along with the instant motion. Dkt. 44 (notice of renoting). Trial in this matter was set to commence on June 15, 2010. Dkt. 8.

On April 9, 2010, the Park Owners filed the instant motion for relief/stay from deadline. Dkt. 38. On April 21, 2010, Defendant City of Tumwater (the "City")

ORDER - 1

responded to the instant motion. Dkt. 47. On April 23, 2010, the Park Owners replied. Dkt. 48.

## II. FACTUAL BACKGROUND

This matter involves a challenge to two Tumwater, Washington city ordinances, Ordinance Nos. O2008-027 and O2008-009. Dkt. 1 (Complaint) ¶ 20. Ordinance No. O2008-027 "established a new land use designation entitled 'Manufactured Home Park Zone District' only applicable to six of the existing manufactured housing communities" in Tumwater. The Park Owners refer to these amendments collectively as the "comprehensive plan amendments." *Id.* ¶ 21. Ordinance No. O2008-009 serves to implement the "comprehensive plan amendments." *Id.* ¶ 23. These ordinances became effective March 23, 2009. *Id.* ¶ 26.

Individually, the Plaintiffs in this matter are made up of entities that own property currently zoned for manufactured housing (i.e., mobile homes) and a nonprofit corporation that represents owners of mobile/manufactured housing parks in Tumwater. *Id.* ¶¶ 1-4. Collectively, the Park Owners argue that these amendments "eviscerate the status of the six manufactured housing communities by eliminating land for future new development in . . . medium to high density residential areas and converting those six properties into . . . a single use zone." *Id.* ¶ 22. In short, the Park Owners contend that these ordinances have the effect of forcing "a park owner to keep the park for mobile home tenants in perpetuity."

Relevant to the instant motion, the Park Owners allege that the City's ordinances constitute a regulatory taking under the Fifth Amendment of the United States Constitution. *Id.* ¶ 38; U.S. Const. Amend. V. In its opening summary judgment brief, the Park Owners support this cause of action by relying on *Guggenheim v. City of Goleta*, 582 F.3d 996 (9th Cir. 2009). *See, e.g.*, Dkt. 15 at 10. However, on March 12, 2010, the Ninth Circuit granted an *en banc* re-hearing of *Guggenheim* and ordered that its prior opinion in the matter could not be relied upon as precedent in any court in the circuit. *See*

Declaration of Jeffrey S. Myers, (Dkt. 23), Ex. E. The *en banc* re-hearing of *Guggenheim* is set for June 21, 2010. Dkt. 47 at 2.

### III. DISCUSSION

**A.    Park Owner's Motion for Stay/Relief From Deadline**

The Park Owners move the Court to stay this matter until *Guggenheim* is resolved. Dkt. 48. The Park Owners assert that the interests of judicial economy dictate that this case be stayed, as the resolution of *Guggenheim* will significantly affect the outcome in the instant matter. *Id*. Specifically, the Park Owners contend that *Guggenheim's* final ruling may be dispositive with respect to its takings claim. *E.g.,* Dkt. 48 at 4.

In opposition, the City contends that *Guggenheim* is factually distinct and will, therefore, be unlikely to control the takings claim asserted by the Park Owners. *See* Dkt. 47 at 1-2. The City further argues that, because "*Guggenheim* will not control, [the Park Owners] are incorrect in concluding that delay will promote judicial economy." Taking the City's position to its logical conclusion, if the Court concludes that *Guggenheim* has the potential to control the outcome of this litigation, then judicial economy would dictate the need to stay this matter pending *Guggenheim's en banc* resolution. This is the question to be answered herein.

**B.    Facial Takings Challenge**

The Park Owners raise a facial takings challenge to the ordinances at issue. Dkt. 15 at 10. They argue that "they have been singled out to bear what is more appropriately a societal burden." *Id*. (relying on *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922); *Penn. Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123 (1978) (establishing the *Penn Central* factors)). The proper inquiry in a facial challenge is whether the mere enactment of the regulation constitutes a taking. *See Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 495 (1987). As such, a court must look to what the statute's enactment does to "determine whether the government regulation goes too far." *Garneau v. City of Seattle*, 147 F.3d 802, 807.

**C.   *Guggenheim***

*Guggenheim* involved a facial takings challenge by mobile home park owners to Santa Barbara County's mobile home rent control ordinance, which the City of Goleta adopted in whole. 582 F.3d at 996, 1000.[1] These ordinances were adopted to prevent mobile home park owners from extracting exorbitant rents during local housing shortages. *Id.* Guggenheim owned a mobile home park subject to the ordinance. *Id.*

The *Guggenheim* court considered Guggenheim's facial challenge under the *Penn Central* analytical framework. *Id.* "Economic impact" is one of the factors a court must consider pursuant to *Penn Central*. 438 U.S. 104. When considering this factor in light of the facts presented in *Guggenheim*, the Ninth Circuit determined that the ordinances caused a wealth transfer from Guggenheim to his tenants worth several times the value of their mobile home's original value. *Id.* at 1021. In short, the rent control ordinance operated to increase the value of owning a home on a rented mobile-home pad located in a rent-controlled manufactured/mobile home community. *Id.* The Ninth Circuit held that the mere enactment of this statute caused the wealth transfer from the park owner to the tenant and constituted a regulatory taking for which just compensation is owed. *Id*; *see also* U.S. Const. Amend. V. (not prohibiting a regulatory taking but conditioning the same on the payment of just compensation).

**D.   Could *Guggenheim* Control The Instant Matter?**

The instant motion presents the limited question of whether the outcome of the *en banc* review of *Guggenheim* might control significant issues in this case. *See, e.g.,* Dkts. 47, 48. The City argues that *Guggenheim* is factually distinct. Dkt. 47 at 3. The Park Owners contend the factual distinctions made by the City too narrowly confine the potential import of *Guggenheim*. Dkt. 48 at 1.

---

[1] This opinion does not cite *Guggenheim* for any precedential value. To the extent the Court discusses *Guggenheim* herein, it is merely to express why the Court concludes a stay is appropriate in the instant matter pending the Ninth Circuit's *en banc* review of *Guggenheim*.

ORDER - 4

1   The City notes that *Guggenheim* involved a rent-control ordinance, not a zoning ordinance like that present here. Dkt. 47 at 3. It argues that "[t]he primary difference in the rent control ordinance is that it prevents the property owners from charging a fair market rent for the spaces occupied by mobile home tenants." *Id*. The City argues that, although the rent-control ordinance in *Guggenheim* caused a wealth transfer, the Park Owners cannot establish the same kind of wealth transfer in this matter. *Id*.

In contrast, the Park Owners analogize their case with *Guggenheim* as follows:

> A similar wealth transfer results from Tumwater's ordinances. These two forms of government regulation (rent control and exclusive mobile home park zone) *have the same effect*. In the rent control context, the value of the capitalized rent is transferred from the park owners to the tenants. In the exclusive zoning context present here, the diminunition in the park owners' property values from the underlying zoning change is transferred to the tenants. The value of the park owners' properties is artificially depressed by the ordinances. Tumwater receives the transfer of such value and, in turn, provides it to the park owners' tenants. The tenants receive that increased value, given the limited likelihood the parks can ever be used for anything but mobile home parks. Tumwater's ordinances constitute an improper wealth transfer from the owners to their tenants just like the unconstitutional rent control ordinance at issue in *Guggenheim*.

Dkt. 48 at 3 (emphasis in original) (citations omitted).

The Court finds the Park Owners' argument somewhat persuasive and concludes that, although a factual distinction between *Guggenheim* and this case exists, the ultimate ruling in *Guggenheim* could certainly influence, if not control, the decision in this matter. Whether or not the Park Owners would prevail on their constitutional takings claim based on the theory of wealth transfer, as alleged in their complaint, remains an issue for summary judgment or trial. However, at this point, the Court concludes that *Guggenheim's* outcome may be dispositive (or at least instructive) on the issues in this case and that judicial economy would be served by staying the matter.

Finally, the Court concludes that granting the Park Owners' motion will not significantly prejudice the City. However, the Court also notes, without deciding, that it is unlikely that the Park Owners will be entitled to obtain damages incurred as a result of the stay they sought and received in this matter.

### E. Conclusion

The Court agrees with the Park Owners that an *en banc* re-hearing of a matter previously decided by the Ninth Circuit may result in determining important questions of law that would have application in this case. Therefore, a stay of the instant proceedings should be granted pending the Ninth Circuit's *en banc* decision in *Guggenheim*.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Plaintiffs' motion for stay/relief from deadline is **GRANTED**. All pending motions in this matter are terminated, and the matter is stayed pending the Ninth Circuit's final decision in *Guggenheim*.

DATED this 19th day of May, 2010.

BENJAMIN H. SETTLE
United States District Judge