1

Hon. Benjamin H. Settle

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

9
10
11
12

LAUREL PARK COMMUNITY, LLC, a Washington limited liability company; TUMWATER ESTATES INVESTORS, a California limited partnership; VELKOMMEN MOBILE PARK, LLC, a Washington limited liability company; and MANUFACTURED HOUSING COMMUNITIES OF WASHINGTON, a Washington non-profit corporation,

13

Plaintiffs,

vs.

14

CITY OF TUMWATER, a municipal corporation,

15

Defendant.

**NO.   C09-5312 BHS**

**DEFENDANT CITY OF TUMWATER'S AMENDED MOTION FOR SUMMARY JUDGMENT**

**Note on Motion Calendar:
April 1, 2011**

**(Oral Argument Requested)**

16

### I.  INTRODUCTION

17

18

19

20

This case presents constitutional challenges to two ordinances enacted by the City of Tumwater to establish a zoning district for Mobile Home Parks (MHPs).  Because there is no support for any of the Plaintiffs' claims and no issue of material fact exists under the evidence, the City moves for summary judgment and dismissal of all claims.

21

### II.  EVIDENCE RELIED UPON

22

23

This Motion is supported by the Declarations of David Ginther,  Michael Matlock, Jeffrey S. Myers, William Partin, previously filed herein, and the Supplemental Declaration of Jeffrey S. Myers.

24

### III.  STATEMENT OF FACTS

25

**A.     Ordinance O2008-009 & O2008-027 "The MHP Zoning Ordinances"**

26

Plaintiffs filed this lawsuit following Tumwater's adoption of two ordinances to amend its comprehensive plan and zoning ordinance to establish a "Mobile Home Park" zoning district.  This

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

1  new zoning designation was applied to six of the existing mobile home parks in the City, three of

2  which are plaintiffs in this action.  The City Council unanimously adopted these ordinances on

3  February 17, 2009.  They took effect a month later, on March 23, 2009.

4      The legislative process commenced in 2007 when citizens approached the City expressing

5  concern over the impacts of possible conversion of mobile home parks within Tumwater to other uses.[1]

6  The frequency of park closures in Washington accelerated since 2003.  Ordinance O2008-009, at 1.

7  Average park closures between 1989 and 2002 averaged 5.8 per year and increased to 14 per year

8  between 2003 and 2008.  *Id.*  This trend was predicted to continue by the State Department of

9  Community, Trade and Economic Development, thereby threatening the availability of this form of

10  affordable housing.  *Id.*  In Tumwater, no new mobile home parks or manufactured home communities

11  have opened in over a decade.[2]  Thus, preservation of existing housing stock was essential to maintain

12  the availability of manufactured housing in Tumwater, as mandated by the Growth Management Act

13  ("GMA"), RCW 36.70A.020, .070.

14      In August 2007, after citizens approached the City Council, the matter was referred to the

15  Planning Commission and the General Government Committee which began a series of 21 public

16  meetings and hearings that occurred over the next 18 months.[3]  The zoning designations originally

17  requested by citizens sought a designation authorizing only manufactured home communities.[4]

18  However, during the lengthy review process, the ordinances were revised, not only to include a wider

19  range of uses, but also to provide a streamlined mechanism for addressing future "changed

20  circumstances" within the communities.

21  [1]  As a justice on the Supreme Court, plaintiffs' counsel described the impacts of mobile home park closure on residents

22  in his powerful dissent in *MHCW v. State,* 142 Wn.2d 347, 393-94, 13 P.3d 183 (2000) (J. Talmadge, dissenting) as
     follows:

23          The effects on mobile home owners (home owners) faced with moving because mobile home park owners (park
            owners) want to convert a mobile home park to another use can be devastating. A home owner owns the mobile
            home, but only rents the land on which it sits. Closure and conversion of a mobile home park force the owner

24          either to move, or to abandon what may be his most valuable equity investment, a mobile home, to the developer's
            bulldozer. Displacement from a mobile home park can "mean economic ruin for a mobile home owner."

25  (citations omitted).

26  [2]  Ginther Dec., Exhibit C, Planning Commission Recommendation, at 3, Finding 8.
     [3]  Declaration of Matlock.
     [4]  Ginther Dec., Exhibit D (General Govt. Committee Meeting, 4/25/08 Meeting Packet).  This initial draft ordinance
     authorized only MHP and four accessory uses.

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

**DEFENDANT CITY OF TUMWATER'S AMENDED**
**MOTION FOR SUMMARY JUDGMENT – 2**

B.      **FEATURES OF MHP ORDINANCE**

      **1.      Purposes of the MHP Ordinances.**

      The purposes of the MHP Ordinances are stated in the preambles to the ordinances themselves, where the City Council expressed the purposes and made factual findings to support the ordinances. The MHP Zoning Ordinance states its purpose:

1.   To be consistent with and implement the goals of the Growth Management Act, RCW 36.70A.070(2)(C), to identify sufficient land for a variety of housing types, specifically including manufactured housing.

2.   To promote the availability of affordable housing to each economic segment of Tumwater and implement the goals of the Growth Management Act and the Tumwater Housing Plan, an element of the Tumwater Comprehensive Plan, recognizing that manufactured home parks are one source of affordable housing.

3.   To encourage preservation of existing housing stock to implement Goal 4 of the GMA and the Comprehensive Plan.

4.   To promote conservation and stability of existing communities.

5.   To ensure a sufficient supply of mobile home parks in light of the increasing trend of park closures which eliminates a source of affordable and senior housing.

See Ordinance O2008-009 at 1-2 (Ginther Dec. Exhibit A, hereafter "Ordinance O2008-009")

      **2.      Creation of the MHP District**

      The principal feature of Ordinance O2008-009 is to establish a MHP Zoning District which provides that manufactured housing communities, including established mobile home parks, are a permitted use. Ordinance O2008-009, at 7, makes MHPs conforming uses by striking language from TMC 18.48.110 that rendered MHPs a "non conforming use within Tumwater." In addition, Ordinance O2008-027 amended the City's Land Use Plan to delete Comprehensive Plan policies that restricted expansion of existing mobile home parks. Ginther Dec. Exhibit B.

      The MHP Zoning Ordinance provides for 23 permitted, accessory and conditional uses in the MHP district.   In response to comments on its initial proposal, the City added a wider range of uses for those communities designated as MHP. Permitted uses include manufactured home parks and manufactured homes, single family homes on existing lots of record, child-care uses, community centers, and a wide range of recreational facilities.[5] Conditional uses include neighborhood-oriented

---

[5]  Ordinance 2008-009, at 8-9, codified at TMC 18.49.020, and .030

**DEFENDANT CITY OF TUMWATER'S AMENDED
MOTION FOR SUMMARY JUDGMENT – 3**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

1  commercial centers, group foster homes, child day care center, cemeteries, churches, neighborhood

2  community center, and other uses.[6]

3  **C. THE PLAINTIFFS' MOBILE HOME PARKS**

4  All six manufactured housing communities subject to the MHP designation have operated as

5  such for decades. The six communities "are located within residential neighborhoods and currently

6  have residential zoning and are easily recognized as traditional manufactured housing communities."[7]

7  All of the parks have been consistently profitable and have historically been full or had few vacancies.

8  Since the adoption of the MHP Ordinances, all have either raised their space rents or are planning an

9  increase.[8]

10  **1. Tumwater Mobile Estates**

11  Tumwater Mobile Estates (TME) was established in 1965 and has been owned by a partnership

12  headed by William Schmicker since 1978 when it was purchased for $1.1 million.[9] It is a 22.4 acre

13  parcel with 115 mobile home pads located in a residential area. The park has been consistently full.

14  The park is served by City water and is connected to City sewer. TME is surrounded to the west by

15  Multi-Family High Density (MFH) zoning, on the south by Multi-Family Medium density (MFM)

16  zoning and on the east by Single Family Medium density (SFM) zoning. Commercial areas are located

17  to the east and southeast, but do not abut the TME property. Schmicker at 12:16-18. Before adoption

18  of the MHP Zoning, the property was designated as SFM and MFH zoning. It also lies adjacent to

19  designated wetlands. Schmicker 11:22 - 12:3. A majority of the park is designated as a high

20  liquefaction risk area by the State of Washington and a large area on the west side was damaged due

21  to liquefaction in the Nisqually Earthquake. Schmicker 25:3-16.

22  Mr. Schmicker testified to the City Council that he had never considered selling the park nor

23  did he have any specific plans to redevelop the park:

---

24  [6] Ordinance 2008-009, at 9, codified at TMC 18.49.020.040).

25  [7] Ordinance 2008-009, at 2-3; see also, Ginther Dec., Exhibits E (City Zoning Map) and Exhibit F (Comprehensive Plan critical areas mapping showing aerial photographs of the property).

26  [8] Eichler, 14:16-24, 15:10-18; Schmicker at 19:12, 22:16-20. Andersen 23:25 to 24:14. See Declaration of Jeffrey S. Myers, which attaches relevant excerpts from the Depositions of William Schmicker (Exhibit A), Robert Eichler (Exhibit B), James Anderson (Exhibit C) and Jeanne-Marie Wilson (Exhibit D). For ease of reference, the depositions will be cited to using the name of each witness.
[9] Schmicker at 8:13-18.

**DEFENDANT CITY OF TUMWATER'S AMENDED
MOTION FOR SUMMARY JUDGMENT – 4**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

> I am the owner of Tumwater Mobile Estates located at 930 Trosper Road, Tumwater, WA. I have owned the community since 1978. We have never considered converting the use of land from anything other than a mobile home park. In fact, we are continually reinvesting in the park by bringing in new homes….[10]

At his deposition, Schmicker testified that he believes that it should be redeveloped at some undetermined date for commercial use, which would require a rezone, even under the prior zoning. Schmicker at 47:25 - 48:3. Schmicker testified that he believes that the City would rezone the property as commercial in order to get additional sales tax revenue. Schmicker at 41:23 - 42:3. However, he made no plans whatsoever to sell or to specifically redevelop the property. *Id.,* at 74:22-25. Schmicker acknowledged that he intends to continue use as a mobile home park, which is now the highest and best use of the property. *Id.,* at 42:25 - 43:3. His current investment objective is to collect dividends off the property. *Id.* He conceded that there is no way to determine when the highest and best use, and hence his investment objectives, may change. *Id.,* at 74:10-16.

### 2.    Laurel Park

Laurel Park MHP began operating in 1970, and has been owned by Robert Eichler since 1991.[11] Eichler purchased the property for $1.3 million.[12] It is a 73 pad park that sits on 11.73 acres. The park was annexed into the City of Tumwater in December 2007. Eichler Dep. 37:23-24. It was previously zoned as MFM. It is surrounded by residential areas, with an area of MFM zoning to the north, SFM to the south and Single Family Low Density (SFL) to the east and west. The park is on community septic systems and provides water from its own wells.

In 2006, Mr. Eichler considered selling Laurel Park and consulted with a local real estate broker, Century Pacific Realty. They told him that the highest and best use of the property was to continue as a mobile home park. Eichler, Dep. Exhibit 4. The owner agreed with that analysis, Eichler at 22:7-21, and turned down an offer for $4,000,000 for his property. *Id,* at 24:16-17. Eichler never made any specific plans to redevelop the property. Instead, he hoped that the highest and best use would change at some indefinite time in the future. Eichler admitted that in today's market, there is

---

[10] Ginther Dec. Ex. G (Correspondence from William D. Schmicker, 6/13/08).
[11] Eichler at 10:19. Two years ago, Eichler formed Laurel Park Community, LLC to hold title to Laurel Park and he is the sole shareholder.    Eichler at 5:21-6:4.
[12] Eichler at 10:21.

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

no demand for redevelopment. Eichler at 18:6, He further conceded that the highest and best use is as a MHP and that such use is economically viable. Eichler at 59:1-8.[13]

### 3.   Velkommen Mobile Home Park

Velkommen Mobile Home Park was purchased in 1975 by Phyllis and Wes Andersen who built the MHP in 1982. Andersen at 19:23.[14] It has 39 mobile home pads on 11.13 acres. Water is provided by a separate water company, Andersen PUD, also owned by the Andersens. The park is on septic systems with individual or shared drainfields which have limited the density within the park. Prior to adoption of the MHP zoning, the property was designated as MFM.

Velkommen has not made any specific plans for redevelopment of the property. Andersen recalls that the family "entertained" the idea of redevelopment. Andersen at 40-41. Upon further inquiry, he conceded that they had not consulted any land use planners and the discussion "wasn't real in-depth talk. It was just, you know, just like little whims." Andersen at 43:8-9.

In 2008, Velkommen declined two offers for the property at $1.75 and 1.6 million. As part of the negotiations, Velkommen wanted to convey only the underlying property, and not the water system serving the park. Andersen at 64:22 - 65:7. Because the park sale did not include the water supply, the prospective buyer lost interest and further contacts "tinkered out pretty quick." Andersen at 64:4. The buyer simply stopped calling after noting that a mobile home park without water "isn't worth very much". Andersen, Dep. Exhibit 9.

### D.   IMPACTS OF MHP ZONING ORDINANCE ON PLAINTIFFS

### 1.   MHP Zoning has not caused any significant diminution in value.

Plaintiffs produced no evidence of any diminution of the value of their mobile home parks. Their appraiser conducted an income capitalization appraisal using the effective date of December 31,

---

[13] Eichler at 37:6-17, testified:
> My only plan to redevelop the property was when the time came that the highest and best use - demand for the property would be for the higher and better use. And I really didn't know if it was next year, two years from now, five years from now. I bought the property in 1991 knowing that the highest and best use, value at that time was a mobile home park. And I looked to the future and hoped for the future that in my lifetime, the demand for that property would be for me to develop it into the zoning that was on the property. I've never had an exact time and date, because I've had to wait for the opportunity to present itself.

[14] Velkommen LLC's manager is the son of the original owners. His father is deceased and mother is 77 years old. Mr. Andersen did not know how much they paid for the park in 1975. Andersen at 19:25.

DEFENDANT CITY OF TUMWATER'S AMENDED
MOTION FOR SUMMARY JUDGMENT – 6

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

1  2008, which was before the MHP Zoning ordinance was adopted and took effect.  Ms. Wilson did not

2  do any analysis of the value of the parks after the MHP Zoning was adopted.  Wilson at 11:13-15.

3  Absent such analysis, there is no evidence of any impact on value.

4    **2.**  **MHP Zoning does not impose any "transfer" of value from the Owners.**

5     The City's Ordinance is not a rent control ordinance and does not transfer value from owner

6  to tenant.  The City's expert, William Partin, evaluated whether the MHP Zoning caused a transfer in

7  value and concluded that there was no evidence to support such an assertion.  Partin noted that there

8  is no evidence indicating the value of tenant's homes had increased since the adoption of the MHP

9  ordinance.  Partin Report (hereafter cited as "Partin") at 21.  Moreover, Partin looked for any

10 mechanism by which such a transfer could occur.  Partin found no economic mechanism within the

11 ordinances that would allow a transfer of value from the Plaintiffs to tenants, finding that:

12    The Plaintiffs are free to set higher rental rates upon expiration of existing leases
   without governmental restriction. The owners' ability to charge full market rents and

13    establish the rules relating to the operation of the manufactured home park eliminates
   any potential for transfer of value. The tenants gain no economic advantage as a result

14    of enacting the ordinances.

15 *Id.*, at 21.

16    By contrast,  plaintiffs' appraiser Wilson did not use any recognized methodology to analyze

17 whether the zoning ordinances create a transfer of value from the Owners to their tenants.  She further

18 lacked any factual basis to support this conclusion:

19    Q  What methodology did you use to determine whether there was a shift in value
   from park owners to tenants?

20    A  I don't think there was a methodology.  It's - it's an opinion.
   Q  And what's the factual basis for that opinion?

21    A  If the landowner doesn't have full use of their property, they have lost value.
   Q  Can you quantify how much value has been shifted, in your opinion, from the park

22    owners to the tenants?
   A  No.

23 Wilson Deposition, 56:14-19.[15]

24

25

26

---

[15]  Wilson's unsupported conclusions, which lack any factual basis and were not generated any methodology should be stricken.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993).

**DEFENDANT CITY OF TUMWATER'S AMENDED
MOTION FOR SUMMARY JUDGMENT – 7**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**3.     MHP Zoning does not impose rent control or limit the Owners' ability to generate revenue**.

The MHP Zoning does not restrict what the Owners can charge their tenants.  Despite having profitable operations, the Owners all increased the rent or have increases planned after the new zoning was adopted.  Andersen at 35:4-13; Schmicker at 19:11-14; Eichler at 14:21-15:2.

**4.     MHP Zoning does not impose any fee or costs on the Owners.**

Enactment of the ordinances does not require any additional expenditure by the Plaintiffs, but allows continuation of their existing uses. The property continues to be operated in the same way as before enactment. Partin at 19.  The Owners agree that the adoption of the Ordinance has not imposed any fee or cost upon them.  Andersen at 35:13; Schmicker at 32:6-9; Eichler at 60-61.

**5.      MHP Zoning does not affect operation of the mobile home parks.**

The MHP Zoning allows for the continued use of the existing mobile home parks without any affect on how they operate. Andersen at 34:16-18.   It allows the parks to do everything they are currently doing and does not prevent any existing use of their property. Eichler at 61:7-10. Schmicker at 32:20-23.

**6.     MHP Zoning does not restrict alienation of the property**.

The MHP Zoning sets forth allowed uses without regulating leasing or sales of mobile home parks.  The City does not establish a right of first refusal or determine who may purchase the parks. Likewise, the City does not restrict price or otherwise regulate the sale of the parks.

**7.     MHP Zoning allows for redevelopment if MHP use is not economically viable**.

The MHP Zoning includes a "Use Exception" that provides an opportunity for redevelopment if the owners' use under the MHP zoning is not reasonable or economically viable.  Partin at 20. Accordingly, the owner does not need to bear operating losses or below market returns on his investment.  *Id.*  If the owners become unable to generate enough revenue to meet operating costs, this exception would allow conversion to a different use consistent with the prior zoning.  *Id.*  None of the Owners has attempted to utilize this option.  See, e.g., Eichler at 58:22-24.

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

1

**8.      MHP Zoning allows continuation of the existing profitable use which is admitted to be  economically viable.**

2

3

Plaintiffs' expert conceded that the current use of all three parks as mobile home parks is

4

economically viable.  Wilson at 44:15-18.  The owners agreed that their MHPs are profitable and

5

economically viable.[16]  As such, the owners are realizing the expectations they had when they bought

the properties, which was to indefinitely operate a mobile home park.  Partin at 19.

6

**9.      MHP Zoning does not require a physical invasion of the parks.**.

7

Under the MHP zoning, the Owners retain complete control and exclusive possession of the

8

property.  Partin at 20.   The City does not occupy or use any portion of their property.   *Id.*

9

## IV.  ARGUMENT

10

**A.      STANDARD OF REVIEW**

11

Zoning ordinances are presumptively valid and local governments have broad power to zone

12

and control land use. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 2182

13

(1981). Where property interests are adversely affected by zoning, the courts generally have

14

emphasized the breadth of municipal power and have sustained the regulation if it is rationally related

15

to legitimate state concerns and does not deprive the owner of economically viable use of his property.

16

*Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536 (1974); *Euclid v. Ambler Realty Co.*, 272

17

U.S. 365, 395, 47 S.Ct. 114, 121 (1926).

18

The Supreme Court has established two categories of regulatory action that generally will be

19

deemed *per se* takings for Fifth Amendment purposes. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528,

20

538, 125 S.Ct. 2074 (2005). First, where government requires an owner to suffer a permanent physical

21

invasion of her property. *Id.* Secondly, where a regulation deprives an owner of all economically viable

22

use of their property.  *Id.; Lucas v. South Carolina Coastal Council,*  505 U.S. 1003*,* 112 S.Ct. 2886

23

(1992).   All other takings are governed by an "ad hoc" analysis under which  the court considers: (1)

24

the regulation's economic impact on the property; (2) the extent of the regulation's interference with

25

investment-backed expectations; and (3) the character of the government action. *Penn Central Transp.*

26

*Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646 (1978)  (*Penn Central*).

---

[16]  Andersen, at 24:25-25:21 and Exhibits 1-3; Eichler at 15:10-18; Schmicker at 20:13-17.

**DEFENDANT CITY OF TUMWATER'S AMENDED
MOTION FOR SUMMARY JUDGMENT – 9**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1    Under a facial challenge to a statute regulating the uses that can be made of property, the

2 landowner must show that the mere enactment of the ordinance denies all economically viable use of

3 the property. *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 494-95, 107 S.Ct. 1232,

4 1246-47 (1987); *Carson Harbor Village, Ltd. v. City of Carson,* 37 F.3d 468, 473-74 (9th Cir.1994).

5 Facial challenges to regulations face an "uphill battle," *Keystone,* 480 U.S. at 495, since it is difficult

6 to demonstrate that "mere enactment" of legislation "deprived [the owner] of economically viable use

7 of [his] property." *Hodel v. Virginia Surface Mining & Reclamation Assn*., Inc., 452 U.S. 264, 297,

8 101 S.Ct. 2352, 2371 (1981).

9 **B.    MHP ZONING IS NOT A PER SE TAKING.**

10    First, this is not a per se taking because there is no physical invasion of a plaintiff's property.

11 *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419 (1982); *Yee v. Escondido,* 503 U.S.

12 519 (1992). This type of taking claim is simply inapplicable to the adoption of MHP Zoning.

13 Secondly, in *Lucas*, the Supreme Court ruled that regulations that do not allow any economically

14 viable use constitute a per se taking under the 5th Amendment. *Lucas,* 505 U.S. at 1022.

15    It is uncontested that the Owners are allowed economically viable use as a MHP, in addition

16 to other uses that may be economically viable.  It is not disputed that use as a mobile home park is

17 economically viable. Wilson at 44:18.  The Plaintiffs' expert also conceded that the conditional uses

18 provided in the ordinance could be economically viable.  Wilson at 44:6-14.  In light of these

19 concessions, the MHP Zoning is not a categorical, per se taking under *Lucas*.  Summary judgment

20 should be granted to the City.

21 **C.    TUMWATER'S MHP ZONING IS NOT A TAKING UNDER *PENN CENTRAL*.**

22    Where a regulatory taking is alleged, the courts apply the three-factor regulatory takings test

23 provided in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646

24 (1978).  When a regulation such as a zoning ordinance causes substantial economic harm but does not

25 deprive the owner's property of all economic value, whether a taking occurred depends on "the

26 regulation's economic effect on the landowner, the extent to which the regulation interferes with

reasonable investment-backed expectations, and the character of the government action." *Palazzolo*

**DEFENDANT CITY OF TUMWATER'S AMENDED
MOTION FOR SUMMARY JUDGMENT – 10**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

*v. Rhode Island,* 533 U.S. 606, 617, 121 S.Ct. 2448 (2001). Importantly, diminution in the property value alone cannot establish a taking. See *Penn Central*, 438 U.S. at 131, 98 S.Ct. 2646.[17]

**1.    Plaintiffs have shown no economic impact on their property values.**

The first *Penn Central* factor looks for evidence of economic effect on the property owner. *Penn Central* recognized that application of zoning ordinances could impact the values of individual property owners, but that this ordinarily does not cause a taking.  The Court stated:

> Zoning laws generally do not affect existing uses of real property, but "taking" challenges have also been held to be without merit in a wide variety of situations when the challenged governmental actions prohibited a beneficial use to which individual parcels had previously been devoted and thus caused substantial individualized harm.

*Penn Central,* 438 U.S. at 124.

The takings clause permits government regulations to have a substantial impact on property values, as long as there is economically viable use left for the owner.[18]  *Penn Central* focuses on analysis of the remaining allowed uses, noting that zoning ordinances may take most of the value of property from its previous condition, 438 U.S. at 131, citing, *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114 (1926) (75% diminution in value caused by zoning law);  *Hadacheck v. Sebastian*, 239 U.S. 394, 36 S.Ct. 143 (1915) (87 ½% diminution in value).

If we follow *Penn Central* and focus on the uses allowed by the MHP Zoning, the Court must acknowledge that there is no taking because Plaintiffs are allowed to continue  the existing use as a MHP, which is admittedly profitable and economically viable.  Because Plaintiffs must focus on the several uses that are allowed , it is clear that their allegations of "single use" zoning, Complaint at 6, ¶22, do not support a takings claim.[19]

---

[17]  The Ninth Circuit's recent en banc opinion in *Guggenheim v. City of Goleta ,* (9th Cir. 12/22/10) confirms that the takings analysis is controlled by *Penn Central.*  The Ninth Circuit's rejection of the facial takings claim in *Guggenheim* supports similar rejection of the claims against the MHP Zoning in this matter.

[18]  "'Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law,' *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 413, 43 S.Ct. 158, 159 (1922), and this Court has accordingly recognized, in a wide variety of contexts, that government may execute laws or programs that adversely affect recognized economic values." *Penn Central,* 438 U.S. at 124.

[19]  The Supreme Court has previously sustained zoning even more limited than the City MHP ordinance.  *Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536 (1974) (upholding zoning that restricted the use of land to "one family" dwellings); *Agins v. City of Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138 (1980) (upholding zoning that restricted previously purchased five-acre tract of land to single-family residences and open space use).

**DEFENDANT CITY OF TUMWATER'S AMENDED MOTION FOR SUMMARY JUDGMENT – 11**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1    Plaintiffs failed to develop any evidence of diminished property value caused by the

2    Ordinances.  Their expert only analyzed the value of the parks before the ordinance took effect.  She

3    admitted that the necessary and appropriate methodology to identify any impact would be to conduct

4    a "before and after" appraisal of the parks.  By her own admission, she cannot speak to any diminution

5    of value.  Therefore, this factor weighs against any takings claim.

6    **2.   The MHP Ordinance does not interfere with reasonable investment backed expectations.**

7    **a.   Plaintiffs are realizing their primary expectation by operating as MHPs.**

8    In analyzing the "reasonable investment backed expectations" in *Penn Central,* the Court

9    began by pointing out that the challenged New York Landmark Ordinance allowed the owner to

10   continue its existing use of Grand Central Station.  The Court stated:

11   > Unlike the governmental acts in *Goldblatt, Miller, Causby, Griggs,* and *Hadacheck,*
12   > the New York City law does not interfere in any way with the present uses of the
     > Terminal.   Its designation as a landmark not only permits but contemplates that
13   > appellants may continue to use the property precisely as it has been used for the past
     > 65 years:  as a railroad terminal containing office space and concessions.   So the law
14   > does not interfere with what must be regarded as Penn Central's primary expectation
     > concerning the use of the parcel.  More importantly, on this record, we must regard the
15   > New York City law as permitting Penn Central not only to profit from the Terminal but
     > also to obtain a "reasonable return" on its investment.

16   438 U.S. at 136 (citations omitted, emphasis added).

17   That observation mirrors the facts in this case.  The MHP Zoning not only permits but

18   contemplates that the Owners may continue to use their property precisely as it has been used for the

19   past 45 years:  as a mobile home park.   As such, the zoning law does not interfere with what must be

20   regarded as the Owner's primary expectation concerning the use of the parcel.

21   The Owners annually profit from operation of the MHPs, obtaining a reasonable return on their

22   investment.  Partin at 6-11.  Indeed, the fact that profits increased  after adoption of the ordinance

23   shows there is no impact on investment backed expectations.  *Id.; see* Schmicker at 44:14-15.  The

24   ongoing operation produces substantial returns on the Owners' investments at all of the parks,

25   indicating that they are earning at least double the expected rate of return on the cost of their

26   investment expected in the market for similar investment property. Partin at 11.  There is no evidence

     of any negative impact on their profits or return on investment from the MHP Zoning.  *Id.*

**DEFENDANT CITY OF TUMWATER'S AMENDED
MOTION FOR SUMMARY JUDGMENT – 12**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

**b.    The Ordinance's Use Exception explicitly protects the very expectation that Plaintiffs' claim is violated.**

Plaintiffs' assert that their expectation to convert to another use at a time when the MHP is no longer economically viable has been frustrated by the MHP zoning. See e.g. Schmicker at 73:21-74:16. This assertion is unsupported in light of provisions in the zoning that facilitate that very expectation. TMC 18.49.070.  The Use Exception addresses the owners' concerns by allowing the zoning to revert to its prior designation if: 1) they do not have reasonable use of their property under the MHP zoning; or 2) the uses authorized by the MHP zoning are not economically viable at the property's location. Ordinance O2008-009 at 12, codified as TMC 18.49.070.  Thus, the Ordinance accommodates even undefined plans for possible conversion to another use if and when it is no longer viable to continue as a MHP.

**c.    Plaintiffs' subjective future intentions are too speculative to constitute reasonable investment backed expectations.**

In *Penn Central*, the Court described the type of "distinct investment backed expectations" protected, and more importantly, those that do not rise to the level meriting protection under the Takings Clause.  The Court noted that takings claims have been dismissed where the regulation did not interfere with interests that were sufficiently bound up with the reasonable expectations of the claimant to constitute "property" for Fifth Amendment purposes.  438 U.S. at 124-125.

Plaintiffs' expectations are only vague desires to possibly convert the MHP use at some point in the future to an unspecified use allowed under the zoning in effect at the time of their purchase. Plaintiffs would fix their right to develop based on uses authorized by the zoning from 1965, 1970 and 1982.  These expectancies are not bound up with reasonable expectations, but are merely what Velkommen's manager called "whims" about possible redevelopment.  Andersen at 43:9.  Such "whims" are not backed by any investment, nor are they reasonable expectations.[20]

_____

[20]  The en banc opinion in *Guggenheim* agrees that the Takings clause does not protect future speculative interests, stating:

> "Distinct investment-backed expectations" implies reasonable probability, like expecting rent to be paid, not starry eyed hope of winning the jackpot if the law changes. A landlord buys land burdened by lease-holds in order to acquire a stream of income from rents and the possibility of increased rents or resale value in the future. The stream already suffered a reduced flow when the Guggenheims bought it, so what they paid would reflect the flow that the law allowed. The Guggenheims might conceivably have paid a slight speculative premium over the value that the legal stream of rent income would yield, on the

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

1    Indeed, Plaintiffs' position would convert every downzoning of property into a compensable

2    taking because the owner could testify to a subjective expectation to put his property to a use allowed

3    under the prior zoning.  *Penn Central* explicitly rejects this contention, stating:

4        the submission that appellants may establish a "taking" simply by showing that they
         have been denied the ability to exploit a property interest that they heretofore had
5        believed was available for development is quite simply untenable.

6    *Penn Central,* 438 U.S. at 130.

7        **3.    The character of the government action is to regulate land use, not to physically
                 take property.**

8
9    The third factor in the *Penn Central* balancing test looks at the "character of the government

10   action."   A "taking" may more readily be found when the interference with property can be

11   characterized as a physical invasion by government, than when interference arises from some public

12   program adjusting the benefits and burdens of economic life to promote the common good.

     438 U.S. at 125.

13   Tumwater's action does not physically invade Plaintiffs' properties, but is a traditional zoning

14   ordinance widely recognized as a valid exercise of the police power.  The MHP Zoning allows the

15   Owners to continue their existing, profitable use of their parks.  As such, it is a regulation that adjusts

16   the benefits and burdens of economic life to promote the common good and is not the type of intrusion

17   tantamount to a physical appropriation of the Plaintiffs' property.

18   **D.   MHP ZONING DOES NOT DEPRIVE PLAINTIFFS OF ANY FUNDAMENTAL
           ATTRIBUTE OF OWNERSHIP.**
19
20       **1.    MHP Zoning does not take possessory rights**.

21   In *Guimont v. Clarke*, 121 Wn.2d 586, 854 P.2d 1(1993),  the Washington Supreme Court set

22   forth a modified approach to state takings claims that considers whether the regulation destroys any

23   fundamental attribute of ownership, including the right to possess, to exclude others, to dispose of

24       theory that rent control might someday end, either because of a change of mind by the municipality or
         court action. But that premium could be no more than a speculative possibility, not an "expectation."
25       Speculative possibilities of windfalls do not amount to "distinct investment-backed expectations," unless
         they are shown to be probable enough materially to affect the price.

26   *Guggenheim v. City of Goleta*, __ F.3d ___ (9th Cir. Dec. 22, 2010), en banc opinion at 20435. (Emphasis added).

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

**DEFENDANT CITY OF TUMWATER'S AMENDED
MOTION FOR SUMMARY JUDGMENT – 14**

1   property, or to make some economically viable use of property. 121 Wn.2d at 604, citing, *Lucas,* 112

2   S.Ct. at 2893-96; *Guimont v. City of Seattle,* 77 Wn.App. 74, 81, n.5, 896 P.2d 70 (1995).

3       Under this criteria, it is clear that the MHP Zoning does not appropriate or affect any

4   fundamental attribute of property. The zoning does not regulate the right to possess the property, to

5   exclude others or dispose of the property.[21]   The ordinance does not determine who the property may

6   be sold or leased to.  The zoning allows continued economically viable use. *See* Partin Report at 20.

7   Under this test,  the MHP Zoning Ordinance is a permissible regulation of land use that does not

8   require compensation**.**

9       **2.      Plaintiffs have no protected property interest in the future use of property, unless**
         **they have vested development rights under State Vested Rights Doctrine.**

10      Plaintiffs are apparently claiming that the MHP Zoning is facially a taking because it deprives

11  the owner of the opportunity to convert the parks to a future use allowed by the zoning in effect at the

12  time when the property was purchased.  Such a contention equates speculative future desires with a

13  present property right.  Protected property interests are not created by the Constitution, but instead flow

14  independently from state law. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005).

15  Under Washington law, in order to have a protected interest in a use of property and fix that right

16  under the zoning, an owner must take specific action to "vest" his future development rights under the

17  "vested rights" doctrine.

18      Under the "vested rights doctrine", developers filing a timely and complete land use application

19  obtain a vested right to develop land in accordance with the land use laws and regulations in effect at

20  the time of application. *Erickson & Assocs., Inc. v. McLerran*, 123 Wn.2d 864, 867-68, 872 P.2d 1090

21  (1994); *West Main Assocs. v. City of Bellevue,* 106 Wn.2d 47, 50-51, 720 P.2d 782 (1986). It is only

22  by vesting that an owner will have a reasonable expectation that the zoning will not change.

23      It is not disputed that plaintiffs did not have any vested rights to protect against a possible

24  zoning change.   The Owners all admitted that they did not file any applications to redevelop their

25  parks:  Redevelopment plans at Velkommen were nothing more than  "whims" discussed by the

26

---

[21]  When asked to identify what property right was being taken, plaintiffs' expert could not identify any specific property right that was being deprived.  Wilson at 44:19-25.

**DEFENDANT CITY OF TUMWATER'S AMENDED**
**MOTION FOR SUMMARY JUDGMENT – 15**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

owner's family.  Andersen at 43:9.  Laurel Park made no redevelopment plans because its highest and best use remains as mobile home park. Eichler at 37:6-10.  TME never had plans to sell or redevelop as commercial property and admitted that future conversion require a rezone to commercial, a use not allowed even under the pre-existing zoning. Schmicker at 41:18-42:8; 74:10-75:3.  No applications to redevelop were filed by any of the Owners.  Schmicker at 59:17; Eichler at 47:11-15; Andersen at 82:3-8. All that the Owners assert is an ethereal desire to possibly convert their property at an indefinite point in the future.  These desires or "whims" are not property interests protected by the Takings Clause.  If they were, any downzoning of property would be a per se taking.  Such is not the law. *Penn Central,* 438 U.S. at 131.

**E.      THE RIPENESS DOCTRINE BARS PLAINTIFFS' CLAIMS.**

Any as applied takings claim is not ripe under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108 (1985).   In this case, plaintiffs' Constitutional claims are not ripe because their expectation is an inchoate speculative whim, contingent on the belief that the highest and best use will someday change allowing them to develop under the zoning in effect when they first bought the property.  All the Owners admit that the day for such redevelopment has not yet arrived.  If it does, the Use Exception in TMC 18.49.070 allows them to pursue their development expectations by showing that the MHP use is no longer economically viable.  None of the plaintiffs have applied for application of the use exception.  Hence, plaintiffs' claims are not ripe.  *Williamson, supra; Suitum v. Tahoe Regional Planning Agency,* 520 U.S. 725, 117 S.Ct. 1659 (1997); *see also, MHC Financing Ltd. Partnership Two v. City of Santee*, __ Cal.Rptr.3d ___, 2010 WL 892322 (Cal.App. 4 Dist. 2010) (dismissing takings and due process claims under ripeness doctrine).

**F.      THE MHP ZONING DOES NOT VIOLATE SUBSTANTIVE DUE PROCESS.**

**1.      Federal Due Process Test is Rational Basis Test.**

Zoning of property is a proper exercise of the police power granted to cities under Article XI, Section 11 of the Washington State Constitution.  The police power is not confined to elimination of filth, stench, and unhealthy places. The police power is ample to lay out zones where family values,

**DEFENDANT CITY OF TUMWATER'S AMENDED
MOTION FOR SUMMARY JUDGMENT – 16**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW.JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 9,  94 S.Ct. 1536  (1974).

To establish a violation of substantive due process, a plaintiff must ultimately prove that the contested action was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Sinaloa Lake Owners Ass'n. v. City of Simi Valley,* 882 F.2d 1398, 1484 (9th Cir.1989).   In order to survive summary judgment, the Plaintiffs must demonstrate the irrational nature of the City's actions by showing that it could have had no legitimate basis. *Halverson v. Skagit County*, 42 F.3d 1257 (9th Cir.1994); *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir.1994).  It is not necessary for the City to prove that the MHP Zoning actually advances a legitimate state purpose, but instead the court must ask whether the government "could" have a legitimate reason for its enactments. *Kawaoka,* 17 F.3d at 1234;  *Equity Lifestyles v. San Luis Obispo County,* 548 F.3d 1184, 1193-1195 (9th Cir. 2008).

The means selected to achieve the legislative purpose are subject to the same minimal scrutiny, rational basis test.   The Due Process Clause does not empower the judiciary "to sit as a 'superlegislature to weigh the wisdom of legislation' . . . ." *Ferguson v. Skrupa*, 372 U.S. 726, 731, 83 S.Ct. 1028, 1032 (citation omitted). "If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control." *Village of Euclid*, 272 U.S. at 388.  Here, the City's MHP Zoning substantially advances multiple legitimate public purposes and does not violate substantive due process.

**2.      MHP Zoning is Rationally Related to a Legitimate Public Purposes.**

The legitimacy of promoting affordable housing to the public is obvious and well established. *Garneau v. City of Seattle,* 897 F.Supp. 1318, 1322 -1323 (W.D.Wash.,1995), affirmed on other grounds, 147 F.3d 802 (9th Cir. 1998).  This principle was recently confirmed in the en banc opinion of the Ninth Circuit in *Guggenheim v. City of Goleta,* __ F.3d __ (9th Cir. 12/22/10), en banc opinion at 20439. In their deposition testimony, the Owners all conceded that the goal of promoting affordable housing is a legitimate public purpose, and manufactured housing provides such housing.  Anderson at 13: 9-15; Schmicker at 17: 2-7; Eichler at 10: 11-17.

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1    The MHP Zoning implements the goals of the Growth Management Act to protect existing

2   housing stock, sources of affordable housing and provide adequate land for manufactured housing.

3   RCW 36.70A.020.   These measures also provide a degree of stability to land use that protects the

4   property interests of MHP tenants and homeowners.   The Ninth Circuit ruled that measures that

5   provide protection of MHP tenants and their investment in their homes serve a legitimate legislative

6   goal.  *Guggenheim v. City of Goleta*, __ F.3d __ (9th Cir. 12/22/10), en banc opinion at 20439*; Levald,*

7   *Inc. v. City of Palm Desert*, 998 F.2d 680, 690 (9th Cir.1993).

8    The socio-economic aims of MHP Zoning are clearly legitimate and the means selected are

9   rational to implement those aims.   The ordinance easily passes scrutiny under the *Kawaoka* tests.

10  Furthermore, the means selected by Tumwater are clearly related to and advance the legitimate

11  purposes stated on the face of the ordinances.   The selected means of zoning for MHP use is

12  appropriate and easily meets the minimal scrutiny, rationality basis standard.

13  **3.     MHP Zoning does not violate the State Due Process Test – Zoning for Current Use as a MHP Is Not Unduly Oppressive.**

14   Washington case law adds one additional test not employed by federal courts, that of whether

15  the ordinance is "unduly oppressive" to the person being regulated.  *Presbytery,* 114 Wn.2d at 331.

16  In applying this tests, courts must be wary of giving too much weight to an element articulated only

17  as one factor in the rational basis review employed by federal Courts.  *Goldblatt v. Hempstead,* 369

18  U.S. 590, 595, 82 S.Ct. 987, 990 (1962), cautions that the unduly oppressive analysis must not be

19  applied with strict precision because "debatable questions as to reasonableness are not for the courts

20  but for the legislature. . .".   The Washington Supreme Court agrees that the unduly oppressive analysis

21  merely a structure for determining the overall reasonableness of the means used to achieve the

22  regulation's public purpose.  *Guimont v. Clarke,* 121 Wn.2d at 609, n.10.

23   The Washington Supreme Court in *Presbytery* identified several non-exclusive factors to assist

24  in weighing whether an ordinance is unduly oppressive.   Those factors are:

25   On the public's side, the seriousness of the public problem, the extent to which the
    owner's land contributes to it, the degree to which the proposed regulation solves it and

26  the feasibility of less oppressive solutions would all be relevant. On the owner's side,
    the amount and percentage of value loss, the extent of remaining uses, past, present and
    future uses, temporary or permanent nature of the regulation, the extent to which the

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

1
owner should have anticipated such regulation and how feasible it is for the owner to
alter present or currently planned uses.

2
Presbytery, 114 Wn.2d at 331.

3

4
Using the *Presbytery* factors, the City's Ordinances are not violative of substantive due

5
process.   To prevail, Plaintiffs must  take the remarkable position that it is "unduly oppressive" for

6
the City to adopt zoning that allows them to continue the profitable operation of their parks as a

permitted use. This defies logic and common sense.

7

8
The Ordinances do not cause economic loss, but allow continuation of an existing, viable and

profitable enterprise.   The Owners' ability to generate revenue from the parks remains unfettered.

9

10
Plaintiffs have not shown any value loss to their parks, which continue to be increasingly profitable

and which can increase their revenues by increasing rents, as they all have recently done.   Moreover,

11
they can seek a use exception if the operation of the parks becomes economically unreasonable or

12
unviable. TMC 18.49.070.  The reversion to prior zoning created by the use exception does not require

13
a rezone, but vests upon approval of the exception.   This ameliorates any claim of direct economic

14
harm and provides a way to alter the current use.

15
The Ordinance does not force Plaintiffs alone to bear a societal burden of affordable housing.

16
The Ordinance does not require any Plaintiff to assume a greater burden than he has already assumed

17
and allows continuing substantial profit be reaped.  Partin at 20.  The MHP Zoning is not the exclusive

18
way that City promotes affordability.  Ordinance O2008-009 recognizes that MHPs are "a" source of

19
affordable housing, but they are clearly not the only one. Affordable housing is promoted in Tumwater

20
in several different ways.[22] Matlock Decl. at 4, ¶10. Thus, the "burden" (if it can be called that where

21
Plaintiffs have the highest and best use of their property) of providing affordable housing is not cast

22
solely upon the shoulders of MHP owners, but is spread throughout the city by these mechanisms.   See

23
also, Ginther Dec., Exhibit H at 2 (Staff Report to Planning Commission, 9/23/08).

24

25

26
[22]  The Land Use and Housing Plans identify sufficient land for all housing types (including MHPs).  They provide an
adequate supply of apartments and multi family housing andsmaller lot sizes for single-family homes  that will be more
affordable.   The City can waive applicable fees, such as utility hook-up fees or impact fees.  The City provides discounts
in utility rates  for low income seniors.  Finally, the Owners can seek tax relief through property tax revaluation.

**DEFENDANT CITY OF TUMWATER'S AMENDED
MOTION FOR SUMMARY JUDGMENT – 19**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

1   The Ordinance addresses a serious problem of displacement of tenants at mobile home parks

2   which seek to convert to other uses.  This problem directly relates to the owner's land, as it is their

3   choice to convert that causes the impact on the tenants.  The means selected by the MHP Ordinances

4   are measured and limited.  MHP Zoning adds stability to the existing MHP use, but does not guarantee

5   housing. It promotes established neighborhoods and availability of a variety of housing types pursuant

6   to GMA.  It further promotes a form of affordable housing  that the Owners voluntarily decided to

7   provide when they bought the parks.  Ordinance O2008-027 further benefits the Owners by making

8   MHP use a conforming use, allowing  expansion of existing parks.

9       Moreover, in addition to having minimal if any impact on the value of the owner's property,

10  the Ordinances do not use improper means to achieve these goals.  MHP Zoning is a much less drastic

11  alternative than the relocation assistance fee  imposed on park owners in *Guimont v. Clarke*, *supra*.

12  Unlike *Guimont v. Clarke,* which imposes an  "onerous obligation" to pay a fee of $7,500 per mobile

13  home space to directly finance relocation, no fee is imposed by the MHP  Ordinance. Indeed, the

14  owners are not forced to continue in the MHP business at all.  Matlock Dec. at 3, ¶6.  While they are

15  using the property in conformity with the MHP Zoning, the Owners continue a profitable use and can

16  increase their revenues if needed to address future operational costs.    The means selected by

17  Tumwater are not the type of oppressive fees at issue in *Guimont v. Clarke.*

18  **G.     THE MHP ORDINANCE DOES NOT VIOLATE EQUAL PROTECTION.**

19      **1.      MHP Zoning is Rationally Related to legitimate public purposes.**

20      In reviewing the plaintiffs' equal protection challenge, the Court must evaluate the facts

21  determined by the legislative body with substantial deference and not sit as a super-legislature.  It is

22  well settled that state and municipal legislative acts are presumed to be in harmony with the

23  Constitution. *Hodel v. Indiana,* 452 U.S. 314, 101 S.Ct. 2376 (1981); *Kawaoka v. City of Arroyo*

24  *Grande*, 17 F.3d 1227, 1233 (9th Cir.1994). It is the Plaintiffs' burden to "convince the court that the

25  legislative facts on which the classification is apparently based could not reasonably be conceived to

26  be true by the governmental decisionmaker.' " *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456,

464, 101 S.Ct. 715, 724 (1981).

**DEFENDANT CITY OF TUMWATER'S AMENDED
MOTION FOR SUMMARY JUDGMENT – 20**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW.JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

1    Plaintiffs' Complaint identifies two distinctions in the MHP Ordinance that it claims violate

2  Equal Protection.  Complaint, ¶¶35, 36.  First, plaintiffs take issue with distinguishing manufactured

3  housing communities from other types of property ownership.  Complaint,¶35.  Secondly, plaintiffs

4  take issue with the distinction between those properties included in the MHP Zoning District, and four

5  properties not so zoned.  Neither argument sustains an Equal Protection violation.

6    First, the distinction between manufactured housing communities and other types of ownership

7  is not irrational, but is based on the more affordable nature of manufactured housing.  All of the

8  Owners admitted that their mobile home parks are a source of affordable housing, as distinguished

9  from other housing types.  Andersen 13:9-15; Eichler 10:11-17; Schmicker 17:2-7.  Secondly, this

10  distinction is also consistent with classifications in the Growth Management Act, which directs local

11  governments to identify sufficient land for different types of housing, expressly including

12  manufactured housing.  RCW 36.70A.070.  The need to provide a mix of housing types including

13  manufactured housing is a legitimate public purpose.

14    The City responded to the trend that MHPs are increasingly threatened with the possibility of

15  closure and conversion to other uses.  Although Tumwater had not experienced recent closures, other

16  parks in Thurston County had recently been threatened with closure.    Ginther Dec., Ex. I at 3.

17  Logically, the City found existing MHPs are endangered neighborhoods for which GMA mandates

18  preservation measures be taken.  RCW 36.70A.020; 36.70A.070(2).

19    **2.    Selection of MHPs for zoning as a form of affordable housing was rational.**

20    **a.    Exclusion of three small properties was rational.**

21    The City Council's decision not to apply MHP zoning to three small properties that could

22  technically be considered mobile home parks was rational and well considered in light of the

23  comments before the Planning Commission and Council.  The basis is explicitly set forth in the

24  Ordinance.[23]  The Council's Findings establish that these other properties were not traditional parks,

25  [23] Ordinance O2008-009 at sets forth these factual findings as follows:
        WHEREAS, the properties located at 5012 Rural Road, 6715 Henderson Boulevard, and 6911
26      Henderson Boulevard have three or more mobile manufactured homes on the same property so they meet
        the definition of a mobile/manufactured home park.  However, these three exceptionally small "parks"
        are not the typical easily recognized traditional mobile/manufactured home park, the small size of these
        three "parks" does not foster a sense of community or neighborhood and the owners of these three small

**DEFENDANT CITY OF TUMWATER'S AMENDED
MOTION FOR SUMMARY JUDGMENT – 21**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

1   do not operate as mobile home parks, have no sense of community, insufficient density, and inclusion

2   of these small properties would not be ideal to advance GMA's anti-sprawl goals.[24]  It does not violate

3   Equal Protection to exclude properties too small to serve the Council's purposes.

4           **b.    The City's decision not to include the only existing MHP in a commercial area was rational.**

5   Again, the findings in the MHP Ordinance explain the basis for which properties it would be

6   applied to.[25]  The City recognized that Allimor was the only park zoned commercially, and transitional

7   because the surrounding properties are currently being used as commercial properties.[26]  Thus, the City

8   rationally concluded that MHPs are better suited for location in residential areas, not in transitional

9   commercial areas.  Ordinance O2008-009 at 3-4.   All the parks zoned in the MHP District were

10  previously zoned residential and are located within established neighborhoods.  *Id.,* at 2.  Exclusion

11  of Allimor, the only MHP in a commercial area  was rational and does not violate Equal Protection.

12

13

14  "parks" appear to own all of the dwellings located on the properties which contrasts sharply with the rest

15  of the more traditional mobile/manufactured home parks in Tumwater where the majority of dwellings are not owned by the land owner;  and

16  WHEREAS,  these three small "parks" are not recommended to be included in the new zone district

17  because they are more transitional in nature due to the smaller initial investment in the property when compared to larger more traditional mobile/manufactured home parks which often have paved roads and utility systems and community centers. In addition, the residential densities of these three small "parks"

18  are below the densities of the larger more traditional and easily recognized mobile/manufactured home parks in Tumwater and below the minimum densities of the zone districts where they are located, and

19  below the generally accepted urban density level for cities and urban growth areas. The low residential density of these three "parks" is not ideal for advancing the goals of preventing low density sprawling

20  development as outlined in the Growth Management Act and the Tumwater Comprehensive Plan, . . .

[24]  The actual density of the three "small" parks was reported to the Planning Commission (Ginther Dec., Exhibit J at 6-7)
21  as:

      a.    *6715 Henderson Boulevard 3 mobile homes/9.39 Acres = 0.319/acre
22    b.    6911 Henderson Boulevard 3 mobile homes /9.26 Acres = 0.324/acre
      c.    5012 Rural Road 3 mobile homes /1.87 Acres = 1.6/acre

23  [25]In deciding not to designate the fourth excluded property, Allimor Carriage Estates, Ordinance O2008-009, at 3, makes the following finding of fact:

24    WHEREAS the Allimor Carriage Estates mobile home park located at 5705 Littlerock Road is currently the only mobile manufactured home park within Tumwater that is zoned General Commercial the only park that is almost
25    completely surrounded by General Commercial zoning and the only park that abuts intensive commercial development in the form of commercial strip development and intensive large scale commercial retail including
26    Albertsons, Costco, and Fred Meyer;

[26]  Since 1997, commercial uses have grown up around Allimor, including Home Depot, Tyee Center, American Legion Hall Twin County Credit Union and Fred Meyer, which is directly across the street from Allimor.  Ginther Dec., Exhibit J, Little Rock Subarea Plan at 2, 14-15.

**DEFENDANT CITY OF TUMWATER'S AMENDED MOTION FOR SUMMARY JUDGMENT – 22**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

**H.    MHP ZONING IS NOT UNLAWFUL "SPOT ZONING".**

Spot zoning is zoning action by which a smaller area is singled out of a larger area or district and specially zoned for a use totally different from and inconsistent with the surrounding land and is not in accordance with the comprehensive plan. *Smith v. Skagit County*, 75 Wn.2d 715, 743, 453 P.2d 832 (1969). The main inquiry of the court is whether the zoning action bears a substantial relationship to the general welfare of the affected community. See *Parkridge v. Seattle*, 89 Wn.2d 454, 460, 573 P.2d 359 (1978). Only where the spot zone grants a discriminatory benefit to the owner to the detriment of the neighbors will the rezone be overturned. *Save Our Rural Environment (SORE) v. Snohomish County*, 99 Wn.2d 363, 368-369, 662 P.2d 816, 818 - 819 (1983).

**1.    MHP Zoning is Consistent with Comprehensive Plan**.

The City took great measures to ensure that the MHP zoning ordinance is consistent with the Comprehensive Plan.  Pursuant to the Growth Management Act, the City evaluated the suitability of the existing sites for continued MHP zoning.  The Planning Commission recommendation focused on the Goals of the Tumwater Housing Plan, an element of the Comprehensive Plan, as well as the goals and policies of the GMA itself.  Their recommendations were incorporated into the final Ordinance showing consistency with the Housing Plan.  See  Ord. O2008-009 at 2.[27]

**2.    MHP Zoning does not confer a discriminatory benefit on rezoned property.**

Plaintiffs have not identified any discriminatory benefit granted by the MHP ordinance.  It is difficult to comprehend that an ordinance which zones property for its existing use would ever be discriminatory against the property owner who voluntarily put his property to that use.  Yet this appears to be the plaintiffs' spot zoning claim.  The City is unaware of any case in Washington or the Ninth Circuit that has held a zoning ordinance that permits the existing use of property to continue to be invalidated as "spot zoning".

---

[27]    Plaintiffs are estopped from claiming that there is inconsistency with the Comprehensive Plan. *Miller v. County of Santa Cruz*, 39 F.3d 1030 (9th Cir.1994); *Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wn.2d 255, 264, 956 P.2d 312 (1998).  Plaintiffs challenged the MHP zoning as inconsistent with the Comprehensive Plan before the Western Washington Growth Management Hearings Board, which rejected their contentions.  Matlock Declaration, Exhibit A at 16, 22-28.  Therefore, they cannot show that any inconsistency with the Comprehensive Plan, as required by *Smith*, supra. The Board's decision was upheld by the Thurston County Superior Court on appeal.  See Myers Supplemental Decl., Ex. 1.  Plaintiffs appealed no further.

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511

**DEFENDANT CITY OF TUMWATER'S AMENDED**
**MOTION FOR SUMMARY JUDGMENT – 23**

1

2

      **3.**    **MHP use is not inconsistent with the surrounding zoning or detrimental to the surrounding community**.

3

4

The zoning surrounding the communities is consistent with the medium density residential use allowed under the MHP zoning.  Plaintiffs' appraiser testified that, in her opinion, none of the

5

6

Plaintiffs' three MHPs are inconsistent with the land uses in the surrounding communities.  Wilson, 55:15 - 56:5.  The Plaintiffs' spot zoning allegation fails due to the concession that the MHP zoning

7

is not inconsistent with the surrounding residential zoning.

8

9

Plaintiffs cannot show that the MHP zoning is detrimental to the surrounding community.  Two of the three Owners conceded that their parks are not detrimental to the surrounding community at this

10

time.  Schmicker at 16:10; Andersen at 13:5-8.  The third did not know whether his park was

11

detrimental to adjacent property values, which is primarily vacant land. Eichler 10:8-10. Absent proof

12

of that the existing MHP use is detrimental to the surrounding community, the spot zoning claim cannot be sustained. *SORE,* 99 Wn.2d at 368-369.

13

## V.  CONCLUSION

14

15

The City's ordinances that designate existing mobile home parks for MHP zoning are not an unconstitutional taking, do not violate due process or equal protection and are not illegal spot zoning.

16

17

They promote continued availability of manufactured housing.  Preservation and promotion of a socially desirable form of housing,  consistent with the GMA ,does not violate the Constitution and

18

should be sustained by the Court. The MHP Owners are not unreasonably burdened as they may

19

continue to operate their profitable existing use of property.  Plaintiffs' claims should be dismissed.

20

Dated this 4th day of March, 2011.

21

22

                        LAW, LYMAN, DANIEL,
                        KAMERRER & BOGDANOVICH, P.S.

23

                         */s/*    *Jeffrey S. Myers,*
                        Jeffrey S. Myers, WSBA #16390

24

                        LAW, LYMAN, DANIEL, KAMERRER
                        & BOGDANOVICH, P.S.

25

                        P.O. Box 11880
                        Olympia, WA 98508-1880

26

                        (360) 754-3480
                        Fax: (360) 357-3511
                        E-mail: jmyers@lldkb.com

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480   FAX: (360) 357-3511