1

2

3

4          UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
5                  AT TACOMA

6   LAUREL PARK COMMUNITY, LLC, a Washington          No.  C09-05312BHS
    limited liability company; TUMWATER ESTATES
7   INVESTORS, a California limited partnership;       PLAINTIFFS'
    VELKOMMEN MOBILE PARK, LLC, a Washington           SUPPLEMENTAL MOTION
8   limited liability company; and MANUFACTURED        FOR PARTIAL SUMMARY
    HOUSING COMMUNITIES OF WASHINGTON, a               JUDGMENT ON
9   Washington non-profit corporation,                 TAKINGS/DUE PROCESS
                                                        VIOLATIONS
10
                                      Plaintiffs,
11  v.                                                  (Oral Argument Requested)

12  CITY OF TUMWATER, a municipal corporation,

13                                    Defendant.

14  A.    INTRODUCTION

15        Plaintiffs Laurel Park Community, LLC, Tumwater Estates Investors, Velkommen

16  Mobile  Park,  LLC,  and  Manufactured  Housing  Communities  of  Washington

17  (collectively "the park owners") ask this Court to declare unconstitutional Ordinance

18  Nos. O2008-027 and O2008-009, which establish an exclusive manufactured home park zone

19  district ("District") within the City of Tumwater ("Tumwater").  The District restricts the use of

20  each impacted property to a single mobile home park, thus eliminating any underlying single-

21  family or multi-family residential use.  It is one-use zoning.  This partial summary judgment

22  motion is limited to the question of whether Tumwater's ordinances constitute a taking of the

23  park owners' property under federal and state constitutional law and whether the ordinances

24
25  violate substantive due process and equal protection principles.

Plaintiffs' Supplemental Motion for Partial Summary Judgment - 1          Talmadge/Fitzpatrick
C09-5312BHS                                                               18010 Southcenter Parkway
                                                                         Tukwila, Washington  98188-4630
451                                                                      (206) 574-6661  (206) 575-1397 Fax

B.    EVIDENCE RELIED UPON

The declarations of John Woodring, Walter Olsen, James Anderson, Robert Eichler, William Schmicker, Scott Missall, and the two Jeanne-Marie Wilson previously submitted to the Court in support of summary judgment, and the supplemental declarations of James Anderson, Robert Eichler, William Schmicker, and Scott Missal submitted herewith.

C.    STATEMENT OF FACTS

Laurel Park, Tumwater Estates, and Velkommen own manufactured housing communities in Tumwater subject to two ordinances Tumwater adopted in 2008 and enacted in 2009. Manufactured Housing Communities of Washington ("MHCW") is a state-wide nonprofit association representing the owners of more than 530 manufactured housing parks in Washington. Laurel Park, Tumwater Estates, and Velkommen are MHCW members. All four park owners actively participated in the numerous hearings Tumwater held to consider the creation of an exclusive District and vigorously objected to Tumwater's ordinances.

Tumwater is required to adopt a comprehensive plan in accordance with Washington's Growth Management Act, Chap. 36.70A RCW ("GMA"). As required by GMA, Tumwater's comprehensive plan includes a housing element that identifies sufficient land for housing, including government-assisted housing, housing for low-income families, manufactured housing, multi-family housing, group homes, and foster care facilities. Tumwater allegedly enacted its ordinances to preserve affordable housing, but it does so at the expense of the park owners.[1]

The topic of preserving manufactured housing in Tumwater through the use of an

---

[1] Numerous cities and counties are considering adopting similar ordinances relegating mobile home parks to mobile home park-only zones. For example, Pierce County considered and then rejected an exclusive District on constitutional grounds. Snohomish County adopted an ordinance nearly identical to Tumwater's that establishes a

Plaintiffs' Supplemental Motion for Partial Summary Judgment - 2
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

1  exclusive District first arose in 2007 during a City Council meeting.  BN 7-8.  The City Council

2  referred the issue to its General Government Committee.  BN 11.  Tumwater staff researched for

3  the Committee the prospect of creating a new zoning classification that would permit mobile

4  home parks as the only allowed use.  BN 13-16.  That research revealed that a successful

5  challenge to Tumwater's ordinances would likely result.  For example, Tumwater staff reported

6  significant legal concerns from the City Attorney, City staff, and the Municipal Research and

7  Services Center over an MHP-only district.[2]  BN 15.  As its Planning and Facilities Director

8  stated:

9

10              [MRSC's legal consultant] had reservations on any proposal to limit property
            to only one use [as] vulnerable to a taking challenge.  In particular because in

11          manufactured home communities because the number of manufactured homes
            in a given park could gradually decrease over time.  [sic]  Because a property

12          owner has the right to reasonable use of their property, to not allow
            compatible residential uses could be successfully challenged.  *City Attorney*

13          *Kirkpatrick was consulted as well.  Much like [the MRSC consultant],*
            *Attorney Kirkpatrick has reservations with this approach for the same*

14          *reasons.  The City Attorney views this idea as difficult to defend legally*
            *because it would severely restrict the property owner's ability to make use of*

15          *and dispose of the property.*

16          From a planning staff viewpoint, there are reservations as well.  To begin, the
            proposal may not be entirely consistent with the comprehensive plan . . . . *In*

17          *addition, if a zone was created allowing only manufactured home*
            *communities was [sic] applied to existing manufactured home communities, it*

18          *would certainly reduce property values and would be vigorously opposed by*
            *the majority of manufactured home park property owners.*  A protracted

19          planning process would be expected and possible legal challenges as well.

20

21  *Id.* (emphasis added).  Despite these unequivocal concerns and the advice of its legal counsel, the

22  Committee directed staff to continue exploring the creation of a District to preserve this form of

23

24  _____

25  mobile home park-exclusive district affecting 28 mobile home parks throughout the county.  Marysville and
    Lynnwood have adopted similar ordinances.

1   housing for the select group of tenants living in the affected mobile home parks, even though

2   those tenants have no ownership interest in the property.  BN 22.[3]

3       City staff eventually drafted a proposed ordinance to amend Tumwater's comprehensive

4   plan, Ordinance No. O2008-027.[4]  BN 28-60.  Among other things, the comprehensive plan

5   amendments reversed Tumwater's policy of allowing mobile home parks in areas also zoned for

6   medium to high density residential use and confined mobile home parks to a single-use zone.  *Id.*

7   Only six mobile home parks, including Laurel Park, Tumwater Estates, and Velkommen Park,

8   are located in the new District.[5]  BN 81, 95.  Three of the six targeted parks were originally

9   allowed as non-conforming uses within existing single-family and multi-family medium and

10  high density residential areas.  BN 79-80.  The other three parks were located in the only zone

11  within Tumwater where various other uses were permitted, including mobile home parks and

12  multi-family residential development.  BN 80.

13

14      City staff drafted a second ordinance to establish standards for the new District,

15  Ordinance No. O2008-009.[6]  BN 78-97.  The zoning code amendments implemented the

16

17      [2] Municipal Research and Services Center ("MRSC") is a legislatively-funded organization that provides
    advice to Washington cities and towns.

18
        [3] Throughout the review process, certain City Council members displayed open contempt for the park
19  owners and their representatives, taking amendments from tenants' representatives seriously while ignoring
    concerns raised by the park owners' representatives. Woodring decl. at 2-4.

20
        [4]  The amendments contained in Ordinance No. O2008-027 are collectively referred to as
21  "comprehensive plan amendments."

22      [5] As originally proposed, the District would have encompassed ten properties within Tumwater already
    occupied by existing mobile home parks. BN 66, 68, 70. City staff later exempted three mobile home parks from
23  the District because, among other reasons, those mobile home parks were "exceptionally small" and allegedly did
    not foster a sense of community or neighborhood. BN 73, 80-81. City staff exempted a fourth park because it was
24  zoned for commercial use and was completely surrounded by general commercial zoning making it a "transitory"
    property likely to be developed into a commercial use. BN 80-81.

25      [6]  The amendments contained in Ordinance No. O2008-09 are referred to collectively as "zoning code
    amendments."

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

comprehensive plan amendments by creating the new District and concomitantly down-zoning the targeted mobile home parks.[7]   As a result, the six affected mobile home parks lost their original residential zoning designations and the variety of different uses then available to them. BN 78-97.   Tumwater's zoning code amendments establish restricted uses for the affected properties and implement severe standards aimed at preventing the conversion of mobile home parks into any other use by permitting only:   mobile home parks; one single-family detached residence per existing single lot of record (most manufactured housing communities are a single large lot); parks; trails; open space areas; recreational facilities; support facilities; and child care facilities approved by three specific Tumwater agencies.   *Id.*   Apart from mobile home parks, single family housing, or child care facilities, the permitted uses allow no economic return at all. A trail is hardly a revenue generator.   A single home on the entire "lot" now occupied by numerous mobile homes will hardly produce an economically viable return on investment to a park owner.   A child care facility would require the park owner to raze all existing buildings in the park, uproot the concrete pads, build a structure to house the children, and to secure licensure.   This is not a realistic use of the property for a park owner.   Tumwater's ordinances force the park owners to keep their parks for mobile home tenants in perpetuity.

Similarly, the ordinances allow a limited number of other primarily public or institutional uses such as churches, cemeteries, and essential public facilities; however, those uses are possible *only* with a discretionary conditional use permit.   *Id.*   A park owner must request a discretionary "use exception or modification" for any of those enumerated uses.   BN 89.   Even

---

[7] The zoning code amendments are codified at Tumwater Municipal Code Chap. 18.49.

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661   (206) 575-1397 Fax

those uses are not economically beneficial.[8]  But the owner's burden of proof in such a challenge is extraordinarily high – the owner must convince the City Council that the District prevents "reasonable use" of the land and prohibits "economically viable" uses of the property.  BN 104. The owner must simultaneously submit a closure and relocation plan even though such a plan is not required under state law. *See* RCW 59.21.030.  These standards require the owner to prove a negative and essentially require that the owner first go out of business.  The City Council's decision to grant or deny the owner's exception or modification request is discretionary; however, this discretion is unlikely to be exercised in the park owners' favor given their historical treatment by local governments in Washington. *See* Woodring decl. at 2-3.  Park owner Robert Eichler testified that Tumwater denied a very simple request to allow improvements to his park, further demonstrating Tumwater's antipathy toward mobile home parks. Eichler decl. at 3.

The City Council was well aware that satisfying the required rezone conditions would be difficult.  During a June 13, 2008 committee meeting, council member Karen Valenzuela commented on the use exception requirements, stating: "[i]f the Council did adopt the ordinance and property owners request a rezone, it's fair to say it is likely the owner's chances for a rezone would be questionable." BN 112.  Council member Pete Kmet, who authored the use exception, stated during a February 17, 2009 City Council meeting that: "the onus is on the [MHP] owners to demonstrate they do not have reasonable use of the property under the MHP zoning or the uses authorized are not economically viable." BN 104.

---

[8] For example, the return on investment for a cemetery, leaving aside conversion costs like public health compliance or licensure, or for an adult family facility, leaving aside the cost of erecting buildings to house the residents, are hardly rewarding to the park owner.

Plaintiffs' Supplemental Motion for Partial Summary Judgment - 6
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

456

1   Following enactment of Tumwater's ordinances,[9] the park owners filed a petition for

2   review with the Western Washington Growth Management Hearings Board alleging various

3   violations of the GMA and provisions of the federal and state constitutions.[10]   Woodring decl. at

4   4-5; Missall decl. at 1-2; Missall suppl. decl. at 2.   The Board upheld the park owners' challenge

5   to Tumwater's compliance with GMA when reviewing and approving the ordinances.   They also

6   filed the present action with this Court.

7   D.   QUESTIONS PRESENTED

8   1.   Do Tumwater's ordinances, which create an exclusive District, constitute a taking

9

10   of private property without just compensation in violation of the United States and Washington

11   Constitutions?

12   2.   Even if the ordinances do not unconstitutionally take the park owners' property,

13   do they violate the park owners' substantive due process rights under the United States and

14   Washington Constitutions and require this Court to invalidate them because they place the

15   societal burden for providing affordable housing exclusively on the shoulders of the park

16   owners?

17   3.   Do the ordinances violate the park owners' rights to equal protection because they

18   amount to illegal spot zoning, requiring this Court to invalidate them?

19

20

21

22   [9] Tumwater's comprehensive plan and zoning code amendments became effective on March 23, 2009.

23   [10] On October 13, 2009, the Board found that Tumwater adopted the challenged ordinances without
complying with the process established in RCW 36.70A.370 "to assure that proposed regulatory or administrative
actions do not result in an unconstitutional taking of private property."  Missal decl. at 2.  The Board ordered
24   Tumwater to come into compliance with that statute within 90 days.  The Board later determined that Tumwater's
subsequent compliance process had cured the original noncompliance. Missall suppl. decl. at 2.  The Board did not
25   determine whether Tumwater's ordinances constitute a taking because it concluded it lacked the authority to
determine constitutional issues. Missall decl. at 2.

Plaintiffs' Supplemental Motion for Partial Summary Judgment - 7
C09-5312BHS

457

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

E.    LEGAL ANALYSIS[11]

The park owners allege numerous claims in their complaint, including federal and state due process violations, federal and state equal protection violations, regulatory takings, civil rights violations, and state inverse condemnation/eminent domain violations.  This motion is confined to the park owners' federal and state constitutional claims and does not address their statutory claims or their request for damages.  With this motion, the park owners ask the Court to decide whether Tumwater's ordinances constitute a taking in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Art. I, § 16 of the Washington Constitution and whether the ordinances violate the Due Process or Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and Art. I, §§ 3, 12 of the Washington Constitution.

    (1)    Tumwater's Ordinances Take the Park Owners' Property

        (a)    The ordinances violate the Fifth and the Fourteenth Amendments

The Takings Clause of the Fifth Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that private property shall not "be taken for public use, without just compensation." U.S. Const. Amend. V.[12]  As its text makes plain, this clause "does not prohibit the taking of private property, but instead places a condition on the exercise of that power." *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 314 (1987).  The clause prohibits "Government from

---

[11]  The standards for granting summary judgment under Fed. R. Civ. P. 56 are well-known to this Court. *See, e.g., Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (*citing Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

[12]  "Just compensation" requires that the property owner be put in the same position monetarily that he or she would have occupied had the property not been taken. *See, e.g., Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 473-74 (1973).

Plaintiffs' Supplemental Motion for Partial Summary Judgment - 8
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

1  forcing some people alone to bear public burdens which, in all fairness and justice, should be

2  borne by the public as a whole." *Penn. Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123

3  (1978) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).

4      Regulatory actions generally will be deemed *per se* takings for Fifth Amendment

5  purposes: (1) where the government requires the owner to suffer a permanent physical invasion,

6  *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982); or (2) where a regulation

7  completely deprives an owner of all economically beneficial use of the property, *Lucas v. South*

8  *Carolina Coastal Coun.*, 505 U.S. 1003, 1016 (1992).  *See Lingle v. Chevron U.S.A., Inc.*,

9  544 U.S. 528, 538 (2005).  In *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922), however,

10  the Supreme Court established a third category of regulatory action.  There, the Court recognized

11  that there may be instances when government actions do not encroach upon or occupy the

12  owner's property yet still affect and limit its use to such an extent that a taking occurs.  *Id.* at

13  415.  Thus, an onerous regulation that "goes too far" may also result in a taking because it is the

14  functional equivalent of a direct appropriation.  *Id.*  The third category of regulatory takings is

15  present here.

16      Although the United States Supreme Court has not precisely delineated a "set formula" to

17  determine whether a regulation goes too far, it identified several factors in *Penn Central* that

18  have particular significance.  *Penn Central*, 438 U.S. at 124.  Primary among those factors are

19  the economic impact of the regulation on the property owner and, particularly, the extent to

20  which the regulation has interfered with distinct investment-backed expectations.  *Id.*  In

21  addition, the character of the governmental action may be relevant in discerning whether a taking

22  has occurred.  *Id.*  The more frequently applied iteration of this last factor considers whether the

23  challenged regulation places a high burden on a few private property owners that should more

24

25

Plaintiffs' Supplemental Motion for Partial Summary Judgment - 9
C09-5312BHS

459

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

1    fairly be apportioned more broadly among the tax base. *Guggenheim v. City of Goleta*, ___ F.3d

2    ___ at *15 (9th Cir. 2010) (citing *Armstrong v. United States*, 364 U.S. 40, 49 (1960)). *See also,*

3    *Lingle*, 544 U.S. at 542-43 (discussing *Armstrong* with approval). The park owners here raise a

4    facial challenge under *Mahon/Penn Central* because they have been singled out to bear what is

5    more appropriately a societal burden.[13]

6        Under the economic impact factor of the *Penn Central* test, the park owners need only

7    demonstrate a loss of value that may be less than 100 percent, but high enough to have "go[ne]

8    too far." *Penn Central*, 438 U.S. at 124. As the park owners' expert, Jeanne-Marie Wilson,

9    observed, Tumwater's ordinances have affected a value transfer to the park owners' tenants. A

10   new mobile home tenant, anxious to acquire the right to rent a lot in perpetuity with market rents,

11   pays a transfer premium in the form of a higher home purchase price. While the value of the

12   capitalized rent is transferred from the park owners to the tenants in the typical rent control

13   context, in the exclusive District, the loss in value of the park owner's property from the

14   underlying zoning is transferred to the tenants. Here, Tumwater's ordinances result in a transfer

15   of value from the park owners to Tumwater. In effect, the value of the park owners' property is

16   artificially depressed by the ordinances. Tumwater receives the transfer of such value and, in

17   turn, provides it to the tenants of the six parks affected by the ordinances who receive that

18   increased value, given the limited likelihood the parks can ever be used for anything but mobile

---

[13] Unlike an as-applied challenge, a facial challenge alleges that the regulation is unconstitutional in the abstract: "no set of circumstances exists under which the [regulation] would be valid." *See United States v. Salerno*, 481 U.S. 739, 745 (1987). "In the takings context, the basis of a facial challenge is that the very enactment of the statute has reduced the value of the property or has effected a transfer of a property interest. This is a single harm, measurable and compensable when the statute is passed." *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993). *See also, Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 495 (1987) (citation omitted) ("'[T]he mere enactment' of the [regulation] constitutes a taking.'"). This Court must look only to the regulation's general scope and dominant features rather than to the effect of the application of the regulation in

Plaintiffs' Supplemental Motion for Partial Summary Judgment - 10
C09-5312BHS

460

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

1   home parks.

2       Support for this premise can be seen in the manufactured housing industry in

3   Washington.  Park owners with high-end parks offer long-term leases (20 to 30 years) with

4   controlled rent increases (usually CPI index).  They offer promises not to convert to other uses.

5   These parks fill up with six-figure homes that maintain or increase their values on resales.  This

6   wealth transfer from park owners to their tenants is a naked transfer distributing the resources to

7   one group rather than another solely on the ground that those favored have exercised the raw

8   political power to obtain what they want.

9       Under the second *Penn Central* factor - reasonable investor-backed expectations, the park

10  owners' expectations must be "reasonable . . . [and] must be more than a unilateral expectation

11  or an abstract need."  *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005-06 (1984)

12  (quotation omitted).  This factor limits takings claims to those who can "demonstrate that they

13  bought their property in reliance on a state of affairs that did not include the challenged

14  regulatory regime."  *Rose Acre Farms, Inc. v. United States*, 373 F.3d 1177, 1190 (Fed. Cir.

15  2004) (quotation omitted).  The Ninth Circuit's recent en banc decision in *Guggenheim*

16  illustrates this principle.

17      In *Guggenheim*, Santa Barbara County enacted and then amended a rent control

18  ordinance that the City of Goleta later adopted in its entirety.  ___ F.3d ___ at *1.  The purpose

19  of the ordinance was to prevent mobile home park owners from charging exorbitant rents to

20  exploit local housing shortages and from taking advantage of the fact that tenants could not

21  easily move their homes.  *Id.*  Eighteen years after the original rent control ordinance went into

22

23

24

25  specific circumstances.  *See, e.g., Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 773 (9th Cir. 2000).

Plaintiffs' Supplemental Motion for Partial Summary Judgment - 11
C09-5312BHS

461

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

effect, and ten years after the amendment, Guggenheim purchased a mobile home park subject to the ordinance. *Id.* He brought suit in federal court claiming the rent control ordinance was a taking. *Id.* The case went through a complex procedural course, which included a decision by the Ninth Circuit to reverse a summary judgment order in favor of the City of Goleta. *Guggenheim v. City of Goleta*, 582 F.3d 996 (9th Cir. 2009). The Court subsequently agreed to rehear the case en banc. *Guggenheim*, ___ F.3d ___ at *1.

On rehearing, the Ninth Circuit concluded Guggenheim's investment-backed expectations were fatal to his claim because he purchased the park eighteen years *after* the challenged rent control ordinance had gone into effect. *Id.* at *5. Thus, the price he paid for the park doubtless already reflected the rent control burden he would have to suffer. *Id.* Guggenheim thus could have no "distinct investment-backed expectations" that he would obtain illegal amounts of rent. *Id.* As the Court stated: "Speculative possibilities of windfalls do not amount to 'distinct investment-backed expectations,' unless they are shown to be probable enough materially to affect the price." *Id.* Guggenheim bought a park burdened by rent control and had no reason to believe he would get something much more valuable.

By contrast here, the park owners bought their respective properties *long before* Tumwater's ordinances took effect and in reliance on the stability of government policy, which allowed multi-family development. Schmicker decl. at 1-2; Eichler decl. at 1-2; Anderson decl. at 1-2. They did not expect that Tumwater would seriously restrict manufactured home park zoning or require them to continue using their properties as mobile home parks in perpetuity. Schmicker suppl. decl. at 2; Eichler suppl. decl. at 2; Anderson suppl. decl. at 3. Instead, they anticipated using their properties as mobile home parks as long as that use was viable and then expected to be able to turn to other economically productive uses at their discretion. *Id.* This

Plaintiffs' Supplemental Motion for Partial Summary Judgment - 12
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661   (206) 575-1397 Fax

462

1   expectation is reasonable.  Missall suppl. decl. at 2.  As the Ninth Circuit noted in *Guggenheim*:

2   "The idea, after all, of the constitutional protection we enjoy in the security of our property

3   against confiscation is to protect the property we have[.]" ___ F.3d ___ at *6.

4   The park owners' investment-backed expectations are also consistent with the

5   development occurring around their parks.  Numerous properties surrounding the parks have

6   been developed with commercial or residential uses.  The park owners' expectations are no

7   different than those actually realized by the surrounding property owners under Tumwater's land

8   use plan and zoning code.  In fact, prior to the passage of the challenged ordinances, some

9   mobile home parks were designated as non-confirming uses under Tumwater's existing land use

10  code.  As purchasers and then owners of non-confirming properties, it would have been

11  reasonable for the park owners to expect to eliminate the non-confirming use and to develop

12  their property consistent with the business zones in which they were located.  Tumwater's

13  ordinances instantly turned what was, in some circumstances, a previously non-conforming land

14  use into a *mandatory* land use that must remain in perpetual operation.  Leaving the ordinances

15  in place impairs the park owners' investment-backed expectations and destroys the value they

16  thought they were buying when they purchased their parks.  By enacting the challenged

17  ordinances, Tumwater has interfered, and will continue to interfere, with the park owners'

18  reasonable investment-backed expectations.

19  Under the third *Penn Central* factor - character of the government action, Tumwater has

20  placed the economic burden of providing affordable housing squarely on the shoulders of the

21  park owners.  The challenged ordinances apply to only the six targeted park owners; *Tumwater*

22  *did not impose the District on any other private property owners or on the other four mobile*

23  *home parks within the city*.  Instead, Tumwater singled out the park owners and imposed solely

Plaintiffs' Supplemental Motion for Partial Summary Judgment - 13
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

463

on them a burden to provide affordable housing.  This runs afoul of one of the primary policy concerns animating takings jurisprudence, namely the notion that the Takings Clause "bar[s] Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).  Tumwater's ordinances require that GMA's social policy of affordable housing fall squarely on the shoulders of the park owners.  Tumwater "supports" affordable housing without paying for it.  Owners and developers of other forms of housing, such as apartments and manufactured housing with underlying commercial zoning, which were exempted in Tumwater (who might otherwise be forced to provide subsidized housing), and Tumwater taxpayers are able to advance the cause of affordable housing at the expense of the park owners.  Those other property owners bear no similar obligation to that of the park owners here.  Nor does Tumwater tax its citizens to bear the true cost of affordable housing.  Just as the property owners in *Guimont v. Clarke*, 121 Wn.2d 586, 854 P.2d 1 (1993), experienced a taking because they were required to bear a societal burden disproportionately, so too do the park owners in Tumwater. Unlike the City of Goleta, Tumwater unfairly adjusted the benefits and burdens of economic life, rather than leaving them as they had been for many years. *Cf. Guggenheim*, ___ F.3d ___ at *5, 6.  Whatever the rationale for Tumwater's ordinances, it is clear the park owners are being asked to shoulder more than their share of the societal burden of providing affordable housing. Singling them out in this manner "is the kind of expense-shifting to a few persons that amounts to a taking." *Cienega Gardens v. United States,* 331 F.3d 1319, 1338-39 (Fed. Cir. 2003). Tumwater has numerous alternatives for providing affordable housing such as tax incentives, providing public housing, or buying mobile home parks.  These alternatives eliminate the need to place the societal burden of providing such housing on such a limited group of property owners.

Plaintiffs' Supplemental Motion for Partial Summary Judgment - 14
C09-5312BHS

464

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661   (206) 575-1397 Fax

Weighing all of the *Penn Central* factors together, Tumwater's ordinances have caused substantial economic hardship to the park owners and interfered with their investment-backed expectations. The ordinances single them out and force them to bear a burden that should fairly be borne by society as a whole. Tumwater's ordinances "go too far" and amount to a regulatory taking under the Fifth and Fourteenth Amendments; thus, just compensation must be paid.

      (b)     The ordinances violate Article I, § 16 of the Washington Constitution

The Washington State Constitution, like the Fifth Amendment, prohibits the government from taking property from a private owner without paying just compensation. Washington's provision is even more protective of property rights in prohibiting the taking or damaging of private property: "[n]o private property shall be taken or damaged for public or private use without just compensation having been first made[.]" Thus, article I, § 16 goes farther than the Fifth Amendment by foreclosing the taking of private property and bestowing it upon another private person or entity. In effect, Tumwater's ordinances take the park owners' property for the benefit of their tenants. *Manufactured Housing Cmtys. of Washington v. State*, 142 Wn.2d 347, 356-61, 13 P.3d 183 (2000) (noting "private use" under art. I, § 16 is defined more literally than under the Fifth Amendment and Washington's interpretation of "public use" is more restrictive). Moreover, the Washington Supreme Court held that the remedy for an art. I, § 16 taking is not just compensation, but invalidation of the offending enactment. *Id.* at 362, 374.

In *Manufactured Housing*, MHCW challenged a statutory first-refusal right of qualified tenants to buy the park where they lived when the park's owner decided to sell it. *Id.* at 351-52. The *Manufactured Housing* court concluded a right of first refusal constituted a fundamental property interest because it was "part and parcel" of the power to dispose of property. *Id.* at 366. The Washington Supreme Court held art. I, § 16 afforded greater protection than the Fifth

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

Amendment because it established a *complete restriction* against taking private property for private use. *Id.* at 362. The Court also noted that even if the taken property was put to a use that arguably had *some* public benefit, that taking would still violate art. I, § 16 if the regulation's "design and its effect provide a beneficial use for private individuals only." *Id.* The Court rejected the State's argument that preserving mobile home parks was a public use because such preservation was solely for the benefit of the tenants rather than the general public. *Id.* at 371-73.

Here, Tumwater's ordinances deprive the park owners of the right to dispose of their property as they choose and confer control of that right upon the tenants. This is exactly what transpired in the *MHCW* case when the Legislature conferred the right of first refusal on tenants by statute. The crux of *Manufactured Housing* is that an unconstitutional taking occurs under art. I, § 16 if the government takes *any* stick from the bundle of sticks representing a valuable property right and bestows it upon another private person.

Article I, § 16 is also protective of property owners' interests in their property. *Guimont* and *Presbytery of Seattle v. King Cy.*, 114 Wn.2d 320, 787 P.2d 907, *cert. denied,* 498 U.S. 911 (1990), provide the analytic framework to determine whether a regulatory taking has occurred under Washington law.[14] A court must begin by asking whether the regulation infringes on a fundamental attribute of ownership, specifically the rights to possess, exclude others, dispose of, and make some economically viable use of, the property. 121 Wn.2d at 600-01. If the property owner proves the regulation has destroyed one of the sticks from the bundle of sticks

---

[14] *Presbytery* was one of the seminal decisions in Washington addressing regulatory takings. It was issued shortly before the United States Supreme Court issued *Lucas,* and was inconsistent with that decision. *Guimont* resolved the *Presbytery/Lucas* inconsistency by reordering the first two steps of the *Presbytery* threshold test. *Guimont,* 121 Wn.2d at 600-01.

Plaintiffs' Supplemental Motion for Partial Summary Judgment - 16
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

representing a fundamental property right, then the owner need not proceed with the remainder of the analysis. *Id.* at 601. But if the regulation fails to implicate a fundamental attribute of ownership, the court proceeds to the next step, which is to analyze whether the regulation goes beyond preventing a public harm to producing a public benefit. *Id.* If the purpose of the regulation is to produce a benefit, the court then balances the legitimacy of the State's interest with the adverse economic impact on the owner. *Id.*

Here, Tumwater has damaged or destroyed the park owners' fundamental right to freely dispose of their properties as they see fit. It has also infringed on their fundamental right to economically use their properties by significantly restricting redevelopment. Restricting the property's use to the existing use is not a public use because it places the burden of providing affordable housing solely on the park owners rather than on society as a whole. Instead, it is a private benefit that fails to satisfy the overarching requirement that the benefit of local government zoning is "to be received by the general public." *Conger v. Pierce County*, 116 Wash. 27, 36, 198 P. 377 (1921). By infringing on the park owners' fundamental rights of ownership, Tumwater has destroyed the value of the property and rendered the park owners' ownership rights barren. *See Ackerman v. Port of Seattle*, 55 Wn.2d 400, 409, 348 P.2d 664 (1960), *overruled on other grounds by Highline School Dist. No. 401 v. Port of Seattle*, 87 Wn.2d 6, 548 P.2d 1085 (1976) (citations omitted).

Tumwater's intent here, to "preserve and protect manufactured home communities from the pressure of development and conversion to another land use," is strikingly similar to the legislative statement invalidated in *Manufactured Housing*. Tumwater's ordinances do exactly what the Washington Supreme Court concluded other statutes and ordinances cannot do – place the societal burden of providing affordable housing exclusively on the shoulders of the park

Plaintiffs' Supplemental Motion for Partial Summary Judgment - 17
C09-5312BHS

467

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

1   owners.   Tumwater's District presents an even clearer case of an unconstitutional taking for

2   private use than the taking that occurred in *Manufactured Housing*.   Accordingly, Tumwater's

3   ordinances amount to an unconstitutional taking under art. I, § 16 and must be invalidated.

4         (2)    <u>Tumwater's Ordinances Violate the Park Owners' Right to Due Process</u>

5        Even if a regulation is not susceptible to a takings challenge, it is subject to substantive

6   due process scrutiny.   *See Lingle*, 544 U.S. at 532.   *See also, Action Apart. Ass'n, Inc. v. Santa*

7   *Monica Rent Control Bd.*, 509 F.3d 1020, 1024 (9th Cir. 2007) (recognizing substantive due

8   process can be an appropriate vehicle to challenge the rationality of land use regulations).   Both

9   the federal and the state Constitutions provide due process protections through the Fourteenth

10   Amendment and Article I, § 3, respectively.[15]   While the remedy for a taking under the Fifth

11   Amendment is compensation, the remedy for a substantive due process violation is invalidation

12   of the regulation.   *See, e.g., Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of*

13   *Johnson*, 473 U.S. 172, 197 (1985); *Pande Cameron & Co. of Seattle, Inc. v. Central Puget*

14   *Sound Reg'l Transit Auth.*, 610 F.Supp.2d 1288 (W.D. Wash., 2009) (citing *Presbytery*, 114

15   Wn.2d at 332).

16        Under substantive due process, certain types of decisions are beyond the power of

17   government to make.   To establish a violation of substantive due process, a plaintiff must prove a

---

[15]   The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. Amend. XIV, § I. Article I, § 3 of the Washington Constitution similarly provides: "[n]o person shall be deprived of life, liberty, or property without due process of law." The Washington Supreme Court has determined that the substantive due process protection provided in art. I, § 3 is no broader than that provided in the parallel federal provision. *See, e.g., State v. Manussier*, 129 Wn.2d 652, 921 P.2d 473, 486 (1996).

While the federal and state constitutional protections are the same, Washington courts utilize a far more liberal due process test to analyze property rights cases than the federal courts. *See Hayes v. City of Seattle*, 131 Wn.2d 706, 723, 934 P.2d 1179 (1997) (Madsen, J., concurring in dissent) (noting the federal court approach toward substantive due process claims in the context of land use appeals requires more than a showing of arbitrary or irrational action).

Plaintiffs' Supplemental Motion for Partial Summary Judgment - 18
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661   (206) 575-1397 Fax

1    challenged government action was "clearly arbitrary and unreasonable, having no substantial

2    relation to the public health, safety, morals, or general welfare." *Euclid v. Ambler Realty Co.*,

3    272 U.S. 365, 395 (1926); *Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988).[16]  Under the

4    classic substantive due process test, a land use regulation satisfies due process standards only if

5    it:  (1) is aimed at achieving a legitimate public purpose and (2) uses means that are reasonably

6    necessary to achieve that purpose.  *See, e.g., Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir.

7    2008) (noting the "irreducible minimum" of a substantive due process claim challenging a land

8    use action is a failure to advance any legitimate governmental purpose); *Goldblatt v. Town of*

9    *Hempstead, New York*, 369 U.S. 590, 594-95 (1962).  Washington courts have added a third

10   prong, which looks at whether the land use regulation is unduly oppressive on the landowner.

11   *See Star NW, Inc. v. City of Kenmore*, 280 Fed. Appx. 654 (9th Cir. 2008) (citing *Presbytery*,

12   114 Wn.2d at 331); *Garneau v. City of Seattle*, 147 F.3d 802, 821 (9th Cir. 1998) (Williams, J.,

13   concurring) (applying Washington's three-prong substantive due process test).  *See also,*

14   *Guimont*, 121 Wn.2d 609 n.10.  The third inquiry will usually be the difficult and determinative

15   one.  *Presbytery*, 114 Wn.2d at 331.  But if an ordinance fails to satisfy any one of these three

16   prongs, it violates due process and is invalid.  *Robinson v. City of Seattle*, 119 Wn.2d 34, 55, 830

17   P.2d 318, *cert. denied, City of Seattle v. Robinson*, 506 U.S. 1028 (1992).

18        While Tumwater's ordinances are arguably aimed at achieving the affordable housing

19   goal of GMA, the means used to achieve that purpose are improper, bearing no rational

20   relationship to that purpose.  Tumwater's new District severely restricts the range of uses by park

---

[16]  The inquiry into "arbitrariness" under the Fourteenth Amendment is distinct from and far narrower than the inquiry under state law.  *Hayes*, 131 Wn.2d at 739 (Talmadge, J., dissenting) (citations omitted).  As the *Hayes* court noted:  "[c]onclusory action taken without regard to the surrounding facts and circumstances is arbitrary and capricious."  *Id.* at 717-18.

Plaintiffs' Supplemental Motion for Partial Summary Judgment - 19
C09-5312BHS

469

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

owners of their property, coercing them to retain their mobile home parks in perpetuity, even if such housing becomes an outdated form of affordable housing.  Moreover, Tumwater has numerous alternatives for supporting affordable housing, such as tax incentives, providing housing, or buying mobile home parks, without burdening the park owners exclusively.

But even if the means Tumwater employed to achieve a legitimate public purpose are reasonably necessary, the ordinances remain unduly oppressive.[17]  Tumwater has intentionally placed the burden of preserving affordable housing on the shoulders of a few, much as Washington State attempted to do in *Guimont*.  *Guimont*, 121 Wn.2d at 611.  Like the owners in *Guimont*, the park owners here are not significantly more responsible for providing an adequate supply of affordable housing than is the rest of the population.  Requiring society as a whole to shoulder this responsibility represents a far less oppressive solution to Tumwater's affordable housing problem.  *See id.*  Moreover, Tumwater's ordinances will result in significant economic losses in terms of total value and percentage that will be borne exclusively by the park owners.  This is especially true in situations where the mobile home park is surrounded by valuable commercial land and the mobile home park may be less desirable for continuing residential use.  The District leaves the park owners with a single use resulting in a significant loss of economic value, especially compared to surrounding property owners.  The park owners are essentially

---

[17] Washington courts consider several nonexclusive factors to weigh the fairness of the burden being placed on a property owner when determining whether an ordinance is unduly oppressive.  *Guimont*, 121 Wn.2d at 610. Those factors include:

> On the public's side, the seriousness of the public problem, the extent to which the owner's land contributes to it, the degree to which the proposed regulation solves it and the feasibility of less oppressive solutions would all be relevant.  On the owner's side, the amount and percentage of value loss, the extent of remaining uses, past, present and future uses, temporary or permanent nature of the regulation, the extent to which the owner should have anticipated such regulation and how feasible it is for the owner to alter present or currently planned uses.

*Id.* at 610 (citations omitted).

Plaintiffs' Supplemental Motion for Partial Summary Judgment - 20
C09-5312BHS

470

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

1   unable to change their existing use, even if such use would be authorized under Tumwater's

2   zoning code.  Clearly, nothing in the ordinances indicates they are intended to be temporary.

3   There was no way for the park owners to have anticipated a mandatory District where the

4   conversion of mobile home parks to other residential or commercial uses is done based on

5   existing zoning and comprehensive plan provisions.  Finally, Tumwater did not give the park

6   owners any grace period to decide whether to continue using the properties as mobile home

7   parks before the ordinances went into effect.  The park owners had no opportunity to alter their

8   present or planned use before Tumwater's onerous obligations took effect.

9

10      Tumwater's ordinances are also illegal spot zoning because they single out the park

11   owners with more restrictive zoning and grant a discriminatory benefit to other similarly situated

12   mobile home park property owners.  Other similarly-situated mobile home park owners have not

13   been saddled with Tumwater's objectionable zoning.

14      A spot zoning claim can be variously characterized as a substantive due process violation,

15   a taking, or even an equal protection violation.  It does not neatly fit into one category.  *Buckles*

16   *v. King Cty.*, 191 F.3d 1127, 1137 (9th Cir. 1999) (citing *Save Our Rural Environment v.*

17   *Snohomish Cty.*, 99 Wn.2d 363, 286, 662 P.2d 816 (1983)).  Illegal spot zoning is arbitrary and

18   unreasonable zoning action by which a smaller area is singled out of a larger area and specially

19   zoned for a use classification totally different from and inconsistent with the classification of the

20   surrounding land.  *See, e.g., Kawaoka v. City of Arroyo Grande,* 17 F.3d 1227, 1236 (9th Cir.

21   1994); *Buckles,* 191 F.3d at 1137-38.  *See also, Smith v. Skagit Cty.,* 75 Wn.2d 715, 743, 453

22   P.2d 832, 848 (1969).

23

24      The reasons for invalidating a rezone as an illegal spot zone usually include one or more

25   of the following: (1) the rezone primarily serves a private interest . . . or (3) the rezone

Plaintiffs' Supplemental Motion for Partial Summary Judgment - 21
C09-5312BHS

471

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

constitutes arbitrary and capricious action. *See Save Our Rural Environment v. Snohomish Cy.*, 99 Wn.2d 363, 286, 662 P.2d 816 (1983) ("*SORE*"). When faced with a rezone challenge, the main inquiry is whether the zoning action bears a substantial relationship to the general welfare of the affected community. *SORE*, 99 Wn.2d at 286. Where a spot zoning action confers a discriminatory benefit to a group of owners to the detriment of neighbors without adequate public justification, the rezone will be overturned. *Bassani v. Board of County Comm'rs for Yakima County*, 70 Wn. App. 389, 396, 853 P.2d 945 (1993) (citations omitted).

Where Tumwater's ordinances are unduly oppressive to the park owners, they violate the park owners' due process rights and are invalid.

(4) Tumwater's Ordinances Violate the Park Owners' Rights To Equal Protection and Constitute Illegal Spot Zoning

Tumwater's ordinances should also be invalidated on equal protection grounds. Under the Equal Protection Clause of the Fourteenth Amendment, no state may deny to any person within its jurisdiction equal treatment; in other words, all persons similarly situated must be treated alike. *See City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).[18] In the land use context, an equal protection claim is generally based on a rational relationship test. *See, e.g., Gamble v. City of Escondido*, 104 F.3d 300, 307 (9th Cir. 1997); *Yakima County Deputy Sheriff's Ass'n v. Board of Comm'rs for Yakima*, 92 Wn.2d 831, 835-36, 601 P.2d 936 (1979).

---

[18] Article I, § 12 of the Washington Constitution states, in part: "No law shall be passed granting to any citizen, class of citizens, or corporation . . . privileges or immunities which upon the same terms shall not equally belong to all citizens[.]" The privileges and immunities clause, like the federal constitution's equal protection counterpart, requires that similarly situated persons receive like treatment; a privilege may not be granted to one class of persons that is denied to another. *See Manussier*, 129 Wn.2d at 672. For purposes of art. I, § 12, privileges are "those fundamental rights which belong to the citizens of the state by reason of citizenship." *State v. Vance*, 29 Wash. 435, 458, 70 P. 34 (1902). The courts have consistently construed the federal and state equal protection clauses identically. *State v. Smith*, 117 Wn.2d 263, 281, 814 P.2d 652 (1991) (citing cases).

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

Governments are entitled to make classifications in enacting legislation,[19] but such classifications, unless they involve a suspect class like race, must bear a rational relationship to the purpose of the legislation. *See City of Cleburne*, 473 U.S. at 436 (government action that burden individuals unequally but does not burden "suspect class" need only survive rational basis review). *See also, Munoz v. Sullivan*, 930 F.2d 1400, 1404 (9th Cir. 1991) (distinctions that government draws among individuals need only be rationally related to legitimate government purpose when a suspect classification is not used).

Tumwater's ordinances treat the park owners differently, whether the class is all housing providers or merely all park owners in Tumwater. Plainly, to achieve GMA's goal of affordable housing,[20] Tumwater has not required all housing providers – single family, apartments, condominia, etc. – to endure the same types of limitations on the future uses of their property. Tumwater has not required every homeowner in "affordable" housing areas zoned multi-family to limit their future right to build multi-family projects. The park owners are placed at competitive disadvantage to other property owners whose properties are not limited in their future uses.

Additionally, Tumwater *has not equally applied this new zone to all mobile home parks within the city because it has arbitrarily exempted four mobile home parks from the mandatory*

---

[19] *See Coalition for Economic Equity v. Wilson*, 122 F.3d 692, 708 (9th Cir. 1997) (noting states are free to make any constitutionally permissible legislative classification).

[20] While preserving affordable housing is arguably a valid public objective, that objective is more properly the burden of society rather than the park owners individually. *See Guimont*, 121 Wn.2d at 611. The park owners are being treated differently than other non-mobile home park property owners because those property owners are allowed to retain their existing residential or commercial zoning and are being granted an economic benefit not enjoyed by the park owners.

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661   (206) 575-1397 Fax

1   *District.*   Tumwater cannot pick and choose which mobile home parks will bear the sole

2   responsibility for satisfying Tumwater's affordable housing goals.

3          Finally, for the reasons previously enumerated, Tumwater's ordinances constitute spot

4   zoning which violates equal protection.

5          Tumwater's ordinances confer a discriminatory benefit to a group of property owners not

6   enjoyed by the park owners.  As such, they violate the park owners' rights to equal protection

7   and constitute illegal spot zoning that should be overturned.

8   F.      CONCLUSION

9          Tumwater has deprived the park owners of what they bargained for when they purchased

10  their mobile home parks.  The prices they paid for their parks did not, and could not reflect the

11  burden they will now have to suffer if the ordinances are not overturned.  Tumwater's ordinances

12  are unconstitutional takings and violate the park owners' rights to federal and state constitutional

13  rights.

14          DATED this 4th day of March, 2011.

15                                  Respectfully submitted,

16

17                                  *Philip A. Talmadge*

18                                  Philip A. Talmadge, WSBA #6973
                                    Thomas M. Fitzpatrick, WSBA #8894
19                                  Emmelyn Hart, WSBA #28820
                                    Talmadge/Fitzpatrick
20                                  18010 Southcenter Parkway
                                    Tukwila, WA  98188-4630
21                                  (206) 574-6661
                                    Email: phil@tal-fitzlaw.com
22                                         tom@tal-fitzlaw.com
                                           emmelyn@tal-fitzlaw.com
23

24

25

Plaintiffs' Supplemental Motion for Partial Summary Judgment - 24
C09-5312BHS

474

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661  (206) 575-1397 Fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Walter H. Olsen, Jr., WSBA #24462
Olsen Law Firm PLLC
604 West Meeker St., Ste. 101
Kent, WA  98032
(253) 813-8111
Email: walt@olsenlawfirm.com
Attorneys for Plaintiffs

Plaintiffs' Supplemental Motion for Partial Summary Judgment - 25
C09-5312BHS

475

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661   (206) 575-1397 Fax