# EXHIBIT I

000998

**TUMWATER CITY COUNCIL**
**MINUTES OF MEETING**
**February 17, 2009 Page 1**

APPROVED

**CONVENE:** 6:31 p.m.

**PRESENT:** Mayor Ralph Osgood, Councilmembers Neil McClanahan, Judith Hoefling, Ed Stanley, Karen Valenzuela, Pete Kmet, and Joan Cathey.

Excused: Councilmember Bruce Zeller.

Staff: City Administrator Doug Baker, Finance Director Jim Hendrickson, City Attorney Karen Kirkpatrick, Planning and Facilities Director Mike Matlock, Planning Manger Tim Smith, Associate Planner David Ginther, Fire Chief John Carpenter, Development Services Director Roger Gellenbeck, and Recording Secretary Cheri Lindgren.

**INTERGOVERNMENTAL REPORTS:**

**THURSTON COUNTY 911 CAPCOM:**
*(Joan Cathey)*

There was no report.

**THURSTON COUNTY ECONOMIC DEVELOPMENT COUNCIL:**
*(Joan Cathey)*

The organization elected new officers for 2009. Members will discuss Phase 2 of the strategic planning work on February 19, 2009.

**TUMWATER UNITED FOR FAMILIES (TUFF):**
*(Bruce Zeller)*

There was no report.

**LOTT ALLIANCE:**
*(Ed Stanley)*

The board amended the 2009-2025 Capital Improvements Plan (CIP) and 2009 Capital Budget and added the Mottman Road Interceptor Sewer Replacement Project at $2.5 million. Construction will commence when the weather is more certain. The Executive Director was authorized to enter into a contract for installation of high-efficiency toilets as part of LOTT's Water Conservation Program. Members approved the sale of a 1992 Ford Aerostar as surplus equipment.

**THURSTON COUNTY EMERGENCY MEDICAL SERVICES COUNCIL:**
*(Bruce Zeller)*

There was no report.

**ANIMAL SERVICES COMMISSION:**
*(Pete Kmet)*

There was no report.

000009

TUMWATER CITY COUNCIL
MINUTES OF MEETING
February 17, 2009 Page 4

advise the Home Consortium on homeless issues.

**CITY ADMINISTRATOR
REPORT:**

Administrator Baker reported on the Council's March worksession heavy agenda. The Council agreed to schedule a second worksession on March 30, 2009, in addition to the regularly scheduled March 16 worksession.

**APPROVAL OF THE AGENDA:**

**Councilmember Kmet moved, seconded by Councilmember Valenzuela, to approve the agenda as presented. Motion carried.**

**SPECIAL ITEMS:**

There were no special items.

**PUBLIC COMMENT:**

**Jerri McCoy, 4131 Frontier Drive SW, Olympia, Washington State Society Daughters of the American Colonists,** invited the Council and public to the dedication of a historical marker celebrating the 100-year anniversary of the Legislature amending the state's constitution to enable women to vote. The event will take place at noon on March 27, 2009 in front of the old Capitol Building at the corner of Washington and Legion Streets.

**Tim Brague** spoke on House Bill (HB) 2200 concerning voting and the Timberland Library Board of Trustees. He asked Councilmembers to contact the Chairman of the committee and request a hearing on the HB. The proposed bill was presented to the Legislature late. Mr. Brague reviewed the current voting method and the proposed simpler voting methodology based on establishing library subdistricts rather than county boundaries.

**CONSENT CALENDAR:**

a. Approval of Minutes: Council Worksession, January 26, 2009; Regular Meeting February 3, 2009
b. The City Council authorizes for payment Voucher/Check #113040 through #113715 in the amount of $1,113,501.40
c. Advisory Board Reappointment and Appointment
d. Southhill Sanitary Sewer Extension Agreement, Gravity Sewer
e. Triad; Schoth Road Sanitary Sewer Extension Agreement, Gravity Sewer
f. Tumwater Boulevard Interchange Environmental Assessment
g. Tumwater Boulevard I-5 Interchange Design Agreement

**MOTION:**

**Councilmember Stanley moved, seconded by Councilmember Valenzuela, to approve the consent calendar as presented. Motion carried.**

**PUBLIC HEARINGS:**

**2008 COMPREHENSIVE PLAN
AMENDMENTS (ORDINANCE**
000100

Planner Ginther referred to additional public comments not included in the agenda packet. He reviewed the most significant proposed

TUMWATER CITY COUNCIL
MINUTES OF MEETING
February 17, 2009 Page 5

**NO. O2008-027) AND MOBILE HOME PARK DEVELOPMENT REGULATIONS AND REZONE (ORDINANCE NO. O2008-009):**

changes to the proposed ordinances:

- Allow multi-family and condominium development on 20% of the net developable area of Mobile/Manufactured Home Parks (MHP). The density shall be 6-9 dwelling units per acre. The net density may be increased up to 14 dwelling units per acre provided 50% of the additional units are designated as affordable housing.
- A MHP owner can request a use exception if the park is not economically viable.

Alternatives available to the Council were reviewed and include:

A. Approve both the comprehensive plan amendments and the development regulations *with* the changes suggested by Councilmember Kmet, or only with the use exception.
B. Approve both the comprehensive plan amendments and the development regulations *without* the changes suggested by Councilmember Kmet.

Mayor Osgood opened the public hearing at 7:10 p.m.

**Rick Mehrer, 5324 Golden Eagle Way SW,** spoke against the suggested amendments, particularly the provision to allow redevelopment on 20% of the MHP property. Many of the MHPs already have infrastructure improvements. Many of the homes at Eagles Landing have attached two-car garages with an entrenched foundation. The cost to move and relocate his home ranges from $40,000 to $50,000. Even if residents were compensated, the issue is where to relocate. The proposed ordinance doesn't serve the interests of the people.

**Mark Smith, owner of Lakeside Mobile Home Park,** said the MHP zone is punitive. He said he's owned the Lakeside Mobile Home Park for 20 years and has no plans to redevelop the property, but doesn't want his hands tied. He quoted from the comprehensive plan, which states part, "...the intent of the plan to promote the designation of a sufficient supply of land for traditional mobile/manufactured parks and to recognize that modular/manufactured housing on single-family lots in a MHP is a viable form of housing construction." Mr. Smith agreed with the language. MHP owners should have some flexibility related to changes in construction methods. Modular/manufactured housing should be referenced throughout the ordinance. Manufactured housing is restricted to a HUD home, which does not give park owners much flexibility to provide affordable housing.

**Martin Durkin Jr., 330 SW 43rd Street, Renton, representing the owner of Laurel Park Estates,** thanked Councilmember Kmet for his

TUMWATER CITY COUNCIL
MINUTES OF MEETING
February 17, 2009 Page 6

efforts to work out a solution for both MHP owners and residents. He spoke on how housing and employment has been affected by the current economy, but doubts the trend to convert MHPs to other land uses will continue. The proposed ordinance does not provide the best solution. The ultimate answer is public ownership. The second solution is reduced property taxes, similar to the open space exemption.

**Betsy Murphy, 5243 Bald Eagle Lane SW**, said she's interested in protecting seniors and the investments they have made in their homes. She said she supports the original ordinance without the proposed amendments. Allowing redevelopment on a portion of a site could create displacement of residents. She said she is not aware of any MHPs accepting used homes of the size found in Eagle's Landing. She urged the Council to support the initial ordinance.

**Les Spickler, 2221 East Eagles Lane SW**, referred to the provision stating, "... minimize impacts to the existing residents of the mobile/manufactured home park." Another section reads, "Uses that are incompatible or inconsistent with the goal of protecting and preserving MHPs should not be allowed." There appears to b inconsistency with the two sections. He said he also spoke to two contractors on what it would cost to move his home to a new location, which is $60,000 for preparation and installation. Seniors then have the trauma of finding a place to live while the home is relocated. It takes a minimum of 30-90 days to set up a new home. Another issue is who will manage the relocation activity. Moving 24 homes from Eagles Landing to allow an owner to redevelop a portion of the land will cost $1.4 million.

In response to Mr. Spickler's comment that there might be inconsistencies in the ordinance, Councilmember Kmet said the overall goal is to preserve as many MHPs as possible.

The Council acknowledged Mr. Spickler's comments.

**Gary Ricketts, 930 Trosper Road SW**, distributed a handout. He spoke against the proposed amendments contained in section 18.56.350, *Multifamily dwellings and condominiums*. The changes, however well intended, are impractical. Paragraph 7 under B states in part that a relocation plan shall include a list of available vacant spaces within the MHP, and a list of nearby parks with available spaces. Out of six parks visited earlier in the day, there are four vacant spaces. If vacant spaces are also intended to mean homes for sale, there are 17 residences for sale. Paragraph 1 under C on page 65 discusses affordable housing, which means dwelling units that are offered for sale or rent at a rate that is affordable to individuals and

000102

families having incomes that are 80% or below the median county income. The Office of Financial Management (OFM) estimates the 2008 median household income is $59,885 with 80% reflecting $47,200. HUD estimates the 2008 HUD area median income is $66,300 with 80% reflecting $52,800. Annual income of homeowners in the six parks is not near the median income estimates provided by the two agencies. If park owners redevelop 20% and base the sale of units on median income, residents could not afford them. He urged the Council to support the original ordinance with the use exception provision.

**Jann Ricketts, 930 Trosper Road SW,** supported the original proposal. Tumwater Mobile Estates was developed in the 1960s and all utilities were constructed at that time. Repair and maintenance of the utilities is the responsibility of the park owner. Homeowners are not told that all upgrades and repairs are deductible for the owner. Park owners pay additional taxes when increased and homeowners receive a rent increase to cover the owner's additional costs. Park owners reap the rewards currently without redeveloping the property.

**Ishbel Dickens, Columbia Legal Services, 101 Yesler Way, Seattle,** urged the Council to adopt the proposal recommended by the Planning Commission along with the use exception amendment. The percentage idea, while it could be considered a potential creative solution, may have unintended consequences. The City cannot require MHP owners to provide senior or assisted living housing even if permitted to redevelop a percentage of their property. The way to ensure seniors are able to live in their homes as long as possible in the MHP communities is to zone the parks for that use.

**John Woodring, Attorney, Manufactured Housing Communities in Washington and representing a number of the park owners in Tumwater,** commended Councilmember Kmet on his work. He advised that neither he nor his constituents like either ordinance proposal, as the regulations diminish property values and tie park owner hands. Residents can offer similar testimony when an owner is attempts to demonstrate they do not have reasonable use of their property under the MHP zoning or the uses authorized are not economically viable at the property's location. It's doubtful an owner will ultimately be able to redevelop the park for another use, which is an issue not determined by the use exception. In most cases, jurisdictions address whether to adopt a mandatory MHP zone when notice of closing a community has been given to the residents. This is not the case in Tumwater. Tenants wanting to preserve their communities purchase the park. Adopting the ordinance will result in upset owners wanting to protect their property rights who will not be amenable when residents want to purchase the property.

TUMWATER CITY COUNCIL
MINUTES OF MEETING
February 17, 2009 Page 8

There was no further public testimony.   Mayor Osgood closed the
public hearing at 7:35 p.m.

Councilmember Stanley expressed interest in finalizing the ordinance.
He acknowledged Councilmember Kmet's efforts to resolve the
issues.    However, the initial ordinance recommended by the
Commission and worked on by the General Government Committee
(GGC) more clearly meets the needs of City's residents, affords
protection to both park owners and residents, and would not be
considered as a taking.

Planner Ginther responded to questions from the Council concerning
the alternatives and multi-story building use limitations.

Councilmember Kmet clarified that the original ordinance without the
20% redevelopment amendment allows a 40-foot height limit and a
range of density.   Existing parks with density capacity could be
redeveloped or replaced with different units and the density increased
to the limits allowed by the ordinance.   The amendment dealt with the
concept that rather than having individual mobile homes, there would
be an opportunity to provide condominiums or an apartment complex
on the front portion of the property.   He addressed his goal to strike a
compromise to address owner and park resident interests and to
preserve the majority of mobile homes within the parks.   Based on the
testimony, he said he's not inclined not to proceed with the 20%
amendment, but is concerned that there should be some flexibility.
However, there are other uses allowed in the MHP zone and
redevelopment is not completely banned.    Specific to the use
exception, the onus is on the owner to demonstrate they do not have
reasonable use of the property under the MHP zoning or the uses
authorized are not economically viable.   An owner has the ability to
appeal a decision rendered by the Council.   He said he'll support the
Commission's recommendation with the addition of the use exception
provision.

Councilmember Hoefling said an overarching concern is that the City
provides a range of affordable housing types.   MHPs are a mechanism
to achieve that goal.   There is even a greater need now for affordable
housing.   Another concern was to give park owners the opportunity to
upgrade MHPs, which is possible with the original ordinance and use
exception language.   It's an option she can support.

**MOTION:**

000104

**Councilmember Stanley moved, seconded by Councilmembe.
Valenzuela, to adopt Comprehensive Plan amendments,
Ordinance O2008-027 and development regulation changes,
Ordinance O2008-009 without the changes suggested by**

TUMWATER CITY COUNCIL
MINUTES OF MEETING
February 17, 2009 Page 9

Councilmember Kmet and include new section 18.49.070, Use Exception, striking item 4.

Councilmember McClanahan commended Councilmember Kmet for his hard work. He said he'll support the motion, but is concerned the ordinance will preclude assisted MHPs and assisted living options within those communities in general. He about the need communi8ty-wide to address housing issues.

Councilmember Cathey said listened to all testimony and appreciates the efforts by Councilmember Kmet and staff to develop a solution. She thanked the residents for attending meetings and remaining engaged in the process.

Councilmember Valenzuela said she'll support the motion. She said she discovered how park residents enjoy the cohesiveness of their communities and seek reassurance and security concerning the future of their MHP.

**MOTION:**                    **Motion carried unanimously.**

**COUNCIL CONSIDERATIONS:**

**INTERLOCAL COOPERATIVE AGREEMENT FOR FIRE DEPARTMENT VEHICLE REPAIR AND MAINTENANCE COSTS:**

Fire Chief Carpenter reported the City of Olympia operates a certified fire fleet services division and currently maintains all Medic One emergency vehicles. Tumwater's Fire Department (TFD) has a need for maintenance and service of fire apparatus by certified mechanics. The closest certified shop is located in Puyallup. Transferring the apparatus to the facility is time consuming and creates out-of-service gaps for longer periods of time. The interlocal agreement provides TFD with another option for repair work. It is not an exclusive agreement. If Olympia is unable to do the work, the TFD can continue to use existing vendors.

**MOTION:**                    **Councilmember McClanahan moved, seconded by Councilmember Hoefling, to authorize the Mayor to sign the Interlocal Agreement between the City of Olympia and City of Tumwater for Fire Department vehicle repair and maintenance services.**

Mayor Osgood expressed appreciation for the collaborative strategy to help reduce duplication of maintenance services on fire vehicles.

Councilmember Valenzuela asked whether the Public Safety Committee considered the proposal. Fire Chief Carpenter said the agreement was on the committee's meeting agenda. However, the committee did not meet because of no quorum

000105

# EXHIBIT J

000106

**TUMWATER GENERAL GOVERNMENT COMMITTEE**
**MINUTES OF MEETING**
**June 13, 2008 Page 1**

| | |
|---|---|
| **CONVENE:** | 1:01 p.m. |
| **PRESENT:** | Councilmembers Ed Stanley and Karen Valenzuela. |
| | Excused absence:  Chair Bruce Zeller. |
| | Staff Present:  City Administrator Doug Baker, Planning and Facilities Director Mike Matlock, Associate Planner David Ginther, and Recording Secretary Danielle Gardea. |
| **MANUFACTURED HOME PARK ZONING:** | Planner Ginther referred to summary revisions to the draft ordinance.  The changes are outlined in yellow.  The zone was changed and clubhouses and community centers were added to the list of permitted uses.  Staff clarified that subdividing properties is not allowed by changing the language to reflect that single family or manufactured homes are allowed only on an existing single lot of record.  Additionally, net density, which was at the low end, was moved to the normal range for mobile home parks.  Eagles Landing is approximately 7 dwelling units per acre.  The revision includes 6 to 9 dwelling units for net density.  The remaining ordinance was not changed to enable the committee to select the appropriate uses for the zone in addition to Manufactured Home Parks (MHP). |

Planner Ginther reported staff included Renton and Bothell's ordinances for information and comparison.  Staff was contacted at both jurisdictions.  Renton staff indicated the city has two out of its five parks within Mobile Home Park zoning.  The only residential use allowed is manufactured home.  However, they allow some other types of uses.  Bothell has six of its nine parks included within the zoning.  Manufactured homes are the only allowed use within the zoning district.

Planner Ginther reported he spoke with an attorney representing Friendly Village.  Friendly Village is a mobile home park located off SR-101.  Basically, there is an agreement with the owner of the park where park residents will support the owner's rezone request to rezone to General Commercial if the owner does not sell or redevelop the park for a minimum of three years and over the next 20 years, residents will have the first opportunity to purchase the park from the owner.

Councilmember Stanley inquired about the standard zoning for most manufactured parks within the state.  Planner Ginther said most zoning is equivalent to Single Family Medium Density.  Councilmember Stanley inquired as to the zoning for a condominium.  Planner Ginther said a typical condominium is zoned Multi-family Medium or Single Family Medium Density.  Condos are typically in the six to nine dwelling units per acre range.

Councilmember Stanley asked if the draft ordinance will preclude the development of a condominium.  One of the major concerns is redevelopment

000107

TUMWATER GENERAL GOVERNMENT COMMITTEE
MINUTES OF MEETING
June 13, 2008 Page 2

of land presently utilized as manufactured home park into a condominium complex. He noted however, that the property owner always has the right to request a rezone of property. It was noted that single family detached dwellings are included for existing single lots of record. Planner Ginther advised that he will check with Development Services concerning the questions surrounding condominium uses.

PUBLIC COMMENT:  **Ms. Ishbel Dickens, Columbia Legal Services,** commented that the provision in the highlighted section of the intent section is not a sentence.

Ms. Dickens said the agenda packet does not include a copy of the Olympia Mobile Home Park zoning district. She suggested it might be helpful for the committee to receive a copy. Planner Ginther advised that the ordinance was included in a previous packet. Members were provided with a copy of Olympia's ordinance.

**Mr. Ken Spencer, Manufactured Housing Communities of Washington,** said he is unsure whether Manufactured Home Park zoning within the cities of Renton and Bothell is mandatory. Ms. Dickens said she spoke with the City of Bothell staff. There are nine mobile home communities within the city and six are designated with a Mobile Home Park zoning overlay, which has been in place since the mid-1990s. The three parks without the overlay are planned unit developments, but are restricted to only manufactured housing. It's an overlay imposed by the city council. Park owners did not challenge the overlay at the time. There has been one request for a rezone since the overlay was effective, which was denied by the City Council. She indicated the staff report indicates the zoning is not mandatory, when the overlay is in fact mandatory.

Councilmember Valenzuela asked whether there is any language within the Renton and Bothell codes for first right of refusal to residents of parks should the park owner wish to sell the property. Ms. Dickens indicated there is no provision. She recommended against it because of case law that struck down the state's first right of refusal statute in 2000 because it was unconstitutional. There is an incentive in place and the agency worked with the park owners association during the last legislative session. HB 1621 went into effect on June 11, 2008, which is an incentive to community park owners who wish to sell the property to the homeowners association in return for exemption of the Real Estate Excise State (REET), which equates to approximately 1.78% of the purchase price as an incentive to negotiate with the homeowners association to purchase the property.

Discussion followed on other possible tax incentives that could be offered by local jurisdictions.

Mr. Spencer indicated that there are many properties that are being taxed for use other than as a manufactured housing community at a higher use because it is zoned for the potential use. Those owners are paying those higher taxes now.

If a municipality suddenly adopts a zoning overlay restricting the use to only manufactured homes, the organization would be interested in whether any of that tax would be refunded.

Councilmember Stanley suggested there could be some negotiations in the future and that the tax rate would reflect the allowed use. City Administrator Baker noted the assessed rate is determined by the County Assessor. Councilmember Stanley said there would be a valid cause anytime zoning changes affect the use of the property.

Ms. Dickens questioned whether existing MHP will be grandfathered in the ordinance. Planner Ginther said any existing park will be grandfathered. Section 18.48 is the development standards for manufactured home parks. Ms. Deakins said homeowners have concerns about the provision, as many of the existing homes do not meet the criteria listed in the ordinance. Many of the parks are senior parks and do not include children's play areas and it may be that individual homes consume more than 70% of the lot. Homeowners want to ensure they will not be impacted by the provision.

Mr. Spencer agreed grandfathering is a critical element.

Councilmember Valenzuela referred to the previous ordinance adopted on MHP which eliminated mobile homes as a permitted use. Essentially, if there is a mobile home within a mobile home park and it burns down, the ordinance prohibits replacement with a mobile home but requires a manufactured home. Planner Ginther reported there is an exception for parks where the spaces are too small for standard manufactured homes. However, the home must be built to modern standards. Mr. Spencer said manufactured homes began construction in 1976, which allows much lead way. Ms. Deakins added that a home could be 32 years old and still be considered a manufactured home. There are single and double-wide manufactured homes.

Ms. Dickens said the provisions on pages 5 through 7 would apply to individuals wanting to build a new manufactured housing community in the City. The criteria appear not to address any existing parks in the City.

Councilmember Stanley said he reviewed the voting precincts of the parks within the City. Approximately 20% of all Tumwater voters live in those communities. That is a significant part of the population. As homes become more expensive, many more people will be living in parks.

**Mr. George Long, Eagles Landing,** said he's lived in Tumwater for 13 years and is not aware of the City's total population. Councilmember Stanley replied that with the new annexation, Tumwater's population is approximately 16,000 people.

Councilmember Valenzuela asked whether under the proposed ordinance it's

**TUMWATER GENERAL GOVERNMENT COMMITTEE**
**MINUTES OF MEETING**
**June 13, 2008 Page 4**

still possible to designate a park as a senior park.   Planner Ginther said including a children's play area is included as a range of options, which is determined by Development Services in terms of the appropriateness of space and the facility.  It is possible to have a seniors only park.

Discussion ensued on the high cost of land and homes.

Councilmember Valenzuela said one resident she spoke with at Western Plaza on Trosper Road believes that without the availability of Western Plaza she would likely be a resident of a nursing home.  She said the ordinance meets her desires for the kind of housing options that the City wants to try and maintain within the community.

Councilmember Stanley said it's important to provide housing options.  However, the cost associated with living at a nursing home is not cost effective, particularly if the loss of such communities displaces hundreds or thousands of residents.

**Mr. Jim Anderson, Tumwater Mobile Estates,** suggested Tumwater should consider the issue of taking rights away from property owners.  Councilmember Stanley confirmed that when zoning changes occurs, there will be some changes in the rights of some to affect the rights of others.  However, owners can request a rezone at some point to a different usage.  Mr. Anderson said Tumwater also needs to step up to the plate.  If Tumwater is going to tie property owner hands, the City needs to consider that those owners have been providing affordable housing.  The owners have built parks, invested money, and have great tenants.  Owners are trying to keep rates downs to a minimum.  When owners raise rates by $20, homeowners are affected because $20 is a lot of money to many of the homeowners.  Mr. Anderson said that now that his park is annexed into Tumwater, the park will have to connect to utilities in the near future, at a cost of $500,000 to $600,000 in connection fees.  He asked why those fees couldn't be waived to make it more affordable as well as reducing the cost to the tenants.  One of the septic systems is failing and it will be necessary at some point to connect to the City.  Raising the rates will make it completely unaffordable to tenants to live in the park.  Approximately 80% of the tenants in his park will be unable to afford an extra $160.  He asked about the future of his park and the 39 families.  Many tenants will move creating vacancies.  Vacancies create problems and often cause the owner to sell the property.  He asked the City to consider those issues when making the rules as well as considering repercussions.  He asked the City to step up to the plate and waive connection fees and only assess the fees if the property owner sells the property.  That would be a good trade-off and an incentive instead of adopting an ordinance that eliminates some of his property rights.

Councilmember Stanley noted the connection fees are set by law; however at some point when the property becomes unusable the owner would have the right to request a rezone.  It happens quite frequently.

**TUMWATER GENERAL GOVERNMENT COMMITTEE**
**MINUTES OF MEETING**
**June 13, 2008 Page 5**

Mr. Spencer provided a copy of a letter from William D. Schmicker, General Partner, Tumwater Estates Investors. Mr. Schmicker's letter indicates that there is no intent to close Tumwater Mobile Estates. He suggests the City consider community parks when there are specific issues rather than adopting a Citywide overlay affecting all parks. Mr. Spencer said he's unaware of any communities that plan to close in Tumwater.

Ms. Dickens said she always assumes that the community is up for sale to the highest bidder at any time. While there may not be any communities for sale today, any owner could issue notice of intent to sell the property.

Mr. Spencer said the association disagrees with the contention by the City that there is no taking of property. The association believes it is a taking of property rights by having mandatory zoning. There are other court rulings that show it is a taking of property.

Councilmember Valenzuela referred to Mr. Schmicker's statement regarding the moratorium and indicated the City is not proposing a moratorium. Mr. Spencer said the City is proposing mandatory zoning, which may have confused Mr. Schmicker as Snohomish County has a moratorium for six months.

**Mr. Gary Ricketts** asked about the potential deposition of Tumwater Mobile Estates if one of the partners were to leave. The outcome could change at any time. Mr. Spencer said he can't guarantee any outcome for any business. The other problem of concern is that the property owners are providing affordable housing and have done so for many years. He asked why one set of particular property owners are required to carry more of the burden than other property owners. That's an unfair balance. There haven't been any similar actions against apartment owners. The association believes municipalities are laying the burden of affordable housing unfairly on the few property owners who have provided affordable housing in the past.

**Ms. Christina May, Commonwealth Property Management Services Company**, referred to previous references about rezoning options and noted that it's been her experience that rezoning is a complicated and difficult process. In this case, the ordinance would prohibit a rezone except in the case where there is no more use remaining in the current zone. Making a rezone as an option is really not a solution.

Discussion followed on the likelihood of the Council approving a rezone of a manufactured home park. Councilmember Stanley said the issue is a new issue for the City and that pursuant to *The Olympian's* editorial; the community is looking to Tumwater to develop a resolution for other communities to follow.

Councilmember Valenzuela acknowledged that the question is a fair question.

TUMWATER GENERAL GOVERNMENT COMMITTEE
MINUTES OF MEETING
June 13, 2008 Page 6

If the Council did adopt the ordinance and a property owner did request a rezone, it's fair to say that it's likely the owner's chances for rezone would be questionable. However, as a Councilmember, she said it would be depend on the situation, such as having a half-empty park or the owner incurring costs for connection fees. The Council would take those issues under consideration.

Discussion followed on the City's requirements for connecting to City services and different circumstances requiring connection.

**Mr. Dan Beedle** commented on the issue of affordability for people over age 55 who live on fixed incomes. Over the last several years, a number of families have moved out of the park because of rate increases. Many tenants have only an income of $1,000 a month or less. If affordable housing is to remain affordable, a cap on the rent or providing incentives to park owners should be considered. That could occur through the cities or state in the form of tax reduction or rolling back property tax to a previous level. The issue should be addressed at two levels to develop a solution.

Mr. Beedle questioned the provision pertaining to platting lots within a park. Planner Ginther said most parks are platted as one lot. If the property owner closes a park and wants to build, only one house can be built on the property.

Planner Ginther reviewed the definition of a manufactured home park.

Ms. Dickens recommended adding within the third "whereas" from the bottom of page 1 Ordinance No. O2008-009, "and senior" after "family" and before "housing." The committee agreed with the request.

Ms. Dickens suggested adding section 3 prior to section pertaining to Chapter 18.40 within the ordinance describing the zoning district. She offered to provide the language as well as some minor changes to language within the intent section of the ordinance.

**MOTION:**                   **Councilmember Valenzuela moved, seconded by Councilmember Stanley, to forward the draft ordinance with the suggested changes to the General Government Committee for review at its June 27, 2008 meeting. Motion carried.**

**ADJOURNMENT:**          **With there being no further business, Councilmember Stanley adjourned the meeting at 1:57 p.m.**

Prepared by Valerie Gow, Recording Secretary
Puget Sound Meeting Services

000112

# EXHIBIT K

000113

**TUMWATER GENERAL GOVERNMENT COMMITTEE**
**MINUTES OF MEETING**
**April 25, 2008 Page 1**

| | |
|---|---|
| **CONVENE:** | 11:31 a.m. |
| **PRESENT:** | Chair Bruce Zeller and Councilmembers Karen Valenzuela and Ed Stanley. |

Staff: City Administrator Doug Baker, Planning and Facilities Director Mike Matlock, Associate Planner David Ginther, City Attorney Karen Kirkpatrick, and Recording Secretary Danielle Gardea.

**MANUFACTURED HOME PARKS**

Chair Zeller reported the committee discussed the issue at its November meeting and agreed to conduct another meeting to receive public comments. At the January meeting, staff was asked to research options for preserving and protecting manufactured home parks and to explore the issue of a zoning classification allowing only manufactured home parks. The committee will discuss options and take all public comments under consideration. Another meeting will be held on additional items not discussed.

Planner Ginther presented an overview of a rezoning option and other options for the protection of manufactured home parks:

**Deed Restrictions** – Any owner of property can voluntarily place a deed restriction (covenant) on their own property. The deed restriction could specify the uses for the property. The process can be expedited immediately. No government entity is involved. The cost is likely less than a rezone.

**Comprehensive Plan** – Proposed changes encourage and recommend owners volunteer for Deed Restrictions for mobile home parks.

**Zoning Districts** – The zoning for Mobile Manufactured Home Parks in Tumwater is under the Multi-Family Medium Density zoning district. A new draft ordinance has been created for a new zoning district exclusively for mobile manufactured home parks.

**Housing Authority** – Several counties in Washington State have purchased mobile/manufactured home parks to preserve them. Thurston County Housing Authority indicated it's a possibility, but extensive study would need to be undertaken given the funding situation.

**Resident Purchase of the Park** – This is rare, but it is a possibility. A new law was passed in 2008 that exempts Real Estate Excise Tax if a park is sold to the residents.

Councilmember Stanley reported the 1995 Candlewood Manor purchase was not purchased by the residents, it was a community effort spearheaded by then Secretary of State Ralph Munro, who raised several

**TUMWATER GENERAL GOVERNMENT COMMITTEE**
**MINUTES OF MEETING**
April 25, 2008 Page 2

million dollars necessary to purchase the mobile home park from Canadian owners. Ownership was turned over to the residents.

Planner Ginther commented on the cost and time associated with a rezone. Currently, the cost for a rezone in Tumwater is approximately $2,000. The county's rezone process costs approximately $7,715. The county is considering increasing the cost of a rezone. The rezone process can occur once annually. The deadline for submitting a proposal for a rezone is the first week in December 2008. It could take until 2010 to complete the rezone.

Staff conducted public outreach by mailing letters to all mobile home parks, owners of mobile home parks, and anybody who submitted a letter since last September.

Planner Ginther outlined the committee's options:

A.  Conduct public outreach to residents and owners about the deed restriction/covenant option.
B.  Recommend amendments to the comprehensive plan that urge park owners to apply deed restrictions/covenants to their properties.
C.  Conduct public outreach to residents and owners about the rezone option.
D.  Recommend adoption of a "manufactured home park" zoning district ordinance to the City Council.
E.  Make no changes at this time.

**PUBLIC COMMENTS:**     Chair Zeller invited public comments.

**Richard McClure, Eagles Landing Park,** said he is a visitor and an observer of the meeting and supports owners of mobile homes.

**Phyllis Woodard, 2285 Eagles Landing,** commented that she moved here a year ago from Edmonds to be closer to her family and she loves her mobile home park. She said she didn't realize that it could be sold from under her. She said she's interested in living in the park for the remainder of her life.

**Rod Long, 5245 Golden Eagle Lane SW,** stated he is the past president of MOHA (Manufactured Home Owners Association), which is now AMHO (Association of Manufactured Home Owners). He said he fully supports either changing mobile home parks or providing sufficient notice so that mobile home owners can purchase the park from the owner.

**Beata Long, 5245 Golden Eagle Lane SW,** said she wants to stay in her home and doesn't want to lose her home. It would be almost impossible

TUMWATER GENERAL GOVERNMENT COMMITTEE
MINUTES OF MEETING
April 25, 2008 Page 3

for any of the residents to move. The residents would not have any money left for anything else. She asked the committee to support mobile home park residents.

**Gary Ricketts, 930 Trosper Road SW,** referred to a copy of a letter written by the Tumwater Mobile Estates Social Club members. The letter urges the City of Tumwater to take action to protect and preserve mobile or manufactured home parks in the City. Tumwater Estates is not just a mobile home park; it's a retirement community for 155 seniors. There are 115 homes in the park. Seventy percent of the homes are unmovable because of the age of the unit. They were built prior to 1975. The majority of the seniors in the park would be unable to afford the expense of relocating. Most parks now require the unit to be five years old or newer. If the park is sold, it would result in the residents being evicted so the property could be developed as multi-family housing. Many of the residents would have to abandon their homes and lose their investments. Some residents are receiving subsidized rent now, but many more would need subsidized rent or become homeless. He said he lived in Kent at a mobile home park when water meters were put in. There were some low-income ladies in the park who saved their bath water to flush their toilets. The current owner is currently involved in upgrading the park by converting from older singlewide mobiles to newer doublewide homes. Most of the residents maintain and upgrade their homes because they take pride in where they live.

**Jann Ricketts, 930 Trosper Road SW,** echoed similar comments as the previous speaker.

**Sarah Smith, Tumwater Mobile Estates,** concurred with what's been stated.

**Sally Graham, Tumwater Mobile Estates,** commented that when most of the residents retired, they thought they had adequately provided for themselves. With the rising cost of living they are in their final investments. Finances are very limited. Rentals would not be an option. Residents love the park and are proud of the homes they have built.

**Joanne Hackett, Eagles Landing,** agreed with Sally Graham's comments.

**Geraldine Brassfield, Eagles Landing,** agreed with the previous comments.

**Barbara Wendust, Eagles Landing,** agreed with previous comments.

**Dorothy Croll, Eagles Landing,** agreed with previous comments.

000116

**TUMWATER GENERAL GOVERNMENT COMMITTEE**
**MINUTES OF MEETING**
**April 25, 2008 Page 4**

**Verla Paine, Eagles Landing,** agreed with previous comments.

**Billie Johansen, Tumwater Mobile Estates,** said they have a wonderful mobile home park that is a retirement community with 155 residents. It would be a shame if they had to move.

**Ellen Kunkler, 930 Trosper Road # 118,** agreed with previous comments.

**Don Kauffman, 930 Trosper Road # 118,** agreed with the comments of Gary Ricketts, Sally Graham, and Billie Johansen.

**Sally Berlin, 930 Trosper Road # 60,** agreed with the comments of Sally Graham and Billie Johansen.

**Margie Treiber, 930 Trosper Road # 36B,** said she agrees with the previous comments because Tumwater Mobile Estates is the best, is a good community, and is a beautiful park. She asked the committee to save the park.

**Betty Schneider, 2217 E Gray Sea Eagle Lane,** commented that she moved to the park when it was first established 14 years ago. She mentioned that her home is 14 years old and no other park will allow them to move in. She asked where they will go. She indicated they moved into town to be close to services and doctors. She said she and her husband will not always have the option of driving. She questioned where they would go if another park will not take their unit and they end up having to move back out into the country creating another 30-mile roundtrip drive when they would be unable to drive. She said there are a percentage of people who would be in the same circumstance that she faces. She asked for the committee's support.

**Zane Crosby, 2272 Gray Sea Eagle Lane,** said he agrees with the comments by previous speakers.

**John Schneider, 2217 E. Gray Sea Eagle Lane,** said he concurs with the comments by his wife, Betty Schneider.

**Al Alverson, 930 Trosper Road SW. #48,** said he concurs with the comments from previous speakers.

**Betty Dale, 3244 66th Avenue SW,** said she agrees with the comments from all speakers.

**Deloris Hawthorne, 930 Trosper Road #24,** said she agrees with the comments from previous speakers.

**Lorraine McKinley, 930 Trosper Road # 17,** said she also agrees with all the previous speakers.

**John Woodring, Attorney, Manufactured Housing Communities of Washington, 2120 State Ave, Suite 201, Olympia WA. 98506,** reported written statements have been submitted as well as a legal brief. He said the association he represents has 525 manufactured housing communities. The association represents approximately one-third of the manufactured housing parks in the State of Washington totaling approximately 35,000 lots. He said he also represents several communities as an attorney in Tumwater and has been representing his clients since 1981. The first issue is the risk of communities in Tumwater converting to other uses. He said he knows of no mobile home park communities that are at risk of converting to other uses. The only community in Tumwater that could revert to another type of use is Allimor Estates, which is located within a Commercial zoning district. He suggested the committee should not attempt to fix something that isn't broken. Where there has been success is where park owners are not averse to selling mobile home parks to tenants when they are the willing seller. Mr. Woodring said the association supported and promoted legislation and efforts to provide for those circumstances. Another aspect of legislation requires park owners to notify tenants of the owner's and others of the intent to sell the property. Park owners are encouraged to negotiate with tenants to purchase the park community. The association believes that is the way communities will be sold to tenants. Candlewood is an example of a voluntary seller and voluntary buyer situation. It would be unwise to restrict zoning because of the legal issues. It is best to pursue positive avenues. Mr. Woodring reported that a park owner denying the entry or the requirement to remove a mobile home based upon age is prohibited by the Mobile Home Homeowner Tenant Act. One bill successfully passed during the last legislative session involves local governments denying the placement of homes within the community based on age or dimension. An agreement was reached with the Association of Washington Cities (AWC) to draft legislation denying such prohibition.

**Suzanne Cosmo, 3244 66th Avenue SW,** commented that she and her husband moved into their house eight years ago. She said when her husband retires they want to move and live on their children's property. That will not be a possibility unless they are able to sell their mobile home. Instead of passing the three farms they used to drive by they now see three huge housing communities. She said she would like to sell their home eventually. All the residents need the community to shop and frequent services. However, residents also contribute to the community. Displacing the large number of retirees living in Tumwater without any protection will make the community much less of a viable community.

**Lorraine Burt, 3244 66th Avenue SW,** said she concurs with all the

TUMWATER GENERAL GOVERNMENT COMMITTEE
MINUTES OF MEETING
April 25, 2008 Page 6

previous speakers and hopes to see good results from the committee.

**Betsy Murphy, 5243 Bald Eagle Lane SW,** thanked the committee for listening to her at the last meeting in August to protect the seniors and their housing. She said she agrees with all the speakers. She asked the committee to pursue the efforts and knows as a senior, what it's like to live on a fixed income. The majority of the residents are not able to go out and seek employment or are able to pay $50,000 to $100,000 for the lot their mobile home sits on. She asked the committee to help protect seniors because without them people wouldn't be here today.

**Bill Mather, 5262 Bald Eagle Lane SW,** said he concurs with the previous speakers

**Kathleen Johnson, 5128 Bald Eagle Lane SW,** said she concurs with Ms. Murphy and the previous speakers.

**Les Spickren, 2221 E. Eagle Lane SW,** reported he has lived in Eagles Landing for five years. The membership of the community as of April 1, 2008 is 108 residents. The community is incorporated with the state and the purpose was to be prepared should residents have the opportunity to buy. He said the organization has met with a banker and has a verbal commitment for financing, but that was before the downturn in the mortgage market. Additionally, there may not be enough interest by residents to purchase the land, but that the organization would like the opportunity to purchase the land. He said it is virtually impractical for anybody to relocate their mobile home either financially or because of logistics in terms of acquisition of land and the extreme cost of moving the unit. He thanked the committee for providing the opportunity to speak and hopes that it will be possible to work together to arrive at a compatible solution.

**Nancy Partlow, 1841 Trosper Road SW #13,** reported the covenant option does not protect residents. Rezoning in the county would not be beneficial because many residents are unable to drive into town. She noted mobile home parks are zoned for multiple uses in Tumwater and there are risks for those properties converting to townhouses or condos. She said she was glad to hear that a bill was passed that when a mobile home park is sold that the residents of the mobile home park must be notified. She said she would like to know the bill number of the legislation as her mobile home park was sold several months ago and residents were not notified.

**John Borso, 2273 W Eagle Lane SW,** said he concurs with the comments from previous speakers.

000119

**Herman Porter, 2212 E Gray Sea Eagle Lane,** said he agrees with the

**TUMWATER GENERAL GOVERNMENT COMMITTEE**
**MINUTES OF MEETING**
**April 25, 2008 Page 7**

comments by the previous speakers who said there is a problem and disagrees with the speaker that said there is no problem. The speakers are telling the committee that it doesn't work. He asked the committee to please fix it.

**Jo Porter, 2212 E Gray Sea Eagle Lane,** said she concurs with previous comments.

**Alice Taber, 930 Trosper Road,** agreed with previous comments.

**Albert Bottomley, 930 Trosper Road,** agreed with all comments that have been conveyed.

**Ishbel Dickens, Attorney, Columbia Legal Services,** reported she has been an advocate for mobile home owners for 20 years. Mobile home owners are an extremely vulnerable population who owns the home but not the land, which leaves them susceptible to bad practices and parks being sold from under them with only 12 months notice to move their home, which likely can't be moved or there are no other available spaces. While there is a relocation assistance fund, that fund is currently empty and it takes approximately 15 months to be reimbursed for moving. Additionally, not all costs are reimbursed. The staff report is incorrect in stating that the state pays for the relocation. Homeowners pay into the relocation assistance fund when they purchase a home in the community.

Snohomish County did have a voluntary opportunity that if the landlord chose to maintain a manufactured housing community for five years, the owner would receive a break on property tax. However, there have been no takers in the voluntary program and consequently, Snohomish County recently passed an ordinance that includes a six-month moratorium allowing for the county to look at long-term solutions at the problems in Snohomish County concerning the closure of manufactured housing communities. One solution under consideration is the mobile home park overlay. King County is also in the process of determining what it will do for parks closing in King County. King County previously had a mobile home park overlay. King County is considering reintroducing the option. King County is looking at different solutions for preserving manufactured housing communities. Twelve months is not enough time to move a home, which is allowed by state law. There was an attempt to seek three-year legislation during the last session, but park owners opposed the proposal.

The idea of manufactured housing meets many elements of local comprehensive plans. The housing element in the comprehensive plan speaks to promoting and conserving existing neighborhoods. Previous speakers have spoken about the fact that parks are neighborhoods and communities and that by closing a park, a neighborhood is completely

destroyed. The comprehensive plan also speaks to opportunities for housing for people regardless of age or economic status. It also talks about supporting and encouraging a variety of housing types and price ranges. It speaks to promoting a selection of housing that varies by location, by type, by design, and by price. The comprehensive plan also speaks to the need to preserve existing housing stock. She asked the committee to consider zoning in a way that will provide the opportunity to provide homes for people. She said she doesn't believe a mobile home park overlay would be considered as a taking. The legal analysis speaks to the Supreme Court decision in 2000, but more recently the City of Des Moines had an ordinance that impacted what a mobile home park owner could do with their land. The Court of Appeals upheld the city's ordinance and the State Supreme Court denied review of the ordinance. She encouraged the committee to consider a mobile home park overlay as a real solution to the problem.

**Lovella Hanger, 1841 Trosper Road # 53,** said she and her husband have lived in Tumwater for over 50 years and their children attended Tumwater schools, supported school levies, and have shopped in Tumwater. She said they would like to stay. She said they have no choice but stay in Tumwater because of rising inflation and their income level.

**Kingsley Hanger, 1841 Trosper Road #53,** agreed with the comments of his wife.

**Dorothy Belcher, 1841 Trosper Road SW #14,** commented that she is 92 years old and has lived at Western Plaza for 35 years. Rent was $65 when she moved in and it has been raised to $465. She said there is no way for her to have another home or move her existing home because of her age. She asked the committee to help the residents.

**Jim Dean, 8004 195th E. Spanaway, WA,** said he is the president of AMHO as well as a member of the Pierce County Affordable Housing Task Force, which has been studying affordable housing. A manufactured housing community is one of the avenues of affordable housing. He thanked the committee for taking leadership on the issue and for listening to what residents have to say. This is not just a local issue, the issue is occurring throughout the state. Overlay zoning is one criterion that could help residents. With zoning criteria, it doesn't hurt owners because they still collect revenue even with a rezone. Additionally, if the owner closes the community and changes to another use, the City's leadership has the ability to control the situation until residents have the opportunity to find other housing. He congratulated the committee and said the committee is undertaking the proper steps. He said he is going to inform Pierce County on what Tumwater is doing.

**John Woodring, Attorney for Manufactured Housing Communities of Washington, 2120 State Ave, Suite 201, Olympia WA 98506,** said he wants to clarify some points from previous testimony. From the perspective of Manufactured Housing Communities of Washington, the other ordinances dealing with manufactured housing communities such as the overlay zones in Auburn and Olympia are not the concern. The concern is spot zoning communities in Tumwater and restricting them to manufactured housing communities, which would be its use in perpetuity. The City would impose that zoning to preserve affordable housing for citizens. MHCW has two cases that went to the State Supreme Court. MHCW vs. State 2000 is an eminent domain case that involved taking private property for private use to restrict the owner by giving tenants first right of refusal to purchase the park. The court struck down the case. He cited another case in 1993 that dealt with relocation assistance, which was required by state law, was also struck down based on a due process argument. The court has spoken twice on the rights of manufactured housing community owners to be able to use their park property in a constitutional and legal way. An overlay speaks to restricting a property owner, which the organization believes is illegal and unconstitutional. What occurred in Snohomish County is that a manufactured housing zone was voluntary, which is a relatively new law. There are concerns about the moratorium imposed in Snohomish County for a number of reasons. The Des Moines case does involve an overlay concept in the opinion of the organization. It dealt with other reaches in regards to manufactured housing communities but not to those issues. He said he will provide supplemental information to the City to avoid confusion with respect to the court case.

Commissioner Valenzuela commented that the Council received a letter from the owner of Eagles Landing stating that he spoke with his attorney who has advised him that if the committee pursues action it constitutes a taking or a condemnation and that compensation would be due to him. She asked for Mr. Woodring's response. Mr. Woodring said MHCW vs. Washington was an eminent domain case. Under Article 1. Section 16 of the State Constitution, there are specific ways for government to acquire property. If a government entity does not utilize the proper eminent domain process, the entity cannot compensate the property owner. MHCW's position is that overlay restrictive zoning that establishes a manufactured housing community in perpetuity that cannot be changed to perpetuate affordable housing runs awry of that provision. Compensation to the property owner is not possible. This was a right of refusal in statue for the tenants to purchase the park. That was what the case involved.

**Isabel Dickens, Attorney, Columbia Legal Service,** said Mr. Woodring is correct in that the State Constitution is very property rights oriented. However, she argued that a mobile home park overlay is not an attempt to tell the park owner that they must maintain that property in perpetuity. A

000122

TUMWATER GENERAL GOVERNMENT COMMITTEE
MINUTES OF MEETING
April 25, 2008 Page 10

landowner has the ability to come before a planning commission or a council and request a zoning change. That is what occurred in Bothell. Bothell has a mobile park overlay and owners have requested zoning changes. Three issues paramount in property rights involves the use, disposition, and the ability for letting people to enter property. Ms. Dickens said that she would argue that once a landlord chooses to use the property as a mobile home park or community; the state should have the right to regulate that business as it does every other business. Zoning should be set in place to help protect the residents of mobile home parks.

**Suzanne Cosmo, 3244 66th Ave SW,** commented that the law is legal. There is a moral obligation park owners should have undertaken when they lease space because park residents move in and invest in the park at a certain level without owning the land and that there should be some protection to park residents. She asked the committee to assist in any way possible.

Chair Zeller closed the public comment portion of the meeting.

Councilmember Stanley read an article from a newspaper as evidence of the continuing erosion of available mobile home park spaces. The article states,

> "Puyallup Mobile Home Park Residents Evicted: The 70 residents of the Country Aire Manor mobile home park in Puyallup have been given a year to move. They are being evicted to make room for a shopping development in the South Hill area. Even having a year to move is a hardship for many residents who are elderly, ill, or disabled. The state Office of Manufactured Housing says more than 52 trailer parks have closed since 2005 or scheduled to close. That's a loss of more than 2,000 spots."

Councilmember Stanley said the problem appears to be a statewide problem. He indicated he would like to review other ordinances from other jurisdictions, such as what Des Moines has adopted to address the issue.

Councilmember Valenzuela asked staff whether they have found any information on the use of a moratorium while the committee continues its work. Planner Ginther said he would need to speak to the City Attorney about a moratorium. City Attorney Kirkpatrick said interim zoning controls or a moratorium is an option but advised the committee it would need to have a work plan and consider the goals that the committee is working to achieve as well as documenting the emergency for declaring a moratorium in the interim.

000123

TUMWATER GENERAL GOVERNMENT COMMITTEE
MINUTES OF MEETING
April 25, 2008 Page 11

Councilmember Valenzuela agreed it would helpful for the committee to review other ordinances from other jurisdictions including the moratorium option. She said she serves on the Home Consortium for Thurston County, which is faced constantly with the issue of rapid erosion of affordable housing within the community. There is a social issue that needs to be considered, particularly in the case of low-income residents and people who live on fixed incomes. There is a sense of urgency for moving forward with the work.

Chair Zeller referred to Olympia's ordinance, which includes some zoning issues associated with manufactured home parks. Planner Ginther said Olympia has a zoning district of Mobile Manufactured Home Parks. However, the zoning district also allows approximately 50 other uses within the zoning district.

Chair Zeller asked whether the City could consider creating a zoning overlay and allowing single-family dwellings as well as manufactured homes. City Attorney Kirkpatrick said a zone in which more than one use is allowed is preferable rather than a zone restricted to one use.

Chair Zeller asked staff to provide some copies of ordinances that addresses multiple uses if they exist within other communities. The Council has an obligation to citizens to work toward protecting homes, but in way that is allowed legally. It is incumbent upon the Council to look at all options and develop an option that is legally viable. The committee has more work and more research to undertake before rendering a recommendation.

Councilmember Valenzuela expressed appreciation for citizens sharing their concerns. Councilmember Stanley thanked citizens for attending as well. Chair Zeller thanked residents for attending and participating in the discussion.

Administrator Baker reported the next meeting is on May 22, 2008. Councilmember Valenzuela said she has requested changing the date because she is unavailable to attend the meeting. Chair Zeller indicated he and Administrator Baker will review a possible Friday meeting date for the committee's regular meeting time.

**ADJOURNMENT:**     **Chair Zeller adjourned the meeting at 12:47 p.m.**

Prepared by Valerie Gow, Recording Secretary/President
Puget Sound Meeting Services

000124

# EXHIBIT L

000125

AGENDA ITEM NO. 1

Meeting Date – April 25th, 2008

TO:        Doug Baker, City Administrator
           dbaker@ci.tumwater.wa.us

FOR:       General Government Committee

FROM:      Mike Matlock, Planning and Facilities Director
           mmatlock@ci.tumwater.wa.us
           David Ginther, Associate Planner
           dginther@ci.tumwater.wa.us

RE:        Manufactured Home Parks

1)    References   (Only list those attached.)

      A.    Map of large mobile/manufactured parks in Tumwater and the Urban
            Growth Area
      B.    January 24, 2008 Memo to GGC Committee
      C.    Murphy letter 8-11-07 (park resident)
      D.    Beedle letter 11-20-07 (park resident)
      E.    Erlitz letter 12-4-07 (former park owner*)
      F.    Ensley letter 12-18-07 (park resident)
      G.    Woodring letter 1-23-08 (Attorney for Manufactured Housing
            Communities of Washington)
      H.    Trummert letter 2-11-08 (park resident)
      I.    Tumwater Mobile Estates Social Club letter (park residents) 4-12-08
      J.    Housing Plan (an element of the Tumwater Comprehensive Plan)
      K.    Draft Housing Plan amendments
      L.    Draft Zoning Ordinance O2008-009

*According to the Thurston County Assessor records, Mr. Erlitz sold the Western Plaza
Mobile Home Park on February 8th, 2008 for $4,059,000.

2)    Action Requested / Staff Recommendation:

      This is an information item.

3)    History and Facts Brief:

At the January 24th, GGC meeting the committee requested staff research options

regarding preserving and protecting manufactured home parks and to further explore the issue of a zoning classification that allows only manufactured home parks.

## DEED RESTRICTIONS:

This method is already available to every property owner and can be done immediately. A mobile/manufactured home park owner can voluntarily place a deed restriction (covenant) on their own property. This deed restriction could specify that the uses for the property would be limited solely to mobile/manufactured home parks. The restriction would be binding and stay with the property even if it changed ownership. The residents of the mobile/manufactured home park would be able to enforce the deed restriction, through legal action if it became necessary. This method of deed restriction/covenant is already used extensively by homeowners associations in subdivisions.

The advantages of this option are as follows:

1. Can implement right now. The deed restriction can be in place within a very short amount of time. Whereas, the rezone method could take years.
   *Note: See discussion below under "REZONE COSTS AND TIME" heading.*
2. No intervention by the City of Tumwater. This would be a private agreement between the owner and the tenants and would not need to involve government.
3. Relatively low cost. Compared to a rezone the cost of this option could be less for the property owner.
   *Note: See discussion below under "REZONE COSTS AND TIME" heading.*
4. Would not require action by Thurston County. For the five parks within the Tumwater Urban Growth Area (UGA) the County would need to approve amendments similar to Tumwater's. Given the County's current backlog of amendments it may be several years until completion.

## COMPREHENSIVE PLAN:

The Housing Plan, an element of the Tumwater Comprehensive Plan, is attached as Reference "J". Amendments that recommend voluntary deed restrictions/covenants for manufactured home parks are attached as Reference "K".

## ZONING:

Auburn has had a zone for mobile home parks since 1988. However, it appears the intent of this zone is to limit the expansion of these parks rather than to protect them.

Snohomish County created a mobile/manufactured home park zoning district in early 2007. The zone is voluntary and is meant to preserve and protect mobile and manufactured housing communities from the pressures of development. None of the owners of the more than 100 mobile/manufactured home parks in Snohomish County have volunteered for the rezone.

000127

Olympia has a zone for mobile/manufactured home parks. However, in addition to allowing manufactured homes and mobile/manufactured home parks the zone also allows approximately 50 other types of uses including almost everything between single family homes and mining. Due to the large range of optional uses within this Olympia zoning district it does not appear that application of this zone would actually have much of an affect when trying to preserve or protect the park from the pressures of development (conversion to another use).

Tumwater already has a similar zoning district but instead of calling it a mobile home park district it is called Multi-Family Medium Density Residential. This Tumwater zoning district allows approximately 30 different land uses in addition to manufactured home parks.

As requested, a draft ordinance creating a new voluntary zoning district for manufactured home parks in Tumwater is attached.

## OTHER METHODS:
### Housing Authority
In a couple of situations housing authorities in Snohomish and King Counties bought mobile/manufactured home parks for several million dollars each. These parks were planned to be developed into another use by the owners. The parks are now owned by the housing authorities and the rents and resale prices of homes within the parks are strictly governed. Most of the mobile/manufactured housing parks in Tumwater are also worth several million dollars.
According to Mr. Ricks of the Thurston County (TC) Housing Authority, the TC Authority does not own or manage any mobile/manufactured home parks within Thurston County. He did add that it is not out of the question for the Authority to possibly look into acquiring a mobile/manufactured home park in the future but it would require extensive study to determine if it would be feasible given the current funding situation for the Authority. The majority of its funding comes from federal sources with only a very minor portion being from local sources. The TC Housing Authority administers the federal HUD voucher program for about 1900 households. The Authority also rents out approximately 420 units county-wide.

An April 8, 2008, article in the *Heraldnet* online newspaper discussed the recent problems that housing authorities are having in regards to obtaining loans to buy existing housing for conversion to affordable housing projects. The Everett Housing Authority was denied loans by Key Bank, US Bank, and Bank of America. The Housing Authority blamed the problems on uncertainties in the market combined with lenders revising their lending standards.

### Resident Purchase of Park
In 1995, the residents of the 103-home Candlewood Manor mobile home park in northeast Thurston County bought the park from the owner. It is now an owner

000128

occupied mobile/manufactured home park. These residents were able to save their own homes by working together. The residents of a manufactured home community on College Street (near Lacey) are currently working on trying to do a similar thing with their park.

## REZONE COSTS AND TIME:
Costs
The current Tumwater fee for a site specific rezone and comprehensive plan map amendment is $2,000. Thurston County currently charges $7,715 for a rezone and comprehensive plan map amendment within the Tumwater urban growth area. The County is currently reviewing a proposal to increase the charge.

Time
The State mandates that comprehensive plan amendments and associated rezones be processed in an annual cycle so the cumulative affects of changes can be assessed. The amendment process for Tumwater begins in December (August for Thurston County) and can take over an entire year to complete. For example, the 2007 amendments for Tumwater were started in December 2006 and were completed in March 2008.
If Tumwater moves to create a manufactured home park zone in 2008, the comprehensive plan amendments establishing this new future land use designation and zoning district will need to be effective before the first Monday in December 2008 in order for a property owner to submit an application in time for the 2009 amendment cycle. This means that a property owner may not be able to obtain a rezone to a manufactured home park zone until approximately the beginning of 2010.
At this point the 2009 assessments for taxes payable in 2010 will already be established by the County Assessor. The manufactured home park owner would likely need to appeal their tax assessment in the spring of 2010. Based on the fact that as of January 6, 2008, approximately 1,620 property owners in Thurston County had appealed their property assessments, it may take quite some time before an appeal is heard and a ruling is issued.

## TAXES:
According to the Thurston County Assessors office it may take quite some time for the property values of a mobile/manufactured home park to be lowered after the deed restriction(covenant) or rezone is put in place. This is mainly because property values are based off of sales of similar properties. It may be years until another similar mobile/manufactured home park with a similar deed restriction(covenant) or restrictive zoning is sold. The alternative is for the owner to appeal their assessment. There is an appeal process setup for property owners that disagree with their assessments.

4)   Discussions and Alternatives:

000129

.4

A. Conduct public outreach to residents and owners about the deed restriction/covenant option.

B. Recommend amendments to the Comprehensive Plan that urge park owners to apply deed restrictions/covenants to their properties.

C. Conduct public outreach to residents and owners about the rezone option.

D. Recommend adoption of a "manufactured home park" zoning district ordinance to the City Council.

E. Make no changes at this time.

5)      Fiscal Notes:
        N/A

000130                                                                    5

19. AQP, aquifer protection (overlay zone district);
20. CS, community services zone district.
21. TC, town center zone district.
22. MHP, manufactured home park zone district.

(883, Added, 05/06/1984; 1095, Amended, 01/20/1987; 1226, Amended, 11/20/1990; 1230, Amended, 11/20/1990; O97-025, Amended, 12/02/1997; O2001-020, Amended, 05/07/2002)

Section 2.   A new Chapter 18.49, entitled "Manufactured Home Park Zoning District", is hereby added to the Tumwater Municipal Code to read as follows:

## Chapter 18.49

## MANUFACTURED HOME PARK ZONING DISTRICT

**Sections:**

18.49.010     Intent
18.49.020     Permitted Uses
18.49.030     Accessory Uses
18.49.040     Density regulations

### 18.49.010 Intent.

The intent of the Manufactured Home Park (MHP) zone is to provide and preserve high density, affordable single family residential development in the form of designated manufactured homes within manufactured home parks. Application of this zone shall be at the voluntary request of the owner of an existing manufactured home park or mobile home park and by approval of the Tumwater City Council through the annual Comprehensive Plan Amendment/Rezone process.

### 18.49.020 Permitted Uses

Permitted uses within the MHP zone district are as follows:
A. Manufactured home parks in accordance with the provisions of Chapter 18.48 TMC.

Ordinance No. O2008-009, Page 3 of 7

000131