# EXHIBIT O

APPROVED

**CONVENE:** 7:12 p.m.

**PRESENT:** Mayor Ralph Osgood, Councilmembers Joan Cathey, Bruce Zeller, Pete Kmet, Karen Valenzuela, Ed Stanley, and Neil McClanahan.

Excused absence: Councilmember Judith Hoefling.

Staff: City Administrator Doug Baker, City Attorney Karen Kirkpatrick, Finance Director Jim Hendrickson, Development Services Director Roger Gellenbeck, Planning and Facilities Director Michael Matlock, Senior Planner Tim Smith, Associate Planner David Ginther, and Recording Secretary Valerie Gow.

Councilmember Stanley thanked everyone for their cards, letters, and concerns during his recent illness. He thanked his sister, Lynn Horton, for taking care of him.

**APPROVAL OF AGENDA:** **Councilmember Stanley moved, seconded by Councilmember Zeller, to approve the agenda as presented. Motion carried.**

**PECIAL ITEMS:**

**PROCLAMATION – NATURAL MENTORING MONTH:** A proclamation declaring January 2009 as "National Mentoring Month" was read into the record.

Mayor Osgood presented the proclamation to Puck Kalve Franta, Be the One Mentoring Coalition Coordinator, who spoke about the need to recruit mentors and inform people about the organization. Individuals and organizations interested in learning about the organization can call (360) 786-5585 or visit the website at http://betheone.info.

**PROCLAMATION – HUMAN TRAFFICKING AWARENESS DAY:** A proclamation declaring January 11, 2009 as "Human trafficking Awareness Day" was read into the record.

Mayor Osgood presented the proclamation to Cindy Beckman, Alicia Cummings, and LaVonda McCanlis. Ms. Beckman reported on the three-pronged approach to raise public awareness on the critical issue of human trafficking. Activities are planned in the City of Tumwater to increase awareness as well as outreach to victims. Flyers will be posted at bus stops and freeway rest stops to increase public awareness about the problem.

**PUBLIC COMMENT:** **Larry Johnson, PO Box 1521, Olympia,** commented on the erosion of a section of the riverbank along the Deschutes River in Pioneer Park. He asked about any measures the City may be considering for addressing the eroding riverbank. Mayor Osgood said the City has previously studied the issue and discussed options such as reinforcing the bank, which creates issues on the other side of the riverbank. There is no easy solution.

**Chami Joe Ro, Tammy Dickinson, and Austin Beaumont representing the , Comfort Inn Guesthouse Suites, Tumwater,** spoke about the current economic crisis and its impact on the hotels, lack of events and activities in Tumwater to attract hotel guests, access problems for businesses located off Tumwater Boulevard, incentives the City of Tumwater should offer to attract more businesses to locate in the City, and the poor job the City did in snow removal during the storm in December causing many stranded hotel guests.

Mayor Osgood advised that the Council is working on a long-term Economic Development Plan. He commented on the difficulties of attracting new business in today's economy. Statistics show that within the first year, 40% of all new restaurants fail.

**CONSENT CALENDAR:**

a. Approval of Minutes: Regular meeting: December 16, 2008; Worksession: December 15, 2008
b. The City Council authorizes for payment checks #112573 through #112722 in the amount of $1,323,478.96
c. Extending Intergovernmental Consulting Services Agreement, Extending Cable Franchise Consulting Agreement with Ken Fellman, and Setting a Public Hearing on Adoption of a New Cable Franchise Agreement fc January 20, 2009
d. Set Public Hearing: Ordinance No. O2009-002 – Parking Restrictions Due to Trosper Road Mid-Block Crosswalk
e. Second amendment to Interlocal Agreement for Historic Preservation Services
f. Resolution No. R2009-001; Surplus Equipment
g. Resolution No. R2009-002; Surplus Equipment.

**MOTION:**

**Councilmember Zeller moved, seconded by Councilmember Kmet, to approve the consent calendar as published. Motion carried.**

**PUBLIC HEARINGS:**

**2009 COMPREHENSIVE PLAN AMENDMENTS AND MANUFACTURED HOME PARK DEVELOPMENT REGULATIONS AND REZONE; ORDINANCE NO. 02008-009:**

Planner Smith reported the amendments are part of the docket approved by the council in early 2008 for the annual comprehensive plan amendment process. He reviewed attachments in the agenda packet:

A. Public Participation Plan Update (Comprehensive Plan Amendment)
B. Tumwater Urban Growth Boundary Adjustment (Comprehensive Plan Amendment)
C. Manufactured Home Park Goals, Policies and Map Amendment Proposal (Comprehensive Plan Amendment)
D. Manufactured Home Park Development Regulations and Rezor (Ordinance No. O2008-009)
E. Planning Commission Recommendation (Comprehensive Plan Amendments)
F. Planning Commission Recommendation (Development Regulation

Amendments and Rezone)
G. Public Comment Letters

Planner Smith reviewed the Public Participation Plan Update, which is required by state law. He reviewed the main elements of the amendment. Key procedures of the public participation plan include:

- The City notifies the public of the annual deadline to submit requests for amendments to the City's Comprehensive Plan.
- The City uses a variety of methods to inform citizens of proposed amendments to City plans and regulations.
- Various outreach techniques in addition to public hearings may be used by the City to obtain public input on long-range planning projects, including opinion surveys, workshops, and open houses.
- The Planning Commission may request the Mayor to appoint a subcommittee to the Planning Commission when the size, technical complexity, or content of an amendment proposal warrant.

Councilmember Valenzuela commented that's it's not necessary that the Mayor appoint a subcommittee of the Planning Commission, as the Commissioners have already been appointed. Planner Smith said such appointments occur when the City desires a guiding committee to work on specific issues related to planning.

Planner Ginther reviewed the uban growth boundary adjustment, which will adjust the maps within the comprehensive plan and zoning maps. This change has already been completed by Thurston County to the urban growth boundary in response to the Western Washington Growth Management Hearings Board ruling.

Planner Ginther reported the Council cannot act on the Manufactured Home Park Development Regulations and Rezone because of the 30-day requirement between Planning Commission's action and the Council's action.

Planner Ginther described the history of the proposed manufactured home park goals, policies, and land use designation. In 2007, residents of some manufactured and mobile home parks in Tumwater contacted the City Council about their concerns of possible closures and conversions of parks. The City Council referred the issue of mobile home parks to the General Government Committee (GGC). The GGC conducted five public meetings between January and June 2008 and forwarded a draft to the City Council in July. The Council referred the issue to the Planning Commission for inclusion in the annual comprehensive plan amendment cycle for 2008. The Planning Commission conducted a public hearing and recommended some minor revisions to the amendment. The Planning Commission considered how to apply the zone and agreed to exclude three smaller parks of two to four units as well as Allimor

Carriage Estates mobile home park because it is located adjacent to intensive commercial development.

One letter was received after the agenda packet was prepared. The Council was provided with a copy of the letter.

Councilmember Kmet asked staff to describe the practical effect of the ordinance. Planner Ginther reported the comprehensive plan and zoning ordinance pertains to six of the larger parks within the Tumwater, which would designate zoning as Manufacturing Home Park. Other uses are allowed within the zoning district, but subdividing within the zone is not allowed. Most of the parks are located within residential zoning districts.

Councilmember Kmet said he understands the ordinance allows for single-family detached housing in the zoning district. Planner said a single-family home is allowed on one existing lot of record.

Councilmember McClanahan asked about dwellings within the parks in need of repair and whether the ordinance precludes park owners from building townhouses or apartments for tenants if repairs to a mobile home are no longer feasible. Planner Ginther affirmed the ordinance prohibits such action, a multi-family dwellings are not allowed. Other uses allowed in the zonin district include single-family home, parks, trails, open space area, family child homecare, storage shed, private parking garages, home occupations, clubhouses and community centers associated with manufacturing home park, non-commercial recreational structures, churches, free-standing wireless communication facilities, cemeteries, child day care center, public and private schools, neighborhood community .center, neighborhood oriented commercial center, emergency communications, agriculture, and bed and breakfast.

Mayor Osgood opened the public hearing at 7:55 pm

**PUBLIC TESTIMONY:**

**Mark Smith, 4045 49th Avenue SW, Olympia**, said he is the owner of Lakeside Villa Mobile Park and never purchased it with the intent to sell. Some existing infrastructure dates to the 1950s. Mr. Smith commented on limitations imposed by the proposal if replacement involved a two-story modular. He questioned whether the ordinance pertains to housing manufactured off-site versus on-site manufactured homes, HUD homes, or Uniform Building Code homes. Planner Ginther referred to the ordinance's definition for manufactured home. The definition is typical to homes found at the Eagles Landing park. Mr. Smith said he is somewhat shocked that the proposal to change the designation to Manufactured Housing includes both and that the process is at a stage where the City doesn't know if it pertains to UBC, requires wheels, c must have a frame. Mr. Smith said Washington State law as quoted in th City's pamphlet points to not discriminating against any method of building a home. The proposal discriminates in the way a home is built. It prohibits a site built homes on a lot.

**Theresa Jensen, PO Box 8342, Lacey,** spoke as a community developer and owner of two park communities in Thurston County within the urban growth area (UGA). Residents are unhappy in one park because a neighboring property owner stripped property of its trees to her property line, which the residents believe is her fault. The community is zoned Light Industrial. A lumberyard abuts the property on one side with a storage lot on the other side. More land is needed to develop communities. No help is available from the Legislature and impact fees and development costs make it impossible to build communities to provide affordable housing. She said she's owned parks since 1983 and plans to provide affordable housing, but believes the proposal is a takings issue and that the City is taking her property rights and forcing her to remain a park even though she plans to keep the community. She said she has the right to decide what she will do with her property. The issue is a societal matter that should be resolved by everyone instead of forcing individual property owners to resolve it. She said she owns the communities of Fairwind and Los Cedros.

**Walt Olsen, 18121 Lisa Lane SE, Yelm,** said he's an attorney who has represented mobile home parks throughout the state since 1944. He agreed that at one point, there was trend that caused concerns. However, as a practitioner in the industry who receives many phone calls from community owners, he said he is receiving fewer calls about parks closing. The trend of mobile home parks closing is changing because of the downturn in the economy and lack of housing inventory. The issue may have been timely in 2007; however, the concern is not the same in 2009. He asked the Council to consider that aspect as it moves forward. Consider as well, what the ordinance will fix in terms of park closures and consider a practical solution. He suggested there is a better method and that the City should consider increasing housing density.

**Betsey Murphy, 5243 Bald Eagle Lane SW, Eagles Landing, Tumwater,** referred to her previous testimony in August 2007 to protect manufactured home parks and seniors who live in them who have invested their life savings for a home close to services. She encouraged the Council to convert the zoning to Manufactured Home Parks to retain existing parks. There is no denial that owners have the right to sell their property, but if the property is sold, it should be maintained as a manufactured home park.

**Bill Mandeville, 613 Ensley, Tumwater,** encouraged passage of the comprehensive plan amendments and the development regulations for Manufactured Home Parks. The amendments and regulations recognize the unique relationship between two property owners. First, there is the mobile home park owner, who has invested a considerable amount of money for park infrastructure. Secondly, there are the owners of the mobile homes located within the parks. The ordinance recognizes the unique relationship between the two property owners and essentially prohibits dissolving the relationship without some consideration and public deliberation. The proposal is a critical

first step. The ordinance is a first step. In addition to the ordinance, the Council should eventually consider requiring a permit to close a park with some logic applicable for closure of a park. A permit requires an owner to recognize the impacts and would require the development of a relocation plan. This is a way to intervene and mediate the conflict between the two property owners. He urged the Council to give careful deliberation and consideration and urged adding his suggestion for developing a permit for closure of parks to the Planning Commission's 2009 work plan.

**Bill Clarke, Attorney 1110 Capitol Way South, Suite 225, Olympia,** reported he represents Tumwater Estates Investors, the owner of Tumwater Mobile Home Community, located at 930 Trosper Road. He requested exemption from the rezoning. Tumwater States Investors has owned the park since 1978 and currently has no plans to sell the park. There is a good relationship with tenants and Tumwater Estates Investors want that good relationship to continue. However, the owners believe the proposed zoning ordinance is unlawful and that they should qualify for an exemption similar to the recommendation for Allimor Carriage Estates. The current zoning is Medium Density Residential and Single Family High Density. As noted by previous speakers, existing zoning uses surround the park. The character of the community surrounding the property is High Density Multi-Family or Sing' Family Medium Family. The exemption for Allimor appears to be based solely on the characteristic that its zoning is commercial and it's surrounded by commercial. For that reason alone, Tumwater Estates should also qualify for an exemption, as its current exemption is Multi-Family High Density and Single Family Medium Density. There are some other similarities. Allimor Carriage and Tumwater Mobile Home Community are located the same distance, approximately .2 miles, from the intersection of Trosper Road and Littlerock Road. Both properties front on major roads. The proximity to new commercial development is similar and both properties are of similar age and condition. Additionally, because of the configuration of property, some of the older homes are not economically viable to rehabilitate or replace. The other issue is the impact to the property owner. The economic impact is significant if the rezone occurs. The City needs to exempt the property or not pass the ordinance. Finally, there are a number of legal issues, but in the City's process of considering the ordinance and considering exemption, if the City looks at one park or property for exemption, the City needs to consider all parks. Based on the characteristics and criteria of Tumwater Mobile Estates, it also deserves to be exempted.

**John Woodring, Attorney, Manufacturing Housing Communities Association of Washington,** referred to his position statement he provided to the Council. The association represents 525 manufactured housir communities representing 37,000 lots in Washington. Mr. Woodring said the issue is a non-issue in the City of Tumwater. There are no parks or communities in the City that are of any threat to close at the present time. There have been no 12-month notices of closure as required by state law. The

association is very surprised that the proposed action is occurring, as the community is not under threat for any park closures. The problem with this type of an approach is overlaying an exclusive manufactured housing community zone over existing communities for the purpose of preserving manufactured housing as affordable communities. The problem with the proposal is that it selects specific landowners with specific types of housing. There is case precedence at the Supreme Court that the proposed action constitutes a taking. The Attorney General under the Growth Management Act (GMA) has indicated that if such action is pursued, the jurisdiction runs the risk of takings. Mr. Woodring reviewed the guidance under the GMA in terms of avoiding unconstitutional takings of private properties. The proposal essentially restricts alternative uses in perpetuity, which are takings under the constitution. He cited a case in the early 1990s where the State of Washington imposed statutorily relocation assistance requirement, which was pursued to the State Supreme Court in a takings case. The court ruled that an individual park owner who desires to close a park is not significantly more responsible for these general society-wide problems than the rest of the population. Essentially, the proposed action treats manufactured housing park owners differently than other housing types. The association believes the approach is a violation of the GMA. He suggested the way to address the issue is through a willing seller and willing buyers negotiating a sale by selling the park to tenants or a nonprofit entity to preserve the community.

**Ishbel Dickens, Attorney, Columbia Legal Services,** said she sent a six-page e-mail to the Planning Commission that she would like the Council to also receive. She responded to some of the previous comments particularly some of the main legal issues raised. The proposed amendment and the rezone is not a taking. It does not constitute a physical endangerment of the community or its property or destroy any fundamental attribute of property. Owners have the right to possess the property, the right to use it, and the right to dispose of it. It does not result in the loss of all economic viability. Zoning changes occur all the time, some will benefit people, and some benefit the public. Rezoning is accomplished frequently to protect sensitive land under the environmental protection act, and to protect single-family residential areas to protect lifestyles. The action is not unprecedented. It is not spot zoning because the surrounding areas are residential. Both Mr. Smith and Mr. Clark spoke about the inability to fill vacant spaces when older homes become vacant. Dealers are willing to make smaller footprint homes for smaller lots. This is not an issue. She pointed out Mr. Olsen's comment about providing sufficient land and the availability of builders to build manufactured housing communities. They would build on relatively inexpensive land, then turn around, and redevelop when land prices increase in 20 to 30 years. She suggested the Council is moving forward proactively to ensure manufactured housing communities continue while there is an economic downturn. However the economy is temporary and will change in the next few years. She spoke against Mr. Clarke's request for an exemption because of another park community located nearby within the county. She encouraged the Council to adopt the

amendments.

**Heber Kennedy, Port of Olympia, 7632 Old Highway 99,** questioned the zoning on both sides of 93rd Avenue. He suggested the uses shouldn't be incompatible with light industrial on one side and residential on another. He suggested the Council consider compatible land uses on both sides of the street at some point in the future. Planner Ginther reported the area the county removed from the UGA is rural residential zoning. There is no industrial zoning along 93rd Avenue between Old Highway 99 and Hart Road. The City limits include 93rd Avenue in locations where it's adjacent to the City limits.

Mr. Heber asked whether the Airport Overlay Zone extends to the Thunderbird Villa on Dennis Street. Planner Ginther said part of the overlay extends into the development. Mr. Heber asked to ensure the City ensures any structures built within the overlay meet federal guidelines.

**Bob Eichler, Laurel Park Estates, 2201 3rd Avenue, Seattle,** said he owns and operates Laurel Park Estates and has owned other mobile home parks for over 30 years. He expressed opposition of the proposed change and believes it's illegal and unconstitutional. The proposal is for 10 communities to provide affordable housing that is something society should do as a whole. He said he has no plans to close the park but that the current zoning should remain intact for future high density, affordable housing. Passing the zoning will preserve communities that are old and outdated. Many of the communities are over 30 years of age with structures that are failing and located on smaller lots. He indicated he cannot fill his eight vacancies because the lots are small old spaces. Additionally, financing is not available to construct the smaller mobile home. He said he hasn't seen a smaller mobile home placed within his community for several years. As people move out and as the homes age, it will be impossible to replace them causing economic damage to park owners. The Council may be preserving something that shouldn't be preserved, as there are many old run-down mobile home parks that include homes that have reached the end of its lifespan.

**Martin Durkin, Jr.** said he is public affairs consultant/lobbyist for land use issues. The issue is very complicated and many other communities are contemplating the same issue. He said his concern is the unintended consequences of adopting the rezone. In particular, lawsuits are very expensive and there are really no winners. He said he has worked on similar land use cases that have gone to the supreme court with millions of dollars spent by both parties over many years that could have been used for important city services, fire, and police. In this time of depleting revenues for cities, it would be a shame for litigation to occur. Mr. Durkin said he is working with the Legislature to try to find an overall solution statewide for the issue. The key solution is public ownership. The Public Housing Trust Fund must be funded correctly. There is funding available to purchase mobile home parks. Mr. Durkin said he has some commitments by several legislators to allocate more

funds to the trust fund. This is the time to create affordable housing as construction costs are at an all-time low. GMA has created the problem because of the influx of density within the urban area. It may require the creation of fringe properties on the edge of the UGA to support future mobile home parks. King County was able to create a program where mega churches are able to locate on the UGA edge as long as infrastructure exists. It may require some changes to the GMA. However, the issue is very complicated and the unit per acre yield on a mobile home park does not provide the GMA goal of 8 to 10 units per acre in the urban area. He asked the Council to consider the issue and be aware of unintended results. If it does pass, there will be obvious legal challenges. The proposal, if adopted, will increase rents because owners have to pass on costs, as well as deferring maintenance. He asked the Council to deliberate longer and perhaps impose a moratorium until the Council can work through the issues.

**Lois May Graham** said she lives at Tumwater Mobile Estates in a home that was built in 1969 and is not a rundown piece of trash. She said she's maintained and updated her home as well as her other neighbors within the park. She said she doesn't believe park tenants are asking too much to have some security for having maintained their homes and for having paid to live on the property, and in effect, have paid for the property for the owners. She commented positively on the owner of the park, who is very considerate. He keeps the park updated and the tenants appreciate his efforts. However, others are not as fortunate and need protection. She urged the Council to approve the request.

**Laurie Ziegler, 1412 Southwest 168th Street, Seattle,** reported she is the owner of Island Mobile Home Park in Federal Way and opposes the zone change. She said she was a young child when her parents first purchased their park and that she has always felt strongly about providing a place for people to live. It is becoming difficult to be a park owner. Most of the rights are for tenants with all the liability falling on park owners. Island Mobile Home Park has 49 spaces. Owning the park provides a good living but not a lavish lifestyle, which is often overlooked. The liabilities of removing a problem tenant are expensive and difficult to do. There are better ways to encourage owners to remain within the mobile home park business, as well as constructing new parks as needed.

**Jim Longstreet** said he lives at Western Plaza Mobile Home. Things are more difficult and complicated than when he was born in 1926. He noted tenants are at a disadvantage and that tenants need protection. He said he understands both side of the issue but wants to speak in support of protection for tenants. He encouraged the Council to consider approving the rezone. People of all walks of life live in mobile home parks and many don't have much money.

000168

**Mark Smith, PO Box 2718 Kirkland, WA,** referred to the definition of a mobile home unit provided by Director Gellenbeck. The definition indicated

the unit must be built on a permanent chassis and must be certified by HUD, which requires wheels. He challenged everyone to call dealers to find out how difficult it is find a singlewide mobile home. He challenged the Council to move forward. However the definition and the ability to do so are not as clear.

With there being no further testimony, Mayor Osgood closed the public hearing at 8:57 p.m.

Councilmember Stanley reported the GGC has reviewed the issue since 2007. He said he doesn't appreciate the veiled threats of being sued but it should be noted that the County Board of Commissioners will be considering the same issue countywide as well to protect tenants.

Councilmember Kmet inquired about the possibility of placing a two-story structure on an existing lot. He referred to proposed language citing allowance of a structure up to 40 feet in height. Planner Ginther replied that it's possible based on the language. Councilmember Kmet said he asked staff to contact dealer about the difficulty of securing singlewide mobile homes. Planner Ginther said he was unable to speak with some of the dealers but did speak to some manufacturer representatives. Singlewide mobile homes are manufactured, but they are rare. They are manufactured for specific lots th[illegible] are too narrow to fit a doublewide mobile home. There is an exemption in code allowing the placement of a singlewide mobile home in a singlewide space if it cannot fit a doublewide.

Councilmember Kmet referred to language identifying a list of preserved communities in Washington. One is those communities if Thunderbird Villa. He asked about the definition associated with a preserved community. Planner Ginther said a preserved community appears to be a park that is purchased by the residents and preserved as a community park.

Councilmember Kmet said he hasn't followed the issue closely because it was referred to the GGC and the Planning Commission. However, there appear to be a number of concerns from legal counsel of mobile home park owners about property taking. However, residents who live in the parks have expressed concerns about their homes converted to other uses when park owners sell the underlying land. It is an appropriate time to act rather than reacting after the fact. However, it's likely no one wants to preserve a mobile home park that is a problem with older, rundown homes that are not maintained and tend to be magnets for crime. The Council's action will need to balance the interests. The Planning Commission has provided a recommendation. Councilmember Kmet said he's inclined to take some kind of action but is unsure as to whether it's the right action to pursue.

000169

Councilmember McClanahan acknowledged the testimony of everyone. He said he's been involved in affordable housing and that residents should have a sense of protection. However, he said he's concerned about eliminating any

creativity for both the owners and tenants in resolving issues through different ideas and methods. The ordinance may preclude creativity. The Council needs to take some action, but more work is needed in terms of creativity between mobile home park owners and tenants. .

Osgood complimented all speakers. Mr. Durkin's comments pertaining to a legislative statewide solution are a good point. He expressed interest in learning about those alternatives as the process move forward and suggested the City maintain contact as efforts progress. He reiterated that the Council will not render any decision on the rezone at this time. The issue will be on the Council's January 20, 2009 meeting agenda for deliberation and action.

Councilmember Kmet said he asked staff to look at density in terms of units per acre for parks. Planner Ginther advised that net density is approximately seven units per acre. Eagles Landing is seven units an acre. Some of the other parks are six units an acre. Councilmember Kmet asked staff to provide the information to the Council.

**COMMITTEE REPORTS:**

**PUBLIC SAFETY:** No report

**GENERAL GOVERNMENT:** No report

**PUBLIC WORKS:** The Public Works Committee will meet on Friday, January 9, 2009 to consider a Barnes Lake Management District agreement.

Councilmember Cathey referred to citizen comments on snow removal. Councilmember Kmet commented on the City's snow removal efforts and indicated he's asked staff to include some time at a future Public Works Committee meeting to review the snow removal operation. He noted he was raised in the Midwest and that businesses hired snowplows to clear access or homeowners shoveled snow. There is only so much a City can do. In the case of local hotels, the roads are owned by the Port and there is some responsibility by the Port.

Mayor Osgood reported the estimated cost to the City for snow removal was $35,000 to $40,000 for salt and overtime. The City has two dump trucks that have snowplow blades. Part of the problem was running out of salt.

Councilmember Cathey noted the City did the best it could under an unusual situation.

**BUDGET:** Mayor Osgood commented on the need for the Budget Committee to meet in mid-February to discuss the preliminary budget for 2010.

| | |
|---|---|
| **CITY ADMINISTRATOR'S REPORT:** | Mayor Osgood reported on a request by the Thurston County Board of County Commissioners for a representative from the City to attend a meeting of the Treatment of Sales Tax Revenue Committee. Councilmember Cathey volunteered to attend and represent the City at the first meeting scheduled for January 28, 2009. |
| **RECESS TO EXECUTIVE SESSION:** | **Mayor Osgood recessed the meeting to an executive session at 9:25 p.m. to discuss possible litigation for 10 minutes. The executive session was extended at 9:35 p.m. to 9:50 p.m.** |
| **RECONVENE:** | **Mayor Osgood reconvened the meeting at 9:49 p.m.** |
| **ADJOURNMENT:** | **Councilmember Valenzuela moved, seconded by Councilmember Zeller, to adjourn meeting at 9:49 p.m. Motion carried.** |

Prepared by: Valerie Gow, Recording Secretary/President
Puget Sound Meeting Services

# EXHIBIT P

BEFORE THE WESTERN WASHINGTON GROWTH MANAGEMENT HEARINGS BOARD

LAUREL PARK COMMUNITY LLC, MANUFACTURED HOUSING COMMUNITIES OF WASHINGTON, AND TUMWATER ESTATES INVESTORS,

Petitioners,

v.

CITY OF TUMWATER ,

Respondent.

Case No. 09-2-0010

**FINAL DECISION AND ORDER**

## I. PROCEDURAL HISTORY

On April 6, 2009 Petitioners filed a Petition for Review (PFR) challenging the City of Tumwater's adoption of Ordinance Nos. O2008-09 and O2008-27 (collectively, Ordinances or MHP Amendments). With their PFR, Petitioners alleged various violations of the GMA as well as issues based on provisions of the Washington State Constitution and the United States Constitution.

On June 29, 2009, the Board issued an Order granting the City's Motion to Dismiss Issue 6 because this issue requested that the Board decide whether the City's action violated constitutionally-based issues.[1]

On September 1, 2009, in response to a motion, the Board permitted *amicus curiae* status to the Association of Manufactured Home Owners (AMHO).[2] AMHO was permitted to file a brief in opposition to the PFR.

---

[1] June 29, 2009 Order on City's Motion to Dismiss Issue 6. Issue 6 raised issues of takings, equal protection, and substantive due process.

[2] September 1, 2009, Order on Motion for Status as Amicus Curiae and Permission to File Brief in Opposition to Petition for Review. With this Order, the Board permitted AMHO to present legal argument on the issue of



Western Washington
Growth Management Hearings Board
319 7th Avenue SE, Suite 103
P.O. Box 40953
Olympia, Washington 98504-0953
Phone: 360-586-0260
Fax: 360-664-8975

The Hearing on the Merits (HOM) was conducted on September 10, 2009 in the City of Tumwater. Petitioners were represented by Scott Missal and William Clarke. The City of Tumwater was represented by Susan Drummond and City Attorney Karen Kirkpatrick. Board members Nina Carter, William Roehl[3] and James McNamara were present, with Mr. McNamara presiding.

## II. PRELIMINARY MATTERS

The City asserts that the Board lacks jurisdiction and the PFR should be dismissed because Petitioners did not personally serve the City Clerk. In support of this argument, the City submits the Declaration of Sheryle Wyatt, City Clerk for the City of Tumwater, in which she states that she was given the PFR by staff from the Tumwater Municipal Court with whom it had been left.[4]

The Certificate of Service filed with the PFR states that on April 16, 2009, the PFR was served on the City of Tumwater via service on the City Clerk by U.S. Mail *and* legal messenger. Nevertheless, the City contends the PFR should be dismissed because the Petitioners failed to personally serve the City Clerk. The City contends Washington Administrative Code (WAC) 242-02-230 and RCW 4.28.080 require personal service.

While Petitioners assert that they complied with the requirements of WAC 242-02-230 by properly personally serving the City Clerk, this is in dispute. The Board need not address the issue of the sufficiency of personal service because Petitioners also state they mailed a copy of the PFR to the Tumwater City Clerk on April 16, 2009, the same date that the PFR was filed with the Board.

---

whether the City complied with RCW 36.70A.020(4) and 36.70A.070(2) when it enacted Ordinance No. O2008-009.

[3] Mr. Roehl appeared by telephone.

[4] Declaration of Sheryle Wyatt.



Western Washington
Growth Management Hearings Board
319 7th Avenue SE, Suite 103
P.O. Box 40953
Olympia, Washington 98504-0953
Phone: 360-586-0260
Fax: 360-664-8975

**Board Discussion and Findings**

RCW 36.70A.070(1) provides, in relevant part:

> A land use element designating the proposed general distribution and general location and extent of the uses of land, where appropriate, for agriculture, timber production, housing, commerce, industry, recreation, open spaces, general aviation airports, public utilities, public facilities, and other lands use...

The Board agrees with the City that merely designating six current mobile home parks as MHP zones does not constitute a violation of RCW 36.70A.070(1) by reason of the specificity of the designation. While that statute requires the land use element to designate "the proposed *general* distribution and *general* location and extent of the uses of land" for a variety of uses, it contains no prohibition on mapping those uses when a specific location is known. Common sense dictates that a local jurisdiction would designate the actual location, rather than the "general" location, of known land uses such as manufactured home parks.

***Conclusion:*** Petitioners have not demonstrated that the designation of six specific locations for MHP zoning is a violation of RCW 36.70A.070(1).

5. **<u>Protection of Private Property – Attorney General Memorandum</u>**

***Issue No. 5***: By designating and restricting the use, redevelopment, and resale value of mobile/manufactured housing park property owners' lands, are the Manufactured Home Park Amendments in violation of or inconsistent with GMA requirements that local governments "shall utilize the process" established by the State Attorney General "to assure that the proposed regulatory or administrative actions do not result in an unconstitutional taking of private property"? See RCW 36.70A.370(2).

Petitioners argue that the City failed to evaluate the constitutional provisions at issue with the MHP amendments by utilizing the process established by the State Attorney General to assure that the proposed regulatory or administrative actions do not result in an unconstitutional taking of private property, as required by RCW 36.70A.370(2).



Western Washington
Growth Management Hearings Board
319 7th Avenue SE, Suite 103
P.O. Box 40953
Olympia, Washington 98504-0953
Phone: 360-586-0260
Fax: 360-664-8975

Petitioners further argue that the Board erroneously concluded in *Rosewood Associates v. Town of Friday Harbor*, WWGMHB No. 96-2-00020, that this provision did not create a basis for challenging local government action before the Board.[39] The City disputes Petitioners' interpretation of *Rosewood* and argues that case merely holds that RCW 36.70A.370(2) does not create an independent cause of action where the Board otherwise lacks jurisdiction.[40]

The City further argues, citing the Board's decision in *Citizens Protecting Critical Areas v. Jefferson County*, WWGMHB No. 08-2-0029c, that if there is evidence in the record indicating that the applicable process was considered, the requirement to comply with RCW 36.70A.370(2) is met.

**Board Discussion and Findings**

RCW 36.70A.370(2) provides:

> (2) Local governments that are required or choose to plan under RCW 36.70A.040 and state agencies shall utilize the process established by subsection (1) of this section to assure that proposed regulatory or administrative actions do not result in an unconstitutional taking of private property.

As directed by RCW 36.70A.370(1), the Attorney General issued an Advisory Memorandum entitled "Avoiding Unconstitutional Takings of Private Property". The Memorandum contains four substantive parts: [41]

1. Recommended Process for Evaluating Proposed Regulatory or Administrative Actions to Avoid Unconstitutional Takings of Private Property;
2. General Constitutional Principles Governing Taking and Due Process;
3. List of Warning Signals; and
4. Appendix containing summaries of significant court cases addressing takings law.

---

[39] Petitioners' Brief at 23.
[40] City's Brief at 17.
[41] Advisory Memorandum: *Avoiding Unconstitutional Takings of Private Property*, December 2006.



Western Washington
Growth Management Hearings Board
319 7th Avenue SE, Suite 103
P.O. Box 40953
Olympia, Washington 98504-0953
Phone: 360-586-0260
Fax: 360-664-8975

It is the first of these that is most relevant to the present matter as it spells out a five-part process:

1. Review and Distribute the Advisory Memorandum;
2. Use the "Warning Signals" to Evaluate Proposed Regulatory Actions;
3. Develop an Internal Process for Assessing Constitutional Issues;
4. Incorporate Constitutional Assessments Into the Agency's Review Process; and
5. Develop an Internal Process for Responding to Constitutional Issues Identified in the Review Process.

In *Citizens Protecting Critical Areas v. Jefferson County*,[42] the Board stated:

> This Board has previously held it does not have jurisdiction to determine whether property rights have been violated based on RCW 36.70A.370, primarily due to the constitutional nature of such challenges. However, this Board has also stated .370(2) mandates that local governments utilize the adopted process and, although the substance of the process used is protected by attorney-client privilege, there must be evidence which demonstrates the process recommended by the AG was utilized in adopting the challenged ordinance.

In that case, the Board found that the warning signals denoted in the AG's memorandum were incorporated within the Findings/Conclusions of Jefferson County's challenged ordinance which addressed private property rights.[43] The Board noted that: [44]

> "Although it would have benefited Jefferson County to clearly denote it had utilized the AG's process and therefore complied with RCW 36.70A.370(2), the Board finds, based on the Ordinance's own language, sufficient evidence in the Record to conclude the County utilized the required process."

Here, however, the Record, including the Ordinances, reveals no such compliance with RCW 36.70A.370(2). Neither Ordinance O2008-009 nor O2008-027 disclose any evaluation of the proposed regulatory action consistent with the Attorney General's process. Instead, the City relies upon the following to show the process was utilized: a) the fact that the Attorney General's Advisory Memorandum is part of the record, as Exhibit 130; b) that

---

[42] WWGMHB No. 08-2-0029c, Final Decision and Order, at 42 (11/19/08).
[43] *Olympic Stewardship*, WWGMHB Case 08-2-0029c, FDO at 42-43.
[44] Id.



Western Washington
Growth Management Hearings Board
319 7th Avenue SE, Suite 103
P.O. Box 40953
Olympia, Washington 98504-0953
Phone: 360-586-0260
Fax: 360-664-8975

000177

attorney advice was sought and provided on the issue of private property rights throughout the review process; c) the fact that the City inquired with counsel at the Municipal Services and Research Center (MRSC); and d) the Record contains evidence, reflected in council minutes and review of comments submitted by Petitioners.

The Board finds that the evidence the City relies upon does not demonstrate that the Attorney General's process was utilized. First, the mere presence of the Attorney General's Advisory Memorandum in the Record is not evidence that the process was followed or even considered. It may demonstrate that the City was on notice of the process, but nothing more.

Second, while the City points to Exhibits 95 and 115 to demonstrate that attorney advice was sought and provided on the issue of private property rights, Exhibit 95 (January 6, 2009 City Council Minutes) merely indicates that legal counsel from the mobile home park owners had raised concerns about a taking and Exhibit 115 (February 3, 2009 City Council Minutes), which the City claims shows that "[V]arious council members sought legal counsel's input on constitutional issues"[45], does not show such an inquiry being made. At most, a question was raised regarding the requirement of the MHP owners to pay relocation assistance[46].

Third, the record of inquiry with counsel at MRSC does not show compliance with RCW 36.70A.370(2). The January 24, 2008 memo from Michael Matlock of the Planning Department to the General Government Committee[47] reflects only that a member of the MRSC staff was contacted regarding the legal viability of a zone classification that allows manufactured homes exclusively and that the staff member had reservations about any

---

[45] City's Brief at 17, fn 95.
[46] Exhibit 115, February 3, 2009 minutes of Tumwater City Council Meeting, at 3.
[47] Exhibit 31 to the City's Brief.



Western Washington
Growth Management Hearings Board
319 7th Avenue SE, Suite 103
P.O. Box 40953
Olympia, Washington 98504-0953
Phone: 360-586-0260
Fax: 360-664-8975

proposal to limit property to only one use in that such a limitation could be vulnerable to a takings challenge.

Finally, as to the suggestion that the Record contains evidence that the process was considered, while a review of the sections of the Record cited by the City shows a concern as to the "legalities" of the proposed action, nothing specifically demonstrates compliance with RCW 36.70A.370(2).

While the Board has found above, in regards to Issue 2, that the City satisfied the first prong of Goal 6 by considering whether its actions constituted a taking, the evaluation process established by the Attorney General involves much more. There is nothing to indicate that the City has any sort of internal process for assessing or responding to constitutional issues.

The Board is mindful that the burden of proof in this proceeding is on the Petitioners, not the City. The City does not have to prove that it complied with the GMA. However where, as here, the Petitioners have demonstrated that the Record shows the City failed to comply with RCW 36.70A.370(2), the City must rebut with contrary evidence. The Board finds that the Petitioners have carried their burden of proof on this issue.

***Conclusion:*** In adopting the ordinance under appeal the City failed to comply with the process set out in RCW 36.70A.370(2).

**6. Internal Inconsistency**

***Issue No. 7***: Are the Zoning Code Amendments inconsistent with the Comprehensive Plan Amendments' new section 2.2.6 of the Land Use Plan Element of the City of Tumwater Comprehensive Plan because the Zoning Amendments (1) do not ensure consistency with RCW 36.70A.070(2)(c) which requires that sufficient land be available for *all* types of housing; (2) do not provide sufficient land for manufactured housing in manufactured home parks; (3) do not ensure neighborhood stability; and (4) do not provide for a design review process for greater intensity development to ensure neighborhood compatibility of new development? See RCW 36.70A.120.



Western Washington
Growth Management Hearings Board
319 7th Avenue SE, Suite 103
P.O. Box 40953
Olympia, Washington 98504-0953
Phone: 360-586-0260
Fax: 360-664-8975

amendments substantially interfere with the goals of the GMA, the statutory standard.[67] In addition, none of the issues presented in this case made a claim of invalidity. This Board has long held that RCW 36.70A.290(1) precludes the Board from considering those issues, including a claim of invalidity, not set forth as an issue in the Petition for Review nor in the Prehearing Order.[68]

## VI. ORDER

Based on the foregoing, the City is ordered to come into compliance with RCW 36.70A.370(2) pursuant to this decision within 90 days. The following schedule for compliance, briefing and hearing shall apply:

| Item | Date Due |
|---|---|
| **Compliance Due** | **January 13, 2010** |
| Compliance Report and Index to Compliance Record | January 27, 2010 |
| Objections to a Finding of Compliance | February 10, 2010 |
| Response to Objections | February 17, 2010 |
| **Compliance Hearing** | **February 23, 2010 @ 10:00 a.m.** |

DATED this 13th day of October, 2009.

James McNamara, Board Member

William Roehl, Board Member

Nina Carter, Board Member

[67] RCW 36.70A.302.
[68] See, CMV v. Mount Vernon, WWGMHB No. 98-2-0006, FDO (7/23/98).



Western Washington
Growth Management Hearings Board
319 7th Avenue SE, Suite 103
P.O. Box 40953
Olympia, Washington 98504-0953
Phone: 360-586-0260
Fax: 360-664-8975

# EXHIBIT Q

RECEIVED

NOV 16 2009

FOSTER PEPPER PLLC

BEFORE THE WESTERN WASHINGTON GROWTH MANAGEMENT HEARINGS BOARD

LAUREL PARK COMMUNITY LLC, MANUFACTURED HOUSING COMMUNITIES OF WASHINGTON, AND TUMWATER ESTATES INVESTORS,

Petitioners,

v.

CITY OF TUMWATER ,

Respondent.

Case No. 09-2-0010

**ORDER ON PETITIONERS' and CITY'S MOTIONS FOR RECONSIDERATION**

THIS Matter comes before the Board upon Petitioners' Motion for Reconsideration of the Board's October 13, 2009 Final Decision and Order (FDO).[1]

In addition, the City of Tumwater has filed its own Motion for Reconsideration. The City has combined its motion with a compliance report and motion for a finding of compliance[2].

## I. PRELIMINARY MATTERS

With regard to the filing of a response to motions for reconsideration, WAC 242-02-832(1) provides:

> (1) After issuance of a final decision any party may file a motion for reconsideration with a board in accordance with subsection (2) of this section. Such motion must be filed within ten days of service of the final decision. The original and three copies of the motion for reconsideration shall be filed with the board. At the same time, copies shall be served on all parties of record. **Within five days of filing the motion for reconsideration, a party may file an answer to the motion for reconsideration** without direction or request from the board. A board may require other parties to supply an answer. All answers to motions for reconsideration shall be served on all parties of record. (**Emphasis added**).

[1]Petitioners' Motion for Reconsideration, filed October 22, 2009.

[2] City of Tumwater's Motion for Reconsideration; or in the Alternative a Finding of Compliance Based on the Compliance Report in Section 2.2, filed October 23, 2009.



Western Washington
Growth Management Hearings Board
319 7th Avenue SE, Suite 103
P.O. Box 40953
Olympia, Washington 98504-0953
Phone: 360-586-0260
Fax: 360-664-8975

WAC 242-02-060 provides that when the time prescribed or allowed is less than seven days, intermediate Saturdays and Sundays shall be excluded from the computation.

Petitioners' filed their Motion for Reconsideration on October 22, 2009. A timely response to the motion would have been due on October 29. Tumwater did not comply with the deadline. Instead, the City's response was filed on November 2, 2009. Therefore the Board has not considered materials in response to the Petitioners' motion submitted in violation of WAC 242-02-832(1). Only the Petitioners have filed a timely response to the Motion for Reconsideration.[3]

As an additional preliminary matter, the Board notes that the City has submitted, with its Motion for Reconsideration, a request for a finding of compliance, based on a compliance report contained within the motion. With their response, Petitioners object to the declaration supporting this request as well as the request itself.[4]

The Board finds that it is premature to consider the City's request for a finding of compliance. The Board issued the Final Decision and Order on October 13, 2009. However, with the filing of the motions for reconsideration, this decision has not become final since the Board can change or modify the FDO based on the motions. Once the FDO becomes final, because the finding of noncompliance remains in place, a compliance process begins that provides for briefing from both Petitioners and Respondent as well as a hearing before the Board before a determination is made as to whether the local jurisdiction has come into compliance with the GMA. Considering the City's motion at this time would turn this process on its head. Neither party can know the nature of the finding of non-compliance until the FDO becomes final. The City cannot offer to show compliance, nor can Petitioners meaningfully respond to a compliance report that is based on an FDO that is still

---

[3] Petitioners' Response, filed October 30, 2009.
[4] Id. at 2-3, 5-6.



Western Washington
Growth Management Hearings Board
319 7th Avenue SE, Suite 103
P.O. Box 40953
Olympia, Washington 98504-0953
Phone: 360-586-0260
Fax: 360-664-8975

under reconsideration. Accordingly, the City's motion in the alternative for a finding of compliance is premature and on that basis is denied.

## II. DISCUSSION AND ANALYSIS

A motion for reconsideration of a final decision of a Board is governed by WAC 242-02-832. WAC 242-02-832(2) provides that a motion for reconsideration must be based on at least one of the following grounds:

(a) Errors of procedure or misinterpretation of fact or law, material to the party seeking reconsideration;
(b) Irregularity in the hearing before the board by which such party was prevented from having a fair hearing; or
(c) Clerical mistakes in the final decision and order.

**Petitioners' Motion**

***Claimed Error No. 1:*** *"The Board Misinterpreted and/or Misapplied GMA by Converting the Substantive GMA Property Rights Goal into a Mere Procedural Requirement"*

In addressing Petitioners' Goal 6 claim, the Board concluded that Petitioners had not proven a violation of the "takings" prong of that goal because there was evidence the City Planning Commission, staff, and City Council gave time and consideration to whether the City's actions in adopting the Manufactured Home Park (MHP) zoning district amendments constituted a taking.[5] Petitioners assert that this converts the substantive requirements of the GMA property rights goal into a mere procedural requirement. Further, they argue that because the Board has concluded that the City failed to follow the process established by the State Attorney General to evaluate potential takings, as required by RCW 36.70A.370, the FDO results in the City being found compliant with a procedural requirement without having actually used the procedure mandated by statute.[6]

---

[5] FDO at 10.
[6] Petitioners' Motion for Reconsideration at 3.



Western Washington
Growth Management Hearings Board
319 7th Avenue SE, Suite 103
P.O. Box 40953
Olympia, Washington 98504-0953
Phone: 360-586-0260
Fax: 360-664-8975

The Board finds that the Petitioners' argument has merit. As was noted in the FDO, the GMA's Property Right Goal has two separate and distinct prongs – the "takings" prong and the "protection" prong.[7] While this Board has found that "the 'takings' prong of Goal 6 is to be reviewed to determine if adequate consideration of that prong has been given by the decision makers",[8] it is also true that the GMA provides a process for local governments to utilize in order to assure that proposed regulatory or administrative actions do not result in an unconstitutional taking of private property. That process is laid out in RCW 36.70A.370. It is not necessary for the Board to develop its own test of when "adequate consideration of [ the takings ] prong has been given by the decision makers" when the GMA has set out the specific process to be followed. Therefore the Board modifies its October 13, 2009 FDO to recognize that in analyzing the first prong of a Goal 6 property rights claim, it is appropriate to consider whether the local jurisdiction complied with RCW 36.70A.370 in evaluating the proposed action.[9]

Here, Petitioners raised a claim under RCW 36.70A.370 as well as a Goal 6 claim. However, while the Board found that the City failed to comply with RCW 36.70A.370, a conclusion undisturbed by this Order on Motions for Reconsideration, this does not necessarily resolve the Goal 6 issue in Petitioners' favor. Concluding that a local jurisdiction failed to adequately consider the takings aspect of a proposed action does not necessarily mean that a takings occurred.

---

[7] FDO at 10, citing to *Achen v. Clark County*, WWGMHB Case No. 95-2-0067c, FDO (9/20/95)
[8] *Achen v. Clark County*, WWGMHB No. 95-2-0067c, Final Decision and Order (9/20/95). See also, *Beckstrom v San Juan County*, WWGMHB No. 95-2-0081, FDO (1/23/98) and *Abenroth v. Skagit County*, WWGMHB No. 97-2-0060c FDO (1/3/96).
[9] In reaching this conclusion, the Board is not merely substituting one procedural requirement for another. While RCW 36.70A.370 creates a requirement to utilize the Attorney General's process in evaluating regulatory and administrative actions for constitutional takings, whether the action violates Goal 6 is subject to a different analysis as detailed in the FDO at 10 *et seq.*



Western Washington
Growth Management Hearings Board
319 7th Avenue SE, Suite 103
P.O. Box 40953
Olympia, Washington 98504-0953
Phone: 360-586-0260
Fax: 360-664-8975

The Petitioners are reminded the Board does not have the jurisdictional to determine whether a taking of a private property right has actually occurred; such a claim is to be determined by the courts.[10]

***Claimed Error No. 2:*** *"The Board Misinterpreted and/or Misapplied GMA by Erroneously Characterizing MHPs as Similar to GMA-Defined Uses Like Agricultural Land and Airports, thus Erroneously Concluding that MHPs Could be the Subject of a Single-Use Zone Designation."*

Petitioners argue that the Board erred that MHPs could be the subject of single-use zoning, much in the same way many zoning codes treat agricultural lands and airports. Petitioners stress that, under the GMA, agricultural lands and airports are given significance[11] different than MHPs and that, therefore, the Board's conclusion that Petitioners' property rights were not affected by the City's single-use zoning designation of MHPs is based on an erroneous analysis and application of the law.[12]

While the Board used agricultural lands and airports as examples of single purpose zoning recognized under the GMA, the Petitioners are incorrect in asserting that "The Board was able to reach its conclusion that Issue 2 was not proved by Petitioners in significant part because it found that MHPs are similar to agricultural land and airports, and thus a proper subject of single use zoning treatment."[13] In fact, the Board mentioned these two uses in passing in noting that Petitioners acknowledged at the Hearing on the Merits that there was

---

[10] See, FDO at 10. See, also Beckstrom v. San Juan County, WWGMHB No. 95-2-0081, FDO (1/3/96), "We have previously held that our role is to ensure that private property rights as to takings have been adequately considered by local governments. (*Achen, et al., v. Clark County,* #95-2-0067). Takings claims are to be determined by the Courts."

[11] Petitioners point out that agricultural lands have a special status under the GMA and, thus, are legally and qualitatively different than MHPs. *Motion for Reconsideration, at 5-7.* As for airports, Petitioners state these a classified as essential public facilities for which the GMA imposes duties and obligations. *Motion for Reconsideration, at 7-8.*

[12] Petitioners' Motion for Reconsideration at 5-6.

[13] Id. at 8.



Western Washington
Growth Management Hearings Board
319 7th Avenue SE, Suite 103
P.O. Box 40953
Olympia, Washington 98504-0953
Phone: 360-586-0260
Fax: 360-664-8975

no infirmity in a zone that restricts the use of land to a single purpose.[14] While Petitioners are correct that these two particular uses are special and unique under the GMA, other single purpose uses could just have easily been cited. Petitioners miss the basis of the Board's conclusion that a Goal 6 claim had not been established, i.e. that there is no right to be protected from a change in zoning. As the Board said, "Because there is no right to the continuation of existing zoning, there is no dispossession of a property right by City action that changes the zoning of their property."[15] The fact that Petitioners' property was rezoned to a single purpose district is almost beside the point since, neither in the briefing for the HOM nor in their Motion for Reconsideration have Petitioners cited any case law to challenge the legality of single purpose zoning.

***Claimed Error No. 3:*** *"The Board Misinterpreted and/or Misapplied GMA by Erroneously Characterizing Petitioners' Challenge to Tumwater's Failure to Determine the Effect of it Comprehensive Plan Changes on Housing Availability as a Challenge to Tumwater's Land Capacity Analysis"*

Petitioners argue that the Board misunderstood its arguments relative to Issues 3 and 9 and, that instead of challenging the City's Land Capacity Analysis, it argued that by changing the zoning of the six MHPs the residential capacity of that land was changed thereby requiring an examination of the impact of that change on the City's ability to satisfy its population forecast.[16]

In making this argument within its motion, Petitioners rely on the requirements of RCW 36.70A.130(d) and RCW 36.70A.115. However, Petitioners based their challenge in Issues 3 and 9 on allegation of a violation of RCW 36.70A.070(2) – the provision of the GMA that mandates a housing element – and relied exclusively on that provision in the briefing filed

---

[14] FDO at 11-12.
[15] Id. at 12.
[16] Petitioners' Motion for Reconsideration, at 9-10.



Western Washington
Growth Management Hearings Board
319 7th Avenue SE, Suite 103
P.O. Box 40953
Olympia, Washington 98504-0953
Phone: 360-586-0260
Fax: 360-664-8975

so would violate the attorney-client privilege. But, as the Petitioners pointed out in their HOM Reply Brief, "Had Tumwater actually utilized this process, certainly there would have been some documentation available (even if it would be redacted to protect attorney-client privilege under RCW 36.70A.370(4)."[31] The Board concurs.

The Board recognizes that the actual deliberations between a local government's attorney and elected and appointed officials, while they utilize the Attorney General process, is protected by the attorney-client privilege. However, it is a statutory mandate that they utilize that process.[32] Where, as here, Petitioners have submitted evidence that the Record is devoid of any evidence that the process was utilized, the City may not assume that the attorney-client privilege relieves them of any obligation to point to contrary evidence in the record that the process was utilized.

Therefore the Board concludes that the City's Motion is based on new evidence. A Motion for Reconsideration must be based on the grounds provided for in WAC 242-02-832(2) such as an error of procedure or misinterpretation of fact or law. Therefore, the Board will not reconsider its conclusion regarding Issue #5 based on declarations submitted after the HOM. Additionally, the Board rejects the City's argument that the attorney-client privilege relieves a local jurisdiction from the obligation to rebut evidence that it failed to comply with RCW 36.70A.370. Based on the record, as it existed on the date of the HOM, there was no evidence that the City had complied with RCW 36.70A.370. The City's Motion is denied.

## III. ORDER

For the reasons set forth above, the Board's earlier conclusion that the takings element of Goal 6 had been met because there was evidence in the record that the City Planning Commission, staff, and City Council gave time and consideration to whether its actions

---

[31] Petitioners' HOM Reply Brief at 10.

[32] "Local governments that are required to plan under RCW 36.70A.040 and state agencies shall utilize the process established by subsection (1) of this section . . . " RCW 36.70A.370(2).



Western Washington
Growth Management Hearings Board
319 7th Avenue SE, Suite 103
P.O. Box 40953
Olympia, Washington 98504-0953
Phone: 360-586-0260
Fax: 360-664-8975

constituted a taking is modified as set forth above and, to that extent, the Petitioners' Motion for Reconsideration is GRANTED.

In all other respects, Petitioners' motion is DENIED.

The City's Motion for Reconsideration is hereby DENIED. The City's Motion for a Finding of Compliance is DENIED as premature.

SO ORDERED this 12th day of November, 2009.

James McNamara, Board Member

Unavailable for signature at time of issuance

William Roehl, Board Member

Nina Carter, Board Member

**Pursuant to RCW 36.70A.300 this is a final order of the Board.**

**<u>Judicial Review</u>. Any party aggrieved by a final decision of the Board may appeal the decision to superior court as provided by RCW 36.70A.300(5). Proceedings for judicial review may be instituted by filing a petition in superior court according to the procedures specified in chapter 34.05 RCW, Part V, Judicial Review and Civil**

**<u>Enforcement.</u> The petition for judicial review of this Order shall be filed with the appropriate court and served on the Board, the Office of the Attorney General, and all parties within thirty days after service of the final order, as provided in RCW 34.05.542. Service on the Board may be accomplished in person, by fax or by mail, but service on the Board means <u>actual receipt of the document at the Board office</u> within thirty days after service of the final order.**



Western Washington
Growth Management Hearings Board
319 7th Avenue SE, Suite 103
P.O. Box 40953
Olympia, Washington 98504-0953
Phone: 360-586-0260
Fax: 360-664-8975