1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

LAUREL PARK COMMUNITY, LLC, a Washington
limited liability company; TUMWATER ESTATES
INVESTORS, a California limited partnership;
VELKOMMEN MOBILE PARK, LLC, a Washington
limited liability company; and MANUFACTURED
HOUSING COMMUNITIES OF WASHINGTON, a
Washington non-profit corporation,

No. C09-05312BHS

DECLARATION OF
JAMES ANDERSEN IN
SUPPORT OF PARTIAL
SUMMARY JUDGMENT

Plaintiffs,

v.

CITY OF TUMWATER, a municipal corporation,

Defendant.

JAMES ANDERSEN declares and states as follows:

1.     I am over the age of eighteen, competent to testify, and familiar with the facts herein.

2.     I am a partner in Velkommen Mobile Park, LLC, which owns Velkommen Park, a manufactured housing community located in Tumwater, Washington. My family has owned and managed Velkommen Park since we developed it in 1975.

3.     My family developed Velkommen Park long before Tumwater's manufactured home park ordinances took effect. We bought the property in reliance on the zoning permitted at the time. The property was then zoned *multi*-family medium density residential. Until

Declaration of James Andersen - 1

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630

000109

1  Tumwater's ordinances went into effect, under the zoning then in effect, we were permitted to

2  use our property for a variety of uses, including single and multi-family dwellings, manufactured

3  home parks, residential planned unit developments, and any combination of permitted uses. We

4  anticipated using the property as a mobile home park so long as that use was economically

5  viable. We expected to be able to turn to other economically productive uses at our discretion or

6  to sell it if it became economically unviable.

7       3.    Under Tumwater's existing zoning, we can now only use our property for

8  manufactured home parks, parks, trails, open space areas, support facilities, and child care

9  facilities. We are also permitted to construct one single-family detached residence per existing

10  single lot of record. Our property is situated on approximately 11.13 acres of land within

11  Tumwater and contains 39 mobile home pads. But we would be allowed to construct only one

12  single-family detached residence on the property if we removed the existing manufactured

13  homes. The additional uses to which we are permitted to put our property under the existing

14  zoning are not economically viable uses of the property because some, like parks and trails, earn

15  no income at all. Others, like support and child care facilities, require an investment with little

16  probability of return and licensure to be possible. A limited number of other primarily public or

17  institutional uses, such as churches, cemeteries, and essential public facilities are also possible

18  under the current zoning. But a church or a cemetery is hardly a viable economic use; the

19  possibility of any return on such use is illusory. This is all the more obvious when the value of

20  our property and its income-generating ability as a church or a cemetery is compared to its value

21  and income-generating ability when used for multi-family housing. None of the conditional uses

22  permitted under Tumwater's existing zoning are *viable* economic uses of our property, especially

23  when considering that many of those uses would require additional discretionary permitting by

24  Declaration of James Andersen - 2

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630

000200

1   Tumwater.  Acquiring the necessary permits from Tumwater for such uses seems unlikely.  By

2   mandating that Velkommen Park remain a mobile home park, Tumwater has deprived us of

3   viable use of our property and damaged its fair market value.

4       4.      During the spring of 2008, we listed Velkommen Park for sale with NW Park

5   Brokerage, Inc. in Seattle.  We received an offer to purchase the park for $1.75 million in

6   May 2008; the sale was to close on July 31, 2008.  A true and correct copy of that offer is

7   attached to my declaration as exhibit A.  In September 2008, we received a second offer to

8   purchase the park for $1.6 million; the sale was to close on November 28, 2008.  A true and

9   accurate copy of that offer is attached to my declaration as exhibit B.  Neither sale closed.

10

11      5.      After Tumwater publicly announced that it intended to rezone Velkommen Park

12  from its then-existing medium-density residential zoning to an exclusive mobile home park zone

13  district, the prospective purchasers advised us that they did not wish to close their respective

14  offers.  To date, we have not received any additional purchase offers for the park.

15      I declare under penalty of perjury under the laws of the State of Washington that the

16  foregoing is true and correct.  Executed at Olympia, Washington this 26 day of

17  January, 2010.

18

19

20                  James Andersen

21

22

23

24

25

26  Declaration of James Andersen – 3

                                    Talmadge/Fitzpatrick
                                    18010 Southcenter Parkway
                                    Tukwila, Washington  98188-4630

000201

# EXHIBIT A

000202

## NORTHWEST PARK BROKERAGE

### Real Estate Purchase Agreement
### With Earnest Money Provision

## THIS IS A LEGALLY BINDING CONTRACT. READ ALL PAGES CAREFULLY BEFORE SIGNING.

The undersigned Purchaser, Fenton Properties LLC and or assignee agrees to buy and the Seller, Mrs. Phyllis Anderson (Velkommen Mobile Park LLC) agrees to sell, the Real Property located at 2535 70th AVE SW, Tumwater, Washington, commonly known as Velkommen Home Park (39 spaces).

Legal Description: To be inserted by written approval of Feasibility study.

1) Northwest Park Brokerage, as Agent for Seller, acknowledges receipt of an Earnest Money Payment of One Hundred Thousand and no/100 Dollars ($75,000.00) in the form of a promissory note. Within five business days Agent shall open escrow and deposit this Earnest Money (or after promissory note has been cashed, as per Paragraph 8 below) with Transnation Title and Escrow Company along with a copy of this Purchase and Sale Agreement. The Escrow Account shall be interest bearing with interest accruing to the Purchaser. The Escrow Company is hereby directed to prepare escrow instructions and to close escrow according to the terms and conditions of this Purchase Agreement. The Close of Escrow (or "Closing Date") shall occur on or before July 31, 2008. Escrow fees shall be paid 50% by Purchaser and 50% by Seller, Seller to pay excise tax. All other closing costs to be paid in accordance with the customs of the county in which the Property is located. Chicago title and Escrow shall be the closing agent.

2) PURCHASE PRICE: The Purchase Price for the Property shall be One Million Seven Hundred Twenty Five Thousand /100 Dollars ($1,750,000.00), allocated as follows:

3) DOWN PAYMENT: The down payment for the Property shall be $425,000.00 including Earnest Money.

4) FINANCING: The balance of the Purchase Price, minus the down payment, shall be contingent upon obtaining additional financing in the form of:

Seller will provide financing for the balance in the amount of One Million Three Hundred Thousand and no/100 Dollars ($1,300,000.00) at an interest rate of Six per cent (6%) with a 30 year amortization and a 15 year call, interest only or principal and interest payment at Buyer's option. Payments shall be due on the 5th day of each month, with a 10 day grace period. If payment is not received within 10 days of the due date a penalty of 5% of the normal payment shall be levied. Said Note and Deed of Trust will be on standard title company forms, and be in first lien position on all of the property. Said note will be assumable with Seller's approval, not to be unreasonable withheld. The note has no payment penalty and may be cashed out at anytime without the Seller's approval. Buyer to provide proof of insurance and current tax payments annually to the Seller. Seller shall be named at all times as an additional insured and as loss payee on all insurance policies.

Seller(s) Initials: ___  ___ Date: _____          1          Buyer(s) Initials: _____ Date: 5/12/08
                                                                           Brooke Fenton

360-275-3765    p.4
May 12 08 10:04a

000203

**7C) OTHER INSPECTIONS:** Both parties to be in agreement to a written water/well arrangement that provides potable water source to the park at a cost of $15 per unit per month (paid by Buyer to Seller monthly). Service cost to provide adequate quality water and maintain water lines to each park home site and existing water lines within park.

**8) DEPOSIT INCREASE/CASH PROMISSORY NOTE:** Upon removal of contingencies 7A&B, Purchaser shall convert the promissory note to cash and deposit into escrow within (3) business days. If Purchaser requires interest bearing account, then Purchaser hereby submits his/her Social Security number: _____

**9) WARRANTIES:** Seller warrants to the best of Seller's knowledge that there are no known material defects of the property, that the Property is in conformance with local laws and codes, that the property is composed of 39 total legal units, that the Property is not in a flood zone, that there are no hazardous materials on the properties, that all properties are serviced by private utilities, that the electrical system provides 200 amp service for each mobile home space. The sewer and water system are in good working order. Sewer system will be pumped cleaned within 15 days of closing. Any exceptions so noted here:

**10) RISK OF LOSS:** If, prior to closing, the property is destroyed or materially damaged by fire or other casualty, this Purchase Agreement shall be voidable at Purchaser's option.

**11) LIQUIDATED DAMAGES:** Because it would be extremely difficult to affix actual damages in the event of a default by the Purchaser, both Purchaser and Seller agree that the Purchaser's Earnest money (not to exceed 5% of the Purchaser Price) shall be deemed as damages for the Seller if the Purchaser defaults with no legal excuse, that Purchaser shall forfeit said earnest money to Seller and that said forfeiture shall be the sole remedy for the Seller.

**12) ARBITRATION:** In the event that this contract comes under dispute, Purchaser, Seller and Agent agree to resolve said controversy by final binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

**13) ATTORNEY'S FEES:** In any litigation, arbitration or other legal proceeding which may arise between the Purchaser, Seller or Agent, the prevailing party shall be entitled to recover its costs of arbitration and/or reasonable legal fees in addition to any other relief it may be entitled to.

**14) SELLER EXCHANGE:** Purchaser agrees to cooperate with Seller if Seller elects to complete a tax-deferred exchange under IRC Section 1031. Purchaser shall not assume, and Seller shall agree to hold harmless the Purchaser, from any liability or additional cost in said exchange. This Purchase Agreement is not contingent upon Seller finding an exchange property.

**15) PURCHASER'S EXCHANGE:** : If Purchaser is buying the Subject Property as part of a IRC Section 1031 exchange, Seller agrees to cooperate in effecting said exchange. Purchaser agrees to hold harmless the Seller from any liability or any expense associated with said exchange. This Purchase Agreement is not contingent upon the sale of the Purchaser's property.

**16) AGENCY:** William Jackson, Broker, Northwest Park Brokerage Inc. is representing the Buyer and Seller; both parties acknowledges receipt of the agency law booklet.

Seller(s) Initials ____ ____ Date: _____          3          Buyer(s) Initials _BR_ ____ Date: 5/14/08

TO:12538138133          P.4/6

**17) OTHER BROKERS:** In the event another broker is involved in the sale of the Subject Property, Agent shall have no liability for errors or omissions committed by said broker.

**18) BROKER DISCLAIMER:** Broker makes no warranties or representations regarding the accuracy of information provided by Broker to other parties. Broker is not qualified to give legal advice and suggests that each party consult with their own attorney, accountant, or other adviser for further advice. Purchaser is a licensed Real Estate broker in the state of Washington representing himself and not the Seller.

**19) TIME:** Time is of the essence of this Agreement.

**20) NOTICES:** All notices shall be given in writing to both the Agent and to the other party as listed by party's name below.

**21) ADDENDA:** Any addendum attached hereto and initialed by both parties shall be deeded as being incorporated herein by reference. There are no other oral or written understandings or warranties except as set forth herein.

**22) GOVERNING LAW:** This Agreement shall be governed in accordance with the laws of the State of Washington.

**23) OTHER TERMS AND CONDITIONS:**

**24) ACCEPTANCE AND EFFECTIVE DATE:** Unless Seller accepts this offer in writing and delivers to Purchaser or Purchaser's Agent, by May 15, 2008 (5pm), then this Agreement shall be null and void, the Earnest Money shall be returned to the Purchaser, and neither side shall have any further obligation to the other. The "Effective Date" of this contract shall be the latter of a) the date on which the Seller signs this agreement or b) the date any final counter offer is signed by both Purchaser and Seller. The undersigned Purchaser offers and agrees to purchase the Subject Property under terms and conditions herein stated. This offer is made on the 12th day of May, 2008. The Purchaser acknowledges a receipt of an executed copy of this agreement. Any counter will be valid for 48 hours from date of change; otherwise agreement will be null and void.

Seller(s) Initials: _____   _____  Date: _____          4          Buyer(s) Initials: _BAF_  ___  Date: 5/12/08

FC                    JUL-21-2/05                                        Brooks Fenton      May 12 08 10:06a

000205

Fenton Properties LLC and/or Assigns        Fentonbr@mm.com      *fe* *mu* *S* *fe* 108
Brooks R. Fenton , Managing Member

PURCHASER: _____        ADDRESS: __22022_____
                Buyer name                    _Des Moines, Wa. 98198_

DATE: __5/12/08_____        TELEPHONE: _206. 947. 1846_

PURCHASER: _____        ADDRESS: _____
                Buyer name                    _____

DATE: _____        TELEPHONE: _____


## SELLER'S ACCEPTANCE


Seller acknowledges receipt of a Purchaser-signed copy of this Agreement. Seller agrees to pay a commission of Three percent (3%) of the sales price per listing agreement. Payable to NW Park Brokerage Inc. at the time of closing.


SELLER: _____        ADDRESS: _____
                Seller name                    _____

DATE: _____        TELEPHONE: _____

SELLER: _____        ADDRESS: _____
                Seller name                    _____

DATE: _____        TELEPHONE: _____

Seller(s) Initials: _____  Date: _____        5        Buyer(s) Initials: _____  Date: 5/12/08

5KU-27u-G3/85                                        Brooks Fenton    May 12 08 10:05a

AGENT: NORTHWEST PARK BROKERAGE.
2375 130th AV NE Suite 102
Bellevue, WA 98005
855-205-8281
Email billj@nwparks.com

By: _____   Date: _____5.12.08_____

Seller(s) Initials: _____   Date: _____
a'd                        02/0-017-00P

000207

Buyer(s) Initials: _____   Date: 5/12/08

Brooks Fenton      May 12 08 10:06a

# EXHIBIT B

000208

NWMLS Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 1 of 12

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

## COMMERCIAL AND INVESTMENT REAL ESTATE
## PURCHASE AND SALE AGREEMENT

This has been prepared for submission to your attorney for review and approval prior to signing.
No representation is made by licensee as to its sufficiency or tax consequences.

1
2 Washington Street Properties, LLC and or assigns    Reference Date: _September 12, 2008_
3 Phyllis Anderson _____ ("Buyer") agrees to buy and
4 following terms, the commercial real estate and all improvements thereon (collectively, the "Property") commonly ("Seller") agrees to sell, on the
5 known as 2535 70th Ave SW,
6 City of _Tumwater_ , _____ , _Thurston_ County, Washington, legally in the
7 described on attached Exhibit A. The Reference Date above is intended to be used to reference this Agreement, and
8 is not the date of "Mutual Acceptance." Mutual Acceptance is defined in Section 23 below.

9 **1. PURCHASE PRICE.** The total purchase price is _One Million Six Hundred Thousand_
10 Dollars ( _$1,600,000.00_ ) payable as follows (check only one):

11 ☐ All cash at closing with no financing contingency.

12 ☐ All cash at closing contingent on new financing in accordance with the Financing Addendum (attach CBA
13 Form PS_FIN).

14 ☑ $160,000.0( _____ % of the purchase price in cash at closing with the balance of the purchase price
15 paid as follows **(check one or both, as applicable):** ☐ Buyer's assumption of the outstanding principal balance
16 as of the Closing Date of a first lien note and deed of trust (or mortgage), or real estate contract, in accordance
17 with the Financing Addendum (attach CBA Form PS_FIN); ☑ Buyer's delivery at closing of a promissory note for
18 the balance of the purchase price, secured by a deed of trust encumbering the Property, in accordance with the
19 Financing Addendum (attach CBA Form PS_FIN).

20 ☑ Other: _SEE ADDENDUM_
21 _____

22 **2. EARNEST MONEY.** The earnest money in the amount of _____ $2,000.00 _____ shall
23 be in the form of ☐Cash ☐Personal check ☑Promissory note (attach CBA Form EMN) ☐Other:_____ .
24 The earnest money shall be held by ☐Selling Licensee ☑Closing Agent.
25 Buyer shall deliver the earnest money no later than:
26 ☑ _5_ days after Mutual Acceptance.
27 ☐ On the last day of the Feasibility Period defined in Section 5 below.
28 ☐ Other:_____

29 Selling Licensee may, however, transfer the earnest money to Closing Agent.

30 If the earnest money is to be held by Selling Licensee and is over $10,000, it shall be deposited to: ☐ Selling
31 Licensee's pooled trust account (with interest paid to the State Treasurer) ☐ A separate interest bearing trust
32 account in Selling Licensee's name. The interest, if any, shall be credited at closing to Buyer. If this sale fails to
33 close, whoever is entitled to the earnest money is entitled to interest.

34 Selling Licensee shall deposit any check to be held by Selling Licensee within 3 days after receipt or Mutual
35 Acceptance, whichever occurs later. Buyer agrees to pay financing and purchase costs incurred by Buyer.
36 Unless otherwise provided in this Agreement, the earnest money shall be applicable to the purchase price.

37 **3. EXHIBITS AND ADDENDA.** The following Exhibits and Addenda are made a part of this Agreement:
38 ☑ Exhibit A - Legal Description
39 ☑ Earnest Money Promissory Note, CBA Form EMN
40 ☑ Promissory Note, LPB Form No. 28A/CBA Form N-1A
41 ☐ Short Form Deed of Trust, LPB Form No. 20
42 ☑ Deed of Trust Rider, CBA Form DTR
43 ☐ Utility Charges Addendum, CBA Form UA

Initials: BUYER: _WSP_    DATE: _9/12/08_    SELLER:_ _____ DATE:_____

BUYER: _____ DATE: _____ SELLER:_____ DATE:_____ **-182-**

000209

CBA Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 2 of 12

**COMMERCIAL AND INVESTMENT REAL ESTATE
PURCHASE AND SALE AGREEMENT
(CONTINUED)**

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

44 ☐ FIRPTA Certification, CBA Form 22E
45 ☑ Assignment and Assumption, CBA Form PS-AS
46 ☑ Addendum/Amendment, CBA Form PSA
47 ☐ Back-Up Addendum, CBA Form BU-A
48 ☐ Vacant Land Addendum, CBA Form VLA
49 ☐ Financing Addendum, CBA Form PS_FIN
50 ☐ Tenant Estoppel Certificate, CBA Form PS_TEC
51 ☐ Defeasance Addendum, CBA Form PS_D
52 ☐ Other _____

53 **4. SELLER'S UNDERLYING FINANCING.** Unless Buyer is assuming Seller's underlying financing, Seller shall be
54 responsible for confirming the existing underlying financing is not subject to any "lock out" or similar covenant
55 which would prevent the lender's lien from being released at closing. In addition, Seller shall provide Buyer notice
56 prior to the end of the Feasibility Period if Seller is required to substitute securities for the Property as collateral
57 for the underlying financing (known as "defeasance"). If Seller provides this notice of defeasance to Buyer, then
58 the parties shall close the transaction in accordance with the process described in CBA Form PS_D or any
59 different process identified in Seller's defeasance notice to Buyer.

60 **5. FEASIBILITY CONTINGENCY.** Buyer's obligations under this Agreement are conditioned upon Buyer's
61 satisfaction in Buyer's sole discretion, concerning all aspects of the Property, including its physical condition; the
62 presence of or absence of any hazardous substances; the contracts and leases affecting the property; the
63 potential financial performance of the Property; the availability of government permits and approvals; and the
64 feasibility of the Property for Buyer's intended purpose. This Agreement shall terminate and Buyer shall receive a
65 refund of the earnest money unless Buyer gives written notice to Seller within _____ days (30 days if not filled in)
66 of Mutual Acceptance stating that this condition is satisfied. If such notice is timely given, the feasibility
67 contingency stated in this Section 5 shall be deemed to be satisfied. As used in this Agreement, the term
68 "Feasibility Period" shall mean the period beginning upon Mutual Acceptance and ending upon the satisfaction or
69 waiver of the feasibility contingency.

70 **a. Books, Records, Leases, Agreements.** Seller shall make available for inspection by Buyer and its agents
71 within _____ days (2 days if not filled in) after Mutual Acceptance all documents in Seller's possession or control
72 relating to the ownership, operation, renovation or development of the Property, excluding appraisals or other
73 statements of value, and including: statements for real estate taxes, assessments, and utilities for the last three
74 years and year to date; property management agreements and any other agreements with professionals or
75 consultants; leases or other agreements relating to occupancy of all or a portion of the Property and a
76 suite-by-suite schedule of tenants, rents, prepaid rents, deposits and fees; plans, specifications, permits,
77 applications, drawings, surveys, and studies; and maintenance records, accounting records and audit reports for
78 the last three years and year to date; and "Vendor Contracts" which shall include maintenance or service
79 contracts, and installments purchase contracts or leases of personal property or fixtures used in connection with
80 the Property. Buyer shall determine within the Feasibility Period: (i) whether Seller will agree to terminate any
81 objectionable Vendor Contracts; and (ii) whether Seller will agree to pay any damages or penalties resulting from
82 the termination of objectionable Vendor Contracts. Buyer's waiver of the Feasibility Contingency shall be deemed
83 Buyer's acceptance of all Vendor Contracts which Seller has not agreed in writing to terminate. Buyer shall be
84 solely responsible for obtaining any required consents to such assumption and the payment of any assumption
85 fees. Seller shall cooperate with Buyer's efforts to receive any such consents but shall not be required to incur
86 any out-of-pocket expenses or liability in doing so. Seller shall transfer the Vendor Contracts as provided in
87 Section 17 of this Agreement. Any leases, contract or agreements that run with title to the Property are
88 addressed in Section 6(b) below.

89 **b. Access.** Seller shall permit Buyer and its agents, at Buyer's sole expense and risk to enter the Property at
90 reasonable times subject to the rights of and after legal notice to tenants, to conduct inspections concerning the
91 Property and improvements, including without limitation, the structural condition of improvements, hazardous
92 materials, pest infestation, soils conditions, sensitive areas, wetlands, or other matters affecting the feasibility of
93 the Property for Buyer's intended use. Buyer shall schedule any entry onto the Property with Seller in advance

Initials: BUYER: _WSB_   DATE: _9/12/08_   SELLER: _____   DATE _____

BUYER: _____   DATE: _____   SELLER: _____   DATE: _____   -184-

000210

LS Form 24
A Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 3 of 12

**COMMERCIAL AND INVESTMENT REAL ESTATE
PURCHASE AND SALE AGREEMENT
(CONTINUED)**

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

94  and shall comply with Seller's reasonable requirements including those relating to security, confidentiality, and
95  disruption of Seller's tenants. Buyer shall not perform any invasive testing including environmental inspections
96  beyond a phase I assessment or contact the tenants or property management personnel without obtaining the
97  Seller's prior written consent, which shall not be unreasonably withheld. Buyer shall restore the Property and
98  improvements to the same condition they were in prior to inspection. Buyer shall be solely responsible for all
99  costs of its inspections and feasibility analysis and has no authority to bind the Property for purposes of statutory
100 liens. Buyer agrees to indemnify and defend Seller from all liens, costs, claims, and expenses, including
101 attorneys' and experts' fees, arising from or relating to entry onto or inspection of the Property by Buyer and its
102 agents. This agreement to indemnify and defend Seller shall survive closing. Buyer may continue to enter the
103 Property in accordance with the foregoing terms and conditions after removal or satisfaction of the feasibility
104 contingency only for the purpose of leasing or to satisfy conditions of financing.

105 c. Buyer waives the right to receive a seller disclosure statement ("Form 17") if required by Chapter 64.06 RCW.
106 However, if Seller would otherwise be required to provide Buyer with a Form 17, and if the answer to any of the
107 questions in the section of the Form 17 entitled "Environmental" would be "yes," then buyer does not waive the
108 receipt of the "Environmental" section of the Form 17 which shall be provided by Seller.

109 **6.  TITLE INSURANCE.**

110 **a. Title Report.** Seller authorizes Buyer, its Lender, Listing Agent, Selling Licensee and Closing Agent, at
111 Seller's expense, to apply for and deliver to Buyer a ☑ standard ☐ extended (standard, if not completed)
112 coverage owner's policy of title insurance. If an extended coverage owner's policy is specified. Buyer shall pay
113 the increased costs associated with that policy including the excess premium over that charged for a standard
114 coverage policy, and the cost of any survey required by the title insurer. The title report shall be issued by
115 <u>Thurston County Title</u>
                                        (Seller's choice, if not completed).

116 **b. Permitted Exceptions.** Buyer shall notify Seller of any objectionable matters in the title report or any
117 supplemental report within the earlier of: (1) twenty (20) days after mutual acceptance of this Agreement; or (2)
118 the expiration of the Feasibility Period. This Agreement shall terminate and Buyer shall receive a refund of the
119 earnest money, less any costs advanced or committed for Buyer, unless within five (5) days of Buyer's notice of
120 such objections (1) Seller agrees to remove all objectionable provisions or (2) Buyer notifies Seller that Buyer
121 waives any objections which Seller does not agree to remove. If any new title matters are disclosed in a
122 supplemental title report, then the preceding termination, objection and waiver provisions shall apply to the new
123 title matters except that Buyer's notice of objections must be delivered within five (5) days of delivery of the
124 supplemental report and Seller's response or Buyer's waiver must be delivered within two (2) days of Buyer's
125 notice of objections. The closing date shall be extended to the extent necessary to permit time for these notices.
126 Buyer shall not be required to object to any mortgage or deed of trust liens, or the statutory lien for real property
127 taxes, and the same shall not be deemed to be Permitted Exceptions; provided that the lien securing any
128 financing which Buyer has agreed to assume shall be a Permitted Exception. Except for the foregoing, those
129 provisions not objected to or for which Buyer waived its objections shall be referred to collectively as the
130 "Permitted Exceptions." Seller shall cooperate with Buyer and the title company to clear objectionable title matters
131 but shall not be required to incur any out-of-pocket expenses or liability other than payment of monetary
132 encumbrances not assumed by Buyer and proration of real property taxes, and Seller shall provide an owner's
133 affidavit containing the information and reasonable covenants requested by the title company. The title policy
134 shall contain no exceptions other than the General Exclusions and Exceptions common to such form of policy
135 and the Permitted Exceptions.

136 **7.  CLOSING OF SALE.** This sale shall be closed on <u>11/28/2008</u>
137 ("closing") by <u>Thurston County Title</u>
138 shall select the Closing Agent, if not completed). Buyer and Seller shall deposit with Closing Agent by Noon on
139 the scheduled closing date all instruments and monies required to complete the purchase in accordance with this
140 Agreement. "Closing" shall be deemed to have occurred when the deed is recorded and the sale proceeds are
141 available to Seller. Time is of the essence in the performance of this Agreement. Sale proceeds shall be

Initials: BUYER: _____  DATE: 9/12/08   SELLER: ___   ___ DATE: _____

BUYER: _____  DATE: _____   SELLER: _____  DATE: _____   ~185~

000211

MLS Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 4 of 12

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

## COMMERCIAL AND INVESTMENT REAL ESTATE
### PURCHASE AND SALE AGREEMENT
#### (CONTINUED)

142 considered available to Seller notwithstanding they may not be disbursed to Seller until the first business day
143 following closing. Notwithstanding the foregoing, if Seller informed Buyer during the Feasibility Period that
144 Seller's underlying financing requires that it be defeased and may not be paid off, then closing shall be
145 conducted in accordance with the three-day closing process described in CBA Form PS_D. This Agreement is
146 intended to constitute escrow instructions to Closing Agent. Buyer and Seller will provide any supplemental
147 instructions requested by Closing Agent provided the same are consistent with this Agreement.

148 **8.  CLOSING COSTS AND PRORATIONS.** Seller shall deliver an updated rent roll to Closing Agent not later than
149 two (2) days before the scheduled closing date in the form required by Section 5(a) and any other information
150 reasonably requested by Closing Agent to allow Closing Agent to prepare a settlement statement for closing.
151 Seller certifies that the information contained in the rent roll is correct as of the date submitted. Seller shall pay
152 the premium for the owner's standard coverage title policy. Buyer shall pay the excess premium attributable to
153 any extended coverage or endorsements requested by Buyer, and the cost of any survey required in connection
154 with the same. Seller and Buyer shall each pay one-half of the escrow fees. Real estate excise taxes shall be
155 paid by the party who bears primary responsibility for payment under the applicable statute or code, which is
156 typically Seller. Real and personal property taxes and assessments payable in the year of closing; collected rents
157 on any existing tenancies; interest; utilities; and other operating expenses shall be pro-rated as of closing. If
158 tenants pay any of the foregoing expenses directly, then Closing Agent shall only pro rate those expenses paid
159 by Seller. Buyer shall pay to Seller an additional sum equal to any utility deposits or mortgage reserves
160 for assumed financing for which Buyer receives the benefit after closing. Buyer shall pay all costs of financing
161 including the premium for the lender's title policy. The real estate commission is due on closing or upon Seller's
162 default under this Agreement, whichever occurs first, and neither the amount nor due date thereof can be
163 changed without Listing Agent's written consent. If the Property was taxed under a deferred classification prior to
164 closing, then Seller shall pay all taxes, interest, penalties, deferred taxes or similar items which result from
165 removal of the Property from the deferred classification. At closing, all refundable deposits on tenancies shall be
166 credited to Buyer or delivered to Buyer for deposit in a trust account if required by state or local law. Buyer shall
167 pay all sales or use tax applicable to the transfer of personal property included in the sale.

168 **a. Unpaid Utility Charges.** Buyer and Seller ☐WAIVE ☑DO NOT WAIVE the right to have the Closing
169 Agent disburse closing funds necessary to satisfy unpaid utility charges affecting the Property pursuant to RCW
170 60.80. If "do not waive" is checked, then attach CBA Form UA ("Utility Charges" Addendum). If neither box is
171 checked, then the "do not waive" option applies.

172 **9.  POST-CLOSING ADJUSTMENTS, COLLECTIONS, AND PAYMENTS.** After closing, Buyer and Seller shall
173 reconcile the actual amount of revenues or liabilities upon receipt or payment thereof to the extent those items
174 were prorated or credited at closing based upon estimates. Any bills or invoices received by Buyer after closing
175 which relate to services rendered or goods delivered to the Seller or the Property prior to closing shall be paid by
176 Seller upon presentation of such bill or invoice. At Buyer's option, Buyer may pay such bill or invoice and be
177 reimbursed the amount paid plus interest at the rate of 12% per annum beginning fifteen (15) days from the date
178 of Buyer's written demand to Seller for reimbursement until such reimbursement is made. Notwithstanding the
179 foregoing, if tenants pay certain expenses based on estimates subject to a post-closing reconciliation to the
180 actual amount of those expenses, then Buyer shall be entitled to any surplus and shall be liable for any credit
181 resulting from the reconciliation. Rents collected from each tenant after closing shall be applied first to rentals
182 due most recently from such tenant for the period after closing, and the balance shall be applied for the benefit
183 of Seller for delinquent rentals owed for a period prior to closing. The amounts applied for the benefit of Seller
184 shall be turned over by Buyer to Seller promptly after receipt. Seller shall be entitled to pursue any lawful
185 methods of collection of delinquent rents but shall have no right to evict tenants after closing.

186 **10. OPERATIONS PRIOR TO CLOSING.** Prior to closing, Seller shall continue to operate the Property in the
187 ordinary course of its business and maintain the Property in the same or better condition than as existing on the
88 date of Mutual Acceptance, but shall not be required to repair material damage from casualty except as other-
89 wise provided in this Agreement. After the Feasibility Period, Seller shall not enter into or modify existing rental
90 agreements or leases (except that Seller may enter into, modify, extend, renew or terminate residential rental

Initials:  BUYER: _____WSP_____  DATE: __9/2/08__      SELLER: _____  _ . _  DATE: _____

BUYER: _____  DATE: _____      SELLER: _____  DATE: _____  —186—

000212

MLS Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 5 of 12

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

### COMMERCIAL AND INVESTMENT REAL ESTATE
### PURCHASE AND SALE AGREEMENT
### (CONTINUED)

191  agreements or residential leases in the ordinary course of its business), service contracts, or other agreements
192  affecting the Property which have terms extending beyond closing without first obtaining Buyer's consent, which
193  shall not be unreasonably withheld.

194  **11. POSSESSION.** Buyer shall be entitled to possession ☑ on closing ☐ _____
195  _____ (on closing, if not completed. Buyer shall accept possession subject to all
196  tenancies disclosed to Buyer during the Feasibility Period.

197  **12. SELLER'S REPRESENTATIONS.** Except as disclosed to or known by Buyer prior to the satisfaction or waiver
198  of the feasibility contingency stated in Section 5 above, including in the books, records and documents made
199  available to Buyer, or in the title report or any supplemental report or documents referenced therein, Seller
200  represents to Buyer that, to the best of Seller's actual knowledge, each of the following is true as of the date
201  hereof : (a) Seller is authorized to enter into the Agreement, to sell the Property, and to perform its obligations
202  under the Agreement; (b) The books, records, leases, agreements and other items delivered to Buyer pursuant
203  to this Agreement comprise all material documents in Seller's possession or control regarding the operation and
204  condition of the Property; (c) Seller has not received any written notices that the Property or the business
205  conducted thereon violate any applicable laws, regulations, codes and ordinances; (d) Seller has all certificates
206  of occupancy, permits, and other governmental consents necessary to own and operate the Property for its
207  current use; (e) There is no pending or threatened litigation which would adversely affect the Property or Buyer's
208  ownership thereof after closing; (f) There is no pending or threatened condemnation or similar proceedings
209  affecting the Property, and the Property is not within the boundaries of any planned or authorized local
210  improvement district; (g) Seller has paid (except to the extent prorated at closing) all local, state and federal taxes
211  (other than real and personal property taxes and assessments described in Section 8 above) attributable to the
212  period prior to closing which, if not paid, could constitute a lien on Property (including any personal property), or
213  for which Buyer may be held liable after closing; (h) Seller is not aware of any concealed material defects in the
214  Property except as disclosed to Buyer in writing during the Feasibility Period; (i) There are no Hazardous
215  Substances (as defined below) currently located in, on, or under the Property in a manner or quantity that
216  presently violates any Environmental Law (as defined below); there are no underground storage tanks located on
217  the Property; and there is no pending or threatened investigation or remedial action by any governmental agency
18  regarding the release of Hazardous Substances or the violation of Environmental Law at the Property. As used
19  herein, the term "Hazardous Substances" shall mean any substance or material now or hereafter defined or
20  regulated as a hazardous substance, hazardous waste, toxic substance, pollutant, or contaminant under any
21  federal, state, or local law, regulation, or ordinance governing any substance that could cause actual or
22  suspected harm to human health or the environment ("Environmental Law"). The term "Hazardous Substances"
23  specifically includes, but is not limited to, petroleum, petroleum by-products, and asbestos.

4  If prior to closing Seller or Buyer discovers any information which would cause any of the representations above
5  to be false if the same were deemed made as of the date of such discovery, then the party discovering the same
6  shall promptly notify the other party in writing. If the newly-discovered information will result in costs or liability to
7  Buyer in excess of the lesser of $100,000 or five percent (5%) of the purchase price, or will materially adversely
8  affect Buyer's intended use of the Property, then Buyer shall have the right to terminate the Agreement and
9  receive a refund of its earnest money provided Buyer elects to do so within five (5) days of discovering or
)  receiving written notice of the new information. Nothing in this paragraph shall prevent Buyer from pursuing its
   remedies against Seller if Seller had actual knowledge of the newly-discovered information such that a
:  representation provided for above was false.

**13. AS-IS.** Except for those representations and warranties specifically included in this Agreement: (i) Seller makes
no representations or warranties regarding the Property; (ii) Seller hereby disclaims, and Buyer hereby waives,
any and all representations or warranties of any kind, express or implied, concerning the Property or any portion
thereof, as to its condition, value, compliance with laws, status of permits or approvals, existence or absence of
hazardous material on site, occupancy rate or any other matter of similar or dissimilar nature relating in any way
to the Property, including the warranties of fitness of a particular purpose, tenantability, habitability and use; (iii)

Initials: BUYER: _WSA_    DATE: _9/2/08_    SELLER: ___ . ___    DATE: _____

BUYER: _____    DATE: _____    SELLER: _____    DATE: _____    **–187–**

000213

MLS Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 6 of 12

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

### COMMERCIAL AND INVESTMENT REAL ESTATE
### PURCHASE AND SALE AGREEMENT
### (CONTINUED)

239 Buyer otherwise takes the Property "AS IS;" and (iv) Buyer represents and warrants to Seller that Buyer has
240 sufficient experience and expertise such that it is reasonable for Buyer to rely on its own pre-closing inspections
241 and investigations.

242 **14. PERSONAL PROPERTY.**

243 **a.** This sale includes all right, title and interest of Seller to the following tangible personal property:  ☐ None
244 ☑ That portion of the personal property located on and used in connection with the Property, which Seller will
245 itemize in an Addendum to be attached to this Agreement within ten (10) days of Mutual Acceptance (None, if not
246 completed). The value assigned to the personal property shall be $ _____ (if
247 not completed, the County-assessed value if available, and if not available, the fair market value determined by
248 an appraiser selected by the Listing Agent and Selling Licensee). Seller warrants title to, but not the condition of,
249 the personal property and shall convey it by bill of sale.

250 **b.** In addition to the leases and Vendor Contracts assumed by Buyer pursuant to Section 5(a) above, this sale
251 includes all right, title and interest of Seller to the following intangible property now or hereafter existing with
252 respect to the Property including without limitation: all rights-of-way, rights of ingress or egress or other interests
253 in, on, or to, any land, highway, street, road, or avenue, open or proposed, in, on, or across, in front of, abutting
254 or adjoining the Property; all rights to utilities serving the Property; all drawings, plans, specifications and other
255 architectural or engineering work product; all governmental permits, certificates, licenses, authorizations and
256 approvals; all rights, claims, causes of action, and warranties under contracts with contractors, engineers,
257 architects, consultants or other parties associated with the Property; all utility, security and other deposits and
258 reserve accounts made as security for the fulfillment of any of Seller's obligations; any name of or telephone
259 numbers for the Property and related trademarks, service marks or trade dress; and guaranties, warranties or
260 other assurances of performance received.

261 **15. CONDEMNATION AND CASUALTY.** Seller bears all risk of loss until closing, and thereafter Buyer shall bear the
262 risk of loss. Buyer may terminate this Agreement and obtain a refund of the earnest money if improvements on
263 the Property are destroyed or materially damaged by casualty before closing, or if condemnation proceedings
264 are commenced against all or a portion of the Property before closing. Damage will be considered material if the
265 cost of repair exceeds the lesser of $100,000 or five percent (5%) of the purchase price stated in this
266 Agreement. Alternatively, Buyer may elect to proceed with closing in which case at closing Seller shall assign to
267 Buyer all claims and right to proceeds under any property insurance policy and shall credit to Buyer at closing
268 the amount of any deductible provided for in the policy.

269 **16. FIRPTA - TAX WITHHOLDING AT CLOSING.** Closing Agent is instructed to prepare a certification (CBA or
270 NWMLS Form 22E, or equivalent) that Seller is not a "foreign person" within the meaning of the Foreign
271 Investment in Real Property Tax Act. Seller agrees to sign this certification. If Seller is a foreign person, and this
272 transaction is not otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required
273 amount to the Internal Revenue Service.

274 **17. CONVEYANCE.** Title shall be conveyed by a Statutory Warranty Deed subject only to the Permitted Exceptions.
275 If this Agreement is for conveyance of Seller's vendee's interest in a Real Estate Contract, the Statutory
276 Warranty Deed shall include a contract vendee's assignment sufficient to convey after acquired title. At closing,
277 Seller and Buyer shall execute and deliver to Closing Agent CBA Form No. PS-AS Assignment and Assumption
278 Agreement transferring all leases and Vendor Contracts assumed by Buyer pursuant to Section 5(a) and all
279 intangible property transferred pursuant to Section 14(b).

280 **18. NOTICES AND COMPUTATION OF TIME.** Unless otherwise specified, any notice required or permitted in, or
281 related to, this Agreement (including revocations of offers and counteroffers) must be in writing. Notices to Seller
82 must be signed by at least one Buyer and must be delivered to Seller and Listing Agent with a courtesy copy to
83 any other party identified as a recipient of notices in Section 28 of this Agreement. A notice to Seller shall be
84 deemed delivered only when received by Seller, Listing Agent, or the licensed office of Listing Agent. Notices to
85 Buyer must be signed by at least one Seller and must be delivered to Buyer with a copy to Selling Licensee with

Initials: BUYER: _W SP_    DATE: _9/12/08_    SELLER: _____    DATE: _____

BUYER: _____    DATE: _____    SELLER: _____    DATE: _____    –188–

000214

MLS Form 24
BA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 7 of 12

**COMMERCIAL AND INVESTMENT REAL ESTATE
PURCHASE AND SALE AGREEMENT
(CONTINUED)**

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

| | |
|---|---|
| 286 | a courtesy copy to any other party identified as a recipient of notices in Section 28 of this Agreement.  A notice |
| 287 | to Buyer shall be deemed delivered only when received by Buyer, Selling Licensee, or the licensed office of |
| 288 | Selling Licensee. Selling Licensee and Listing Agent have no responsibility to advise of receipt of a notice |
| 289 | beyond either phoning the represented party or causing a copy of the notice to be delivered to the party's |
| 290 | address provided in this Agreement. Buyer and Seller must keep Selling Licensee and Listing Agent advised of |
| 291 | their whereabouts to receive prompt notification of receipt of a notice. If any party is not represented by a |
| 292 | licensee, then notices must be delivered to and shall be effective when received by that party. |

| | |
|---|---|
| 293 | Unless otherwise specified in this Agreement, any period of time in this Agreement shall mean Pacific Time and |
| 294 | shall begin the day after the event starting the period and shall expire at 5:00 p.m. of the last calendar day of the |
| 295 | specified period of time, unless the last day is a Saturday, Sunday or legal holiday as defined in RCW 1.16.050, |
| 296 | in which case the specified period of time shall expire on the next day that is not a Saturday, Sunday or legal |
| 297 | holiday. Any specified period of five (5) days or less shall not include Saturdays, Sundays or legal holidays. |
| 298 | Notwithstanding the foregoing, references to specific dates or times or number of hours shall mean those dates, |
| 299 | times or number of hours. |

300  **19. AGENCY DISCLOSURE.** At the signing of this Agreement,

301  Selling Licensee _____

302  represented _____

303  and the Listing Agent   NA _____ Buyer _____

304  represented _____

| | |
|---|---|
| 305 | If Selling Licensee and Listing Agent are different salespersons affiliated with the same Broker, then Seller and |
| 306 | Buyer confirm their consent to Broker acting as a dual agent. If Selling Licensee and Listing Agent are the same |
| 307 | person representing both parties, then Seller and Buyer confirm their consent to that person and his/her Broker |
| 308 | acting as dual agents. If Selling Licensee, Listing Agent, or their Broker are dual agents, then Seller and Buyer |
| 309 | consent to Selling Licensee, Listing Agent and their Broker being compensated based on a percentage of the |
| 310 | purchase price or as otherwise disclosed on an attached addendum. Buyer and Seller confirm prior receipt of |
| 311 | the pamphlet entitled "The Law of Real Estate Agency." |

| | |
|---|---|
| 312 | **20. ASSIGNMENT.** Buyer ☑ may ☐ may not (may not, if not completed) assign this Agreement, or Buyer's |
| 313 | rights hereunder, without Seller's prior written consent, unless provided otherwise herein.  If the "may not" option |
| 314 | is selected and the words "and/or assigns" or similar words are used to identify the Buyer, then this Agreement |
| 315 | may be assigned with notice to Seller but without Seller's consent only to an entity which is controlled by or under |
| 316 | common control with the Buyer identified in this Agreement. Any other assignment requires Seller's consent. The |
| 317 | party identified as the initial Buyer shall remain responsible for those obligations of Buyer stated in this |
| 318 | Agreement notwithstanding any assignment and, if this Agreement provides for Seller to finance a portion of the |
| 319 | purchase price, then the party identified as the initial Buyer shall guarantee payment of the Seller financing. |

320  **21. DEFAULT AND ATTORNEY'S FEE.**

321  **a. Buyer's default.** In the event Buyer fails, without legal excuse, to complete the purchase of the Property,

322  then ( **check one** ):

323  ☑ Seller may terminate this Agreement and keep the earnest money as liquidated damages as the sole and

324  exclusive remedy available to Seller for such failure; or

| | |
|---|---|
| 325 | ☐ Seller may, at its option, (a) terminate this Agreement and keep as liquidated damages the earnest money as |
| 326 | the sole and exclusive remedy available to Seller for such failure, (b) bring suit against Buyer for Seller's actual |
| 327 | damages, (c) bring suit to specifically enforce this Agreement and recover any incidental damages, or (d) |
| 328 | pursue any other rights or remedies available at law or equity. |

Initials:  BUYER:  _WSB_ _____  DATE: _9/12/08_ ___   SELLER: _____ _____ DATE: _____

BUYER: _____ DATE: _____   SELLER: _____ DATE: _____

000215

-189-

NWMLS Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 8 of 12

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

### COMMERCIAL AND INVESTMENT REAL ESTATE
### PURCHASE AND SALE AGREEMENT
### (CONTINUED)

329 **b. Seller's default.** In the event Seller fails, without legal excuse, to complete the sale of the Property, then
330 ( **check one** ):

331 ☐ As Buyer's sole remedy, Buyer may either (a) terminate this Agreement and recover all earnest money or
332 fees made by Buyer whether or not the same are identified as refundable or applicable to the purchase price; or
333 (b) bring suit to specifically enforce this Agreement and recover incidental damages provided Buyer must file
334 suit within sixty (60) days of the scheduled date of closing or any earlier date Seller has informed Buyer in
335 writing that Seller will not proceed with closing; or

336 ☑ Buyer may, at its option, (a) bring suit against Seller for Buyer's actual damages, (b) bring suit to specifically
337 enforce this Agreement and recover any incidental damages, or (c) pursue any other rights or remedies
338 available at law or equity.

339 Neither Buyer nor Seller may recover consequential damages such as lost profits. If Buyer or Seller institutes
340 suit against the other concerning this Agreement, the prevailing party is entitled to reasonable attorneys' fees and
341 expenses. In the event of trial, the amount of the attorney's fee shall be fixed by the court. The venue of any suit
342 shall be the county in which the Property is located, and this Agreement shall be governed by the laws of the
343 state where the Property is located.

344 **22. MISCELLANEOUS PROVISIONS.**

345 **a. Complete Agreement.** The Agreement and any addenda and exhibits to it state the entire understanding of
346 Buyer and Seller regarding the sale of the Property. There are no verbal or other written agreements which
347 modify or affect the Agreement.

348 **b. Counterpart Signatures.** The Agreement may be signed in counterpart, each signed counterpart shall be
349 deemed an original, and all counterparts together shall constitute one and the same agreement.

350 **c. Electronic Delivery.** Electronic delivery of documents (e.g., transmission by facsimile or email) including
351 signed offers or counteroffers and notices shall be legally sufficient to bind the party the same as delivery of an
352 original. At the request of either party, or the Closing Agent, the parties will replace electronically delivered offers
353 or counteroffers with original documents.

354 **d. Section 1031 Like-Kind Exchange.** If either Buyer or Seller intends for this transaction to be a part of a
355 Section 1031 like-kind exchange, then the other party agrees to cooperate in the completion of the like-kind
356 exchange so long as the cooperating party incurs no additional liability in doing so, and so long as any expenses
357 (including attorneys fees and costs) incurred by the cooperating party that are related only to the exchange are
358 paid or reimbursed to the cooperating party at or prior to closing. Notwithstanding Section 20 above, any party
359 completing a Section 1031 like-kind exchange may assign this Agreement to its qualified intermediary or any
360 entity set up for the purposes of completing a reverse exchange.

361 **23. ACCEPTANCE; COUNTEROFFERS.** Seller has until midnight of _____
362 (if not filled in, the third business day following the last Buyer signature date below) to accept this offer, unless
363 sooner withdrawn. If this offer is not timely accepted, it shall lapse and the earnest money shall be refunded to
364 Buyer. If either party makes a future counteroffer, the other party shall have until 5:00 p.m. on the _____
365 business day (if not filled in, the second business day) following its receipt to accept the counteroffer, unless
366 sooner withdrawn. If the counteroffer is not timely accepted or countered, this Agreement shall lapse and the
367 earnest money shall be refunded to the Buyer. No acceptance, offer or counteroffer from the Buyer is effective
368 until a signed copy is received by the Seller, the Listing Agent or the licensed office of the Listing Agent. No
369 acceptance, offer or counteroffer from the Seller is effective until a signed copy is received by the Buyer, the
370 Selling Licensee or the licensed office of the Selling Licensee. "Mutual Acceptance" shall occur when the last
371 counteroffer is signed by the offeree, and the fully-signed counteroffer has been received by the offeror, his or
372 her licensee, or the licensed office of the licensee. If any party is not represented by a licensee, then notices
373 must be delivered to and shall be effective when received by that party.

Initials: BUYER: _CL_ _SP_  DATE: _9/12/05_   SELLER: __    ___ DATE: _____
        BUYER: _____   DATE: _____    SELLER: _____   DATE: _____   –190–

000216

NMLS Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 9 of 12

**COMMERCIAL AND INVESTMENT REAL ESTATE
PURCHASE AND SALE AGREEMENT
(CONTINUED)**

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

374 **24. INFORMATION TRANSFER.** In the event this Agreement is terminated, Buyer agrees to deliver to Seller within
375  ten (10) days of Seller's written request copies of all materials received from Seller and any non-privileged plans,
376  studies, reports, inspections, appraisals, surveys, drawings, permits, application or other development work
377  product relating to the Property in Buyer's possession or control as of the date this Agreement is terminated.

378 **25. CONFIDENTIALITY.** Until and unless closing has been consummated, Buyer and Seller shall follow reasonable
379  measures to prevent unnecessary disclosure of information obtained in connection with the negotiation and
380  performance of this Agreement. Neither party shall use or knowingly permit the use of any such information in
381  any manner detrimental to the other party.

382 **26. SELLER'S ACCEPTANCE AND BROKERAGE AGREEMENT.** Seller agrees to sell the Property on the terms
383  and conditions herein, and further agrees to pay a commission in a total amount computed in accordance with
384  the listing or commission agreement. If there is no written listing or commission agreement, Seller agrees to pay
385  a commission of __o__ % of the sales price or $_____. The commission shall be apportioned between
386  Listing Agent and Selling Licensee as specified in the listing or any co-brokerage agreement. If there is no listing
387  or written co-brokerage agreement, then Listing Agent shall pay to Selling Licensee a commission of ____% of
388  the sales price or $_____. Seller assigns to Listing Agent and Selling Licensee a portion of the sales
389  proceeds equal to the commission. If the earnest money is retained as liquidated damages, any costs advanced
390  or committed by Listing Agent or Selling Licensee for Buyer or Seller shall be reimbursed or paid therefrom, and
391  the balance shall be paid one-half to Seller and one-half to Listing Agent and Selling Licensee according to the
392  listing agreement and any co-brokerage agreement. In any action by Listing Agent or Selling Licensee to
393  enforce this Section, the prevailing party is entitled to reasonable attorneys' fees and expenses. Neither Listing
394  Agent nor Selling Licensee are receiving compensation from more than one party to this transaction unless
395  disclosed on an attached addendum, in which case Buyer and Seller consent to such compensation. The
396  Property described in attached Exhibit A, is commercial real estate. Notwithstanding Section 25 above, the pages
397  containing this Section, the parties' signatures and an attachment describing the Property may be recorded.

398 **27. LISTING AGENT AND SELLING LICENSEE DISCLOSURE.** EXCEPT AS OTHERWISE DISCLOSED IN
399  WRITING TO BUYER OR SELLER, THE SELLING LICENSEE, LISTING AGENT, AND BROKERS HAVE NOT
400  MADE ANY REPRESENTATIONS OR WARRANTIES OR CONDUCTED ANY INDEPENDENT INVESTIGATION
401  CONCERNING THE LEGAL EFFECT OF THIS AGREEMENT, BUYER'S OR SELLER'S FINANCIAL STRENGTH,
402  BOOKS, RECORDS, REPORTS, STUDIES, OR OPERATING STATEMENTS, OR OTHER MATTERS RELATING
403  TO THE PROPERTY, INCLUDING WITHOUT LIMITATION, THE PROPERTY'S ZONING, BOUNDARIES, AREA,
404  COMPLIANCE WITH APPLICABLE LAWS (INCLUDING LAWS REGARDING ACCESSIBILITY FOR DISABLED
405  PERSONS), OR HAZARDOUS OR TOXIC MATERIALS INCLUDING MOLD OR OTHER ALLERGENS. SELLER
406  AND BUYER ARE EACH ADVISED TO ENGAGE QUALIFIED EXPERTS TO ASSIST WITH THESE DUE
407  DILIGENCE AND FEASIBILITY MATTERS, AND ARE FURTHER ADVISED TO SEEK INDEPENDENT LEGAL
408  AND TAX ADVICE RELATED TO THIS AGREEMENT.

Initials: BUYER: _WSB_   DATE: _9/2/08_   SELLER: ____   DATE: ____

BUYER: _____   DATE: _____   SELLER: _____   DATE: _____

000217

NMLS Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 10 of 12

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

**COMMERCIAL AND INVESTMENT REAL ESTATE
PURCHASE AND SALE AGREEMENT
(CONTINUED)**

**28. INDENTIFICATION OF THE PARTIES.** The following is the contact information for the parties involved in this Agreement.

<u>**Buyer**</u>

Contact: <u>Washington Street Properties, LLC</u>
Address: _____
_____
Business Phone: ( )_____
Mobile Phone: ( )_____
Fax: ( )_____
Email: _____

<u>**Seller**</u>

Contact: <u>Phyllis Anderson</u>
Address: _____
_____
Business Phone: ( )_____
Mobile Phone: ( )_____
Fax: ( )_____
Email: _____

<u>**Selling Licensee**</u>

Contact: _____
Address: _____
_____
Business Phone: ( )_____
Mobile Phone: ( )_____
Fax: ( )_____
Email: _____

<u>**Listing Agent**</u>

Contact: _____
Address: _____
_____
Business Phone: ( )_____
Mobile Phone: ( )_____
Fax: ( )_____
Email: _____

<u>**Courtesy Copy of Notices to Buyer to:**</u>

Contact: _____
Address: _____
_____
Business Phone: ( )_____
Mobile Phone: ( )_____
Fax: ( )_____
Email: _____

<u>**Courtesy Copy of Notices to Seller to:**</u>

Contact: _____
Address: _____
_____
Business Phone: ( )_____
Mobile Phone: ( )_____
Fax: ( )_____
Email: _____

Initials: BUYER: _WSP_  DATE: _9/12/08_     SELLER: _____  DATE: _____

BUYER: _____  DATE: _____     SELLER: _____  DATE: _____    -192-

NWLS Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 11 of 12

**COMMERCIAL AND INVESTMENT REAL ESTATE
PURCHASE AND SALE AGREEMENT
(CONTINUED)**

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

IN WITNESS WHEREOF, the parties have signed this Agreeement intending to be bound.

Buyer _____ Washington Street Properties, LLC _____
Printed name and type of entity

Buyer _____ _(signature)_ _____
Signature and title

Date signed _____ 9/17/08 _____

Seller _____ Phyllis Anderson _____
Printed name and type of entity

Seller _____
Signature and title

Date signed _____

Buyer _____
Printed name and type of entity

Buyer _____
Signature and title

Date signed _____

Seller _____
Printed name and type of entity

Seller _____
Signature and title

Date signed _____

Initials: BUYER: _WSb_ DATE: _9/12/08_   SELLER: _____ DATE: _____
BUYER: _____ DATE: _____   SELLER: _____ DATE: _____

-193-

000219

.WMLS Form 24
CBA Form PS-1A
Purchase & Sale Agreement
Rev. 7/07
Page 12 of 12

© Copyright 1999-2007
Commercial Brokers Association
All Rights Reserved

**COMMERCIAL AND INVESTMENT REAL ESTATE
PURCHASE AND SALE AGREEMENT
(CONTINUED)**

**EXHIBIT A**

[Legal Description]

Initials: BUYER: _____ DATE: _____   SELLER: _____ DATE: _____

BUYER: _____ DATE: _____   SELLER: _____ DATE: _____ =194=

000220

ADDENDUM/AMENDMENT TO RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated 9/12/08, between Washingon Street Properties, LLC and or assigns (Buyer) and Phyllis Anderson          (Seller) for the purchase of Velkommen Mobile Park, 2535 70th Ave SW, Tumwater, Washington It is agreed between the seller and buyer as follows:

1.Buyer agrees to pay the entire purchase price of $1,600,000 as follows:

$160,000 cash;

$1,440,000, by buyer executing to holder a note secured by deed of trust on said property, payable at the rate of $9525 per month, or more at purchaser's option, 7% interest, first payment due 30 days after the date of closing. Note to be paid in full 10 years from closing. The Washington state, Thurston County Title standard form note and deed of trust form are acceptable.

2.  This offer is contingent and subject to buyers approval of a property inspection report to be obtained by buyer, at buyer's expense.

3. If either Buyer or Seller intends for this transaction to be a part of a Section 1031 like kind exchange, then the other party agrees to cooperate in the completion of the like kind exchange so long as the cooperating party incurs no additional liability in doing so, and so long as any expenses (including attorneys fees and costs) incurred by the cooperating party that are related only to the exchange are paid or reimbursed to the cooperating party at or prior to closing.

4. Seller understands and acknowledges that Jim Nissing, one of the owners of the buyer herein, is licensed as a real estate broker in the State of Washington, and that Alison Nissing, is licensed as a real estate agent, in the State of Washington and are purchasing subject property for buyer's own account and not as the agent for the seller.

4. Seller will grant buyer and easement to the water system or a shared well agreement and the Buyer will pay for it's operation and testing.