UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LAUREL PARK COMMUNITY, LLC, a Washington limited liability company; TUMWATER ESTATES INVESTORS, a California limited partnership; VELKOMMEN MOBILE PARK, LLC, a Washington limited liability company; and MANUFACTURED HOUSING COMMUNITIES OF WASHINGTON, a Washington non-profit corporation,

Plaintiffs,

v.

CITY OF TUMWATER, a municipal corporation,

Defendant.

No. C09-05312BHS

SUPPLEMENTAL DECLARATION OF JAMES ANDERSEN IN SUPPORT OF PARTIAL SUMMARY JUDGMENT

JAMES ANDERSEN declares and states as follows:

1.      I am over the age of eighteen, competent to testify, and familiar with the facts herein.

2.      As I stated in my previous supplemental declaration, I am a partner in Velkommen Mobile Park, LLC, which owns Velkommen Park, a manufactured housing community in Tumwater, Washington.  My family has owned and managed Velkommen Park since we developed it in 1975.

3.      I am providing this supplemental declaration to update the Court with respect to my family's efforts to sell Velkommen Park.  As I have previously informed the Court, we listed

Declaration of James Andersen - 1

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661   (206) 575-1397 Fax

488

1  Velkommen Park for sale with NW Park Brokerage, Inc. in Seattle in the spring of 2008. We

2  received two purchase offers, but neither sale closed. Last year, we received other offers to

3  purchase the Property for $1.6 million, but they did not close. We have not received an offer

4  anywhere near the $2.4 million that Tumwater's expert appraised Velkommen as a mobile home

5  park.

6       4.      Given my elderly mother's deteriorating medical condition and the impact of

7  Tumwater's ordinances on our park, we felt we had no choice but to try again to sell the park.

8  More recently, we received an offer to purchase the park for $1.6 million late last year and it

9  closed on March 2, 2011. A true and correct copy of that offer is attached to this declaration as

10  Exhibit A.

11       5.      Tumwater has already admitted the value impact of its ordinances on Velkommen

12  Park is $300,000. Tumwater's expert appraised the park at $2.4 million as a mobile home park

13  and $2.7 million if redeveloped single family. But as the pending sale makes clear, market

14  value, as confirmed by the actual closing of Velkommen's sale, is only $1.6 million. Therefore,

15  Velkommen Park's damages have now ripened from the original $300,000 previously admitted

16  by Tumwater, to $1.1 million, based on Tumwater's own appraisal that Velkommen would be

17  valued at $2.7 million if redeveloped single family.

18       6.      We did not expect a windfall from this action. In fact, we started this legal action

19  because our family simply wanted what property rights we had before Tumwater enacted its

20  MHP ordinance.

21       7.      We also did not expect a windfall from our ownership and operation of

22  Velkommen Park. My family purchased Velkommen Park for its current rental revenue and for

23  a meaningful choice of other land uses that generate income or increase its resale value. My

Declaration of James Andersen - 2

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

1  family anticipated using the property as a mobile home park and then expected to be able to turn

2  to other economically productive uses at my discretion, or sell the property if it became

3  economically unviable when a higher and better use opportunity presented itself.  Neither I nor

4  my family expected that either the County or the City would require that we continue to use the

5  property as a manufactured home community in perpetuity, or that they would effectively

6  accomplish the same result by allowing me to choose between using my property for one

7  economically viable use (a manufactured housing community), or request a conditional use

8  permit to use other primarily public or institutional uses that do not generate profit.

9

10          8.       We have always expected that we would share in our portion of public

11  obligations, and we are proud to have offered the opportunity for affordable housing at

12  Velkommen Park.  But, we never expected that Tumwater would require us to shoulder more

13  than our share of any public obligation to provide affordable housing, or that Tumwater would

14  later exercise its zoning power to require that we either continue to make our property available

15  as affordable housing, or "choose" another public use that is not viable.  When I became a

16  partner in Velkommen Park, neither Tumwater nor any other local government in Washington

17  required that I choose between one use that generates revenue, and other uses which generate

18  little or no revenue.  I had no reason to believe that would change until Tumwater passed its

19  MHP Ordinance.

20

21          9.       Before Tumwater passed its MHP ordinance, we were not required to choose

22  between realizing an income from the property or realizing no income in any other permitted use.

23  After Tumwater passed its ordinance, we then had a choice that was no choice.  The difference is

24  what I expected when I became a partner in Velkommen Park, and did not have to sell to the new

25  owner of Velkommen Park.  The difference is also how Velkommen Park has been damaged by

26  Declaration of James Andersen - 3

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington  98188-4630
(206) 574-6661   (206) 575-1397 Fax

1  Tumwater's MHP ordinance.  I became a partner at Velkommen Park expecting to use it as a

2  mobile home park while that remained a viable personal and business decision, and then

3  expected to be able to turn to other economically productive uses at my discretion, or sell the

4  property if it became unviable when a higher and better use opportunity presented itself.

5      I declare under penalty of perjury under the laws of the State of Washington that the

6  foregoing is true and correct.  Executed at ⟨Olympia⟩, Washington this 4 day of

7  March, 2011.

8

9

10  James Andersen

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  Declaration of James Andersen - 4

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

491

**EXHIBIT A**

MAR-12-2006 01:34A FROM:                                TO:12532002289                    P.1/18

FEB-4-2006  12:04P FROM:                    .. .. .. . ..          TO:12062386868          P.1/18

 Gottlieb Properties, Inc.                    © Copyright 1999 - 2006
ᵇᵉᵗ ᵖᵐ     ᵖᵐᵖ ᵖᵐ     2018 156th Ave NE, Suite 100       Commercial Brokers Association       CBA
                       Bellevue, WA 98007                        All Rights Reserved
                       Phone: 425-746-5173                     CBA Form PS_1A
                       Fax: 206-236-5668                    Purchase & Sale Agreement
                                                                  Rev. 7/07
                                                                  Page 1 of 13

**COMMERCIAL & INVESTMENT REAL ESTATE**
**PURCHASE & SALE AGREEMENT**
This has been prepared for submission to your attorney for review and approval prior to
signing. No representation is made by licensee as to its sufficiency or tax consequences.
CBA Text Disclaimer: Text deleted indicated by strike.  New text inserted indicated by small capital letters.

Reference Date: <u>January 26, 2011</u>

<u>Gregory C. Piantanida</u> and/or assigns ("Buyer") agrees to buy and <u>Valkommen Mobile Park LLC</u> ("Seller") agrees to
sell, on the following terms, the commercial real estate and all improvements thereon (collectively, the "Property")
commonly known as <u>"Valkommen MHP" 2535 70th Ave SW</u> in the City of <u>Tumwater</u>, <u>Thurston</u> County, Washington,
<u>98512</u> Zip, legally described on attached Exhibit A. The Reference Date above is intended to be used to reference this
Agreement, and is not the date of "Mutual Acceptance." Mutual Acceptance is defined in Section 23 below.

**1. PURCHASE PRICE.** The total purchase price is <u>One Million Six Hundred Thousand Dollars ($1,600,000)</u> payable
as follows (check only one):

  ☐ All cash at closing with no financing contingency.

  ☐ All cash at closing contingent on new financing in accordance with the Financing Addendum (attach CBA
    Form PS_FIN). *400,000 / 25 %*

  ☒ ~~$400,000/25%~~ of the purchase price in cash at closing with the balance of the purchase price paid as follows
    (check one or both, as applicable):  ☐ Buyer's assumption of the outstanding principal balance as of the
    Closing Date of a first lien note and deed of trust (or mortgage), or real estate contract, in accordance with the
    Financing Addendum (attach CBA Form PS_FIN);  ☒ Buyer's delivery at closing of a promissory note for the
    balance of the purchase price, secured by a deed of trust encumbering the Property, in accordance with the
    Financing Addendum (attach CBA Form PS_FIN ).

  ☐ Other: _____.

**2. EARNEST MONEY.** The earnest money in the amount of $50,000 shall be in the form of  ☐ Cash  ☐
Personal check  ☒ Promissory note (attached CBA Form EMN)  ☐ Other: _____.
The earnest money shall be held by  ☐ Selling Licensee  ☒ Closing Agent.
Buyer shall deliver the earnest money no later than:
  ☐ _____ days after Mutual Acceptance.
  ☒ On the last day of the Feasibility Period defined in Section 5 below.
  ☐ Other: _____.
Selling Licensee may, however, transfer the earnest money to Closing Agent.
If the earnest money is to be held by Selling Licensee and is over $10,000, it shall be deposited to:  ☐ Selling
Licensee's pooled trust account (with interest paid to the State Treasurer)   ☐ A separate interest bearing trust
account in Selling Licensee's name. The interest, if any, shall be credited at closing to Buyer.  If this sale fails to
close, whoever is entitled to the earnest money is entitled to interest.
Selling Licensee shall deposit any check to be held by Selling Licensee within 3 days after receipt or Mutual
Acceptance, whichever occurs later. Buyer agrees to pay financing and purchase costs incurred by Buyer. Unless
otherwise provided in this Agreement, the earnest money shall be applicable to the purchase price.

**3. EXHIBITS AND ADDENDA.** The following Exhibits and Addenda are made a part of this Agreement:
  ☒ Exhibit A - Legal Description
  ☒ Earnest Money Promissory Note, CBA Form EMN

INITIALS:  Buyer _____  Date 1/26/2011   Seller _____  Date _____
        Buyer _____  Date 1/27/2011   Seller _____  Date _____

493

MAR-12-2006 01:35A FROM:                                TO:12532002289          P.2/18

FEB-4-2006   12:05P FROM:                               TO:12062386868          P.2/18
To: Jim Anderson   Page 3 of 19          201 F01421 05.05:47 (GMT)       Geniea Properties From: vemar N. Gerr Iree



Gottlieb Properties, Inc.
2018 156th Ave NE, Suite 100
Bellevue, WA 98007
Phone: 425-746-5173
Fax: 206-236-6866

© Copyright 1996 - 2005
Commercial Brokers Association
All Rights Reserved

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 7/07
Page 2 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
### (CONTINUED)

- ☐ Promissory Note, LPB Form No. 28A/CBA Form N1-A
- ☐ Short Form Deed of Trust, LPB Form No. 20
- ☐ Dead of Trust Rider, CBA Form DTR
- ☒ Utility Charges Addendum, CBA Form UA
- ☐ FIRPTA Certification, CBA Form 22E
- ☐ Assignment and Assumption, CBA Form PS-AB
- ☐ Addendum/Amendment, CBA Form PSA
- ☐ Back-Up Addendum, CBA Form BU-A
- ☐ Vacant Land Addendum, CBA Form VLA
- ☒ Financing Addendum, CBA Form PS_FIN
- ☐ Tenant Estoppel Certificate, CBA Form PS_TEC
- ☐ Defeasance Addendum, CBA Form PS_D
- ☒ Other Water Service Agreement

4. **SELLER'S UNDERLYING FINANCING.** Unless Buyer is assuming Seller's underlying financing, Seller shall be responsible for confirming the existing underlying financing is not subject to any "lock out" or similar covenant which would prevent the lender's lien from being released at closing. In addition, Seller shall provide Buyer notice prior to the end of the Feasibility Period if Seller is required to substitute securities for the Property as collateral for the underlying financing (known as "defeasance"). If Seller provides this notice of defeasance to Buyer, then the parties shall close the transaction in accordance with the process described in CBA Form PS_D or any different process identified in Seller's defeasance notice to Buyer.

5. **FEASIBILITY CONTINGENCY.** Buyer's obligations under this Agreement are conditioned upon Buyer's satisfaction in Buyer's sole discretion, concerning all aspects of the Property, including its physical condition: the presence of or absence of any hazardous substances; the contracts and leases affecting the property; the potential financial performance of the Property; the availability of government permits and approvals; and the feasibility of the Property for Buyer's intended purposes. This Agreement shall terminate and Buyer shall receive a refund of the earnest money unless Buyer gives written notice to Seller within 20 days (30 days if not filled in) of Mutual Acceptance stating that this condition is satisfied. If such notice is timely given, the feasibility contingency stated in this Section 5 shall be deemed to be satisfied. As used in this Agreement, the term "Feasibility Period" shall mean the period beginning upon Mutual Acceptance and ending upon the satisfaction or waiver of the feasibility contingency.

   a. **Books, Records, Leases, Agreements.** Seller shall make available for inspection by Buyer and its agents within 2 days (2 days if not filled in) after Mutual Acceptance all documents in Seller's possession or control relating to the ownership, operation, renovation or development of the Property, excluding appraisals or other statements of value, and including: statements for real estate taxes, assessments, and utilities for the last three years and year to date; property management agreements and any other agreements with professionals or consultants; leases or other agreements relating to occupancy of all or a portion of the Property and a suite-by-suite schedule of tenants, rents, prepaid rents, deposits and fees; plans, specifications, permits, applications, drawings, surveys, and studies; and maintenance records, accounting records and audit reports for the last three years and year to date; and "Vendor Contracts" which shall include maintenance or service contracts, and installment purchase contracts or leases of personal property or fixtures used in connection with the Property. Buyer shall determine within the Feasibility Period: (i) whether Seller will agree to terminate any objectionable Vendor Contracts; and (ii) whether Seller will agree to pay any damages or penalties resulting from the termination of objectionable Vendor Contracts. Buyer's waiver of the Feasibility Contingency shall be deemed Buyer's acceptance of all Vendor Contracts which Seller has not agreed in writing to terminate. Buyer shall be

INITIALS: Buyer _____ Date 1/24/2006   Seller _____ Date _____
          Buyer _____ Date 1/27/2011   Seller _____ Date _____

MAR-12-2006 01:35A FROM:                                           TO:12532002289            P.3/18

FEB-4-2006  12:06P FROM:                                           TO:12062396868            P.3/18



**Gottlieb Properties, Inc.**
2018 156th Ave NE, Suite 100
Bellevue, WA 98007
Phone: 425-748-5173
Fax: 206-238-8858

© Copyright 1999 - 2005
Commercial Brokers Association
All Rights Reserved

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 7/07
Page 3 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
### (CONTINUED)

solely responsible for obtaining any required consents to such assumption and the payment of any assumption fees. Seller shall cooperate with Buyer's efforts to receive any such consents but shall not be required to incur any out-of-pocket expenses or liability in doing so. Seller shall transfer the Vendor Contracts as provided in Section 17 of this Agreement. Any leases, contract or agreements that run with title to the Property are addressed in Section 5(b) below.

b.  **Access.** Seller shall permit Buyer and its agents, at Buyer's sole expense and risk to enter the Property at reasonable times subject to the rights of and after legal notice to tenants, to conduct inspections concerning the Property and Improvements, including without limitation, the structural condition of improvements, hazardous materials, pest infestation, soils conditions, sensitive areas, wetlands, or other matters affecting the feasibility of the Property for Buyer's intended use. Buyer shall schedule any entry onto the Property with Seller in advance and shall comply with Seller's reasonable requirements including those relating to security, confidentiality, and disruption of Seller's tenants. Buyer shall not perform any invasive testing including environmental inspections beyond a phase I assessment or contact the tenants or property management personnel without obtaining the Seller's prior written consent, which shall not be unreasonably withheld. Buyer shall restore the Property and improvements to the same condition they were in prior to inspection. Buyer shall be solely responsible for all costs of its inspections and feasibility analysis and has no authority to bind the Property for purposes of statutory liens. Buyer agrees to indemnify and defend Seller from all liens, costs, claims, and expenses, including attorneys' and experts' fees, arising from or relating to entry onto or inspection of the Property by Buyer and its agents. This agreement to indemnify and defend Seller shall survive closing. Buyer may continue to enter the Property in accordance with the foregoing terms and conditions after removal or satisfaction of the feasibility contingency only for the purpose of leasing or to satisfy conditions of financing.

c.  Buyer waives the right to receive a seller disclosure statement ("Form 17") if required by Chapter 64.06 RCW. However, if Seller would otherwise be required to provide Buyer with a Form 17, and if the answer to any of the questions in the section of the Form 17 entitled "Environmental" would be "yes," then buyer does not waive the receipt of the "Environmental" section of the Form 17 which shall be provided by Seller.

**6.  TITLE INSURANCE.**

a.  **Title Report.** Seller authorizes Buyer, its Lender, Listing Agent, Selling Licensee and Closing Agent, at Seller's expense, to apply for and deliver to Buyer a  ☒ standard  ☐ extended (standard, if not completed) coverage owner's policy of title insurance. If an extended coverage owner's policy is specified, Buyer shall pay the increased costs associated with that policy including the excess premium over that charged for a standard coverage policy, and the cost of any survey required by the title insurer. The title report shall be issued by Chicago Title Insurance Company (Seller's choice, if not completed).

b.  **Permitted Exceptions.** Buyer shall notify Seller of any objectionable matters in the title report or any supplemental report within the earlier of: (1) twenty (20) days after mutual acceptance of this Agreement; or (2) the expiration of the Feasibility Period. This Agreement shall terminate and Buyer shall receive a refund of the earnest money, less any costs advanced or committed for Buyer, unless within five (5) days of Buyer's notice of such objections (1) Seller agrees to remove all objectionable provisions or (2) Buyer notifies Seller that Buyer waives any objections which Seller does not agree to remove. If any new title matters are disclosed in a supplemental title report, then the preceding termination, objection and waiver provisions shall apply to the new title matters except that Buyer's notice of objections must be delivered within five (5) days of delivery of the supplemental report and Seller's response or Buyer's waiver must be delivered within two (2) days of Buyer's notice of objections. The closing date shall be extended to the extent necessary to permit time for these notices. Buyer shall not be required to object to any mortgage or deed of trust liens, or the statutory lien for real property taxes, and the same shall not be deemed to be Permitted Exceptions; provided that the lien securing any financing which Buyer has agreed to assume, shall be a Permitted Exception. Except for the foregoing, those

INITIALS:  Buyer _____ Date 1/26/2011    Seller _____ Date _____
Buyer _____ Date 1/27/2011    Seller _____ Date _____

495

MAR-12-2006 01:36A FROM:                                    TO:12532002289                    P.4/18

FEB-4-2006  12:07P FROM:                                    TO:12062386868                    P.4/18



Gottlieb Properties, Inc.
2015 156th Ave NE, Suite 100
Bellevue, WA 98007
Phone: 425-746-5173
Fax: 206-238-5868

© Copyright 1996 - 2005
Commercial Brokers Association
All Rights Reserved

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 7/07
Page 4 of 13

**COMMERCIAL & INVESTMENT REAL ESTATE**
**PURCHASE & SALE AGREEMENT**
(CONTINUED)

provisions not objected to or for which Buyer waived its objections shall be referred to collectively as the
"Permitted Exceptions." Seller shall cooperate with Buyer and the title company to clear objectionable title
matters but shall not be required to incur any out-of-pocket expenses or liability other than payment of monetary
encumbrances not assumed by Buyer and proration of real property taxes, and Seller shall provide an owner's
affidavit containing the information and reasonable covenants requested by the title company. The title policy shall
contain no exceptions other than the General Exclusions and Exceptions common to such form of policy and the
Permitted Exceptions.

7. **CLOSING OF SALE.** This sale shall be closed on February 28, 2011 ("closing") by Paula K. Adams, Commercial
Escrow Officer, Chicago Title Insurance Company ("Closing Agent") (Seller shall select the Closing Agent, if not
completed). Buyer and Seller shall deposit with Closing Agent by Noon on the scheduled closing date all
instruments and monies required to complete the purchase in accordance with this Agreement. "Closing" shall be
deemed to have occurred when the deed is recorded and the sale proceeds are available to Seller. Time is of the
essence in the performance of this Agreement.   Sale proceeds shall be considered available to Seller
notwithstanding they may not be disbursed to Seller until the first business day following closing. Notwithstanding
the foregoing, if Seller informed Buyer during the Feasibility Period that Seller's underlying financing requires that
it be defeased and may not be paid off, then closing shall be conducted in accordance with the three-day closing
process described in CBA Form PS_D. This Agreement is intended to constitute escrow instructions to Closing
Agent.  Buyer and Seller will provide any supplemental instructions requested by Closing Agent provided the
same are consistent with this Agreement.

8. **CLOSING COSTS AND PRORATIONS.** Seller shall deliver an updated rent roll to Closing Agent not later than
two (2) days before the scheduled closing date in the form required by Section 5(a) and any other information
reasonably requested by Closing Agent to allow Closing Agent to prepare a settlement statement for closing.
Seller certifies that the information contained in the rent roll is correct as of the date submitted. Seller shall pay
the premium for the owner's standard coverage title policy. Buyer shall pay the excess premium attributable to
any extended coverage or endorsements requested by Buyer, and the cost of any survey required in connection
with the same. Seller and Buyer shall each pay one-half of the escrow fees. Real estate excise taxes shall be
paid by the party who bears primary responsibility for payment under the applicable statute or code, which is
typically Seller. Real and personal property taxes and assessments payable in the year of closing; collected rents
on any existing tenancies; interest; utilities; and other operating expenses shall be pro-rated as of closing. If
tenants pay any of the foregoing expenses directly, then Closing Agent shall only pro rate those expenses paid by
Seller. Buyer shall pay to Seller at closing an additional sum equal to any utility deposits or mortgage reserves for
assumed financing for which Buyer receives the benefit after closing. Buyer shall pay all costs of financing
including the premium for the lender's title policy. The real estate commission is due on closing or upon Seller's
default under this Agreement, whichever occurs first, and neither the amount nor due date thereof can be
changed without Listing Agent's written consent. If the Property was taxed under a deferred classification prior to
closing, then Seller shall pay all taxes, interest, penalties, deferred taxes or similar items which result from
removal of the Property from the deferred classification. At closing, all refundable deposits on tenancies shall be
credited to Buyer or delivered to Buyer for deposit in a trust account if required by state or local law. Buyer shall
pay all sales or use tax applicable to the transfer of personal property included in the sale.

a.  Unpaid Utility Charges. Buyer and Seller   ☐ WAIVE   ☒ DO NOT WAIVE the right to have the Closing
Agent disburse closing funds necessary to satisfy unpaid utility charges affecting the Property pursuant to RCW
60.80. If "do not waive" is checked, then attach CBA Form UA ("Utility Charges" Addendum). If neither box is
checked, then the "do not waive" option applies.

9. **POST-CLOSING ADJUSTMENTS, COLLECTIONS, AND PAYMENTS.** After closing, Buyer and Seller shall
reconcile the actual amount of revenues or liabilities upon receipt or payment thereof to the extent those items
were prorated or credited at closing based upon estimates. Any bills or invoices received by Buyer after closing

INITIALS: Buyer _____ Date 1/28/2011   Seller _____ Date _____
          Buyer _____ Date 1/27/2011   Seller _____ Date _____



Gottlieb Properties, Inc.
2018 156th Ave NE, Suite 100
Bellevue, WA 98007
Phone: 425-746-5173
Fax: 206-236-5868

© Copyright 1998 - 2005
Commercial Brokers Association
All Rights Reserved

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 7/97
Page 5 of 13

CBA

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
### (CONTINUED)

which relate to services rendered or goods delivered to the Seller or the Property prior to closing shall be paid by Seller upon presentation of such bill or invoice. At Buyer's option, Buyer may pay such bill or invoice and be reimbursed the amount paid plus interest at the rate of 12% per annum beginning fifteen (15) days from the date of Buyer's written demand to Seller for reimbursement until such reimbursement is made.  Notwithstanding the foregoing, if tenants pay certain expenses based on estimates subject to a post-closing reconciliation to the actual amount of those expenses, then Buyer shall be entitled to any surplus and shall be liable for any credit resulting from the reconciliation. Rents collected from each tenant after closing shall be applied first to rentals due most recently from such tenant for the period after closing, and the balance shall be applied for the benefit of Seller for delinquent rentals owed for a period prior to closing. The amounts applied for the benefit of Seller shall be turned over by Buyer to Seller promptly after receipt. Seller shall be entitled to pursue any lawful methods of collection of delinquent rents but shall have no right to evict tenants after closing.

**10. OPERATIONS PRIOR TO CLOSING.** Prior to closing, Seller shall continue to operate the Property in the ordinary course of its business and maintain the Property in the same or better condition than as existing on the date of Mutual Acceptance, but shall not be required to repair material damage from casualty except as otherwise provided in this Agreement. After the Feasibility Period, Seller shall not enter into or modify existing rental agreements or leases (except that Seller may enter into, modify, extend, renew or terminate residential rental agreements or residential leases in the ordinary course of its business), service contracts, or other agreements affecting the Property which have terms extending beyond closing without first obtaining Buyer's consent, which shall not be unreasonably withheld.

**11. POSSESSION.** Buyer shall be entitled to possession ☒ on closing ☐ _____ (on closing, if not completed). Buyer shall accept possession subject to all tenancies disclosed to Buyer during the Feasibility Period.

**12. SELLER'S REPRESENTATIONS.** Except as disclosed to or known by Buyer prior to the satisfaction or waiver of the feasibility contingency stated in Section 5 above, including in the books, records and documents made available to Buyer, or in the title report or any supplemental report or documents referenced therein, Seller represents to Buyer that, to the best of Seller's actual knowledge, each of the following is true as of the date hereof: (a) Seller is authorized to enter into the Agreement, to sell the Property, and to perform its obligations under the Agreement; (b) The books, records, leases, agreements and other items delivered to Buyer pursuant to this Agreement comprise all material documents in Seller's possession or control regarding the operation and condition of the Property; (c) Seller has not received any written notice that the Property or the business conducted thereon violate any applicable laws, regulations, codes and ordinances; (d) Seller has all certificates of occupancy, permits, and other governmental consents necessary to own and operate the Property for its current use; (e) There is no pending or threatened litigation which would adversely affect the Property or Buyer's ownership thereof after closing; (f) There is no pending or threatened condemnation or similar proceedings affecting the Property, and the Property is not within the boundaries of any planned or authorized local improvement district; (g) Seller has paid (except to the extent prorated at closing) all local, state and federal taxes (other than real and personal property taxes and assessments described in Section 8 above) attributable to the period prior to closing which, if not paid, could constitute a lien on Property (including any personal property), or for which Buyer may be held liable after closing; (h) Seller is not aware of any concealed material defects in the Property except as disclosed to Buyer in writing during the Feasibility Period; (i) There are no Hazardous Substances (as defined below) currently located in, on, or under the Property in a manner or quantity that presently violates any Environmental Law (as defined below); there are no underground storage tanks located on the Property; and there is no pending or threatened investigation or remedial action by any governmental agency regarding the release of Hazardous Substances or the violation of Environmental Law at the Property. As used herein, the term "Hazardous Substances" shall mean any substance or material now or hereafter defined or regulated as a hazardous substance, hazardous waste, toxic substance, pollutant, or contaminant under any federal, state, or local law, regulation, or ordinance governing any substance that could cause actual or suspected

INITIALS:  Buyer _____  Date _1/26/2011_  Seller _____  Date _____
           Buyer _____  Date _1/27/2011_  Seller _____  Date _____

MAR-12-2006 01:37A FROM:                                                TO:12532002289                P.6/18



Gottlieb Properties, Inc.
2018 156th Ave NE, Suite 100
Bellevue, WA 98007
Phone: 425-748-5173
Fax: 206-236-8868

© Copyright 1996 - 2005
Commercial Brokers Association
All Rights Reserved



CBA Form PS_1A
Purchase & Sale Agreement
Rev. 7/03
Page 4 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
### (CONTINUED)

harm to human health or the environment ("Environmental Law"). The term "Hazardous Substances" specifically includes, but is not limited to, petroleum, petroleum by-products, and asbestos.

If prior to closing Seller or Buyer discovers any information which would cause any of the representations above to be false if the same were deemed made as of the date of such discovery, then the party discovering the same shall promptly notify the other party in writing. If the newly-discovered information will result in costs or liability to Buyer in excess of the lesser of $100,000 or five percent (5%) of the purchase price, or will materially adversely affect Buyer's intended use of the Property, then Buyer shall have the right to terminate the Agreement and receive a refund of its earnest money provided Buyer elects to do so within five (5) days of discovering or receiving written notice of the new information. Nothing in this paragraph shall prevent Buyer from pursuing its remedies against Seller if Seller had actual knowledge of the newly-discovered information such that a representation provided for above was false.

13. **AS-IS.** Except for those representations and warranties specifically included in this Agreement: (i) Seller makes no representations or warranties regarding the Property; (ii) Seller hereby disclaims, and Buyer hereby waives, any and all representations or warranties of any kind, express or implied, concerning the Property or any portion thereof, as to its condition, value, compliance with laws, status of permits or approvals, existence or absence of hazardous material on site, occupancy rate or any other matter of similar or dissimilar nature relating in any way to the Property, including the warranties of fitness of a particular purpose, tenantability, habitability and use; (iii) Buyer otherwise takes the Property "AS IS;" and (iv) Buyer represents and warrants to Seller that Buyer has sufficient experience and expertise such that it is reasonable for Buyer to rely on its own pre-closing inspections and investigations.

14. **PERSONAL PROPERTY.**

a.  This sale includes all right, title and interest of Seller to the following tangible personal property:  ☒ None  ☐ That portion of the personal property located on and used in connection with the Property, which Seller will itemize in an Addendum to be attached to this Agreement within ten (10) days of Mutual Acceptance (None, if not completed). The value assigned to the personal property shall be $____ (if not completed, the County-assessed value if available, and if not available, the fair market value determined by an appraiser selected by the Listing Agent and Selling License). Seller warrants title to, but not the condition of, the personal property and shall convey it by bill of sale.

b.  In addition to the leases and Vendor Contracts assumed by Buyer pursuant to Section 5(a) above, this sale includes all right, title and interest of Seller to the following intangible property now or hereafter existing with respect to the Property including without limitation: all rights-of-way, rights of ingress or egress or other interests in, on, or to, any land, highway, street, road, or avenue, open or proposed, in, on, or across, in front of, abutting or adjoining the Property; all rights to utilities serving the Property; all drawings, plans, specifications and other architectural or engineering work product; all governmental permits, certificates, licenses, authorizations and approvals; all rights, claims, causes of action, and warranties under contracts with contractors, engineers, architects, consultants or other parties associated with the Property; all utility, security and other deposits and reserve accounts made as security for the fulfillment of any of Seller's obligations; any name of or telephone numbers for the Property and related trademarks, service marks or trade dress; and guaranties, warranties or other assurances of performance received.

15. **CONDEMNATION AND CASUALTY.** Seller bears all risk of loss until closing, and thereafter Buyer shall bear the risk of loss. Buyer may terminate this Agreement and obtain a refund of the earnest money if improvements on the Property are destroyed or materially damaged by casualty before closing, or if condemnation proceedings are commenced against all or a portion of the Property before closing. Damage will be considered material if the cost of repair exceeds the lesser of $100,000 or five percent (5%) of the purchase price stated in this Agreement. Alternatively, Buyer may elect to proceed with closing in which case at closing Seller shall assign to Buyer all

INITIALS:  Buyer _____  Date 1/26/2006   Seller _____  Date _____
           Buyer _____  Date 1/27/2006   Seller _____  Date _____

498

 **Gottlieb Properties, Inc.**
2018 156th Ave NE, Suite 100
Bellevue, WA 98007
Phone: 425-746-5173
Fax: 206-236-6368

© Copyright 1996 - 2005
Commercial Brokers Association
All Rights Reserved

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 7/07
Page 7 of 13

CBA

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
### (CONTINUED)

claims and right to proceeds under any property insurance policy and shall credit to Buyer at closing the amount of any deductible provided for in the policy.

16. **FIRPTA - TAX WITHHOLDING AT CLOSING.** Closing Agent is instructed to prepare a certification (CBA or NWMLS Form 22E, or equivalent) that Seller is not a "foreign person" within the meaning of the Foreign Investment in Real Property Tax Act. Seller agrees to sign this certification. If Seller is a foreign person, and this transaction is not otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required amount to the Internal Revenue Service.

17. **CONVEYANCE.** Title shall be conveyed by a Statutory Warranty Deed subject only to the Permitted Exceptions. If this Agreement is for conveyance of Seller's vendee's interest in a Real Estate Contract, the Statutory Warranty Deed shall include a contract vendee's assignment sufficient to convey after acquired title. At closing, Seller and Buyer shall execute and deliver to Closing Agent CBA Form No. PS-AS Assignment and Assumption Agreement transferring all leases and Vendor Contracts assumed by Buyer pursuant to Section 5(a) and all intangible property transferred pursuant to Section 14(b).

18. **NOTICES AND COMPUTATION OF TIME.** Unless otherwise specified, any notice required or permitted in, or related to, this Agreement (including revocations of offers and counteroffers) must be in writing. Notices to Seller must be signed by at least one Buyer and must be delivered to Seller and Listing Agent with a courtesy copy to any other party identified as a recipient of notices in Section 28 of this Agreement. A notice to Seller shall be deemed delivered only when received by Seller, Listing Agent, or the licensed office of Listing Agent. Notices to Buyer must be signed by at least one Seller and must be delivered to Buyer with a copy to Selling Licensee with a courtesy copy to any other party identified as a recipient of notices in Section 28 of this Agreement. A notice to Buyer shall be deemed delivered only when received by Buyer, Selling Licensee, or the licensed office of Selling Licensee. Selling Licensee and Listing Agent have no responsibility to advise of receipt of a notice beyond either phoning the represented party or causing a copy of the notice to be delivered to the party's address provided in this Agreement. Buyer and Seller must keep Selling Licensee and Listing Agent advised of their whereabouts to receive prompt notification of receipt of a notice. If any party is not represented by a licensee, then notices must be delivered to and shall be effective when received by that party.

Unless otherwise specified in this Agreement, any period of time in this Agreement shall mean Pacific Time and shall begin the day after the event starting the period and shall expire at 5:00 p.m. of the last calendar day of the specified period of time, unless the last day is a Saturday, Sunday or legal holiday as defined in RCW 1.16.050, in which case the specified period of time shall expire on the next day that is not a Saturday, Sunday or legal holiday.  Any specified period of five (5) days or less shall not include Saturdays, Sundays or legal holidays. Notwithstanding the foregoing, references to specific dates or times or number of hours shall mean those dates, times or number of hours.

19. **AGENCY DISCLOSURE.** At the signing of this Agreement,

Selling Licensee **Tomas M. Gottlieb**

represented **Seller**

and the Listing Agent **Tomas M. Gottlieb**

represented **Seller**

If Selling Licensee and Listing Agent are different salespersons affiliated with the same Broker, then Seller and Buyer confirm their consent to Broker acting as a dual agent. If Selling Licensee and Listing Agent are the same

INITIALS: Buyer _____ Date 1/26/2011   Seller _____ Date _____
          Buyer _____ Date 1/27/2011   Seller _____ Date _____

FEB-4-2006  12:10P FROM:                                    TO:12062386868        P.8/18



Gottlieb Properties, Inc.
2018 156th Ave NE, Suite 100
Bellevue, WA 98007
Phone: 425-746-5173
Fax: 206-233-6866

© Copyright 1996 - 2006
Commercial Brokers Association
All Rights Reserved

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 7/07
Page 6 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
### (CONTINUED)

person representing both parties, then Seller and Buyer confirm their consent to that person and his/her Broker acting as dual agents. If Selling Licensee, Listing Agent, or their Broker are dual agents, then Seller and Buyer consent to Selling Licensee, Listing Agent and their Broker being compensated based on a percentage of the purchase price or as otherwise disclosed on an attached addendum. Buyer and Seller confirm prior receipt of the pamphlet entitled "The Law of Real Estate Agency."

20. **ASSIGNMENT.** Buyer [ ] may [X] may not (may not is not completed) assign this Agreement, or Buyer's rights hereunder, without Seller's prior written consent, unless provided otherwise herein. If the "may not" option is selected and the words "and/or assigns" or similar words are used to identify the Buyer, then this Agreement may be assigned with notice to Seller but without Seller's consent only to an entity which is controlled by or under common control with the Buyer identified in this Agreement. Any other assignment requires Seller's consent. The party identified as the initial Buyer shall remain responsible for those obligations of the Buyer stated in this Agreement notwithstanding any assignment and, if this Agreement provides for Seller to finance a portion of the purchase price, then the party identified as the initial Buyer shall guarantee payment of the Seller financing.

21. **DEFAULT AND ATTORNEY'S FEE.**

   a.   **Buyer's default.** In the event Buyer fails, without legal excuse, to complete the purchase of the Property, then (check one):

   [X] Seller may terminate this Agreement and keep the earnest money as liquidated damages as the sole and exclusive remedy available to Seller for such failure; or

   [ ] Seller may, at its option, (a) terminate this Agreement and keep as liquidated damages the earnest money as the sole and exclusive remedy available to Seller for such failure, (b) bring suit against Buyer for Seller's actual damages, (c) bring suit to specifically enforce this Agreement and recover any incidental damages, or (d) pursue any other rights or remedies available at law or equity.

   b.   **Seller's default.** In the event Seller fails, without legal excuse, to complete the sale of the Property, then (check one):

   [X] As Buyer's sole remedy, Buyer may either (a) terminate this Agreement and recover all earnest money or fees made by Buyer whether or not the same are identified as refundable or applicable to the purchase price; or (b) bring suit to specifically enforce this Agreement and recover incidental damages provided Buyer must file suit within sixty (60) days of the scheduled date of closing or any earlier date Seller has informed Buyer in writing that Seller will not proceed with closing; or

   [ ] Buyer may, at its option, (a) bring suit against Seller for Buyer's actual damages, (b) bring suit to specifically enforce this Agreement and recover any incidental damages, or (c) pursue any other rights or remedies available at law or equity.

   Neither Buyer nor Seller may recover consequential damages such as lost profits. If Buyer or Seller institutes suit against the other concerning this Agreement, the prevailing party is entitled to reasonable attorneys' fees and expenses. In the event of trial, the amount of the attorney's fee shall be fixed by the court. The venue of any suit shall be the county in which the Property is located, and this Agreement shall be governed by the laws of the state where the Property is located.

22. **MISCELLANEOUS PROVISIONS.**

   a.   **Complete Agreement.** The Agreement and any addenda and exhibits to it state the entire understanding of Buyer and Seller regarding the sale of the Property. There are no verbal or other written agreements which modify or affect the Agreement.

   b.   **Counterpart Signatures.** The Agreement may be signed in counterpart, each signed counterpart shall be deemed an original, and all counterparts together shall constitute one and the same agreement.

INITIALS:  Buyer _____  Date 1/26/2011   Seller _____  Date _____
           Buyer _____  Date 1/27/2011   Seller _____  Date _____

MAR-12-2006 01:39A FROM:                                          TO:12532002289          P.9/18

FEB-4-2006  12:11P FROM:                                          TO:12062385968          P.9/18



Gottlieb Properties, Inc.
2018 156th Ave NE, Suite 100
Bellevue, WA 98007
Phone: 425-746-5173
Fax 206-238-5968

© Copyright 1998 - 2006
Commercial Brokers Association
All Rights Reserved

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 7/07
Page 9 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
(CONTINUED)

c.  **Electronic Delivery.**  Electronic delivery of documents (e.g., transmission by facsimile or email) including signed offers or counteroffers and notices shall be legally sufficient to bind the party the same as delivery of an original. At the request of either party, or the Closing Agent, the parties will replace electronically delivered offers or counteroffers with original documents.

d.  **Section 1031 Like-Kind Exchange.**  If either Buyer or Seller intends for this transaction to be a part of a Section 1031 like-kind exchange, then the other party agrees to cooperate in the completion of the like-kind exchange so long as the cooperating party incurs no additional liability in doing so, and so long as any expenses (including attorneys fees and costs) incurred by the cooperating party that are related only to the exchange are paid or reimbursed to the cooperating party at or prior to closing. Notwithstanding Section 20 above, any party completing a Section 1031 like-kind exchange may assign this Agreement to its qualified intermediary or any entity set up for the purpose of completing a reverse exchange.

23.  **ACCEPTANCE; COUNTEROFFERS.**  Seller has until midnight of _____, 2011 (if not filled in, the third business day following the last Buyer signature date below) to accept this offer, unless sooner withdrawn. If this offer is not timely accepted, it shall lapse and the earnest money shall be refunded to Buyer. If either party makes a future counteroffer, the other party shall have until 5:00 p.m. on the _____ business day (if not filled in, the second business day) following its receipt to accept the counteroffer, unless sooner withdrawn. If the counteroffer is not timely accepted or countered, this Agreement shall lapse and the earnest money shall be refunded to the Buyer. No acceptance, offer or counteroffer from the Buyer is effective until a signed copy is received by the Seller, the Listing Agent or the licensed office of the Listing Agent. No acceptance, offer or counteroffer from the Seller is effective until a signed copy is received by the Buyer, the Selling Licensee or the licensed office of the Selling Licensee. "Mutual Acceptance" shall occur when the last counteroffer is signed by the offeree, and the fully-signed counteroffer has been received by the offeror, his or her licensee, or the licensed office of the licensee. If any party is not represented by a licensee, then notices must be delivered to and shall be effective when received by that party.

24.  **INFORMATION TRANSFER.**  In the event this Agreement is terminated, Buyer agrees to deliver to Seller within ten (10) days of Seller's written request copies of all materials received from Seller and any non-privileged plans, studies, reports, inspections, appraisals, surveys, drawings, permits, application or other development work product relating to the Property in Buyer's possession or control as of the date this Agreement is terminated.

25.  **CONFIDENTIALITY.**  Until and unless closing has been consummated, Buyer and Seller shall follow reasonable measures to prevent unnecessary disclosure of information obtained in connection with the negotiation and performance of this Agreement. Neither party shall use or knowingly permit the use of any such information in any manner detrimental to the other party.

INITIALS:  Buyer _____  Date 1/26/2011   Seller _____   Date _____
            Buyer _____  Date 1/27/2011   Seller _____   Date _____

MAR-12-2006 01:39A FROM:                                    TO:12532002289        P.10/18

FEB-4-2006  12:12P FROM:                                    TO:12062386868        P.10/18

Gottlieb Properties, Inc.
2016 156th Ave NE, Suite 100
Bellevue, WA 98007
Phone: 425-746-5173
Fax 206-238-6868

©Copyright 1989 - 2005
Commercial Brokers Association
All Rights Reserved

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 7/97
Page 10 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
### (CONTINUED)

**26. SELLER'S ACCEPTANCE AND BROKERAGE AGREEMENT.** Seller agrees to sell the Property on the terms and conditions herein, and further agrees to pay a commission in a total amount computed in accordance with the listing or commission agreement. If there is no written listing or commission agreement, Seller agrees to pay a commission of ____% of the sales price or $____. The commission shall be apportioned between Listing Agent and Selling Licensee as specified in the listing or any co-brokerage agreement. If there is no listing or written co-brokerage agreement, then Listing Agent shall pay to Selling Licensee a commission of ____% of the sales price or $____. Seller assigns to Listing Agent and Selling Licensee a portion of the sales proceeds equal to the commission. If the earnest money is retained as liquidated damages, any costs advanced or committed by Listing Agent or Selling Licensee for Buyer or Seller shall be reimbursed or paid therefrom, and the balance shall be paid one-half to Seller and one-half to Listing Agent and Selling Licensee according to the listing agreement and any co-brokerage agreement. In any action by Listing Agent or Selling Licensee to enforce this Section, the prevailing party is entitled to reasonable attorneys' fees and expenses. Neither Listing Agent nor Selling Licensee are receiving compensation from more than one party to this transaction unless disclosed on an attached addendum, in which case Buyer and Seller consent to such compensation. The Property described in attached Exhibit A, is commercial real estate. Notwithstanding Section 25 above, the pages containing this Section, the parties' signatures and an attachment describing the Property may be recorded.

**27. LISTING AGENT AND SELLING LICENSEE DISCLOSURE.** EXCEPT AS OTHERWISE DISCLOSED IN WRITING TO BUYER OR SELLER, THE SELLING LICENSEE, LISTING AGENT, AND BROKERS HAVE NOT MADE ANY REPRESENTATIONS OR WARRANTIES OR CONDUCTED ANY INDEPENDENT INVESTIGATION CONCERNING THE LEGAL EFFECT OF THIS AGREEMENT, BUYER'S OR SELLER'S FINANCIAL STRENGTH, BOOKS, RECORDS, REPORTS, STUDIES, OR OPERATING STATEMENTS, OR OTHER MATTERS RELATING TO THE PROPERTY, INCLUDING WITHOUT LIMITATION, THE PROPERTY'S ZONING, BOUNDARIES, AREA, COMPLIANCE WITH APPLICABLE LAWS (INCLUDING LAWS REGARDING ACCESSIBILITY FOR DISABLED PERSONS), OR HAZARDOUS OR TOXIC MATERIALS INCLUDING MOLD OR OTHER ALLERGENS. SELLER AND BUYER ARE EACH ADVISED TO ENGAGE QUALIFIED EXPERTS TO ASSIST WITH THESE DUE DILIGENCE AND FEASIBILITY MATTERS, AND ARE FURTHER ADVISED TO SEEK INDEPENDENT LEGAL AND TAX ADVICE RELATED TO THIS AGREEMENT.

INITIALS:  Buyer _____ Date 1/26/206  Seller _____ Date _____
           Buyer _____ Date 1/27/2011  Seller _____ Date _____

502

MAR-12-2006 01:40A FROM:                                         TO:12532002289          P.11/18

FEB-4-2006  12:12P FROM:                                         TO:12062396868      P.11/18
To: Jim Anderson  Page 12 of 19         2011-01-27 00:00:47 (GMT)        Gottlieb Properties  From: TOMAS M GOTTLIEB

  Gottlieb Properties, Inc.                © Copyright 1999 - 2006      CBA
GOTTLIEB PROPERTIES, INC.    2018 156th Ave NE, Suite 100      Commercial Brokers Association
                             Bellevue, WA 98007                      All Rights Reserved
                             Phone: 425-746-5173
                             Fax: 206-238-8858                       CBA Form PS-1A
                                                                 Purchase & Sale 7/97
                                                                    Page 11 of 13

### COMMERCIAL & INVESTMENT REAL ESTATE
### PURCHASE & SALE AGREEMENT
### (CONTINUED)

28. IDENTIFICATION OF THE PARTIES.  The following is the contact information for the parties involved in this Agreement:

**Buyer**

Contact: Gregory C. Plantenida
Address: 12600 SE 38th Street, Suite 103
Bellevue, WA 98005
Business Phone: (425) 637-8849
Mobile Phone: (425) 922-1053
Fax: (425) 645-1036
Email: greg@nprealty.com

**Seller**

Contact: James Anderson
Address: PO Box 14966, Tumwater, WA 98511
Business Phone: _____
Mobile Phone: (360) 790-5129
Fax: _____
Email: bulldoos4us@msn.com

**Selling Licensee**

Name: Same as listing agent
Address: _____
Business Phone: _____
Mobile Phone: _____
Email: _____
Fax: _____
MLS Office No.: _____

**Listing Agent**

Name: Tomas M. Gottlieb
Address: 2018 156th Ave NE Ste. 100, Bellevue, WA 98007
Business Phone: 425-746-7153
Mobile Phone: 206-618-6000
Email: tomas@gottliebproperties.com
Fax: 206-238-8858
MLS Office No.: _____

**Courtesy Copy of Notices to Buyer to:**

Name: _____
Address: _____
Business Phone: _____
Fax: _____
Mobile Phone: _____
Email: _____

**Courtesy Copy of Notices to Seller to:**

Name: _____
Address: _____
Business Phone: _____
Fax: _____
Mobile Phone: _____
Email: _____

INITIALS:  Buyer _____ Date 1/26/2011   Seller _____ Date _____
           Buyer _____ Date 1/27/2011   Seller _____ Date _____

503

MAR-12-2006 01:40A FROM:                                    TO:12532002289        P.12/18

FEB-4-2006  12:13P FROM:                    TO:12062386868  ...  P.12/18

Gottlieb Properties, Inc.
2018 156th Ave NE, Suite 100
Bellevue, WA 98007
Phone: 425-746-6173
Fax: 206-258-6868

© Copyright 1996 - 2006
Commercial Brokers Association
All Rights Reserved

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 7/07
Page 13 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
### (CONTINUED)

IN WITNESS WHEREOF, the parties have signed this Agreement intending to be bound.

Buyer Gregory C. Piantanida and/or assigns

_____
Printed name and type of entity

Buyer _____
Signature and title

Date signed  1/26/2011

Seller Valkommen Mobile Park LLC
_____
Printed name and type of entity

Seller _____  MANAGER  LLC
Signature and title

Date signed  1/27/2011

Buyer _____
Printed name and type of entity

Buyer _____
Signature and title

Date signed _____

Seller _____
Printed name and type of entity

Seller _____
Signature and title

Date signed _____

INITIALS:  Buyer _____  Date 1/26/2011   Seller _____  Date 1/26/11
           Buyer _____  Date _____    Seller _____  Date _____

504



Gottlieb Properties, Inc.
2018 156th Ave NE, Suite 100
Bellevue, WA 98007
Phone: 425-748-5173
Fax: 206-236-8868

© Copyright 1988 - 2003
Commercial Brokers Association
All Rights Reserved

CBA Form PS_1A
Purchase & Sale Agreement
Rev. 7/07
Page 13 of 13

## COMMERCIAL & INVESTMENT REAL ESTATE
## PURCHASE & SALE AGREEMENT
### (CONTINUED)

### EXHIBIT A

[Legal Description]

**THURSTON COUNTY PARCEL NO. 31560000100: LEGAL DESCRIPTION: SECTION 04 TOWNSHIP 17 RANGE 2W QUARTER SW SE PLAT ANDERSON PUD DIV 1 LT 1 DOCUMENT 020/045 & ANDERSON PUB DIV 2 LOT 2 021/098 COMBINED FOR ASSESSMENT PURPOSES ONLY EX PTN TO**

INITIALS:  Buyer _____  Date 1/26/2011  Seller _____  Date _____
           Buyer _____  Date 1/27/2011  Seller _____  Date _____

MAR-12-2006 01:40A FROM:                                    TO:12532002289              P.14/18

FEB-4-2006  12:13P FROM:                                   TO:12062396868             P.14/18



Gottlieb Properties, Inc.
2018 156th Ave NE, Suite 100
Bellevue, WA 98007
Phone: 425-746-5173
Fax 206-223-6868

© Copyright Commercial
Brokers Association 2001
All Rights Reserved

CBA Form FIL_FIN
Rev 6/99
CBA Financing Addendum
Page 1 of 3

CBA

## CBA FINANCING ADDENDUM

CBA Text Disclaimer:  Text deleted indicated by strike.
New text inserted indicated by small capital letters.

The following is part of the Purchase and Sale Agreement dated <u>January 26, 2011</u> (the "Agreement"), between <u>Velkommen Mobile Park LLC</u> ("Seller"), and <u>Gregory C. Plentanida and/or assions</u> ("Buyer"), regarding the sale of the Property known as <u>"Velkommen MHP" 2535 70th Ave SW, Tumwater, WA</u>.
IT IS AGREED BETWEEN BUYER AND SELLER AS FOLLOWS:

☐ **1.  NEW FINANCING.**  If payment of the purchase price is contingent on Buyer obtaining new financing, then Buyer shall submit a complete written application for financing for the Property within five (5) business days after the Feasibility Period stated in Section 5 of the Agreement, pay required costs and make a good faith effort to procure such financing.  Buyer shall not reject those terms of a commitment which provide for a loan amount of at least $_____ or _____ percent of the purchase price, interest not to exceed _____ percent per annum, a payment schedule calling for monthly payments amortized over not less than _____ years, and total placement fees and points of not more than _____ percent of the loan amount. This Agreement shall terminate and Buyer shall receive a refund of the earnest money unless Buyer gives Seller written notice that this condition is satisfied or waived on or before _____ days (60 days, if not completed) following mutual acceptance of the Agreement.

☐ **2.  ASSUMPTION OF EXISTING FINANCING.**

    **a.  Approval of Documents.**  If payment of the purchase price includes Buyer's assumption of a note and mortgage or deed of trust, or a real estate contract, Seller shall deliver to Buyer within five (5) days after mutual acceptance of the Agreement a copy of all documents relating to Seller's underlying financing including the underlying debt instrument(s) to be assumed, guaranties, non-recourse carve-outs, and indemnity agreements (the "Underlying Loan Documents"). Buyer shall be deemed to have approved the Underlying Loan Documents unless Buyer gives notice of disapproval during the Feasibility Period.

    **b.  Consent to Assumption.**  Buyer shall submit a complete application for assumption of the Underlying Loan Documents together with any required application fee within five (5) days after the Feasibility Period. Upon Buyer's request, Seller shall assist Buyer by requesting the lender's consent to the assumption on Buyer's behalf. Buyer's principals shall be required to execute any guaranties and indemnities required by the lender.  This Agreement shall terminate and, provided Buyer has timely complied with its obligations under this Addendum, Buyer shall receive a refund of the earnest money unless Buyer gives Seller written notice within _____ days (30 days, if not completed) after the end of the Feasibility Period stating that such consent is available.

    **c.  Assumption Fees and Expenses.**  Buyer shall pay all costs and expenses attributable to the assumption of the underlying indebtedness including all application fees, processing charges, and assumption fees.

    **d.  Release of Seller and Principals.**  Seller's obligations under the Agreement ☐ shall be ☐ shall not be (shall not be, if not completed) conditioned upon Seller and all guarantors or indemnitors being released from their obligations arising under the Underlying Loan Documents for the period on and after closing.

☒ **3.  SELLER FINANCING.**

    **a.  Debt Instruments.**  If Seller is financing a portion of the purchase price, unless different forms are attached to the Agreement, Buyer shall execute and submit to the Closing Agent: (i) LPB Form No. 28A-

INITIALS:  Buyer_____  Date 1/26/2011   Seller_____  Date_____
           Buyer_____  Date 1/27/2011   Seller_____  Date_____

506

MAR-12-2006 01:41A FROM:                               TO:12532002289          P.15/18

FEB-4-2006  12:14P FROM:                               TO:12062386868          P.15/18

**Gottlieb Properties, Inc.**

Gottlieb Properties, Inc.
2018 156th Ave NE, Suite 100
Bellevue, WA 98007
Phone: 425-746-5173
Fax: 206-236-6868

© Copyright Commercial
Brokers Association 2006
All Rights Reserved

CBA Form PS_FIN
Rev 6/06
Financing Addendum
Page 2 of 6

## CBA FINANCING ADDENDUM
(CONTINUED)

05 Promissory Note and the DUE ON SALE and COMMERCIAL PROPERTY optional clauses in that form shall apply; (ii) LPB Form No. 20-05 Short Form Deed of Trust; and (iii) CBA Form No. DTR Deed of Trust Rider. In addition, Buyer authorizes Seller and Closing Agent to file a financing statement to perfect Seller's security interest in the personal property described in the Deed of Trust Rider.

Payment Terms.  The promissory note shall bear interest at the rate of 5.50 percent per annum, and shall be payable as follows (choose one):

☐ monthly installments of interest only;

☐ monthly installments of $_____;

☐ equal monthly installments of principal and interest in an amount sufficient to fully amortize the outstanding principal balance at the stated interest rate over _____ years;

☒ other $400,000 down payment at closing. Seller to finance the balance at 5.5% interest due in 10 years.  The payments to be interest only for the first 2 years then principal and interest amortized over a 30 year schedule. The note shall not be assumable or assignable and is due on sale .

Payments shall commence on the first day of the first month after closing and continuing on the same day of each succeeding month until (choose one):

☒ 120 months from the date of closing;

☐ other_____, on which date all outstanding principal and interest shall be due.

Buyer ☒ may ☐ may not (may, if not completed) prepay the outstanding principal balance without premium or penalty. If Seller receives any monthly payment more than _____ days (15 days if not filled in) after its due date, then Buyer shall be in default and a late payment charge of $_____ or _____% of the delinquent amount (5% of the delinquent amount if not filled in) shall be added to the scheduled payment. The principal shall, at Seller's option, bear interest at the rate of _____ percent per annum (15% or the maximum rate allowed by law, whichever is less, if not filled in) during any period of Buyer's default. Buyer shall have _____ days (5 days if not filled in) after written notice to cure a default before Seller may declare all outstanding sums to be immediately due and payable.

(Note to Buyer and Seller: If the Property is currently used primarily for agricultural purposes, then a non-judicial foreclosure/forfeiture remedy is available to Seller only by using a real estate contract and is not available with a deed of trust.)

4.   ESTOPPELS AND SNDAS.  If Buyer or its lender require estoppels or subordination, nondisturbance and attornment agreements ("Estoppel/SNDAs") from some or all of the non-residential tenants at the Property, then Seller shall cooperate with Buyer to obtain the required Estoppels/SNDAs.  The form of the Estoppels/SNDAs shall be CBA Form PS_TEC, or any different form required by Buyer's lender which Buyer has delivered to Seller during the Feasibility Period.  Promptly after the Feasibility Period, Seller shall use commercially reasonable efforts and diligence to obtain the Estoppel/SNDAs from its tenants provided that

INITIALS: Buyer _____ Date 1/26/2004   Seller _____ Date _____

Buyer _____ Date 1/27/2011   Seller _____ Date _____

507

MAR-12-2006 01:41A FROM:                                    TO:12532002289           P.16/18

FEB-4-2006  12:14P FROM:                                   TO:12062386868          P.16/18

 **Gottlieb Properties, Inc.**
2018 156th Ave NE, Suite 100
Bellevue, WA 98007
Phone: 425-746-5178
Fax: 206-236-6863

© Copyright Commercial
Brokers Association 2009
All Rights Reserved

CBA Form PS_FN
Rev 8/09
Financing Addendum
Page 5 of 5

**CBA FINANCING ADDENDUM**
(CONTINUED)

Seller shall not be required to incur any liability or out-of-pocket expenses which are not reimbursed by Buyer.   Buyer shall have no separate contingency for receipt of the Estoppels/SNDAs other than the Feasibility Contingency or as specifically provided in an addendum signed by Seller.

6.   **ADDITIONAL PROVISIONS.**  The terms of the Agreement remain unchanged except as supplemented in this Addendum or provided below: Seller financing subject to Seller's approval of Buyer's financial statements and creditworthiness. Buyer to personally guarantee the above referenced note and provide proof of funds to close.

*# – 25% Down*
*# – Not transferrable without consent.*

Buyer intends to form a new LLC to own the property where Greg and Dan (son) Piantanida will be the managing members. Some of the member interests will be held by investors that will be brought in after closing. This is consistent with paragraph 20.

INITIALS:  Buyer _____ Date 1/26/2011  Seller _____ Date _____
           Buyer _____ Date 1/27/2011  Seller _____ Date _____

508

MAR-12-2006 01:42A FROM:                                  TO:12532002289           P.17/18

FEB-4-2006  12:15P FROM:                                  TO:12062386868         P.17/18

 **Gottlieb Properties, Inc.**
2018 156th Ave NE, Suite 100
Bellevue, WA 98007
Phone: 425-748-5173
Fax 206-236-6868

© Copyright 1999 - 2005
Commercial Brokers Association
All Rights Reserved

CBA Form No. EM4
Earnest Money Promissory Note
Rev. 1999
Page 1 of 1

CBA ✓

### EARNEST MONEY PROMISSORY NOTE

CBA Text Disclaimer: Text deleted by licensee indicated by
strike. New text inserted by licensee indicated by small capital
letters.

$ 50,000                              Place: Bellevue, WA

                                      Date: January 26, 2011

FOR VALUE RECEIVED, the undersigned ("Buyer") agrees to pay to the order of Chicago Title Company the sum of Fifty Thousand Dollars ($50,000) as follows:

☐ _____ days (3 days if not filled in) following mutual acceptance of the Purchase Agreement (as defined below).

☒ Upon satisfaction or waiver of the feasibility contingency stated in the Purchase Agreement.

☐ Other _____.

This Note is evidence of the obligation to pay earnest money under the Purchase and Sale Agreement (the "Purchase Agreement") between the Buyer and Velkommen Mobile Park LLC ("Seller") dated January 26, 2011 for the property located at "Velkommen MHP" 2535 70th Ave SW, Tumwater, WA 98512. Buyer's failure to pay the earnest money strictly as above shall constitute default on said Purchase Agreement as well as on this Note.

If this Note shall be placed in the hands of an attorney for collection, or if suit shall be brought to collect any of the balance due on this Note, Buyer promises to pay a reasonable attorney's fee as fixed by the Court, and all court and collection costs. This Note shall bear interest at the rate of twelve percent (12%) per annum after default.

BUYER:

Gregory C. Plantanida and/or assigns _____

By: Gregory C. Plantanida

Name/Title: Individual

MAR-12-2006 01:42A FROM:                                    TO:12532002289           P.18/18

FEB-4-2006  12:15P FROM:                        TO:12062386068          P.18/18

 Gottlieb Properties, Inc.          © Copyright 1993 - 2005        CBA
                              2018 156th Ave NE, Suite 100      Commercial Brokers Association
                              Bellevue, WA 98007              All Rights Reserved
                              Phone: 425-748-5173
                              Fax: 206-238-6868                 CBA Form  UA
                                                          Utility Addendum to P&S
                                                                Rev. 12/99
                                                               Page 1 of 1

## UTILITY CHARGES
### Insert to Purchase & Sale Agreements and Addendum
CBA Text Disclaimer: Text deleted by licensee indicated by strike.
New text inserted by licensee indicated by small capital letters.

The following is part of the Purchase and Sale Agreement dated <u>January 26, 2011</u> between <u>Valkomman Mobile Park LLC</u> (Seller) and <u>Gregory C. Pienianide and/or assigns</u> (Buyer) concerning <u>"Valkomman MHP 2635 70th Ave SW</u> (the Property).  Pursuant to RCW 60.80, Buyer and Seller request the Closing Agent to administer the disbursement of closing funds necessary to satisfy unpaid charges affecting the Property.

The names and addresses of all utilities providing service to the Property and having lien rights are as follows:

Water District:
    Anderson Water LLC/Anderson PUD Water System
    Name
    Address
    City, State, Zip

Sewer District:
    N/A - Private Septic
    Name
    Address
    City, State, Zip

Irrigation District:
    Name
    Address
    City, State, Zip

Garbage:
    Name
    Address
    City, State, Zip

Electricity:
    Puget Sound Energy
    Name  Darcie Axe
    Address
    City, State, Zip

Special District(s):
(local improvement districts
or utility local improvement)
    Name
    Address
    City, State, Zip

IF THE ABOVE INFORMATION HAS NOT BEEN FILLED IN AT THE TIME OF MUTUAL ACCEPTANCE OF THIS AGREEMENT, THEN (1) WITHIN ____ DAYS (5 IF NOT FILLED IN) OF MUTUAL ACCEPTANCE OF THIS AGREEMENT, SELLER SHALL PROVIDE THE LISTING AGENT, SELLING LICENSEE, OR CLOSING AGENT WITH THE NAMES AND ADDRESSES OF ALL UTILITY PROVIDERS HAVING LIEN RIGHTS AFFECTING THE PROPERTY AND (2) BUYER AND SELLER AUTHORIZE LISTING AGENT, SELLING LICENSEE OR CLOSING AGENT TO INSERT INTO THIS ADDENDUM THE NAMES AND ADDRESSES OF THE UTILITY PROVIDERS IDENTIFIED BY SELLER.

INITIALS:  Buyer _____   Date 1/26/2011   Seller _____   Date _____
        Buyer _____   Date 1/27/2011   Seller _____   Date _____

510