1
2
3
4
5
6
7
8
9
10
11
12
13
14

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

LAUREL PARK COMMUNITY, LLC, a Washington
limited liability company; TUMWATER ESTATES
INVESTORS, a California limited partnership;
VELKOMMEN MOBILE PARK, LLC, a Washington
limited liability company; and MANUFACTURED
HOUSING COMMUNITIES OF WASHINGTON, a
Washington non-profit corporation,

                       Plaintiffs,

    vs.

CITY OF TUMWATER, a municipal corporation,

               Defendant.

NO.   C09-5312 BHS

**DEFENDANT CITY OF
TUMWATER'S RESPONSE TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT**

15

## I.  INTRODUCTION

16
17
18
19

      Both parties have moved for summary judgment.  The plaintiffs' supplemental motion for partial summary judgment fails to demonstrate that two ordinances that establish a Manufactured Home Park ("MHP") zoning district violate their constitutional rights.  Under the undisputed facts, the City is entitled to summary judgment, not the plaintiffs.

20

## II.  EVIDENCE RELIED UPON

21
22
23
24
25
26

      In response to Plaintiffs' Supplemental Motion for Summary Judgment, the City relies upon the Declarations of David Ginther (Dkt. 21), Michael Matlock (Dkt. 22), Jeffrey Myers (Dkt. 23), William Partin (Dkt. 24),  Chris Carlson (Dkt. 26), Stephen Shapiro (Dkt. 27), the Declaration of William Partin in Opposition to the Plaintiffs' Motion for Summary Judgment ("Partin II") (Dkt. 28), the Declaration of Jeffrey S. Myers in Opposition to the Plaintiffs' Motion for Summary Judgment ("Myers II") (Dkt. 29) and the Supplemental Declaration of Jeffrey S. Myers in Support of Amended Motion for Summary Judgment ("Myers III") (Dkt 59.).

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

# III.  STATEMENT OF FACTS

## A.    FACTS

The facts of this case are set forth in the City's Amended Motion for Summary Judgment.

## B.    FACTUAL ERRORS BY PLAINTIFFS

Plaintiffs' motion contains several factual errors and material omissions.   First, Plaintiffs incorrectly contend that the Use Exception in TMC 18.49.070 requires that an owner show that he meets both prongs of the test.  Supp. Motion at 6:3 (stating owner must show district prevents reasonable use "and" no viable use). The ordinance is phrased in the disjunctive, using the word "or" to show that an owner can invoke the use exception by meeting either test.

Second, plaintiff contends that the ordinance forces an owner to keep the park for tenants in perpetuity.   Supp. Motion at 5:16-17.  This is false.  The City has adopted zoning that allows continued MHP operation as a permitted use, but it is not compulsory.  See TMC 18.49.020-.050; Matlock Dec., ¶6.

Third, plaintiffs mischaracterize the MHP District as a "single use" zone. Their own witnesses acknowledged the 23 permitted, accessory or conditional uses set forth in the ordinance.  Eichler, 48:3-9.[1]  However, they choose to ignore these uses or dismiss them with  unsupported, conclusory allegations by the owners that these other uses are not economically viable. This conclusion is the product of not doing any investigation into the allowed alternate uses.  See Eichler at 47:24-50:11; Schmicker, at 76:19-77:1.  Plaintiffs also apparently instructed their own expert not to conduct an assessment of the viability of conditional uses.  Wilson, 42:3-6. It is more accurate to say that the zoning makes the existing MHP use one of the permitted uses in the MHP District.

Fourth, plaintiffs contend that the owner must request a "discretionary" use exception in order to use any of the enumerated conditional uses in the Ordinance.  Supp. Motion at 5:20-22.  This is facially untrue.  Plaintiffs conflate "conditional uses", which are permitted after hearing examiner review and cannot be arbitrarily denied, *Lutheran Day Care*, 119 Wn.2d 91, 121, 829 P.2d 746

---

[1]  Deposition testimony is attached as Exhibit A-D to Myers II Declaration.  For ease of reference, each deposition will be referred to by the witness' name. Dep. of James Anderson, Ex. A; Dep. of William Schmicker, Ex. B; Dep. of Robert Eichler, Ex. C; and Dep. Of Jeanne-Marie Wilson, Ex.D.

**DEFENDANT CITY OF TUMWATER'S
RESPONSE TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT  – 2**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

(1999), with the use exception which allows reversion to uses allowed under the prior zoning designation.  The use exception is triggered by a showing that the owner does not have reasonable use of their property under the MHP zoning; or that the uses authorized by the MHP zoning are not economically viable.  Once that factual showing is made, the zoning automatically reverts to prior zoning. TMC 18.49.070.  The use exception is not a prerequisite for any of the 23 permitted, accessory or conditional uses set forth in the ordinance. TMC 18.49.070.

Fifth, plaintiffs inaccurately claim the Western Washington Growth Management Hearings Board upheld their property rights claims.  Supp. Motion at 7:1-6.  In fact, the Board held that Plaintiffs have no property right to prevent a zoning change and it is not illegal to have a single use zoning district. Matlock, Ex. A at 12. The only issue on which plaintiffs had any measure of success was a ruling on a procedural challenge.  The Board held that the administrative record failed to demonstrate compliance with the process for considering property rights set forth in an advisory memorandum prepared by the Attorney General's Office, as required by RCW 36.70A.370.[2] Matlock, Ex. A at 30.  The Board found that the City had demonstrated that it considered whether the ordinances were a taking under GMA Goal 6 and did not agree with any of Plaintiffs' constitutional arguments.  *Id.*  Moreover, the procedural problem was cured by the City on remand and upheld by the Thurston County Superior Court on appeal.  Myers III, Exhibit 1.

Sixth, the plaintiffs note that the City denied a permit for a replacement home at Laurel Park. Supp. Motion at 6:10-12.  They fail to disclose that the City and Park Owner had already agreed to stay their appeal so the City could amend its code to reflect a recent change in state law.  Carlson Dec., Exhibit A . The City did so on February 16, 2010 and issued the permit for the replacement home on March 19, 2010, the day on which the code amendment took effect. *Id*., Exhibits B, C.  The City's willingness to amend its code to accommodate Laurel Park directly rebuts the speculative testimony offered by plaintiff's lawyer, Mr. Woodring.

---

[2]  The City's consideration of the AG Memorandum is privileged and any violation is *damnum absque injuria*.  RCW 36.70A.370(4) provides : The process used by government agencies shall be protected by attorney client privilege. Nothing in this section grants a private party the right to seek judicial relief requiring compliance with the provisions of this section.

**DEFENDANT CITY OF TUMWATER'S**
**RESPONSE TO PLAINTIFFS' MOTION**
**FOR SUMMARY JUDGMENT  – 3**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## C.     INADMISSIBLE EVIDENCE RELIED UPON BY PLAINTIFFS

The evidence supporting Plaintiffs' Motion for Summary Judgment must be admissible. FRCP 56 (e). Much of the Plaintiffs' evidence is inadmissible and should be stricken.

### 1.     Declaration of Jeanne-Marie Wilson

The admissibility of expert testimony is governed by FRE 702. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993). Expert testimony is admissible if it is both relevant and reliable. *Elsayed Mukhtar v. Cal State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002). The Court acts as the "gate-keeper" to evaluate the relevance and reliability of expert testimony and must exclude testimony that does not satisfy threshold requirements. *Elsayed Mukhtar*, 299 F.3d at 1063.

To meet the reliability prong, expert testimony must be evaluated under multiple factors to determine reliability and relevance. In *Daubert*, the Supreme Court focused upon the admissibility of scientific expert testimony. It pointed out that such testimony is admissible only if it is both relevant and reliable. And it held that it is the trial judge's task to ensure that "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.*, 509 U.S. at 597. These tests apply not only to scientific theories, but to all forms of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 148-49, 119 S.Ct. 1167 (1999).

Jeanne-Marie Wilson is a licensed appraiser. She has not attained the coveted MAI designation for appraisers. Wilson, at 7:4-5. She never testified as an expert witness and has never been admitted as an expert in court. Id., 8:25 - 9:18. Wilson's testimony fails both the relevance and reliability prongs of *Daubert* and is inadmissible. Wilson's report fails the relevance prong because it did not mention the MHP Zoning or assess the impact on plaintiffs' properties, which is the issue in this case. Wilson, at 17:4-7. She did no analysis of its impact because she was retained on December 4, 2009, just three days before her FRCP 26(a)(2)(B) Report was due on December 7, 2009. *Id.* Legal counsel instructed her to limit her analysis to the fair market value of the MHPs as of December 31, 2008 assuming that the highest and best use was continued use as a MHP. *Id.*

Both Wilson and the City's experts agree that to evaluate the impact of these ordinances, it is necessary to appraise the property using a before and after methodology. Wilson, at 70:3-9; Shapiro

DEFENDANT CITY OF TUMWATER'S
RESPONSE TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT  – 4

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

1  Dec. at 2 ¶3; Partin Report at 27.  She testified that there was inadequate time to complete the "before

2  and after" appraisal of the properties necessary to evaluate impact from the MHP Zoning ordinances.

3  *Id.,* at 13:3-5.  Thus, all Wilson's December 7, 2009 report did was to establish an opinion as to the

4  value of the plaintiff's property at its highest and best use before the ordinances were adopted.  Partin

5  Report at 27; Wilson 13:23-14:18.

6      Wilson also failed to conduct her own analysis of the highest and best use of property or

7  provide data showing market demand for another use of the property.  This violates the standards for

8  appraisers, known as USPAP, Standard 1-3.  Shapiro Dec., ¶9, 11.  In so doing, she cannot present

9  a reliable opinion and her declaration should be stricken.

10     Wilson also recognized that it was necessary to do a "before and after" analysis to determine

11  the amount of the "redevelopment premium" mentioned in her declaration, but she later conceded that

12  she had not done that analysis.  She testified:

13     Q  Okay.  Let me ask you this:  As an appraiser, what methodology would you use in
       trying to measure what value the market is assigning to this premium that you have
14     opined about?
       A   Well, it's the before-and-after valuation that I haven't done yet.  But that was
15     understood that I would be completing after we did this preliminary valuation.
       Q  Have you done that analysis, as you sit here today?
16     A  I have not.

17  Wilson Deposition at 70:3-11.

18     Wilson's statements about the existence of a redevelopment premium are not the product of

19  any methodology recognized within the appraisal community.  Shapiro Dec., ¶13.  Without doing the

20  proper analysis, Wilson's opinions as to the alleged "premium" or value transfer from the owners to

21  the tenants is mere guesswork and does not meet the *Daubert* requirement to be reliable.[3]

22     **2.     Declaration of John Woodring**

23      Plaintiffs are not allowed to introduce as "fact" by way of declaration, what is actually its

24  legal argument.  Declarations, which are supposed to "set forth facts as would be admissible in

25

26  [3]  It is undisputed that the MHP Zoning does not regulate or control rent.  Absent such artificial controls, there is no below market value to capitalize and no mechanism to effect any transfer to either the City or the tenants, as was alleged in *Guggenheim*.  The absence of below market rents prevents quantification of any alleged premium transfer, which explains why Wilson did no such analysis.

**DEFENDANT CITY OF TUMWATER'S**
**RESPONSE TO PLAINTIFFS' MOTION**
**FOR SUMMARY JUDGMENT  – 5**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

evidence," should not be used to make an end-run around the page limitations of (Local Civil) Rule 7 by including legal arguments outside of the briefs.'" *King Co. v. Rassmussen*, 299 F.3d 1077, 1082 (9th Cir. 2002). FRCP 56(e) requires that affidavits in support of summary judgment motions set out facts that would be admissible in evidence at trial. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). Evidence which presents legal conclusions is not relevant and should be excluded. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008).

John Woodring was identified as a fact witness, not as an expert. The declaration of John Woodring is riddled with inadmissible hearsay, legal opinion and argument, unsupported prejudicial and misleading statements, irrelevant evidence and inferences and legal argument and conclusions and should be stricken.[4] Plaintiffs also rely on Woodring's speculative testimony to support the conclusion that it is unlikely that an owner will be granted a use exception if applied for in the future. Supp. Motion at 6:8-9. Woodring cannot possibly discern what decision will be rendered by a future City Council. Such speculation is clearly inadmissible and should be stricken.[5]

### 3. James Anderson Declaration

Plaintiffs present the declaration of James Anderson, who became the manager of Velkommen LLC three years ago. His declaration is offered to prove the "investment backed expectations" concerning Velkommen. He is the son of Phyllis and Wes Anderson who built the mobile home park in 1982. Anderson at 19:23. Wes Anderson died in 1984. Phyllis is the sole owner of shares of the LLC, which was recently formed ten years ago for liability protection reasons. *Id.,* at 8:7-8. Anderson's declaration speaks about expectations when the property was purchased using the term "we". Paragraph 2 of his declaration is inadmissible. He has no personal knowledge of the

---

[4] See Myers II, ¶8 (table with specific objections).

[5] Woodring's allegations are also incomplete and argumentative. His assertion, at 4-5, ¶10, that the City did not give adequate consideration to plaintiff's property rights was not the conclusion of the WWGMHB. The Board found that the City's ordinances did not violate the property rights goal of the GMA, RCW 36.70A.020(6):

> Because there is no right to the continuation of existing zoning, there is no dispossession of a property right by City action that changes the zoning of their property. This includes a zoning change that limits the use of their property almost exclusively to manufactured home parks. As this Board found in *Achen*, the "rights" intended by the Legislature could only have been those which are legally recognized, e.g., statutorily, constitutional, and/or by court decision. Petitioners have failed to demonstrate an impact on any such legally recognized right.

Final Decision and Order at 12:1-9. (Matlock Dec. Exhibit A)

**DEFENDANT CITY OF TUMWATER'S**
**RESPONSE TO PLAINTIFFS' MOTION**
**FOR SUMMARY JUDGMENT – 6**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1  expectations that his late father had, nor can he testify as to Phyllis Anderson's expectancies.[6]  The

2  property was purchased in 1975, when James Anderson was in second grade.[7]  Likewise, his

3  testimony,  concerning a prospective purchaser's motives in not closing is speculative and hearsay.

4  Anderson Dec. at 3, ¶5. It is not admissible to show any impact on the proposed sale from the City

5  zoning, which was not yet adopted.[8]

6  ## IV.  ARGUMENT

7  ### A.    MHP ORDINANCE IS NOT A TAKING

8  
9  **1.    Reliance on *Guggenheim v. City of Goleta* continues to be misplaced as plaintiffs have no distinct, reasonable expectation that zoning ordinances will not be changed.**

10  Plaintiffs argue that the City's decision to rezone their mobile home parks deprives them of

11  reasonable investment backed expectations that they would one day be able to convert the property

12  to some other unknown use as allowed by the zoning in effect at the time of their purchase. Plaintiffs'

13  argument essentially is that a property owner can freeze the zoning in place by purchasing and

14  expecting to one day convert to another future use without taking any action whatsoever to realize that

15  expectation.  Such expectations are neither reasonable nor are they investment backed.

16  The Ninth Circuit rejected similar contentions in the en banc opinion in *Guggenheim v. City

17  of Goleta,* where the Court held that distinct investment backed expectations implies "reasonable

18  probability, like expecting rent to be paid, not starry-eyed hope of winning the jackpot if the law

19  changes". *Guggenheim* at *5.  The Court found that subjective future expectations of receiving a

20  premium over the value inherent in the legal stream of rent would not be reasonable investment

21  backed expectations.  Instead the Court held:

22  
23  [6]  Anderson admitted he did not know the prior zoning of the property.  Anderson, at 33:9.  He testified that he is not the owner. *Id.,* at 6:25. He testified that he had no idea if his mother consulted any land use planners about redevelopment. *Id.,* at 43:14-15. He also admitted that he only became the manager of the Velkommen LLC three years ago, even though

24  he has been involved with managing the day-to-day operation of the park since 1985. *Id.,* at 43:22 - 44:1.

25  [7]  Anderson was a senior in high school from 1984-85. Anderson, at 7:12-15.  He would have been in second grade when the property was purchased ten years earlier.

26  [8]  Anderson's Supplemental Declaration does not cure these deficiencies.  It shows only that Velkommen was able to sell for $1.6 million, after the enactment of the MHP ordinances.  This was the same price previously offered by prospective purchasers in 2008.  It is also $100,000 - $200,000 more than the value given by plaintiffs' expert appraiser, who appraised Velkommen at $1.4 - 1.5 million as of December 31, 2008, before the enactment of the MHP Ordinance.

**DEFENDANT CITY OF TUMWATER'S
RESPONSE TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT  – 7**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

but that premium could be no more than a speculative possibility, not an 'expectation'. Speculative possibilities of windfalls do not amount to 'distinct investment backed expectations,' unless they are shown to be probable enough materially to affect the price. The idea after all, of the constitutional protection we enjoy in the security of our property against confiscation is to protect the property we have, not the property we dream of getting.

*Guggenheim*, at *5.

The plaintiffs' argument is essentially that they have an investment backed expectation in the continuation of the zoning code. Supp. Motion at 12:17-25. This would in effect freeze the allowed uses to those permitted at the time they bought their property. These arguments are both inconsistent with the state Vested Rights Doctrine and takings jurisprudence throughout the United States. Illustrative of federal takings cases rejecting such claims is *Elias v. Town of Brookhaven,* 783 F. Supp. 758 (E.D. N.Y. 1992). *Elias* is a case where a property owner bought commercially zoned property for construction of a shopping center. He submitted environmental reports to the city in support of that expectation. However, before building the center, the city rezoned the property from commercial to residential. In evaluating whether or not the property owner had a "reasonable investment backed expectation" the court ruled:

> To establish a 'taking' it is, of course, not enough to show a subjective expectation of making a profit or even of recovering all of one's investment. The task must be an objective one. The expectation must be reasonable in that it is one that the law will recognize. In the context of this case, the question is whether a landowner has as a matter of law an assurance that the zoning regulations will never change.
>
> The question almost answers itself. Nothing in the towns zoning laws or in any New York State law suggests that such an assurance has been made either explicitly or implicitly. If there is one thing that the history of zoning regulation has established it is that as time passes and population increases (or diminishes) zoning restrictions change.

*Elias,* 783 F. Supp. at 761.

The Fifth Amendment does not guarantee to an investor that the existing zoning regulations will remain unchanged. *Penn Central Transp. Co. v. City of New York,* 438 U.S. 104, 130, 98 S.Ct. 2646, 2662, 57 L.Ed.2d 631 (1978) ("*Penn Central*"). To hold otherwise would undercut the power of local government to plan for the future needs of its residents and zone property accordingly. The fact that such zoning laws and changes may preclude a more profitable use of property will not constitute a taking. *See Sadowsky v. New York,* 732 F. 2d 312, 317 (2d Cir. 1984). It is universally

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

recognized that property owners have no vested right to "continuity of zoning of the general area" in which they reside.  4 *American Law of Zoning*, §32:11 (5th ed. ).  As stated in this treatise:

> a person who purchases land in reliance upon its current zoning restrictions acquires no right that the restrictions remain the same.  A comprehensive zoning ordinance does not constitute a contract between the town and property owners that precluded the town from changing the boundaries if at a later date it deemed the change to be desirable.  Nor does such an ordinance vest in any property owner the right that the restrictions imposed upon his property or the property of others should remain unaltered.  Accordingly, the Fifth Amendment itself does not guaranty to an investor in land that the existing zoning regulation will remain unchanged."

*Id., See also* 3 Rathkopf's, *The Law of Zoning and Planning,* section 38:30 (4th ed.)(Nov. 2010); *McBride v. Town of Forestburg,* 388 N.Y.S. 2d 940 (1976)(proponents of a mobile home park had no expectation to continuation of their land under unzoned status.)

Finally, the United States Supreme Court rejected this notion in *Andrus v. Allard,* 444 U.S. 51, 66, 100 S. Ct. 318, 327 (1979) where it is stated:

> "suffice it to say that government regulation by definition involves the adjustment of rights for the public good.  Often this adjustment curtails some potential for the use or economic exploitation of private property.  To require compensation in all such circumstances would effectively compel the government to regulate by purchase. 'The government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law.' *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 413, 43 S. Ct. 158, 159, 67 L. Ed. 322 (1922); *see Penn Central, supra,* 438 U.S. at 124, 98 S. Ct. at 2659.

Such claims also do not assert a valid property interest protected by the Fifth Amendment. It is widely recognized that whether or not an investment-backed expectation is reasonable depends in turn on the extent to which state law fostered and protected the expectation at the time the expectation was formed. *Furey v. City of Sacramento,* 592 F.Supp. 463, 470 (E.D.Cal.1984), *aff'd* 780 F.2d 1448 (9th Cir.1986). That an expectation has or has not received the status of a vested right is a significant indicator of the degree to which state law fostered and protected it. Consequently, the state law of vesting significantly affects the determination of whether or not there has been a due process violation, taking or inverse condemnation. *Southwest Diversified v. City of Brisbane,* 652 F. Supp. 788, 796 (N.D. Cal. 1986).  There is no dispute that none of the Park Owners ever took any action to develop their property or vest their rights to any of the other uses in the previous zoning.

**DEFENDANT CITY OF TUMWATER'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 9**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1        **2.      Plaintiffs inappropriately mix due process and takings analysis**.

2        Plaintiffs urge the Court to determine whether the MHP Zoning is a taking because it places

3   an alleged "burden" on them that should be borne by society as a whole.   The Supreme Court

4   overruled a similar test in *Lingle v. Chevron,* 544 U.S. 528, 125 S.Ct. 2074 (2005).   *Lingle* held that

5   the formula inquiring whether government regulation of private property "substantially advances"

6   legitimate state interests prescribes a due process inquiry, and is not an appropriate test for

7   determining whether regulation effects Fifth Amendment taking, abrogating the test from *Agins v.*

8   *City of Tiburon*, 447 U.S. 255, 260.[9]    Plaintiffs make the same error here, applying a test that is

9   relevant to the substantive due process analysis, not a takings claim.

10       Plaintiffs misread *Lingle* as supporting their proffered test based on *Armstrong v. United*

11  *States*, 364 U.S. 40, 49 (1960) to analyze a regulatory takings claims. Supp. Motion at 9-10.[10]   In

12  *Lingle,* the Court noted the language from *Armstrong*, but rejected that passage as a takings test,

13  because it commingled the due process and takings analysis and did not inform the court how a

14  regulation would identify those regulations whose effects are functionally comparable to government

15  appropriation or invasion of private property.   *Lingle,* at 543.   The Court rejected the appeal to the

16  analysis in *Armstrong*, stating:

17           But that appeal is clearly misplaced, for the reasons just indicated.   A test that tells us
             nothing about the actual burden imposed on property rights, or how that burden is
18           allocated cannot tell us when justice might require that the burden be spread among
             taxpayers through the payment of compensation.   The owner of a property subject to
19           a regulation that effectively serves a legitimate state interest may be just as singled out
             and just as burdened as the owner of a property subject to an ineffective regulation.
20           It would make little sense to say that the second owner has suffered a taking while the
             first has not.    Likewise, an ineffective regulation may not significantly burden
21           property rights at all, and it may distribute any burden broadly and evenly among
             property owners.    The notion that such a regulation nevertheless "takes" private
22           property for public use merely by virtue of its ineffectiveness or foolishness is
             untenable.

23

24  [9]  *Lingle* also rejects the *Agins* "substantially advances a legitimate purpose" inquiry because it inappropriately interjects
    the Court into legislative fact finding, eschewing the traditional deference given to legislative findings of fact. *Lingle,* 447
    U.S. at 545. Plaintiffs' analysis has a similar flaw as their summary judgment motion pays no attention to the legislative
25  determinations supporting the MHP Zoning.

26  [10]  *Penn Central* does not endorse *Armstrong's* language as a takings test, but merely recounts the difficulty in the Court's
    prior analysis which has been unable to develop any "set formula" for determining when "justice and fairness" require that
    compensation by the government. 438 U.S. at 123.  *Lingle* makes clear that the proper test is the three-factor analysis set
    forth in *Penn Central,* not the analysis suggested by *Armstrong.*

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

*Lingle,* at 544.

In place of *Agins* and *Armstrong,* the holding of *Lingle* is clear.  Regulatory takings claims are to be evaluated under the *Penn Central* test. The due process analysis is entirely separate.  Given *Lingle's* reformulation of the takings analysis, it is highly doubtful that the language from *Armstrong v. United States* relied upon by plaintiffs has any bearing on a takings claim.

**3.     The MHP Zoning is not a facial taking of Plaintiffs' property**.

Plaintiffs' have limited their motion for summary judgment to a facial takings challenge.  In facial takings claims, the inquiry is further limited to whether "mere enactment" of the regulation has gone too far.  See *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 736,  n. 10, 117 S.Ct. 1659, 1666, n. 10 (1997).  Indeed, the Court recognized that facial takings challenges "face an uphill battle since it is difficult to demonstrate that mere enactment of a piece of legislation deprived the owner of economically viable use of his property." *Id.*  The test for whether a regulation is a facial taking is straightforward.  "A statute regulating the uses that can be made of property effects a taking if it "denies an owner economically viable use of his land ...."  *Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc.,* 452 U.S. 264, 295-296, 101 S.Ct. 2352 (1981).

Although courts generally look to the regulation's general scope and features, the plaintiffs must produce sufficient facts concerning the effect of the challenged regulation to provide a meaningful analysis of the *Penn Central* factors. Even in a facial challenge, the Ninth Circuit recognized the need for plaintiffs to provide evidence addressing the *Penn Central* factors. *Garneau v. City of Seattle*, 147 F.3d 802, 807-08 (9th Cir.1998) (evaluating a facial regulatory takings claim, and stating that plaintiffs have the burden of "introducing evidence of the economic impact of the enactment ... on their property").

Plaintiff notes that in a facial challenge, the court evaluates whether there is any circumstance where the regulation could be valid.  Here, the validity of the ordinance is demonstrated by the circumstances applicable in Tumwater.  A facial challenge does not analyze in a factual vacuum, as plaintiffs propose. Instead, the Supreme Court has repeatedly recognized that "whether a particular restriction [amounts to a taking] depends largely 'upon the particular circumstances [of each] case'"

**DEFENDANT CITY OF TUMWATER'S
RESPONSE TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT  – 11**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

that is, on "essentially ad hoc, factual inquiries." *Penn Central,* 438 U.S. at 124; *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg. Planning Agency,* 216 F.3d 764, 771-772 (9th Cir. 2000).

### 4.    The MHP Zoning Is Not a Taking under *Penn Central*.

#### a.    Plaintiffs' Present No Evidence of Economic Impact from the MHP Zoning.

The first factor in the *Penn Central* test is to weigh the economic impact of a regulation. *Penn Central*, 438 U.S. at 124.   *Penn Central* recognizes the broad powers of government to regulate to safeguard the public interest.  A police power regulation is not a taking simply because it prevents the highest and best use of the land. *Id.*, 438 U.S. at 125; *Haas v. City & County of San Francisco*, 605 F.2d 1117, 1120 (9th Cir. 1979). Nor is a regulation a taking merely because it dramatically reduces property values.  *Hadacheck v. Sebastian*, 239 U.S. 394, 36 S.Ct. 143 (1915) (value reduced from $800,000 to $60,000); *MacLeod v. Santa Clara County,* 749 F.2d 541 (9th Cir.1984).  Indeed, *Penn Central* itself cautions that the exercise of the police power will frequently affect property values, but that alone does not create a taking.  *Penn Central,* 438 U.S. at 125.  Zoning laws are a "classic" example of laws that may substantially reduce a property's value without constituting a taking.  *Id.*

Plaintiffs make no showing of  "economic impact", and offer no evidence to support this factor.   Even where bringing a facial claim, plaintiffs must produce evidence of economic impact, not make unsupported allegations.  *Garneau*, 147 F.3d at 807-08 (stating that plaintiffs bringing a facial challenge "must show that the value of their property diminished as a consequence" of the regulation).  See also, *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 107 S.Ct. 1232 where the Supreme Court found that the property owners's facial challenge under *Penn Central* failed because the evidence the property owners provided was insufficient to demonstrate economic harm in any significant amount.

*Keystone* is instructive in evaluating claims where continued use of property is allowed and the owners continue to make profitable use of their property.  The Court observed that the facial challenge was especially difficult in such circumstances, stating:

> The hill is made especially steep because petitioners have not claimed, at this stage,
> that the Act makes it commercially impracticable for them to continue mining their

**DEFENDANT CITY OF TUMWATER'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT  – 12**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

bituminous coal interests in western Pennsylvania. Indeed, petitioners have not even pointed to a single mine that can no longer be mined for profit.

*Keystone,* 480 U.S. at 495-96.

Likewise, the Plaintiffs here have an especially steep hill to prove their facial taking claim, as they all are permitted to continue operation of the existing mobile home parks on their property. Similar to the petitioners in *Keystone*, all of the plaintiffs' MHPs regulated under Tumwater's MHP Zoning continue to make large profits from this operation. Hence, they cannot show a facial taking.

The plaintiffs' motion is not supported by any evidence showing that their profits or property values have diminished. Even if the court does not exclude the plaintiffs' expert testimony, her opinions fail to show any economic impact from the City's ordinances. Their appraiser did not do any analysis of the fair market value "before and after" the enactment of the ordinances, which is the necessary methodology to show impact to fair market value. See Shapiro at ¶4, Partin II at ¶20. Her declaration itself does not state any impact, other than a conclusory allegation that an unquantified premium has been lost. Wilson Decl., at ¶19. This is insufficient evidence to support the claim of "significant economic impact". At her deposition, the appraiser recognized that she had not done the before and after analysis necessary to identify such a premium and therefore she could not quantify any alleged "premium" associated with plaintiffs' properties. Wilson, 70:3-11.[11]

Wilson further acknowledged that there would be no premium if the highest and best use of plaintiffs' property before enactment of the ordinances was as a mobile home park. Wilson, 71:8-19. She did not analyze what the highest and best use was, but assumed that the highest and best use was continued use as a mobile home park.[12] The concession that highest and best use remains unchanged contradicts her assertion that there is any premium that could have been lost.

Her report evaluated of the "fair market value" as of December 31, 2008. This term incorporates what a willing buyer would have been willing to pay on this date, and would necessarily

---

[11] Her analysis of a "premium" did not even address two of the three parks owned by the plaintiffs. Even if she had done the necessary evaluation, the present impact of any lost premium would be "de minimis" because there is no present demand for redevelopment of plaintiffs' properties. Partin II, at ¶¶7, 13. Wilson conceded that she did no analysis of when the plaintiffs might be able to realize a return on any option to redevelop the property. Wilson, 60:11-18.

[12] Wilson also conceded that the offer could be explained because Velkommen's rents are below market and a buyer might plan to increase their revenue by bringing them up to the prevailing market rate. Wilson, 65:4-11.

**DEFENDANT CITY OF TUMWATER'S**
**RESPONSE TO PLAINTIFFS' MOTION**
**FOR SUMMARY JUDGMENT  – 13**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1   include any value associated with potential redevelopment.  Partin II, ¶13.  It also evaluated the

2   property at its highest and best use, which was as a mobile home park. Shapiro, at ¶ 16.  Given her

3   conclusion that highest and best use was as a mobile home park before the ordinances were adopted,

4   Wilson could not have reasonably placed any potential economic benefit upon any alternate use other

5   than as mobile home parks.  *Id.*  In this event, Wilson cannot reasonably testify that there is any

6   damage to any subject property as a result of the zoning change where the highest and best use

7   remains as mobile home parks. Also, because she did no evaluation after the ordinance was adopted,

8   she cannot testify as to how much, if any of the premium was affected by the Ordinance.[13]

9   Finally, the recent sale of Velkommen rebuts plaintiffs' assertion that the MHP Ordinance

10  takes the owners' ability to freely dispose of their parks. Supp. Motion at 17:8-9. It shows that even

11  after the adoption of the ordinance, the owner is free to sell the park and can do so at prices

12  comparable to those offered prior to the MHP Ordinance.  Hence, the MHP ordinance is unlike

13  *MHCW v. State*, which would have conditioned such a sale on a right of first refusal for the tenants.

14  The sale of Velkommen also confirms that there was no impact on the value of Velkommen.  First,

15  Plaintiffs' expert valued Velkommen at $1.4-1.5 million on December 31, 2008, before the adoption

16  of the MHP ordinance. Wilson Dec., Ex. B at 2.  Velkommen therefore appreciated by $100,000 to

17  the final sale price of $1.6 million accepted by the owner in March 2011, using the plaintiffs' own

18  evidence.  Secondly, the Velkommen owner admits that he received an offer of $1.6 million in

19  September 2008, before the MHP ordinance was passed. Anderson, Supp. Dec., ¶3. This is the same

20  price that he ultimately accepted for the park.  *Id.,* ¶4-5.  Again, there is no impact in the price that

21  Velkommen could obtain using before and after market offers.[14]

22

23  [13]  The difference between the unaccepted offers and Wilson's opinion of fair market value is minimal and both reflect
    pre-MHP zoning values.  See Wilson, at 64:18-65:3.  A difference of $100,000 - $200,000 in value is only between 7% -
24  13% of Wilson's appraisal of value for Velkommen. Courts have routinely sustained zoning ordinances with such minimal
    impacts. *Vacation Village, Inc. v. Clark County, Nev.,* 497 F.3d 902 (9th Cir. 2007).  *Penn Central,* 438 U.S. at 125-126,
25  holds the zoning ordinances may have a much greater impact, including reducing value up to 85%.

26  [14]  The 2011 offer appears to be a distress sale, as plaintiffs' concede that it was made due to the owner's "deteriorating
    medical condition".  Anderson Supp. Dec., ¶4. Defendants have had no opportunity to take discovery on the 2011 sale,
    but such an admission creates the reasonable inference that the sale of Velkommen was not for "fair market value", but
    under distressed conditions that forced immediate sale for less than the plaintiff might have otherwise obtained.

**DEFENDANT CITY OF TUMWATER'S**
**RESPONSE TO PLAINTIFFS' MOTION**
**FOR SUMMARY JUDGMENT  – 14**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

### b. The MHP Zoning Does Not Interfere with Reasonable, Investment-backed Expectations.

In analyzing the second factor,[15] *Penn Central* began by looking at the extent to which the regulation interfered with the "primary" expectation of the property owner – continuation of the existing use of the property and its ability to exploit the property for ongoing profit. *Penn Central,* 438 U.S. at 136. A zoning ordinance or other police power enactment is not a taking if it does not interfere with an existing profitable use of property, even where that use is an "interim" use and the enactment prevents the short-term "highest and best use". *MacLeod,* 749 F.2d at 547-48.

It is well established law that the interference must be with something more tangible than possible future uses. *Penn Central* rejected the very argument advanced by plaintiffs when it said:

> the submission that appellants may establish a "taking" simply by showing that they have been denied the ability to exploit a property interest that they heretofore had believed was available for development is quite simply untenable.

*Penn Central,* 438 U.S. at 130.

### (1) There Is No Interference with the Owners' Primary Expectation to Operate a MHP.

It is clear that the plaintiffs bought their property to operate a MHP. This is not in dispute. Nor is it debatable that the plaintiffs may continue to operate as a MHP under the zoning regulations adopted by Tumwater. The MHP Ordinance allows for continuation of the existing use as a conforming use. It is undisputed that this use remains highly profitable. This fact is clearly illustrated in the tables attached to the Declaration of William Partin, Partin II at 2, ¶2, Exhibits A, B, and C. Moreover, it is clear in Tumwater Mobile Estates' current balance sheet that their profits actually increased after adoption of the MHP zoning. *Id.,* Exhibit D. [16]

Plaintiffs argue that the fact that MHPs were "nonconforming" supports an expectation that such use would be extinguished. Supp. Motion at 13:11-19. This argument is unsupported and nonsensical. The plaintiffs have operated from 28-45 years and all testified before the City Council

---

[15] *Guggenheim* characterizes this prong as the "primary" factor, following *Lingle. Guggenheim* at *5.

[16] Tumwater Mobile Estates was the only plaintiff to produce financial records after the adoption of the MHP Zoning.

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

1    that they had no present plans to convert to another use.  There is no support that they thought they

2    had to discontinue operation because they were formerly designated as a non-conforming use.

3        All of the plaintiffs concede that they bought their respective properties "for its current rental

4    revenue" and expected to use it as a MHP while that use remained viable. Anderson Supp. Dec., 2:23

5    - 3:3, 4:1-2; Eichler Supp. Dec., 2:4-9; Schmicker Supp. Dec., 1:22 - 2:1.  The MHP Ordinance

6    protect and allows fulfillment of the expectation to use as a MHP, so long as that use is viable.  If it

7    is not viable, the Use Exception allows reversion to the prior zoning and conversion to other uses.

8    Thus, the MHP Ordinance expressly protects the investment backed expectations of the MHP Owners.

9            **(2)    Plaintiffs' Speculative Whims to Potentially Redevelop the
               Property Are Not Reasonable Investment Backed Expectations.**

10       Plaintiffs offer remarkably similar declarations to support their claim that the City ordinance

11   interferes with the potential future conversion to another use.  None of the plaintiffs had any specific

12   development plans.  None had taken any steps to implement or realize these "expectations".  Indeed,

13   Velkommen LLC's general manager referred to his discussions about redevelopment as "whims".

14   Andersen at 43:8-9.  These are not "distinct" expectations as referenced in *Penn Central,* 438 U.S.

15   at 124, 128.  The fact that the prior zoning on property allowed certain uses other than as a MHP does

16   not create a reasonable investment backed expectation that they will be able to someday convert to

17   such uses.  *Id.,* at 130.  Nor does the existence of other options negate the actual choices made by the

18   Park Owners for these properties, which was to create a MHP use.  The plaintiffs are realizing their

19   actual expectation, which is to operate as a MHP.

20       The plaintiffs are realizing their primary expectations and have done so by operating their

21   MHPs for the past 28-45 years.  They have not made any substantial investment in redevelopment of

22   their property, but instead have been content to realize substantial actual returns on their investment

23   by continuing their extremely profitable use as a MHP.  See Partin Report, 6-11.

24       The characterization of the MHPs as an "interim" use does not show a reasonable investment

25   backed expectation to convert it to something else.  It strains credulity to refer to parks that are

26   between 28 and 45 years old as "interim" or "temporary uses".  Shapiro, ¶7.  An MHP is not "interim"

**DEFENDANT CITY OF TUMWATER'S
RESPONSE TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT – 16**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511

1    any more so than any other use, such as construction of an office building or strip mall, that could be

2    replaced with a more valuable use if market conditions warrant the change.  *Id.*

3              **(3)    The Use Exception in TMC 18.49.070   protects the precise
                       expectation that plaintiffs claim is taken by MHP Zoning**.

4         The "expectation" that the Plaintiffs claim is being interfered with is stated in the

5    Supplemental Motion as follows:

6         Instead, they anticipated using their properties as mobile home parks <u>as long as that
7         use was viable</u> and then expected to be able to turn to other economically productive
          uses at their discretion.

8    Supp. Motion at 12: 24-25.

9         On its face, the City's MHP Zoning Ordinance explicitly safeguards this very expectation by

10   providing a use exception that allows the zoning to revert to its prior designation if the owners can

11   show either: 1) they do not have reasonable use of their property under the MHP zoning; or 2) the uses

12   authorized by the MHP zoning are not economically viable at the property's location.  Thus, on its

13   face, there is no interference, even with the plaintiffs' remote desires to convert the property to

14   another use when its existing use in no longer viable.

15              **c. The Character of Tumwater's Action is Not Confiscatory in Nature**.

16        The third prong of the *Penn Central* analysis is to evaluate the character of the governmental

17   action.  Plaintiffs' mischaracterization of this prong again relies upon the <u>dissent</u> in the en banc

18   opinion in *Guggenheim*.  Supp. Motion at 10:2.  In doing so, they do not address the actual language

19   of the *Penn Central* test or the majority's holding in *Guggenheim* at *6.  The correct analysis is that

20   "[a] 'taking' may more readily be found when the interference with property can be characterized as

21   a physical invasion by government than when interference arises from some public program adjusting

22   the benefits and burdens of economic life to promote the social good."  *Thomas v. Anchorage Equal*

23   *Rights Comm'n,* 165 F.3d 692, 709 (9th Cir.1999) (quoting *Penn Cent.,* 438 U.S. at 124, 98 S.Ct.

24   2646).[17]   Here, the character of the MHP Zoning is not a confiscatory action or physical invasion

25   which is likely to result in a taking.

26

---

[17]  Quoted in *MHCW v. State,* 142 Wn.2d 347, 414, n.15, 13 P.3d 183 (J. Talmadge, dissenting).

**DEFENDANT CITY OF TUMWATER'S**
**RESPONSE TO PLAINTIFFS' MOTION**
**FOR SUMMARY JUDGMENT  – 17**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1   The character of this action is purely regulatory over the allowed uses of land, which is

2   designed to promote the common good and adjust benefits and burdens of economic life.  It does not

3   impose any direct "burden" on plaintiffs, whose existing use is undisturbed by the new regulation.

4   The owners are not compelled to allow use of their land, but are permitted to continue their existing,

5   lucrative and profitable mobile home park use.  Matlock Decl.  at 3, ¶6.   Plaintiffs are also free to

6   close the parks, or adopt another of the 23 allowed uses.  *Id.*  Moreover, the Ordinance does not

7   regulate how the Owners operate their businesses or what rents may be charged.  *Id.*   Thus, the

8   character is not the type that courts typically determine to violate the Takings Clause.

9       **5.    Plaintiffs rely on inapposite case law.**

10          **a.  *MHCW v. State of Washington,* 142 Wn.2d 347, 13 P.3d 183 (2000).**

11   *MHCW* involved a statute that created a right of first refusal on behalf of tenants before a park

12   owner could sell the park.  It is not comparable to the zoning designation created for MHPs in

13   Tumwater, which restricts allowed uses, not the sale of property. A right of first refusal is itself a

14   valuable property right.  *MHCW,* 142 Wn.2d at 365-67.[18]   *MHCW* held that the statue abrogated this

15   fundamental attribute of property, namely the right to sell and to select the buyer, and gave it to the

16   tenants.  *MHCW,* 142 Wn.2d at 368.[19]

17       Plaintiffs resort to the "bundle of sticks" description of property rights, claiming interference

18   with the right to freely dispose of their property.  Supp. Motion at 16-17.  They fail to explain how

19   the Ordinance, on its face does so, as it clearly does not interject itself into to the sale process, like

20   the right of first refusal did in *MHCW.*  Their failure to explain how the ordinance impacts a specific

21   property right is hardly surprising, because they could not do so to the WWGMHB, which held that

22

23   [18]  In his concurring opinion in *MHCW*, Justice Sanders expressly distinguished the right of first refusal statute from
situations involving use restrictions, stating:

24          I think considerations pertaining to use restrictions must be applied to circumstances involving use
         restrictions, not deprivations which destroy or appropriate one of the other fundamentals of property
         ownership.

25   *MHCW*, 142 Wn.2d at 381-382 (J. Sanders, concurring).

26   [19]  The creation of a right on behalf of private parties was found not to be for a "public use".  Although the Court held that
its interpretation of "public use" and "private use" was more restrictive under the Washington  State Constitution, this is
the only difference between state and federal takings jurisprudence, and is not implicated by the issues arising from
Tumwater's zoning ordinance.

**DEFENDANT CITY OF TUMWATER'S**
**RESPONSE TO PLAINTIFFS' MOTION**
**FOR SUMMARY JUDGMENT  – 18**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

they had no property right to continued zoning codes.  Matlock, Ex. A at 12. ("Because there is no right to the continuation of existing zoning, there is no dispossession of a property right by City action that changes the zoning of their property.")   Plaintiffs' appraisal expert could not identify what "stick" was being taken.  Wilson, 44:19-25.  The MHP Zoning allows the park to be sold to any willing buyer and does not approximate the right of first refusal statute in *MHCW*.

### b.  *Guimont v. Clarke,* 121 Wn.2d 586, 854 P.2d 1 (1993).

Plaintiffs continue to confuse due process and takings jurisprudence.  Nowhere is this more evident than in their erroneous contention that *Guimont v. Clarke* held that relocation assistance fee was a taking.  Supp. Motion at 14:15-16.  The court actually ruled exactly opposite on the takings claim, ruling that a relocation assistance fee imposed when a park closed, was <u>not</u> a taking. *Guimont,* 121 Wn.2d at 608 *("[*W]e hold the trial court erred in ruling the Act results in an unconstitutional taking of property without just compensation.")

### c.  *Cienega Gardens v. United States*, 331 F.3d 1319 (Fed. Cir. 2003)

The *Cienega Gardens* case cited by plaintiffs was one of several in a lengthy series of cases evaluating complex takings claims.  These cases involved finance regulations that caused a 96% reduction in the rate of return on the plaintiffs' investment by denying them contractual rights to prepay interest.  The 2003 decision found a temporary regulatory taking because it believed that vested property rights had been abrogated.  331 F.3d at 1328.  On subsequent appeal, the Federal Circuit found no taking under the statute, citing *MacLeod v. Santa Clara County* with approval. *Cienega Gardens v. United States*,  503 F.3d 1266, 1289 (9th Cir. 2007).  The facts under this complicated housing program are nothing like the zoning regulations at issue here.

## B.    MHP ZONING NOT A DUE PROCESS VIOLATION

### 1.    The Minimal Scrutiny, Rational Basis Test Applies to the Due Process Claim.

The Plaintiffs concede that the analysis of their substantive due process claim in federal courts is governed by the classic minimal scrutiny, rational basis test. Supp. Motion at 19:3-9.  They further conceded that at least one of the stated objectives of MHP Zoning – achieving the affordable housing goal of GMA– is a legitimate public purposes. Supp. Motion at 19:20-21.

**DEFENDANT CITY OF TUMWATER'S**
**RESPONSE TO PLAINTIFFS' MOTION**
**FOR SUMMARY JUDGMENT  – 19**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

**2.      The City's MHP Zoning Is Rational and Serves Legitimate Public Purposes**.

The zoning adopted by the City is a rational means to achieve a legitimate purpose.  That zoning ensures sufficient availability of a mix of housing types to serve all segments of economic spectrum and ensures continued availability of MHPs to serve future needs.

The City's zoning does not require plaintiffs to exclusively bear the burden of affordable housing.  It does not impose any burden on them that they were not already bearing.  The plaintiffs, not the City, established the MHP use of their property.  The Ordinance rezones the property and allows this use to continue.  The city has not singled out the plaintiffs to bear any new burden.  No fees are imposed.  The rents are not controlled.  The plaintiffs are not regulated in selling their lucrative businesses.  The zoning  is not a violation of substantive due process.

**3.      Plaintiffs Concede That Washington Constitution Does Not Provide Greater Protection than Federal Constitution.**

Plaintiffs acknowledge, in a footnote, that the protection afforded under the State Constitution's due process clause is equal to that provided by the Federal Constitution.  Supp. Motion at 18, fn. 15.  Given this admission, it is unnecessary to apply the separate tests used by Washington Courts to assess whether a law is "unduly oppressive".

**4.      Even under the Washington Test, MHP Ordinances are not Unduly Oppressive.**

Even if the Court were to evaluate the Tumwater Ordinances under the Washington due process test, the plaintiffs do not produce any evidence that shows it is violated.  Significantly, they disregard the ample evidence of their ongoing, increasing profits in operating the MHPs. See Partin II, Exhibits A-D.   Their contention is that zoning their property for the existing profitable  use, that they chose to establish and have continued for decades is somehow oppressive.  This contention is so facially absurd that plaintiffs must divert attention to other allegations of mistreatment.

The plaintiffs assert conclusory allegations that the Ordinance has a significant economic impact.  They have simply made this up because their expert did no "before and after" analysis of the impact of the ordinance.  Moreover, she used the common income capitalization approach to value, which multiplies the net income of property by a capitalization rate to produce a fair market value.

**DEFENDANT CITY OF TUMWATER'S
RESPONSE TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT  – 20**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
*2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511*

1   Since the evidence shows that the profits of the plaintiffs are increasing, this approach would dictate

2   that the values of their parks would also be increasing.

3   Plaintiffs offer conclusory assertions that the owners will be unable to change the existing use,

4   even if authorized under the zoning code. Supp. Motion at 20-21. This is not evidence of oppressive

5   means, especially since the owner of Tumwater Estates testified that in his experience, a city council

6   will look favorably on a proposed rezone to commercial use in order to get the tax benefits, regardless

7   of the current zoning. Schmicker at 41:24 - 42:8. It cannot be regarded as "oppressive" to rezone the

8   property when the owners have never sought to do anything other than operate their MHPs.[20]

9   **C.   MHP ZONING NOT UNLAWFUL SPOT ZONING**

10   **1.   The Parks Are Surrounded by Residential Uses, Not Commercial Use.**

11   Plaintiffs correctly note the broad authority of city legislative bodies to make classifications

12   in their ordinances. They correctly identify that the MHP zoning does not involve any suspect class

13   and is subject to the minimal scrutiny, rational relationship test. Supp. Motion at 22-23. They

14   incorrectly assert that the City is discriminating against them by zoning them for their existing use.

15   In their discussion, plaintiffs make unsupported claims that Tumwater's ordinances will result

16   in significant economic losses, and that this is "especially true in situations where the mobile home

17   park is surrounded by valuable commercial land and the mobile home park may be less desirable for

18   continuing residential use." Supp. Motion at 20-21. This "situation" does not describe any of the

19   plaintiffs' MHPs, which are all surrounded by residential zones and uses. It does describe Allimor,

20   and illustrates the Council's rationale for not including Allimor in the new MHP District.

21   Plaintiffs fail to support their contentions that their property has been singled out for different

22   treatment from the surrounding community. Moreover, they give only lip service to the overriding

23

24   [20]   Plaintiffs' complaint that the owners had no advance warning or opportunity to alter their present uses is
contradicted by the Owners' own assertions to the City during the 18 months that the Ordinances were considered. During

25   that time, the owners, and their attorneys, uniformly denied that they had any plans to convert to another use or close their
parks. Now they complain that they didn't have a grace period to accomplish this change? Finally, the assertion that they

26   did not have an opportunity to change their use before the regulation took effect is false. The proposal took a 18 months
to adopt. The ordinances were not enacted with an emergency clause and did not take effect immediately. Instead, they
took effect on March 23, 2009, over a month after the Council adopted them on February 17, 2009.

**DEFENDANT CITY OF TUMWATER'S**
**RESPONSE TO PLAINTIFFS' MOTION**
**FOR SUMMARY JUDGMENT  – 21**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

1   test to determine if zoning is unlawful "spot zoning" – whether it is enacted to serve the community's

2   interests.[21]  Here, the overwhelming evidence is that the MHP ordinances were adopted to promote

3   community values of ensuring stable neighborhoods, providing sufficient supply of MHPs, and

4   promoting a form of affordable housing.  Using the proper focus, it is clear that the City's MHP

5   Ordinances are not spot zones.  See City's Motion for Summary Judgment at 23-25.

    **2.      MHP Zoning Allows Continuation of Existing Uses That Have Not Been Inconsistent with Neighboring Uses.**

7       Plaintiffs incorrectly assert that the parks rezoned under the MHP zoning district are different

8   from the surrounding communities.  These parks are in established residential areas.  None abut a

9   commercial area.  Moreover, the zoning is applied to an existing use.  To support a spot zoning claim,

10  plaintiffs must prove that the use of their properties is inconsistent with the surrounding

11  neighborhoods and that operation of mobile home parks is detrimental to the public interest.  *Save*

12  *Our Rural Environment (SORE) v. Snohomish County,* 99 Wn.2d 363, 368-369, 662 P.2d 816,

13  818-819 (1983).  This is a curious argument for the Manufactured Housing Communities of

14  Washington to be advancing.

    **3.      The City Has Adequate Justification for Zoning Choices**.

16      *Bassani v. Board of Commissioners for Yakima County*, 70 Wn.App. 389, 396 (1993)

17  recognizes that a rezone will not be overturned if there is "adequate public justification" for the City's

18  zoning choices.  The Supplemental Motion ignores the City's justification for its choices.

19      The factual findings in the City's ordinances explain why it chose not to include three small

20  properties that did not operate as mobile home parks.  These findings also explained why the only

21  MHP zoned commercially, and surrounded by existing commercial uses was not included.  Plaintiffs

22  do not even bother to address these factual findings.  Given the absence of evidence presented by the

23  plaintiff on this topic, and the substantial deference due to legislative findings of fact, the court cannot

24  grant summary judgment to plaintiffs on this issue.

25  ───────────────

26  [21]  The assertion that plaintiffs are at a "competitive disadvantage" to other property owners is curious. Supp. Motion at 23. What exactly are they competing for?  Being a conforming use would create a competitive advantage to their operation of a park over others who might want to establish or expand such a use.  The stability offered by the zoning could even increase the desirability of space in their parks allowing an increase in market rent.

**DEFENDANT CITY OF TUMWATER'S**
**RESPONSE TO PLAINTIFFS' MOTION**
**FOR SUMMARY JUDGMENT  – 22**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

1

**D.     MHP ZONING DOES NOT VIOLATE EQUAL PROTECTION.**

2

**1.     Plaintiffs Fail to Examine the City's Justification for Classifications in the Ordinances Which Provide for a Mix of Housing Types, Including MHPs**.

3

4

Plaintiffs also are incorrect in alleging that no other types of housing are subjected to similar

5

limitations.  Property in the Single Family-Low Density (SFL) district are similarly limited in the

6

choices they can make with their property.  See TMC 18.10.020 - .040.  Similar restrictions exist on

7

uses in the RSR District, TMC 18.08.020 - .040; and the Single Family Medium Density (SFM)

8

District, TMC 18.12.020 -.040.  They cannot redevelop to a multi-family development or a more

9

dense use of their property under the zoning.  That zoning is designed to ensure that SFL housing is

10

part of the mix of housing types available in Tumwater.  Although that type of housing may appeal

11

to a different economic segment of the Tumwater community, it is no less valid for Tumwater to

ensure MHP availability through it zoning decisions  than it is single family housing.

12

**2.     Plaintiffs Conceded That MHP Housing Is Generally More Affordable than Other Types of Housing.**

13

14

At their depositions, the Park Owners all testified that housing in a MHP is generally more

15

affordable than other forms of housing. Andersen 13:9-15; Eichler 10:11-17; Schmicker 17:2-7.  This

16

is consistent Ordinance O2008-009, at 2, finding that MHPs are a source of affordable single family

17

and senior housing in Tumwater.  This distinction is also present in the Growth Management Act,

18

which requires the City to identify sufficient land for housing, including manufactured housing.

19

Yet despite these distinctions, plaintiffs contend that the city should not differentiate between

20

MHPs and other types of housing in its zoning.  Supp. Motion at 23.  Here, the City identified

21

sufficient land for manufactured housing and protected that type of use by creating the MHP District.

22

This is directly related to and directly advances the goals of GMA and the public purpose of ensuring

23

the availability of this type of affordable housing.

24

**3.     The Application of the MHP Zoning Designation to the Six Identified MHPs Is Rational.**

25

Plaintiffs make similar conclusory complaints about the four possible properties that were not

26

included in the MHP District.  Yet they offer no analysis of the City's rationale.  This is insufficient

to overcome the legislative findings supporting the City's selection of properties to include or exclude.

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 RW JOHNSON RD., TUMWATER, WA 98512*
*PO BOX 11880, OLYMPIA, WA 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

See Ordinance O2008-009, at 1-5; Missall Dec., Exhibit H.  The City's choices are rational and supported by the Council's fact-finding process.  See City's Summary Judgment Motion at 22-23.

Finally, plaintiffs conclude with an unsupported allegation that Tumwater is picking and choosing who will bear "sole responsibility" for satisfying affordable housing goals. Supp. Motion at 24:1.   The City's ordinance is designed to provide a mixture of housing types, including MHPs. It would be irrational to include a property which did not function as a mobile home park.  Yet the decision not to include these properties in no way places an exclusive burden on MHP owners.  Other types of housing besides MHPs are aimed at providing affordable options to the lower economic segment of the community.  Tumwater has identified land for a mix of these types, including multi-family and smaller lot size single family housing.  Matlock Dec., ¶10.  This is a fundamental fallacy of plaintiffs' unsupported and conclusory allegations.

## VI.  CONCLUSION

The Plaintiffs' Supplemental Motion fails to carry the burden to show that no material facts are in dispute.  Plaintiffs do not address the salient factual issues and have no evidence of economic impact on their properties or that they have legally cognizable investment backed expectations in future zoning remaining unchanged.  They fail to carry their burden of showing that they are entitled to judgment as a matter of law.  Instead, the clear, undisputed facts show the City is entitled to summary judgment on all of plaintiffs' claims.  The Court should deny the Plaintiffs' Supplemental Motion and grant the City's Amended Motion for Summary Judgment.

Dated this 28th day of March, 2011.

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.


 /s/    *Jeffrey S. Myers,*
Jeffrey S. Myers, WSBA #16390

LAW, LYMAN, DANIEL, KAMERRER
& BOGDANOVICH, P.S.
P.O. Box 11880
Olympia, WA 98508-1880
(360) 754-3480
Fax: (360) 357-3511
E-mail: jmyers@lldkb.com

**DEFENDANT CITY OF TUMWATER'S
RESPONSE TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT  – 24**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
ATTORNEYS AT LAW
2674 RW JOHNSON RD., TUMWATER, WA 98512
PO BOX 11880, OLYMPIA, WA 98508-1880
(360) 754-3480  FAX: (360) 357-3511