UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LAUREL PARK COMMUNITY, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF TUMWATER, a municipal corporation,<br><br>Defendant. | No. C09-05312BHS<br><br>PLAINTIFFS' REPLY IN SUPPORT OF SUPPLEMENTAL MOTION FOR PARTIAL SUMMARY JUDGMENT<br>(Oral Argument Requested) |

A. INTRODUCTION

The City of Tumwater ("Tumwater") offers nothing but a series of half-hearted procedural attacks and irrelevant arguments to oppose the park owners' partial summary judgment motion. It does not adequately respond to the critical argument that its ordinances are unconstitutional. It also misconstrues the nature of the park owners' motion, which is a partial motion for summary judgment based on takings/due process violations. The Court's inquiry should focus on the park owners' constitutional injury rather than fixate on dollar amounts as Tumwater does. The park owners' motion should be granted.

B. RESPONSE TO TUMWATER'S STATEMENT OF FACTS[1]

A critical fact is visibly absent from Tumwater's statement of the case: Tumwater staff

---

[1] The park owners incorporate by reference the detailed statements of facts contained in their motion for partial summary judgment and in the reply in support thereto, in their supplemental motion for partial summary judgment, and in their response to Tumwater's original cross motion.

Reply in Support of Supplemental Motion for Partial Summary Judgment - 1
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

expressed significant concerns about the legal viability of a new zoning classification permitting mobile homes as the only allowed use. BN 15.[2] But Tumwater disregarded those concerns when it adopted the ordinances. Matlock dep. at 8, 11-12 and Ex. 1.[3] Instead, Tumwater directed city staff to reprioritize work and advise the City Council how best to take the park owners' properties while passing constitutional muster. *Id.* at 13-14, 21, 28, 30, 34-35. Tumwater concedes the purpose of its mobile home park District ("District") was to prevent the conversion of mobile home parks and to curry favor with park tenants by giving them more secure tenancies into the future. Matlock dep. at 8, 11-12.

Tumwater also concedes it did not uniformly apply the District. It exempted three parks because they were "exceptionally small" and allegedly did not foster a sense of community or neighborhood. BN 73, 80-81. It exempted a fourth because it was zoned for commercial use and was completely surrounded by general commercial zoning. *Id.* By doing so, Tumwater determined the park owners from which it would take property and those it would leave alone based on its subjective determination of what constitutes a mobile home park.

Tumwater implies the park owners have a "wide range" of uses available if they choose not to operate as mobile home parks. That is a *vast* overstatement. The permissible accessory uses are *extremely* limited. BN 86. *None* of them are revenue-generating uses. Likewise, with few exceptions, the permitted and conditional uses provide no economic return. BN 85-86. Some of those uses *generate no income at all* while others require a significant monetary

---

[2] "BN" refers to the consecutively Bates stamped pleadings the park owners submitted in support of their original motion and their amended motion for summary judgment. "BN II" will refer to the consecutively Bates stamped pleadings the park owners submitted in response to Tumwater's original cross motion for summary judgment.

[3] Excerpted deposition testimony was attached to the declaration of Walter H. Olsen, Jr. The depositions will be cited using the name of the witness for ease of reference.

Reply in Support of Supplemental Motion for Partial Summary Judgment - 2
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661   (206) 575-1397 Fax

investment to cover conversion costs and licensing requirements associated with redevelopment.

Tumwater continues to overstate the District's use exception: any exception is *discretionary* with the city. BN 89. A park owner's burden of proof when requesting an exception is extraordinarily high – the owner must convince the City Council that the District prevents reasonable use of the property or that the authorized uses are not economically viable. BN 89, 104. As Council Member Karen Valenzuela acknowledged, "it's fair to say it is likely the owner's chances for a rezone would be questionable." BN 112.

Tumwater continues to attack the park owners' expert, Jeanne-Marie Wilson. Yet its own expert, Stephen Shapiro, agrees Wilson is qualified and that her initial expert disclosure is compliant with the Uniform Standards of Professional Appraisal Practice ("USPAP"). Shapiro Decl., Ex. E at 2. He also agrees with Wilson's more practical analysis of value and that parks have a fixed life. *See* Shapiro dep. at 37-38, 51-52. Where he disagrees with Wilson, his deposition testimony confirms he has never been involved with the sale of a mobile home park and his analysis is incomplete and factually incorrect. *Id.* at 22, 26-27, 48. Shapiro's analysis is selective and incorrect in many other respects. *Id.* at 21-22, 24-25, 29-31; BN II:150-51.

Tumwater further contends the park owners had only limited success before the Western Washington Growth Management Hearings Board ("GMHB"). That the park owners' successful challenge was procedural does not vitiate its importance; it goes to issues of fundamental fairness and due process. The GMHB determined *Tumwater failed to comply* with the process for considering property rights. Importantly, the GMHB did not address the park owner's constitutional takings claims because it did not have the authority to do so. BN 173, 186. Tumwater also misstates the basis for Laurel Park's decision to stay its appeal of Tumwater's decision denying its request for a replacement permit. Laurel Park agreed to stay its appeal

Reply in Support of Supplemental Motion for Partial Summary Judgment - 3
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

while Tumwater considered its objection. There was no guarantee that Tumwater would follow state law in that case anymore than it would follow state and federal law in this case.

D. ARGUMENT IN REPLY[4]

(1) Tumwater's Motions to Strike Should Be Denied

Tumwater's attacks on Jeanne-Marie Wilson, John Woodring, and James Andersen go to the weight of the evidence rather than to its admissibility. Tumwater's motions to strike should be denied because the declarations are relevant to the park owners' constitutional harm.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587-89 (1993),[5] and Fed. R. Evid. 702 ("Rule 702"), Wilson's expert declarations are admissible. Rule 702 "contemplates a broad conception of expert qualifications." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004). "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable testimony." *Id.* By Tumwater's own admissions, Wilson is a qualified appraiser.

Wilson's declarations are admissible concerning the park owners' constitutional injury; alternatively, they are admissible to impeach Tumwater's experts. Wilson has considered the unique factual circumstances of more than 75 mobile home parks to ascertain value for park owners, demonstrating the reliability of her testimony. BN 43. Tumwater's own expert agrees she is qualified and her initial expert disclosure is USPAP compliant. BN 6. Thus, there is no

---

[4] As Tumwater has suggested, the Court may treat the park owners' supplemental summary judgment motion as a response to Tumwater's amended motion for summary judgment. Reply at 1.

[5] In *Daubert*, the United States Supreme Court set the standard for admissibility of expert testimony. The standard is "a flexible one." 509 U.S. at 594-95. Several post-*Daubert* opinions define and clarify that standard. *See, e.g., Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("no one denies that an expert may draw a conclusion from a set of observations based on extensive and specialized knowledge."); *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228 (9th Cir. 1998) ("[d]isputes as to the strength of an expert's credentials, faults in his use of a particular methodology, or lack of textual authority, go to the weight, not the admissibility, of his testimony.").

Reply in Support of Supplemental Motion for Partial Summary Judgment - 4
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661   (206) 575-1397 Fax

basis for Tumwater's contention that Wilson is unqualified, noncompliant with USPAP, or unreliable.

Whether Wilson did a before/after analysis is a red herring. The purpose of her initial report was to corroborate the value of the three parks as parks; a before/after analysis was irrelevant to that confirmation. But testimony as to valuation *is relevant* to the consideration of the parks' values before the ordinances were enacted to ascertain injury and therefore liability. *See* Fed. R. Evid. 401. The purpose of Wilson's later declarations was to supplement or impeach Tumwater's expert disclosures. Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii), 26(a)(2)(D). The park owners remain competent to testify as to the value of their properties *after* the ordinances were enacted. *See Cunningham v. Town of Tieton*, 60 Wn. 2d 434, 374 P.2d 375 (1962).

John Woodring's declaration is also admissible. He is a fact witness. He is an attorney for MHCW and its member communities; *he attended every public hearing and meeting Tumwater held with regard to its ordinances, except one.* BN 190. He can certainly testify to what he observed at those meetings, and to Tumwater's admissions in those sessions. Fed. R. Evid. 601-602, 801(d)(2)(A). He was present when Council Member Ed Stanley admitted his bias toward restricting the parks for the benefit of the tenants. He observed Tumwater ignore takings precedent he submitted and weakly address how the ordinances took the park owners' properties. BN 191. Each of his personal observations and Tumwater's party-admissions are probative on whether Tumwater sought and then took the park owners' property rights and disprove Tumwater's contentions that it genuinely considered those rights. Fed. R. Evid. 401.

James Andersen's declaration is likewise admissible. Andersen is the speaking agent for Velkommen Park LLC, which owns that park. Andersen dep. at 7, 9. The company's investment-backed expectations are relevant to the constitutional issues here. *Cunningham*,

Reply in Support of Supplemental Motion for Partial Summary Judgment - 5
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661   (206) 575-1397 Fax

60 Wn. 2d at 436. Moreover, Andersen was an adult when he became a partner in the LLC. He chose to become a partner based on his own personal investment-backed expectations. Andersen dep. at 7, 77, 81. Andersen is thus competent to testify as to his specific intention to "land-bank" the park and his expectation to use it as a mobile home park while that remained a viable personal and business decision. *Id.* at 81. To label his expectation as a windfall misconstrues basic real estate investment principles and ignores his testimony. Tumwater's own expert *conceded* Velkommen was damaged. BN II:147. Moreover, Andersen valued Velkommen's fair market value at $1.8 million without the District. But he could not get that price because the ordinances chilled the market. Andersen dep. at 47, 67-68, 75-76. He was able to sell it for $1.6 million last month. BN 489. This establishes very concrete damages to Velkommen.

  (2) <u>The Park Owners Have Demonstrated that the Ordinances Take Their Property</u>

Under *Penn Central's* economic impact factor, the park owners need only demonstrate a loss of value less than 100 percent, but high enough to have gone too far. *Penn. Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). They need not assign a specific dollar amount to their constitutional deprivations at this stage of the case because they are not proving their *damages*, only the constitutional *harm*.

Tumwater argues the park owners have no evidence to support their economic impact claims, but then *admits* Velkommen suffered a measurable economic impact. It ignores the evidence the park owners *did* develop and that of its own expert. BN 248; BN II:147, 152. For example, Wilson stated that Tumwater's ordinances affected a value transfer from the park owners to their tenants and that the tenants had been given greater property rights at the expense of the owners. BN 246-48. In effect, *the value of the park owners' properties has been artificially depressed by the ordinances. Id.* Similarly, all three park owners testified to the

Reply in Support of Supplemental Motion for Partial Summary Judgment - 6
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661 (206) 575-1397 Fax

diminished values of their respective parks following enactment of Tumwater's ordinances. BN 201; BN II:51-64, 66, 68-73, 88, 92, 96. That is sufficient. *See Cunningham*, 60 Wn. 2d at 436.

Tumwater makes little effort to analyze the impact of *Guggenheim v. City of Goleta*, ___ F.3d ___ (9th Cir. 2010) on this case. *Guggenheim* remains instructive. In contrast to Guggenheim, the park owners here bought their respective properties long before Tumwater's ordinances took effect and in reliance on the zoning permitted at the time.[6] BN 199-200, 222-23, 240-41, 482-83, 486, 490.[7] That zoning allowed multi-family development. They did not expect that Tumwater would seriously restrict manufactured home park zoning or require them to continue using their properties as mobile home parks in perpetuity. *Id.* Instead, they anticipated using their properties as mobile home parks as long as that use was economically viable and then expected to be able to turn to other economically productive uses at their discretion. *Id.* This expectation is reasonable and consistent with the development occurring around the parks. BN 246. It is not "speculative" nor are the park owners "speculators." As Judge McPhee stated during the GMHB proceedings in superior court: "there is nothing in the record that suggests that these petitioners fit that category." BN 481. Instead, they are legitimate business persons operating manufactured housing parks. *Id.* Their expectations are not mere "whims" unprotected by the Takings Clause. They have a fundamental right to dispose of their properties; Tumwater's ordinances impede that right. *See Manufactured Housing Cmtys. of Washington v. State*, 142 Wn.2d 347, 13 P.3d 183 (2000).

---

[6] Tumwater claims the park owners mistakenly suggest they have an investment-backed expectation in the continuation of the zoning code. On the contrary, the park owners have an expectation that Tumwater will not saddle them with the city's obligation to provide affordable housing.

[7] In contrast to the non-economic uses, left to park owners by Tumwater's ordinances these uses *were* economic.

Reply in Support of Supplemental Motion for Partial Summary Judgment - 7
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

Tumwater argues the park owners have not addressed the actual language of the third prong of the *Penn Central* test, which looks at the character of the government action. It does not recognize the two divergent interpretations of that test or that the park owners' analyze their claims under the second, *more frequently*, applied test. Under that test, the focus is the severity of the burden the government imposed upon the landowners' property rights. *See Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 539 (2005).[8] The Takings Clause prohibits "Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Id.* at 537 (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).[9]

Tumwater has placed the economic burden of providing affordable housing *squarely on the shoulders of a few park owners*. By arbitrarily applying the District, it *did not impose such restrictions allegedly designed to advance affordable housing on any other private property owners in the city or on the other four mobile home parks in Tumwater*. If the new housing policy is as beneficial for the public as Tumwater claims, then it should fall on *all* owners alike and not just the six targeted here. Tumwater singled out six park owners and saddled them with the burden of providing affordable housing. Tumwater took the benefit of such restricted uses and transferred it to the parks' tenants. Singling them out in this manner is a taking. *See*

---

[8] Tumwater muddies the Court's holding in *Lingle*. Dkt. 25 at 9-10. There, the United States Supreme Court considered for the first time the validity of the stand-alone "substantially advances" takings test enunciated in *Agins v. City of Tiburon*, 447 U.S. 255 (1980). *Lingle*, 544 U.S. at 540. It determined that formula was not a valid method of identifying regulatory takings for which the Fifth Amendment requires just compensation because it reveals nothing about the burden a particular regulation imposes or how that burden is distributed among landowners. Importantly, the *Lingle* court stated it was not disturbing any of its prior takings holdings. *Id.* at 545.

[9] Tumwater misinterprets the purpose behind the park owners' quote from *Armstrong* in their motion. That language is a general, purposive statement about the meaning of the Takings Clause; it does not elucidate any particular rule or authorize a particular class of claims, nor do the park owners contend that it does. Instead, they contend the appropriate test to be applied is the three-factor test established in *Penn Central*.

Reply in Support of Supplemental Motion for Partial Summary Judgment - 8
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

*Cienega Gardens v. United States*, 331 F.3d 1319, 1338-39 (Fed. Cir. 2003).[10]

(3) <u>The Vested Rights Doctrine Does Not Bar the Park Owners' Claims</u>

Tumwater erroneously argues the vested rights doctrine is inconsistent with the park owners' claims. That doctrine is irrelevant here.

"Washington's vested rights doctrine, as it was originally judicially recognized, entitles developers to have a land development proposal processed under the regulations in effect at the time a complete building permit application is filed, regardless of subsequent changes in zoning or other land use regulations." *Abbey Road Group, LLC v. City of Bonney Lake*, 167 Wn.2d 242, 250, 218 P.3d 180 (2009) (citing *Hull v. Hunt*, 53 Wn.2d 125, 130, 331 P.2d 856 (1958)). By definition, the doctrine is backward looking. It is therefore not "only by vesting that an owner will have a reasonable expectation that the zoning will not change" in the future. *See* Dkt. 20 at 16. Tumwater confuses a doctrine addressing the applicable law for permitting with the investor-backed expectation analysis. The doctrine supports the park owners' claims because it confirms that Washington is more protective of development and property rights than other jurisdictions. *Abbey Road Group*, 167 Wn.2d at 205-51 (noting Washington's rule offers more protection of development rights than the rule generally applied in other jurisdictions).

The whole point of the doctrine is to preclude new land-use ordinances like Tumwater's from unduly oppressing development rights. For Tumwater to suggest the park owners must

---

[10] Tumwater's attempt to distinguish *Cienega Gardens* remains unavailing. There, two federal statutes abrogated property developers' contractual rights to prepay their forty-year mortgage loans after twenty years. The developers were effectively prevented from exiting the low-rent housing programs in which they were required to participate while carrying the loans. The statutes led to a 96 percent loss of return on equity for the developers. The Federal Circuit found that the government's action placed the expense of low-income housing on a few private property owners, instead of distributing the expense among all taxpayers in the form of incentives for developers to construct more low-rent apartments. *See* 331 F.3d at 1338-39. Like the government in *Cienega Gardens*, Tumwater improperly singled out the park owners to bear the societal burden of providing affordable housing.

Reply in Support of Supplemental Motion for Partial Summary Judgment - 9
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661   (206) 575-1397 Fax

have a vested property right before it can be subject to constitutional review turns the doctrine on its head. The narrow, practical effect of the doctrine is to recognize that a vested property right could sanction a new nonconforming use. *Id.* at 251.

Ultimately, Washington's Legislature has recognized the park owners' rights to convert their land use by allowing them to terminate their tenants' perpetual one-year tenancies upon twelve months notice of any "[c]hange of land use of the mobile home park[.]" RCW 59.20.080(1)(e); *see also Holiday Resort Cmty. Ass'n v. Echo Lake Assoc., LLC*, 134 Wash. App. 210, 223, 135 P.3d 499 (2006). Both RCW 59.20.080(1)(e) and Washington's vested rights doctrine confirm that the park owners' constitutional property rights "flow independently from state law," even under Tumwater's selective citations.

(4)  Tumwater's Ordinances Violate Art. I, § 16 of the Washington Constitution

Tumwater incorrectly argues the only difference between state and federal takings jurisprudence is that Washington's interpretation of "public use" and "private use" is more restrictive.[11] But Washington's Constitution affords greater protection to property owners than the Fifth Amendment because it defines a taking more broadly. The *Manufactured Housing* court concluded a right of first refusal constituted a fundamental property interest because it was "part and parcel" of the power to dispose of property. *Id.* at 366. Washington's Constitution does not require that *all* property rights be affected before a taking occurs. Under *Manufactured Housing*, an unconstitutional taking occurs if the government takes *any* stick from the bundle of sticks representing a valuable property right. It also establishes a *complete restriction* against

---

[11] Tumwater's reliance on Justice Sanders' opinion in *Manufactured Housing* is misplaced because his opinion was the dissenting opinion. *See, e.g., U.S. v. Ameline,* 409 F.3d 1073, 1083 n.5 (9th Cir. 2005) (citation omitted) (noting dissenting opinions are not precedential).

Reply in Support of Supplemental Motion for Partial Summary Judgment - 10
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

taking private property for private use. *Manufactured Housing*, 142 Wn.2d at 362.

Tumwater's ordinances, in effect, take the park owners' right to dispose of their property and transfer it to their tenants. The tenants receive a huge economic benefit.

(5) <u>Tumwater's Ordinances Violate the Park Owners' Due Process Rights</u>

Tumwater fails to recognize that Washington courts use a far more liberal substantive due process test than the federal courts. Although Tumwater argues the park owners experienced no damage, the evidence demonstrates otherwise. All three park owners testified to the diminished value of their properties following enactment of the ordinances. BN II:7-9. Wilson testified the value of the parks has been artificially depressed and that the park owners can no longer take advantage of the underlying land's potential for redevelopment. BN 246-48. Finally, Shapiro testified the value impact on Velkommen of Tumwater's ordinances was $300,000. BN II:147.

Tumwater's self-serving assertion that the park owners had ample opportunity to alter their present uses before the ordinances took effect in 2009 is belied by Andersen's testimony that Velkommen received two purchase offers in May and September 2008, but that those offers were *rescinded after* Tumwater publicly announced that it intended to rezone the park. BN 201. That the park owners maintain increasing rental profits does not mean the value of their properties was not impacted by Tumwater's ordinances. No other landowner in Tumwater has had the right to alienate his or her property restricted.

(6) <u>Tumwater's Ordinances Violate the Park Owners' Rights to Equal Protection and Constitute Illegal Spot Zoning</u>

Tumwater's ordinances treat the park owners differently, whether the class considered is all housing providers or merely all park owners in Tumwater. BN II: 22-23. It has not required all housing providers – single family, apartments, condominia, etc. – to face the same types of

Reply in Support of Supplemental Motion for Partial Summary Judgment - 11
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

limitations on the future uses of their property. It has not required every homeowner in "affordable" housing areas zoned multi-family to limit their future right to build multi-family projects. The park owners here are placed at a competitive disadvantage to other property owners whose property has not been so limited.

Tumwater's ordinances constitute illegal spot zoning because they single out the park owners with more restrictive zoning and grant a discriminatory benefit to other similarly situated mobile home park property owners. *See Bassani v. Board of County Comm'rs for Yakima County*, 70 Wn. App. 389, 396, 853 P.2d 945 (1993) (citations omitted). Other similarly-situated mobile home park owners have not been saddled with Tumwater's objectionable zoning.

D. CONCLUSION

Tumwater's ordinances are unconstitutional takings and violate the park owners' rights to federal and state due process and equal protection. The Court should grant the park owners' motion for partial summary judgment.

DATED this 8th day of April, 2011.

Respectfully submitted,

*Philip A. Talmadge*
Philip A. Talmadge, WSBA #6973
Thomas M. Fitzpatrick, WSBA #8894
Emmelyn Hart, WSBA #28820
Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, WA 98188-4630
(206) 574-6661
Email: phil@tal-fitzlaw.com
        tom@tal-fitzlaw.com
        emmelyn@tal-fitzlaw.com

Reply in Support of Supplemental Motion for Partial Summary Judgment - 12
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661   (206) 575-1397 Fax

Walter H. Olsen, Jr., WSBA #24462
Olsen Law Firm PLLC
604 West Meeker St., Ste. 101
Kent, WA 98032
(253) 813-8111
Email: walt@olsenlawfirm.com
Attorneys for Plaintiffs

Reply in Support of Supplemental Motion for Partial Summary Judgment - 13
C09-5312BHS

Talmadge/Fitzpatrick
18010 Southcenter Parkway
Tukwila, Washington 98188-4630
(206) 574-6661  (206) 575-1397 Fax

DECLARATION OF SERVICE

On this day said forth below, I filed by CM/ECF a true and accurate copy of: Plaintiffs' Reply in Support of Supplemental Motion for Partial Summary Judgment in U.S. District Court Cause No. C09-5312 BHS to the following parties:

Walter H. Olsen, Jr.
Olsen Law Firm, PLLC
604 W. Meeker Street, Suite 101
Kent, WA 98032
walt@olsenlawfirm.com

Karen E. Kirkpatrick
City of Tumwater
555 Israel Rd SW
Tumwater, WA 98502
kkirkpatrick@ci.tumwater.wa.us

Jeffrey S. Myers
Law, Lyman, Daniel, Kamerrer & Bogdanovich, P.S.
PO Box 11800
Olympia, WA 98508-1880
jmyers@lldkb.com

Original sent electronically for filing with:

United States District Court, Western District of Washington at Tacoma
Clerk's Office
1717 Pacific Avenue
Tacoma, WA 98402

Judge's sent electronically for filing with:

Judge Settles
United States District Court, Western District of Washington at Tacoma
Clerk's Office
1717 Pacific Avenue
Tacoma, WA 98402

I declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

DATED: April 8, 2011, at Tukwila, Washington.

_____
Paula Chapler, Legal Assistant
Talmadge/Fitzpatrick

DECLARATION